Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Counsel for Plaintiff
***Additional Counsel on Signature Page.***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA**, individually and on behalf of all others similarly situated, | Civil Action No. 5:17-cv-02514-JGB–SHKx |
| *Plaintiff,* | **PLAINTIFF'S OPPOSITION TO GEO'S MOTION TO DISMISS** |
| v. | Date: March 26, 2018 |
| **THE GEO GROUP, INC.,** | Time: 9:00 am. |
| *Defendant.* | Courtroom: 1 |
| | Judge: The Honorable Jesus G. Bernal |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

III.    STANDARD OF REVIEW ................................................................................. 2

IV.     PLAINTIFF PLEADS VIOLATIONS OF THE CALIFORNIA
        MINIMUM WAGE LAW ................................................................................... 3

        A.    Federal Law does not Preempt the California Minimum Wage Law ................. 3

              1.    The Minimum Wage Law is not expressly preempted ........................... 4

              2.    The Minimum Wage Law is not field preempted ................................... 6

              3.    The Minimum Wage Law is not conflict/obstacle preempted ............... 9

        B.    Plaintiff States a Claim for Relief under the California Minimum Wage
              Law .................................................................................................................. 11

              1.    The express terms of the Minimum Wage Law confer
                    coverage to the putative class ............................................................. 11

              2.    Plaintiff does not seek relief under FLSA, but Ninth Circuit
                    precedent does not prohibit him from doing so ................................... 13

V.      PLAINTIFF STATES A CLAIM UNDER THE FEDERAL TVPA ...................... 16

        A.    The TVPA's Forced Labor Provision, 18 U.S.C. § 1589, Applies to
              GEO .................................................................................................................. 16

        B.    Plaintiff has no "Civic Duty" to Enrich a Private Corporation by
              Performing Work not Contemplated under ICE's Detention
              Standards ......................................................................................................... 18

VI.     PLAINTIFF STATES A CLAIM UNDER THE CALIFORNIA TVPA ................. 21

VII.    PLAINTIFF ADEQUATELY ALLEGES ENTITLEMENT TO
        EQUITABLE RELIEF UNDER CALIFORNIA LAW .......................................... 22

        A.    Plaintiff's Unjust Enrichment Claim Seeking Restitution is Neither
              Duplicative nor Superfluous ............................................................................ 22

B.    By Adequately Alleging that GEO Violated California and Federal Law, Plaintiff States a Claim for Relief under the California Unfair Competition Law ........................................................................................ 23

VIII.   CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. Ass'n for Retarded Citizens*,
    234 Cal. App. 3d 21, 34 (Ct. App. 1991) ...................................................... 13

*Agyeman v. I.N.S.*,
    296 F.3d 871, 886 (9th Cir. 2002) .......................................................... 22

*Altria Group, Inc. v. Good*,
    555 U.S. 70, 77 (2008) ...................................................................... 5

*Alvarado Guevara v. I.N.S.*,
    902 F.2d 394, 396 (5th Cir. 1990) ..................................................... 13, 14

*Arizona v. U.S.*,
    567 U.S. 387, 400 (2012) ............................................................... 4, 6, 7

*Armenta v. Osmose, Inc.*,
    135 Cal. App. 4th 314, 324 (2005) .......................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ..................................................................... 3

*Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*,
    648 F.3d 986, 991 (9th Cir. 2011) ........................................................... 12

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753, 762 (9th Cir. 2015) ....................................................... 22, 23

*Baker v. McNeil Island Corr. Ctr.*,
    859 F.2d 124, 128 (9th Cir. 1988) .......................................................... 14

*Barquis v. Merchants Collection Assn.*,
    496 P.2d 817 (Cal. 1972) ................................................................... 23

*Bayh v. Sonnenburg*,
    573 N.E.2d 398, 409 (Ind. 1991) *cert. denied,* 502 U.S. 1094 (1992) ...................... 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ..................................................................... 3

*Bonnette v. California Health & Welfare Agency*,
    704 F.2d 1465 (9th Cir. 1983) ............................................................... 14

*Carter v. Dutchess Cmty. College*,
    735 F.2d 8, 12 (2d Cir. 1984) .......................................................... 14, 16

*Castle v. Eurofresh, Inc.,*
  731 F.3d 901, 908 (9th Cir. 2013) ............................................................................ 15

*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
  973 P.2d 527, 560 (Cal. 1999) ................................................................................... 24

*Channer v. Hall,*
  112 F.3d 214 (5th Cir. 1997) .................................................................... 18, 19, 20, 21

*Chao Chen v. Geo Grp., Inc.,*
  No. 3:17-CV-05769-RJB, 2017 WL 6034365, at *3 (W.D. Wash. Dec. 6, 2017) ..................... 6

*Cipollone v. Liggett Group, Inc.,*
  505 U.S. 504, 516 (1992) ........................................................................................... 4

*Correctional Services Coep. v. Malesko,*
  534 U.S. 61 (2001) .................................................................................................. 20

*Cortez v. Purolator Air Filtration Prod. Co.,*
  999 P.2d 706, 712 (Cal. 2000) .............................................................................. 23, 24

*Coupar v. U.S. Dep't of Labor,*
  105 F.3d 1263, 1265 (9th Cir. 1997) ........................................................................... 15

*CSX Transp., Inc. v. Easterwood,*
  507 U.S. 658, 664 (1993) ........................................................................................... 4

*Doe v. City of Los Angeles,*
  42 Cal. 4th 531, 545 (2007) ....................................................................................... 12

*Elec. Constr. & Maint.. Co., Inc. v. Maeda Pac. Corp.,*
  764 F.2d 619, 622 (9th Cir. 1985) ................................................................................ 3

*English v. General Elec. Co.,*
  496 U.S. 72, 79 (1990) .............................................................................................. 9

*Estrada v. FedEx Ground Package Sys., Inc.,*
  154 Cal. App. 4th 1, 10 (2007) ................................................................................... 12

*Evans v. DSW, Inc.,*
  2017 WL 7058232, at *7 (C.D. Cal. Sept. 14, 2017) ...................................................... 23

*Fong Yue Ting v. United States,*
  149 U.S. 698, 730 (U.S. 1893) ................................................................................... 15

*Fort Halifax Packing Co. v. Coyne,*
  482 U.S. 1, 21 (1987) ................................................................................................ 4

iv

*Gamble v. Minn. State-Operated Servs.,*
    No. 16-2720 (JRT/KMM), 2017 WL 4325702, at *3 (D. Minn. Sept. 28, 2017) .................... 16

*Goldstein v. California,*
    412 U.S. 546, 554 (1973) .................................................................................................... 9, 10

*Gonzales v. Mayberg,*
    2009 WL 2382686, at *4 (C.D. Cal. July 31, 2009) ................................................................ 15

*Hale v. Sharp Healthcare,*
    183 Cal.App.4th 1373, 1383 (2010) .......................................................................................... 24

*Hale v. State of Ariz.,*
    993 F.2d 1387, 1393 (9th Cir. 1993) ................................................................................... 14, 15

*Hawaiian Airlines, Inc. v. Norris,*
    512 U.S. 246, 252 (1994) ............................................................................................................ 4

*Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.,*
    471 U.S. 707, 717 (1985) ............................................................................................................ 6

*Hoffman Plastic Compounds, Inc. v. NLRB,*
    535 U.S. 137, 147 (2002) ............................................................................................................ 5

*Hydrick v. Hunter,*
    500 F.3d 978, 989 (9th Cir. 2007), *vacated on other grounds*, 556 U.S. 1256 (2009) .................... 15

*In re United Parcel Service Wage and Hour Cases,*
    190 Cal. App. 4th 1001, 1009 (2010) ........................................................................................ 13

*Incalza v. Fendi N. Am., Inc.,*
    479 F.3d 1005, 1010 (9th Cir. 2007) ........................................................................................... 9

*Jimenez v. Quarterman,*
    555 U.S. 113, 118 (2009) .......................................................................................................... 16

*Jobson v. Henne,*
    355 F.2d 129, 131-32 (1966) ...................................................................................................... 19

*Jones v. Rath Packing Co.,*
    430 U.S. 519, 525 (1977) ............................................................................................................. 7

*Lofthus v. Long Beach Veterans Hosp.,*
    214 F. Supp. 3d 908, 911 (C.D. Cal. 2016) ............................................................................... 22

*Maryland v. Louisiana,*
    451 U.S. 725, 746 (1981) ............................................................................................................. 3

*McGarry v. Pallito,*
 687 F.3d 505, 513 (2d Cir. 2012) ...................................................................19

*McKell v. Washington Mut., Inc.,*
 142 Cal.App.4th 1457, 1471 (2006) ................................................................24

*Medtronic, Inc. v. Lohr,*
 518 U.S. 470, 485 (1996) ...........................................................................3, 4

*Menocal v. GEO Grp., Inc.,*
 113 F. Supp. 3d 1125 (D. Colo. 2015)........................................................16, 19

*Minneci v. Pollard,*
 565 U.S. 118, 120 (2012) ............................................................................20

*Mohamed v. Jeppesen Dataplan, Inc.,*
 614 F.3d 1070, 1100 (9th Cir. 2010) *cert. denied*, 563 U.S. 1002 (2011)....................3

*Nat'l Fed'n of the Blind v. United Airlines Inc.,*
 813 F.3d 718, 724 (9th Cir. 2016) ................................................................3, 7

*Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.,*
 790 F. Supp. 2d 1134, 1143-46 (C.D. Cal. 2011) ................................................17

*Quackenbush v. Mission Ins. Co.,*
 46 Cal. App. 4th 458, 466 (1996) ..................................................................12

*Ramirez v. Yosemite Water Co.,*
 20 Cal. 4th 785, 794 (1999) .....................................................................12, 13

*Reyes v. Van Elk, Ltd.,*
 148 Cal. App. 4th 604, 616 (2007) ...................................................................6

*Rice v. Santa Fe Elevator Corp.,*
 331 U.S. 218, 230 (1947) ...........................................................................4, 9

*Richardson v. McKnight,*
 521 U.S. 399, 409 (1997) ............................................................................20

*Salas v. Sierra Chem. Co.,*
 327 P.3d 797, 804 (Cal. 2014)........................................................................5

*Ticconi v. Blue Shield of California Life & Health Ins. Co.,*
 160 Cal. App. 4th 528, 539 (2008) .................................................................24

*Total TV v. Palmer Communications, Inc.,*
 69 F.3d 298, 304 (9th Cir. 1995) ................................................................9, 10

vi

*United States v. Kaufman,*
  546 F.3d 1242, 1260 (10th Cir. 2008)..................................................17, 18

*United States v. Kozminski,*
  487 U.S. 931, 942 (1988) ..........................................................17, 18, 19

*United States v. Mead,*
  533 U.S. 218 (2001) ...............................................................................8

*Vanskike v. Peters,*
  974 F.2d 806, 808 (7th Cir. 1992), *cert. denied,* 507 U.S. 928 (1993) .........................14

*Washington v. Geo Grp., Inc.,*
  No. 3:17-CV-05806-RJB, 2017 WL 6034369, at *3 (W.D. Wash. Dec. 6, 2017)........ 6, 7, 10, 11

*Watson v. Graves,*
  909 F.2d 1549, 1556 (5th Cir. 1990)...........................................................14, 16

*Whyte v. Suffolk Cty. Sheriff's Dep't,*
  91 Mass. App. Ct. 1124 (2017 WL 2274618) (2017) ..........................................14

*World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.,*
  No. 13-cv-03455-WHO, 2014 WL 1411249, *2 (N.D. Cal. Apr. 11, 2014)............................22

*WSB Electric, Inc. v. Curry,*
  88 F.3d 788, 791 (9th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997) .............................4

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.,*
  135 F.3d 658, 661 (9th Cir. 1998) ...........................................................................3

**Statutes**

8 U.S.C. § 1324a(a) ..................................................................................................5

8 U.S.C. § 1324a(h)(2) ........................................................................................5, 6

8 U.S.C. § 1555(d) ..............................................................................................7, 8

18 U.S.C. § 1589 .....................................................................16, 17, 18, 19

18 U.S.C. § 1594(a) ..............................................................................................16

18 U.S.C. § 1595 ...................................................................................................17

22 U.S.C. § 7102(9) .............................................................................................21

22 U.S.C. §§ 7101, 7102..........................................................................................18

Cal. Bus. & Prof. Code § 17200 ................................................................23, 24

Cal. Civ. Code § 52.5 ....................................................................................21

Cal. Code Regs. tit. 8, § 11010.....................................................................12

Cal. Lab. Code § 515(a) ................................................................................12

Cal. Lab. Code § 1171 ...........................................................................11, 12

Cal. Lab. Code § 1171.5(a) ..........................................................................11

Cal. Lab. Code § 1194 ...........................................................................11, 23

Cal. Lab. Code § 1197.1 ..................................................................................5

Cal. Pen. Code § 236.1 ..................................................................................21

Cal. Penal Code § 2700..................................................................................21

Dep't of Justice, Pub. L. No.95–431 (HR 12934), Oct. 10, 1978, 92 Stat 1021 ..............................8

Dep't of Justice, Pub. L. No. 99-682(I)(II)......................................................5

Dep't of Justice, Pub. L. No. 114–113, December 18, 2015, 129 Stat 2242, 2497..........................8

## Other Authorities

5B Charles Allen Wright & Arthur R. Miller,
    Federal Practice and Procedure § 1357 (3d ed. 2004) ....................................3

Federalism, 64 FR 43255, Executive Order 13132 (1999) ............................8

Performance-Based National Detention Standards (2000),
    Section III.A "Voluntary Work Program" ..........................................20

Performance-Based National Detention Standards (2011),
    Operations Manual ICE ................................................................19

Performance-Based National Detention Standards (Dec. 2016),
    Voluntary Work Program 5.8.V.K................................................9, 10

## Rules

Fed. R. Civ. P.  8(d)(2)..........................................................................22, 23

Fed. R. Civ. P. 12(b)(6)....................................................................2, 10, 16

## I.   INTRODUCTION

This action arises from systematic and unlawful wage theft, unjust enrichment, and forced labor at the nation's deadliest civil immigration detention facility, California's Adelanto Detention Center (the "Adelanto Facility"). The Adelanto Facility is owned and operated for profit by Defendant The GEO Group, Inc. ("GEO"). Although it is contractually required to provide for all essential detention services at the Adelanto Facility, GEO significantly reduces its labor costs and expenses, and increases its already vast profits, by unlawfully forcing and coercing detainees to perform labor at subminimum wages. GEO's policies and practices violate the California Minimum Wage Law ("MWL"), the California Unfair Competition Law, and federal and state Trafficking Victims Protection Acts, which prohibit forced labor.

## II.   BACKGROUND

Plaintiff Novoa was detained at the Adelanto Facility from June 2012 through February 2015.[1] During that period, he performed work for GEO and was not paid the state minimum wage for the work he has performed.[2] As a janitor, Plaintiff worked in a five-person crew cleaning windows, floors, showers, bathrooms, and communal areas in the Facility.[3] He worked four-hour shifts, up to seven days per week, and used cleaning supplies and equipment provided by GEO.[4]  Plaintiff also worked as a barber, providing haircutting services to other detainees.[5] He worked up to 10 hours per day, seven days per week, and used barber supplies and equipment provided by GEO.[6] In return for his labor, Plaintiff was paid  $1 per day, regardless of the number of hours he worked.[7]

---

[1] ECF No. 1 at ¶ 54.
[2] *Id.* at ¶ 55.
[3] *Id.* at ¶ 56.
[4] *Id.*
[5] *Id.* at ¶ 57.
[6] *Id.*
[7] *Id.* at ¶ 58.

As alleged in the Complaint, GEO maintains corporate policies and uniform practices at the Adelanto Facility aimed at obtaining free or nearly free detainee labor and services in two ways. First, GEO threatens detainees with physical restraint, serious harm, and abuse of law or legal process if they refuse to provide their labor, organize a work stoppage, or participate in a work stoppage.[8] Specifically, GEO threatens detainees who refuse to work with disciplinary segregation or solitary confinement, cutting off communication and visitation with family, reporting their actions to the United States Immigration and Customs Enforcement ("ICE"), or referring them for criminal prosecution.[9] These abusive practices and threats of abuse ensure that detainees will continue working for subminimum wages.[10] As alleged in the Complaint, GEO officers at the Adelanto Facility threatened to put Plaintiff in disciplinary segregation, *i.e.*, solitary confinement, if he stopped working or encouraged other detainees to stop working.[11]

Second, GEO maintains a corporate policy and uniform practice at the Adelanto Facility of withholding daily necessities from detainees, thereby forcing them to work for subminimum wages in order to buy those daily necessities for themselves to avoid serious malnutrition, unsanitary living quarters, extreme isolation, and unhygienic conditions of confinement.[12] As alleged in the Complaint, Plaintiff spent his wages on food, bottled water, and hygiene products from the Adelanto Facility commissary, among other necessities.[13] In essence, GEO runs a "company store."

### III.    STANDARD OF REVIEW

On review of GEO's 12(b)(6) motion, the Court's task "is necessarily a limited one," concerned with "only whether the complaint states a claim upon which relief can be granted," and not whether

---

[8] *Id.* at ¶ 102.
[9] *Id.* at ¶ 7.
[10] *Id.*
[11] *Id.* at ¶ 60.
[12] *Id.* at ¶ 102.
[13] *Id.* at ¶ 59.

2

Plaintiff will ultimately prevail on the merits.[14] In making this determination, the Court must accept all well-pleaded allegations of material fact as true, and draw all reasonable inferences in favor of Plaintiff.[15] Plaintiff need not plead a specific legal theory in his complaint, so long as GEO "receives notice as to what is at issue in the lawsuit."[16] Courts "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions."[17] Thus, the Court must deny a motion to dismiss where, as here, the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18]

## IV.    PLAINTIFF PLEADS VIOLATIONS OF THE CALIFORNIA MINIMUM WAGE LAW.

### A.    Federal Law does not Preempt the California Minimum Wage Law.

Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, or (3) obstacle/conflict preemption. But "[r]egardless of the type of preemption involved—express, field or conflict—the purpose of Congress is the ultimate touchstone of pre-emption analysis."[19] The preemption analysis "starts with the basic assumption that Congress did not intend to displace state law."[20] The party seeking to invalidate a state law based on preemption bears the considerable burden of overcoming this starting presumption, which applies in "all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied."[21] Under

---

[14] *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1100 (9th Cir. 2010) *cert. denied*, 563 U.S. 1002 (2011) (internal quotations omitted).

[15] *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

[16] *Elec. Constr. & Maint.. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985).

[17] *Id.* at 623 (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[19] *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016).

[20] *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

[21] *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotations and citations omitted).

this design, the historic police powers of the States are not superseded by federal law unless that was the clear and manifest purpose of Congress.

Labor standards, including the regulation of wages, are a "field which the States have traditionally occupied."[22] In fact, Congress has never enacted a comprehensive legislative scheme governing labor law, or expressed a clear and manifest purpose to do so.[23] Consequently, "[p]reemption of employment standards within the traditional power of the State should not be lightly inferred."[24]

Here, GEO does not acknowledge that the presumption against preemptions exists, let alone overcome it. Instead, GEO invites the Court to find that the *absence* of a Congressional detainee minimum wage serves as the basis for preemption. In so doing, the corporation urges this Court to ignore both the presumption against preemption of traditional state police powers *and* the requirement that preemption may only exist where it was the clear and manifest purpose of Congress.[25] For the reasons that follow, the Court should decline GEO's invitation to create a new rule of law.

### 1. The Minimum Wage Law is not expressly preempted.

Express preemption applies where Congress explicitly states its intent to preempt state law in the language of a statute.[26] In such cases, the scope of the preemption is determined by examining congressional intent, beginning with the legislative text, "which necessarily contains the best evidence of Congress' preemptive intent."[27] Courts also consider the "statutory framework," as well as the "structure and purpose of the statute as a whole."[28] "[W]hen the text of a pre-emption clause is

---

[22] *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 21 (1987) ("[L]abor standards fall[ ] within the traditional police power of the State."); *see also WSB Electric, Inc. v. Curry,* 88 F.3d 788, 791 (9th Cir. 1996), *cert. denied,* 519 U.S. 1109 (1997).
[23] *Arizona v. U.S.,* 567 U.S. 387,400 (2012) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947).
[24] *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252 (1994) (internal quotation omitted).
[25] *Arizona,* 567 U.S. at 400 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)).
[26] *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992).
[27] *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664 (1993).
[28] *Medtronic,* 518 U.S. at 486.

4

susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors preemption."[29]

GEO argues that the Immigration Reform and Control Act (IRCA) expressly preempts the California Minimum Wage Law. Through IRCA, Congress created "a comprehensive scheme prohibiting the employment of illegal aliens in the United States."[30] The only preemption provision under IRCA, 8 U.S.C. § 1324a(h)(2), prevents state and local governments from "imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ . . . unauthorized aliens."[31] Put differently, states cannot penalize employers for employing unauthorized aliens. But IRCA is silent as to its preemptive effect on any other state or local laws, including state minimum wage laws.

IRCA's language, context, and purpose present no evidence that Congress intended the preemption clause to supersede a state wage and hour regulation like the California Minimum Wage Law.[32] The MWL carries neither civil nor criminal sanctions relating to the employment of undocumented immigrants.[33] Instead, it provides a remedy for employees, without regard to immigration status, to recover monetary damages from employers who fail to pay the State's minimum wage.[34] In fact, a worker's immigration status is irrelevant for purposes of enforcing California labor and employment laws.[35]

---

[29] *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008) (internal quotations and citations omitted).
[30] *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002); 8 U.S.C. § 1324a(a).
[31] 8 U.S.C. § 1324a(h)(2).
[32] *See* H.R. Rep. No. 99-682(I), at 58 (1986) ("penalties contained in this legislation are intended to specifically preempt any state or local laws providing civil fines and/or criminal sanctions on the hiring, recruitment, or referral of undocumented [noncitizens]; *Id.* at 99-682(II) at 8-9 (noting nothing in IRCA is intended "to limit the powers of State or Federal labor standards agencies . . . to remedy unfair practices committed against undocumented employees").
[33] *See* Cal. Lab. Code § 1197.1 (providing civil penalties for minimum wage violations).
[34] *Id.*
[35] *See Salas v. Sierra Chem. Co.*, 327 P.3d 797, 804 (Cal. 2014).

Because the MWL is not a "sanction," the plain language of IRCA's express preemption clause does not apply. In fact, courts routinely hold that Section 1324a(h)(2) does not preempt—expressly or impliedly—law applying labor protections to all persons, regardless of immigration status.[36]  In light of the plain language and intent of Section 1324a(h)(2) and the absence of any authority to the contrary, GEO's express preemption defense fails.

### 2.   The Minimum Wage Law is not field preempted.

GEO next argues that through IRCA, Congress created a pervasive framework of regulation intended to displace state law. But this argument fails, as it did in *Washington v. GEO*, because Congress has not chosen to occupy the field of detainee wages.[37]  To the contrary, the federal agency action upon with GEO relies lacks *any* of the prerequisites for regulatory preemption. Moreover, the language of GEO's contract with ICE specifically contemplates that state and local law will govern its performance, ruling out an exclusive federal scheme.

"States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance."[38] However, "merely because the federal provisions [a]re sufficiently comprehensive to meet the need identified by Congress d[oes] not mean that States and localities [a]re barred from identifying additional needs or imposing further requirements in the field."[39] "To infer pre-emption whenever an agency deals with a problem

---

[36] *See id.* at 805-06 (holding IRCA does preempt—expressly or impliedly—California law applying labor protections to all persons regardless of immigration status); *Reyes v. Van Elk, Ltd.*, 148 Cal. App. 4th 604, 616 (2007) (holding that "the IRCA does not expressly preempt state wage laws"); *Washington v. Geo Grp., Inc.*, No. 3:17-CV-05806-RJB, 2017 WL 6034369, at *3 (W.D. Wash. Dec. 6, 2017) ("Section 1324a(h)(2) does not preempt the State minimum wage provision."); *Chao Chen v. Geo Grp., Inc.*, No. 3:17-CV-05769-RJB, 2017 WL 6034365, at *3 (W.D. Wash. Dec. 6, 2017) (same).

[37] *Washington v. Geo Grp., Inc.*, No. 3:17-CV-05806-RJB, 2017 WL 6034369 (W.D. Wash. Dec. 6, 2017). *Washington* was consolidated with *Chao Chen v. Geo Grp., Inc.*, No. 3:17-CV-05769-RJB (W.D. Wash). Like Mr. Novoa in the present action, the plaintiff in *Chen* brought a private wage claim on behalf of a class of immigrant detainees at a detention center owned and operated by GEO.

[38] *Arizona v. U.S.*, 567 U.S. 387, 399 (2012).

[39] *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 717 (1985).

6

comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive."[40] "Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence."[41]

In *Arizona*, the Supreme Court described the elements of a federal scheme so pervasive to yield the conclusion Congress occupied the field of noncitizen registration.[42] There, federal statutory directives "provided a full set of standards governing alien registration, including the punishment for non-compliance."[43] This level of cohesion at the federal statutory level "reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards."[44] According to GEO, *Arizona* "reflects a congressional decision to foreclose any state regulation in the area" of immigration detention.[45] But, as the *Washington* court found, "*Arizona* nowhere identified uniformity of detention programs as a dominant federal interest."[46] Further:

> [GEO's] argument further misses the mark by defining the pertinent area of regulation as detention programs. Recent Ninth Circuit precedent has emphasized 'the importance of delineating the pertinent area of regulation with specificity before proceeding with the field preemption inquiry.' Here, the pertinent area of regulation for examination is detainee wages."[47]

The most to be gleaned about congressional intent for a framework regulating detainee wages at the expense of State law can be found in 8 U.S.C. § 1555(d). Section 1555(d) authorizes congressional appropriations for "payment of allowances [to detainees] . . . for work performed," but payment is limited to "such rate <u>as may be specified from time to time in the appropriation Act</u> involved." Under this section, Congress arguably speaks to detainee wages when Congress appropriates payment of

---

[40] *Id.*
[41] *Id.* (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)).
[42] *Arizona*, 567 U.S. at 401.
[43] *Id.*
[44] *Id.* (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 249 (1984)).
[45] ECF No. 20-1 at 16-17.
[46] *Washington*, 2017 WL 6034369, at *4 (citing *Arizona*, 567 U.S. at 402–03).
[47] *Id.* (citing *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 734 (9th Cir. 2016)).

allowances to detainees for work performed. However, although § 1555(d) is still in effect, Congress has not specified any rate for detainee work since fiscal year 1979. At that time, Congress appropriated funds for "payment of allowances (at a rate not in excess of $1 per day) . . . for work performed."[48]  At least since fiscal year 1979, Congress has abandoned direct appropriations for payment of allowances, despite its awareness of how to do so.[49] From the text of § 1555(d), GEO has not shown that Congress intended to preempt state law regarding detainee wages.

GEO has offered no explanation for the congressional silence since 1979, other than to make general representations about congressional delegation of authority to ICE to create a comprehensive regulatory scheme, *e.g.*, through the Voluntary Work Program. But the Work Program  is an ICE policy with no preemptive force at law. If ICE intended the Work Program to preempt state law on the issue of detainee wages, ICE would need to follow at least two sets of requirements.

First, like all federal agencies, ICE is subject to Executive Order 13132, which requires agencies to follow specific rules when intending to preempt state law through agency policy.[50] Second, for agency policy to have the force of law, agency rule-making processes must also approach at least the spirit of Administrative Procedure Act (APA) formalities.[51]  GEO has made no showing that ICE made efforts to observe either set of requirements when creating the Work Program. Further, GEO has presented no affirmative statement by ICE against which it could judge the "thoroughness, consistency, and persuasiveness" of a field preemption claim. As a result, ICE policy should not be viewed as a comprehensive regulatory scheme with the legal force to preempt state law.

---

[48] PL 95–431 (HR 12934), PL 95–431, Oct. 10, 1978, 92 Stat 1021 (emphasis added).
[49] *See, e.g.*, Consolidated Appropriations Act, 2016, PL 114–113, December 18, 2015, 129 Stat 2242, 2497.
[50] Federalism, 64 FR 43255, E.O. 13132 (1999).
[51] *See United States v. Mead*, 533 U.S. 218 (2001).

8

Instead, all available evidence suggests that ICE policy does *not* preempt state law. ICE requires Work Program participants to be paid at "*at least* $1 per day."[52] This rate constitutes a floor, not a ceiling.[53]  The Performance-Based National Detention Standards ("PBNDS") allow contractors to pay detainees more, and GEO does so at several of its other ICE detention facilities.[54]

Further, GEO's Adelanto Facility contract with ICE is inconsistent with the existence of a federal regulatory scheme that is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."[55] The contract contains no provision preempting or supplanting state or local laws or labor standards. Taken together, the PBNDS and Adelanto Facility contract provide no evidence of a congressional or agency decision to foreclose any state regulation in the area. Nothing in federal law preempts GEO's compliance with the California Minimum Wage Law; to the contrary, the language of the ICE contract *requires* it.  GEO has not shown that the California minimum wage provision is field preempted.

### 3.  The Minimum Wage Law is not conflict/obstacle preempted.

Conflict preemption exists "where it is impossible for a private party to comply with both state and federal requirements," and obstacle preemption exists "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[56] Tension between federal and state law is not enough to establish conflict preemption."[57] Nor can a "hypothetical conflict" serve as a sufficient basis for preemption.[58]  Obstacle preemption occurs only in "those situations where conflicts *necessarily* arise."[59]

---

[52] *Available at* https://www.ice.gov/doclib/detention-standards/2011/5-8.pdf (last visited Feb. 25, 2018).
[53] *Id.*
[54] Voluntary Work Program 5.8.V.K, ICE Performance-Based National Detention Standards at 407 (Dec. 2016).
[55] *Rice*, 331 U.S. at 230.
[56] *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).
[57] *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007).
[58] *Total TV v. Palmer Communications, Inc.*, 69 F.3d 298, 304 (9th Cir. 1995).
[59] *Goldstein v. California*, 412 U.S. 546, 554 (1973).

9

GEO argues that the California's minimum wage provision is preempted by both conflict and obstacle preemption.[60] According to GEO, IRCA's prohibition on the hiring of unauthorized aliens and California's minimum wage provision, which would require GEO to treat detainee-workers as "employees" deserving the State minimum wage, are in conflict, thus making it impossible for GEO to comply with both.

At the outset, GEO's conflict/obstacle preemption argument is premature because it relies on factual determinations about the status of detainees. GEO has challenged the pleadings under Fed. R. Civ. P. 12(b)(6), which means that the Court must resolve the motion based on allegations in the Complaint.[61]

But even if the argument was ripe, it would fail because Plaintiff's recovery from GEO does not stand as an *actual* obstacle to the full execution of any purpose or objective Congress. GEO can comply with IRCA and the California wage law while still administering the Work Program. A significant population of detainees at the Adelanto Facility are lawful permanent residents, like Plaintiff, or otherwise hold employment authorization. The Work Program sets no minimum number of participants.[62] Thus, GEO could comply with IRCA, perform under its contract by administering the Work Program, and abide by the minimum wage law. GEO's claim that detainees could not be GEO's employees as a matter of law is merely a "hypothetical conflict" that will not "necessarily rise."[63]

GEO's argument fails for the additional reason that paying Plaintiff and the Class Members the minimum wage would not frustrate any other federal purpose. The goal of the Work Program is to ensure detainees are paid "at least $1 per day." The goal of IRCA is to ensure employers do not depress

---

[60] ECF No. 20-1 at 18.
[61] *See Washington*, 2017 WL 6034369, at *5 ("In sum, the conflict/obstacle preemption issues may become ripe at summary judgment or at trial, but at present factual issues abound that preclude a decision based on the pleadings, and before discovery.").
[62] U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards 2011, § 5.8.
[63] *Total TV*, 69 F.3d at 304; *Goldstein*, 412 U.S. at 554.

wages and exploit vulnerable workers by skirting the employment verification requirements. Both these purposes are served, rather than frustrated, by fully compensating work-authorized detainees in accordance with "all applicable federal, state, and local laws," as required by GEO's contract.

In *Washington v. GEO*, the Western District of Washington considered similar conflict/obstacle preemption arguments from GEO.[64] But "after peeling back the rhetoric and examining the actual statutes and regulations, on the issue of detainee wages, an area of traditional state prerogative, the Court cannot find evidence of congressional intent—either express or implied—sufficient to overcome the presumption against preemption."[65] This case demands the same result.  GEO has not shown that the California minimum wage provision is preempted by federal law, and accordingly dismissal is not appropriate.

**B.      Plaintiff States a Claim for Relief under the California Minimum Wage Law.**

**1.   The express terms of the Minimum Wage Law confer coverage to the putative class.**

The California Minimum Wage Law  contains no exception for undocumented workers, or for detainees put to work for corporations in private, for-profit facilities like the Adelanto Facility. By its terms, the California Labor Code provisions governing wages, hours, and working conditions broadly "apply to and include men, women and minors employed in *any* occupation, trade, or industry, whether compensation is measured by time, piece, or otherwise," with certain enumerated exceptions.[66] "[P]ast decisions additionally teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the

---

[64] *Washington*, 2017 WL 6034369, at *5.
[65] *Id.*
[66] Cal. Lab. Code § 1171 (emphasis added); *see also* Cal. Lab. Code § 1171.5(a) ("*All* protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to *all* individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.") (emphasis added); Cal. Lab. Code § 1194 ("*[A]ny* employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover…") (emphasis added).

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS                                        5:17-cv-02514-JGB-SHKx

statutory provisions are to be liberally construed with an eye to promoting such protection."[67] Where the statute is clear, the 'plain meaning' rule applies. The Legislature is presumed to have meant what it said, and the plain meaning of the language governs."[68] Here, the Legislature chose expansive language, *i.e.*, "any" and "all," and its meaning is clear.

Where the California Legislature chose to abrogate the reach of this broad language, it did so expressly: California law specifically enumerates categories of employees who are exempt from California wage and hour laws, and further provides circumstances in which subminimum wages are lawful.[69] Civil immigration detainees are absent from these carve-outs. And, under California law, exemptions from statutory mandatory minimum wage and overtime provisions are narrowly construed.[70] GEO cannot read into the California Labor Code carve-out language that does not exist.[71]

Absent an express definition of "employee," the common law test of employment applies. The essence of the common law test is the "control of details.'"[72] This inquiry includes whether the principal has the right to control the manner and means by which the worker accomplishes the work.[73] Here, Plaintiff provided services for GEO, and GEO controlled the manner and means by which Plaintiff accomplished that work.[74] For the purposes of a motion to dismiss, these factual allegations are accepted as true and construed in the light most favorable to Plaintiff.[75]  As a result, Plaintiff has alleged facts sufficient to state a plausible claim for relief under the express terms of the California Minimum Wage Law.

---

[67] *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999).
[68] *Quackenbush v. Mission Ins. Co.*, 46 Cal. App. 4th 458, 466 (1996) (internal citations omitted).
[69] *See* Cal. Lab. Code § 1171, § 515(a); Cal. Code Regs. tit. 8, § 11010 *et seq.*
[70] *Ramirez*, 20 Cal. 4th at 794.
[71] *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 545 (2007).
[72] *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 10 (2007).
[73] *Id.*
[74] *See* ECF No. 1 at ¶¶ 38, 41-63.
[75] *See Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

12

**2. Plaintiff does not seek relief under FLSA, but Ninth Circuit precedent does not prohibit him from doing so.**

GEO urges the Court to disregard the plain language of the MWL and California's rules of construction favoring coverage for workers in favor of dubious federal authority interpreting the Fair Labor Standards Act ("FLSA") to hold otherwise. According to GEO, dismissal is appropriate because "detainees are not entitled to a minimum wage under the FLSA."[76]

To be clear, Plaintiff does not seek relief under the FLSA. But even if he did, Ninth Circuit FLSA precedent demonstrates he is as an "employee" of GEO. The Minimum Wage Law and FLSA may be read *in pari materia*, but they are not identical and California courts are not bound by federal authority interpreting FLSA.[77] Indeed, FLSA does not preempt state law and "explicitly permits greater employee protection under state law."[78] Thus, federal authority is not necessarily probative of coverage under state law.

This is especially true here, as GEO seeks to sway the Court with non-binding FLSA-based authority from outside jurisdictions, while ignoring Ninth Circuit precedent that would recognize a cause of action for civil immigration detainees seeking wage damages from a private contractor under FLSA. For instance, GEO relies on the Fifth Circuit's opinion in *Alvarado Guevara v. I.N.S.*,[79] which turned on policy concerns rooted in the distinct characteristics of government employment, which status the detainees there sought.[80] Here, in contrast, Plaintiff alleges employment not by the government, but by a private, for-profit corporation. Moreover, *Alvarado* relied upon FLSA definitions

---

[76] ECF No. 20-1 at 9.

[77] *In re United Parcel Service Wage and Hour Cases*, 190 Cal. App. 4th 1001, 1009 (2010).

[78] *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 795 (1999). *See also Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 324 (2005) ("A review of our labor statutes reveals a clear legislative intent to protect the minimum wage rights of California employees to a greater extent than federally."); *Aguilar v. Ass'n for Retarded Citizens*, 234 Cal. App. 3d 21, 34 (Ct. App. 1991) ("federal law does not control unless it is more beneficial to employees than the state law.").

[79] *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990).

[80] *Alvarado*, 902 F.2d at 396, n.2.

1    and congressional intent,[81] both of which are immaterial to the instant case brought under the California

2    Minimum Wage Law.[82]

3        Ninth Circuit precedent is clear: the FLSA contains no categorical exclusion for detainee

4    labor.[83]  This is in recognition of the "'striking breadth' of the FLSA's definition of 'employee,'" and

5    the Supreme Court's pronouncement "that that term reaches some parties who may not traditionally

6    be thought of as employees at all."[84]

7

8        In *Hale*, the leading Ninth Circuit case on FLSA and inmate labor, the court held that certain

9    Arizona state prisoners were not "employees" under FLSA, but left open the possibility of coverage

10   under different factual circumstances.[85] The prisoners in *Hale* were held in a state-run facility and

11   required by law to perform "hard labor" as part of their prison term.[86] The court held that the usual

12   standard for determining "employee" status—the economic reality test described in *Bonnette v. Cal.*

13   *Health & Welfare Agency*[87]—was inapplicable "in the case of prisoners who work for a prison-structured

14   [labor] program **because they have to**."[88] Under those circumstance, the court held, "the economic

15   reality of the relationship between the worker and the entity for which work was performed lies in the

16

17

18   ───────────────

19   [81] *Id.* at 396.
     [82] GEO also relies on *Whyte v. Suffolk Cty. Sheriff's Dep't*, 91 Mass. App. Ct. 1124 (2017 WL 2274618) (2017), an

20   unpublished opinion from an intermediate court in Massachusetts holding that a civil immigration detainee was not an
     employee under the Massachusetts Minimum Fair Wage Law. With little analysis, the *Whyte* court found that civil
     immigration detainees are akin to criminal inmates by analogizing to *Alvarado*. But in *Whyte*, unlike here, the plaintiff

21   did not claim that inmates were employees, and the court dismissed his action without further analysis.
     [83] *Hale v. State of Ariz.*, 993 F.2d 1387, 1393 (9th Cir. 1993) ("[W]e we cannot agree that the FLSA categorically excludes

22   all labor of any inmate."); *see Watson v. Graves*, 909 F.2d 1549, 1556 (5th Cir. 1990) (finding FLSA coverage for prisoners
     performing work for third-party); *Carter v. Dutchess Cmty. College*, 735 F.2d 8, 12 (2d Cir. 1984) (same); *see also Vanskike v.*

23   *Peters*, 974 F.2d 806, 808 (7th Cir. 1992), *cert. denied*, 507 U.S. 928 (1993) ("We do not question the conclusions of *Carter*,
     *Watson* and *Hale* that prisoners are not categorically excluded from the FLSA's coverage simply because they are

24   prisoners.").
     [84] For example, the Ninth Circuit has held that a prisoner working in a prison library can be an employee of the prison for
     purposes of Title VII. *Baker v. McNeil Island Corr. Ctr.*, 859 F.2d 124, 128 (9th Cir. 1988).

25   [85] *Hale*, 993 F.2d at 1389-90.
     [86] *Id.*

26   [87] *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983).
     [88] *Hale*, 993 F.2d at 1394 (emphasis added).

14

relationship between prison and prisoner. It is penological, not pecuniary."[89] In other words, "the economic reality is that [prisoner] labor belong[s] to the institution."[90]

The Ninth Circuit later held that "an inmate's legal obligation to work" is the "*one* factor that triggers application of the *Hale* rule," diverging from the standard "economic reality" test.[91] Accordingly, absent a "legal obligation to work" in a purely "penological" setting, the economic reality test still applies, even in a prisoner/detainee context.

These principles came together in favor of FLSA coverage before another division of the United States District Court for the Central District of California in *Gonzales v. Mayberg*.[92] There, the plaintiff was committed to a state-run facility as a Sexually Violent Predator, where he performed work in the facility's dining room for subminimum wages.[93] Analyzing *Hale,* the court found that the plaintiff had stated a plausible claim under FLSA for wages owed because his confinement was (1) civil in nature and (2) because the work he performed was not required.[94]

Here, Plaintiff is an  "employee" for FLSA purposes under Ninth Circuit precedent because he is a civil detainee, and GEO could not lawfully require him to perform labor in the Work Program. First, the putative class consists of civil immigration detainees only, so there is no "penological" aspect to their detention.[95]  Second, GEO itself contends that the detainees have no legal obligation to work, and the work they perform is voluntary in nature. Finally, because the detainees are not required to

---

[89] *Id.* at 1395.
[90] *Id.*
[91] *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) (emphasis in original); *see Coupar v. U.S. Dep't of Labor*, 105 F.3d 1263, 1265 (9th Cir. 1997) (holding that an inmate's obligation to work pursuant to a prison work program "brings him within the rule of *Hale.*").
[92] *Gonzales v. Mayberg*, 2009 WL 2382686, at *4 (C.D. Cal. July 31, 2009) (Marshall, J.), *aff'd sub nom. Gonzalez v. Mayberg*, 398 Fed. Appx. 318 (9th Cir. 2010).
[93] *Id.* at *1.
[94] *Id.* at *3-4. The court ultimately dismissed the plaintiff's FLSA claim, however, because it found no express sovereign immunity waiver permitting his claims to proceed against state actors.
[95] *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007), *vacated on other grounds*, 556 U.S. 1256 (2009); *Fong Yue Ting v. United States*, 149 U.S. 698, 730 (U.S. 1893) ("The order of deportation is not a punishment for crime.").

work, the labor they perform and the money they earn belongs to them, not GEO.[96]  Detainees use the money they earn to pay legal fees, support their families outside of the Adelanto Facility, and buy items to improve their standard of living and general well-being within the detention facility.[97] In sum, under Ninth Circuit precedent, Plaintiff states a plausible claim as an "employee" under FLSA, and by analogy, the California Minimum Wage Law.

## V.    PLAINTIFF STATES A CLAIM UNDER THE FEDERAL TVPA

### A.  The TVPA's Forced Labor Provision, 18 U.S.C. § 1589, Applies to GEO.

GEO claims that it is somehow exempt from the requirements of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589(a) and 1594(a). Specifically, GEO contends Congress did not intend for the TVPA to prohibit a private corporation operating a for-profit immigration detention center from requiring immigration detainees to work in the facility holding them.[98] But GEO ignores the plain language of the statute, the legal and historical context of the TVPA, and federal authority interpreting it.

In construing the federal statute at issue, as in any case involving statutory interpretation, the appropriate starting point is the plain language of the law.[99] Here, the plain language of the forced labor statute is clear: "<u>Whoever</u> knowingly . . . obtains [ ] labor or services . . . by means of physical restraint . . . threats of serious harm . . . or threatened abuse of legal process . . . shall be punished."[100]  There

---

[96] *See Watson,* 909 F.2d at 1556 (finding inmates to be "employees" under FLSA because they were not required to work as part of their sentences and because the labor they performed for a third party did not "belong" to the jail); *see also Carter v. Dutchess Cmty. College,* 735 F.2d 8, 13-14 (2d Cir. 1984) (prisoner working as a teaching assistant at community college which paid him wages directly could be FLSA "employee").

[97] GEO cites *Menocal v. GEO Grp., Inc.,* 113 F. Supp. 3d 1125 (D. Colo. 2015) for the proposition that civil immigration detainees do not require a minimum wage because the Facility already provides for their basic necessities. Plaintiff has alleged that he must pay for various items such as more and better food, personal hygiene items, and medical supplies. Whether GEO met Plaintiff's basic needs is a question of fact not suitable for disposition on a Rule 12(b)(6) motion. *See Gamble v. Minn. State-Operated Servs.,* No. 16-2720 (JRT/KMM), 2017 WL 4325702, at *3 (D. Minn. Sept. 28, 2017).

[98] ECF No 20-1 at 29.

[99] *Jimenez v. Quarterman,* 555 U.S. 113, 118 (2009) ("statutory interpretation beings with the plain language of the statute").

[100] 18 U.S.C. § 1589(a) (emphasis added).

16

are no exceptions, exclusions, or exemptions that would exclude GEO from liability for violating the terms of the law. Indeed, the very first word of 18 U.S.C. §§ 1589(a), (b), and (d) is "whoever."

Similarly, 18 U.S.C. § 1595 affords individuals a civil remedy "against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in [a prohibited act])."[101] Contrary to GEO's assertion that the forced labor statute only protects victims of more commonly recognized forms of human trafficking, the language of the statute determines its scope. Civil suits and criminal actions have gone forward against those who procured labor or services using forced labor in fields that would not normally be associated with trafficking.[102]

Indeed, as another section of this district court has observed, "the TVPA not only protects victims from the most heinous human trafficking crimes, but also various additional types of fraud and extortion leading to forced labor."[103] For instance, the threat of deportation constitutes "abuse of legal process" within the meaning of 18 U.S.C. § 1589, since the objective is to intimidate or coerce the victim into forced labor.[104]

Even if the plain text of the forced labor provision of the TVPA were somehow ambiguous, the specific history surrounding its enactment demonstrates that Congress intended this prohibition to be enforced expansively. Congress added the forced labor statute to abrogate the Supreme Court's decision in *United States v. Kozminski*, which construed "involuntary servitude" narrowly to include only "compulsory labor akin to African slavery, which in practical operation would tend to produce like

---

[101] 18 U.S.C. § 1595 (emphasis added).
[102] *See, e.g., Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1143-46 (C.D. Cal. 2011) (Guilford, J.) (denying motion to dismiss forced labor claim on behalf of a class of Filipino teachers recruited to the United States); *see also United States v. Kaufman*, 546 F.3d 1242, 1260 (10th Cir. 2008) (rejecting defendants' claim that forcing mentally handicapped residents of a ranch to perform sex acts was not what Congress intended to prohibit when it limited the forced labor statute to procuring "labor" and "services").
[103] *Nunag-Tanedo*, 790 F. Supp. 2d at 1143-46.
[104] *Id.* at 1146.

17

undesirable results."[105] But in enacting § 1589, Congress significantly broadened the scope of federal protections to cover "severe forms of worker exploitation that do not rise to the level of involuntary servitude as defined in *Kozminski*."[106] Indeed, when it passed in 2000, the TVPA also included new government assistance for victims of trafficking, new crimes for trafficking and document servitude, and new, clearer definitions of sex trafficking and labor trafficking.[107] Nothing in the legislative record indicates that Congress intended to limit the scope of the forced labor prohibition. To the contrary, expansive coverage that includes "whoever" engages in forced labor is more in keeping with the letter and spirit of the forced labor provision and the TVPA within which Congress placed it.

**B.  Plaintiff has no "Civic Duty" to Enrich a Private Corporation by Performing Work not Contemplated under ICE's Detention Standards.**

A private prison contractor forcing detainees, under threat of solitary confinement and other serious physical and legal harm, to perform tasks the federal government is paying the contractor to do itself is not immune from liability under the forced labor statute. Admitting that no authority exists exempting a private corporation  from the forced labor statute, GEO offers inapposite and superseded cases to argue Plaintiff has failed to state a claim.

Specifically, GEO relies heavily on *Channer v. Hall*,[108] an involuntary servitude case from the Fifth Circuit. In *Channer*, a *pro se* detainee of the Immigration and Naturalization Service (INS) – ICE's predecessor agency – brought action against the warden of a Bureau of Prisons facility and other federal officials for allegedly failing to deport him expeditiously and reducing him to involuntary servitude by compelling him to work.[109] As GEO admits, *Channer* and *Kozminski* both predate Congress's enactment of the forced labor statute.[110] When the Fifth Circuit decided *Channer*, the law upon which Plaintiff's

---

[105] *United States v. Kozminski*, 487 U.S. 931, 942 (1988).
[106] *Kaufman*, 546 F.3d at 1261 (10th Cir. 2008) (citation omitted).
[107] *See generally* 22 U.S.C. §§ 7101, 7102.
[108] *Channer v. Hall*, 112 F.3d 214 (5th Cir. 1997).
[109] *Id.*
[110] ECF No. 20-1 at 27.

18

forced labor claim is based simply did not exist. Because Congress's purpose in creating the forced labor statute, 18 U.S.C. § 1589, was to expand the narrow construction in *Kozminski*, GEO's reliance on *Channer* misses the mark. Indeed, as the *Menocal* court observed:

> Both *Kozminski* and *Channer* interpreted the term "involuntary servitude" (in § 1584 and in the Thirteenth Amendment, respectively), whereas § 1589 reaches "whoever . . . obtains the labor or services of a person by . . . threats of physical restraint." The language at issue here is thus broader than the language at issue in *Kozminski* and *Channer*, and intentionally so.[111]

Further, *Channer* does not stand for the proposition that the civic duty exception applies here, because the standard for the permissible scope of "housekeeping" duties an immigration detainee may be forced to perform in *Channer* is broader than the standards subsequently adopted by ICE that govern this case. In *Channer*, the Fifth Circuit characterized "working in Oakdale's Food Services Department" from 4:30 a.m. to 12:30 p.m. each day as a "housekeeping chore."[112]  In reaching this conclusion, the court relied on the Indiana Supreme Court's conclusion that the Thirteenth Amendment's "civic duty" exception allows institutions to force persons confined to mental institutions to fix meals, scrub dishes, do laundry, and clean the building.[113]

By contrast, ICE's Performance-Based National Detention Standards ("PBNDS") set forth a substantially narrower standard for the housekeeping duties that ICE detainees like Plaintiff must perform.[114] According to these standards, the scope of labor that detainees may be required to perform as part of any personal, housekeeping obligation is limited to their immediate living area. On the other

---

[111] *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1132–33 (D. Colo. 2015).

[112] *Channer*, 112 F.3d at 215, 219.

[113] *Id.* at 218-19. The *Channer* panel also relied on the Second Circuit's decision in *Jobson v. Henne*, 355 F.2d 129, 131-32 (1966), which has since been substantially clarified by *McGarry v. Pallito*, 687 F.3d 505, 513 (2d Cir. 2012) (emphasizing footnote 3 in *Jobson*, which cabins the housekeeping exception to chores which are "personally related.").

[114] *See* Operations Manual ICE Performance-Based National Detention Standards (2011), available at http://www.ice.gov/detention-standards/2011.

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS                                          5:17-cv-02514-JGB-SHKx

hand, labor and services such as "[l]iving area clean-up/janitorial" and "area cleaning" are described as work assignments in the 2000 PBNDS Voluntary Work Program.[115]

As Plaintiff has alleged, the Work Program at the Adelanto Facility includes labor and services well outside the personal housekeeping responsibilities imposed by ICE in its PBNDS.[116] But each of these tasks is well *within* the scope of the duties assigned to participants in the Work Program, which cannot be compulsory.[117] Because GEO's contracting partner – ICE – has adopted specific, narrower, and binding standards limiting the permissible scope of detainees' housekeeping chores, GEO's reliance on the broader scope of activities set forth in *Channer* is inapposite.

But even if *Channer*'s civic duty exception to the involuntary servitude prohibition applied here – which it does not – the exception is inapplicable to for-profit, private prison contractors like GEO. As the Supreme Court has repeatedly recognized, private prison corporations like GEO are legally and factually dissimilar from the federal government, even when they perform tasks on its behalf.[118] Unlike the federal-run facility in *Channer*, GEO has a profit motive that informs its staffing and management decisions. The forced labor that Plaintiff alleges in this case occurred not at the urging of the federal government, but rather, at the insistence of GEO—a "firm [that] is systematically organized to perform a major administrative task for profit."[119]   And unlike the detainees in *Channer*, the performance of involuntary labor under the housekeeping exception profits a private corporation, not a government entity.

---

[115] PBNDS 2000, Section III.A "Voluntary Work Program," available at http://www.ice.gov/doclib/dro/detention-standards/pdf/work.pdf.
[116] ECF No. 1 at ¶ 46.
[117] PBNDS 2000, Section III.A "Voluntary Work Program."
[118] *See, e.g., Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (refusing to imply a *Bivens* remedy against employees of GEO); *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) (refusing to imply a *Bivens* remedy against private prison guards); *Richardson v. McKnight*, 521 U.S. 399, 409 (1997) (denying qualified immunity to for-profit private prison guards).
[119] *Richardson*, 521 U.S. at 409.

PLTF.'S OPP. TO DEF.'S MOT. TO DISMISS                                   5:17-cv-02514-JGB-SHKx

This distinction makes a difference.  Under *Channer*, "*the federal government* is entitled to require communal contribution by an INS detainee in the form of housekeeping tasks."[120] But *Channer* has no persuasive value where, as here, the coercive defendant is a private actor, and the coerced labor far exceeds the federal government's own standards.[121]  Because Plaintiff plausibly alleges violations of federal forced labor statute, GEO's motion to dismiss Plaintiff's federal TVPA claim must be denied.

## VI.    PLAINTIFF STATES A CLAIM UNDER THE CALIFORNIA TVPA

California provides trafficking victims with a robust civil remedy. Specifically, the California TVPA, Cal. Civ. Code § 52.5, provides a private cause of action for violations of Cal. Pen. Code § 236.1.[122] Under Section 236.1, "[a] person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking . . ."[123] The California TVPA adopts the definition of "human trafficking" provided in the federal TVPA, codified at 22 U.S.C. § 7102(9).[124]  Like Congress, the California Legislature did not intend to exempt immigrant detainees like Plaintiff and the Class Members from the new protections against forced labor.

According to GEO, the California Legislature could not have intended its TVPA to apply to federal immigration detainees, because the California Penal Code "requires *prisoners in the custody of the California Department of Corrections and Rehabilitation* ("CDCR") to work."[125] But detainees at the Adelanto Facility are neither "prisoners," nor in the custody of the state Department of Corrections. And they are not forced to work by a state agency, but rather by a private, for-profit corporation. Accordingly, the state statues relied upon by GEO are inapposite.

---

[120] 112 F.3d at 119 (emphasis added).
[121] *See Bayh v. Sonnenburg*, 573 N.E.2d 398, 409 (Ind. 1991) *cert. denied*, 502 U.S. 1094 (1992) ("Where the coercive defendant is a private actor, the law on unjust enrichment supports the plaintiffs' argument" to recover back wages for services performed while committed to state mental health facilities).
[122] Cal. Civ. Code § 52.5(a).
[123] Cal. Pen. Code § 236.1.
[124] Cal. Pen. Code § 236.1(g).
[125] ECF No. 20-1 at 29 (citing Cal. Penal Code § 2700) (emphasis added).

21

GEO also contends that the factual allegations in the Complaint are insufficient to state a claim for relief under the California TVPA. In support of this conclusion, GEO cites *Lofthus v. Long Beach Veterans Hosp.*, a civil rights action filed by a *pro se* prisoner asserting "disjointed factual allegations" and claims for false imprisonment and human trafficking.[126] Applying the standard required by the Prison Litigation Reform Act ("PLRA"), the court dismissed the complaint in part because the plaintiff failed to allege any facts giving rise to his claim.[127] The PLRA does not apply to civil immigration detainees.[128] Plaintiff's complaint and the allegations therein are clearly distinguishable from the "disjointed factual allegations" in *Lofthus*.

Accordingly, and for the same reasons stated above with respect to his federal TVPA claim, Plaintiff has adequately alleged GEO's intent to obtain forced labor or services in violation of the California TVPA. GEO's motion to dismiss this claim should be denied.

## VII. PLAINTIFF ADEQUATELY ALLEGES ENTITLEMENT TO EQUITABLE RELIEF UNDER CALIFORNIA LAW

### A. Plaintiff's Unjust Enrichment Claim Seeking Restitution is Neither Duplicative nor Superfluous.

"There is no cause of action in California for unjust enrichment."[129] That said, the Ninth Circuit, applying California law, has held that while "there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution . . . [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution."[130] Relevant here, the Ninth Circuit explained that courts should not dismiss a quasi-contract claim seeking restitution as duplicative or superfluous of other claims, since Rule 8(d)(2) allows parties to plead claims in the

---

[126] *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 911 (C.D. Cal. 2016).
[127] *Id.* at 916.
[128] *Agyeman v. I.N.S.*, 296 F.3d 871, 886 (9th Cir. 2002).
[129] *World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*, No. 13-cv-03455-WHO, 2014 WL 1411249, *2 (N.D. Cal. Apr. 11, 2014).
[130] *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotation marks and citations omitted).

alternative.[131] In short, and as this Court has previously observed, "that Plaintiff seeks equivalent forms of relief for multiple claims does not render [his] other causes of action inadequately pled."[132] "Plaintiff's inclusion of a claim for unjust enrichment does not defeat the equitable relief otherwise available to [him] if [he] were to prevail on [his] other causes of action."[133]

GEO argues that Plaintiff's unjust enrichment claim should be dismissed "because there is no 'fair market value' of his services."[134] GEO's argument fails because it assumes that Plaintiff's recovery in unjust enrichment would be identical to his recovery under the minimum wage claim. To the contrary, California courts have determined that if liability for unjust enrichment is found, the measure of damages is based on a theory of restitution, requiring the disgorgement of the benefit received from defendants.[135] In contrast, the measure of damages for the California minimum wage claim is unpaid minimum wage.[136] There is simply no basis for assuming the fair market value of Plaintiff's labor equates to minimum wage. As a result, Plaintiff's unjust enrichment claim is not duplicative, and should not be dismissed.

### B. By Adequately Alleging that GEO Violated California and Federal Law, Plaintiff States a Claim for Relief under the California Unfair Competition Law.

California's Unfair Competition Law ("UCL"), as set forth in California Business and Professions Code § 17200 *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.[137]  "A UCL action is an equitable action by means of which a plaintiff may recover money . . . through unfair or unlawful business practices."[138]

---

[131] *Id.* at 762-73 (citing Fed. R. Civ. P. 8(d)(2)).
[132] *Evans v. DSW, Inc.*, 2017 WL 7058232, at *7 (C.D. Cal. Sept. 14, 2017) (Bernal, J.).
[133] *Id.*
[134] ECF No. 20-1 at 31.
[135] *Astiana*, 783 F.3d at 762.
[136] Cal. Lab. Code § 1194(a).
[137] *See Barquis v. Merchants Collection Assn.*, 496 P.2d 817 (Cal. 1972).
[138] *Cortez v. Purolator Air Filtration Prod. Co.*, 999 P.2d 706, 712 (Cal. 2000).

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice."[139] UCL claims are broad in scope, and a plaintiff need only prove one of its criteria to be successful in his or her cause of action.[140] Because unfair competition includes any "*unlawful . . . business act or practice*," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable.[141] Therefore, "[v]irtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200."[142] Of particular importance here, the California Supreme Court has held that an employer's unlawful failure to pay wages can be subject to a UCL claim, because "[t]he employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by section 17200."[143]

To adequately plead a UCL claim based on the unlawful prong, a plaintiff must simply allege that the defendant violated some state, federal or local law.[144] Here, Plaintiff alleges that GEO willfully violated, and continues to violate, the "unlawful" prong of the UCL by violating the California Minimum Wage Law, the California TVPA, and the federal TVPA.[145] For the reasons previously discussed, Plaintiff has sufficiently pled those claims. Therefore, Plaintiff has also sufficiently pled a corresponding UCL claim.

## VIII.   CONCLUSION

For the reasons discussed herein, GEO's Motion to Dismiss should be denied in its entirety.


Dated:  March 5, 2018

/s/ Korey A. Nelson

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002

---

[139] Cal. Bus. & Prof. Code § 17200.
[140] *See McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1471 (2006).
[141] *See Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 973 P.2d 527, 560 (Cal. 1999) (emphasis added).
[142] *Ticconi v. Blue Shield of California Life & Health Ins. Co.,* 160 Cal. App. 4th 528, 539 (2008).
[143] *Cortez,* 999 P.2d at 715.
[144] *See Hale v. Sharp Healthcare,* 183 Cal.App.4th 1373, 1383 (2010).
[145] ECF No. 1 at ¶ 90-91.

Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Vanessa Shakib (CA Bar # 287339)
vshakib@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**

25

900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

***Attorneys for Plaintiffs.***

# CERTIFICATE OF SERVICE

On March 5, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ Korey A. Nelson*

Korey A. Nelson (admitted *pro hac vice*)
Louisiana Bar No. 30002
knelson@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765