LESLEY HOLMES (BAR NO. 271903)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
lesley.swanson.holmes@nortonrosefulbright.com

Attorneys for Defendant
**THE GEO GROUP, INC.**

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RAUL NOVOA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | Case No.: 5:17-cv-02514-JGB-SHKx<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT THE GEO GROUP, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>Date: March 26, 2018<br>Time: 9:00 am.<br>Courtroom: 1<br>Judge: The Honorable Jesus G. Bernal<br><br>Complaint Filed: 12/19/17 |

DOCUMENT PREPARED ON RECYCLED PAPER

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ........................................................................................... 1
II. FEDERAL LAW PREEMPTS CALIFORNIA'S MWL HERE ................... 2
    A. The Presumption Against Preemption Does Not Exist In The Context Of Federal Immigration Detention Work ............................... 2
    B. The MWL is Conflict/Obstacle Preempted ........................................... 4
III. NOVOA STATES NO CLAIM THAT FEDERAL IMMIGRATION DETAINEES ARE ENTITLED TO A STATE MINIMUM WAGE ............ 6
IV. THE TVPA DOES NOT COVER ROUTINE HOUSEKEEPING TASKS WHILE IN LAWFUL IMMIGRATION DETENTION ................... 8
V. NOVOA STATES NO CLAIM UNDER THE CALIFORNIA TVPA ........ 10
VI. NOVOA'S DERIVATIVE CLAIMS MUST BE DISMISSED ................... 11
VII. CONCLUSION ............................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado Guevara v. I.N.S.*,
902 F.2d 394 (5th Cir. 1990) ............................................................................. 4, 8

*Arizona v. United States*,
567 U.S. 387 (2012) ........................................................................................... 2, 3

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) ................................................................................ 11

*Bennett v. Frank*,
395 F.3d 409 (7th Cir. 2005) .................................................................................. 7

*Brooks v. Donovan*,
699 F.2d 1010 (9th Cir. 1983) ................................................................................ 9

*Evans v. DSW, Inc.*,
2017 WL 7058232 (C.D. Cal. Sept. 14, 2017) ..................................................... 11

*Gerard v. Mitchell Systems*,
No. CV 14-4999 DSF (SHX) 2016 WL 4479987 (C.D. Cal. Aug. 22, 2016) ............................................................................................................. 6

*Gilbreath v. Cutter Biological, Inc.*,
931 F.2d 1320 (9th Cir. 1991) ................................................................................ 7

*Gonzales v. Mayberg*, No. CV-07-6248 CBM (MLG), 2009 WL 2382686 (C.D. Cal. July 31, 2009) ................................................................. 7, 8

*Goodyear Atomic Corp. v. Miller*,
486 U.S. 174 (1988) ............................................................................................ 10

*Guevara v. I.N.S.*,
1992 WL 1029 (Fed. Cir. Jan. 6, 1992) ............................................................ 4, 7

*Hale v State of Arizona*,
967 F.2d 1356 (9th Cir. 1992) ............................................................................ 6, 7

*Headley v. Church of Scientology Int'l*,
687 F.3d 1173 (9th Cir. 2012) ................................................................................ 9

*Lofthus v. Long Beach Veterans Hosp.*,
214 F. Supp. 3d 908 (C.D. Cal. 2016) ................................................................. 11

*Maglica v. Maglica*,
66 Cal. App. 4th 442 (1998) ................................................................................ 12

*Malat v. Riddell*,
383 U.S. 569 (1966) .............................................................................................. 9

*Menocal v. The GEO Group, Inc.*,
   113 F. Supp. 3d 1125 (D. Colo. 2017) .................................................................. 4, 8

*Miles v. Apex Marine Corp.*,
   498 U.S. 19 (1990) ...................................................................................................... 10

*North Dakota v. United States*,
   495 U.S. 423 (1990) ..................................................................................................... 3

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
   790 F. Supp. 2d 1134 (C.D. Cal. 2011) ................................................................. 10

*Rhynes v. Stryker Corp.*,
   2011 WL 2149095 (N.D. Cal. May 31, 2011) ..................................................... 12

*Salas v. Sierra Chemical Co.*,
   59 Cal. 4th 407 (2014) ................................................................................................ 5

*United States v. Bradley*,
   390 F.3d 145 (1st Cir. 2004), *vacated on other grounds*, 545 U.S.
   1101 (1st Cir. 2005) .................................................................................................... 9

*United States v. Katz*,
   271 U.S. 354 (1926) ..................................................................................................... 9

*United States v. Kozminski*,
   487 U.S. 931 (1988) ................................................................................................... 10

*United States v. The State of California et al.*,
   No. 18-cv-00264 (E.D. Cal. filed March 6, 2018) ................................................ 1

*United States v. Toviave*,
   761 F.3d 623 (6th Cir. 2014) .................................................................................... 9

*Vanskike v. Peters*,
   974 F.2d 806 (7th Cir. 1992) .................................................................................... 7

*Villarreal v. Woodham*,
   113 F.3d 202 (11th Cir. 1997) .............................................................................. 4, 7

*Watson v. Graves*,
   909 F.2d 1549 (5th Cir. 1990) ................................................................................. 7

*Watters v. Wachovia Bank, N.A.*,
   550 U.S. 1 (2007) ......................................................................................................... 5

*Whyte v. Suffolk Cnty Sheriff's Dep't*,
   91 Mass. App. Ct. 1124, 2017 WL 2274618 (2017) .................................. 4, 8, 12

*Wilshire Westwood Assocs. v. Atl. Richfield Corp.*,
   881 F.2d 801 (9th Cir. 1989) .................................................................................... 9

**Statutes**

8 U.S.C. § 1103 ..................................................................................................................... 3

| | | |
|---|---|---|
| 1 | 8 U.S.C. § 1225 | 3, 5 |
| 2 | 8 U.S.C. § 1226 | 3 |
| 3 | 8 U.S.C. § 1226a | 3, 5 |
| 4 | 8 U.S.C. § 1231 | 3, 5 |
| 5 | 8 U.S.C. § 1324a | 3, 4 |
| 6 | 8 U.S.C. § 1555(d) | 3, 4, 8 |
| 7 | 22 U.S.C. § 7102(9) | 11 |
| 8 | Cal. Labor Code § 1171.5 | 6 |
| 9 | Cal. Labor Code § 1194 | 6 |
| 10 | Cal. Penal Code § 236.1(a) | 11 |
| 11 | Cal. Penal Code § 2700 | 11 |
| 12 | Prison Litigation Reform Act | 11 |
| 13 | Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000) | 8 |
| 14 | 15 C.C.R. § 3040 | 11 |
| 15 | 8 C.F.R. § 1001.1(p) | 5 |

**Rules**

| | | |
|---|---|---|
| 17 | Fed. R. Civ. P. 12(b)(6) | 12 |

**Other Authorities**

| | | |
|---|---|---|
| 19 | Eleventh Amendment | 8 |
| 20 | Thirteenth Amendment | 9, 10 |
| 21-22 | *The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities*, General Counsel Op. No. 92-8, 1992 WL 1369347 (Feb. 26, 1992) | 3 |
| 23-24 | *INS General Counsel, Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor*, General Counsel Op. No. 92-63, 1992 WL 1369402 (Nov. 13, 1992) | 3 |
| 25 | Performance Based National Detention Standards § 3.1 | 9 |
| 26 | ICE National Detainee Handbook | 9 |

## I. INTRODUCTION.

As the U.S. Department of Justice ("DOJ") stated in a complaint, recently filed in the Eastern District of California, challenging the application of several California statutes, the federal government has "undoubted, preeminent authority to regulate immigration matters," derived from the U.S. Constitution and acts of Congress, and "California has no authority to enforce laws that obstruct or otherwise conflict with, or discriminate against, federal immigration enforcement efforts." *United States v. The State of California et al.*, No. 18-cv-00264 (E.D. Cal. filed March 6, 2018) (challenging "sanctuary city" laws and law purporting to give California Attorney General powers to review operations at privately-contracted detention facilities).

Novoa's opposition brief, brimming with political rhetoric, reveals that his claims are cut from the same cloth as the statutes that the DOJ has challenged. He tries to use state laws—and the federal Trafficking Victims Protection Act ("TVPA"), which does not apply—to interfere with federal agencies and their chosen contractors in carrying out their Congressionally-appointed immigration duties. Novoa parrots suits in other jurisdictions that attempt to use state minimum wage law and restitution theories to create employment relationships that do not exist. Moreover, Novoa alleges that GEO's administration of U.S. Immigration and Customs Enforcement ("ICE") policies amounts to "forced labor"—a meritless claim that neither Novoa nor any other detainee plaintiff has yet dared to bring against the United States itself. The policies that Novoa challenges—the Voluntary Work Program ("VWP") and housekeeping rules—are ICE policies administered by GEO under ICE's supervision. Novoa's suit is a vehicle geared to disrupt federal policies through litigation against federal contractors.[1]

---

[1] A recent letter from 18 members of Congress expressed serious concerns about these suits and requested the agencies' intervention in the actions. The authors take the position that suits like this aim "to raise the overall costs of immigration detention, in order to discourage its use and diminish the overall level of

DOCUMENT PREPARED ON RECYCLED PAPER

Contra Novoa, States have no "traditional state police powers" to impose employment relationships between federal detainees and federal contractors. Pl.'s Opp. to GEO's Mot. to Dismiss ("Opp.") at 4. California's Minimum Wage Law ("MWL") is field and conflict/obstacle preempted: Congress leaves no room for state employment law in this context; a direct conflict would result from deeming federal detainees to be GEO's "employees," and disrupting ICE's longstanding policies and practices. Even if not preempted, the MWL does not apply.

Novoa offers no reason to apply the TVPA to federal immigration detainees. Novoa asserts that the statute forbids any kind of forced labor, which is not supported by the TVPA case law. Opp., at 16-17. The TVPA has not been extended to contexts beyond its purposes, or to cover "threats" of adverse but legitimate consequences for a plaintiff's conduct. Per ICE policy, detainees are expected to clean their living spaces, and the "threats" are ICE's own sanctions.

Further, Novoa's claims for unjust enrichment and violations of California's Unfair Competition Law ("UCL") also fail. Novoa has not pled his unjust enrichment claim as a quasi-contract claim, so it cannot be construed as a separate, alternative claim. Further, Novoa did not "unjustly" enrich GEO since he was a detainee that was not eligible or entitled to "wage"-type relief, and had no reasonable expectation of compensation. Finally, because Novoa's UCL claim relies on the viability of his MWL and TVPA claims, that claim also fails.

## II. FEDERAL LAW PREEMPTS CALIFORNIA'S MWL HERE.

### A. The Presumption Against Preemption Does Not Exist In The Context Of Federal Immigration Detention Work.

A "field" of law is preempted when Congress regulates to such an extent that it occupies the field. *Arizona v. United States*, 567 U.S. 387, 399 (2012).

immigration enforcement in the United States." *See* Declaration of Lesley Holmes in support of GEO's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, filed concurrently herewith, Exhibit A at 2.

Congress's regulation of immigration covers employability, detention, and removal of aliens, and it specifically controls allowances for detainees' work. 8 U.S.C. §§ 1103, 1225, 1226, 1226a, 1231, 1324a, 1555(d). Novoa would inject California's MWL and unjust enrichment law into this framework to create an employment relationship between federal contractors and immigration detainees for which Congress leaves no room.

Novoa mischaracterizes the preemption doctrine and wrongly suggests that a presumption against preemption exists here. He claims that this case arises in a "field which the States have traditionally occupied": labor regulations. Opp., at 4. But this is no typical labor case; it involves employment of persons ***detained under federal law***. INS (ICE's predecessor) explicitly stated that detainees are not "employees" for work done in detention, because "[a] detainee performs work for institution maintenance, not compensation." INS General Counsel, *The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities*, General Counsel Op. No. 92-8, 1992 WL 1369347, at *1 (Feb. 26, 1992) (Holmes Decl. ISO Mot., Exh. A). State law cannot change this.

Rather **Congress**, the source of ICE's power to detain, has the power to preempt state law. *Arizona*, 567 U.S. at 399. Congress's preemption power is particularly strong where, as here, Congress has acted well within its enumerated Constitutional power to control and conduct relations with foreign nations, under which the United States has broad authority to establish immigration laws that states can neither bolster nor obstruct. *Id*. at 394-95; *accord North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444-47 (Scalia, J., concurring). The authority to pay detainees a specified amount does not derive from state laws, but from Congress. 8 U.S.C. § 1555(d); INS General Counsel, *Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor*, General Counsel Op. No. 92-63, 1992 WL 1369402 (Nov. 13, 1992).

Novoa argues that ICE's $1 policy is a "floor, not a ceiling." Opp., at 9. But

this fundamentally misunderstands the preemption question: the relevant field is *employment*, not wages. Wages are secondary to the question of whether Congress intends to occupy the field of immigrant employment, and especially *detainee* employment. Non-employees are not entitled to "wages," and courts have dismissed FLSA claims and state claims for employment-type detainee wages. Mot., at 5-8; *see*, *e.g.*, *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990); *Guevara v. I.N.S.*, 1992 WL 1029, *2 (Fed. Cir. Jan. 6, 1992); *Villarreal v. Woodham*, 113 F.3d 202, 205-07 (11th Cir. 1997); *Menocal v. The GEO Group, Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2017); *Whyte v. Suffolk Cnty Sheriff's Dep't*, 91 Mass. App. Ct. 1124, 2017 WL 2274618, at *1-2 (2017).

Novoa argues that ICE cannot have preempted state wage laws because it never followed Executive Order 13132. Opp., at 8. But that order applies only when preemption arises from agency action, not when it arises from federal law. Congress has made clear its intent that payment for detainee work is only an "allowance" under its control, not wages. Mot., at 6; 8 U.S.C. § 1555(d). Novoa's argument that GEO's contract does not preempt state law is misplaced. Opp., at 9. As GEO explained, field preemption arises from Congress's comprehensive statutory scheme. Mot., at 9-11.

### B. The MWL is Conflict/Obstacle Preempted.

IRCA prohibits any employer from knowingly employing an illegal alien and from employing anyone without first ensuring that that person is authorized to work in this country. 8 U.S.C. § 1324a(4).[2] For Novoa to establish a MWL wage violation, he would have to prove that GEO has employed all VWP participants at Adelanto. Such employment facially conflicts with IRCA.

This is no "hypothetical conflict." Opp., at 9. Novoa's theory requires this

---

[2] Section 1324(a)(4) prohibits anyone from knowingly hiring unauthorized aliens through a contract or subcontract. ICE has put thousands of detainees in Adelanto knowing they were unauthorized to work. Novoa therefore implies that ICE itself violates IRCA through GEO's "employment" of detainees under its contract.

Court to find that all VWP participants at Adelanto are GEO's employees. Federal law mandates detention for several categories of aliens, each of which is presumptively unauthorized to work. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), 1226(c), 1226a, 1231(a). Everyone detained at Adelanto under a final removal order or after having committed a crime has necessarily lost any work authorization he or she might have had. 8 C.F.R. § 1001.1(p); 8 U.S.C. § 1231(a)(7). Even those aliens whose detention is discretionary are only eligible for employment upon the Attorney General's express authorization, for which an alien must apply.[3] 8 U.S.C. § 1226a. Thus, hiring any detainee violates IRCA.

In *Salas v. Sierra Chemical Co.*, 59 Cal. 4th 407 (2014), IRCA directly conflicted with a state law when it compensated an unauthorized worker after that worker's unauthorized status was discovered. After such a discovery, compensating the alien "would impose liability on the employer for not performing an act (continuing to employ a worker known to be an unauthorized alien) expressly prohibited by federal law." *Id.* at 424. Here, every detainee falls into this "post-discovery period," either as a cause or a result of their detention. Thus, the MWL is preempted: federal law prohibits GEO from knowingly hiring an unauthorized alien, but applying the MWL would treat GEO as if it had.

Finally, subjecting ICE and its contractors to the requirements of individual state minimum wage laws or unjust enrichment claims would create a patchwork of state wage regimes, all external to the contracting relationship between ICE and facility operators like GEO. *See, e.g., Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 10-15 (2007). Novoa identifies no grounds to believe that Congress's intends for states to impose such obstacles to the federal government's ability to carry out

---

[3] Novoa himself was ineligible for work because he was detained by ICE based on his criminal record in the United States, which includes possession of controlled substances, possession of a firearm by a felon, giving a false ID to a peace officer, and domestic violence. Novoa has not alleged that he, or any other Adelanto detainee, was granted work authorization by the Attorney General.

immigration detention.

### III. NOVOA STATES NO CLAIM THAT FEDERAL IMMIGRATION DETAINEES ARE ENTITLED TO A STATE MINIMUM WAGE.

Apart from preemption, Novoa also fails to state a valid MWL claim. He relies on Cal. Labor Code § 1171.5 to assert that all employees are protected regardless of their immigration status. But it is Novoa's *detention* status, not his immigration status, that makes the Labor Code inapplicable. Mot., at 13, n.4. Furthermore, § 1171.5 presumes the individual is an employee. Novoa was not. Genco Op., No. 92-8, 1992 WL 1369347, at *1. The MWL does not create an employer-employee relationship; it addresses the compensation paid under an *existing* relationship. Cal. Labor Code §§ 1171.5, 1194.

Novoa does not dispute he was an immigration detainee under the federal government's control. Thus, Novoa's work was governed by ICE regulations. It is those regulations—not the MWL or other California wage orders—that define his status and regulate his labor. *See*, *e.g.*, *Gerard v. Mitchell Systems*, No. CV 14-4999 DSF (SHX) 2016 WL 4479987, **3, 8 (C.D. Cal. Aug. 22, 2016) (California's Industrial Welfare Commission wage orders did not govern claims by cosmetology students for unpaid wages for cleaning tasks because the Cosmetology Board governed the students' relationship with the defendant schools).

As noted, FLSA precedents uniformly hold that detainees are not covered by the FLSA. Mot., at 14-16. In response, Novoa cites only the Ninth Circuit's statement in *Hale v State of Arizona*, 967 F.2d 1356, 1362-63 (9th Cir. 1992), *on reh'g*, 993 F.2d 1387 (9th Cir. 1993), which does not carry his claim. *Hale* held that the typical test for determining whether an employer-employee relationship exists—the economic reality test—was inapplicable to prisoners because their work did not present an employment context at all. 993 F.2d at 1394. The court agreed with the rationale of the cases GEO has cited: "the problem of substandard living conditions, which is the primary concern of the FLSA, does not apply to prisoners,

for whom clothing, shelter, and food are provided by the prison." *Id*. at 1396. The *en banc* Ninth Circuit, attempting to reconcile its own precedent holding that prisoners were not "employees" under the FLSA (*Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320 (9th Cir. 1991)) with the panel decision that reached the opposite conclusion, noted the following: "[w]hile it may be difficult to believe that Congress actually gave thought to the problem and decided to include prison labor within the FLSA, we cannot agree that the FLSA categorically excludes all labor of any inmate." *Id*. at 1392. But rather than inferring that prisoners are employees, the court found it "a decision for the Congress, not the courts, to make." *Id*.

The kind of labor at issue in *Hale i*s different from the VWP. In *Hale*, the prisoners were "making products for sale in the outside world." *Id*. at 1359. Some other courts have explained that the FLSA might apply to prisoners who are actually working outside of an institution where they compete in the market,[4] but those cases are meaningless when detainees work solely *inside* a detention for the purpose of "institutional maintenance." [5] *See Guevara*, 1992 WL 1029, at *2; *Villarreal*, 113 F.3d at 205-07. And as discussed, detainees almost always lack work authorization. *See supra*.

Likewise, the dicta in *Gonzales v. Mayberg*, No. CV-07-6248 CBM (MLG), 2009 WL 2382686, at *5 (C.D. Cal. July 31, 2009), *aff'd sub nom. Gonzalez v. Mayberg*, 398 F. App'x 318 (9th Cir. 2010), holds no weight here. In that case, the district court held that persons civilly committed to a state hospital after

---

[4] *Watson v. Graves*, 909 F.2d 1549, 1554-56 (5th Cir. 1990) (plaintiffs working for construction company outside the prison on work release were "employees" of the company and entitled to minimum wage); *Vanskike v. Peters*, 974 F.2d 806, 808-09 (7th Cir. 1992) (prisoner who performed labor within a prison not entitled to FLSA minimum wage and distinguishing *Watson* because "the prisoners [in *Watson*] performed work for private, outside employers").

[5] *See also Bennett v. Frank*, 395 F.3d 409, 409-10 (7th Cir. 2005) ("People are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep."). Private prison contractors fell under the same rule. *Id*. at 410.

incarceration for sex crimes were not employees pursuant to the FLSA because it dismissed the case on immunity grounds. *Id*. (explaining that "***even if*** this Court would find that Plaintiffs were 'employees' within the meaning of the FLSA," the Eleventh Amendment would bar their recovery) (emphasis added). Moreover, that case involved civil commitment and not immigration detention, and the plaintiffs had already received minimum wage for some work. *See id.* at *4.

Here, Novoa's attempt to turn Adelanto detainees into wage earners fails. Opp., at 16. VWP participation at Adelanto is not performed in a wage market. The $1 daily allowance was never intended to support detainees or their families— that is why it has remained the same since 1950. Mot., at 6; 8 U.S.C. § 1555(d).

Finally, Novoa attempts to avoid *Alvarado Guevara*, 902 F.2d at 396—in which the Fifth Circuit affirmed dismissal of a FLSA claim for VWP work—by arguing that it "turned on policy concerns rooted in the distinct characteristics of government employment," and the specifics of the FLSA. Opp., at 13. The Fifth Circuit applied the ***same*** statutory framework that governs VWP work at Adelanto, because Novoa, like Guevara, was a federal immigration detainee. *Alvarado Guevara*'s reasoning continues to control in recent cases in which courts have rejected claims to apply Colorado and Massachusetts[6] minimum wage laws to detainees in contract facilities: detainees are not part of a wage-earning public. *See* Mot., at 14-16. Novoa's claim is not different.

### IV. THE TVPA DOES NOT COVER ROUTINE HOUSEKEEPING TASKS WHILE IN LAWFUL IMMIGRATION DETENTION.

In its Motion, GEO described Congress's intent in enacting the TVPA—to target, prosecute, and deter people who transport persons "across international borders" or take them "from their home communities to unfamiliar destinations" and force them to work. Mot., at 18; *see also* H.R. Conf. Rep. 106-939, at 1 (2000). That clear intent is supported by twenty-four (24) congressional findings. *See* Pub.

---

[6] *See Menocal*, 113 F. Supp. 3d at 1129; *Whyte*, 2017 WL 2274618, at *1-2.

L. No. 106-386, § 102, 114 Stat. 1488 (2000).

Novoa disregards this intent, and relies on formalism to argue that the statute proscribes labor involving any kind of sanction for noncompliance. Opp., at 17. A court must look beyond a statute's language if a literal application would lead to "extreme or absurd results," *United States v. Katz*, 271 U.S. 354, 362 (1926); *Brooks v. Donovan*, 699 F.2d 1010, 1011 (9th Cir. 1983), or if "internal evidence of the statute" suggests a "departure from a literal reading" to "effect the legislative purpose." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803-04 (9th Cir. 1989) (quoting *Malat v. Riddell,* 383 U.S. 569, 571-72 (1966)).

Congress did not intend the TVPA to prohibit ICE from requiring lawfully detained aliens to clean their personal and communal areas. Novoa does not show otherwise, and the TVPA should not be extended without a clear expression of Congressional intent. *See United States v. Toviave*, 761 F.3d 623, 630 (6th Cir. 2014) (explaining that a court "should not—without a clear expression of Congressional intent—transform a statute passed to implement the Thirteenth Amendment against slavery or involuntary servitude into one that generally makes it a crime for a person *in loco parentis* to require household chores."). And in applying the TVPA, courts must distinguish between "improper threats or coercion and permissible warnings of adverse but legitimate consequences." *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012); *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (1st Cir. 2005). Under ICE policy, segregation for not maintaining a clean living area is an "adverse, but legitimate consequence."[7]

Novoa also has no explanation for why a "civic duty" exception does not

---

[7] ICE informs all detainees that they must clean their rooms and "any general-use areas that you use" or face possible discipline. ICE Detainee Handbook (2016) at 12 (https://www.ice.gov/sites/default/files/documents/Document/2017/detainee-handbook.PDF). ICE's national standards further provide that "[r]efusing to clean assigned living area" is can result in disciplinary segregation. PBNDS at § 3.1.

apply. *See United States v. Kozminski*, 487 U.S. 931 (1988); Mot., 19-20 (citing cases). Requiring detainees to do basic chores does not violate the Thirteenth Amendment or Section 1584 of the TVPA. *Id*. Congress enacted Section 1589 after courts recognized the "civic duty" exception, and courts "assume that Congress [wa]s aware of existing law when it passe[d] [the] legislation" and "intended to incorporate it." *See*, *e.g.*, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988).

Novoa cites *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011). Opp., at 17. But that case shows how strange his claim truly is. In *Nunag-Tanedo*, Filipino nationals were "[e]nticed by promises of lucrative and exciting employment" to come to the United States and teach in Louisiana. 790 F. Supp. 2d at 1137-39. Once there, defendant's recruiters threatened the teachers with deportation if they complained about the arrangement, asked for a refund, or moved. *Id*. at 1144. Such allegations of "fraud and extortion leading to forced labor" were sufficient to state a claim under the TVPA. *Id*. at 1144-45. The recruiters "intentionally manipulated the situation so that [the teachers] would feel compelled to remain and would obey all of [their] demands." *Id*. at 1146. *Nunag-Tanedo* is a legitimate TVPA case; it bears no resemblance to this one: there the plaintiffs were tricked into paying exorbitant fees for jobs in the United States and then forced to continue working under threat of deportation and financial ruin; here Novoa and his putative class were lawfully detained by ICE and required only to adhere to federal policy—a policy that remains unchallenged—to keep their living and communal areas tidy. The TVPA does not apply.

V. **NOVOA STATES NO CLAIM UNDER THE CALIFORNIA TVPA.**

Novoa does not dispute that his California TVPA claim is identical to his federal TVPA claim, such that it cannot succeed if his federal claim fails. Nor does he provide any evidence that the California Legislature intended the statute to apply to immigration detention. For example, the statute provides that "[a] person who

deprives or violates the personal liberty of another with the intent to obtain forced labor or services" commits a human trafficking. Cal. Penal Code § 236.1(a). But there is no dispute that the reason a detainee lacks "liberty" is because he or she is in the federal government's lawful detention. This should be the end of the matter.

Nevertheless, Novoa contests GEO's argument that Cal. Penal Code § 2700 and 15 C.C.R. § 3040—which require California prisoners to work—are positive evidence that California's TVPA would not apply to immigration detention. Opp., at 21. But his only argument is that he and other detainees at Adelanto are not prisoners. The point is that the California Legislature would not have criminalized conduct in one statute (the California TVPA) that it authorized in another statute (Cal. Penal Code § 2700). If the California TVPA applies to housekeeping tasks performed by immigration detainees, then it must apply to the same work by prisoners. There is no principled distinction between the two scenarios.

Finally, Novoa attempts to distinguish the *Lofthus* case on the basis that the Prison Litigation Reform Act ("PLRA") does not apply to civil immigration detainees. Opp., at 22 (citing *Lofthus v. Long Beach Veterans Hosp.*, 214 F. Supp. 3d 908, 916 (C.D. Cal. 2016)). But he ignores *Lofthus*'s holding that a claim under the California TVPA must include allegations that the plaintiff was detained "***for the purpose of*** subjection to involuntary servitude, peonage, debt bondage, or slavery," as required by 22 U.S.C. § 7102(9) (emphasis added). *See Lofthus*, 214 F. Supp. 3d at 916. Such an allegation would be absurd here, where ICE detained Novoa, and the alleged "labor" comprises detainees cleaning up after themselves.

## VI. NOVOA'S DERIVATIVE CLAIMS MUST BE DISMISSED.

Novoa argues that his unjust enrichment claim is a valid alternative theory of recovery. Opp., at 23. But Novoa relies on inapposite cases where the plaintiffs have alleged a ***quasi-contract cause of action***. *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (finding allegations sufficient "to state a quasi-contract cause of action."); *Evans v. DSW, Inc.*, 2017 WL 7058232, at

*7 (C.D. Cal. Sept. 14, 2017) (indicating that plaintiff may plead unjust enrichment as a quasi-contract claim).  Here, Novoa does not allege the existence of a quasi-contract, and has alleged entitlement to legal claims, such as the MWL or TVPA. *See*, *e.g.*, *Rhynes v. Stryker Corp.*, 2011 WL 2149095, *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff may entitle her to an adequate remedy at law, equitable relief is unavailable.").

In any event, Novoa cannot state a valid quasi-contract claim because he does not allege that he or other detainees had a reasonable expectation of a bargained-for value for their VWP work other than $1 per day.  *See Maglica v. Maglica*, 66 Cal. App. 4th 442, 450-51 (1998).  In *Whyte*, a Massachusetts court affirmed the dismissal of an ICE detainee's claim for unjust enrichment for work performed during detention, holding that "[a]bsent some factual allegation that he reasonably expected compensation at a higher rate, and the defendants accepted the benefit of his labor with actual or chargeable knowledge of his expectation, the complaint fails to state a claim for quantum meruit or unjust enrichment."  2017 WL 2274618, at *2.

Novoa concedes that his UCL claim is derivative in nature.  Opp., at 24. Because the TVPA and wage claims fail, the UCL claim does too.

## VII. CONCLUSION

For the foregoing reasons, GEO respectfully requests that this Court dismiss the Complaint without leave to amend under Rule 12(b)(6).

Dated:     March 12, 2018         LESLEY HOLMES
                                  **NORTON ROSE FULBRIGHT US LLP**


                                  By */s/ Lesley Holmes*
                                      LESLEY HOLMES
                                      Attorneys for Defendant
                                      THE GEO GROUP, INC.