LESLEY HOLMES (BAR NO. 271903)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
lesley.swanson.holmes@nortonrosefulbright.com

MARK EMERY (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
799 9th Street NW Suite 100
Washington, DC 20001-4501
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
mark.emery@nortonrosefulbright.com

CHARLES A. DEACON (*pro hac vice*)
**NORTON ROSE FULBRIGHT US LLP**
300 Convent Street Suite 2100
San Antonio, TX 78205-3792
Telephone:  (210) 270-7133
Facsimile:  (210) 270-7205
charlie.deacon@nortonrosefulbright.com

Attorneys for Defendant
THE GEO GROUP, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| RAUL NOVOA, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>    v.<br><br>THE GEO GROUP, INC.,<br><br>         Defendant. | Case No.  5:17-cv-02514-JGB-SHKx<br><br>**DEFENDANT THE GEO GROUP, INC.'S SUPPLEMENTAL BRIEFING TO ADDRESS THE APPLICABILITY OF CALIFORNIA MINIMUM WAGE ORDERS TO PLAINTIFF'S CLAIM**<br><br>Date: May 14, 2018<br>Time: 9:00 a.m.<br>Judge: The Honorable Jesus G. Bernal<br>Ctrm: 1<br><br>Complaint Filed: 12/19/17 |

29939621.2

5:17-cv-02514-JGB-SHKx

DEFENDANT THE GEO GROUP, INC.'S SUPPLEMENTAL BRIEFING TO ADDRESS THE APPLICABILITY OF CALIFORNIA
MINIMUM WAGE ORDERS TO PLAINTIFF'S CLAIM

DOCUMENT PREPARED
ON RECYCLED PAPER

Defendant The GEO Group, Inc. ("GEO") hereby submits this supplemental briefing to address the applicability of California Minimum Wage Orders ("Orders")—and specifically the Public Housekeeping Order—as requested by the Court in its minute order.  *See* Dkt. 39.

## I.    **INTRODUCTION**

The Public Housekeeping Order does not apply to Mr. Novoa's claim for several reasons.  First, the Public Housekeeping Order applies to companies that provide food or lodging services.  Even though the Order covers businesses that offer such services only incidentally, California's Division of Labor Standards Enforcement ("DLSE") has long interpreted the order to cover only businesses who provide those services *to the public*.  GEO does not provide housing or meal services to the public.  Detainees who work in the Voluntary Work Program perform work around the facility for their own benefit (e.g., cleaning floors or tables, cutting hair, working in a kitchen that feeds other detainees), but neither GEO nor the detainees provide services to the general public.  This distinction makes the Adelanto Facility unlike any of the other businesses covered by the Public Housekeeping Order, and thus makes that Order inapplicable to Mr. Novoa and his putative class.

Second, none of California's Minimum Wage Orders applies to this case, as all rely on the same definition of "employee," which does not cover Mr. Novoa or his putative class members.  This result does not change now that Mr. Novoa claims that he is covered by the specific Public Housekeeping Order, since California's DLSE has long used the definition of "employee" under the Fair Labor Standards Act ("FLSA") to determine the scope of California's Wage Orders.  Case law addressing whether detainees are "employees" under the FLSA forecloses any claim that detainees are "employees" under any of the Wage Orders, such that neither the Public Housekeeping Order nor any other Orders can apply here.

Finally, even were the Court to take a contrary view from the FLSA case law,

DOCUMENT PREPARED
ON RECYCLED PAPER

GEO still cannot qualify as an "employer" under the Public Housekeeping Order because it has no control over several fundamental aspects of any normal employment relationship.  Detainees are detained, removed, paroled, and otherwise controlled by ICE, not by GEO.  In other words, GEO does not make decisions about who to "hire" or "fire" like a real employer would; ICE decides when detainees come and go from the facility.  Further, ICE classifies detainees into risk categories that directly affect their work availability, and also has the final say on whether a detainee participates in the Voluntary Work Program at all.  Thus, GEO lacks full control over what kind of job a detainee does, unlike a true employer. GEO does not exercise any of the "control" over ICE detainees that an employer would possess, and therefore the Wage Orders are inapplicable.

## II.   GEO'S ADELANTO FACILITY IS NOT SUBJECT TO THE PUBLIC HOUSEKEEPING ORDER.

The Public Housekeeping Order covers "any industry, business or establishment which *provides* meals, housing, or maintenance services whether operated as a primary business or when incidental to other operations in an establishment not covered by [another Wage Order]."  Cal. Code Regs. tit. 8 § 11050(2)(P) (emphasis added).  The DLSE—the state agency that administers and enforces California's labor laws, Cal. Lab. Code § 61—has explained that the term "provides" is the "key" to the definition, and means that the Industrial Welfare Commission "intended to mean provided to the public or other businesses."  Dep't of Labor Standards Enf't, *Occupation Wage Orders v. Order 5*, at 1 (July 22, 1997) (attached as **Ex. A** to the Decl. of Lesley Holmes, filed concurrently herewith).  The DLSE offered illustrations:  a law firm that hires a janitor to clean its own offices is *not* subject to the Public Housekeeping Order, while a law firm that offers janitorial staff to other law firms would be subject to that Order; an insurance company that offers a commissary for its employees is *not* subject to the Public Housekeeping Order, while an insurance company that offers the same services "to the general

DOCUMENT PREPARED ON RECYCLED PAPER

public" would be subject to that Order. *Id.* at 1-2. The crucial distinction is whether the housekeeping or meal services are provided to the general public or to other businesses. If not, Wage Order 5 does not apply.

Under this principle, the Public Housekeeping Order does not apply to GEO's Adelanto Facility. GEO's business does not consist of housing or food services but in providing detention services to the federal government. And while it does house and feed detainees, it does not "provide" any of those services "to the public"; other than specific visitation areas, the facility is closed to the public. Detainees essentially "provide" the VWP work to themselves, by cleaning their common areas or preparing and serving meals, or cutting other detainees' hair. Detainee work in the VWP at the Adelanto Facility is indistinguishable from the janitorial work in the law firm that the DLSE found was not provided to the public: just as a janitor that cleans a law office does not "provide" janitorial services to the public, so the VWP workers helping to clean or maintain their own facility and living spaces do not "provide" cleaning or maintenance services to the public. Consequently, the Public Housekeeping Order does not apply.

### III.   CALIFORNIA'S WAGE ORDERS DO NOT APPLY JUST AS THE FAIR LABOR STANDARDS ACT DOES NOT.

The Public Housekeeping Order, along with all the other Minimum Wage Orders, also imports the definition of "employ" from the Fair Labor Standards Act ("FLSA"). In 2002, the DLSE was asked for guidance as to whether a corporate officer would be personally liable under state law for an employee's unpaid wages. Dep't of Labor Standards Enf't, *Grounds for Imposition of Individual Liability for Unpaid Wages*, at 1 (June 18, 2002) (attached as **Ex. B** to Holmes Decl.). In answering this question, the DLSE relied entirely on cases addressing the FLSA. *See id.* at 3-7. DLSE cited at length a court decision that concluded that "federal authorities defining the concept of employment…are ***extremely persuasive*** to the Court in its determination of the California definition" and that "California courts

would likely adopt the federal FLSA's broad definition of 'employment.'" *Id*. at 4 (emphasis added).  The DLSE's own opinion followed that case and other FLSA cases to reach its conclusion on the scope of the Wage Orders.

Accordingly, this Court should look to FLSA precedents to determine whether ICE detainees are "employees" and GEO is an "employer."  The answer is unequivocal: ICE detainees have no employment relationship with the detention facilities where they work.  In *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395-96 (5th Cir. 1990), the court held that immigration detainees were not employees under the FLSA because the FLSA was meant to protect workers in the marketplace.  In *Guevara v. I.N.S.*, 1992 WL 1029, *1-2 (Fed. Cir. Jan. 6, 1992), the Federal Circuit agreed that detainees work for institutional maintenance, not in the marketplace, and thus were not covered by the FLSA.  In *Menocal v. The GEO Group*, 113 F. Supp. 3d 1125, 1129-31 (D. Colo. 2016), the court interpreted wage orders much like California's and dismissed a nearly identical claim for minimum wage by detainees at another GEO facility.  In *Whyte v. Suffolk County Sheriff's Department*, 91 Mass. App. Ct. 1124, 2017 WL 2274618, at *1-2 (May 24, 2017), still another court affirmed this same reasoning with respect to an ICE detainee plainitff.  And the Seventh Circuit has held that the FLSA does not apply to inmate workers even when a prison is run by a private contractor.  *Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005) (Posner, J.).  The Court should follow DLSE's own interpretation of California's minimum wage law and apply these FLSA precedents.

At the hearing on GEO's motion to dismiss, the Court inquired about the value of *Gonzales v. Mayberg*, No. CV-07-6248 CBM (MLG), 2009 WL 2382686 (C.D. Cal. July 31, 2009), *aff'd sub nom. Gonzalez v. Mayberg*, 398 F. App'x 318 (9th Cir. 2010).  In that case, Judge Marshall rejected the magistrate judge's finding of fact and conclusion of law that the plaintiffs (detained as "Sexually Violent Predators") "are not employees pursuant to the FLSA." *Id*. at *5.  However, the court did not actually affirmatively hold that the detainees were employees of the

DOCUMENT PREPARED
ON RECYCLED PAPER

29939621.2

- 4 -

5:17-cv-02514-JGB-SHKx

DEFENDANT THE GEO GROUP, INC.'S SUPPLEMENTAL BRIEFING TO ADDRESS THE APPLICABILITY OF CALIFORNIA
MINIMUM WAGE ORDERS TO PLAINTIFF'S CLAIM

facility where they were held under the FLSA; the case was dismissed on sovereign immunity grounds.  In any event, the allegations in *Gonzalez* differ from this case. The plaintiffs "applied for their positions and were interviewed and hired by a vocational counselor."  *Id*.  Their work in the dining room "displace[d] regular union employees who also work in those positions" and patient workers were used to fill in for union employees.  *Id*.  And the plaintiffs had earned a federal minimum wage at other jobs at the facility, and there is no reason to doubt they had work authorization.  Here, Mr. Novoa has not alleged that he was "hired" by GEO, or even alleged that he had work authorization that would have legally permitted him to be hired by GEO.  There is no allegation that he or other detainees have been used to replace GEO's real employees or work alongside them, or that any detainees have received a minimum wage for any work.  Rather than *Gonzales*, the Court is on much stronger footing relying on the FLSA precedents cited above that directly address ICE detainees in immigration detention facilities.

## IV.   GEO IS NOT AN EMPLOYER UNDER THE ECONOMIC REALITIES TEST.

The DLSE has also addressed the scope of liability under California's Wage Orders.  It has explained that the definition of "employer," and thus the scope of liability for wage claims, extends only to those parties that exercise sufficient control over an employee.  *See Grounds for Imposition*, *supra*, at 6 (June 18, 2002). According to the DLSE, "FLSA cases tell us exactly how the 'control prong' of the state law definition of 'employer' for wage and hour purposes ought to be construed."  *Id*.  Under those cases, courts apply the economic realities test, and consider whether the alleged employer (1) had the power to hire and fire the "employees," (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.  *Id*. at 5 (citing *Herman v. RSR Security Servs., Ltd*., 172 F.3d 132, 139 (2d Cir. 1999)).

DOCUMENT PREPARED
ON RECYCLED PAPER

Even if the economic realities test were the right approach to determine whether GEO employed detainees—which it is not because, as explained above, FLSA precedents show that civil immigration detainees are not employees at all— GEO still would not be the detainees' employer because it has little or no control over detainees under each element of this test. First, under GEO's contract with ICE, it is ICE, not GEO, that makes the final determinations as to whether any detainee may participate in the Voluntary Work Program. More broadly, ICE makes all decisions affecting detention, which include detaining, transferring, and removing aliens from the Adelanto Facility. In other words, ICE controls whether the supposed "employees" come to the Facility at all. Thus, GEO has no real power to "hire" or "fire" any detainees, ICE does.

Second, GEO has—at best—limited control over detainee work schedules and conditions of employment. All detainees at the Adelanto facility are assigned to risk categories based on their criminal history, and higher risk classifications limit detainees' privileges, including VWP participation. *See* PBNDS § 5.8.V. For example, detainees with high risk, usually based on their criminal histories, are not allowed to work outside of their own pod. These ICE-imposed limitations directly affect detainees' available work assignments, taking substantial control over detainees from GEO. GEO does not have the liberty to assign work to an employee if ICE does not allow it, or keep a detainee that ICE transfers or releases.

Third, detainee allowances are dictated by statute and ICE. *See* 8 U.S.C. 1555(d). Detainee allowances used to be appropriated directly by Congress. Those allowances—both rate and method—are now set by ICE and incorporated into ICE's contract with GEO. The rate at which ICE reimburses GEO for VWP pay cannot be raised without ICE's approval.

Fourth, neither GEO nor ICE keeps traditional employment records for detainees who participate in the VWP for the simple reason that detainees are not, and have never been, employees. Thus, to the extent the economic-realities test

DOCUMENT PREPARED ON RECYCLED PAPER

applies at all, it is ICE, not GEO, that controls detainees' "employment."  GEO, therefore, is not an employer under any of the Minimum Wage Orders.

More fundamentally, ICE's control over detainees' participation in the VWP is facially inconsistent with any claim that GEO hires or employs detainees.  While Mr. Novoa has argued, and the Court has entertained, that the federal prohibitions on employment dictated by IRCA are aimed only at sanctioning employers, *see* Hearing of May 14, 2018, at 13 (the Court noting Mr. Novoa's argument that "IRCA focuses on the sanctions to be levied against employers, not the employability of undocumented citizens"),[1] here the "employment" of detainees is not even subject to GEO's control:  if ICE approves a detainee for participation in the VWP, then that detainee participates in the VWP.  Thus, if VWP participation is employment, GEO would be in a position of violating IRCA because of the imposition of state law, without any power to have done otherwise.  That is the essence of conflict preemption, a conflict that can be avoided by following ICE/INS's own legal interpretation of its governing statutes and FLSA precedents, which simply concludes that detainees are not "employees" of federal detention facilities.  INS General Counsel, *The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities*, General Counsel Op. No. 92-8, 1992 WL 1369347, at *1 (Feb. 26, 1992).

## V.   **CONCLUSION**

For the foregoing reasons, GEO respectfully submits that neither the Public Housekeeping Order, nor any of the other Wage Orders, applies to Mr. Novoa.

---

[1] Mr. Novoa's description of IRCA is wrong.  As the Supreme Court has explained, IRCA is "a ***comprehensive scheme*** prohibiting the employment of illegal aliens in the United States."  *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002) (emphasis added).  Further, "***Congress has expressly made it criminally punishable for an alien to obtain employment with false documents***" and that Congress could not have "intended to permit backpay" that would encourage aliens to "continue[] to work illegally."  *Id.* at 149 (emphasis added).  Mr. Novoa's description of IRCA is thus flatly contradicted by the Supreme Court's.

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:        May 21, 2018

LESLEY HOLMES
MARK EMERY
CHARLES A. DEACON
**NORTON ROSE FULBRIGHT US LLP**


By */s/ Lesley Holmes*
LESLEY HOLMES
Attorneys for The GEO Group, Inc.

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANT THE GEO GROUP, INC.'S SUPPLEMENTAL BRIEFING TO ADDRESS THE APPLICABILITY OF CALIFORNIA
MINIMUM WAGE ORDERS TO PLAINTIFF'S CLAIM