LESLEY HOLMES (BAR NO. 271903)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone:(213) 892-9200 / Fax: (213) 892-9494
lesley.swanson.holmes@nortonrosefulbright.com

MARK EMERY (*PRO HAC VICE*)
**NORTON ROSE FULBRIGHT US LLP**
799 9th Street NW Suite 100
Washington, DC 20001-4501
Telephone: (202) 662-0200 / Fax: (202) 662-4643
mark.emery@nortonrosefulbright.com

CHARLES A. DEACON (*PRO HAC VICE*)
**NORTON ROSE FULBRIGHT US LLP**
300 Convent Street Suite 2100
San Antonio, TX 78205-3792
Telephone: (210) 270-7133 / Fax: (210) 270-7205
charlie.deacon@nortonrosefulbright.com

Attorneys for Defendant
**THE GEO GROUP, INC.**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| RAUL NOVOA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | Civil No. 5:17-cv-02514-JGB-SHKx<br><br>**DEFENDANT THE GEO GROUP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>Date: August 20, 2018<br>Time: 9:00 am.<br>Courtroom: 1<br>Judge: The Honorable Jesus G. Bernal<br><br>*[Filed concurrently with Notice of Motion; Declaration of Lesley Holmes; and [Proposed] Order]*<br><br>FAC Filed:  July 6, 2018 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 8
II.    FACTUAL BACKGROUND .............................................................. 9
III.   STANDARD OF REVIEW ................................................................ 10
IV.    GEO IS IMMUNE FROM SUIT UNDER YEARSLEY ............................. 11
       A.    ICE Authorized The Adelanto VWP At The $1 Per Day Rate .......... 12
       B.    ICE Validly Conferred The Authority To Administer The VWP ...... 16
V.     PLAINTIFF HAS FAILED TO JOIN AN INDISPENSABLE PARTY...... 18
       A.    Rule 19 Standard ...................................................................... 19
       B.    ICE Is A Required Defendant .................................................... 19
       C.    ICE Cannot Be Joined, And This Suit Must Be Dismissed............... 22
VI.    PLAINTIFF'S MWL CLAIM IS PREEMPTED BY FEDERAL LAW...... 23
       A.    Federal Law Occupies The Field Of Detainee Employment............. 24
       B.    Applying the MWL Raises An Unavoidable Conflict With
             IRCA ........................................................................................ 25
VII.   EVEN IF THE MWL IS NOT PREEMPTED, DETAINEES WOULD
       STILL NOT BE CONSIDERED "EMPLOYEES" ....................................... 26
VIII.  THE COURT SHOULD DISMISS PLAINTIFF'S FORCED LABOR
       CLAIMS UNDER THE STATE AND FEDERAL TVPA ......................... 27
IX.    THE TVPA, CTVPA, AND MWL ARE UNCONSTITUTIONALLY
       VAGUE AS APPLIED TO GEO'S ADMINISTRATION OF THE
       VWP ............................................................................................... 29
X.     THE COURT SHOULD DISMISS PLAINTIFF'S UNJUST
       ENRICHMENT CLAIM ................................................................... 32
XI.    PLAINTIFF'S DERIVATIVE UCL CLAIM SHOULD BE
       DISMISSED ...................................................................................... 32
XII.   CONCLUSION ................................................................................. 32

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
5
267 F.3d 30 (1st Cir. 2001) ................................................................. 9

6
*Alvarado Guevara v. I.N.S.*,
902 F.2d 394 (5th Cir. 1990) ....................................................... 26, 31

7
*Arizona v. United States*,
8
567 U.S. 387 (2012) ......................................................................... 24

9
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 11

10
*Bell Atlantic Corp. v. Twombly*,
11
550 U.S. 544 (2007) ......................................................................... 11

12
*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ............................................................ 32

13
*Bromfield v. McBurney*,
14
2008 WL 2746289 (W.D. Wash. July 8, 2008) .................................. 23

15
*Brooks v. Donovan*,
699 F.2d 1010 (9th Cir. 1983) .................................................... 28, 29

16
*Butters v. Vance Int'l, Inc.*,
17
225 F.3d 462 (4th Cir. 2000) ............................................................ 11

18
*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ....................................................... 8, 11, 12, 13

19
*Clarke v. United States*,
20
107 F. Supp. 3d 238 (E.D.N.Y. 2015) ............................................... 23

21
*Connally v. General Constr. Co.*,
269 U.S. 385 (1926) ................................................................... 29, 30

22
*Crosby v. Nat'l Foreign Trade Council*,
23
530 U.S. 363 (2000) ................................................................... 25, 26

24
*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
888 F.3d 640 (4th Cir. 2018) ...................................................*passim*

25
*Dawavendewa v. Salt River Proj. Agr. Imp. & Power Dist.*,
26
276 F.3d 1150 (9th Cir. 2002) ............................................... 19, 20, 21

27
*Dep't of Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999) ......................................................................... 23

28

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*EEOC v. Peabody Western Coal Co.*,
610 F.3d 1070 (9th Cir. 2010) ............................................................. 20, 21, 23

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .................................................................................... 29

*F.D.I.C. v. Meyer*,
510 U.S. 471 (1994) ............................................................................... 10, 23

*Gomez v. Campbell-Ewald Co.*,
768 F.3d 871 (9th Cir. 2014) .......................................................................... 12

*Janis v. United States*,
2011 WL 4738315 (E.D. Cal. Oct. 6, 2011) ....................................................... 23

*In re KBR, Inc., Burn Pit Litig.*,
744 F.3d 326 (4th Cir. 2014) ....................................................... 10, 11, 12, 16

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) .......................................................................... 23

*Lopez v. Arraras*,
606 F.2d 347 (1st Cir. 1979) .......................................................................... 22

*Maglica v. Maglica*,
66 Cal. App. 4th 442 (1998) .......................................................................... 32

*Nation v. Cty. of Glendale*,
804 F.3d 1292 (9th Cir. 2015) ......................................................................... 25

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......................................................................... 10

*NCNB Texas National Bank v. Cowden*,
895 F.2d 1488 (5th Cir. 1990) ........................................................................ 18

*Nwauzor v. The GEO Group, Inc.*, No. 3:17-cv-05769 (W.D. Wash.
No. 3:17-cv-05769 (W.D. Wash July 20, 2018) ................................................... 17

*Palomera v. ICE*,
No. 1:09-cv-0318, 2009 WL 973669 (N.D. Ga. Apr. 8, 2009) ................................. 23

*Papachristou v. Jacksonville*,
405 U.S. 156 (1972) .................................................................................... 29

*Rangel v. United States*,
No. CV-10-3096, 2010 WL 5018370 (E.D. Wash. Dec. 3, 2010) .............................. 23

*Rezek v. City of Tustin*,
2014 WL 3347860 (C.D. Cal. July 3, 2014) ....................................................... 23

*Rhynes v. Stryker Corp.*,
2011 WL 2149095 (N.D. Cal. May 31, 2011) ...................................................... 32

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Roman v. Tyco Simplex Grinnell*,
2017 WL 2427251 (M.D. Fla. June 5, 2017) ...................................... 29

*State of Washington v. The GEO Group, Inc.*,
No. 3:17-cv-05806-RJB (W.D. Wash. Dec. 13, 2017) ......................... 15

*Udall v. Tallman*,
380 U.S. 1 (1965) ................................................................................ 18

*United States v. Katz*,
271 U.S. 354 (1926) ............................................................................ 28

*United States v. Mitchell*,
445 U.S. 535 (1980) ..................................................................... 22, 23

*United States v. Mitchell*,
463 U.S. 206 (1983) ............................................................................ 11

*United States v. Toviave*,
761 F.3d 623 (6th Cir. 2014) .............................................................. 28

*United States v. Williams*,
553 U.S. 285 (2008) ............................................................................ 30

*United States v. Wood*,
925 F.2d 1580 (7th Cir. 1991) ............................................................ 11

*Villa v. Maricopa Cty.*,
865 F.3d 1224 (9th Cir. 2017) ............................................................ 11

*Yearsley v. W.A. Ross Constr. Co.*,
309 U.S. 18 (1940) ....................................................................... *passim*

**Rules and Statutes**

U.S. Const. amend. XIII ......................................................................... 29

U.S. Const. art. VI, cl. 2 ......................................................................... 26

8 U.S.C. § 1103(a)(3) ............................................................................. 16

8 U.S.C. § 1226(a) ................................................................................. 25

8 U.S.C. § 1226(b) ................................................................................. 25

8 U.S.C. § 1226(c) ................................................................................. 25

8 U.S.C. § 1231(g) ................................................................................. 16

8 U.S.C. § 1324a .................................................................................... 31

8 U.S.C. § 1555(d) .......................................................................... *passim*

**Page(s)**

18 U.S.C. § 1589 .................................................................................................27

18 U.S.C. § 1589(a) ............................................................................................28

18 U.S.C. § 1589(d) ............................................................................................28

22 U.S.C. § 7103(b) ............................................................................................30

22 U.S.C. § 7104(g)(iii) ......................................................................................30

29 U.S.C. 201 .....................................................................................................24

42 U.S.C. § 18083 ...............................................................................................13

Affordable Care Act ..................................................................................... 13, 14

Cal. Lab. Code § 1194 ........................................................................................26

Cal. Penal Code § 236.1(a) ...................................................................27, 30, 31

Cal. Penal Code § 2700 .......................................................................................31

California Unfair Competition Law .....................................................................32

Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat.
    1021, 1027 (Oct. 10, 1978)...........................................................................17

Dep't of Justice Appropriations Act, 1980, Pub. L. No. 96-68, 93 Stat.
    416 (Sept. 24, 1979) ......................................................................................17

Fed. R. Civ. P. 12(b)(1) ................................................................................ 10, 32

Fed. R. Civ. P. 12(b)(6) ................................................................................ 10, 11

Fed. R. Civ. P. 19(a)(1) .......................................................................................19

Fed. R. Civ. P. 19(a)(2) .......................................................................................19

Fed. R. Civ. P. 19(b) ....................................................................................... 8, 19

Fed. R. Civ. P. 19(b)(1) .......................................................................................19

Fed. R. Civ. P. 19(b)(1)-(4) .................................................................................19

Federal Labor Standards Act .........................................................................27, 31

Immigration Reform and Control Act ........................................................24, 25, 26

California Minimum Wage Law...................................................................*passim*

Pub. L. No. 106-386, § 102(a), 114 Stat. 1488 (2000)...........................................27

15 C.C.R. § 3040(a) .............................................................................................31

DOCUMENT PREPARED
ON RECYCLED PAPER

73184611.4

- 6 -

5:17-cv-02514-JGB-SHKx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

8 C.F.R. §§ 274a.14(a)(1),.........................................................................25

8 C.F.R. § 1001.1(p) ...........................................................................24, 25

8 CFR § 274a.12(c)(18)...............................................................................5

**Other Authorities**

*The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities*, Genco. Op. No. 92-8, 1992 WL 1369347, *1 (Feb. 26, 1992) .............................17, 22, 26, 31

ICE National Detainee Handbook ...................................................... 14, 32

ICE, *Progress in Implementing 2011 PBNDS Standards, Fiscal Year 2016 Report* (2017)............................................................................... 16

Performance Based National Detention Standards § 5.8 ...................10, 14, 15, 22

*Your CO 243-C Mem. of Nov. 15, 1991; DOD Request for Alien Labor*, Genco. Op. No. 92-63, 1992 WL 1369402, *1 (Nov. 13, 1992)................................................................................................. 17, 21

DOCUMENT PREPARED
ON RECYCLED PAPER

73184611.4

- 7 -

5:17-cv-02514-JGB-SHKx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

## I.  **INTRODUCTION**

Raul Novoa's ("Plaintiff") First Amended Complaint for Declaratory and Injunctive Relief and Damages ("FAC"; Dkt. #47) should be dismissed for many reasons.  **First**, the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"), by policy and contract, require that Defendant The GEO Group, Inc. ("GEO") administer the Voluntary Work Program ("VWP") at the Adelanto Facility ("Adelanto") and authorize detainees to be paid $1 per day.  When a federal contractor acts in a manner that is authorized by the federal agency with which it contracts, and the federal agency validly conferred the authority, the contractor holds derivative immunity from suit. *Yearsley v. W.A. Ross Constr. Co*., 309 U.S. 18, 20-21 (1940); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672-73 (2016); *Cunningham v. Gen. Dynamics Info. Tech., Inc*., 888 F.3d 640, 643 (4th Cir. 2018).  Therefore, this suit should be dismissed either for lack of subject matter jurisdiction because GEO has *Yearsley* immunity, or for failure to state a claim that avoids *Yearsley*.

**Second**, ICE is an indispensable party to this action.  The Court cannot afford complete relief to Plaintiff (or to his class) without joining ICE because ICE could simply take control of the VWP itself, thereby nullifying any lasting relief awarded to Plaintiff in this action.  Also, any order requiring GEO to act contrary to its contractual requirements with ICE would put it "between a rock and a hard place," unless ICE is also bound by that order.  ICE, however, has sovereign immunity in this suit.  In equity and good conscience, the Court should not subject GEO to further proceedings without joining ICE.  Because it is not feasible to do so, the Court must dismiss the case under Fed. R. Civ. P. 19(b).

**Third**, Plaintiff has still failed to plead a claim under the federal Trafficking Victims Protection Act ("TVPA") or the California TVPA ("CTVPA").  He fails to plead allegations that support a claim that GEO, as a corporate entity, violates the TVPA's scienter requirement, and the allegations still fail to plead the supporting

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

facts that demonstrate a TVPA or CTPVA claim exists.  GEO renews and expands upon other arguments in favor of dismissal, addressing the Court's concerns on the issues of preemption of state law claims, and failure to state a claim under the California's Minimum Wage Law ("MWL") and for unjust enrichment.

**Finally**, the TVPA, CTVPA, and the MWL, for independent reasons, are each unconstitutionally vague as applied to GEO's administration of the VWP.  The statutes do not provide notice sufficient under the Fifth Amendment Due Process Clause that GEO would violate a federal human trafficking statute by administering ICE's VWP program to detainees in ICE custody, at the $1 daily rate set by Congress and paid by ICE to detainees through ICE's contract with GEO.

## II.    FACTUAL BACKGROUND

Pursuant to federal statute, ICE operates immigration detention facilities that house aliens while they await either removal from the United States or decisions on their immigration proceedings.  8 U.S.C. §§ 1103, 1225, 1226, 1231.  ICE operates many of its own Service Processing Centers ("SPCs").  ICE also contracts with companies for detention facility services as Contract Detention Facilities ("CDFs") and with state and local governments for services at publicly-owned facilities via Intergovernmental Service Agreements ("IGSAs").  ICE has an IGSA with the City of Adelanto for operation of the Adelanto Facility to enable ICE to meet its immigration processing needs, and GEO serves as the City's subcontractor.  Through its subcontracting services agreement with the City, GEO agrees to take on all duties and obligations of the City of Adelanto/ICE IGSA contract.[1]

IGSA facilities, like SPCs and CDFs, are subject to ICE's  Performance-

---

[1] *See* GEO/Adelanto Services Contract (Ex. A to the Declaration of Lesley Holmes ("Holmes Decl."")), at 1; City of Adelanto/ICE IGSA Contract (Ex. B, Holmes Decl., "Facility Contract")).  On a motion to dismiss, the Court may consider documents "expressly incorporated" into the complaint, and those "relie[d] upon [in the complaint and] whose authenticity is not challenged."  *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); FAC at ¶¶ 4, 28, 49.

Based National Detention Standards 2011 ("PBNDS") (www.ice.gov/detention-standards/2011), at § 5.8.I.  The PBNDS makes the VWP an "expected outcome" and "expected practice" at all three types of facilities.  *Id.*  PBNDS 5.8 specifies that "compensation is at least $1.00 (USD) per day."  PBNDS § 5.8.V.K.  GEO is required at Adelanto to manage a "detainee work program" in accordance with the PBNDS.  Ex. B at App. A, p. 8.  "The detainee work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, service or other jobs."  *Id.*  The Facility Contract provides that the "Detainee Work Program Reimbursement" is $1.00 per day per detainee.  *Id.* at 3.

Plaintiff alleges that detainees at Adelanto are "employees" and GEO is their "employer" under state wage law.  FAC at ¶ 4.  He seeks to represent a class of current and former detainees to challenge GEO's alleged "economic exploitation of detainees" at Adelanto "to recover unpaid wages, and to remedy the unjust enrichment resulting from GEO's unlawful failure to pay its detainee workforce legal wages."  *Id.* at ¶ 9.  He seeks damages, as well as injunctive and declaratory relief.  *Id.* at 26 (Prayer for Relief).  Plaintiff does not allege that GEO exceeded its authorization from ICE, nor does Plaintiff allege that ICE could not validly confer on GEO the authority to administer the VWP at a $1 per day allowance.

### III.  **STANDARD OF REVIEW**

GEO moves to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  *Cunningham*, 888 F.3d at 650; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 344-46 (4th Cir. 2014); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.").

Alternatively, GEO moves to dismiss the FAC under Rule 12(b)(6) and/or Rule 12(c) for failure to state a claim for which relief may be granted.  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cty*., 865 F.3d 1224, 1228-29 (9th Cir. 2017).  A party may move for judgment on the pleadings, applying the same standards as Rule 12(b)(6), "[a]fter the pleadings are closed—but early enough not to delay the trial."  Fed. R. Civ. P. 12(c).  Under Rule 12(c), a district court "may also take judicial notice of matters of public record" without converting the motion into one for summary judgment. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

## IV.   GEO IS IMMUNE FROM SUIT UNDER *YEARSLEY*

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The United States is immune unless a statute says otherwise.  *Campbell-Ewald*, 136 S. Ct. at 672.  Through derivative immunity, a sovereign's agents are also protected from liability for carrying out its will. *Yearsley*, 309 U.S. at 20-21; *In re KBR, Inc.*, 744 F.3d at 341-43 (private employees are immune from suit when they function as government employees). "[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald*, 136 S. Ct. at 672 (quotation omitted).  This immunity derives from "the government's unquestioned need to delegate governmental functions," such that "[i]mposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Butters v. Vance Int'l, Inc*., 225 F.3d 462, 466 (4th Cir. 2000).

In *Yearsley*, a landowner sued a contractor for damages when part of his land was washed out after the contractor built river dikes under a federal contract.  The Supreme Court held that the contractor was not answerable to the landowner, because "the work which the contractor had done in the river bed was all authorized and directed by the Government of the United States" and "performed pursuant to

the Act of Congress."  309 U.S. at 20.  Where the federal government's "authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress," the Court explained, "there is no liability on the part of the contractor" who performed as the government directed.  *Id*. at 20-21. The Court contrasted *Yearsley* to cases where a government agent had "exceeded his authority" or the authority "was not validly conferred."  *Id*. at 21.

More recently in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), the Ninth Circuit held that *Yearsley* immunity did not apply when a Navy contractor was sued for violations of the Telephone Consumer Protection Act ("TCPA").  The Ninth Circuit had described *Yearsley* immunity as "a narrow rule regarding claims arising out of property damage caused by public works projects." *Id*. at 879.  But the Supreme Court expressly disagreed, noting that what was "[c]ritical in *Yearsley* was not the involvement of public works, but the contractor's performance in compliance with all federal directions."  *Campbell-Ewald*, 136 S. Ct. at 673 & n.7.  The key is that "[q]ualified immunity reduces the risk that contractors will shy away from government work."  *Id.* at 673.

*Yearsley* immunity applies to GEO as a subcontractor providing services to the federal government.  "[A] government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization."  *Cunningham,* 888 F.3d at 646 (citing *In re KBR,* 744 F.3d at 342; *Yearsley*, 309 U.S. at 20-21).  Both of these elements are met here, and GEO thus has immunity from Plaintiff's claims.[2]

## A.    ICE Authorized The Adelanto VWP At The $1 Per Day Rate

All of Plaintiff's claims are aimed at GEO's administration of the VWP at Adelanto.  Because GEO acted within its federal authorization from ICE in

---

[2] GEO answered and conditionally counterclaimed concurrently with filing this motion to preserve all defenses without prejudice to a favorable ruling on this motion to dismiss, which would moot its counterclaims and defenses.

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

administering the VWP program, and because ICE validly conferred the power to administer the VWP at a $1 daily rate, GEO has derivate immunity from suit.

In an April 2018 decision—post-dating GEO's motion to dismiss the original complaint—the Fourth Circuit granted a motion to dismiss a claim against a federal contractor in circumstances logically indistinguishable from this case. In *Cunningham*, defendant General Dynamics Information Technology ("GDIT") was held to have derivative immunity based on its contractual work for the U.S. Centers for Medicare & Medicaid Services ("CMS"). 888 F.3d at 643. The Affordable Care Act ("ACA") directed CMS to establish a system to keep applicants informed about their enrollment eligibility for qualified health plans. *Id.* at 643-44 (citing 42 U.S.C. § 18083). To do so, CMS contracted with GDIT to operate a call center. *Id.* at 644. Under the contract, GDIT was instructed to call people to tell them they could buy insurance through the ACA's exchanges. *Id.* CMS authorized GDIT to use an autodialer, and provided a script and a list of phone numbers to call. *Id.* The contract also required GDIT to "maintain a corporate compliance program" that included "[a]n internal monitoring and auditing function to help ensure compliance with statutes [and] regulations," and "[a]n enforcement and disciplinary process to address violations of applicable statutes [and] regulations...." *Id.*

CMS sent GDIT millions of telephone numbers and directed GDIT to call some of them. *Id.* GDIT's autodialer called plaintiff Cunningham and left a message following CMS's script. *Id.* Cunningham alleged that the call violated the TCPA because he had not given his prior consent and sought to represent all persons who received calls under the CMS program. *Id.* at 645. GDIT moved to dismiss for lack of subject matter jurisdiction under *Yearsley*. *Id.*

The Fourth Circuit concluded that the United States and its agencies had immunity from suit under the statute, such that GDIT "would also be immune from liability for making this phone call if derivative sovereign immunity applies." *Id.* at 645 (citing *Campbell–Ewald*, 136 S.Ct. at 672). The Fourth Circuit held that GDIT

was entitled to such derivative immunity. *Id.* at 646-48. The ACA directed CMS to establish a system to keep applicants informed about their enrollment eligibility. CMS contracted this duty to GDIT. CMS provided GDIT with the phone numbers and permitted the use of an autodialer. The autodialer called Cunningham and left a voicemail following the script CMS had provided. Therefore, "GDIT performed exactly as CMS directed." *Id.* at 647. Crucially, Cunningham argued that the CMS-GDIT contract required GDIT "to follow applicable laws, and that by failing to independently obtain prior consent from each name on the list provided by CMS to ensure compliance with the TCPA," such that GDIT "violated the contract, requiring this Court to find that CMS did not authorize GDIT's actions." *Id.* at 647-48. The Fourth Circuit found this argument "unavailing": because GDIT "adhered to the terms of its contract with CMS," the government had "authorized GDIT's actions, satisfying step one of the *Yearsley* analysis." *Id.*

So too here. GEO administers the VWP as authorized and mandated by ICE's contract terms. The Facility Contract specifically requires GEO to administer the VWP. Ex. B at App. A, p. 8. PBNDS 5.8 makes the VWP an "expected outcome" and "expected practice" under the contract, and PBNDS 5.8.V.K specifically states that the facility operator shall pay "at least $1 per day," thereby authorizing the $1 per day per detainee allowance. ICE requires that every VWP participant sign a form prior to working in the VWP, and on that form the detainee acknowledges that he volunteers to work for $1 per day. Nat'l ICE Detainee Handbook (Ex. C, Holmes Decl.), at 17. During the period for which Plaintiff seeks to certify a class, ICE's National Detainee Handbook unambiguously told detainees that "compensation will be $1 per day." *Id.* Thus, GEO is authorized to administer the VWP at $1 per day for each detainee participant.

The Facility Contract confirms this authorization by setting the reimbursement rate for VWP participation at $1 per day. Ex. B at 3. The $1 allowance per detainee is passed from ICE to detainees via a trust account. Any

requirement that GEO pay or advance money to detainees in excess of what is specified by the contract would violate ICE's authorization.  Another court held that it had federal officer removal jurisdiction based on the fact that the VWP administered at GEO's facility at the specified $1 per day rate "**because of**" GEO's contract with ICE.  *See* ECF 32 at 4, *State of Washington v. The GEO Group, Inc*., No. 3:17-cv-05806-RJB (W.D. Wash. Dec. 13, 2017).  Consequently, the allowance rate results from a command of the ICE-GEO Contract, and detainees are compensated at that rate because GEO acts under ICE's authorization.

Notably, the FAC contains **no** allegation that GEO acts beyond the scope of ICE's authorization when it administers the VWP, or that it failed to follow ICE's directions.  Thus, even drawing all inferences in favor of Plaintiff, the FAC fails to allege that VWP payments are made without ICE's authorization.  Paragraph 49 alleges that "GEO's contract with ICE requires GEO to comply with state and local laws."  But the Facility Contract states that "[t]he detainee work program shall not conflict with any other requirements of the contract and must comply with all **applicable** laws and regulations."  Ex. B at App. A, p. 8 (emphasis added).  While Plaintiff claims (and GEO disputes) that California minimum wage law applies, Plaintiff does not, and cannot, allege that GEO exceeds **ICE**'s directions. The $1 daily amount is expressly authorized by PBNDS 5.8.V.K, and is the amount ICE pays to detainees.  Under ICE quality controls, GEO could be fined for not upholding PBNDS 5.8's requirements.  Ex. B at App. D, p. 5.

The FAC contains several new TVPA-related allegations that Plaintiff felt that he needed to participate in the VWP in order to buy items that he claims were not provided.  However, the individual motivation of Plaintiff or other putative class members for working in the VWP is not relevant to whether GEO has immunity against a suit based on administration of the program within the federal government's authorization.  Because GEO acts within ICE's authorization by administering the VWP at the $1 rate for VWP participation, it satisfies *Yearsley*'s

first element with respect to all claims.

## B.  ICE Validly Conferred The Authority To Administer The VWP

GEO also meets *Yearsley's* second element.  Authorization is "validly conferred" if Congress had the power to grant authorization and then "authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor."  *Cunningham*, 888 F.3d at 646-47; *see also In re KBR*, 744 F.3d at 342; *Yearsley*, 309 U.S. at 20-21.  Nothing in the FAC alleges that ICE lacks authorization to operate the VWP or that ICE did not validly delegate the task to GEO.  On the face of the FAC, then, GEO satisfies *Yearsley's* second element.

ICE has authority to require GEO to administer the VWP in contract facilities and to reimburse GEO for an amount of $1 per day per detainee.  The Secretary of Homeland Security and Attorney General have broad authority, much of it delegated to ICE, to create policy to govern immigration generally, and specifically to spend money to operate detention facilities.  *See*, *e.g.*, 8 U.S.C. § 1103(a)(3) (Secretary "shall establish such regulations … and perform such other acts as [she] deems necessary for carrying out [her] authority under the provisions of this chapter"); 8 U.S.C. § 1231(g) ("The Attorney General shall arrange for appropriate places of detention" and "may expend from the [INS] appropriation … amounts necessary to … operate [detention] facilities.").  Congress assumed oversight over the conditions of detention, including the VWP, by mandating training on PBNDS standards and compelling timely implementation of updated standards.  *See* ICE, *Progress in Implementing 2011 PBNDS Standards, Fiscal Year 2016 Report,* at 1 (2017).  The PBNDS were written in collaboration with the American Bar Association (ABA) and immigrant advocacy groups to provide uniform standards to govern all types of detention facilities.  *Id.* at 2-3; DHS, Office of Inspector Gen., Treatment of Immigration Detainees, at 2 (OIG-07-01) (Dec. 2006).  Further, Congress has specifically authorized use of appropriations for an "allowance" to detainees for work performed while in detention.  8 U.S.C. § 1555(d).  Congress

reserved the right to specify an allowance rate "from time to time" in its appropriations bills, which until 1979 was limited to an amount "not in excess" of $1 per day. *See, e.g.*, Dep't of Justice Appropriation Act, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (Oct. 10, 1978). Beginning in 1980, Congress did not specifically mention allowances, implicitly leaving the $1 per day rate set in the 1979 appropriation intact through operation of Section 1555(d).[3] Dep't of Justice Appropriations Act, 1980, Pub. L. No. 96-68, 93 Stat. 416 (Sept. 24, 1979).

However, ICE has understood the Congressionally set $1 rate under 8 U.S.C. § 1555(d) to continue to govern ICE's rate determination. *See* Declaration of Tracey Valerio, *Nwauzor v. The GEO Group, Inc.*, No. 3:17-cv-05769 (W.D. Wash. July 20, 2018), Dkt #105; INS General Counsel, *Your CO 243-C Mem. of Nov. 15, 1991; DOD Request for Alien Labor*, Genco. Op. No. 92-63, 1992 WL 1369402, *1 (Nov. 13, 1992) (noting that discontinuance of including $1 rate in appropriation "does not abrogate [agency] authority to pay aliens for labor performed while in [agency] custody" and "the [agency] retains authority to expend appropriated funds to pay aliens for labor performed while in custody"); *see also* INS General Counsel, *The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities*, Genco. Op. No. 92-8, 1992 WL 1369347, *1 (Feb. 26, 1992) (noting that at INS and contract facilities, "[t]he allowance paid to a detainee for work performed is specifically provided for by 8 U.S.C. § 1555(d) and currently limited by Congress to $1 per day"). Furthermore, the INS General Counsel concluded that detainees are not "employees" because "[a] detainee performs work for institution maintenance, not compensation." *Applicability of Employer Sanctions*, 1992 WL 1369347, at *1.

---

[3] Inclusion of the phrase "specified from time to time" clearly signals that Congress did not intend for a rate to be specified in every appropriation—if a new rate is not specified, it carries it simply carries forward until such time as Congress chooses to revisit it. To read Section 1555(d) differently renders the phrase "from time to time" entirely meaningless.

DOCUMENT PREPARED ON RECYCLED PAPER

These opinions regarding the federal agency's understanding of its own statutory authority and delegated power warrant the Court's deference. *Udall v. Tallman*, 380 U.S. 1, 16 (1965) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration."); *see also NCNB Texas National Bank v. Cowden*, 895 F.2d 1488, 1494 (5th Cir. 1990). The agency opinions unequivocally state that valid authority to issue $1 per day allowances for detainee participation in the VWP comes from Congress, and that detainees are not "employees" of ICE's detention facilities, whether publicly or privately operated.

Because ICE validly conferred authority on GEO to administer the VWP at a rate of $1 per day to participants, *Yearsley*'s second element is satisfied. The FAC should be dismissed either for lack of subject matter jurisdiction or, alternatively, with judgment entered for GEO because GEO cannot be sued under *Yearsley*.

## V.   PLAINTIFF HAS FAILED TO JOIN AN INDISPENSABLE PARTY

Plaintiff has brought this suit solely against GEO. ICE, however, dictates the conditions of confinement, such as GEO's staffing ratios and the challenged VWP that offers a dollar-per-day allowance. Nothing about the number of people GEO employs at Adelanto or the allowance offered to VWP participants can change unilaterally without ICE's consent. Here, however, Plaintiff demands the Court to order substantive changes at Adelanto that impact facility operations—including the use of government appropriations—without ICE's involvement. In other words, Plaintiff's FAC attacks ICE's VWP policy, not simply GEO's administration of it.

Under Ninth Circuit precedents, ICE is required to be joined to this case for two reasons. First, the Court cannot afford complete relief to Plaintiff (or to his alleged class) without joining ICE because ICE could simply take control of the VWP itself, which would nullify any lasting relief as an order enjoining GEO would have no impact on ICE (which pays the allowance even now). Second, any order requiring GEO to act contrary to its contract terms would put it "between a

DOCUMENT PREPARED
ON RECYCLED PAPER

rock and a hard place," unless ICE is also bound by that order.  But Plaintiff's claims prevent joining ICE because it is immune from this suit.  In equity and good conscience, the Court may not subject GEO to further proceedings without joining ICE.  Because it is not feasible to do so and no amendment could cure this problem, the Court must dismiss the case under Fed. R. Civ. P. 19(b).

### A.  Rule 19 Standard

Under Rule 19(a), a person subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person has an interest relating in the action such that disposing of the action in the person's absence may: (i) practically impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring inconsistent obligations because of the interest.  Fed. R. Civ. P. 19(a)(1).  If such a person is absent, the Court must order the plaintiff to join the absent party.  Fed. R. Civ. P. 19(a)(2).

When joinder of a required party is not feasible, a court must determine whether the action can fairly proceed or should be dismissed.  Fed. R. Civ. P. 19(b)(1).  The court considers, in a "practical" manner:  (1) the extent of any prejudice to the absent party or the present ones; (2) the extent to which any prejudice could be lessened or avoided by  protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the another adequate remedy exists if the action were dismissed.  Fed. R. Civ. P. 19(b)(1)-(4).

### B.  ICE Is A Required Defendant

A defendant's contractual counterparty is a required party for actions arising from that contract.  In *Dawavendewa v. Salt River Proj. Agr. Imp. & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002), the plaintiff sought to enjoin hiring preferences by the defendant lessee that were allegedly illegal under federal law.  The defendant

73184611.4

- 19 -

5:17-cv-02514-JGB-SHKx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

argued that a Native American tribe—the owner of the land and the defendant's lessor—was required to join the action because the hiring practices underlying the case were required by the defendant's lease with the tribe. *Id*. at 1154. The Ninth Circuit held that the trial court could not accord complete relief without adding the tribe. *Id.* at 1155-56. The court reasoned that even if the plaintiff won his claim against the defendant lessee, the non-party tribe would not be bound by that judgment. *Id.* at 1155. Thus, the tribe would be free to terminate the defendant's lease and sign a lease with a new party that again required the hiring terms that the plaintiff claimed were illegal. *Id.* at 1155-56. Because this would undercut the plaintiff's relief "even if victorious," the tribe was a required party under Rule 19(a)(1)(A). The Ninth Circuit concluded that it was a "fundamental principle" that "***a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract***." *Id.* at 1157 (emphasis added).

A party is also likely to face inconsistent obligations when it is sued for actions it took in performance of a contract, but its contractual counterparty is absent from the suit. The Ninth Circuit addressed this problem in *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010). The EEOC filed a suit against a coal company, claiming that the company engaged in preferential hiring practices that violated federal law. *Id.* at 1074. But those practices were required under its lease with the Native American nations ("Nation") that owned the land, and had also been approved by the Department of the Interior ("DOI"). *Id.* at 1074-75. As in *Dawavendewa*, the Nation was a required party to the action because a judgment against the coal company in the absence of the Nation would put the company "between the proverbial rock and a hard place—comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it." *Id.* at 1078 (quotation omitted).

But the Ninth Circuit further held that the DOI was a required party to the case because (1) a decision in the EEOC's favor would subject the company to "pay

DOCUMENT PREPARED ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

damages for having engaged in conduct that was mandated by the [DOI]" for which it would not be able to seek indemnification in the DOI's absence, and (2) injunctive relief granted against the coal company would mean that the company would be required by a court order to disregard the lease provision but the DOI would be free to enforce it "upon pain of losing the leases." *Id.* at 1081.  The DOI had a direct interest in the case even though it had not signed any leases because a judgment against the coal company would either require the DOI to change its lease-approval rules or to continue to enforce them and leave the coal company with conflicting obligations. *Id.* at 1081-82.  Thus, the DOI was a required party.

Here, ICE is a required party because the Court cannot afford complete relief to Plaintiff without joining ICE.  Plaintiff seeks to prevent GEO from administering the VWP without paying minimum wage to detainee participants.  But GEO is required by the contract to administer the VWP at a rate of $1 per day.[4]  *See* Ex. B at 3, App. A at 8 (requiring VWP and incorporating PBNDS payment terms).  ICE must consent to any adjustment to the $1 rate—unsurprisingly, since the allowance impacts governmental appropriations.  8 U.S.C. § 1555(d); Genco Op. No. 92-63, 1992 WL 1369402.  Even were the Court to declare detainees to be GEO's "employees" under California's MWL and order GEO to pay minimum wages, the order will not bind ICE.  Thus, ICE would be free to manage the program itself or find another contractor not subject to the Court's order to continue the VWP under the same terms in force now, giving Plaintiff no real relief but imposing tremendous prejudice on GEO.  This is like *Dawavendewa*, in which an absent Native American tribe was deemed a required party because it could cancel the defendant's lease and re-lease to another party on identical terms.  276 F.3d at 1155-56.

---

[4] To the extent Plaintiff alleges that the PBNDS allows for payment of a minimum wage to detainees, this further shows ICE is a required party, because that allegation is inconsistent with ICE's own position on this very issue.  Genco. Op. No. 92-63, 1992 WL 1369402 (amount of payment to detainees derives from federal statute, 8 U.S.C. § 1555(d)).

DOCUMENT PREPARED ON RECYCLED PAPER

73184611.4

- 21 -

5:17-cv-02514-JGB-SHKx

ICE is also a required party because GEO will face inconsistent obligations if ICE is not joined.  The INS (now ICE) general counsel has expressly opined that detainees in its own or in contract facilities are ***not*** employees.  Genco. Op. No. 92-8, 1992 WL 1369347, at *1 (detainees are not "employees" for work done in detention, because "[a] detainee performs work for institution maintenance, not compensation").  Accordingly, GEO administers the VWP to detainees, but does not employ them.  PBNDS, § 5.8 (describing VWP as "expected practice"); Ex. B at App. A, p. 8.  Indeed, the Facility Contract expressly distinguishes between detainee activities and employment and prohibits GEO from employing detainees. Ex. B at App. A, p. 8 ("Detainees shall not be used to perform the responsibilities or duties of an employee of the Service Provider.").  ICE requires GEO to perform pre-employment suitability checks for all employees and prospective employees. *Id*. at 47-49.  Moreover, GEO is prohibited from employing for any position, any illegal or undocumented alien, and shall only hire U.S. citizens for any position that involves access to, or development of, any DHS/ICE IT system.  *Id*. at 49-50. These requirements exclude essentially all detainees from employment by GEO.

Further, ICE's interest in protecting its own policies and contracts makes it a required party.  *See Lopez v. Arraras*, 606 F.2d 347, 353 (1st Cir. 1979) (Housing and Urban Development ("HUD") a required party when it had "not had a chance to explain the intricacies of its relationship with the [defendant] local housing authority and … [the court was] loath to resolve this controversy without affording HUD the occasion to fully present its position").  Members of Congress urged federal agencies to answer the kinds of unsustainable allegations that Plaintiff makes here. *See* March 7, 2018 Letter, ECF 24-2.  ICE is a Rule 19 required party.

## C. <u>ICE Cannot Be Joined, And This Suit Must Be Dismissed</u>

Federal agencies are immune from suit unless Congress has specifically authorized suits against them.  "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to

be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (alterations omitted).  Thus, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).  Like any other federal agency, ICE is protected by sovereign immunity apart from any express waiver.  *See, e.g.*, *Clarke v. United States*, 107 F. Supp. 3d 238 (E.D.N.Y. 2015) (sovereign immunity barred wrongful death claim against ICE); *Rangel v. United States*, No. CV-10-3096, 2010 WL 5018370 (E.D. Wash. Dec. 3, 2010) (*Bivens* claim barred); *Palomera v. ICE*, No. 1:09-cv-0318, 2009 WL 973669, (N.D. Ga. Apr. 8, 2009) (§ 1983 suit, *Bivens* action, and state law claims barred).

Here, ICE's sovereign immunity bars it from being joined to defend against Plaintiff's claims.  *Mitchell*, 445 U.S. at 538.  As the Ninth Circuit explained, "the defendant's only sin, if indeed it was a sin was to comply with a [contract term] inserted in its [contract] at the insistence of the [government].   It would be profoundly unfair for a court to award damages … while allowing [the defendant] no redress against the government." *Peabody*, 610 F.3d at 1084.  So too here.  ICE cannot be joined, and equity requires that this case be dismissed.

## VI.   PLAINTIFF'S MWL CLAIM IS PREEMPTED BY FEDERAL LAW

In the event the Court does not dismiss on immunity or joinder grounds, GEO also seeks dismissal on other grounds.  GEO recognizes that the Court has issued prior rulings, but an amended complaint supersedes the original complaint and renders it without legal effect.  *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012).  GEO is entitled to seek dismissal of the amended complaint.[5]

---

[5] *See, e.g.*, *Janis v. United States*, 2011 WL 4738315, at *2 (E.D. Cal. Oct. 6, 2011) ("Plaintiff's filing of the Fourth and Fifth Amended Complaints necessarily mooted both his allegations in the Third Amended Complaint and any rulings as to whether, under the standards then applicable, a cognizable claim had been stated."); *Rezek v. City of Tustin*, 2014 WL 3347860, at *2 (C.D. Cal. July 3, 2014); *Bromfield v.*

DOCUMENT PREPARED ON RECYCLED PAPER

### A.   Federal Law Occupies The Field Of Detainee Employment

States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. *Arizona v. United States,* 567 U.S. 387, 399, 401-02 (2012).

The Court's prior opinion addressing field preemption concluded that Congress did not prevent states from regulating **payment** to detainees.  The proper question, however, is:   Did Congress leave states any room to define the relationship between immigration detainees and a detention facility as "***employment***"?  The answer to this question is "no" for at least two reasons:  1) 8 U.S.C. § 1555(d) shows that Congress does not think detainees are employees, since the VWP payments are an "allowance" for "work performed while in detention"[6]; and 2) the Immigration Reform and Control Act ("IRCA") and implementing regulations make work authorization and detention incompatible. *See* 8 CFR § 274a.14 (institution of removal proceedings—which precede detention in all cases—automatically removes any specific work-authorization grant); 8 C.F.R. § 1001.1(p) (lawful permanent resident status automatically terminates on final removal order).

More specifically, detention, and the reasons for it, have a profound effect on an alien's ability to seek work authorization.  First, non-criminal aliens arrested under a warrant from the Attorney General pending a removal decision may be either detained or paroled, but may be provided with work authorization only ***if***

---

*McBurney*, 2008 WL 2746289, at *2 (W.D. Wash. July 8, 2008), *report and recommendation adopted by* 2008 WL 4426827, at *1 (W.D. Wash. Sept. 26, 2008) ("As [plaintiff] has now filed a new, amended complaint, the GEO defendants once again are entitled to challenge the validity thereof under  [Rule] 12(b)(6).").

[6] Relatedly, Congress's establishment of a federal minimum wage, 29 U.S.C. 201 is only reconcilable with Section 1555(d) if Congress did not consider detainees to be employees.  When Congress set the $1 a daily rate for detainees in 1979, the federal minimum wage for employees was $3.10 per hour.  This signals that Congress did not consider detainees to be employees.

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

they are already lawful permanent residents or would otherwise be eligible apart from their arrest and detention.  8 U.S.C. § 1226(a).  Any parole granted to the non-criminal alien may be revoked by the Attorney General, at which time the alien is returned to detention under the original warrant.  8 U.S.C. § 1226(b).  Second, aliens with qualifying criminal convictions **must** be detained by the Attorney General upon release from prison.  8 U.S.C. § 1226(c).  Criminal aliens generally may not be released, and the provisions requiring detention offer no means through which the detained criminal alien can be provided with work authorization.  *See* 8 U.S.C. § 1226(c).  Third, work authorization granted under any of the 37 specific application categories automatically terminates when deportation proceedings are instituted, and detainees under a final removal order may only apply for work authorization when released from detention.   8 C.F.R. §§ 274a.14(a)(1), 274a.12(c)(18).  Even lawful permanent residence is revoked when an alien is under a final removal order.  8 C.F.R. § 1001.1(p).  Through this framework, federal law makes detainees unemployable; Congress left states no room to say otherwise.  Because state law cannot determine, in contravention of federal law, whether detainees are the facility's employees; whether detainees are to be paid a state minimum wage is irrelevant.

### B.    Applying the MWL Raises An Unavoidable Conflict With IRCA

Conflict or obstacle preemption arises when a challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Nation v. Cty. of Glendale*, 804 F.3d 1292, 1297 (9th Cir. 2015).  "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

This Court's prior ruling stated that the MWL was not conflict preempted because an employer can comply with the state law once IRCA has already been violated.  This approach to conflict preemption puts the cart before the horse.  A

DOCUMENT PREPARED ON RECYCLED PAPER

state law is preempted when "it is impossible for a private party to comply with both state and federal law…"  *Crosby*, 530 U.S. at 372.   When such dual compliance is impossible, federal law prevails.  U.S. Const. art. VI, cl. 2.  Prior to this case, the settled legal view was that the VWP did not invoke IRCA because detainee participation is not employment.  Genco. Op. No. 92-8, 1992 WL 1369347 (explaining INS's understanding of its statutory authorization for the VWP, and why VWP work does not violate IRCA); *see also Guevara*, 1992 WL 1029, at *1-2 (detainee work does not create employment relationship with detention facility); *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395-96 (5th Cir. 1990) (same).

But when a court reaches the conclusion that a detainee could prove that he or she is an "employee" under state law, then the conflict preemption issue is squarely presented.  If applying state law *causes* conduct that is otherwise legal to become a violation federal law, then it is impossible for the defendant to comply with both the state and the federal law.  In that situation, federal law prevails.  That is especially true where, as here, the defendant's conduct is not only explicitly authorized by federal law but also required under its contract with the federal government.  *See* 8 U.S.C. § 1555(d); Ex. B at App. A, p. 8.  Accordingly, the conflict that GEO faces is unavoidable.

## VII.   EVEN IF THE MWL IS NOT PREEMPTED, DETAINEES WOULD STILL NOT BE CONSIDERED "EMPLOYEES"

Even if the MWL or other applicable wage orders were not preempted by federal law, Plaintiff's claim still fails as a matter of law.  Plaintiff's MWL cause of action only applies if he, and other members of the proposed class, are considered GEO's employees.  Plaintiff was not an employee of GEO during his detention at Adelanto, so this claim must be dismissed.

California's Labor Code does not define "employee" as it relates to the payment of minimum wage.  *See* Cal. Lab. Code § 1194.  However broadly the term "employee" may be read, it cannot extend past federal prohibitions on hiring

DOCUMENT PREPARED ON RECYCLED PAPER

73184611.4                                                                5:17-cv-02514-JGB-SHKx

illegal aliens.  In *Hale v. Arizona*, the Ninth Circuit held that the typical test for determining whether an employer-employee relationship exists—the economic reality test—was inapplicable to prisoners because their work did not present an employment context at all.   993 F.2d 1387, 1394-95 (9th Cir. 1992 ("[T]he economic reality of the relationship between the [prisoner] worked and the entity for which work was performed lies in the relationship between prison and prisoner. It is penological, not pecuniary.")  "[T]he problem of substandard living conditions, which is the primary concern of the FLSA, does not apply to prisoners, for whom clothing, shelter, and food are provided by the prison." *Id.* at 1396.

Here, like the inmates in *Hale*, ICE detainees have no ability to seek outside employment because their lack of work authorization prevents them from seeking employment in a free market.  *Id.* at 1394.  Similarly, here, detainees are "taken out of the national economy upon [detention]" and, often, were not properly part of the national economy even before.  *Id.* at 1395.  While the inmates in *Hale* were subject to a hard-labor requirement under state law that detainees at Adelanto are not subject to, detainees' participation in the VWP is strictly voluntary, and Plaintiff has not alleged otherwise in support of his MWL claim.  *See* FAC at ¶¶ 83-92.

## VIII.   <u>THE COURT SHOULD DISMISS PLAINTIFF'S FORCED LABOR CLAIMS UNDER THE STATE AND FEDERAL TVPA</u>

Section 1589 was enacted in 2000 as part of the TVPA, which has the purpose "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims."  Pub. L. No. 106-386, § 102(a), 114 Stat. 1488 (2000).  Congress's clear intent to was to target, prosecute, and deter human traffickers who transport persons across international borders or take them from their home communities to unfamiliar destinations and force them to work.  Similarly, Section 236.1(a) of the Penal Code states: "A person who deprives or violates the personal liberty of another ***with the intent*** to obtain forced

1 labor or services, is guilty of human trafficking."  Neither ICE nor GEO brought

2 Plaintiff to Adelanto for the purpose of VWP participation.

3     Plaintiff's allegations also fail to allege how GEO, a corporate entity, could

4 be found liable under the TVPA as "whoever knowingly provides or obtains the

5 labor or services of a person" by means of an act prohibited by the statute.  18

6 U.S.C. § 1589(a).  Plaintiff alleges GEO violated 18 U.S.C. § 1589(a) by

7 "knowingly maintaining a corporate policy and uniform practice at the Adelanto

8 Facility aimed at obtaining nearly free detainee labor and services" by withholding

9 necessities and making threats.  FAC at ¶ 113.  This allegation simply does not

10 match up with the purposes of the federal or state TVPA.

11     GEO is unaware of any case in which a corporate defendant alone has been

12 found liable for a TVPA violation by "maintaining" a "policy" and "practice" that

13 "aim[s] at" obtaining labor or services.  Plaintiff cites none, and his allegations do

14 not show how that any a corporation's policy or practice (much less as directed by

15 the federal government by contract) would make it subject to TVPA, a criminal

16 statute (with civil remedies).  The statute is clearly directed at individuals.  *See* 18

17 U.S.C. § 1589(d) (noting penalty of "imprisonment").  Where the literal application

18 of a criminal statute would lead to "extreme or absurd results, and where the

19 legislative purpose gathered from the whole act would be satisfied by a more

20 limited interpretation," the "[g]eneral terms descriptive of a class of persons made

21 subject to a criminal statute may and should be limited."  *United States v. Katz*, 271

22 U.S. 354, 362 (1926); *see also Brooks v. Donovan*, 699 F.2d 1010, 1011 (9th Cir.

23 1983) (a court "must look beyond the express language of a statute where a literal

24 interpretation would thwart the purpose of the over-all statutory scheme or lead to

25 an absurd result").  The TVPA's scope has been limited where there was no

26 indication of Congressional intent to reach a certain kind of conduct.[7]  Likewise,

27

28 [7] Limits to the TVPA's reach have been recognized.  *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014) ("[W]e should not—without a clear expression of

DOCUMENT PREPARED ON RECYCLED PAPER

holding GEO liable for a civil TVPA claim for administering ICE's VWP would result in an unfair surprise to GEO.  *Brooks*, 699 F.2d at 1011.

Plaintiff's new factual allegations in the FAC pertaining to his TVPA claims remain glaringly deficient.  FAC at ¶¶ 59-73.  Plaintiff fails to provide details or the necessary factual predicates to support such conclusory allegations.  For example, Plaintiff does not identify who threatened him, how he was threatened, or when he was threatened.  Plaintiff does not connect any purported threat to any specific demand to work.  Plaintiff does not even identify what specifically he was forced to do or when he was forced to do it.  Plaintiff also does not identify who at GEO supposedly served him rotten food.  *See Roman v. Tyco Simplex Grinnell*, 2017 WL 2427251, at *5 (M.D. Fla. June 5, 2017) (dismissing claim for failure to allege "who threatened him, how he was threatened, and for what purpose").  Plaintiff's allegations may reflect his own alleged individual subjective motivation for his VWP participation, but they do not state a claim that GEO violated the TVPA.

## IX.  THE TVPA, CTVPA, AND MWL ARE UNCONSTITUTIONALLY VAGUE AS APPLIED TO GEO'S ADMINISTRATION OF THE VWP

A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required.  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).[8]  This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment.  *Id.* (citing *United States v. Williams*,

---

Congressional intent—transform a statute passed to implement the Thirteenth Amendment against slavery or involuntary servitude into one that generally makes it a crime for a person *in loco parentis* to require household chores.").

[8] *See also Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law"); *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972) ("Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids'" (citation omitted).

DOCUMENT PREPARED
ON RECYCLED PAPER

553 U.S. 285, 304 (2008)).   It requires the invalidation of laws that are impermissibly vague; a conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.*  The TVPA, CTVPA, and the MWL, as applied to GEO, are each unconstitutionally vague.

Plaintiff urges a reading of this criminal statute that recognizes no principled limitations.   Section 1589(a)'s language applies to "whoever knowingly…."  Plaintiff argued that this term is so broad that "[t]here are no exceptions, exclusions, or exemptions that would exclude GEO from liability for violating the terms of the law."  ECF 23 at 16-17.  But if the statute could be read so broadly—applying to a company that contracts with ICE to house detainees in ICE's custody, and subject to ICE's supervision as it carries out ICE's programs—it is so vague as not to provide notice of what conduct is unlawful.  DHS and its agencies are charged with the federal government's anti-trafficking efforts.  22 U.S.C. § 7103(b).  Detainees are at the facility only because these agencies put them there, not because they were trafficked there by GEO, and the VWP is available because ICE requires it.  GEO could be terminated at any time if it engaged in "the use of forced labor in the performance of the grant, contract, or cooperative agreement."   22 U.S.C. § 7104(g)(iii).  Yet GEO has never been terminated or even notified of any alleged violation by the federal government.   Whether the statute applies to GEO's administration of the VWP is so vague that people of common intelligence (ICE, GEO) must guess at its meeting.  *Connally*, 269 U.S. at 391.  There is no notice sufficient under the Due Process Clause that a contractor carrying out ICE policy in these circumstances "knowingly provides or obtains the labor or services of a person" by an act prohibited by the TVPA.

Similarly, the CTVPA provides that "[a] person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is

guilty of human trafficking." Penal Code § 236.1(a). GEO does not deprive any detainee of personal liberty "with the intent to obtain forced labor or services." ICE puts detainees in custody and sends them to the facility, and ICE contractually requires GEO to offer the VWP. Persons of common intelligence can only guess as to whether GEO's administration of federal detention policy to federal detainees would fall within the CTVPA's reach. No California agency ever informed GEO of a position that the VWP violates the CTVPA.

Finally, the MWL and Wage Order 5 provide no notice that GEO was required to pay a state minimum wage to VWP participants. The statute does not define the terms "employee" or "employer." California's labor agencies have **never** put GEO on notice that GEO was required to pay a minimum wage to VWP participants or that any wage orders apply to them. By contrast, Cal. Penal Code § 2700 *requires* prisoners in the custody of the California Department of Corrections and Rehabilitation to work. *See also* 15 C.C.R. § 3040(a). Persuasive precedents under the Federal Labor Standards Act hold that detainees are not "employees" and facilities are not "employers." *Alvarado Guevara*, 902 F.2d at 395. ICE's predecessor agency opined that detainees are not employees of private detention facilities. Genco. Op. No. 92-8, 1992 WL 1369347, at *1. Immigration detainees are unauthorized to work in the United States, and therefore ineligible to be "employees" of GEO. 8 U.S.C. § 1324a. Congress provided for the payment of an allowance for detainee work and set the rate for it, there is no notice that the minimum wage laws of various states would govern VWP payments.[9] The terms "employee" and "employer" are too vague to provide notice that a federal contractor must pay state minimum wage laws for detainees' VWP participation.

---

[9] As noted previously, establishment of an allowance rate below the amount Congress established as the federal minimum wage signals that federal minimum wage laws are inapplicable. There is nothing to suggest state laws would apply.

DOCUMENT PREPARED ON RECYCLED PAPER

## X. THE COURT SHOULD DISMISS PLAINTIFF'S UNJUST ENRICHMENT CLAIM

In prior briefing, Plaintiff attempted to reconfigure his unjust enrichment claim as a quasi-contract claim. But Plaintiff does not allege the existence of a quasi-contract, and has alleged entitlement to legal claims, such as the MWL or TVPA. *See, e.g., Rhynes v. Stryker Corp.*, 2011 WL 2149095, *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff may entitle her to an adequate remedy at law, equitable relief is unavailable."). Even so, Plaintiff cannot state a valid quasi-contract claim because he does not allege that he or other detainees had a reasonable expectation of a bargained-for value for their VWP work other than $1 per day. *See Maglica v. Maglica*, 66 Cal. App. 4th 442, 450-51 (1998). Detainees receive a National Detainee Handbook from ICE stating that if they wished to participate in the VWP, they would be paid $1 per day. Holmes Decl., Ex. C at § 36. Detainees, including Plaintiff, signed a form stating that they agreed to participate in the VWP for $1 per day. *Id.* This form, and decades of detention law, means that no detainee could reasonably expect a state law minimum wage or anything beyond ICE's $1 daily allowance.

## XI. PLAINTIFF'S DERIVATIVE UCL CLAIM SHOULD BE DISMISSED

To state a claim under the unlawful prong of the UCL, a plaintiff must allege defendant that violated some separate law. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.3 (9th Cir. 2009). Thus, where the conduct alleged by a plaintiff does not violate any law, the plaintiff has not stated a claim under the UCL.

## XII. CONCLUSION

For the foregoing reasons, GEO requests that this Court dismiss the Complaint without leave to amend under Rule 12(b)(1) or, alternatively, 12(c).

Dated:        July 20, 2018                    **NORTON ROSE FULBRIGHT US LLP**


By */s/ Lesley Holmes*
LESLEY HOLMES
Attorneys for The GEO Group, Inc.

DOCUMENT PREPARED ON RECYCLED PAPER