Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Counsel for Plaintiff
***Additional Counsel on Signature Page.***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO GEO'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:  August 20, 2018<br>Time: 9:00 am.<br>Courtroom: 1<br>Judge: The Honorable Jesus G. Bernal |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  STATEMENT OF FACTS .....................................................................2

III. LEGAL STANDARD .............................................................................3

IV.  ARGUMENT .........................................................................................4

   A.  GEO'S MOTION TO DISMISS BASED ON EXTRINSIC EVIDENCE REGARDING DISPUTED TERMS OF ITS CONTRACT MUST BE DENIED OR CONVERTED INTO A MOTION FOR SUMMARY JUDGMENT ........................................................................................ 4

   B.  GEO IS NOT ENTITLED TO DISMISSAL BASED ON DERIVATIVE SOVEREIGN IMMUNITY BECAUSE NEITHER YEARSLEY ELEMENT IS SATISFIED. ................................................................ 5

      1.  The Limited Contracting Documents Available Indicate a Federally-Approved Reimbursement Rate—Not a Rate of Pay. .......................... 7

      2.  ICE Cannot Validly Confer GEO Authorization to Violate the California Minimum Wage Law By Paying Plaintiffs $1 Per Day. .................... 11

   C.  ICE IS NEITHER A NECESSARY NOR AN INDISPENSABLE PARTY TO THIS ACTION UNDER RULE 19. ............................................... 13

      1.  There is No Irreconcilable Conflict Between Plaintiff's Claim for Relief and GEO's Contract with the City. ................................................... 14

      2.  GEO's Reliance on the General Counsel Opinion Letters is Misplaced. ........ 15

      3.  ICE does not have a legally protected interest in this case. ............... 16

      4.  The Action should proceed, in equity and good conscience, in the absence of ICE. ....................................................................................... 18

   D.  PLAINTIFF HAS STATED A PLAUSIBLE CLAIM FOR RELIEF AGAINST GEO UNDER THE CALIFORNIA AND FEDERAL TRAFFICKING VICTIMS PROTECTION ACTS. .............................. 18

   E.  THE TVPA, CTVPA, AND MWL ARE NOT VOID FOR VAGUENESS. ... 21

   F.  THIS COURT HAS ALREADY CONSIDERED AND REJECTED GEO'S REMAINING ARGUMENTS. ............................................. 24

V. CONCLUSION .......................................................................................25

i

# TABLE OF AUTHORITIES

## **Cases**

*A. Kemp Fisheries, Inc. v. Castle & Cook, Inc.,*
852 F.2d 493 (9th Cir. 1988) ............................................................. 7

*Almont Ambulatory Surgery Center, LLC v. United Health Group, Inc.,*
2015 WL 12778048 (C.D. Cal. Oct. 23, 2015) ........................................... 5

*American Petroleum Institute v. E.P.A.,*
52 F.3d 1113 (D.C. Cir. 1995) ....................................................... 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...........................................................4, 20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................. 4

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.,*
797 F.3d 720 (9th Cir. 2015) ........................................................ 10

*Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011) ...................................................... 4

*Campbell–Ewald v. Gomez,*
136 S.Ct. 663 (2016) ....................................................... 6, 8, 9, 11

*Chao Chen v. GEO Grp. Inc.,*
No. 3:17-CV-05769-RJB, 2018 WL 1963669 (W.D. Wash. Apr. 26,
2018) ..................................................... 1, 2, 11, 12, 14, 15, 17, 18

*Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.,*
2013 WL 12131576 (C.D. Cal. Mar. 21, 2013) ........................................ 25

*Cunningham v. General Dynamics Information Technology, Inc.,*
888 F.3d 640 (4th Cir. 2018) .......................................................8, 9, 11

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
276 F.3d 1150 (9th Cir. 2002) ..................................................14, 15

ii

*EEOC v. Peabody W. Coal Co.*,
  610 F.3d 1070 (9th Cir. 2010)....................................................................14, 15

*Elec. Constr. & Maint.. Co., Inc. v. Maeda Pac. Corp.*,
  764 F.2d 619 (9th Cir. 1985)........................................................................ 3

*Ethyl Corp. v. E.P.A.*,
  51 F.3d 1053 (D.C. Cir. 1995) .................................................................... 13

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489........................................................................................... 22

*Hopkins v. Americans Home Mortgage Servicing, Inc.*,
  2014 WL 580769 (N.D. Cal. Feb. 13, 2014) ................................................. 5

*In re Benny*,
  81 F.3d 91 (9th Cir. 1996) .......................................................................... 25

*In re Hanford Nuclear Reservation Litig.*,
  534 F.3d 986 (9th Cir. 2008)...................................................................... 10

*In re Wilshire Courtyard*,
  729 F.3d 1279 (9th Cir. 2013) ..................................................................... 4

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009)....................................................................... 4

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990)...................................................................... 17

*Menocal v. GEO Grp., Inc.*,
  113 F. Supp. 3d 1125 (D. Colo. 2015).....................................................21, 22

*Michigan v. E.P.A.*,
  268 F.3d 1075 (D.C. Cir. 2001). .................................................................. 13

*Minneci v. Pollard*,
  565 U.S. 118 (2012) .................................................................................... 9

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) *cert. denied*, 563 U.S. 1002 (2011)................................ 3

iii

*Natural Resources Defense Council v. U.S. Forest Service,*
    421 F.3d 797 (9th Cir. 2005)...................................................................12

*Novoa v. GEO Grp., Inc.,*
    2018 WL 3343494 (C.D. Cal. June 21, 2018) ........................................21

*Owino v. CoreCivic, Inc.,*
    2018 WL 2193644 (S.D. Cal. May 14, 2018) ....................................21, 22

*Salim v. Mitchell,*
    183 F. Supp. 3d 1121 (E.D. Wash. 2016) ...........................................6, 10

*Seattle Audubon Soc'y v. Evans,*
    952 F.2d 297 (9th Cir. 1991).................................................................12

*Sessions v. Dimaya,*
    138 S. Ct. 1204 (2018) .........................................................................22

*Smithsfork Grazing Ass'n v. Salazar,*
    564 F.3d 1210 (10th Cir. 2009) ...........................................................12

*United States v. Lanier,*
    520 U.S. 259 (1997). ...........................................................................22

*United States v. Wyatt,*
    408 F.3d 1257 (9th Cir. 2005)..............................................................22

*Vanguard Integrity Professionals, Inc. v. Team Gordon, Inc.,*
    2008 WL 11342701 (C.D. Cal. 2008) .....................................................7

*Wehlage v. EmpRes HealthCare Inc.,*
    821 F. Supp. 2d 1122 (N.D. Cal. 2011) ................................................24

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.,*
    135 F.3d 658 (9th Cir. 1998)..................................................................3

*Yearsely v. W.A. Ross Construction Co.,*
    309 U.S. 18 (1940)...............................................................5, 6, 7, 8, 9, 13

iv

**Statutes**

8 U.S.C. § 1555(d) ................................................................. 11, 12, 13

18 U.S.C. § 1589(a) .................................................................. 18, 22

18 U.S.C. § 1595 .............................................................................. 22

31 U.S.C. § 1301 ............................................................................. 12

**Other Authorities**

California Trafficking Victims Protection Act ............................... 21, 22

*Dep't of Justice Appropriation Act*, 1979, Pub. L. No. 95-431, 92 Stat. 1021,
    1027 (Oct. 10, 1978) ............................................................... 13

INS General Counsel, *The Applicability of Employer Sanctions to Alien
    Detainees Performing Work in INS Detention Facilities,* Genco Op. No. 92-
    8 (INS), 1992 WL 1369347 (Feb. 26, 1992) ............................... 16

INS General Counsel, *Your CO 243-C Memorandum of November 15, 1991;
    DOD Request for Alien Labor*, Genco Op. No. 92-63 (INS), 1992 WL
    1369402 (Nov. 13, 1992) ......................................................... 16

Office of Inspector General, Department of Homeland Security, "ICE's
    Inspections and Monitoring of Detention Facilities Do Not Lead to
    Sustained Compliance or Systemic Improvements" (June 26, 2018) .............. 23

Trafficking Victims Protection Act .............................. 18, 21, 22, 24

Zusha Elinson, "Detention Operators Face Suits Over $1-a-Day Work
    Programs for Migrants," The Wall Street Journal (July 21, 2018) ............ 17

**Rules**

Federal Rule of Civil Procedure 19 ........................................... 14, 17

Central District of California Local Rule 7-18 ............................... 24

Federal Rule of Civil Procedure 12(b)(1) ................................................................ 4

Federal Rule of Civil Procedure 12(b)(6) ................................................. 1, 3, 4, 21

Federal Rule of Civil Procedure 12(c) .................................................................... 4

5:17-cv-02514-JGB

# I.     INTRODUCTION

GEO seeks dismissal under Federal Rule 12(b) using unsworn facts and extrinsic evidence found nowhere in Plaintiff's complaint. GEO's argument rests on a shaky contract interpretation that assumes what it sets out to prove. The corporation omits key contract terms—and indeed, the full contract itself—undercutting its contentions.

GEO claims its service contract with the City of Adelanto (the "City") and the City's Intergovernmental Service Agreement ("IGSA") with ICE immunize the corporation from suit. But contrary to GEO's assertions, the federal government has not set, authorized, or approved a specific rate of pay for GEO to compensate detained immigrants who work for the corporation at the Adelanto Detention Center (the "Adelanto Facility"). And even if the contract did authorize GEO to violate California Minimum Wage Law ("MWL") by paying detained immigrants only $1 per day, which it does not, such authorization would not confer derivative sovereign immunity upon GEO because it would not be pursuant to a valid delegation of authority by Congress to ICE.

GEO's argument that ICE is a required defendant is similarly incorrect. This argument has already been considered and rejected by the U.S. District Court for the Western District of Washington in *Chen v. The GEO Group, Inc.*, a challenge to GEO's failure to pay the Washington minimum wage to civil detainees locked up at its facility

in Tacoma.[1] Here, as in *Chen*, the parties could be accorded complete relief without ICE, and ICE has expressed no intention to assert any interest in this litigation.

Finally, GEO's attempts to re-litigate its federal preemption and other defenses are, in effect, motions for reconsideration that are not properly before this Court. The Court's prior decisions are the law of the case. GEO offers no compelling justification for departing from it. Therefore, GEO's motion to dismiss should be denied. In the alternative, this Court should convert GEO's motion into one for summary judgment and set a discovery schedule allowing Plaintiff to conduct discovery.

## II.   STATEMENT OF FACTS

GEO relies upon disputed factual assertions outside the four corners of the complaint.[2] For example, GEO makes the following disputed factual averments extrinsic to Plaintiff's First Amended Complaint ("FAC"):

- "ICE operates many of its own Service Processing Centers (SPCs)."[3]

- "GEO administers the VWP as authorized and mandated by ICE's contract terms."[4]

- "ICE requires that every VWP participant sign a form prior to working in the VWP, and on that form the detainee acknowledges that he volunteers to work for $1 per day."[5]

---

[1] *See* **Exhibit A:** *Chao Chen v. GEO Grp. Inc.*, 2018 WL 1963669, at *4 (W.D. Wash. Apr. 26, 2018) (denying GEO's second motion to dismiss).
[2] Dkt. No. 48-1.
[3] *Id.* at 9.
[4] *Id.* at 14.
[5] *Id.* (citing ICE National Detainee Handbook, Dkt. 48-2, Ex. C, 17).

2

- "During the period for which Plaintiff seeks to certify a class, ICE's National Detainee Handbook unambiguously told detainees that 'compensation will be $1 per day.'"[6]

GEO omits the existence of, and has not submitted to this Court, the full scope of contracts, agreements, and policy materials governing the legal obligations of each party responsible for operating the Adelanto Facility. The complete federal contracting documents necessary to resolve GEO's plea for immunity, and much of the remainder of its Motion, are not before the Court. That is because GEO has failed to submit them. Accordingly, GEO's claims cannot be resolved pre-discovery.

## III.   LEGAL STANDARD

On review of GEO's 12(b)(6) motion, the Court's task "is necessarily a limited one," concerned with "only whether the complaint states a claim upon which relief can be granted," and not whether Plaintiff will ultimately prevail on the merits.[7] In making this determination, the Court must accept all well-pleaded allegations of material fact as true, and draw all reasonable inferences in favor of Plaintiff.[8] Plaintiff need not plead a specific legal theory in his complaint, so long as GEO "receives notice as to what is at issue in the lawsuit."[9] Courts "should be especially reluctant to dismiss on the basis of

---

[6] *Id.* (citing Dkt. 48-2 at 17).

[7] *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1100 (9th Cir. 2010) *cert. denied*, 563 U.S. 1002 (2011) (internal quotations omitted).

[8] *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

[9] *Elec. Constr. & Maint.. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985).

3

the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions."[10] Thus, the Court must deny a motion to dismiss where, as here, the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] In deciding a Rule 12(c) motion, courts apply the same standards applicable to a Rule 12(b)(6) motion.[12]

In contrast, a Rule 12(b)(1) motion may be based on extrinsic evidence, but most courts *deny* such motions where there is a dispute concerning the facts underpinning the subject matter jurisdiction, and those facts are "inextricably intertwined" with the merits of the plaintiff's claims. In such cases, the defendant must proceed under Rule 12(b)(6) or Rule 56, and "the court should resolve the relevant factual disputes only after appropriate discovery."[13]

## IV.   ARGUMENT

### A. GEO'S MOTION TO DISMISS BASED ON EXTRINSIC EVIDENCE REGARDING DISPUTED CONTRACT TERMS MUST BE DENIED OR CONVERTED INTO A MOTION FOR SUMMARY JUDGMENT.

---

[10] *Id.* at 623 (citation omitted).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12] *Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011).

[13] *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (emphasis added); *see In re Wilshire Courtyard,* 729 F.3d 1279, 1284, n.4 (9th Cir. 2013).

GEO seeks dismissal of this case based on what it says are the terms of its contract to operate the Adelanto Facility. GEO urges the Court to interpret the terms of that contract based solely on redacted pages extracted from GEO's Service Agreement with the City and the IGSA between the City and ICE.[14] Summary dismissal of this action based on cherry-picked pages of incomplete and redacted contracts that are extrinsic to Plaintiff's FAC does not comport with the requirements of Rule 12(d).[15] The Court should therefore deny GEO's motion or, alternatively, treat it as one for summary judgment and afford Plaintiff the opportunity to conduct discovery and present all material pertinent to the motion.

**B. GEO IS NOT ENTITLED TO DISMISSAL BASED ON DERIVATIVE SOVEREIGN IMMUNITY BECAUSE NEITHER *YEARSLEY* ELEMENT IS SATISFIED.**

GEO has not met its burden of establishing derivative sovereign immunity. Under *Yearsley v. W.A. Ross Construction Co.*, government contractors are entitled to derivative immunity only where (1) the federal government authorized the contractors unlawful action, and (2) such authorization was validly conferred.[16] In the absence of

---

[14] Dkt. 48-2 at 4-5, 7-11.

[15] *See generally Hopkins v. Americans Home Mortgage Servicing, Inc.*, 2014 WL 580769 * 5 n. 11 (N.D. Cal. Feb. 13, 2014): *Almont Ambulatory Surgery Center, LLC v. United Health Group, Inc.* 2015 WL 12778048 *35 (C.D. Cal. Oct. 23, 2015) (Fitzgerald, J.)

[16] *See Yearsely v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940).

"either of those circumstances, the contractor could be liable."[17] A contractor is not entitled to immunity where, as here, its actions causing injury to another exceed its authority or that authority was not validly conferred.[18] Government contractor immunity "unlike the sovereign's, is not absolute."[19]

As to the first element, the meaning of the GEO's contract with the City and the City's IGSA with ICE—and thus, the extent of GEO's authorization from the federal government—is in dispute. GEO attaches to its motion cherry-picked and redacted pages extracted from the Service Agreement and an IGSA that is over three hundred pages in length.[20] Dismissal without affording Plaintiff the opportunity to obtain through discovery all missing contract documents and interrogate their meaning would be improper. But even on the basis of what is before the Court, Congress has not authorized GEO to violate federal or state law as part of its operation of the Adelanto Facility.

As to the second element, if any of the contract documents that may eventually be disclosed in this case authorized payment of less than the minimum wage, such authority would be invalidly conferred. Congress alone may set detainee wage rates. It last appropriated funds and set the rate for detained immigrant labor in 1978. That

---

[17] *Salim v. Mitchell*, 183 F. Supp. 3d 1121, 1130 (E.D. Wash. 2016) (denying contractors' motion to dismiss under *Yearsley*).

[18] *Yearsley*, 309 U.S. at 20-21.

[19] *Campbell–Ewald v. Gomez*, 136 S.Ct. 663, 672 (Jan. 20, 2016).

[20] Dkt. 48-2 at 4-5, 7-11.

6

authorization expired on September 30, 1979. Congress has never delegated to any agency the authority to set the rate for detainee wages. Accordingly, no valid Congressional authorization exists that would allow ICE to set any rate of pay for detainees, much less $1 per day in violation of California's minimum wage law. Consequently, GEO is not entitled to derivative sovereign immunity.

### 1. The Limited Contracting Documents Available Indicate a Federally-Authorized Reimbursement Rate to GEO—Not a Rate of Pay to Detained Immigrants.

GEO's motion to dismiss based on derivative sovereign immunity must be denied because the first prong of the *Yearsley* test—authorization by the federal government to perform the allegedly unlawful conduct—is absent. "Ambiguities in the language of a contract, which cannot be resolved in the absence of extrinsic evidence, preclude a Motion to Dismiss."[21] Similarly, when a party relies on extrinsic evidence to demonstrate a contact is ambiguous, dismissal is improper.[22]  GEO claims it is immune from suit because it "acted within its federal authorization from ICE in administering the VWP program."[23] The company attempts to convert the "reimbursement" rate of $1 per day per worker that ICE agrees to pay GEO into a federal authorization for GEO to pay

---

[21] *Vanguard Integrity Professionals, Inc. v. Team Gordon, Inc.*, 2008 WL 11342701, at *2 (C.D. Cal. 2008) (Carter, J.).

[22] *A. Kemp Fisheries, Inc. v. Castle & Cook, Inc.*, 852 F.2d 493, 496, n.2 (9th Cir. 1988)).

[23] Dkt. 48-1 at 12-13.

detained immigrants the same amount.[24]  GEO makes this claim despite other relevant provisions of the IGSA that require GEO to operate according to the most current legal constraints, including "all applicable laws and regulations," and declare any provision of the agreement that violates other laws to be void and severable.[25] GEO can pay detained immigrants more than the $1/day ICE reimbursement rate, and indeed, it does so in at least three of its other ICE facilities.[26]

GEO's reliance on *Cunningham v. General Dynamics Information Technology, Inc.*, 888 F.3d 640 (4th Cir. 2018) is misplaced. In *Cunningham*, the plaintiff asserted that *Yearsley* immunity did not apply because the government contractor violated the Telephone Consumer Protection Act (TCPA), as well as a contract provision requiring it to "follow applicable laws."[27]  The Fourth Circuit contrasted those facts with the government contractor's actions in *Campbell-Ewald*.[28] Both cases involve suits under the TCPA against private contractors who contacted individuals on behalf of federal government agencies using a list of names the government provided. In *Cunningham*, the agency did not direct the contractor to obtain consent from individuals in compliance with the TCPA.[29] But in *Campbell-Ewald*, the contract expressly provided that TCPA compliance was the

---

[24] *Id.* at 14; 16.
[25] *Id.* at 8.
[26] **Exhibit B:** Declaration of R. Andrew Free, with attachments.
[27] 888 F.3d at 647.
[28] *Id.* at 648 (citing 136 S. Ct. at 667).
[29] *Id.* at 647.

contractor's responsibility, and the agency's approval of lists containing the recipients depended on the contractor first investigating and obtaining their consent.[30] The contractor in *Cunningham* enjoyed derivative sovereign immunity, while the contractor in *Campbell-Ewald* did not.[31] Notably, courts addressed derivative sovereign immunity after the close of discovery.[32]

GEO's actions in the Adelanto Facility are materially distinct from both contractors. In *Cunningham* and *Campbell-Ewald*, agencies authorized and instructed contractors to contact individuals, a task that ultimately triggered TCPA claims. Here, in contrast, the federal government has *not* authorized or approved a specific rate of pay for GEO to compensate detained immigrants for work they perform at the Adelanto Facility. Rather, ICE set the reimbursement rate payable by ICE to GEO, and specified that GEO must continuously ascertain and abide by all applicable laws and regulations.

The Ninth Circuit has consistently "held that derivative sovereign immunity, as discussed in *Yearsley*, is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'"[33] In *Salim v.*

---

[30] 136 S. Ct. at 673-74.

[31] Far more relevant is the Supreme Court's recent decision in *Minneci v. Pollard*, 565 U.S. 118, 126 (2012), which holds that, particularly in the absence of any express congressional preemption, state law torts of the kind raised by Plaintiffs, are the appropriate remedy against federal contractors.

[32] *See Campbell-Ewald*, 136 S. Ct. at 673-74; *Cunningham*, 888 F.3d at 647.

[33] *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)).

9

*Mitchell*, 268 F. Supp. 3d 1132, 1148-50 (E.D. Wash. 2017), the court applied this principle to deny defendants' motion for summary judgment on derivative sovereign immunity in a case arising out of the CIA's enhanced interrogation program following the 9/11 attacks. Defendants, two psychologists who contracted with CIA, claimed derivative sovereign immunity shield them from victims of torture program they allegedly designed. As with GEO here, the psychologists argued that they were merely carrying out the CIA's directions—just following orders. However, the court found that questions of fact existed regarding whether the psychologists in fact played a significant role in designing the program, which removed them from the scope of the derivative sovereign immunity defense. Their discretion over the illegal acts negated the defense.

So too here. Plaintiff will demonstrate through discovery that GEO has the discretion to pay detained immigrants more than the reimbursement rate—and indeed, that GEO exercises this discretion at other facilities it operates. GEO's design of the staffing levels for the Work Program at the Adelanto Facility, including what jobs were performed and how the Work Program related to the overall operations and profits of the facility, will reveal GEO's situation is far closer to that of the CIA-contracted psychologists in *Salim* than those of the government-contracted robo-dialers in *Cunningham* and *Campbell-Ewald*. Because GEO cannot satisfy the first *Yearsley* element, its motion to dismiss based on derivative sovereign immunity should be denied.

10

5:17-cv-02514-JGB

### 2. ICE Cannot Validly Confer GEO Authorization to Violate the California Minimum Wage Law by Paying Plaintiff $1 Per Day.

GEO's derivative sovereign immunity defense also fails because if ICE authorized GEO to pay Plaintiff and putative class members only $1 per day, such authorization would be legally invalid. ICE lacks Congressional authority to set a detainee wage rate. 8 U.S.C. § 1555(d), ICE's sole source of statutory authority for the payment of allowances to detained immigrants for work performed, expressly reserves for *Congress* the power to set the rate of such payments—not *ICE*. Congress has not done so since 1978. Nor has Congress delegated the authority to set that rate. In the face of this clear statutory text and Congressional inaction, the agency's gap-filling would be *ultra vires* if it were interpreted to impose or authorize a rate of detainee pay, as GEO asserts, rather than a rate of reimbursement to federal contractors, as Plaintiff argues based on the language of the contract.

Congress enacted Section 1555(d) in 1950.[34]  While Section 1555(d) ensures money will be available to pay detained immigrants for the work they perform, it leaves to Congress the question of how much to pay them. As the U.S. District Court for the Western District of Washington observed in *Chen v. The GEO Group, Inc.*:

> Section 1555(d) authorizes congressional appropriations for "payment of allowances [to detainees] . . . for work performed," but payment is limited to "*such rate as may be specified from time to time in the appropriation Act involved.*" § 1555(d) (emphasis added). Under this section, Congress arguably speaks to detainee wages when Congress appropriates payment of allowances to

---

[34] 64 Stat. 380 (1950).

detainees for work performed, but although § 1555(d) is still in effect, Congress has not specified any rate for detainee work since fiscal year 1979. At that time, Congress appropriated funds for "payment of allowances (at a rate not in excess of $1 per day) . . . for work performed." At least since fiscal year 1979, Congress has abandoned direct appropriations payment of allowances, despite its awareness of how to do so.

. . .

**Congress could delegate the authority to create a framework regulating detainee wages to ICE, but [GEO] has not made this showing**. The question remains then, where the $1 per day detainee wage rate comes from, if not from Congress, and the only answer is the Voluntary Work Program. However, the Voluntary Work Program is an ICE policy with no preemptive force at law.[35]

The same analysis applies with equal force here.

While GEO posits that the agency simply picked up where Congress left off in 1978, basic federal appropriations law dictates a different conclusion. "As a general rule of thumb, appropriations acts are generally in force during the fiscal year of the appropriation and do not work a permanent change in the substantive law."[36] Nothing in the FY78 appropriations language provided that the rate "not to exceed $1 per day" was intended to be permanent or exceed that particular year's authorization.[37] GEO

---

[35] *Chen v. The GEO Grp., Inc.*, 287 F. Supp. 3d 1158, 1165-66 (W.D. Wash. 2017) (emphasis added) (internal citations omitted).

[36] *Seattle Audubon Soc'y v. Evans*, 952 F.2d 297, 304 (9th Cir. 1991); *see also Natural Resources Defense Council v. U.S. Forest Service*, 421 F.3d 797, 806 n. 19 (9th Cir. 2005) (citing 31 U.S.C. § 1301); *Smithsfork Grazing Ass'n v. Salazar*, 564 F.3d 1210, 1216 (10th Cir. 2009) (collecting cases).

[37] *Dep't of Justice Appropriation Act*, 1979, Pub. L. No. 95-431, 92 Stat. 1021, 1027 (Oct. 10, 1978).

12

presumes ICE's authority to set a detainee wage rate. However, "[a]gency authority may not be lightly presumed."[38] "Were courts to presume a delegation of power absent an express withholding of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well."[39] Thus, courts should not "presume a delegation of power based solely on the fact that there is not an express withholding of such power."[40]

There is simply no evidence that in 1979, Congress suddenly—and silently—delegated to INS the authority vested in Section 1555(d) to set detainee pay. And there is ample evidence, in the form of three decades of unbroken Congressional practice, that prior to 1978, Congress thought it was its job to set the rate. Thus, while Section 1555(d) requires funds to be available to ICE for the payment of detainee wages, the rate Congress set in 1978 expired in 1979 and, as a result, no Congressionally-mandated rate exists today. Consequently, GEO cannot satisfy the second *Yearsley* element and is not entitled to derivative sovereign immunity.

## C.   ICE IS NEITHER A NECESSARY NOR AN INDISPENSABLE PARTY TO THIS ACTION UNDER RULE 19.

GEO argues that ICE is a required defendant pursuant to Fed. R. Civ. P. 19, and that this action must be dismissed because ICE cannot be joined. The U.S. District Court

---

[38] *Michigan v. E.P.A.*, 268 F.3d 1075, 1082 (D.C. Cir. 2001).

[39] *Id.* (quoting *Ethyl Corp. v. E.P.A.*, 51 F.3d 1053, 1060 (D.C. Cir. 1995)).

[40] *Michigan*, 268 F.3d at 1082 (quoting *American Petroleum Institute v. E.P.A.*, 52 F.3d 1113, 1120 (D.C. Cir. 1995)).

13

for the Western District of Washington has already considered and rejected the same argument in *Chen*. There, the court held that ICE is not a necessary party and dismissal for non-joinder was not warranted because complete relief can be obtained from GEO without ICE.[41]  The same result is appropriate here.

### 1. There is No Irreconcilable Conflict Between Plaintiff's Claim for Relief and GEO's Contract with the City.

Contrary to GEO's claims, the thus far incomplete contract documents do not establish the ceiling for its operation of the Adelanto Facility. Rather, these documents establish minimum requirements for its operation of the Work Program, and offer GEO a reimbursement of up to $1 per day per detained immigrant.  GEO must pay Work Program participants *at least* $ per day. But no document otherwise limits the compensation that GEO may provide or its ability to comply with the California MWL.

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002) and *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010) do not dictate a different result. Both of those cases involved requests for injunctive relief that, if granted, would make it impossible for the defendant companies to comply with both the court's orders and the provisions of the leases they had signed.[42] Here, no such

---

[41] *See* **Exhibit A**:  *Chen v. GEO Grp. Inc.*, 2018 WL 1963669 (W.D. Wash. Apr. 26, 2018) (denying GEO's motion to dismiss for failure to join ICE as a necessary or indispensable party); **Exhibit C:** Verbatim Report of Proceedings Before the Honorable Robert J. Bryan United States District Judge, *Chen v. The GEO Group Inc.* No. 17-5769 (W.D. Wash. April 24, 2018).

[42] *Dawavendewa*, 276 F.3d at 1157-59; *Peabody W. Coal Co.*, 610 F.3d at 1082.

14

impossibility arises because the relief Plaintiff seeks creates no conflict between GEO's compliance with state law and performance of its contract with ICE. At most, it would affect the profitability of GEO's operations at the Adelanto Facility. The potential negative impact of Plaintiff's claim on GEO's past profits does not make ICE a necessary or indispensable party.  Plaintiff does not seek relief to set aside or modify the contract. Accordingly, and as the *Chen* court held, "if Plaintiff prevails, GEO could still comply with the GEO-ICE Contract, because any judgment would not invalidate or set aside the contract."[43] Regardless of the practical impact that a judgment might have on GEO's profitability or implementation of the Work Program going forward, the participation of ICE is not necessary in any way for GEO to provide the purely retrospective monetary relief sought by Plaintiff and the putative class in this case.

### 2. GEO's Reliance on the General Counsel Opinion Letters is Misplaced.

GEO's reliance on two 25 year-old opinion letters from the Immigration and Naturalization Service's ("INS") General Counsel is equally unpersuasive. These opinions do not addresses the definition of "employee" under the California MWL or whether a private contractor running a civil detention facility can be an "employer" under that law. The first letter merely states that immigration detainees performing

---

[43] *See* **Exhibit A:**  *Chen*, 2018 WL 1963669, at *4 (citing *Dawavendewa*, 276 F.3d at 1157).

15

voluntary labor in an INS facility are not employees of the INS for purposes of invoking sanctions under the Immigration and Nationality Act.[44]  The letter does not address the different definition of employee under the MWL, or address the potential "employer" status of private contractors using detained immigrant labor to perform essential functions in a privately run facility at an enhanced profit.

The second letter is even less relevant. It merely states that INS is authorized to spend appropriated funds to pay detainees for labor performed at a Naval Air Facility adjoining an INS processing center.[45]  It says nothing about the detainees' employee status under any state or federal law, or about the rate of compensation that a private company would be required to pay such workers.[46]  GEO's reliance on this letter lacks any support in the text or the cursory analysis in the letters themselves.

### 3.  ICE does not have a legally protected interest in this case.

ICE is well aware of this lawsuit and has chosen not to intervene. As the *Chen* court observed:

> At least as of March 7, 2018, when members of Congress sent a letter to ICE, ICE has had general knowledge of the litigation. Furthermore, by contract, GEO is apparently required to notify ICE of this case within five

---

[44] *See* INS General Counsel, *The Applicability of Employer Sanctions to Alien Detainees Performing Work in INS Detention Facilities,* Genco Op. No. 92-8 (INS), 1992 WL 1369347 (Feb. 26, 1992).

[45] *See* INS General Counsel, *Your CO 243-C Memorandum of November 15, 1991; DOD Request for Alien Labor*, Genco Op. No. 92-63 (INS), 1992 WL 1369402 (Nov. 13, 1992).

[46] *Id.*

days of its filing. It is undisputed that ICE has not appeared in this case, the related class action case, or any similar cases. ICE has not asserted any interest in the case.[47]

GEO speculates that an increase in detainee wages could result in a contract modification regarding reimbursement from ICE to GEO.[48] In other words, GEO points only to a potential financial interest. But the Ninth Circuit has explained that, for purposes of Rule 19 joinder, a legally-protected interest "must be more than a financial stake, and more than speculation about a future event."[49] Here, Plaintiff does not seek any relief, monetary or otherwise, from ICE. Plaintiff does not seek to change or eradicate any part of the contract. Rather, as the *Chen* court has already determined, "[a]ll relief sought by Plaintiff can be obtained from GEO without ICE."[50] Because ICE does not have an interest in the case, it is not a necessary party under Rule 19(a)(1)(B).

---

[47] *Chen*, 2018 WL 1963669, at *3 (W.D. Wash. Apr. 26, 2018) (attached as **Exhibit A**). *See also* Zusha Elinson, "Detention Operators Face Suits Over $1-a-Day Work Programs for Migrants," The Wall Street Journal (July 21, 2018) ("Danielle Bennett, an ICE spokeswoman, said the agency had responded to the letter from the congressmen, but declined to provide the response.") *available at* https://www.wsj.com/articles/ detention-operators-face-suits-over-1-a-day-work-programs-for-migrants-1532170801.

[48] Dkt. 48-1 at 21.

[49] *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (citations omitted).

[50] *Chen*, 2018 WL 1963669, at *2 (W.D. Wash. Apr. 26, 2018) (citing Fed. R. Civ. P.19(a)(1)(A) (attached hereto as **Exhibit A**).

**4. The Action should proceed, in equity and good conscience, in the absence of ICE.**

The *Chen* court determined that "equity and good conscience . . . weigh in favor of the case proceeding, rather than its dismissal."[51] The court explained:

> ICE suffers no more prejudice as an absent party than if it participates. Plaintiff does not seek relief from ICE, and, assuming an outcome in favor of Plaintiff, the GEO-ICE Contract will remain intact. ICE is fully capable of protecting itself. The prejudice to Defendant is no more than if ICE participates.[52]

In contrast, "if the case were dismissed for the failure to join ICE, Plaintiff would be left without a legal remedy."[53] Accordingly, and as the *Chen* court has held, ICE is not an indispensable party under Rule 19.

**D. PLAINTIFF HAS STATED A PLAUSIBLE CLAIM FOR RELIEF AGAINST GEO UNDER THE CALIFORNIA AND FEDERAL TRAFFICKING VICTIMS PROTECTION ACTS.**

Plaintiff's First Amended Complaint plausibly pleads violations of the California and Federal Trafficking Victims Protections Acts.[54] Plaintiff alleges that he and the class members are victims of attempted forced labor as defined by 18 U.S.C. § 1589(a).[55] A violation of the TVPA requires labor or services to be obtained through one of four illegal means. Plaintiff alleges three means used by GEO: (a) force, threats of force,

---

[51] *See id.* at *5.
[52] *Id.*
[53] *Id.*
[54] Dkt. 47 (hereinafter, "FAC").
[55] FAC at ¶ 112.

18

physical restraint, and threats of physical restraint; (b) serious harm and threats of serious harm; and (c) abuse and threatened abuse of law and legal process.[56]

With respect to force and threats of force, Plaintiff alleges that officers at the Adelanto Facility threaten to segregate detainees who complain about the Work Program.[57] Plaintiff alleges that on several occasions, officers threatened to or actually forced him to move to a different dorm – isolated from his peers and friends – after he complained about the Work Program, subminimum wages, and/or the deprivation of necessities at the Adelanto Facility.[58] During these transfers, officers would "toss" Plaintiff's dorm by throwing his belongings and papers in disarray causing him to feel harassed, intimidated, threatened, and embarrassed.[59]

With respect to serious harm and threats of serious harm, Plaintiff alleges that GEO withheld daily necessities from him and other detainees, thereby forcing him to work for subminimum wages in order to buy those daily necessities for himself and avoid serious harm, including, but not limited to, malnutrition, unsanitary living quarters, extreme isolation, and unhygienic conditions of confinement.[60] Specifically, Plaintiff alleges that he was often undernourished and dehydrated because GEO withheld

---

[56] *Id.* at ¶ 113-114.
[57] *Id.* at ¶ 68.
[58] *Id.* at ¶ 69.
[59] *Id.*
[60] *Id.* at ¶ 59.

19

sufficient food and water.[61] He was served rotten meat, moldy bread, and inedible produce.[62] The drinking water provided by GEO ran black for days at a time and caused nausea or headaches if ingested.[63] Plaintiff lost approximately 30 pounds in detention at the Adelanto Facility.[64] In order to survive, Plaintiff purchased food and water from the commissary using his wages from the Work Program.[65]

Plaintiff also alleges GEO did not provide him with sufficient quantities of shampoo, lotion, or soap.[66] GEO refused to provide Plaintiff with sunscreen and shoes, even after he requested these necessities, so Plaintiff was forced to purchase them using his wages from the Work Program.[67]

The FAC contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[68] Plaintiff alleges specific punishments (including solitary confinement, transfers to isolated dorms, deprivation of necessities, malnourishment, and unsanitary conditions) carried out or threatened to be carried out as a direct consequence for refusing to perform labor or complaining about the Work Program at the Adelanto Facility. This conduct occurred while Plaintiff was under the

---

[61] *Id.* at ¶ 60.
[62] *Id.*
[63] *Id.* at ¶ 61.
[64] *Id.* at ¶ 62.
[65] *Id.* at ¶ 63.
[66] *Id.* at ¶ 64.
[67] *Id.* at ¶¶ 65-66.
[68] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

exclusive control of GEO. As Plaintiff has alleged, this conducts is part of GEO's corporate policy and uniform practice of withholding necessary care from its detainees and threatening detainees who refuse to work in order to ensure a ready supply of available labor needed to operate the Adelanto Facility.[69]

Federal district courts considering similar TVPA and/or CTVPA claims against private prison corporations, including GEO, have found similar allegations sufficient to state a claim for relief under Rule 12(b)(6).[70] Here, too, Plaintiff has alleged sufficient facts to state a claim for relief under the TVPA and CTVPA.

## E. THE TVPA, CTVPA, AND MWL ARE NOT VOID FOR VAGUENESS.

GEO next contends that the TVPA, CTVPA, and MWL are each unconstitutionally vague. At the outset, the Court need not resort to the void-for-vagueness doctrine at all because the plain text of each statute unambiguously forbids any party from engaging in the proscribed conduct. Indeed, this Court has already interpreted the meaning of the TVPA, CTVPA, and MWL as applied to GEO and determined that the corporation is not excluded from the reach of each.[71] Other federal

---

[69] FAC at ¶¶ 6-7.

[70] *See Owino v. CoreCivic, Inc.*, 2018 WL 2193644 (S.D. Cal. May 14, 2018) (TVPA and CTVPA); *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015) (TVPA).

[71] *See Novoa v. GEO Grp., Inc.*, 2018 WL 3343494, at *12 (C.D. Cal. June 21, 2018) ("There is no basis for Defendant's proposition that a federal detention center run by a private entity is excluded from the reach of the TVPA."); *id.* at *12 ("Plaintiff is not precluded from stating a claim under the CTVPA"); *id.* at *9 (Plaintiff's "allegations are sufficient to raise a plausible claim that GEO 'exercised control'

21

courts in similar cases have reached the same conclusion.[72]

Even if a vagueness challenge could be brought here, it must fail. First, as the Supreme Court has noted, "[t]he degree of vagueness that the Constitution [allows] depends in part on the nature of the enactment."[73] In particular, the Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."[74] The TVPA and contains provisions that, upon violation, enable both criminal prosecution and civil liability.[75] Accordingly, the standard is higher where, as here, a defendant in a civil case raises a void-for-vagueness challenge.

Second, in an as-applied challenge, a statute is void for vagueness if the statute "(1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement."[76] Even then, "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute."[77] Here, GEO satisfies neither element. First, the TVPA, CTVPA and MWL each define

---

over the working conditions, schedule, and wages so as to make GEO Novoa's employer and/or that GEO 'employed' Novoa by knowing of his labor and failing to prevent the work from occurring.").

[72] *See Owino v. CoreCivic, Inc.*, 2018 WL 2193644 (S.D. Cal. May 14, 2018); *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125 (D. Colo. 2015).

[73] *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212–13 (2018) (citing *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499)).

[74] *Id.* (citing *Hoffman Estates*, 455 U. S. at 498-99).

[75] 18 U.S.C. §§ 1589, 1595.

[76] *United States v. Wyatt*, 408 F.3d 1257, 1260 (9th Cir. 2005).

[77] *United States v. Lanier*, 520 U.S. 259, 266 (1997).

22

the prohibited conduct with sufficient definiteness. Second, those statutes establish minimal guidelines to govern law enforcement.

GEO cites no legal authority for its self-serving theory that a private corporation cannot be held liable for a violation of law unless it was first notified by a state or federal agency of the violation. The Office of Inspector General for the Department of Homeland Security found in June 2018 that ICE does not effectively enforce its own Performance Based National Detention Standards at private immigration detention facilities.[78] In light of the systemic, ineffectual supervision and enforcement of ICE's detention contracts, GEO's contention that the federal government would have put the company on notice if it were violating the law lacks support in fact. Indeed, it is equally plausible that the agency simply has not yet caught up to GEO's forced labor scheme as it is that ICE has blessed it. In either case, GEO was on notice via the Federal Acquisition Regulations and the Homeland Security Regulations that are incorporated into the undisclosed portions of its contract that forced labor as plausibly alleged in Plaintiff's FAC would violate the TPVA.[79] Each of the statutes GEO seeks to avoid

---

[78] Office of Inspector General, Department of Homeland Security, "ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements" (June 26, 2018), *available at* https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf.

[79] *See, e.g.*, 48 CFR 22.17 (requiring all Government contracts to prohibit Contractors, Subcontractors, and their employees from using forced labor during the period of performance of the contract). Plaintiff believes these regulations have been

23

gives the company, a sophisticated party with sophisticated counsel, fair notice of which conduct is prohibited. Consequently, these statutes are not void for vagueness as applied.

## F. THIS COURT HAS ALREADY CONSIDERED AND REJECTED GEO'S REMAINING ARGUMENTS; IT SHOULD DO SO AGAIN.

GEO dedicates eleven pages of its brief to rehashing arguments this Court already thoroughly considered and rejected.[80] GEO's attempt to re-litigate these arguments is, in effect, an untimely and improper motion for reconsideration, which should be denied.[81] GEO offers no legitimate basis for the Court to reconsider its June 21, 2018 Order denying in part GEO's first motion to dismiss. There is no additional or different evidence, no controlling authority that has made a contrary decision since the applicable law, and no argument that the Court's Order is clearly erroneous or would work a manifest injustice. GEO states that "an amended complaint supersedes the original

---

incorporated as binding terms in GEO's contract. But once again, that contract is not before the Court.

[80] *Compare* Dkt. 48-1 (GEO's 2nd Mot. to Dismiss) at 23-26 (preemption argument) with Dkt. 20-1 (GEO's 1st Mot. to Dismiss) at 4-11 (same); *compare* Dkt. 48-1 at 26-27 (failure to state a claim under MWA) with Dkt. 20-1 at 13-16 (same); *compare* Dkt. 48-1 at 27-29 (liability under the TVPA) with Dkt. 20-1 at 16-21 (same); *compare* Dkt. 48-1 at 32 (unjust enrichment claim) with Dkt. 20-1 at 23-25 (same); *compare* Dkt. 48-1 at 32 (UCL claim) with Dkt. 20-1 at 25 (same). *See also* Dkt. 44 (Order Denying in Part Def.'s 1st Mot. to Dismiss).

[81] *See* L.R. 7-18 ("No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."). *See also Wehlage v. EmpRes HealthCare Inc.*, 821 F. Supp. 2d 1122, 1134 (N.D. Cal. 2011) (declining to consider a defendant's motion to dismiss which was, in effect, a motion for reconsideration).

24

complaint," but fails to identify a single matter which the Court overlooked or misapprehended that would require reversing the Court's June 21, 2018 Order. Instead, GEO impermissibly rehashes the exact same arguments it already raised and this Court already resolved.[82] As such, the Court should deny the remainder of GEO's latest motion to dismiss.

In addition, "[u]nder the law of the case doctrine, a previous decision on a factual or legal issue must be followed in all subsequent proceedings in the trial court or on a later appeal in the appellate court, unless the court is presented with substantially additional or different evidence, controlling authority has since made a contrary decision of the law applicable to the particular issue, or the prior decision was clearly erroneous and would work a manifest injustice."[83] None of these factors exists here.

## V. CONCLUSION

For the reasons stated herein and in Plaintiff's response in opposition to GEO's first Motion to Dismiss, GEO's second Motion to Dismiss should be denied in its entirety. In the alternative, this Court should treat it as a motion for summary judgment and permit Plaintiff to conduct discovery prior to ruling on the motion.

---

[82] In any event, Plaintiff incorporates by reference his entire opposition to GEO's first motion to dismiss, Dkt. No. 23.

[83] *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 2013 WL 12131576, at *2 (C.D. Cal. Mar. 21, 2013) (Bernal, J.) (citing *In re Benny*, 81 F.3d 91, 94 (9th Cir. 1996)).

25

| | |
|---|---|
| 1 | Dated:      July 30, 2018 |

/s/ Korey Nelson

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Vanessa Shakib (CA Bar # 287339)
vshakib@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333

5:17-cv-02514-JGB

San Ysidro, CA 92173
Telephone: (619) 786-4866

Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

***Attorneys for Plaintiffs.***

27

# CERTIFICATE OF SERVICE

On July 30, 2018, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ Korey Nelson*

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765