1  LESLEY HOLMES (BAR NO. 271903)
   **NORTON ROSE FULBRIGHT US LLP**
2  555 South Flower Street
   Forty-First Floor
3  Los Angeles, CA 90071
   Telephone:(213) 892-9200 / Fax: (213) 892-9494
4  lesley.swanson.holmes@nortonrosefulbright.com

5  MARK EMERY (*PRO HAC VICE*)
   **NORTON ROSE FULBRIGHT US LLP**
6  799 9th Street NW Suite 100
   Washington, DC 20001-4501
7  Telephone: (202) 662-0200 / Fax: (202) 662-4643
   mark.emery@nortonrosefulbright.com
8
   CHARLES A. DEACON (*PRO HAC VICE*)
9  **NORTON ROSE FULBRIGHT US LLP**
   300 Convent Street Suite 2100
10 San Antonio, TX 78205-3792
   Telephone:  (210) 270-7133 / Fax: (210) 270-7205
11 charlie.deacon@nortonrosefulbright.com

12 Attorneys for Defendant
   **THE GEO GROUP, INC.**
13

14              IN THE UNITED STATES DISTRICT COURT

15          FOR THE CENTRAL DISTRICT OF CALIFORNIA

16                      EASTERN DIVISION

17

18 RAUL NOVOA, individually and on          Civil No. 5:17-cv-02514-JGB-SHKx
   behalf of all others similarly situated,
19                                          **REPLY TO PLAINTIFF'S
              Plaintiff,                     OPPOSITION TO DEFENDANT
20                                           THE GEO GROUP, INC.'S
           v.                                MOTION TO DISMISS
21                                           PLAINTIFF'S FIRST AMENDED
                                             COMPLAINT FOR
22 THE GEO GROUP, INC.,                      DECLARATORY AND
                                             INJUNCTIVE RELIEF AND
           Defendant.                        DAMAGES**
23
24                                          Date: August 20, 2018
                                            Time: 9:00 am.
25                                          Courtroom: 1
                                            Judge: The Honorable Jesus G. Bernal
26
27                                          FAC Filed:  July 6, 2018
28

DOCUMENT PREPARED
ON RECYCLED PAPER

                                                       5:17-cv-02514-JGB-SHKx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO MOTION TO DISMISS FAC

1

## **TABLE OF CONTENTS**

2
**Page**

3

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION ..................... 1

4
    A.    GEO's Motion Is Proper Under Rule 12 ............................................... 1

5
    B.    GEO Is Immune From This Suit Because ICE Validly Authorized The Challenged Actions ....................................................... 2

6
II.    ICE IS INDISPENSABLE TO THIS CASE ................................................. 5

7
III.    PLAINTIFF FAILS TO STATE FORCED LABOR CLAIMS ..................... 7

8
IV.    THE STATUTES PLAINTIFF SEEKS TO ENFORCE ARE UNCONSTITUTIONALLY VAGUE AS APPLIED HERE ........................ 9

9
V.    GEO'S REMAINING ARGUMENTS ARE VALID AND PROPER ......... 10

10
    A.    GEO's Other Arguments Are Not Barred By Law Of The Case ....... 10

11
    B.    Plaintiff's Claims Are Preempted ....................................................... 11

    C.    Plaintiff Has Stated No Wage Claims Under California Law ........... 11

12
    D.    Plaintiff's Remaining Claims Fail ...................................................... 11

13
VI.    CONCLUSION ........................................................................................... 11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Sea Hawaii Rafting, LLC,*
  889 F.3d 517 (9th Cir. 2018) ................................................................ 10

*Campbell-Ewald Co. v. Gomez,*
  136 S. Ct. 663 (2016) ............................................................................ 2

*Cunningham v. Gen. Dynamics Info. Tech., Inc.,*
  888 F.3d 640 (4th Cir. 2018) ............................................................ 2, 3

*E.E.O.C. v. Peabody Western Coal Co.,*
  610 F.3d 1070 (9th Cir. 2010) ............................................................. 6

*F.C.C. v. Fox Television Stations, Inc.,*
  567 U.S. 239 (2012) .............................................................................. 9

*Hale v. Arizona,*
  993 F.2d 1387 (9th Cir. 1992) ........................................................... 11

*Janis v. United States,*
  2011 WL 4738315 (E.D. Cal. Oct. 6, 2011) ..................................... 10

*Lazy Y Ranch Ltd. v. Behrens,*
  546 F.3d 580 (9th Cir. 2008) ............................................................... 1

*McCowen v. Jamieson,*
  724 F.2d 1421 (9th Cir. 1984) ............................................................. 4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ................................................................................ 10

*Nwauzor v. The GEO Group, Inc.,*
  No. 3:17-cv-05769 (W.D. Wash July 20, 2018) ................................. 7

*Rep. of Philippines v. Pimentel,*
  553 U.S. 851 (2008) ......................................................................... 4, 7

*Rezek v. City of Tustin,*
  2014 WL 3347860 (C.D. Cal. July 3, 2014) ..................................... 10

*Tam v. United States,*
  905 F. Supp. 2d 1221 (W.D. Wash. 2012) .......................................... 1

*Two Shields v. Wilkinson,*
  790 F.3d 791 (8th Cir. 2015) ............................................................... 4

*Yearsley v. W.A. Ross Constr. Co.,*
  309 U.S. 18 (1940) ............................................................... 1, 2, 3, 4, 5

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Rules and Statutes**

6 U.S.C. § 251.................................................................................................3

6 U.S.C. § 551.................................................................................................3

8 U.S.C. § 1324a...........................................................................................11

8 U.S.C. § 1555(d).................................................................................4, 5, 11

22 U.S.C. § 7103(b).........................................................................................6

Cal. Code Regs. tit. 8 § 11050......................................................................11

California Minimum Wage Law.....................................................................11

Fed. R. Civ. P. 12(b)(1) ..................................................................................1

Fed. R. Civ. P. 19(a)(1)(B)(i) .........................................................................4

Fed. R. Civ. P. 54(b) .....................................................................................10

Immigration Reform and Control Act ...........................................................11

Reorganization Plan Modification For The Dep't Of Homeland Sec.,
   H.R. Doc. No. 108-32 (2003)......................................................................3

8 C.F.R. § 274a.14.........................................................................................11

8 C.F.R. § 1001.1(p) .....................................................................................11

**Other Authorities**

Exec. Order No. 12,898, 61 Fed. Reg. 6091 (Feb. 15, 1996)........................6

ICE Nat'l Detainee Handbook (rev. 2016)......................................................6

Performance Based National Detention Standards § 5.8 (rev. 2016)..............3

DOCUMENT PREPARED
ON RECYCLED PAPER

73264403.4

- iii -

5:17-cv-02514-JGB-SHKx

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO MOTION TO DISMISS FAC

1    The GEO Group, Inc. ("GEO") offers this reply supporting its Motion to

2  Dismiss Plaintiff's First Amended Complaint ("Motion" or "Mot."). Plaintiff's

3  Opposition (or "Opp.") highlights the fundamental contradiction he faces in this

4  Court: in order to succeed, he must argue ***both*** that GEO has no immunity based on

5  a disputed interpretation of GEO's contract with ICE ***and*** that ICE need not be

6  joined because the relief he seeks will be consistent with the contract.

7    But Plaintiff cannot have it both ways. If avoiding immunity under *Yearsley*

8  *v. W.A. Ross Constr. Co*., 309 U.S. 18 (1940), means the Court must construe

9  GEO's contract, then ICE is an indispensable party, because if it is not joined, GEO

10  risks facing obligations under state law that it cannot fulfill under its contract. But

11  if avoiding that joinder issue means the Court need not construe the contract, then

12  ICE's authorization to administer the VWP and its prohibition on employing

13  detainees is plain. To avoid both of these problems, Plaintiff—a non-signatory to

14  GEO's contract—must prove not only that the contract unambiguously ***means***

15  something other than what it unambiguously ***says***, but also that both signatories to

16  the contract have misunderstood that plain meaning for years. For that reason, and

17  because Plaintiff's claims rely on statutes that do not apply to GEO's administration

18  of federal detention facilities, this Court should dismiss this case in its entirety.

19  **I.    THE COURT LACKS SUBJECT MATTER JURISDICTION.**

20    **A.    GEO's Motion Is Proper Under Rule 12.**

21    Plaintiff's argument (Opp., 4-5) that this Court must treat GEO's motion to

22  dismiss as a motion for summary judgment is incorrect. Adducing facts in support

23  of a Rule 12(b)(1) dismissal is both permissible and common. *See, e.g.*, *Tam v.*

24  *United States*, 905 F. Supp. 2d 1221, 1226-27 (W.D. Wash. 2012). And it is

25  similarly well-established that where a complaint "refers extensively to [a]

26  document," that document may be considered on a motion to dismiss. *E.g.*, *Lazy Y*

27  *Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

28    GEO's Motion therefore falls well within the bounds of Rule 12. The

1   Complaint refers extensively to the contract that governs GEO's administration of
2   the VWP at Adelanto. First Am. Compl. ("FAC"), ECF 47, ¶¶ 3-4, 25, 28, 49-50.
3   In its Motion, GEO explained that Plaintiff's claims fail under *Yearsley* because
4   they attack conduct that is directly authorized **by that contract**, as well as by
5   pertinent statutes and regulations. Mot., 12-16. [1] Likewise, GEO's Rule 19
6   argument turns not on external evidence, but on whether this Court can interpret
7   allegedly ambiguous contract terms to reach a conclusion that plainly flouts ICE's
8   expectations—**and do so without joining ICE**. *See* FAC ¶ 20, 30-33, 37 (alleging
9   that ICE and GEO together maintain "harsh conditions of confinement" for
10  detainees). Because those arguments turn exclusively on the complaint and
11  documents to which it refers, GEO's motion is properly considered under Rule 12.

12          **B.**    **GEO Is Immune From This Suit Because ICE Validly Authorized**
13                 **The Challenged Actions.**

14       As the Motion set forth, government contractors are immune from any suit in
15  which (1) the alleged wrongful actions were authorized by the federal government,
16  and (2) that authorization was constitutionally valid. Mot., 12 (citing *Cunningham*
17  *v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646 (4th Cir. 2018)). The
18  *Yearsley* doctrine embodies a simple principle: when a contractor acts with valid
19  authorization, "there is no liability [for] simply perform[ing] as the Government
20  directed." *Cunningham*, 888 F.3d at 646 (quoting *Campbell-Ewald Co. v. Gomez*,
21  136 S. Ct. 663, 673 (2016)) (quotations omitted).

22       *Yearsley* immunity bars Plaintiff's claims. First, GEO's administration of the
23  VWP at Adelanto is expressly authorized by ICE, which requires GEO to
24  administer a VWP that complies with the PBNDS, *see* ICE-GEO Contract, ECF 48-
25  2, Ex. B, at 8 ("ICE-GEO Contract"), and provides that the "Detainee Work
26  Program Reimbursement" is $1.00 per day per detainee, *see id.* at 3. GEO complies

27

28  [1] GEO intends to provide a copy of its contracts, with confidentiality redactions, once a protective order is entered in this case.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO MOTION TO DISMISS FAC

DOCUMENT PREPARED
ON RECYCLED PAPER

1   with these provisions to the letter:  it offers a VWP to detainees who then receive

2   $1 per day for participating.  *See* FAC ¶ 5.  Thus, GEO meets the first prong of the

3   *Yearsley* test.

4        Resisting that simple conclusion, Plaintiff argues that ICE has not **authorized**

5   GEO's administration of the VWP because ICE did not **explicitly dictate** that GEO

6   pay precisely $1 per day.  Opp., 9.  That argument misses the point:  as

7   *Cunningham* makes clear, *Yearsley* applies whether or not the government has

8   **explicitly dictated** a challenged action, as long as the action taken is "permitted"

9   under the contract.  *E.g.*, *Cunningham*, 888 F.3d at 647 (immunity applies unless

10  challenged actions violate the contract).  Here, whether or not GEO **could** pay

11  more, it is beyond fair dispute that the $1 rate it **does** pay is consistent with all

12  relevant federal requirements, and what ICE pays at the facilities that it runs

13  directly.  *E.g.*, PBNDS 5.8.V.K (authorizing pay of "$1 per day" at all facilities);

14  ICE Nat'l Detainee Handbook, ECF 48-2, Ex. C, at 17 (explaining to detainees that

15  they will receive "$1 per day work (not per work assignment)").

16       Nor has Plaintiff plausibly alleged or argued that ICE has discretion to

17  subject the VWP to state employment law.  To the contrary, as the Motion made

18  clear, Mot., 14-15, ICE and GEO have long shared an understanding that detainee

19  pay would be limited to the $1 per day.  For decades, VWP allowances have been

20  limited to $1 per day, and detainees have never before been treated as employees of

21  a detention facility.  *Id.* at 14-15, 17.  Once again, ICE's contract terms express this

22  understanding exactly.  ICE-GEO Contract, 3 (describing $1 rate); *id.* at 8

23  ("Detainees shall not be used to perform the responsibilities or duties of an

24  employee of the Service Provider.").

25       Plaintiff's argument that ICE lacked authority to set detainee pay is even

26  more problematic.  As the Motion explained, Mot., 16-17, Congress authorized

27

28

appropriations for INS (now ICE) [2] "***now and hereafter***" for purposes that included "payment of allowances … to aliens, while held in custody under the immigration laws, for work performed." 8 U.S.C. § 1555(d) (emphasis added). While Congress directed that the rate of such allowances "***may be*** specified [by Congress] from time to time in the appropriation Act involved," Congress has declined to specify any new rate for decades, instead choosing to continue to approve ICE's budgets, which use the $1 rate. Mot., 17. Thus, ICE has the authority to administer the VWP at the rate set by Congress.

Plaintiff responds by suggesting that ICE cannot follow Congress's most recent allowance rate because the 1979 appropriations bill has expired. *See* Opp., 11-13. Plaintiff argues that Congress's 1979 cessation of direct appropriations for allowances with an attached rate did not "suddenly" or "silently" delegate authority to ICE to set detainee pay. Opp., 13. Thus, Plaintiff argues, ***ICE lacks authority to administer the VWP at all***. *Id.*

That argument finally gives up the ghost: what Plaintiff seeks is a judgment that invalidates not just ***GEO's*** administration of the VWP, but ***ICE's authority*** to operate the VWP in the first place. But it is black-letter law that the United States is an indispensable party in any challenge to a federal program. *See* Fed. R. Civ. P. 19(a)(1)(B)(i); *Two Shields v. Wilkinson*, 790 F.3d 791, 796-97 (8th Cir. 2015) (holding that the United States is a required party wherever suit challenges "federal interest[] in administering" federal program); *McCowen v. Jamieson*, 724 F.2d 1421, 1423-24 (9th Cir. 1984) (same); *see also Rep. of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) ("A case ***may not proceed*** when a required-entity sovereign is not amenable to suit.") (emphasis added). This case should therefore be dismissed under Rule 19. *See infra* pp. 5-8.

---

[2] ICE inherited all INS functions relating to detention and removal as part of the Homeland Security Act of 2002. *See* 6 U.S.C. §§ 251, 551(d); *Reorganization Plan Modification For The Dep't Of Homeland Sec.*, H.R. Doc. No. 108-32, at 3 (2003). This transfer covers the appropriations power granted by 8 U.S.C. § 1555(d).

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO MOTION TO DISMISS FAC

1    Moreover, even for *Yearsley* purposes, Plaintiff's argument is incorrect.

2    Section 1555 is a standing authorization for ICE to use its appropriations "now and

3    hereafter" for the payment of allowances to detainees.   8 U.S.C. § 1555(d).

4    Therefore, Congress's decision not to assign a specific rate ***each year*** does not

5    prevent ICE from paying allowances at a rate that Congress has ***already*** specified.

6    Any other reading of Section 1555 would be absurd:  ICE would have standing

7    authority to use its appropriations to pay allowances, but it would be prevented

8    from actually doing so unless Congress tells it ***this year*** how much they should

9    be—even though ***Congress itself*** said that if it provided such guidance at all, it

10    would do so only "from time to time."  8 U.S.C. § 1555(d).

11    Finally, Plaintiff does not dispute that his TVPA claims are also subject to

12    *Yearsley*.  *See* Mot., 15-16.  GEO's administration of the VWP at Adelanto

13    complies with ICE's requirements, thereby immunizing GEO from liability arising

14    from that administration.  Plaintiff has neither alleged nor argued otherwise.

15    In sum, ICE authorizes GEO to operate a VWP, but ***not*** to treat detainees as

16    employees.  Moreover, that authorization is valid.  To the extent Plaintiff argues

17    otherwise, it is only by challenging the validity of a federal program—thereby

18    effectively conceding that this case cannot proceed without joining the United

19    States.

20    **II.    ICE IS INDISPENSABLE TO THIS CASE.**

21    As GEO explained in its Motion, ICE is an indispensable party to this case.

22    GEO maintains a VWP at Adelanto because it is required to do so under its

23    contract, the terms of which are set by ICE.  Mot., 18-22.  Plaintiff now maintains

24    that its challenge should stand in part because ***ICE's own administration*** of the

25    VWP is unlawful.  Moreover, the judgment Plaintiff seeks would bind GEO—***but***

26    ***not ICE***—to the conclusion that compliance with those terms is employment or

27    forced labor.  *Id.*  This action therefore implicates ICE's core interests and threatens

28    to leave GEO with inconsistent obligations unless ICE is joined.

DOCUMENT PREPARED
ON RECYCLED PAPER

73264403.4                                   - 5 -                        5:17-cv-02514-JGB-SHKx
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO MOTION TO DISMISS FAC

Rule 19 deems "necessary" any party whose "ability to protect" their "interest relating to the subject of the action" might be "impede[d]" by a disposition in their absence. *See* Mot. 21-22. It further provides that an action must be dismissed if an "indispensable" party cannot be joined. *Id.* The United States is indispensable in this action, because Plaintiff has now explicitly challenged the authority of the United States to carry out the VWP program. *See supra* p. 4-5.

ICE is also indispensable because its contract with GEO prohibits treating detainees as its employees and employing unauthorized aliens, but a judgment for Plaintiffs would require just that without joining ICE. FAC, Prayer (e)-(f) (seeking declaratory and injunctive relief); ICE-GEO Contract, 8; *see also* Exec. Order No. 12,898, 61 Fed. Reg. 6091 (Feb. 15, 1996). This case is therefore indistinguishable from *E.E.O.C. v. Peabody*, 610 F.3d 1070, 1081 (9th Cir. 2010), in which the Ninth Circuit held that a federal agency was an indispensable defendant in an action against the contractor because, if the plaintiff won, the agency would remain unbound by a judgment that construed a disputed contract provision.

Likewise, any injunction affecting GEO's management of detainees aimed at addressing Plaintiff's various forced labor theories makes ICE a required party. *See* Mot., 22. Such an order would likely affect GEO's ability to comply with ICE's many staffing and other administration requirements. More fundamentally, ICE itself, as part of the Department of Homeland Security, is one of the agencies tasked with enforcing the TVPA, 22 U.S.C. § 7103(b), and its current Detainee Handbook includes, on the second page, instructions for detainees to report any illegal activity to ICE itself. ICE Nat'l Detainee Handbook, at 2, (rev. 2016) (https://www.ice.gov/sites/default/files/documents/Document/2017/detainee-handbook.PDF). Plaintiff's request that this Court apply the trafficking laws that ICE itself administers against an ICE contractor's actions in an ICE facility—in obvious contravention of ICE's own expectations—further establishes that ICE is a necessary and indispensable party.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO MOTION TO DISMISS FAC

1    Plaintiff does not meaningfully rebut any of these arguments.  His claim that

2    this case will, "[a]t most, … affect the profitability of GEO's operations at the

3    Adelanto Facility," *see* Opp., 15, is belied by the expansive scope of his claims.

4    Plaintiff explicitly seeks injunctive and declaratory relief, *see* FAC, Prayer (e)-(f),

5    as well as damages for what amount to criminal allegations against GEO, *see* FAC

6    ¶¶ 104-20.   A judgment in his favor would fundamentally rewrite the ICE-

7    sanctioned practices currently in place at Adelanto, adjudicate ICE's interpretation

8    of the TVPA, and—as Plaintiff's opposition now makes clear—invalidate ***ICE's***

9    ***own*** administration of its programs.  Plaintiff argues that ICE has no interest in this

10   case merely because it has not voluntarily joined itself, *see* Opp., 16-17, but

11   Supreme Court precedent forecloses the Catch-22 proposition that a sovereign must

12   waive its immunity in order to be indispensable.  *E.g.*, *Philippines*, 553 U.S. at 867.

13   Plaintiff has therefore done nothing to rebut GEO's argument that ICE must be

14   joined.  And because it is black-letter law that a "required-entity" sovereign is *per*

15   *se* "indispensable," *id.*, this case should be dismissed under Rule 19.

16   Plaintiff relies heavily on interlocutory orders from *Chen* (now captioned

17   *Nwauzor*, owing to the substitution of plaintiffs), but nothing in that case is to the

18   contrary.  *See* Opp., 16-17 (citing *Order*, *Nwauzor v. The GEO Grp., Inc.*, No. 17-

19   cv-05769 (W.D. Wash. filed Apr. 26, 2018), ECF No. 67).   In *Nwauzor*, the

20   plaintiffs sought only backpay under a state minimum wage act and not declaratory

21   or injunctive relief; they did not file any claims under the TVPA or any other

22   federal law, and they never claimed (as Plaintiff now does) that ***ICE itself*** cannot

23   lawfully operate the VWP.  *See* First Am. Compl., 5 *Nwauzor*, No. 17-cv-05769

24   (W.D. Wash. filed June 13, 2018), ECF No. 84).   Thus, even if ICE was not

25   indispensable in *Nwauzor*—which GEO disputes—that conclusion has little bearing

26   here.

27   **III.    PLAINTIFF FAILS TO STATE FORCED LABOR CLAIMS.**

28   As GEO explained in its Motion, Plaintiff's allegations relating to forced

1    labor fail under the trafficking statutes he cites.  Mot., 27-29.  As the Motion set

2    forth, both the federal and state TVPA statutes prohibit the **knowing and**

3    **intentional** coercion of labor.  *Id.* at 27-28 (citing sources).  Plaintiff's allegations

4    do not establish knowing coercion by GEO.

5         Plaintiff seeks to establish a TVPA violation by raising two distinct sets of

6    allegations.  The first set, which pertains to the alleged withholding of food, water,

7    and other necessities, *see* FAC ¶¶ 59-67, fails to support a conclusion that to the

8    extent such necessities were withheld, they were withheld **for the purpose of**

9    **coercing Plaintiff** to participate in the VWP.  Indeed, Plaintiff admits that the

10   connection between the two was entirely his own.  *See, e.g.*, FAC ¶ 63 (claiming

11   that his survival turned on buying food and water from the commissary).  His

12   allegations therefore do not suffice to state a forced labor claim.

13        The second set of allegations fares no better.  Plaintiff claims that he was

14   personally threatened with punishments if he failed to participate in the VWP—but

15   he nowhere alleges that **GEO or its officers** did the threatening.  He alleges, for

16   example that "officers" threatened him with disciplinary segregation "if he stopped

17   working."  FAC ¶ 68.  Even were this allegation sufficiently concrete to establish

18   specific conduct by GEO personnel, Plaintiff offers no grounds at all to infer that

19   GEO knew about or intended to benefit from such actions by those unspecified

20   officers.  *See* FAC ¶¶ 108-09, 113-114.  Because Plaintiff offers no grounds to

21   attribute the actions of any individual "officer" to GEO itself—and has not even

22   alleged that the "officer" who threatened him worked for GEO, rather than for ICE

23   or another ICE contractor, *see* FAC ¶¶ 68-70—his allegations do not state a forced

24   labor claim **against GEO**.

25        Plaintiff's Opposition does nothing to avoid any of these problems.  He

26   claims only that his allegations suffice because he "was under the exclusive control

27   of GEO."  Opp., 20-21.  But Plaintiff has not—and could not—**allege** that, because

28   GEO operates the Adelanto facility **under ICE supervision**.  Moreover, even if

1 taken as true, Plaintiff's claim does nothing to attribute the alleged actions of any

2 unnamed "officer" to GEO itself.  Consequently, Plaintiff's forced labor claims

3 should be dismissed, as well.

4 **IV.   THE STATUTES PLAINTIFF SEEKS TO ENFORCE ARE**

5 **UNCONSTITUTIONALLY VAGUE AS APPLIED HERE.**

6 As GEO explained in its Motion, the trafficking statutes underlying

7 Plaintiff's claim are unconstitutionally vague as applied here because they penalize

8 conduct that is not only authorized but even required by the federal agency charged

9 with enforcing such statutes.  GEO's administration of the VWP complies with

10 ICE's contract terms and the PBNDS.  *See* Mot. 29-31; *supra* 2-3.  GEO now faces

11 liability under a state wage law that has never been held by a judgment to apply in

12 this context, that does not apply in state-run facilities, that conflicts with the federal

13 government's interpretation of its authority and settled practice, and that extends

14 beyond an essentially identical federal labor law that was held to be inapplicable

15 long ago.  Likewise, GEO faces liability under trafficking statutes that are

16 essentially criminal merely for carrying out ICE's own directives under ICE's own

17 watch, even though ICE itself enforces such laws.  Plaintiff's claim takes these laws

18 well beyond their proper sphere.  Consequently, the laws underlying Plaintiff's

19 claim gave GEO no fair notice that any of its alleged conduct was forbidden, such

20 that they are unconstitutionally vague in this context.  *See F.C.C. v. Fox Television*

21 *Stations, Inc.*, 567 U.S. 239, 253 (2012) (explaining that the vagueness doctrine

22 aims in part to ensure that "regulated parties … know what is required of them so

23 they may act accordingly").

24 Plaintiff's response attacks a straw man.  He argues that GEO's argument

25 amounts to a "self-serving theory that a private corporation cannot be held liable for

26 a violation of law unless it was first notified by a state or federal agency of the

27 violation."  Opp., 23.  GEO instead contends that liability under these statutes is

28 improper because (i) it has for years engaged in the very practices Plaintiff attacks

1  at the ***direction*** of the federal government, and (ii) the State of California engages

2  in conduct materially identical to the conduct challenged here. *See* Mot. 30-31.

3  Under such circumstances, Plaintiff cannot plausibly contend that GEO was on

4  notice that the challenged conduct—in which both the state and federal

5  governments themselves engage—was illegal under state and federal law.

6  **V.      GEO'S REMAINING ARGUMENTS ARE VALID AND PROPER.**

7          Plaintiff does not meaningfully respond to any of the remaining arguments

8  GEO raised in its Motion. *See* Opp., 24-25. Instead, he argues summarily that the

9  Court's rulings on a superseded complaint are "law of the case" and incorporates

10  his prior briefs. *Id.* The first contention is wrong, and the second is inappropriate.

11  GEO was entitled to move to dismiss on all grounds that apply to this case, and the

12  Court can and should consider each.

13          **A.      GEO's Other Arguments Are Not Barred By Law Of The Case.**

14          An amended complaint supersedes the original complaint. *Barnes v. Sea*

15  *Hawaii Rafting, LLC*, 889 F.3d 517, 531 (9th Cir. 2018). Consequently, this Court

16  has issued no order that the FAC has stated a claim on which relief may be granted.

17  *See, e.g.*, *Janis v. United States*, 2011 WL 4738315, at *2 (E.D. Cal. Oct. 6, 2011)

18  (amended complaint mooted prior allegations and thus any rulings as to whether a

19  claim had been stated). And, absent an express entry of a final judgment, all orders

20  of a district court are "subject to reopening at the discretion of the district judge."

21  *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983);

22  Fed. R. Civ. P. 54(b). Until such a final order is entered, this Court's interlocutory

23  orders do not become law of the case, and the Court can decide the novel issues

24  presented here on different grounds. *See, e.g.*, *Rezek v. City of Tustin*, 2014 WL

25  3347860, at *2 (C.D. Cal. July 3, 2014).

26          Further, GEO has not merely "rehashe[d] the exact same arguments it already

27  raised." Opp., 25. To the contrary, it has responded to the Court's prior order and

28  explained why this Court should reach a different result. *See, e.g.*, Mot., 24

1  (arguing that the Court improperly framed the preemption question in its prior

2  order).  GEO therefore respectfully requests the Court's consideration as to all the

3  grounds for dismissal raised in its Motion.  To the extent further argument is

4  warranted, GEO addresses select arguments briefly below.

5  **B.**   **Plaintiff's Claims are Preempted.**

6  In its prior Order, this Court held that Plaintiffs' claim could continue

7  because Congress had not occupied the field of detainee *wages*.  Order, ECF 44, at

8  5.  The proper field of regulation is detainee *employment* and *work*, Mot., 24-25,

9  which Congress exhaustively regulates.  The Immigration Reform and Control Act

10  and its enacting regulations show that work authorization terminates when removal

11  proceedings are instituted and that lawful permanent resident status terminates

12  when a final removal order issues.  8 U.S.C. § 1324a.  8 C.F.R. §§ 274a.14,

13  1001.1(p).  Thus, detainees at Adelanto are categorically prohibited from being

14  employees.   That result, coupled with Congress's explicit authorization of

15  allowances—not wages—to detainees, 8 U.S.C. § 1555(d), shows that Congress has

16  occupied the field of detainee work and left no room for state law to create labor-

17  law rights in favor of a specific group of individuals whose work has been

18  thoroughly regulated by Congress.

19  **C.**   **Plaintiff Has Stated No Wage Claim Under California Law.**

20  This Court previously held that the Public Housekeeping Order, Cal. Code

21  Regs. tit. 8 § 11050, can apply to federal immigration detainees.  Order, 8-12.

22  GEO's Motion explains that detainees cannot meet the employment test devised by

23  the Ninth Circuit to address the same question in essentially the same context.  *See*

24  Mot., 26-27 (discussing *Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993)).  The

25  Ninth Circuit's logic applies forcefully here, and the Court should hold that

26  detainees are not employees under California law.

27  **D.**   **Plaintiff's Remaining Claims Fail.**

28  Finally, Plaintiff's unjust enrichment claim and his derivative UCL claim

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO MOTION TO DISMISS FAC

1   both fail for the reasons stated in GEO's Motion.

2   **VI.    CONCLUSION**

3          The Court should grant GEO's Motion and dismiss this case with prejudice.

4

5   Dated:         August 6, 2018           **NORTON ROSE FULBRIGHT US LLP**

6

7   By */s/ Lesley Holmes*
    LESLEY HOLMES
    Attorney for The GEO Group, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28