Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA**, individually and on behalf of all others similarly situated,<br><br>                *Plaintiff*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>                *Defendant*. | CASE NO. 5:17-cv-02514-JGB-SHK<br><br>**JOINT RULE 26(f) REPORT**<br><br>**Scheduling Conference:**<br>Date: August 27, 2018<br>Time: 11:00 AM<br>Location: Courtroom 1<br>3470 Twelfth Street<br>Riverside, California 92501 |

In accordance with Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and this Court's Order of July 5, 2018 (Dkt. 46), counsel for Plaintiff Raul Novoa and counsel for Defendant The GEO Group, Inc. ("GEO") conferred by email and telephone on

several occasions throughout July and August 2018, and submit the following Rule 26(f)

Report. Nothing stated herein shall be deemed an admission by any party.

### 1.  Statement of the Case

a.  <u>Plaintiff's Statement</u>

This is a putative class action arising out of GEO's corporate policy, practice, and

scheme of using the labor of immigrants detained at the Adelanto Detention Facility

("Adelanto Facility" or "Facility") to enhance its corporate profits while paying them

just $1 per day. Plaintiff Raul Novoa is a Lawful Permanent Resident of the United States

who spent nearly three years in civil immigration detention at the Facility. He performed

thousands of hours of work while detained under threat of solitary confinement,

retaliatory housing reclassification, undernourishment, and other serious harm set forth

in the First Amended Complaint. (Dkt. 47). He used much of the $1 per day wages GEO

paid him to buy basic necessities at the Facility's commissary which were denied to him

by GEO, and to communicate with family members and his legal counsel.

Based on these experiences, Plaintiff seeks to certify a class under Fed. R. Civ. P.

23(b)(3) to recover damages for himself and the class of detained immigrants he seeks

to represent under the California Minimum Wage Act, the state and federal Trafficking

Victims Protection Acts, and California common law.

On February 16, 2018, Defendant filed a motion to dismiss, which this Court

denied as to Plaintiff's claims under the California Minimum Wage Law, the California

Unfair Competition Law, and the California common law. GEO answered the complaint on July 3, 2018 and counterclaimed against Plaintiff. GEO's counterclaim against Plaintiff Novoa constitutes unlawful retaliation under California law and forms the basis of a separate claim against GEO. Plaintiff filed an answer raising the affirmative defenses of estoppel, illegality, failure to state a claim upon which relief may be granted, laches, and statute of limitations. With the answer, Plaintiff filed a compulsory counterclaim in reply pursuant to Fed. R. Civ. P. 13(a) against GEO for retaliation.

Plaintiff filed a first amended complaint on July 6, 2018. GEO filed a second motion to dismiss and an answer to the first amended complaint on July 20, 2018. GEO's second motion to dismiss is set for argument on August 20, 2018.

b.  <u>Defendant's Statement</u>

Defendant is a private company that operates the Adelanto Detention Facility under a contract with the City of Adelanto, that in turn contracts with a federal agency, Immigration and Customs Enforcement ("ICE"). Persons detained at the Adelanto facility are in the custody of ICE. While housed at the facility, detainees have the opportunity to participate in ICE's Voluntary Work Program, where they earn $1 per day for performing certain work.

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 48) is currently pending before the Court. As supported in its Motion and its Reply (Dkt. 54) to Plaintiff's Opposition (Dkt. 52), Plaintiff's claims should be dismissed because (1) as

a government contractor implementing and administering the Voluntary Work Program as authorized and directed by ICE, Defendant is immune from suit under *Yearsley*, and (2) Plaintiff has failed to join ICE, an indispensable party.  Further, the Minimum-Wage-Law ("MWL") claim should be dismissed because the MWL is preempted by federal law, or because detainees are not "employees" under the law.  The Trafficking Victims Protection Act ("TVPA") claim and California Trafficking Victims Protection Act ("CTVPA") claim should also be dismissed because Plaintiff fails to plead a TVPA or CTVPA claim and applying the state of federal TVPA to Plaintiff's claims is contrary to the legislature's intent.   Plaintiff fails to state a claim for unjust enrichment because he fails to plausibly allege that he had any reasonable expectation that he would be paid more than $1 per day for his work in the Voluntary Work Program.  The Unfair Competition Law ("UCL") claim is a derivative claim that should be dismissed because Plaintiff fails to allege a violation of a separate law.  The TVPA, UCL, and MWL should all be dismissed as unconstitutionally vague as applied to GEO's administration of the Voluntary Work Program.

Finally, class certification is unlikely to be appropriate because Plaintiff cannot satisfy the requirements of Federal Rule of Civil Procedure 23.   But Defendant's investigation is ongoing and it will provide more specific grounds regarding the denial of class certification as discovery progresses.

JOINT RULE 26(F) REPORT                                              5:17-cv-02514-JGB

**2. Subject Matter Jurisdiction**

The Court has subject matter jurisdiction over Plaintiff's claims arising under the Trafficking Victims Protection Act claims pursuant to 28 U.S.C. § 1331 (federal question). Jurisdiction over Plaintiff's state law claims lies under 28 U.S.C. § 1332(d) (CAFA) and 28 U.S.C. § 1367 (supplemental jurisdiction).  Defendant objects to the Court's subject matter jurisdiction under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21-22 (1940); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672-73 (2016); *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018).

**3. Legal Issues**

   a.  <u>Plaintiff's Statement</u>

      i.  Whether GEO engaged in conduct that violated California law – including the California Minimum Wage Order, the California Unfair Competition Law, and the California Trafficking Victims Protection Act;

     ii.  Whether GEO engaged in conduct that violated the federal Trafficking Victims Protection Act;

    iii.  Whether Plaintiff and the Class Members are entitled to equitable relief, including injunctive and declaratory relief; and

    iv.  Whether Plaintiff and the Class members are entitled to damages and other monetary relief and, if so, in what amount.

    v.  Whether GEO's counterclaims for "unjust enrichment/offset" and "declaratory relief" constitute retaliation.

  b.  <u>Defendant's Statement</u>

    i.  Whether GEO is immune from suit under the *Yearsley* doctrine because it is a government contractor implementing and administering the VWP as authorized and directed by ICE;

    ii.  Whether the Plaintiff has failed to join ICE as a necessary party;

    iii.  Whether the California Minimum Wage Order is preempted by Federal Law;

    iv.  Whether Plaintiff's alleged injuries and damages were caused by ICE, a third party over whom GEO had no control;

    v.  Whether Plaintiff or his putative class members have a legal right to work at minimum wage rates;

    vi.  Whether Plaintiff has unclean hands;

    vii.  Whether Plaintiff has unreasonably delayed his request for relief;

    viii.  Whether the Plaintiff has failed to state a minimum wage claim;

    ix.  Whether there is an employer-employee relationship between GEO and detainee workers in the VWP;

    x.  Whether Plaintiff has failed to state a claim under the TVPA;

    xi.  Whether Plaintiff has failed to state a claim under the CTVPA;

JOINT RULE 26(F) REPORT                            5:17-cv-02514-JGB

xii.   Whether Plaintiff has failed to state a claim under the UCL.

xiii.  Whether the TVPA, CTVPA, Minimum Wage Law, and UCL are unconstitutionally vague as applied to GEO's administration of the Voluntary Work Program;

xiv.  Whether Counter-Plaintiff is equitably entitled to recover its costs and expenses associated with detaining Counter-Defendant and the putative class members;

xv.   Whether Counter-Plaintiff is entitled to declaratory relief that California labor laws do not apply to ICE detainees at the Adelanto facility;

xvi.  Whether Counter-Plaintiff is entitled to declaratory relief declaring that there is no employment relationship between Counter-Plaintiff and detainees housed at the Adelanto facility who participate in the Voluntary Work Program.

**4.  Parties, Evidence, etc.**

a.  <u>Plaintiff's Statement</u>

The lead Plaintiff in this case and all class members are civil immigration detainees who were involuntarily detained at the Adelanto Facility and performed work for GEO during their involuntary detention. Key witnesses for the Plaintiff class will be (a) Plaintiff Novoa, (b) one or more 30(b)(6) representatives for GEO who will testify as to

the company's policies, practices, and procedures at the Adelanto Facility, (c) Daniel Ragsdale, GEO's Executive Vice President for Contract Compliance and, until early 2017, a Deputy Director and Acting Director of U.S. Immigration and Customs Enforcement; (d) David Venturella, GEO's Senior Vice President for Business Development and a former Director of Enforcement and Removal Operations for ICE; (e) Tracey Valerio, an expert witness with Frontier Solutions, LLC retained by GEO and, until April 2018, the Executive Associate Director of Management and Administration for ICE; (f) Jessie Flores, City Manager of the City of Adelanto; and (g) one or more 30(b)(6) witnesses designated by (i) ICE; (ii) the Department of Homeland Security's Office of Inspector General; (iii) the Department of Homeland Security's Office for Civil Rights and Civil Liberties; (iv) the Nakamoto Group; and (v) the American Correctional Association.

The principal evidence Plaintiff and the class will rely upon in this case to establish liability and damages will include GEO business records, contracting documents, and detention files from the Adelanto Facility, as well as third-party documents from Facility inspections, audits, and monitoring visits. Plaintiff also anticipates a considerable volume of relevant evidence to be secured directly from the federal government through subpoena via the relevant agencies' *Touhy* regulations.

      b.  Defendant's Statement

Key witnesses for the Defendant will be (a) Plaintiff Novoa, (b) Daniel Ragsdale, GEO's Executive Vice President for Contract Compliance and, until early 2017, a Deputy Director and Acting Director of U.S. Immigration and Customs Enforcement; (c) David Venturella, GEO's Senior Vice President for Business Development and a former Director of Enforcement and Removal Operations for ICE; (d) Jessie Flores, City Manager of the City of Adelanto; (e) one or more witnesses designated by (i) ICE and (ii) the Department of Homeland Security.

The principal evidence for the Defendant will include Plaintiff Novoa's records concerning his detention at the Adelanto Facility, including diaries, journals, logs, social media, email, and text messages; GEO business records from the Adelanto Facility; food, hygiene, and sanitation records from the Adelanto facility; and ICE policies and regulations related to the VWP.  Defendant also anticipates relevant evidence to be secured directly from the California Labor & Workforce Development Agency and the California Department of Corrections and Rehabilitation through subpoena.

**5.  Damages**

a.  Plaintiff's Statement

Plaintiff seeks economic and compensatory damages for the wages that Defendant denied him and the class he represents, as well as other remedies contemplated under the California and federal Trafficking Victims Protection Acts. Upon receipt of GEO's business records, Plaintiff will supply a damage model.

b.  <u>Defendant's Statement</u>

Should Counter-Defendant prevail on his claim, Counter-Plaintiff seeks to recover its costs and expenses associated with detaining Counter-Defendant and the putative class members, including for goods and services associated with administering the Voluntary Work Program with respect to Counter-Defendant and all putative class members.   Counter-Defendant will supply its calculated offset based on costs and expenses associated with housing, food, clothing, and recreation and health services, and other goods and services.

**6.  Insurance**

Plaintiff does not have insurance coverage relevant to this case.

Defendant does not have insurance coverage relevant to this case.

**7.  Motions**

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 48) is currently pending before the Court. Plaintiff timely filed an opposition (Dkt. 52) and a notice of supplemental authority (Dkt. 55).

Plaintiff will seek leave to amend the Complaint to add additional claims or allegations uncovered during discovery. Plaintiff will also move to certify the class and will file an appropriate pre-trial motion to dispose of Defendant's counterclaims. Plaintiff proposes to file a motion to certify the class by January 31, 2019, with opposition briefing due on March 2, 2019 and reply briefing due on  March 22, 2019.

**8.  Manual for Complex Litigation**

Plaintiff submits that the legal and factual issues in dispute are of moderate complexity given the multi-factor test for employment status under California law, the size of the putative class, the transient nature of some of the potential class members, the interplay between state and federal law and actors, and related discovery issues. Accordingly, this case warrants the application of the procedures of the Manual for Complex Litigation.

Defendant agrees that this case warrants the application of the procedures of the Manual for Complex Litigation.  In addition, there is an additional layer complexity added because GEO operates under ICE's regulatory control and must clear the production of certain documents and information through ICE prior to turning it over to Plaintiff.

**9.  Status of Discovery**

a.  Plaintiff's Statement

On July 27, 2018, Plaintiff served Defendant with his initial disclosures and first set of interrogatories, requests for production, requests for admission, and requests for inspection. On August 14, 2018, Plaintiff will serve third-party subpoenas on several persons and entities. Plaintiff has sought the first-available deposition dates for GEO corporate representatives and executives, and the parties are working to secure those dates.

b.  Defendant's Statement

Defendant plans to serve its initial disclosures by August 17, 2018, and will soon serve its first set of discovery requests.  Defendant is currently in the process of identifying and collecting documents, and in light of the expected volume of Defendant's production, is expected to make a rolling production of documents.  Certain categories of documents will require a second review and clearance by ICE officials prior to production.

**10. Discovery Plan**

The parties anticipate conducting discovery regarding all matters raised in the pleadings, including written discovery requests and depositions.  Phased discovery is not necessary.

a.  Initial disclosures

On July 27, 2018, Plaintiff served Defendant with his initial disclosures. Defendant plans to serve its initial disclosures by August 17, 2018.

b.  Subjects on which discovery may be needed

Plaintiff anticipates that the principal topics for discovery will include the following: (a) the work performed, hours worked, and payments made to Plaintiff and putative class members during the proposed class period; (b) the control exercised over class member labor by Defendant, and other elements of the test for employee status under California law; (c) Defendant's policies, practices, and procedures related to the

JOINT RULE 26(F) REPORT                                                    5:17-cv-02514-JGB

Voluntary Work Program; (d) the conditions of confinement and disciplinary practices used at the Adelanto Detention Center; and (e) damages to which Plaintiff and putative class members would be entitled if liability is established.

Defendant anticipates that the principal topics for discovery will include the following: (a) Plaintiff's and other detainees' experience with, and understanding of, the Voluntary Work Program; (b) Plaintiff's and other detainees' assent to participate in the Voluntary Work Program; (c) the work performed, hours worked, and payments made to Plaintiff and other detainees who participated in the Voluntary Work Program; (d) Defendant's policies, practices, and procedures related to the Voluntary Work Program; (e) ICE regulations, standards, and policies and procedures related to the Voluntary Work Program; (f) reimbursement of Defendant by ICE for the Voluntary Work Program; (g) contractual provisions in the GEO-City of Adelanto contract related to administration of the Voluntary Work Program; (h) the conditions of Plaintiff's and other detainees' detention at the Adelanto Detention Center; and (i) costs incurred by Defendant in caring for the Plaintiff and other detainees who participated in the Voluntary Work Program and for the costs of operating the Voluntary Work Program.

c. <u>Electronically stored information</u>

Plaintiff intends to seek discovery of electronically stored information, including detainee headcount and location information, surveillance footage, payroll records,

13

detainee commissary records, emails, and other potentially relevant electronically stored information. The parties will negotiate an ESI protocol.

Defendant intends to seek discovery of electronically stored information, including Plaintiff's communications with other parties about his detention and participation the voluntary work program, Plaintiff's social media account information, emails, and text messages; Plaintiff's employment records; Plaintiff's criminal records; Plaintiff's financial and personal records related to his detention at the Adelanto facility; Plaintiff's electronic communications or correspondence concerning his detention at the Adelanto facility; and any complaints or grievances regarding compensation to Plaintiff in connection with the Adelanto facility.

     d.  <u>Privilege issues</u>

The parties generally agree to redact privileged information from discovery and produce a privilege log covering any information redacted or withheld under claim of privilege. Issues of privilege may be further addressed by way of a stipulated confidentiality agreement and/or protective order between the parties.

     e.  <u>Proposed limitations on Discovery</u>

The parties do not currently seek any discovery limits beyond those imposed by the Local and Federal Rules.

**11. Discovery Cut-off**

The parties agree that discovery cut-off should be 90 days before trial. Plaintiff asks that the expert disclosure deadline be at least 60 days before the discovery cutoff, with the deadline for rebuttal expert disclosures following 30 days thereafter.

But Defendant asks that the expert disclosure deadline be at least 90 days before the discovery cutoff, with the deadline for responses to expert disclosures following 30 days thereafter, and rebuttal expert disclosures to follow thirty days after the response deadline.

**12. Expert Discovery**

    a.  <u>Plaintiff's Statement</u>

Plaintiff asks that expert witness disclosures be submitted by March 1, 2019. Expert depositions will be completed in advance of the general discovery cut-off date.

    b.  <u>Defendant's Statement</u>

Because of the additional review requirements imposed by ICE and Defendant's lack of ability to control the ICE review process, Defendant asks that expert witness disclosures be submitted by September 02, 2019.  Expert depositions will be completed in advance of the general discovery cut-off date.

**13. Dispositive Motions**

Both parties expect to file motions for summary judgment.

**14. Settlement/Alternative Dispute Resolution (ADR)**

The parties agree that mediation should be conducted in accordance with Local Rule 16-15, and held 30 days before the dispositive motion deadline.

**15. Trial Estimate**

Defendant has requested a jury trial. The parties believe a jury trial will take three weeks. Defendant anticipates calling approximately 10 to 15 witnesses. Plaintiff anticipates calling approximately 15 witnesses.

**16. Trial Counsel**

Plaintiff's trial counsel will be Korey Nelson and Lydia Wright of Burns Charest LLP; R. Andrew Free of the Law Office of R. Andrew Free; and Robert Ahdoot and Tina Wolfson of Ahdoot & Wolfson, PC.

Defendant's trial counsel will be Charles Deacon, Mark Emery, and Lesley Swanson Holmes of Norton Rose Fulbright US LLP.

**17. Independent Expert or Master**

Appointment of a master pursuant to Rule 53 is not necessary at this time, but the parties will continue to evaluate this possibility as discovery progresses.

**18. Timetable**

Pursuant to the Court's Standing Order, Plaintiff proposes the case schedule attached as Exhibit A hereto. Defendant proposes the case schedule attached as Exhibit B hereto.

**19. Other issues**

This case will involve non-English speaking witnesses and discovery in foreign jurisdictions.

Dated:  August 13, 2018

For Plaintiff:                              */s/ Lydia A. Wright*

Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

For Defendant:                           */s/ Lesley Holmes*

Lesley Holmes (BAR NO. 271903)
lesley.swanson.holmes@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494

# CERTIFICATE OF SERVICE

On  August 13, 2018, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

/s/ Lydia A. Wright
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765