UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
==AMENDED== CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-2514 JGB (SHKx)** | Date | August 22, 2018 |
| Title | ***Raul Novoa v. The GEO Group, Inc.*** | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| John Lopez | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|

**Proceedings:**  **Order DENYING Defendant's Motion to Dismiss (Dkt. No. 48) (IN CHAMBERS)**

Before the Court is Defendant The GEO Group, Inc.'s ("GEO") motion to dismiss. ("Motion," Dkt. No. 48.)  The Court held a hearing on the Motion on August 20, 2018.  After considering the oral argument and papers filed in support of, and in opposition to, the Motion, the Court DENIES the Motion.

## I.  BACKGROUND

### A.  Procedural Background

On December 19, 2017, Plaintiff Raul Novoa filed a putative class action complaint against Defendant.  (Dkt. No. 1.)  On June 21, 2018, the Court granted in part Defendant's motion to dismiss.  ("Order," Dkt. No. 44.)  Plaintiff filed a first amended complaint on July 6, 2018. ("FAC," Dkt. No. 47.)  Plaintiff's FAC alleges five causes of action arising from his detention at California's Adelanto Detention Center ("Adelanto"): (1) violation of California's Minimum Wage Law, Cal. Labor Code §§ 1194, 1197, 1197.1; (2) unjust enrichment; (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) violation of California's Trafficking Victims Protection Act, Cal. Civ. Code § 52.5; and (5) attempted forced labor under 18 U.S.C. §§ 1589(a), 1594(a).

Defendant filed the instant Motion on July 20, 2018.  (Dkt. No. 48.)  Plaintiff opposed the Motion on July 30, 2018.  ("Opposition," Dkt. No. 52.)  Defendant replied on August 6, 2018. ("Reply," Dkt. No. 54.)

**B. Factual Allegations**

Plaintiff's FAC alleges the following, which the Court accepts as true for the purposes of this Motion:

Adelanto is a civil immigration detention facility owned by Defendant. (FAC ¶ 2.) Since 2011, GEO has contracted with United States Immigration and Customs Enforcement ("ICE") to operate Adelanto. (Id. ¶ 28.) Through its Voluntary Work Program ("Work Program"), GEO hires detainees to perform work at a rate of $1 per day. (Id. ¶ 38.) GEO does not pay and has not paid detainees the state minimum wage for the hours worked at Adelanto. (Id. ¶ 48.)

In the Work Program, detainees are required to work according to an assigned work schedule and to participate in work-related training. (Id. ¶ 41.) Work assignments available through the Work Program include intake, kitchen worker, recreation, barber, laundry, and janitorial, among others. (See id. ¶ 45(a)-(i).) Detainees perform a range of work such as scrubbing bathrooms, preparing detainee meals, performing clerical work for GEO, and managing the law library. (Id. ¶ 46(a)-(m).) GEO provides all necessary personal protection equipment and work uniforms. (Id. ¶ 42.) GEO also records the hours that detainees work and credits wages to their accounts. (Id. ¶ 43.)

Novoa is a citizen of Mexico and a legal permanent resident of the United States. (FAC ¶ 52.) From June 2012 to February 2015, Novoa was detained at Adelanto. (Id. ¶ 54.) During those three years, he worked as a janitor and a barber. (Id. ¶¶ 56-57.) As a janitor, Novoa worked four-hour shifts, up to seven days per week. (Id. ¶ 56.) GEO provided the cleaning supplies and equipment. (Id.) As a barber, Novoa worked up to ten hours per day, seven days a week. (Id. ¶ 57.) Barber supplies and equipment were provided by GEO. (Id.) Novoa was paid $1 per day, regardless of the number of hours he worked, and the wages were credited to his commissary account. (Id. ¶ 58.)

During his detention, Novoa was often undernourished and dehydrated because GEO withheld sufficient food and water. (FAC ¶ 60.) He was served "rotten meat, moldy bread, and inedible produce." (Id.) The drinking water "ran black for days at a time and caused nausea or headaches if ingested." (Id. ¶ 61.) Novoa lost approximately thirty pounds in detention at Adelanto. (Id. ¶ 62.) Novoa spent his wages from the Work Program to purchase food, water, and bathroom products from Adelanto's commissary. (Id. ¶¶ 63-64.) For example, "on several occasions," Novoa developed a "blistering sunburn on his face," and GEO medical personnel did not provide him with sunscreen even after he requested it, so he was forced to purchase sunscreen from the commissary with his Work Program wages. (Id. ¶ 65.) Novoa's issued shoes fell apart within his first week of detention, and GEO did not replace them, which forced him to use his Work Program wages to purchase another pair of shoes from the commissary. (Id. ¶ 66.)

Officers threatened to put Novoa in solitary confinement if he stopped working or encouraged other detainees to stop working. (Id. ¶ 68.) On several occasions, officers threatened, or forced, Novoa to move to a different dorm after he complained about the Work

Program, low wage, and/or deprivation of necessities at Adelanto.  (Id. ¶ 69.)  During these transfers, officers would throw Novoa's belongings and papers, and he felt "harassed, intimidated, threatened, and embarrassed." (Id.)  Officers also threatened to segregate other detainees who complained about the Work Program, working conditions, and/or subminimum wages.  (Id. ¶ 70.)

## II.    LEGAL STANDARD

Defendant moves to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, without which, a federal district court cannot adjudicate the case before it.  See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." Sierra v. Dep't. of Family and Children Servs., No. CV 15-03691-DMG(KES), 2016 WL 3751954, at *3 (C.D. Cal. Feb. 26, 2016) (quoting Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, the Court must assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record." Warren, 328 F.3d at 1139 (citing Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  Factual allegations must be enough to "raise a right to relief above a speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Id.; see Horosny v. Burlington Coat Factory, Inc., 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  In considering a Rule 12(b)(6) motion to dismiss, a court accepts the

plaintiff's factual allegations in the complaint, and construes the pleadings in the light most favorable to the non-moving party.  See Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

## III.   DISCUSSION

Defendant argues GEO is immune from suit, ICE is an indispensable party to the action, Plaintiff fails to state a claim for any of his claims, and his TVPA, CTVPA, and MWL claims are unconstitutionally vague as applied to GEO's administration of the Work Program.  (See Mot.) The Court considers each of these arguments in turn.

## A.  Immunity

Defendant argues GEO is immune from suit under Yearsley v. W.A. Ross Constr. Co, 309 U.S. 18 (1940) because GEO was authorized by ICE to administer the Work Program at the $1 daily wage rate and such authorization was validly conferred by Congress.  (Mot. at 12-16.) Plaintiff contends Defendant's argument inappropriately rests upon evidence outside the FAC, and neither element of Yearsley is satisfied.  (Opp'n at 5-13.)

In Yearsley, a landowner asserted a claim for damages against a private company whose work building dikes on the river pursuant to its contract with the federal government resulted in damage to the plaintiff's land.  309 U.S. at 19.  The Supreme Court held there was no liability on the part of the contractor where "the authority to carry out the project was validly conferred." Id. at 21.  Thus, government contractors "obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States."  Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 672 (9th Cir. 2016) (quoting Brady v. Roosevelt S.S. Co., 317 U.S. 575, 583 (1943)).  The Ninth Circuit has clarified that derivative sovereign immunity under Yearsley is "limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'"  Cabalce v. Thomas E. Blanchard & Assocs., Inc., 797 F.3d 720, 732 (9th Cir. 2015) (quoting In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1001 (9th Cir. 2008)).  Conversely, when a contractor "violates both federal law and the Government's explicit instructions," derivative immunity does not shield the contractor from liability.  Campbell-Ewald, 136 S. Ct. at 672.

Defendant argues all of Plaintiff's claims concern GEO's administration of Adelanto's Work Program, a program which is specifically authorized by ICE at the $1 per day wage rate.  (Mot. at 12-13.)  A determination that GEO's contract with ICE authorized and/or directed the aspects of the Work Program challenged by Plaintiff lies beyond the reach of GEO's motion. How much discretion GEO had, if any, in implementing and administering the Work Program and its other challenged policies is unclear absent the development of a factual record, and such findings can only be made at a later stage.  In Cunningham v. General Dynamics Info. Tech., Inc., 888 F.3d 640, 650-51 (4th Cir. 2018), the case on which Defendant relies, the parties participated in "75

days of limited discovery on the applicability of Yearsley," that included depositions and document requests. For that reason, the Fourth Circuit was "satisfied the discovery provided [plaintiff] with appropriate procedural safeguards and provided [the court] sufficient information" to rule on the defendant's 12(b)(1) motion to dismiss for Yearsley immunity. Id. at 651. Here, the parties have not commenced discovery and the Court is not convinced there is sufficient information before it to rule on the applicability of Yearsley immunity. Accordingly, the Court DENIES Defendant's motion on the issue of derivative sovereign immunity under Yearsley.

## B. Rule 19(b)

Defendant next argues Plaintiff failed to join ICE, an indispensable party, and because ICE is immune from suit and cannot be joined, the suit must be dismissed. (Mot. at 19-22.) Plaintiff contends there is no conflict between Plaintiff's requested relief and GEO's contract with ICE, and ICE does not have a legally protected interest in the case. (Opp'n at 14-17.)

Under Federal Rule of Civil Procedure 19, a party whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so
> situated that disposing of the action in the person's absence may:
>    (i) as a practical matter impair or impede the person's ability to protect the
> interest; or
>    (ii) leave an existing party subject to a substantial risk of incurring double,
> multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a required person cannot be joined, the court must determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Thus, first the court must determine whether a nonparty should be joined under Rule 19(a). EEOC v. Peabody W. Coal Co., 400 F.3d 774, 779 (9th Cir. 2005). Second, if the absentee is a necessary party, the court determines whether it is feasible to join the absentee party. Id. Finally, if joinder is not feasible, the court determines whether the case can proceed without the absentee, or if the action must be dismissed. Id.

The parties dispute whether ICE is a necessary party under Rule 19(a). Plaintiff seeks disgorgement, declaratory and injunctive relief, and monetary damages for lost wages. (Prayer for Relief, FAC.) Defendant argues complete relief could not be awarded if ICE is not joined because ICE must consent to any adjustment to the $1 daily wage rate for detainees in the Work Program. (Mot. at 21.) Thus, Defendant asserts, even if the Court were to order GEO to pay the detainees minimum wages, the order would not bind ICE. (Id.) Defendant cites to Dawavendewa v. Salt River Project Agr. Imp. & Power Dist., 276 F.3d 1150, 1156 (9th Cir. 2002), in which the court determined the Navajo Nation was a necessary party because injunctive relief

could not have been accorded to the plaintiff absent joining the Nation. In <u>Dawavendewa</u>, the plaintiff sued the Salt River Project ("SRP") for using a hiring preference policy in violation of Title VII. <u>Id.</u> at 1154. The SRP's lease with the Navajo Nation required it to preferentially hire Navajos at the Navajo Generating Station. <u>Id.</u> Because the plaintiff sought injunctive relief to ensure his employment at SRP and to prevent it from utilizing the Navajo hiring preference policy, the Ninth Circuit noted any injunction would only bind SRP and plaintiff. <u>Id.</u> at 1155. Thus, SRP would have been forced to comply either with its lease with the Nation or the injunction, and if SRP declined to abide by the injunction, the plaintiff would not be accorded complete relief. <u>Id.</u> at 1156.

Here, the Court concludes Plaintiff could receive his requested relief without ICE being a party. Unlike the plaintiff in <u>Dawavendewa</u> who "[wa]s not assured complete relief even if victorious," 276 F.3d at 1156, GEO could pay Plaintiff and the potential class members monetary damages for their lost wages without implicating ICE. Again, Defendant relies on evidence outside the scope of its motion: its contract with ICE that provides a reimbursement of $1 for the Work Program. (Ex. B at 9, Dkt. No. 48-2.)[1] Even assuming that ICE contracted to reimburse GEO at a rate of $1 per day per detainee, such contract would not necessarily preclude GEO from paying detainees a higher rate. Hence, GEO may not be forced to choose between complying with its ICE contract and the awarded relief. Moreover, since 1979, Congress has abandoned direct appropriations for allowances under 8 U.S.C. § 1555(d), which provides a payment of allowances to aliens held in custody for work performed at a rate specified in an appropriation act. Act of Nov. 30, 1979, Pub. L. 96-132, 93 Stat. 10428; U.S.C. § 1555(d). Therefore, neither the purported contract provision nor § 1555(d) establish that Plaintiff cannot obtain complete relief without ICE. <u>See</u> <u>Washington v. GEO Grp., Inc.</u>, 2018 WL 1963792, at *3 (W.D. Wa. Apr. 26, 2018) (concluding it was arguable complete relief could be obtained among existing parties without joining ICE).

Defendant also asserts GEO will face inconsistent obligations if ICE is not joined and ICE's interest in protecting its own policies and contracts makes it a required party. (Mot. at 22.) Defendant cites its ICE contract distinguishing between detainee activities and GEO employees. (Ex. B at 10 (stating, "Detainees shall not be used to perform the responsibilities or duties of an employee of the Service Provider.").) Thus, Defendant argues, if the Court were to declare the detainees were GEO employees, GEO would be in conflict with their obligations to ICE. (Mot. at 22.) In addition, ICE has an interest because Congressional representatives sent a letter to federal agencies urging them to intervene in lawsuits challenging immigration detainees' wages under the Work Program. (Dkt. No. 24-2.)

The parties dispute whether GEO has a legally protected interest in the case. Defendant argues the action "threatens ICE's core interests," (Reply at 5), meanwhile Plaintiff contends the potential financial interest from increased detainee wages is insufficient. (Opp'n at 17 (citing

---

[1] Defendant's contract with ICE is not properly before the Court. No judicial notice of it can be taken and it was not attached to the FAC. The court discusses the contracts purported provisions here only to address Defendant's arguments.

Makah Indian Tribe v. Verity, 910 F.2d 555, 559 (9th Cir. 1990) ("The interest must be more than a financial stake, and more than speculation about a future event.")).)  In Dawavendewa, the court determined an injunction to compel SRP to stop its hiring preference policy and hire the plaintiff would not bind the Nation, which could continue to enforce its preference policy through the lease.  276 F.3d 1158.  This scenario led to the "substantial risk of [SRP] facing multiple, inconsistent obligations."  Conversely, here, the potential requirement for GEO to pay monetary damages to Plaintiff or to comply with an injunction does not necessarily result in GEO facing inconsistent obligations.  For example, Plaintiff alleges GEO materially benefits from undercompensated detainee labor for which GEO "would otherwise have had to pay at least the applicable minimum wage or more."  (FAC ¶ 95.)  An injunction prohibiting GEO from utilizing detainee labor to complete work that should be performed by GEO employees would be in harmony with, not in violation, of its ICE contract.

Defendant also argues any injunction aimed at addressing Plaintiff's various forced labor theories would "likely affect GEO's ability to comply with ICE's" staffing and administration requirements.  (Reply at 6.)  However, GEO does not provide any evidence to support this speculative assertion.  At this stage, the Court cannot find that ICE is a necessary party because an injunction could potentially alter or impede GEO's contract with ICE.

In sum, the Court finds ICE is not a necessary party under Rule 19(a).  Plaintiff may obtain complete relief from Defendant without joining ICE, and monetary and injunctive relief may not impair ICE's interests or result in GEO facing inconsistent obligations.  Because the Court determines ICE is not a necessary party, the Court need not determine whether joinder is feasible or if ICE is an indispensable party.  See Peabody, 400 F.3d at 779 (explaining the "three successive inquiries" under Rule 19).

## C. California Minimum Wage Law ("MWL")

Defendant argues Plaintiff's MWL claim is preempted by federal law and even if the claim is not preempted, the detainees would not be considered employees under the MWL.  (Mot. at 23-27.)  In the prior Order, the Court found Plaintiff's claim was not preempted and the IWC Wage Order 5 applies to Defendant.  (See Order.)  The Court has reviewed Defendant's arguments in the instant Motion and finds them similar to those already raised and rejected.  The Motion is DENIED as to Plaintiff's MWL claim.

## D. Forced Labor Claims

In the prior Order, the Court found Plaintiff failed to state a claim under either California's Trafficking Victims Protection Act ("CTVPA") or the Trafficking and Victims Protection Act, 18 U.S.C §§ 1589(a) ("TVPA") because of insufficient factual allegations.  (Order at 15, 17.)  In the FAC, Plaintiff supplements his allegations that GEO withheld basic necessities and threatened him when he complained about the Work Program, his low wages, or the deprivation of necessities.  In terms of withheld necessities, Plaintiff now alleges he was served rotten food, the water was dirty at times, he was forced to purchase sunscreen after medical personnel

wouldn't provide it and shoes after his issued pair fell apart within a week.  (FAC ¶¶ 60-61, 65-66.)  In addition, officers threatened Novoa with solitary confinement or moving to a different dorm if he stopped working or complained about the Work Program.  (Id. ¶¶ 68-69.)

A victim of human trafficking may bring a civil action for damages or injunctive relief under California Civil Code § 52.5.  Cal. Civ. Code § 52.5(a).  California's human trafficking statute provides in pertinent part that "[a] person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking."  Cal. Penal Code § 236.1.  The elements of the criminal offense are (1) the defendant either deprived another person of personal liberty or violated that other person's personal liberty; and (2) when the defendant did so, he or she intended to obtain forced labor or services from that person.  People v. Halim, 14 Cal. App. 5th 632, 643 (2017), petition for cert. filed, Astati Halim, et al. v. California, -- U.S. -- (Mar. 1, 2018) (No. 17-1224).  Forced labor services are defined as "labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person."  Cal. Penal Code § 236.1(h)(5).

Defendant argues neither ICE nor GEO brought Novoa to Adelanto for the purpose of participation in the Work Program.  (Mot. at 28.)  However, as the Court identified in its Order, "[W]hile GEO did not orchestrate Novoa's initial detention or administer his ongoing detention with the intent to obtain forced labor services, Plaintiff alleges Defendant violated his liberty by creating conditions within Adelanto for the purpose of obtaining forced labor in the Work Program."  (Order at 14.)  Plaintiff claims GEO withheld necessities, such as food and water, in order to force detainees into the Work Program, so they would earn wages to spend at the commissary.  In furtherance of this scheme, officers would threaten Plaintiff to force him to stay in the Work Program, Plaintiff alleges.

Defendant disputes Plaintiff has made the requisite link between the withholding of necessities and detainee participation in the Work Program, but the Court finds Plaintiff has sufficiently stated a claim under CTVPA.  Plaintiff alleges he would not have worked for $1 per day "if given a meaningful choice."  (FAC ¶ 71.)  Taking all reasonable inferences in Plaintiff's favor, the Court construes Novoa's allegations to include GEO provided the spoiled food and water and those regarding "officers" to mean GEO-hired officers.  Thus, the factual allegations plausibly identify the coercive pressure Novoa felt to continue in the Work Program to include the lack of basic necessities, the need to purchase them at the commissary, and the officers' conduct.  In this manner, Plaintiff has adequately alleged Novoa's liberty was violated by GEO in order to obtain his undercompensated labor.  The Court DENIES the Motion as to Plaintiff's CTVPA claim.

Enacted as part of the Trafficking and Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. § 1589 proscribes a party from "knowingly provid[ing] or obtain[ing] the labor or services of a person" through force, physical restraint, serious harm, abuse of law or legal process, threats of any of those means, or any combination of those methods.  18 U.S.C. § 1589(a).  Also liable is a party who "knowingly benefits, financially or by receiving anything of value, from participation in

a venture" involving forced labor.  18 U.S.C. § 1589(b).  Title 18 U.S.C. § 1595 provides the civil remedy to a victim of forced labor.  18 U.S.C. § 1595.

As in the previous motion to dismiss, Defendant argues TVPA does not apply to a corporate defendant.  (Mot. at 28.)  However, the Court already found "no basis for Defendant's proposition that a federal detention center run by a private entity is excluded from the reach of the TVPA," and finds new arguments to the contrary unpersuasive.  (Order at 15.)  As noted above, the Court concludes Plaintiff's factual allegations are sufficient to state a claim for forced labor.  Plaintiff has remedied the deficiencies from the previous complaint, and the Court DENIES the Motion as to Plaintiff's TVPA claim.

## E.  Unconstitutional Vagueness

Next, Defendant argues Plaintiff's TVPA, CTVPA, and MWL claims are unconstitutionally vague as applied to GEO's administration of the Work Program.  (Mot. at 29-31.)  Defendant asserts Plaintiff's reading of TVPA and CTVPA is so broad as to deprive anyone of sufficient notice of what is prohibited, and there was no notice GEO was required to pay a state minimum wage to Work Program participants.  (Mot. at 30, 31.)  Plaintiff counters that the statutes at issue provide sufficient notice of the prohibited conduct.  (Opp'n at 23.)

It is a "basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  As the Supreme Court stated:

> First . . . we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.  [Sentence omitted.]  Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

Id. at 108-109.  The degree of vagueness tolerated depends in part on the nature of the enactment.  Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).  For example, as relevant here, the Court has expressed "greater tolerance of enactments with civil rather than criminal penalties."  Id. at 498-99.

Defendant's argument for unconstitutional vagueness as to TVPA and CTVPA claims is predicated in significant part on its assertion that GEO faces liability for "carrying out ICE's own directives."  (Reply at 9.)  However, the Court concludes, as noted above, the determination of the scope of conduct specifically authorized and directed by GEO's contract with ICE is unsuitable for resolution at this stage.  Whether ICE's directives instruct GEO on its provision of basic necessities remains an open question along with whether GEO's challenged practices were implemented at the direction of the federal government.  As the Court found in its previous Order, in the absence of contrary authority, private immigration facilities are not beyond the reach of either CTVPA or TVPA.  (Order at 13, 15.)

As to Defendant's void-for-vagueness argument as applied to GEO's administration of the Work Program, the Court similarly finds it unavailing. California Labor Code § 1194 provides for a civil action by employees receiving less than the legal minimum wage or overtime compensation. Cal. Labor Code § 1194(a). This regulation defines the proscribed conduct – paying employees less than the legal minimum wage or overtime compensation- with "sufficient definiteness that ordinary people can understand what conduct is prohibited." Alphonsus v. Holder, 705 F.3d 1031, 1042 (9th Cir. 2013).

Because California's Labor Code does not define "employer" and "employee," one must look to the independent Industrial Welfare Commission's ("IWC") wage orders to determine which employers are subject to MWL, and Defendant challenges the lack of notice that any of the wage orders apply to GEO. IWC Wage Order 5 defines the Public Housekeeping Industry as "any industry, business, or establishment which provides meals, housing, or maintenance services whether operated as a primary business or when incidental to other operations in an establishment not covered by an industry order of the Commission. . ." Cal. Code. Regs., tit. 8 § 11050, subd. 2(P). Entities that offer medical services in addition to housing and board are included on the list of types of covered entities. Cal. Code. Regs., tit. 8 § 11050, subd. 2(P)(4). As the Court, and at least one other federal court, held, IWC Wage Order 5's broad terms may encompass a civil immigration facility, such as Adelanto, which provides housing, board, and medical services. (Order at 11; see also Owino v. CoreCivic, Inc., 2018 WL 2193644, at *26 (S.D. Cal. May 14, 2018) (holding civil immigration detention facility provided essential services for detainees, similar to other entities listed in the wage order).

That Defendant did not receive actual notice that its failure to pay minimum wage in the Work Program was prohibited is not sufficient to find § 1194 vague as applied to GEO. Section 1194 and the IWC wage orders provide "appropriate notice of what [is] condemned by law," United States v. Other Medicine, 596 F.3d 677, 682 (9th Cir. 2010), and provide an illustrative, though not comprehensive, list of covered entities. IWC Wage Order 5 states "any industry, business, or establishment," meeting the enumerated specifications is within its ambit. Cal. Code. Regs., tit. 8 § 11050, subd. 2(P). This language is sufficiently clear to alert a person of ordinary intelligence that a civil immigration facility that provides medical services may be subject to the wage order. See Maynard v. Cartwright, 486 U.S. 356, 261 (1998) ("Objections to vagueness . . . rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.") Accordingly, the Court finds CTVPA, TVPA, and MWL are not unconstitutionally vague as applied to GEO's administration of the Work Program.

## F. California Unfair Competition Law ("UCL")

Plaintiff alleges Defendant violated the "unlawful" prong of the UCL by violating California labor law. (FAC ¶ 101.) Defendant argues Plaintiff's UCL claim is derivative and must be dismissed. (Mot. at 32.) A claim under the UCL requires a showing of either an unlawful, unfair, or fraudulent business act or practice, or an unfair, deceptive, untrue, or misleading advertising. Steward v. Life Ins. Co. of N. Am., 388 F. Supp. 2d 1138, 1143 (E.D. Cal. 2005). To plead a

violation of the UCL under the unlawful prong, a plaintiff must plead a violation of another statute or common law.  See Farmers Ins. Exchange v. Super. Ct., 2 Cal. 4th 377, 383 (1992).

The Court has determined Plaintiff has adequately pleaded a claim under the MWL. Therefore, Plaintiff's claim under the UCL also survives the Motion.  The Court DENIES the Motion as to this claim.

## G.  Unjust Enrichment

Novoa contends he was coerced into performing undercompensated work that materially increased GEO's profits.  (FAC ¶¶ 94-95.)  He also alleges GEO retained these benefits, and seeks their disgorgement to himself and the other putative class members.  (Id. ¶ 98.)  To plead a claim for unjust enrichment, a plaintiff must allege a receipt of a benefit and unjust retention of the benefit at the expense of another.  Baltazar v. Apple, Inc., 2011 WL 588209, at *5 (N.D. Cal. Feb. 10, 2011).  Unjust enrichment is not an independent cause of action, but "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"  Price v. Synapse Group, Inc., 2017 WL 3131700, at *10 (S.D. Cal. July 24, 2017) (citing Durell v. Sharp Healthcare, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010)); Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2).  Nevertheless, the Ninth Circuit has held a court "may construe the cause of action as a quasi-contract claim seeking restitution."  Astiana, 783 F.3d at 762.

Defendant argues detainees, including Plaintiff, signed a form agreeing to participate in the Work Program for $1 per day, and therefore had no reasonable expectation of a higher value wage rate.  (Mot. at 32.)  However, Plaintiff alleges "GEO falsely led Mr. Novoa to believe the corporation could not pay him more than $1 per day."  (FAC ¶ 72.)  Moreover, Plaintiff alleges he would not have worked in the Work Program if given a "meaningful choice."  (Id. ¶ 71.) These allegations imply Novoa conferred a benefit to GEO through coercion and/or fraud. Thus, the Court finds Plaintiff has adequately stated a claim for unjust enrichment and DENIES the Motion as to this claim.

## IV.   CONCLUSION

Based on the foregoing, the Court DENIES Defendant's motion to dismiss.

**IT IS SO ORDERED.**