# Exhibit 2

**burns
charest
llp**

Lydia Wright
lwright@burnscharest.com

April 12, 2019

**VIA EMAIL ONLY**
Stacey Wang
Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
stacey.wang@hklaw.com

Re:    *Raul Novoa v. The GEO Group, Inc.*, Case No. 5:17-cv-02514 (C.D. Cal.)

Dear Stacey,

Plaintiffs do not consent to ICE's edits to the negotiated protective order in this case, as detailed in your email of April 11, 2019. Ex. A (2019.04.11 S.Wang email).

As we have already explained to GEO, ICE, and the Court, there is no basis in the law for GEO's position that ICE may dictate the scope or pace of this litigation. *See* Ex. B (2019.10.08 L.Wright Ltr. to A.Rose); Ex. C (2019.03.21 L.Wright Ltr. to S.Wang); Ex. D (2019.03.29 L.Wright Ltr. to S.Wang).

ICE asserts the power to control discoverable information in this case through its *Touhy* regulations because GEO is an ICE contractor pursuant to 6 C.F.R. § 5.41(c). *See* Ex. E (2018.10.03 A.Rose Ltr. to L.Wright) ("The provisions are applicable to contractors as well as DHS employees in accordance with 6 C.F.R. § 5.41(c)."). But if ICE is correct, then DHS's *Touhy* regulations make the United States a party to this litigation and, consequently, DHS's *Touhy* regulations do not apply. *See, e.g.*, *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953). *See also Galarza v. Szalcyzk*, No. 10-6815, 2011 WL 1045199 at *3 (E.D. Pa. Mar. 21, 2011) (*citing Alexander v. F.B.I.*, 186 F.R.D. 66, 70 (D.D.C. 1998)).

This was precisely the conclusion reached by the U.S. District Court for the District of Colorado in *Menocal v. The GEO Group*, Inc., 2017 WL 4334000, at *2-4 (D. Colo. Jun. 6, 2017). In *Menocal*, as here, GEO refused to comply with several of plaintiffs' discovery requests based on DHS's *Touhy* regulations. In response, plaintiffs pointed out that those regulations define "DHS employee" to include the agency's contractors and, accordingly, the agency itself was a party to the case through its own broad regulatory language. The *Menocal* court agreed, finding that plaintiffs were "unquestionably correct." *Id.* at *3.

In this case, GEO has refused to produce discoverable evidence, including initial disclosures and responses to Plaintiffs' discovery requests, pending entry of an agreed protective order and ESI protocol. The Parties have accordingly spent months negotiating those protocols, and trial has been

Stacey Wang
April 12, 2019
Page 2

continued because GEO has not produced the documents necessary for Plaintiffs to prosecute their case.

GEO has been concurrently negotiating a protective order in *Menocal*. Accordingly, GEO requested that Plaintiffs in this case wait to enter a protective order until the *Menocal* protective order was negotiated, so that the two protective orders would be similar. Plaintiffs, in good faith, agreed to GEO's request. GEO and the *Menocal* plaintiffs entered their Amended Stipulated Protective Order Concerning Confidential Information on November 26, 2018. Ex. F (*Menocal* Protective Order).

Now, nearly five months later, GEO continues to delay entry of a substantially similar protective order in this case. Notably, none of ICE's edits to our previously-agreed protective order appear in the *Menocal* protective order.

GEO and Plaintiffs reached final agreement on the protective order to govern this litigation on February 28, 2019. *See* Ex. G (2019.02.28 T.Maya email to D.Ellison). Accordingly, Plaintiffs will request today that the Court enter that protective order.

Best,

**BURNS CHAREST LLP**

*/s/ Lydia Wright*
Lydia Wright


cc:    Carolyn Short
       Shannon Armstrong

# EXHIBIT A

**Friday, April 12, 2019 at 1:48:55 PM Central Daylight Time**

| | |
|---|---|
| **Subject:** | Novoa v. The Geo Group - Updated Protective Order Draft |
| **Date:** | Thursday, April 11, 2019 at 8:05:35 PM Central Daylight Time |
| **From:** | stacey.wang@hklaw.com |
| **To:** | Lydia Wright, Andrew Free, Ted Maya |
| **CC:** | Carolyn.Short@hklaw.com, Shannon.Armstrong@hklaw.com, Kristin.Asai@hklaw.com, Novoa - External |
| **Category:** | Save Email, OC Emails |
| **Attachments:** | Novoa Protective Order - Additional Proposed Revisions_67031715_1.DOCX |

Dear Counsel,

Attached is the protective order with a few proposed redlines based upon feedback from ICE, which I don't think should be controversial.  I also updated the caption, our signature block, and the signature block for the Court to conform to the sample.

Once the order is final, I will have our document processing create a redline from the Court's standard form, as required by the Court's rules, and placed in lined pleading format, as required by the local rules, then send it to you for final review before filing.

Summarized below are the issues that gave rise to the redlines:

1. ICE is concerned that the protective order is insufficient with respect to information regarding asylum, refugee and other information statutorily prohibited from disclosure under 8 U.S.C. § 1367. Disclosure can result in criminal and/or civil penalties and ICE states that this information must be redacted before disclosure. It is our understanding that plaintiffs do not want this information and we don't see any reason this information would become relevant. So, we have added references to 8 U.S.C. § 1367 in paragraph 1.B, 5.3 (regarding potentially public but unauthorized information), 13(a), 14.2, 14.4.

2. Under "Highly confidential/AEO" information in paragraph 2.9, a clause was added to provide that DHS/ICE may designate information in accordance with applicable federal regulations. It is meant to cover sensitive information such as law enforcement sensitive information and nonparty employee information, for example.

3. ICE would like the ability to designate testimony as Confidential/AEO in paragraph 5.2(c) and have 30 days from their receipt of the transcript to do so. We can coordinate on this to have the court reporter send any relevant transcripts to ICE at the same time as to counsel so that this can be streamlined, since the protective order currently provides 30 days for counsel to review.

4. On PHI (Personal Health Information) in para. 7.3 and 7.4, ICE is concerned about the broad language regarding disclosure and use of PHI. We propose limiting this to disclosure and use when "necessary" (following the language already in 7.2), rather than "reasonably connected" which does not seem to take into account the heightened privacy interest in health information. The additional clause in Paragraph 13(a) is meant to also cover protection of PHI information, among other things.

5. In paragraphs 8.2(h) and 8.3(f) governing deponents' access to Confidential/AEO information, ICE raised that while deponents may need to view such information in the course of being deposed or in reviewing their transcript, they should not be permitted to "keep" any such information. This comment is consistent with the provisions requiring return or destruction of material after the litigation.

6. Instead of 14 days, ICE asked for more time to seek a protective order in paragraph 10(c) regarding

protective material sought to be produced. We added a week here, for a total of 21 days.

We look forward to hearing from you.

Thank you,
Stacey

**Stacey Wang** | **Holland & Knight**

Partner

Holland & Knight LLP

400 South Hope Street, 8th Floor | Los Angeles, California 90071

Phone 213.896.2480 | Fax 213.896.2450

stacey.wang@hklaw.com | www.hklaw.com

Add to address book | View professional biography

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

# EXHIBIT B

# burns charest llp

Lydia Wright
lwright@burnscharest.com

October 8, 2018

**VIA EMAIL ONLY**
Anne M. Rose
Associate Legal Advisor
Government Information Law Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
anne.rose@ice.dhs.gov

Re:     *Raul Novoa v. The GEO Group, Inc.*, Case No.: 5:17-cv-02514 (C.D. Cal.)

Dear Anne:

I am in receipt of your October 3, 2018 letter regarding the Rule 30(b)(1) deposition of David Venturella, Senior Vice President for Business Development at The GEO Group, Inc. ("GEO").[1] GEO is the sole defendant in the above-referenced action. Thank you for providing the agency's position.

As you note in your letter, the Department of Homeland Security ("DHS") promulgated regulations pursuant to the Housekeeping Act, 5 U.S.C. § 301, and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (the "*Touhy*" regulations) to "govern the release of testimony by DHS employees or documents in a legal proceeding where the United States is not a party."

As a threshold matter, and as we have explained to GEO's counsel, Plaintiff seeks to depose Mr. Venturella solely regarding his work as a GEO employee. You have our assurance that Plaintiff will not depose Mr. Venturella regarding any official information received or actions undertaken during his tenure as an employee of U.S. Immigration and Customs Enforcement ("ICE") or its predecessor agencies without first complying with DHS's *Touhy* regulations. 6 C.F.R. §§ 5.41 *et seq.*

ICE asserts that DHS's *Touhy* regulations apply to Mr. Venturella's testimony as a GEO employee. However, the express regulatory provisions you cite in your October 3, 2018 letter reveal that *Touhy* does not apply where, as here, the United States is a party to the litigation. *See* October 3, 2018 Letter at 2 ("The provisions are applicable to contractors as well as DHS employees in accordance with 6 C.F.R. § 5.41(c)."). ICE asserts the power to control the testimony of Mr. Venturella about his employment at GEO through its *Touhy* regulations precisely because GEO—Mr.

---

[1] Plaintiff served the Rule 30(b)(1) deposition notice on Mr. Venturella through GEO's counsel on September 14, 2018. The deposition is scheduled for October 22, 2018 in Boca Raton, Florida.

Anne M. Rose
October 8, 2018
Page 2

Venturella's employer—is an ICE contractor pursuant to 6 C.F.R. § 5.41(c). But if ICE is correct, then DHS's *Touhy* regulations make the United States a party to this litigation. Consequently, DHS's *Touhy* regulations do not apply. *See, e.g.*, *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953). *See also Galarza v. Szalcyzk*, No. 10-6815, 2011 WL 1045199 at *3 (E.D. Pa. Mar. 21, 2011) (citing *Alexander v. F.B.I.*, 186 F.R.D. 66, 70 (D.D.C. 1998)).

This was precisely the conclusion reached by the U.S. District Court for the District of Colorado in another action brought by immigrant detainees against GEO. *Menocal v. The GEO Group, Inc.*, 2017 WL 4334000, at *2-4 (D. Colo. Jun. 6, 2017). In *Menocal*, GEO refused to comply with several of Plaintiffs' discovery requests based on ICE's *Touhy* regulations. In response, Plaintiffs pointed out that those regulations define "DHS employee" to include the agency's contractors and, accordingly, the agency itself was a party to the case through its own broad regulatory language.[2] The *Menocal* court agreed, finding that Plaintiffs were "unquestionably correct." *Id.* at *3.

So too, here. The only colorable claim to *Touhy* applicability ICE can make as to Mr. Venturella's testimony about his work for GEO is that such work falls within the "contractor" definition in 6 C.F.R. § 5.41(c). If this is correct, DHS's *Touhy* regulations render the United States, through ICE, by way of its contractor, a party to this litigation. Accordingly, *Touhy* does not apply to Mr. Venturella's testimony regarding his employment at GEO.

Should ICE seek to limit the testimony of Mr. Venturella regarding his work at GEO, ICE should direct its arguments to the U.S. District Court for the Central District of California. Absent a pending motion or applicable court order, Plaintiff intends to proceed with Mr. Venturella's deposition as noticed.

If you have any questions, please contact me at (504) 799-2845 or via email at lwright@burnscharest.com.

Best,

**BURNS CHAREST LLP**

*/s/ Lydia Wright*
Lydia Wright

---

[2] If ICE elects to litigate its attempt to channel Mr. Venturella's deposition into the DHS *Touhy* process, Plaintiff intends to challenge several aspects of the agency's *Touhy* regulations as *ultra vires* under the Housekeeping Statute and in violation of the separation of powers as applied in this case.

Anne M. Rose
October 8, 2018
Page 3

cc:     Robert Herrington
        Scott Schipma
        Sarah Mathews
        Jerry Stouck
        Naomi Beer
        Tyler Coombe
        Mark Emery
        Charles Deacon
        Andrea D'Ambra
        Lesley Holmes

# EXHIBIT C

**burns charest llp**

Lydia Wright
lwright@burnscharest.com

March 21, 2019

**VIA EMAIL ONLY**
Stacey Wang
Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
stacey.wang@hklaw.com

Re:    *Raul Novoa, et. al v. The GEO Group, Inc.*, Case No. 5:17-cv-02514 (C.D. Cal.)

Dear Stacey:

I write to request a telephonic conference pursuant to Local Rule 37-1 to discuss and attempt to resolve the discovery issues identified below. **Please let us know your availability within the next ten days for the conference.**

**Issue 1: Protective Order**

On August 24, 2018, Plaintiffs proposed that the Parties adopt the Central District of California model protective order in this litigation. GEO refused, and the Parties have been negotiating a protective order ever since. GEO has been concurrently negotiating a protective order in a similar forced labor case proceeding in the District Court of Colorado, *Menocal v. The GEO Group*, Case No. 1:14-cv-02887 (D. Colo. 2014). GEO requested that Plaintiffs in this case wait to enter a protective order until the *Menocal* protective order was negotiated, so that the two protective orders would be similar.  Plaintiffs, in good faith, agreed to GEO's request.

GEO and the *Menocal* plaintiffs entered their Amended Stipulated Protective Order Concerning Confidential Information on November 26, 2018. Now, **nearly four months later**, GEO continues to delay entry of a substantially similar protective order in this case.

In your March 20, 2019 email, you state that GEO has submitted the parties' agreed protective order to ICE for review and that you "expect to be ready to authorize that draft for filing soon, assuming ICE has no revisions." However, ICE is not a party to this litigation or to the protective order. Further, GEO is not insulated from its discovery obligations under the Federal Rules of Civil Procedure due to its contractual relationship with ICE.  There is simply no basis in the law for GEO's position that ICE may dictate the pace of litigation to which it is not a party.

Stacey Wang
March 21, 2019
Page 2

Throughout this litigation, GEO has refused to fully comply with its discovery obligations until entry of a protective order and ESI protocol. By delaying entry of a protective order and ESI protocol and by withholding discovery for **seven months**, GEO has prejudiced Plaintiffs' ability to prosecute their case and comply with the Scheduling Order entered in this case. In fact, the Scheduling Order has already been amended once because of GEO's delay in producing documents.

Accordingly, and considering that depositions have been noticed in this case for May 3, 21, and 22, 2019, Plaintiffs will request that the Court enter the protective order which has been agreed to by the Parties.

### Issue 2: ESI protocol

Plaintiffs first sent GEO their proposed ESI protocol on August 27, 2018. Since then, the parties have exchanged numerous competing versions of that protocol. Again, GEO has refused to fully comply with its discovery obligations until entry of a protective order and ESI protocol. Accordingly, Plaintiffs will move for an Order compelling entry of the ESI protocol within one week of Magistrate Judge Kewalramani's pending Order on Plaintiffs' Discovery Motion (ECF No. 118).

### Issue 3: Document production

GEO's Rule 26(a)(1) initial disclosures, dated August 16, 2018, identify nine documents, electronically stored information, and/or tangible things the corporation may use to support its claims or defenses. The chart below is copied from GEO's initial disclosures:

| Doc. No. | Bates Range | Date | Document |
|---|---|---|---|
| 1. | | | U.S. Immigration and Customs Enforcement, National Detainee Handbook, filed on July 20, 2018 in connection with GEO's Motion to Dismiss Plaintiff's First Amended Complaint |
| 2 | | | 2011 PBNDS |
| 3. | | 05/27/2011 | ICE-City of Adelanto Contract, excerpts filed in redacted form on July 20, 2018 in connection with GEO's Motion to Dismiss Plaintiff's First Amended Complaint<br><br>*Will be produced with necessary redactions after entry of a protective order.* |
| 4. | | 05/17/2011 | City of Adelanto-GEO Contract, excerpts filed in redacted form on July 20, 2018 in connection with GEO's Motion to Dismiss Plaintiff's First Amended Complaint |

burns charest LLP | 365 canal street | suite 1170 | new orleans, louisiana 70130

Stacey Wang
March 21, 2019
Page 3

| | | | |
|---|---|---|---|
| | | | *Will be produced with necessary redactions after entry of a protective order.* |
| 5. | | | Raul Novoa - Detainee File<br><br>*Not available yet; subject to ICE clearance and entry of a protective order.* |
| 6 | | | Raul Novoa – ICE File<br><br>*Not available yet; subject to ICE clearance and entry of a protective order.* |
| 7. | | | GEO business records from the Adelanto Facility, including but not limited to records pertaining to Raul Novoa's commissary purchases.<br><br>*Not available yet; subject to ICE clearance and entry of a protective order.* |
| 8. | | | Food, hygiene, and sanitation records from the Adelanto Detention Facility<br><br>*Not available yet; subject to ICE clearance and entry of a protective order.* |
| 9. | | | ICE policies and regulations related to the Voluntary Work Program<br><br>*Not available yet; subject to ICE clearance and entry of a protective order.* |

To date, GEO has produced the U.S. Immigration and Customs Enforcement National Detainee Handbook, which was filed as an exhibit to GEO's Motion to Dismiss Plaintiff's First Amended Complaint. *See* Dkt. 48-2. GEO has also produced 578 documents, including duplicates, totaling only 4,799 pages. But GEO has failed to produce the remaining documents listed in rows two through nine, above. As a result of GEO's continued delay and noncompliance with its discovery obligations, Plaintiffs are highly prejudiced and unable to adequately prepare for upcoming depositions and deadlines in this matter.

On July 27, 2018, Plaintiff served GEO with twenty-two Requests for Production of documents. *See* Exhibit A: Plaintiffs' First Set of Discovery Requests. Despite receiving these requests nearly **eight months ago**, GEO has produced only 4,799 pages of documents, including duplicates. GEO has estimated that this case will require it to produce hundreds of thousands of documents.

In a letter dated February 6, 2019, GEO represented that it anticipated being substantially complete with its production of data in response to Plaintiffs' discovery requests by April 6, 2019. *See* Exhibit B: D. Ellison Ltr. to L. Wright, Feb. 6, 2019. Plaintiffs will accordingly seek an Order requiring GEO to make full Rule 26 initial disclosures and produce all documents, electronically stored information, and tangible things responsive to Plaintiffs' first set of requests for production by April 6, 2019.

Stacey Wang
March 21, 2019
Page 4

To summarize, Plaintiffs will request that the Court:[1]

(a) Enter an Order adopting the parties' stipulated protective order;

(b) Enter an Order compelling entry of the ESI protocol within one week of the Court's Order on Plaintiffs' Discovery Motion (ECF No. 118);

(c) Order GEO to produce by April 6, 2019 all documents, electronically stored information, and tangible things it may use to support its claims or defenses; and

(d) Order GEO to produce by April 6, 2019 all documents responsive to Plaintiffs' first set of requests for production.

We look forward to working with you in good faith to resolve these discovery issues. Again, **please provide us with dates and times within the next ten days for our Local Rule 37-1 telephonic conference.** If you have any questions, please contact me at (504) 799-2845 or via email at lwright@burnscharest.com.

Best,

**BURNS CHAREST LLP**

*/s/ Lydia Wright*
Lydia Wright

cc:     Carolyn Short

---

[1] Plaintiffs reserve the right to raise any other factual and/or legal grounds for production that may be appropriate based on Plaintiffs' continuing investigation in this case.

burns charest LLP | 365 canal street | suite 1170 | new orleans, louisiana 70130

# Exhibit A

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **RAUL NOVOA**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>    Defendant. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT THE GEO GROUP, INC.** |

**To:    Defendant The GEO Group, Inc.**

Plaintiff Raul Novoa, on behalf of himself and all others similarly situated, by and through undersigned counsel, hereby serves the following interrogatories, requests for production, requests for admission, and request for inspection under oath pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36.

Please respond within 30 days from the date of this request, and continuing from day to day thereafter, until completed, at **365 Canal Street, Suite 1170, New Orleans, Louisiana 70130**, or at such time and place as may be agreed upon by all counsel.

**INSTRUCTIONS**

1.     Each discovery request must be answered in full. If this cannot be done after conducting a reasonable investigation, answer to the fullest extent possible, explaining why a complete answer is not possible, stating any knowledge, information, or belief concerning the unanswered portion of the discovery request, what information or documents cannot be provided, why the information or documents are not available, and what efforts were made to obtain the unavailable information or documents.

1

2.      Pursuant to Fed. R. Civ. P. 34 all documents and tangible things that are responsive to a request for production must be produced if they are in your possession, custody, or control.

a.  You are instructed that possession, custody, or control includes constructive possession; therefore, your ability to produce the documents and tangible items requested herein is not affected by you not having actual physical possession of such items.

b.  As long as you have a right to possess the requested items or a right to compel the production of such items from a third party (including any person, entity, agent, governmental body or agency, or representative), you have possession, custody, or control.

c.  If any document requested was in your possession or control, but no longer is in your possession or subject to your control, state what disposition was made of it, the reason and date of such disposition.

3.      With respect to each item or category of items where applicable, you must state objections and assert privileges, if any, as required by the Federal Rules of Civil Procedure and further respond, as appropriate, that:

a.  production, inspection, or other requested action will be permitted as requested;

b.  the requested items are being served with your response;

c.  production, inspection, or other requested action will take place at a specified time and place if you are objecting to the time and place specified herein; or

d.  no items have been identified, after diligent search, that are responsive to the request.

4.      To the extent any of the following discovery requests are objectionable in whole or in part, each objection must be stated with particularity, including the reasons for the objection and the

2

categories of information to which the objection applies. As required by the Federal Rules of Civil Procedure, the discovery request must be answered to the extent it is not objectionable.

5.    If you withhold information for reasons of any privilege, or claims that any answer to any discovery request is subject to a claim of privilege regarding any information, document, or communication sought by any of these discovery requests, identify each such communication, information, or document withheld on grounds of an alleged privilege, and specifically set forth the following: the nature and basis of the privilege claimed; the type of document; the author(s); the addressee(s), including the actual or intended recipients of any copies; the date of the communication, document, or information; the subject matter of the communication, document, or information; if the privilege claimed is the attorney-client privilege, an indication of which author(s) or addressee(s) is/are attorneys; any other information necessary to support the claim of privilege; and the numbered discovery request to which each alleged privileged document is responsive.

6.    If you find the meaning of any term in these discovery requests unclear, you shall assume a reasonable meaning, state what the assumed meaning is, and respond according to the assumed meaning.

7.    In interpreting these discovery requests, definitions, and instructions: any masculine, feminine, or neutral term includes all other genders; the singular includes the plural and vice versa; and "or," "and," "and/or," and "including" shall be read to bring within the scope of the discovery request the broadest amount of information.

8.    Unless otherwise specified in a particular question or request, the relevant time period for all questions and requests is from December 19, 2007, and continuing through to the present. If additional responsive documents are created following the service of this requests they should be treated as responsive and promptly produced in accordance with the Federal Rules.

3

9.    To the extent any aspect of your answer or response changes depending on the time considered, please identify the various iterations, when they happened, and the reason(s) for the change(s) over time.

10.    Pursuant to Fed. R. Civ. P. 26(a) and 26(e), you must supplement, by reasonable amendment, any response you give to include documents later drafted, acquired, or discovered by you. You have an ongoing obligation to supplement your responses to these discovery requests.

11.    Pursuant to Fed. R. Civ. P. 34(B)(1)(c), please produce all electronically stored information ("ESI") in its original file format as maintained in your regular course of business and in a format readable by readily available commercial software. In the alternative, ESI may be produced in a format otherwise agreed upon by the parties.

12.    The requests for production of documents includes the file or files in which the documents are contained or compiled.  The requests further includes all copies of any particular document that varies in any material way from the original, e.g., all documents with written notations, highlighting or marking thereon, or attached thereto, including the color of any such notations, markings or high-lightings.  These requests include all document drafts.

13.    Pursuant to Fed. R. Civ. P. 34 you are instructed to either produce the documents and tangible things as they are kept in the usual course of business or organize and label them in such a manner so that they correspond to each specific request.

  a.  File folders with tabs or labels identifying documents called for should be produced intact with the document or documents.

  b.  Selection and identification of documents from files or other sources should be performed in such a manner as to ensure that the source of each document may be determined.

4

PLTF.'S FIRST SET OF DISCOVERY REQUESTS                           5:17-cv-02514-JGB

c.  Documents attached to each other should not be separated unless sufficient records are kept to permit reconstruction of the groupings.

14.  Unless otherwise indicated, all interrogatories and requests for production of documents pertain to the entirety of the relevant period, as defined below, and Defendant's responses should be updated regularly.

## DEFINITIONS

As used in these interrogatories, requests for production, and requests for admission, the following terms have the following meanings:

1.  The term "GEO" is defined as the Defendant The GEO Group, Inc., and affiliated corporate entity or subsidiary (including any taxable REIT subsidiary) through which The GEO Group, Inc. conducts business or receives revenue, as well any officer, agent, employee, executive, or representative of GEO as defined herein.

2.  The term "ICE" is defined as the United States Immigration and Customs Enforcement.

3.  The term "Work Program" is defined as any program GEO operates involving labor performed by detainees for remuneration of any kind that includes tasks outside those described in Section 5.8.V.C of the 2011 ICE Performance-Based National Detention Standards ("PBNDS") (rev. 2016).

4.  The term "Adelanto Facility" is defined as the Adelanto Detention Center, located in Adelanto, California, and operated by GEO pursuant to a federal contract with ICE.

5.  The term "detainee" is defined as any person detained in an immigration detention facility operated by GEO.

6.  The term "person" is defined as any natural person or business, legal, or governmental entity or association.

5

PLTF.'S FIRST SET OF DISCOVERY REQUESTS                    5:17-cv-02514-JGB

7.    The terms "Plaintiffs," "Plaintiff," "Defendant," and "Defendants," as well as a party's full or abbreviated name or pronoun referring to a party, mean the party and, where applicable, his officers, directors, employees, partners, corporate parent, subsidiaries, predecessors, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

8.    The terms "you" and "your" include the person(s) to whom these requests are addressed, and all of that person's agents, representatives, and attorneys.

9.    "Compensation" means all monies and benefits, including: salaries, hourly wages, overtime wages, commissions, raises, and bonuses; or any other benefits given in return for work, tasks and/or duties.

10.    The term "hours" includes full hours and partial hour(s).

11.    "Policy" or "Policies" mean each rule, procedure, or directive, formal or informal, written or unwritten, and each common understanding or course of conduct that was recognized as such by Defendant or persons acting or purporting to act on Defendant's behalf, that has been in effect at any time during the period covered by these demands. These terms include any change of policy.

12.    "Relevant period" means the period from December 19, 2007 through the present for all requests related to the Work Program and December 19, 2007 through the present for all requests related to the use of solitary confinement, administrative segregation, and/or disciplinary segregation.

13.    The singular of each word shall be construed to include its plural and vice-versa, and the root word and all derivations (i.e., "ing," "ed," etc.) shall be construed to include each other.

14.    The words "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys.

15.    The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

6

16.     The term "communication" means the transmittal of information by any means (in the form of facts, ideas, inquiries, or otherwise).

17.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

18.     The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" in Fed. R. Civ. P. 34(a)(1)(A), and includes video and audio recordings.

19.     The term "electronically stored information" is defined to be synonymous in meaning and equal in scope to the usage of "electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A) and shall be abbreviated from time to time as "ESI."

20.     Pursuant to Fed. R. Civ. P. 34, electronically stored information ("ESI") subject to disclosure includes information stored "in any medium." Such media include, but are not limited to:

   a.   Active, online storage locations, such as magnetic disks and hard drives;

   b.   Near-line storage locations, such as optical disks;

   c.   Offline storage locations and archives, such as removable optical disks and magnetic tape media;

   d.   Back-up tapes;

   e.   Floppy disks, diskettes, CDs, zip discs, jazz discs, zip drive, flash memory, DVDs, videotapes, audiotapes, Personal Digital Assistant ("PDA"), memory cards; and

   f.   Any other medium, including but not limited to third-party Electronic Communications Service and Remote Computing Service providers, such as wireless cell phone companies, online electronic mail providers (e.g., Gmail, Hotmail or Facebook); and any website hosting providers (e.g., Typad).

21.     "Identify:"

7

PLTF.'S FIRST SET OF DISCOVERY REQUESTS                    5:17-cv-02514-JGB

a.  When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person;

b.  When referring to communications, "to identify" means to provide, to the extent known, the (i) date or approximate date of the communication; (ii) party or parties to whom the communication was directed; (iii) party or parties who received the communication; (iv) means or format of the communication; and (v) content of the communication;

c.  When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s); and

d.  The word "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in F.R.C.P. 34(a). A draft of a non- identical copy is a separate document within the meaning of this term.

22.  If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

8

**INTERROGATORIES**

1.      Please identify each of your employees or other agents, current or former, who supervised any detainee in any job in the Work Program at the Adelanto Facility between December 19, 2007 and the present.

2.      Please state the quarterly and annual profit GEO received from revenue generated as a result of its operations at the Adelanto Detention Facility for each quarter since December 19, 2007, and provide all expenditure and revenue data upon which you relied in stating these amounts.

3.      Please identify each and every person, office, and agency with whom you have communicated about this litigation, the claims and defenses raised by any party to this litigation, or the laws, policies, rules, contracts, or procedures in any way related to this litigation.

4.      Please describe in detail each and every disciplinary or corrective action, whether written or not written and/or official or unofficial, taken against a detainee for failing or refusing to fully participate in work pursuant to the Work Program from December 19, 2007 to the present and any policies of the Defendant that govern these disciplinary or corrective actions. For each disciplinary or corrective action (an "Action"), please provide the following information:

  a.   Identify the detainee subject to the Action by name and last three digits of the Alien Registration Number;

  b.   Identify all employees or agents of GEO who assigned, carried out, or otherwise had knowledge of the Action;

  c.   Identify all communications with non-GEO personnel regarding the Action; and

  d.   Provide a description of the Action.

5.      Please describe in detail each and every disciplinary or corrective action taken against a detainee in the Adelanto Facility that resulted in a detainee being placed in solitary confinement and/or disciplinary segregation, at any time from December 19, 2007 to the present and any policies of the

9

PLTF.'S FIRST SET OF DISCOVERY REQUESTS                                5:17-cv-02514-JGB

Defendant that govern these disciplinary or corrective actions. For each disciplinary or corrective action (an "Action"), please provide the following information:

      a.   Identify the detainee subject to the Action by name and last three digits of the Alien Registration Number;

      b.   Identify all employees or agents of GEO who assigned, carried out, or otherwise had knowledge of the Action; and

      c.   Provide a description of the Action.

6.     Please describe in detail each and every policy, whether written or not written and/or official or unofficial, of GEO that resulted in disciplinary or corrective action taken against a detainee for refusing to work in the Adelanto Facility from December 19, 2007 to the present.

7.     Please identify each of your employees or other agents, current of former, responsible for reporting to, communicating with, or otherwise liaising with the ICE personnel, including, but not limited to, the ICE Contracting Officer's Technical Representative(s) and ICE Designated Service Official, regarding GEO's compliance with the federal contractual and legal requirements, at the Adelanto Facility between December 19, 2007 and the present.

## REQUESTS FOR PRODUCTION

1.     Please provide any and all documents summarizing, constituting or recording any agreements, contracts, or subcontracts governing performance of any function or provision of any service at the Adelanto Facility between December 19, 2007 and the present.

2.     Please provide all documents relating to any Quality Assurance Plan regarding the operation of the Adelanto Facility, including, but not limited to, all documents sent to or received from the ICE Contracting Officer or Contracting Officer's Technical Representative.

PLTF.'S FIRST SET OF DISCOVERY REQUESTS        5:17-cv-02514-JGB

3.     Please provide every handbook, rulebook, code of conduct, orientation packet, orientation video, or similar communication from GEO to detainees at the Adelanto Facility from December 19, 2007 to present.

4.     Please provide any and all documents that refer or relate to staffing plans and/or schedules for work, tasks, and/or duties at the Adelanto Facility between December 19, 2007 and the present. This includes, but is not limited to, daily, weekly, or monthly staffing plans or employee rosters, and the units or buildings or areas and duties to which each employee or detainee was assigned.

5.     Please provide any and all documents relating to guidance, policies, orders, and/or trainings for Defendant's employees at the Adelanto Facility regarding the Work Program, forced labor, and/or trafficking between December 19, 2007 and the present.

6.     Please provide all financial records reflecting the monthly and annual operating costs of the Adelanto Facility from December 19, 2007 to present. This includes, but is not limited to, the cost of providing food, shelter, clothing, bedding, utilities, recreation, entertainment, medical health services, optical health services, dental services, and mental health services to detainees during that period.

7.     Please provide any and all documents summarizing, constituting or recording the amount of compensation received by GEO from the City of Adelanto and/or ICE related to the operation of the Adelanto Facility.

8.     Please provide any and all documents reflecting the type, inventory, volume, and price of goods sold at the Adelanto Facility commissary from December 19, 2007 to present.

9.     Please provide any and all documents summarizing, constituting or recording policies, guidelines, or authority pursuant to which you conducted the  Work Program at the Adelanto Facility between December 19, 2007  and the present.

11

10.    Please provide all "Detainee Payroll" documents, including, but not limited to, invoices to ICE and commissary payment records, bearing any date between December 19, 2007 and the present that pertain to or record work in the Work Program at the Adelanto Facility.

11.    Please provide any and all documents that refer or relate to any guidelines, rules, regulations, or procedures for conducting disciplinary or corrective action during the relevant period related to the Work Program. This includes but is not limited to any documents related to training by either ICE or Defendant on guidelines, rules, regulations, or procedures for conducting disciplinary or corrective action during the relevant period.

12.    Please provide any and all documents summarizing, constituting, recording or referencing any disciplinary or corrective action taken between December 19, 2007 and the present which arise from, reference or concern the Work Program or any job assigned pursuant to that program.

13.    Please provide the daily rosters for each segregation unit and any and all documents summarizing, constituting, recording, or referencing the Adelanto Facility's weekly interdisciplinary committee segregation review from December 19, 2007 to present.

14.    Please provide any and all documents relating to, constituting, or recording the findings of any inspections of the Adelanto Facility by ICE and/or the City of Adelanto between December 19, 2007 and the present.

15.    Please provide any and all documents relating to, constituting, or recording any communications between personnel at the Adelanto Facility and emergency personnel, including but not limited to 911, ambulance services, or police departments, between December 19, 2007 and the present.

16.    Please provide any and all documents relating to, constituting or recording grievances filed by detainees at the Adelanto Facility between December 19, 2007 and the present.

12

PLTF.'S FIRST SET OF DISCOVERY REQUESTS                    5:17-cv-02514-JGB

17. Please provide any and all documents relating to, constituting, or recording incidents including, but not limited to, incident reports or accident reports relating to incidents of physical assault and/or sexual assault at the Adelanto Facility between December 19, 2007 and present.

18. Please provide any and all documents relating to, constituting, or recording communications between you and any person representing the ICE, dated between December 19, 2007 and the present and which reference or mention the Work Program.

19. Please provide any and all documents relating to, constituting, or recording Performance Evaluation Meetings, including all draft invoices, signed minutes, and GEO responses to any areas of disagreement between ICE and GEO, that occurred or were scheduled to occur between you and ICE from December 19, 2007 and the present.

20. Please provide any and all documents relating to, constituting, or recording quarantines, outbreaks, medical segregation, and medical observation of detainees.

21. Please provide all requests for reimbursement from GEO to ICE, and any responses thereto, for monies related to the Work Program created on or after December 19, 2007.

22. Please provide any and all documents that refer or relate to Plaintiff's detention at the Adelanto Facility. This includes, but is not limited to: (i) all documents that refer or relate to hours spent by Plaintiff performing work in the Work Program, tasks and/or he duties performed, and compensation he received; (ii) all documents that refer or relate to any disciplinary or corrective action taken against Plaintiff between December 19, 2007 and the present; (iii) all documents you provided to, received from, or that were signed by Plaintiff; and (iv) all documents not already produced that you identified in response to Plaintiff's First Set of Discovery Requests to Defendant.

13

PLTF.'S FIRST SET OF DISCOVERY REQUESTS                    5:17-cv-02514-JGB

**REQUESTS FOR ADMISSION**

1. Admit that between December 19, 2007 and present, at least one detainee in the Adelanto Facility faced disciplinary or other corrective action for refusing to participate in or continue working in the Work Program

2. Admit that immigration detainees in other detention facilities owned and/or operated by GEO are paid more than $1 per day for work performed.

3. Admit that GEO informed at least some detainees at the Adelanto Detention Facility that the $1 a day wage for the Work Program was set by ICE or some other branch of the Federal government.

4. Admit that the City of Adelanto has no personnel based on-site at the Adelanto Facility.

5. Admit that the City of Adelanto provides no supervision of GEO personnel at the Adelanto Facility.

6. Admit that GEO has requested that ICE become engaged, either as a party or as amicus, in this lawsuit.

7. Admit that GEO responded to one or more contract solicitations from ICE.

8. Admit that GEO never requested or proposed to ICE that detained immigrants housed in the Adelanto Facility be paid more than $1 per day for work performed.

9. Admit that GEO creates and implements facility staffing plans for the Adelanto Facility.

10. Admit that the total number of participants in the Work Program at the Adelanto Facility since December 19, 2007 exceeds 1,000.

11. Admit that on or after December 19, 2007, at least one detainee has been placed in segregation based on disciplinary allegations arising from participation in, or actual or threatened refusal to participate in, the Work Program.

14

PLTF.'S FIRST SET OF DISCOVERY REQUESTS                    5:17-cv-02514-JGB

## REQUEST FOR INSPECTION

Pursuant to FRCP 34(a)(2), Plaintiff requests that his attorneys be allowed to enter onto and inspect GEO's Adelanto Detention Center (the "Property") on **August 28, 2018 at 9:00 a.m.** for the purposes of inspecting, measuring, surveying, photographing, testing, or sampling said Property. Plaintiff specifically requests to inspect the following portions of the Property:

1. All facilities used for disciplinary or corrective actions against detainees, including any facilities used for solitary confinement; and

2. Any area that was the subject of detainee work as a result of the Work Program.

Dated:  July 27, 2018

*/s/ Korey A. Nelson*

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
Matthew Freda (admitted *pro hac vice*)
matt@immigrantcivilrights.com
TN Bar # 36010
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445

15

**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Vanessa Shakib (CA Bar # 287339)
vshakib@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

*Attorneys for Plaintiff*

16

# CERTIFICATE OF SERVICE

I, Korey A. Nelson, declare under penalty of perjury that I caused a true and correct copy of this document to be served upon counsel listed below by email, this 27th day of July, 2018. I additionally caused a true and correct copy of this document to be served by FedEx to Lesley Holmes, at the address listed below, this 27th day of July, 2018.

LESLEY HOLMES
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone:(213) 892-9200 / Fax: (213) 892-9494
lesley.swanson.holmes@nortonrosefulbright.com

MARK EMERY
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW Suite 100
Washington, DC 20001-4501
Telephone: (202) 662-0200 / Fax: (202) 662-4643
mark.emery@nortonrosefulbright.com

CHARLES A. DEACON
NORTON ROSE FULBRIGHT US LLP
300 Convent Street Suite 2100
San Antonio, TX 78205-3792
Telephone: (210) 270-7133 / Fax: (210) 270-7205
charlie.deacon@nortonrosefulbright.com

Dated:  July 27, 2018

*/s/Korey Nelson*
Korey A. Nelson
knelson@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

17

PLTF.'S FIRST SET OF DISCOVERY REQUESTS                     5:17-cv-02514-JGB

# Exhibit B

**GT GreenbergTraurig**

Dawn Ellison
Tel 202.331.3159
Fax 202.261.4792
ellisond@gtlaw.com

February 6, 2019

Lydia A. Wright
Burns Charest LLP
365 Canal Street Suite 1170
New Orleans, LA 70130
lwright@burnscharest.com

Re:   *Novoa v. GEO Group*, 5:17-cv-02514-JGB-SHKx, *Local rule 37-1 Request*

Dear Lydia:

    In furtherance of our discussion on Monday, February 4, 2019, this letter details
the processes that The GEO Group, Inc. ("GEO") has employed to comply with its
discovery obligations in this case. As you know, Greenberg Traurig, LLP recently
assumed the role of lead counsel in this case and we have become familiar with the steps
taken by GEO to respond to the plaintiffs' discovery requests. In the interest of
transparency and in the hopes of resolving ongoing discovery disputes and moving
forward with a focus on the merits of this case, GEO is providing this letter to you to
clarify where matters stand with respect to GEO's discovery efforts.[1]

A.    Data Sources Collected

    As a general matter, GEO has collected no less than 2140.88 gigabytes of data
from multiple custodial and non-custodial sources. GEO has diligently continued to
collect and process data in good faith concurrently with the parties' efforts to negotiate a
Stipulated Protective Order and Stipulated Order Regarding Production of Electronically
Stored Information ("ESI").

    1.    Custodial Data Sources

    GEO has collected targeted data for at least fifty-four (54) individual custodial
sources based upon information provided during custodian interviews. Data for these
custodians was collected from one or more of the following sources: desktop hard drives,
shared network drives, Microsoft OneDrive, email accounts, and public websites.
Attached as Exhibit A is a list of pertinent custodians for whom data has been collected.

---

[1] The information provided in this letter is not intended as a waiver of any applicable privilege, doctrine, or
immunity held by GEO, including, but not limited to, the attorney client privilege or the attorney work product
doctrine.

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON
LOS ANGELES
MEXICO CITY
MIAMI
MILAN
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME
SACRAMENTO
SAN FRANCISCO
SEOUL
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV
TOKYO
WARSAW
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

February 6, 2019
Page 2

    2.      Non-Custodial Data Sources

GEO has also collected data from various non-custodial sources. For example, data has been collected from GEO Net, a repository utilized by GEO to store certain ESI such as invoices. In addition, various hard copy documents have been collected, including U.S. Immigration and Customs Enforcement ("ICE") detention case files, offender financial records, sanitation inspection reports/logs, commissary records and reports, and food service records. Further, GEO's Enterprise Vault repository was searched for the custodians discussed above and pertinent data (e.g., archived emails) has been identified and collected.[2]

    3.      Detainee Files

As noted above, GEO has collected detainee files and in total has identified over six hundred sixty-five (665) boxes containing over thirty-eight thousand four hundred eighteen (38,418) detainee files, which are comprised of over six hundred twenty-eight thousand nine hundred fifty (628,950) documents and over one million eight hundred eighty thousand eight hundred twenty-four (1,880,824) pages.

GEO understands that, although the entire file for each respective detainee is not responsive to the plaintiffs' discovery requests, such files do include a variety of unique, responsive information. *See, e.g.,* Plaintiff's First Set of Discovery Requests to Defendant The GEO Group, Inc., dated July 27, 2018, at 12 (RFP 12 seeking "any and all documents summarizing, constituting, recording or referencing any disciplinary or corrective action . . . which arise from, reference or concern the Work Program or any job assigned pursuant to that program"); *id.* at 12-13 (RFP 16 seeking "any and all documents relating to, constituting or recording grievances filed by detainees at the Adelanto Facility . . . .); *id.* at 13 (RFP 22 seeking "any and all documents that refer or relate to Plaintiff's detention at the Adelanto Facility" including, "but not limited to: (i) all documents that refer or relate to hours spent by Plaintiff performing work in the Work Program, tasks and/or . . . duties performed, and compensation he received; (ii) all documents that refer or relate to any disciplinary or corrective action taken against Plaintiff . . . .").

In addition, as discussed further below, certain information (e.g., T Visa/U Visa information) is scattered throughout the detainee files that will likely require redaction and/or review by ICE prior to production to plaintiffs.

    B.      Data Requiring ICE Review Prior to Disclosure to Plaintiffs

During our call, you asked us to provide further detail regarding data that requires ICE review prior to production. A significant amount of the information that plaintiffs seek through discovery in this litigation is controlled by ICE and, accordingly, is subject to disclosure pursuant to the U.S. Department of Homeland Security's ("DHS") *"Touhy"* regulations, 6 C.F.R. §§ 5.41

---

[2] Please note that the data collected from GEO's Enterprise Vault archive does not reflect individual custodian values.

February 6, 2019
Page 3

*et seq.*[3] GEO has therefore worked with ICE and the U.S. Department of Justice ("DOJ") to ensure that it can meet its discovery obligations in related dockets while complying with DHS's *Touhy* regulations. GEO's understanding of the categories of documents that may be subject to ICE review in this case is based on ICE's position in related litigation where ICE has reviewed and provided input regarding the protective order in place in a respective case.[4]

Additionally, ICE and DOJ have communicated the Government's position that ICE needs to review and redact data that may contain information that is subject to certain statutory and regulatory disclosure restrictions ("Covered Information") prior to its production. The Government has based this position on its conclusion that the following federal statutes and regulations "prohibit disclosure of records that may be the subject of discovery" and contain Covered Information:

- 8 U.S.C. § 1367(a)(2), which prohibits disclosure of any information which relates to an alien who is the beneficiary of an application for relief, whether pending or approved, under the Violence Against Women Act;

- 8 U.S.C. § 1367(a)(2), which prohibits disclosure of any information which relates to an alien who is the beneficiary of an application for a T Visa, concerning trafficking victims;

- 8 U.S.C. § 1367(a)(2), which prohibits disclosure of any information which relates to an alien who is the beneficiary of an application for a U Visa, concerning victims of crimes;

- 8 U.S.C. § 1255a(c)(5), which prohibits disclosure of information relating to Legalization/Special Agricultural Worker claims; and

- 8 C.F.R. § 208.6, which prohibits disclosure of information contained in or pertaining to an asylum or refugee application, information pertaining to a credible fear determination pursuant to 8 C.F.R. § 208.30, and information pertaining to a reasonable fear determination pursuant to 8 C.F.R. § 208.31.

The Government has also advised that the "consequences for unauthorized disclosure of these categories of records include criminal and civil penalties." Attached as Exhibit B is a letter from the DOJ, dated August 21, 2018, clarifying its position on this issue.

---

[3] Plaintiffs are aware of this position and ICE's application of DHS's *Touhy* regulations to the release of information in this case. *See, e.g.,* Letter from Anne Rose, DHS/ICE, to Lydia Wright, dated October 15, 2018.

[4] To the extent that ICE has concerns regarding the protective order entered in this case, it could impact the categories of documents that ICE insists on reviewing. GEO is hopeful, however, that if ICE is comfortable with the protective order entered in this case it may relax or modify the categories of documents for which it requires review.

February 6, 2019
Page 4

Therefore, based upon the guidance previously provided by ICE and DOJ, GEO has identified the following categories of data that likely will require ICE review before they may be disclosed to plaintiffs in this case:

- Documents marked "For Official Use Only," "FOUO," "Law Enforcement Use Only," or with similar text;

- ICE audits and inspections;

- Communications with ICE;

- Invoices submitted to ICE;

- Non-public ICE policies or procedures;

- Information related to applications submitted pursuant to the Violence Against Women Act;

- T Visa/U Visa information;

- Information related to Seasonal Agricultural Worker claims;

- Information related to asylum/refugee claims;

- Personally identifiable information of detainees (including names and A-numbers); and

- Personally identifiable information of ICE officials.

C.   The Way Forward

With respect to custodial and non-custodial sources of processed data, GEO has begun to implement a three (3) step process. First, keyword search terms will be applied to identify data potentially responsive to plaintiffs' discovery requests ("Potentially Responsive Data Set"). Second, a technology assisted review ("TAR") or similar process will be utilized to review "control" and "seed" sets of data from the Potentially Responsive Data Set to identify data that is responsive to plaintiffs' discovery requests ("Responsive Data Set"). *See, e.g., Rio Tinto Plc, v. Vale S.A., et al.*, 306 F.R.D. 125 (S.D.N.Y. 2015). Third, a team of human reviewers will review the Responsive Data Set to ensure that such data is appropriately coded for, among other things, responsiveness, potential ICE review, confidentiality, redaction, and privilege.

As for detainee files, as discussed during our call, GEO believes that the burden of complete processing and production of these files is unduly burdensome and not proportional to the needs of this case. However, GEO would like to meet and confer with plaintiffs to develop a process for production that balances plaintiffs' need for the documents with the substantial burden that GEO faces to process them.

February 6, 2019
Page 5

GEO anticipates that it will require eight (8) weeks to substantially complete its production of data in response to plaintiffs' discovery requests.[5]

In light of the volume of data at issue, the review of data that must be conducted by GEO and ICE, and the current posture of this case, GEO proposes a six (6) month extension of the remaining dates set forth in the scheduling order. *See* Dkt. No. 69 (Minutes of Scheduling Conference), at 1. More specifically, the Court's calendar permitting, GEO proposes the following revised schedule:

| Hearing/Event | Date |
|---|---|
| Jury Trial<br>(Thursday at 9:00 a.m.)    Length: 15 days | February 27, 2020 |
| Final Pretrial Conference [L.R. 16] and Hearing on Motions *in Limine*<br>(Wednesday – (2) weeks before trial) | February 12, 2020 |
| Last Date to *Hear* Non-discovery Motions<br>(Friday at 9:00 a.m.) | January 10, 2020 |
| Expert Disclosure (Initial) | September 17, 2019 |
| Expert Disclosure (Rebuttal) | October 1, 2019 |
| All Discovery Cut-Off (including hearing all discovery motions) | October 15, 2019 |
| Last Date to Conduct Settlement Conference | November 13, 2019 |

We request a telephonic conference pursuant to Local Rule 37-1 to discuss and attempt to resolve the extension of the schedule and other issues identified above. Please let us know your availability within the next ten days for the conference.

We look forward to your response, and hope the parties can proceed in transparency and good faith.

Very truly yours,

Dawn A. Ellison

---

[5] This estimate pertains to GEO's processes only. Although GEO will endeavor to complete its production as quickly as possible, please note that GEO cannot control the timing of ICE's review and release of documents, which may impact the date when documents can be produced to plaintiffs.

## EXHIBIT A

1. Aida Aldape
2. Nathan Allen
3. Enanato Arugu
4. Berta Barocia-Sullivan
5. Barry Belt
6. Mailah Bezada
7. James Black
8. Tehani Brown
9. Sharon Buckowske
10. Tom Cherry
11. Brandi Combest
12. Joanne Crowder
13. Zohbrab Darmandzhyan
14. Jamie Davis
15. Darlene Donaldson
16. Victor Duardo
17. Emmanuel Flores
18. Kyle Fouts
19. Wendy Gonzalez
20. Angelica Hernandez
21. Gregory Hillers
22. Reyna Inchausti
23. James Janecka
24. Joshua Johnson

25. Robert Johnson

26. Michelle Keeney

27. Paul Laird

28. Joanne Langill

29. Maricela Lopez

30. Jose Martinez

31. Ronald Martinez

32. Tabitha Medindl

33. Maria Mendez

34. Octavio Mendoza

35. Lucia Meza

36. Cheryl Nelson

37. Pam Nemake

38. Ray New

39. Shawna Nowicki

40. Lena Prill

41. Susanne Romero

42. Margarita Russi

43. Patricia Seiber Love

44. Fereti Semaia

45. Dionne Shockey

46. Jocelyn Siguenza

47. Frank Strada

48. Peggy Turner

49. Vince Vantell

50. Jolene Velasquez

51. Erica Walker

52. Candy Williams

53. Mary Wise McCormick

54. Linda Woelke

EXHIBIT B



**U.S. Department of Justice**

Robert C. Troyer
United States Attorney
District of Colorado

Timothy B. Jafek
303-454-0104
timothy.jafek@usdoj.gov

*1225 17th Street, Suite 700*
*Denver, CO  80202*

August 21, 2018

**By email and First-class mail**

Alexander Neville Hood
Towards Justice-Denver
1410 High Street Suite 300
Denver, CO  80218
Email:Alex@towardsjustice.Org

Charles A. Deacon
Norton Rose Fulbright US LLP-San Antonio
300 Convent Street Suite 2200
San Antonio, TX  78205
Email:Charlie.Deacon@nortonrosefulbright.Com

*Additional addressees starting on page 4*

RE:    *Menocal*, et al. *v. The GEO Group*, 14-cv-02887-JLK

Dear Counsel:

I write to clarify the government's position regarding the need for, and scope of, U.S. Immigration and Customs Enforcement (ICE) review of documents before they are released in discovery in the subject case.  So that the parties are informed in advance of further discovery proceedings, including the August 22, 2018 submission of an Amended Proposed Stipulated Scheduling Order, *see* ECF No. 135, this letter provides an overview of ICE's potential need to review documents that may be the subject of discovery in this matter.

As a general matter, ICE only needs to review records that are owned by ICE, or that contain ICE information.  Records that are owned or created solely by contractors, such as The GEO Group (GEO), or records that solely contain contractor information, do not need to be

1

reviewed by ICE, except to the extent such records contain ICE information. ICE is willing to work with the parties to determine which categories of responsive records will need to be reviewed by ICE.

As you may be aware, the Privacy Act, 5 U.S.C. § 552a, generally prohibits the disclosure of an agency record about an individual absent the written consent of the individual, unless a statutory exception applies. This disclosure restriction applies to both federal agencies and their contractors. Although 5 U.S.C. § 552a(b)(11) permits disclosure pursuant to a qualifying court order, it appears that the protective order currently in effect in this case, *see* ECF No. 45, does not authorize production pursuant to the Privacy Act. Before any disclosure subject to the Privacy Act may be made, the entry of an appropriate protective order is required. To the extent that an appropriate Protective Order is entered in this matter, it may also aid in limiting the voluminous redactions that would need to take place to protect against disclosure of personally identifiable information covered by the Privacy Act or the DHS Privacy Policy. Disclosures prohibited by the Privacy Act include any data that could potentially identify a specific individual, or any information that can be used to distinguish one person from another and can be used for deanonymizing anonymous data, including but not limited to detainee names and alien numbers.

Additionally, it is my understanding that certain documents that Plaintiffs, Defendant, or both, have requested or intend to produce in this matter, or may request or may intend to produce in this matter, may contain information that is subject to the statutory and regulatory disclosure restrictions described below ("Covered Information"). As a result, prior to any production of Covered Information, review by ICE will be necessary to ensure compliance with such restrictions and with ICE policy.

Absent an applicable exception, the following federal statutes and regulations prohibit disclosure of records that may be the subject of discovery in this case:

- 8 U.S.C. § 1367(a)(2) prohibits agency disclosure of any information which relates to an alien who is the beneficiary of an application for relief, whether pending or approved, under the Violence Against Women Act;
- 8 U.S.C. § 1367(a)(2) prohibits agency disclosure of any information which relates to an alien who is the beneficiary of an application for a T Visa, concerning trafficking victims;
- 8 U.S.C. § 1367(a)(2) prohibits agency disclosure of any information which relates to an alien who is the beneficiary of an application for a U Visa, concerning victims of crimes;
- 8 U.S.C. § 1255a(c)(5) prohibits disclosure of information relating to Legalization/Special Agricultural Worker claims; and
- 8 C.F.R. § 208.6 prohibits disclosure of information contained in or pertaining to an asylum application (which ICE has also applied to refugee applications), information

2

pertaining to a credible fear determination pursuant to 8 C.F.R. § 208.30, and records pertaining to a reasonable fear determination pursuant to 8 C.F.R. § 208.31.

The consequences for unauthorized disclosure of these categories of records include criminal and civil penalties. In addition, these categories of information cannot be disclosed, even with a protective order in place. Thus, in order to ensure compliance with these statutory and regulatory requirements, ICE must conduct a review of any Covered Information before it is produced in discovery so that the appropriate redactions and withholdings can be applied.[1] The time needed for ICE to complete any such review will depend on the volume and nature of the Covered Information at issue. For example, to protect against inadvertent disclosure of information pertaining to a credible-fear determination, a page-by-page review of certain records may be required. ICE is committed, however, to working with the parties to allow discovery to proceed on a reasonable timetable, and the agency intends, subject to resource constraints, to allocate resources to any necessary document review.

In the event that either party anticipates producing documents that contain, or are likely to contain, Covered Information, please contact me at your earliest convenience so that ICE may make necessary arrangements for document review, as the redactions necessary to protect these categories of information will take a considerable amount of time.

Thank you in advance for your cooperation in this matter. Should you have any questions or concerns regarding the above, please do not hesitate to contact me.

Sincerely,

s/ Timothy B. Jafek
Timothy B. Jafek
Assistant U.S. Attorney

cc:    ICE counsel

---

[1] In addition to the disclosure prohibitions noted above, legal privileges or law-enforcement sensitivities may also prevent the disclosure of certain information.

3

**Additional addressees:**

*Plaintiffs' counsel:*

Andrew H. Turner
Kelman Buescher Firm
600 Grant Street Suite 825
Denver, CO  80203
Email:Aturner@laborlawdenver.Com

Hans Christopher Meyer
Meyer Law Office, P.C.
P.O. Box 40394
1029 Santa Fe Drive
Denver, CO  80204
Email:Hans@themeyerlawoffice.Com

P. David Lopez
Outten & Golden, LLP-DC
601 Massachusetts Avenue Nw 2nd Floor West Suite
Washington, DC  20001
Email:Pdl@outtengolden.Com

Ashley Kathryn Boothby
Kelman Buescher Firm
600 Grant Street Suite 450
Denver, CO  80203
Email:Aboothby@laborlawdenver.Com

David Hollis Seligman
Towards Justice-Denver
1410 High Street Suite 300
Denver, CO  80218
Email:David@towardsjustice.Org

Juno E. Turner
Outten & Golden, LLP-New York
685 Third Avenue 25th Floor
New York, NY  10017
Email:Jturner@outtengolden.Com

4

Ossai Miazad
Outten & Golden, LLP-New York
685 Third Avenue 25th Floor
New York, NY  10017
Email:Om@outtengolden.Com

Rachel Williams Dempsey
Outten & Golden, LLP-San Francisco
One California Street 12th Floor
San Francisco, CA  94111
Email:Rdempsey@outtengolden.Com

Robert Andrew Free
R. Andrew Free Law Office
414 Union Street Suite 900
Email:Andrew@immigrantcivilrights.Com

Brandt Powers Milstein
Milstein Law Office
1123 Spruce Street
Boulder, CO  80302
Email:Brandt@milsteinlawoffice.Com


*Defendant's counsel:*

Dana L. Eismeier
Burns Figa & Will, P.C.
6400 South Fiddlers Green Circle Plaza Tower One Suite 1000
Greenwood Village, CO  80111
Email:Deismeier@bfwlaw.Com

Mark Thomas Emery
Norton Rose Fulbright US LLP-DC
799 9th Street Suite 1000
Washington, DC  20001-4501
Email:Mark.Emery@nortonrosefulbright.Com

Michael York Ley
Burns Figa & Will, P.C.
6400 South Fiddlers Green Circle Plaza Tower One Suite 1000
Greenwood Village, CO  80111
Email:Mley@bfwlaw.Com

5

# EXHIBIT D

**burns
charest
llp**

Lydia Wright
lwright@burnscharest.com

March 29, 2019

**VIA EMAIL ONLY**
Stacey Wang
Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
stacey.wang@hklaw.com

Re:     *Raul Novoa v. The GEO Group, Inc.*, Case No. 5:17-cv-02514 (C.D. Cal.)

Dear Stacey:

We are writing to follow up on our Local Rule 37-1 conference of March 28, 2019 and to request your availability next week for a pre-motion telephone conference with Judge Kewalramani. Please let us know if anything below does not accord with your recollection.

## 1. Protective order

You informed us last week that GEO has submitted the parties' stipulated protective order to ICE for ICE's review and consent. During our March 28 call, you stated that ICE approval of the protective order is "imminent," but could not provide a date certain or general timeframe by which GEO would be prepared to enter the order. You also represented that GEO is currently withholding discoverable documents until entry of the protective order.

As we discussed on the call and in our March 21, 2019 letter, ICE is not a party to this litigation or to the protective order which the parties have spent over seven months negotiating. GEO is not insulated from its discovery obligations under the Federal Rules of Civil Procedure due to its contractual relationship with ICE. There is simply no basis in the law for GEO's position that ICE may dictate the pace of litigation to which it is not a party.  If forced to move to compel entry of the protective order, Plaintiffs reserve their right to seek entry of the Central District's model protective order, instead of the one we have negotiated with GEO, but to which GEO has refused to commit.

Accordingly, pursuant to Judge Kewalramani's standing order, **please provide three dates and timeframes next week which you are available for a pre-motion telephone conference with the court to resolve this discovery dispute.**

burns charest LLP | 365 canal street | suite 1170 | new orleans, louisiana 70130

Stacey Wang
March 29, 2019
Page 2

2. **ESI protocol**

GEO agreed to file the parties' stipulated ESI protocol within one week of the Court's ruling on the pending discovery matter regarding relevancy redactions and email attachments, ECF 118. We appreciate your cooperation on this issue.

3. **Document production**

We discussed Dawn Ellison's letter of February 6, 2019, attached as Exhibit B to our March 21, 2019 Rule 37 letter, wherein Ms. Ellison represents that "GEO anticipates that it will require eight (8) weeks to substantially complete its production of data in response to plaintiffs' discovery requests."

Based on GEO's representations, Plaintiffs expected GEO to fully comply with its discovery obligations under the Federal Rules of Civil Procedure by April 6, 2019. This includes producing all documents, electronically stored information, and tangible things GEO may use to support its claims or defenses, and all documents responsive to Plaintiffs' first set of requests for production.

However, despite GEO's prior representations, you stated that GEO does not intend to substantially complete its production by April 6, 2019 and will instead continue to withhold discoverable documents until entry of the protective order and ESI protocol.

Accordingly, and considering the substantial discovery delays already incurred this case, we will ask the court during the pre-motion telephone conference next week to enter a scheduling order setting the following deadlines:

| | |
|---|---|
| April 5, 2019 | Deadline for entry of stipulated protective order |
| Within one week of the Court's ruling on the pending discovery motion (ECF 118) | Deadline for entry of stipulated ESI protocol |
| Within one week of the Court's ruling on the pending discovery motion (ECF 118) | Deadline for GEO to complete its production of documents required under Federal Rule of Civil Procedure 26(a)(1) and in response to Plaintiffs' First Set of Requests for Production |

4. **Data allegedly requiring ICE review prior to production**

We discussed GEO's position that ICE must review the categories of data listed on page 4 of Ms. Ellison's February 6, 2019 letter before GEO will disclose that data to Plaintiffs. As we explained, Plaintiffs are not seeking information related to applications submitted pursuant to the Violence Against Women Act; T Visa/U Visa information; information related to Seasonal Agricultural Worker claims; or information related to asylum/refugee claims.

We requested GEO's position on whether *Touhy* requires ICE review of the following categories of documents listed in Ms. Ellison's letter: documents marked "For Official Use Only,"

Stacey Wang
March 29, 2019
Page 3

"FOUO," "Law Enforcement Use Only," or with similar text; ICE audits and inspections; communications with ICE; invoices submitted to ICE; non-public ICE policies or procedures; personally identifiable information of detainees (including names and A-numbers); and personally identifiable information of ICE officials.

Please clarify your position on this issue prior to our pre-motion telephone conference with the court next week. If we remain at an impasse regarding *Touhy* applicability, we will raise the issue at the conference.

5. **Detainee files**

We discussed GEO's representations in Dawn Ellison's February 6, 2019 letter that GEO has collected over 665 boxes of detainee files and "GEO believes that the burden of complete processing and production of [detainee files] is unduly burdensome and not proportional to the needs of this case."

As we have explained to GEO's counsel several times before, Plaintiffs are not seeking detainee files (with the exception of the detainee files of Raul Novoa, Jaime Campos Fuentes, and any detainee or former detainee GEO intends to bring as witness in this case). As a result, Plaintiffs are not requesting that GEO undertake to review detainee files.

Instead, Plaintiffs are seeking information recorded in various logs, files or records separate and apart from detainee files. We understand that all the information requested in Plaintiffs' First Set of Requests for Production except RFP 22 (the detainee files of Mr. Novoa and Mr. Campos Fuentes) is available separate and apart from detainee files.

You agreed to review GEO's position on this matter.  Please clarify your position prior to the pre-motion telephone conference next week so we can raise the issue with the court if necessary.

We look forward to hearing from you soon regarding these issues and hope to reach a resolution without court intervention.  If you have any questions, please contact me at (504) 799-2845 or via email at lwright@burnscharest.com.

Best,

**BURNS CHAREST LLP**

*/s/ Lydia Wright*
Lydia Wright

burns charest LLP | 365 canal street | suite 1170 | new orleans, louisiana 70130

Stacey Wang
March 29, 2019
Page 4

cc:     Carolyn Short
        Shannon Armstrong

# EXHIBIT E



*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
425 I Street, NW, Room 6100
Washington, DC  20536

October 3, 2018

Lydia Wright, Esq.
Burns Charest LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130

Re:   Novoa v. The Geo Group, Inc., 17-cv-02514 deposition of David J. Venturella

Dear Ms. Wright:

A copy of your Notice of Rule 30(b)(1) deposition of David J. Venturella, dated September 14, 2018, was forwarded to my office by Scott A. Schipma, who represents The GEO Group, Inc. (GEO)in the above matter.  U.S. Immigration and Customs Enforcement (ICE) received the Notice on September 29, 2018.  The purpose of this letter is to inform you of the procedural prerequisites for obtaining official information, whether oral or written, from the Department of Homeland Security (DHS) of which ICE is a component.

## Touhy

The DHS has enacted regulations that govern the release of testimony by DHS employees or documents in a legal proceeding where the United States is not a party.  These regulations are commonly referred to as *Touhy* regulations and can be found at 6 C.F.R. §§ 5.41-5.49.  *See generally United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  The *Touhy* regulations are an absolute condition precedent to obtaining testimony or other information from a DHS employee, and the regulations must be complied with before the DHS or ICE may respond to any such request.  *See U.S. v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007); *Ho v. U.S.,* 374 F.Supp.2d 82 (D.D.C. 2005); *Boeh v. Gates, et. al.*, 25 F.3d 761 (9th Cir. 1994).

Section 5.43 of the DHS *Touhy* regulations, requires that service of subpoenas, court orders, and other demands or requests for official information be served on the DHS Office of the General Counsel (OGC).[1]  Official information means all information of any kind, however stored, that is in

---

[1] Although you did not comply with this requirement, given the fact that Mr. Venturella is currently employed by GEO, and GEO provided the Notice to ICE, you do not need to reserve the request on ICE.  Please note, however that any responses to this letter, and/or any future requests for ICE information must be properly served on ICE.  For ease of service and to ensure that things can move along in a timely fashion, please feel free to provide these requests directly to the Office of Principal Legal Advisor (OPLA) by mailing them to OPLA, 500 12th St. SW Mail Stop 5900, Washington DC 20536 Attn: Anne Rose, or emailing them to anne.rose@ice.dhs.gov.

Lydia Wright, Esq.
Page 2

the custody and control of the Department, relates to information in the custody and control of the Department, or was acquired by Department employees, or former employees, as part of their official duties or because of their official status within the Department while such individuals were employed by or served on behalf of the Department. *See* 6. C.F.R. § 5.41(e).  DHS OGC has delegated this responsibility to its components.  In the event that the request for ICE information is delivered directly to an employee, the employee is to immediately forward a copy of that document to the DHS OGC or its designee, ICE Office of the Principal Legal Advisor

Further, DHS regulations bar all DHS employees, including former employees, from *inter alia* providing responses to questions by attorneys in situations involving litigation regarding any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired while the subject of the request for information is or was employed by DHS, unless authorized to do so by the DHS Office of General Counsel or its designees.  *See* 6 C.F.R. § 5.44. These provisions are applicable to contractors as well as direct employees in accordance with 6 C.F.R. § 5.41(c).  Section 5.45 of the regulations also requires that the party seeking information must "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought."

Upon receipt of a sufficiently detailed request, DHS or ICE will consider the following factors: (1) whether compliance would be unduly burdensome or otherwise inappropriate; (2) whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information; (3) the public interest; (4) the need to conserve the time of DHS employees for the conduct of official business; (5) the need to avoid spending the time and money of the United States for private purposes; (6) the need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated; (7) whether compliance would have an adverse effect on performance by the DHS of its mission and duties; and (8) the need to avoid involving the DHS in controversial issues not related to its mission. *See* 6 C.F.R. § 5.48(a).

In addition, ICE will not comply with a request when such compliance would violate a statute, regulation, Executive Order, or agency policy.  Likewise, ICE will not comply with a request when such compliance would reveal agency deliberations, or potentially impede or prejudice an on-going law enforcement investigation.  *See* 6 C.F.R. § 5.48(b).

ICE has reviewed your Notice and has determined that your request does not meet the requirements of 6 C.F.R. § 5.45.  The Notice does not adequately specify what information is being requested nor does it describe how the information sought is relevant to the present legal proceeding.  Please note that although Mr. Venturella is currently employed by GEO, to the extent that the information you intend to elicit from Mr. Venturella includes ICE information, ICE policies and procedures, and/or detainee specific information, the mandates of *Touhy* must be followed.  Additionally, Mr. Venturella was also formerly employed by ICE.  To the extent that the information you intend to elicit pertains to information or knowledge gained while Mr. Venturella was employed by ICE, the same *Touhy* requirements must be satisfied. If you wish to comply with the DHS's *Touhy* regulations, please offer a more detailed explanation of the expected information, including what facts you intend to elicit and their relevance to the legal proceeding. Upon the receipt of a request that complies with the requirements of 6 C.F.R. § 5.48, ICE will then consider the eight factors outlined in 6 C.F.R. § 5.48(a) to determine whether ICE will comply with the request.  ICE intends to work with you to authorize, to the extent possible, relevant and allowable testimony, but needs additional information to do so.

Thank you for your anticipated cooperation in complying with applicable Federal law.  If you require additional information on this matter, I can be reached by email at anne.rose@ice.dhs.gov.

Lydia Wright, Esq.
Page 3

Sincerely,

/s/ Anne M. Rose_____
Anne M. Rose
Associate Legal Advisor
Government Information Law Division
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement

Cc: Scott Schipma

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:14-cv-02887-JLK

ALEJANDRO MENOCAL, *et al.*,

      Plaintiffs,

v.

THE GEO GROUP, INC.,

      Defendant.

---

**AMENDED STIPULATED PROTECTIVE ORDER
CONCERNING CONFIDENTIAL INFORMATION
(CM/ECF No. 155)**

---

IT IS HEREBY STIPULATED by and between the parties, through their respective counsel, that:

    i.      The parties have requested for use in this action certain documents that may contain information that the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), a nonparty agency of the federal Executive Branch, states that it must protect pursuant to law, regulation, and/or policy.

    ii.     Documents containing information covered by the Privacy Act of 1974, 5 U.S.C. § 552a, or that contain information that is law enforcement sensitive are protected from disclosure. Such information has been identified by the United States (hereinafter "Government") as sensitive and/or confidential. Non-public law enforcement information regarding Government policies, methods, techniques, procedures, guidelines and intelligence is to be treated as "law enforcement sensitive." The parties acknowledge and agree, for purposes of this litigation only, and in order to

1

Case 1:14-cv-02887-JLK-MEH   Document 157   Filed 11/26/18   USDC Colorado   Page 2 of 15
Case 5:17-cv-02514-JGB-SHK   Document 145-2   Filed 04/12/19   Page 60 of 76   Page
ID #:1385

ensure that the parties have access to documents and other information necessary to the prosecution

and defense of their claims, a desire to protect against any risk of circumvention of law that might

result from disclosure of sensitive and confidential law enforcement information as described in this

Order.

iii.    The parties desire, where appropriate, to maintain the confidentiality of certain of

the documents produced in this case, including to protect the privacy of individuals;

iv.    Therefore, in order to protect against the disclosure of sensitive and confidential

information, which includes, but is not limited to, Privacy Act-protected and law enforcement

sensitive, investigatory, and official Government information, while at the same time, observing

the requirements of Rule 26 of the Federal Rules of Civil Procedure, and to permit the parties to

discover and, if otherwise admissible, make reasonable use at trial and other matters in this

litigation information relevant to the subject matter of this case, the parties, by and through their

respective counsel, hereby stipulate to the entry of this Protective Order and agree as follows, and

respectfully request that the Court so order:

**ORDER**

1.    This Protective Order applies to all documents, materials, and information (and

information copied, extracted, excerpted from, as well as summaries or compilations of the

foregoing), including without limitation, documents produced, answers to interrogatories,

responses to requests for admission, deposition testimony, presentations or conversations by parties

or their counsel, and other information disclosed pursuant to the disclosure or discovery duties

created by the Federal Rules of Civil Procedure.

2.    As used in this Protective Order, the term "document" has the meaning set forth in

Fed.R.Civ.P. 34(a). A draft or non-identical copy is a separate document within the meaning of

this term.

3.      Documents designated "Confidential" means the information shall be used solely for the purposes of this litigation, and shall not be used for any other purpose or suit, nor published to the general public in any form (other than described herein), or used for any business or commercial purpose.

4.      Any party may, at any time, designate a served, disclosed, or filed document "Confidential" if, after review by an attorney, the attorney certifies that the designation as "Confidential" is based on a good faith belief that the document contains nonpublic personal, personally identifiable information ("PII"), personnel, employment, financial and/or tax records, medical, "sensitive information" as defined at 48 C.F.R. § 3052.204-71, "law enforcement sensitive" information (as defined *supra* at ii), investigatory, official Government information or other information implicating privacy or proprietary interests of the Plaintiffs, the Defendant, ICE or another nonparty (including any documents and information that are subject to the Privacy Act of 1974, 5 U.S.C. § 552a). This Protective Order is an order of the Court pursuant to 5 U.S.C. § 552a(b)(11) that allows for the disclosure of documents or information whose disclosure would otherwise be prohibited by the Privacy Act of 1974. Such information shall be marked confidential. The documents so designated will be deemed "Confidential Material" subject to this Protective Order. Any Confidential designation that is inadvertently omitted following the entry of this Protective Order will not constitute a waiver of confidentiality, and may be corrected by written notification to the parties.

5.      Any party may, at any time, designate a served, disclosed, or filed document "Highly Confidential – Attorneys' Eyes Only" if, after review by an attorney, the attorney certifies that the designation as "Highly Confidential – Attorneys' Eyes Only" is based on a good faith belief that the document contains:

3

(a)     Highly sensitive information, the disclosure of which could result in compromise of the safety or security of GEO facilities and/or harm or retaliation to individuals; or

(b)     Other highly sensitive information requiring such protection.

The documents so designated will be deemed "Highly Confidential Material" subject to this Protective Order. Any Highly Confidential designation that is inadvertently omitted following the entry of this Protective Order will not constitute a waiver of confidentiality, and may be corrected by written notification to the parties.

6.     No copies of "Confidential" or "Highly Confidential" Material shall be made except to the extent necessary for the litigation of this action and the parties preparation of this action for trial (including any appeals).

7.     "Confidential" information shall be handled as follows:

(a)     Information designated as "Confidential" shall not be disclosed to the public in any form by the receiving party or its respective counsel, nor disclosed to any other person or entity without Order of the Court.

(b)     Information designated as "Confidential" may be disclosed by the receiving party or its respective counsel only to the following persons: (1) the parties to the action whose counsel have executed this Protective Order on their behalf, including any officers, managers, directors, or in-house counsel of such parties, or any designated representatives who are authorized to act on the parties' behalf, including insurers, or who may be reasonably necessary to aid counsel in this action; (2) counsel of record for the parties and such counsel's regular and temporary employees, including, but not limited to, legal assistants, paralegals and clerical or other support staff if the disclosure is reasonably and in good faith

4

calculated to aid in the preparation or prosecution of this specific legal action and no other; (3) the Court and its personnel; (4) court reporters who record depositions or other testimony in this case; (5) experts or independent consultants (and their staff) retained by attorneys for the receiving party to whom disclosure is reasonably necessary for this Action; (6) deponents, witnesses, or potential witnesses at any deposition in this action; (7) consultants not in the regular employ of the parties that are needed to assist counsel of record in the litigation or trial of this action; (8) witnesses expected to testify at trial; (9) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and (10) any other person to whom the party who originally designated the material as confidential agrees in writing.

8.    "Highly Confidential" information shall be handled as follows:

(a)    Information designated as "Highly Confidential – Attorneys' Eyes Only" shall not be disclosed by the receiving party's outside counsel of record to the public or the receiving party, nor disclosed to any other person or entity without Order of the Court.

(b)    Unless otherwise ordered by the Court or permitted in writing by the designating party, the receiving party's outside counsel of record may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEY EYES' ONLY" only to: (1) the receiving party's outside counsel of record's employees and any legal, investigative, technical, administrative, and other support staff of said outside counsel of record to whom it is reasonably necessary to disclose the information for this Action; (2) experts or independent consultants (and their staff) retained by

5

attorneys for the receiving party to whom disclosure is reasonably necessary for this Action; (3) the court and its personnel; and (4) court reporters and their staff.

(c)     Unless otherwise ordered by the Court or permitted in writing by the designating party, the receiving party's outside counsel of record may discuss or show any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEY EYES' ONLY" to the specific detainee to whom the document pertains, only if such disclosure is necessary for the purposes of this litigation, or if the specific detainee authored, originated, received, or otherwise possesses the information. Such discussion or showing of the relevant document(s) shall not include providing the detainee with copies.

(d)     Pages of transcribed deposition testimony or exhibits to depositions that reveal Highly Confidential Material and are designated as such pursuant to paragraph 13 of this Order may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

9.     For any disclosures under Paragraph 7(b)(4-10) and Paragraph 8(b)(2 & 4), the person to whom the Confidential Material or Highly Confidential Material is being disclosed must first, before viewing the information, review a copy of this Protective Order and counsel shall obtain agreement, in writing, from such person that he or she will be bound by its provisions, as follows:

I,_____, declare that I have read and understand the terms of this Amended Stipulated Protective Order Concerning Production of  Confidential Information ( " Order") issued by the United States District Court for the District of Colorado ("Court")  on November __, 2018 in the case of *Menocal et al. v. The GEO*

6

*Group, Inc*. I understand that this Order remains in effect during and after conclusion of this litigation, and I agree to be bound by it. I understand that I may be subject to penalties for contempt of Court if I violate this Order.

Printed Name: _____

Signature: _____

Dated: _____

10. This Protective Order does not prohibit or restrain the disclosure of information between the parties for the performance of the tasks necessary to conduct discovery or prepare for trial. Rather, this Protective Order is designed to prevent the unwarranted disclosure of Confidential and Highly Confidential Material to nonparties, the general public or use outside of this litigation.

11. No documents containing Confidential or Highly Confidential Material may be reproduced except as necessary in the litigation of this action. Any copy of a document containing or summarizing Confidential or Highly Confidential Material must be stamped "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." The inadvertent, unintentional, or *in camera* disclosure of Confidential or Highly Confidential Material will not, under any circumstances, be deemed a waiver, in whole or in part, of any claims of confidentiality.

12. Counsel must advise, instruct, and supervise their associates, staff, and employees to preserve the confidentiality of Confidential and Highly Confidential Material. Counsel must also advise their clients about the requirements of this Protective Order.

13. Documents are designated as Confidential or Highly Confidential Material by placing or affixing on them (in a manner that will not interfere with their legibility) the following or other appropriate notice: "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEY

7

Case 1:14-cv-02887-JLK-MEH   Document 157   Filed 11/26/18   USDC Colorado   Page 8 of 15
Case 5:17-cv-02514-JGB-SHK   Document 145-2   Filed 04/12/19   Page 66 of 76   Page
ID #:1391

EYES' ONLY" to each page that contains confidential material. With respect to documents containing Confidential or Highly Confidential Material produced in Native Format, the designating party shall include the appropriate confidentiality designation in the filename. With respect to all documents produced that contain Confidential or Highly Confidential Material, the designating party will also include in the Load File the appropriate confidentially designation. If only a portion or portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portion(s).

14.      Whenever deposition testimony involves the disclosure of Confidential or Highly Confidential Material, the testimony should be identified on the record as Confidential or Highly Confidential wherever possible. A party may later designate portions of depositions as Confidential or Highly Confidential after transcription, provided written notice of the designation is promptly given to all counsel of record within thirty (30) days after the court reporter has notified counsel that the deposition transcript has been completed. Those portions of the original transcripts that contain Confidential or Highly Confidential Material shall bear the legend "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," or "HIGHLY CONFIDENTIAL – ATTORNEY EYES' ONLY – SUBJECT TO PROTECTIVE ORDER" at the beginning of the text which has been designated Confidential or Highly Confidential and the cover page of the transcripts that contain Confidential Material shall bear the legend "CONTAINS CONFIDENTIAL PORTIONS."

15.      A party may object to the designation of a document as Confidential or Highly Confidential Material by giving written notice to the designating party. The written notice must identify the information to which objection is made. If the parties cannot resolve the objection within ten (10) business days after notice is received, the designating party may file an appropriate motion seeking a ruling from the Court whether the disputed information should be deemed Confidential or Highly Confidential Material. The disputed information must be treated as

8

Confidential Material or Highly Confidential until the Court rules on the motion, a motion on which the designating party will bear the burden of establishing good cause to treat the information as Confidential or Highly Confidential. If the designating party fails to timely file such a motion, the disputed information will lose its designation as Confidential or Highly Confidential Material.

16.     The obligation to preserve the confidentiality of Confidential or Highly Confidential Material survives the termination of this action. The Court will retain continuing jurisdiction to enforce the terms of this Protective Order.

17.     Should the parties desire to submit to the Court any Confidential or Highly Confidential Material (whether in a discovery dispute, on the merits, or otherwise), the filing party must promptly advise the designating party and ICE (if the parties reasonably believe that the documents contain ICE information or are ICE documents and ICE would be of the position that the documents should be filed under seal) of the intended filing and whether the designating party or ICE will waive the designation.  Any party who wishes to advise  ICE of such intended submission shall contact the DOJ Liaison (presently Assistant U.S. Attorney Timothy Jafek), in writing, regarding the proposed submission. The designating  party will advise the requesting party whether it will waive the designation within two (2) business days of the requesting party's request, or within such other time as  agreed to  by  the parties. If the designating party will not waive the designation, and the filing party still wishing to use the Confidential or Highly Confidential Material in a court filing, the filing party must file the material as restricted, and the designating party, ICE or any other interested party may file a motion to restrict, in accordance with D.C.COLO.LCivR 7.2 or any other rules promulgated by the United States District Court for the District of Colorado in effect at the time the documents are filed.

18.     This Protective Order supersedes the prior Protective Order (Dkt. 45).   The

9

provisions of this Protective Order shall apply to any Confidential Material so designated under the prior Protective Order (Dkt. 45) or Highly Confidential Material so designated by any party to this Protective Order before entry of this Protective Order.

19.     If a party desires to use another party's Confidential or Highly Confidential Material at trial or at any hearing in open court, the submitting party shall meet and confer with the designating party, and (if the parties reasonably believe that the documents contain ICE information or are ICE documents and ICE would be of the position that the documents should be filed under seal), the submitting party shall follow the procedures outlined in paragraph 17 of this Order with respect to advising ICE. If the producing party or ICE declines to waive the designation, the producing party or ICE or any other interested party shall move for an order that such evidence be received in camera or under other less public circumstances to prevent unnecessary disclosure.

20.     If any nonparty shall be called upon, by subpoena or otherwise, to provide or produce documents or information considered confidential by such nonparty, such nonparty will be provided with a copy of this agreement and may invoke its terms with respect to any Confidential or Highly Confidential Material provided to the parties.  If any Confidential or Highly Confidential Material is produced by a party other than a party to this agreement, such party shall be considered a designating party and all parties to this order should be treated as receiving parties. Nothing herein shall be construed to restrict the ability of a nonparty from objecting to disclosure of information within its possession, custody, and control pursuant to any applicable federal or state law or regulation or on a basis of privilege. Nothing contained herein prohibits a party from negotiating a separate protective order with any nonparty, provided that all parties to this litigation are included in the negotiation of such agreement and ultimately agree to the terms of such agreement, and the Party to this litigation seeking the separate protective order moves the Court

10

for such order.  Furthermore, nothing contained herein prohibits a nonparty from seeking a separate protective order or other relief from the Court.

21.     Nothing contained herein shall be construed to restrict disclosure and use by the receiving party of any documents, information, or things that become publicly available through no fault or wrongdoing of any receiving party even if those documents, information, or things are also designated Confidential or Highly Confidential Material; however the specific documents, information, or things designated Confidential or Highly Confidential shall continue to be treated as such under the provisions of this Protective Order unless otherwise agreed to by the parties and, if applicable, the Government.

22.     Unless prohibited by law, upon termination of this litigation, within sixty (60) calendar days after the termination of this action, including all appeals, each receiving party shall return the originals and all copies, extracts, and summaries of Confidential and Highly Confidential Material to the designating party, or shall certify to the designating party that they have deleted or destroyed the same in a manner that is agreeable to the designating party. Notwithstanding this provision, counsel are entitled to retain one (1) archival copy of all documents filed with the court, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Confidential or Highly Confidential Material. Counsel also shall not be required to delete information that may reside on their respective parties' firms' or vendors' electronic disaster recovery systems that are overwritten in the normal course of business, or information that may reside in electronic files which are not reasonably accessible.  Should counsel know or have reason to know that Confidential or Highly Confidential Material is to be restored from parties' firms' or vendors' electronic disaster recovery systems or other locations not reasonably accessible, counsel will make reasonable efforts to destroy these materials in good faith.

23.     If a party is served with a subpoena, service of process, or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "Confidential" or "Highly Confidential," that party must:

(a)     Promptly notify the designating party in writing and include a copy of the subpoena or court order;

(b)     Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this agreement. Such notification shall include a copy of this agreement;

(c)     Cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose Confidential or Highly Confidential Material may be affected.

Once notified, the designating party (or nonparty) seeking to maintain the confidentiality of any information shall have the sole responsibility for obtaining any order it believes necessary to prevent disclosure of the information that has been subpoenaed, requested, or ordered. The subpoenaed party will not produce any of the Confidential or Highly Confidential Material while a motion for a protective order brought by the designating party pursuant to this paragraph is pending, or while an appeal from or request for appellate review of such motion is pending, unless a court orders production of materials that are subject to this agreement, then production of such materials pursuant to that Court Order shall not be deemed a violation of this agreement.

24.     Neither the agreement of the parties with respect to Confidential or Highly Confidential Material, nor the designation of any information, document, or the like, as Confidential or Highly Confidential Material, nor the failure to make such designation shall be construed as:

(a)     Evidence with respect to any issue on the merits in this action;

12

(b)    Waiving or restraining a party or nonparty from using or disclosing its own Confidential or Highly Confidential Material as it deems appropriate;

(c)    Waiving a party's right to object to any disclosure of Confidential or Highly Confidential Material or production of any documents it deems to contain Confidential or Highly Confidential on any ground other than confidentiality that it may deem appropriate;

(d)    Waiving a party's right to redact from any documents, whether designated "Confidential" or "Highly Confidential" or not, any information containing privileged material or any other data protected from disclosure by state or federal law;

(e)    Conceding that review of documents is unnecessary or that a producing party need not cull non-responsive, irrelevant, or other documents before producing to the relevant party.

25.    This Protective Order may be modified by the Court at any time for good cause shown following notice to all parties and an opportunity for them to be heard.

26.    The parties agree that all documents produced subject to this Protective Order and any prior protective order entered in this case shall be protected in accordance with the data security requirements of Section 11 of the ESI Protocol (Dkt. 109). The parties shall follow the data security mandates of Section 11 of the ESI Protocol (Dkt. 109) for any documents that do not qualify as ESI, and shall safeguard those materials accordingly.

27.    Nothing in this Protective Order will prevent any party or nonparty from seeking modification of this order or from objecting to discovery that the party or nonparty believes to be improper. Nothing in this Protective Order will prejudice the right of any party or nonparty to contest the alleged relevancy, admissibility, or discoverability of confidential documents or

information sought.

DATED this 20th day of November 2018.

Juno Turner
Ossai Miazad
Elizabeth Stork
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (212) 977-4005
E-Mail: jturner@outtengolden.com
E-Mail: om@outtengolden.com
E-Mail: estork@outtengolden.com

David Lopez
**OUTTEN & GOLDEN LLP**
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
E-Mail: pdl@outtengolden.com

Rachel Dempsey
Adam Koshkin
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
E-Mail: rdempsey@outtengolden.com
E-Mail: akoshkin@outtengolden.com

R. Andrew Free
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
T: (844) 321-3221
Andrew@ImmigrantCivilRights.com

Alexander Hood
David Seligman
Andrew Schmidt
**TOWARDS JUSTICE**
1535 High St., Suite 300
Denver, CO 80218

Scott Schipma
**GREENBERG TRAURIG, LLP**
2101 L Street, NW, Suite 1000
Washington, DC 20037
(202) 331-3141
schipmas@gtlaw.com

Naomi Beer
**GREENBERG TRAURIG, LLP**
1200 17th Street, Suite 2400
Denver, CO 80202
(303) 572-6549
beern@gtlaw.com

Dana Eismeier
**BURNS, FIGA & WILL**
Suite 1000
6400 S. Fiddlers Green Circle
Greenwood Village, Colorado 80111
(303) 796-2626
deismeier@bfwlaw.com

Mark Emery
**NORTON ROSE FULBRIGHT US LLP**
799 9th Street NW, Suite 1000
Washington, DC 20001
(202) 662-0210
mark.emery@nortonrosefulbright.com

Charles A. Deacon
**NORTON ROSE FULBRIGHT US LLP**
300 Convent Street
San Antonio, Texas 78205
(210) 270-7133
charlie.deacon@nortonrosefulbright.com
*Counsel for Defendant*

By: _____

14

(720) 441-2236
alex@towardsjustice.org
david@towardsjustice.organdy@towardsjustice.org

Brandt Milstein
**MILSTEIN LAW OFFICE**
595 Canyon Boulevard
Boulder, CO 80302
(303) 440-8780
brandt@milsteinlawoffice.com

Andrew Turner
**THE KELMAN BEUSCHER FIRM**
600 Grant St., Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Hans Meyer
**MEYER LAW OFFICE, P.C.**
P.O. Box 40394
Denver, CO 80204
(303) 831-0817
hans@themeyerlawoffice.com

*Class Counsel*


By: _____




SO ORDERED:

_____          Date: __November 26, 2018__

The Honorable John L. Kane
Senior U.S. District Court Judge

# EXHIBIT G

From:    tmaya@ahdootwolfson.com
Subject: Re: 2019.02.21 CIRCULATED Novoa Protective Order.DOCX
Date:    February 28, 2019 at 6:49 PM
To:      ellisond@gtlaw.com
Cc:      andrew@immigrantcivilrights.com,  lwright@burnscharest.com,  linhardta@gtlaw.com,  GreeneJ@gtlaw.com,  vantj@gtlaw.com,  bryane@gtlaw.com,  muenzfeldd@gtlaw.com,  schipmas@gtlaw.com

Dawn,

I write to confirm that Plaintiffs agree with the version of the protective order you attached to the email below, which I attach again here for reference.  You have our permission to file electronically.

Thank you,

Ted


Theodore Maya

_____
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Phn:    (310) 474-9111
Fax:    (310) 474-8585
E-mail: tmaya@ahdootwolfson.com

********

The information in this electronic mail is confidential and may be privileged. If you are not the intended recipient, you are hereby notified that any review, dissemination, disclosure, copying, or distribution of the information in these documents is strictly prohibited. If you have received this communication in error, please contact the sender by reply mail and destroy all copies of the original message.

********

IRS Circular 230: under U.S. treasury regulations, we are required to inform you that any tax advice contained in this communication (including any attachment) is not intended to be used, and cannot be used, to avoid penalties imposed under the internal revenue code.


**From:** "ellisond@gtlaw.com" <ellisond@gtlaw.com>
**Date:** Thursday, February 21, 2019 at 1:49 PM
**To:** Ted Maya <tmaya@ahdootwolfson.com>
**Cc:** "andrew@immigrantcivilrights.com" <andrew@immigrantcivilrights.com>, "lwright@burnscharest.com" <lwright@burnscharest.com>, "linhardta@gtlaw.com" <linhardta@gtlaw.com>, "GreeneJ@gtlaw.com" <GreeneJ@gtlaw.com>, "vantj@gtlaw.com" <vantj@gtlaw.com>, "bryane@gtlaw.com" <bryane@gtlaw.com>, "muenzfeldd@gtlaw.com" <muenzfeldd@gtlaw.com>, "schipmas@gtlaw.com" <schipmas@gtlaw.com>

**Subject:** 2019.02.21 CIRCULATED Novoa Protective Order.DOCX

Hi Ted,

The attached draft of the protective order is a clean version (with date still highlighted for entry) that incorporates the compromise language at 14.2 that we agreed upon during our February 12 conversation.  Additionally, we made a few minor edits that we did not redline in this version – capitalization changes, adjusting an error in numbering, etc. (I have a comparison version, if you're interested in the minutiae).

I'll give you a call later today to discuss next steps.

Regards,
Dawn

**Dawn Ellison**
Of Counsel

Greenberg Traurig, LLP
2101 L Street N.W. | Washington, D.C. 20037
T +1 202.331.3159  | F +1 202.261.4792
ellisond@gtlaw.com  |  www.gtlaw.com  |  View GT Biography





---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate such information.

373853680_v
1_2019....er.docx