# EXHIBIT 26

February 14, 2018



*VIA FEDERAL EXPRESS*

The Honorable Thomas D. Homan, Acting Director
U. S. Immigration and Customs Enforcement
Department of Homeland Security
500 12th Street NW
Washington, DC   20536

**The GEO Group, Inc.**

**Corporate Headquarters**
One Park Place, Suite 700
621 Northwest 53rd Street
Boca Raton, Florida 33487

TEL: 561 893 (b)(6
866 301 ):(b)(
www.geogroup.com
dventurella@geogroup.com

**Subject: Request for Equitable Adjustment in the Amount of $2,057,000
and Legal Assistance from ICE/DOJ**

Dear Acting Director Homan:

I write to you to address recent lawsuits that have put GEO in a burdensome and costly position defending the agency's legal framework and the policies to which GEO is bound as a federal contractor. There is an urgent need for the federal government to participate in the current and anticipated future litigation, as well as, to justify and defend the programs and policies that ICE requires of its detention contractors. GEO cannot bear the costs of this defense on its own, and will need to seek an equitable adjustment of its contracts for costs of litigation already incurred, and for the costs of future litigation expenses and liability for monetary awards against GEO.

**State of Colorado Lawsuit**

*Menocal et al. v. the GEO Group*,[1] a class action suit by former detainees at the Aurora, Colorado ICE Processing Facility, has been pending since 2014 and represents the first lawsuit claiming that GEO, by having detainees at the Aurora facility perform basic housekeeping chores for no pay under the alleged threat of solitary confinement, has engaged in forced labor in violation of the Trafficking Victims Protection Act (TVPA), 18 U. S. C. § 1589. The suit also alleges that GEO's payment of $1 per day to detainees who work in the Voluntary Work Program (VWP), as authorized and mandated by ICE's PBNDS and GEO's contract, violates Colorado's minimum wage law (a claim dismissed by the district court, but that could be revisited on appeal). The suit also alleges that detainees are entitled to disgorgement of money under a theory of unjust enrichment for work performed by detainees. The district court certified classes on the TVPA and unjust enrichment claims. GEO obtained an interlocutory appeal of the district court's class certification, but on February 9, 2018, the U.S. Court of Appeals for the Tenth Circuit affirmed the ruling, enabling a class of 60,000 detainees to seek damages for TVPA

---

[1] *Alejandro Menocal, Marcos Brambila, Grisel Xahuentitla, Hugo Hernandez, Lourdes Argueta, Jesus Gaytan, Olga Alexaklina, Dagoberto Vizguerrra and Demetrio Valegra, on their own behalf and on behalf of all others similarly situated, v. The GEO Group, Inc.*, No. 1:14-cv-02887 (D. Colo.), on appeal, *GEO Group, Inc. v. Menocal*, No. 17-1125 (10th Cir.).

ICE-FOIA2018_0000704



violations and disgorgement of money for unjust enrichment based on alleged underpayment for VWP participation.

The legal discovery costs could total several millions of dollars and potential damages could be in the tens of millions. Understandably, GEO would need to be reimbursed for all of the cost through an equitable adjustment request to ICE. To date, GEO has expended approximately $1,615,000 in legal costs for which we seek an equitable adjustment.

## State of Washington Lawsuits

Two recent lawsuits, *State of Washington v. The GEO Group, Inc.* and *Chen v. The GEO Group, Inc.,*[2] claim that GEO is subject to Washington state minimum wage laws for detainee work at the Northwest Detention Center (NWDC) in Tacoma. The State of Washington's suit is pursued by Washington's Attorney General, who has publicly boasted of his victories over the current Administration, including several regarding immigration. He seeks a declaration that the detainees in ICE's custody are GEO's "employees" that are entitled to a minimum wage for VWP participation, as well as injunctive relief and "disgorgement" of allegedly unpaid wages under a theory of unjust enrichment. Plaintiff Chen, a former NWDC detainee, seeks to certify a class action based on similar minimum wage claims.

The declaratory, injunctive and monetary relief requested would judicially alter the ICE-GEO contract by creating an employer-employee relationship between GEO and detainees in federal government custody. Although GEO argued that the cases should be dismissed because the state laws are preempted by federal law, a district court judge recently denied motions to dismiss in both cases. GEO has filed a counterclaim for an offset in the frorm of unjust enrichment and has pled affirmative defense, including that ICE and/or DHS is a necessary party to the proceedings.  The cases are currently set for trial in January and March 2019.  To date, GEO has expended approximately $442,000 in legal costs for which we seek an equitable adjustment.

## State of California  Lawsuit and Legislation

On December 19, 2017 Raul Novoa filed a class action complaint in United States District Court for the Central District of California, Eastern Division. Novoa, a former detainee at the Adelanto Detention Center, alleges that GEO maintains a corporate policy and uniform practice of withholding sufficient food, water, and hygiene products from detainees at Adelanto. As a result, detainees are forced to either purchase these daily necessities from the Facility's commissary, or go without. Novoa further alleges that "by maintaining these harsh conditions and purposely withholding basic necessities from detainees, GEO ensures an available labor pool of detainees will work for only $1 per

---

[2] *State of Washington v. The GEO Group, Inc.*, Case No. 3:17-cv-05806 RJB, (W.D. Wash.); *Chao Chen v. The GEO Group, Inc.*, Case No. 3:17-cv-05769 RJB (W.D. Wash.).

ICE-FOIA2018_0000705



day." Finally, Novoa alleges that the VWP is not "voluntary" because detainees that refuse to participate in the VWP are placed into solitary confinement.

The legal claims include violations of California's Minimum Wage law, unjust enrichment, violations of California's unfair competition law, violations of the federal TVPA and attempted forced labor.

Unfortunately, this pending lawsuit is not the only issue facing ICE and its contractors in California. In 2017, the California legislature enacted two laws that will create significant obstacles to ICE's ability to contract with local governments to obtain detention facility services through Intergovernmental Service Agreements (IGSAs).

The first law, AB 103, was enacted through an appropriations bill and prohibits a California city, city and county or local law enforcement from entering into a new contract with the federal government or a federal agency, "to house or detain in a locked detention facility noncitizens for purposes of civil immigration custody." Cal. Gov't Code § 7310(a). It also prevents these state and local entities from renewing or modifying existing contracts "in such a way to expand the maximum number of contract beds" that may be utilized to house or detain noncitizens for the purpose of civil immigration proceedings. Cal. Gov't Code § 7310(b). AB 103 also adds coordinate provisions relating to facilities that house minors. Cal. Gov't Code § 7311. Another law, SB 29, will further prohibit a city, city and county, or local law enforcement agency from entering into a contract with the federal government or a private corporation to house or detain in a locked detention facility noncitizens for purposes of civil immigration custody. Cal. Civ. Code § 1670. 9(a), (b). Another provision of SB 29 also restricts certain conveyances of land or permits for detention facility buildings. Cal. Civ. Code § 1670. 9(d). Taken together, AB 103 and SB 29 appear to be aimed at eventually eliminating all the contracting relationships that enable ICE to use IGSAs to obtain bedspace.

The legislation also provides tools for state government to interfere with the operations of ICE facilities. AB 103 purports to authorize the California Attorney General, through the year 2027, to conduct inspections of "county, local, or private locked detention facilities." This includes broad and ill-defined review of "conditions of confinement," "standard of care and due process" to detainees, and "the circumstances around their apprehension and transfer to the facility." Cal. Gov't Code § 12532(b). The law requires the Attorney General to be provided "all necessary access for the observations necessary to effectuate reviews required pursuant to this section." Cal. Gov't Code § 12532(c). Information for these reviews will be reported to the state Legislature and Governor, and made publicly available through the Attorney General's website. Cal. Gov't Code § 12532. SB 29 also makes these facilities subject to the California Public Records Act. Cal. Civ. Code § 1670. 9(c). The City of Adelanto has recently received multiple broad requests for information about the Adelanto facility under this provision from the news agency BuzzFeed and one individual.

2018-ICLI-00052   2753

ICE-FOIA2018_0000706



On November 16, 2017 the City of Adelanto also received a letter from the California Department of Justice requesting a visit and tour of the Adelanto Detention Center pursuant to California Government Code Section 12532, which was enacted as part of California Assembly Bill 103 (AB 103) on June 27, 2017. On November 27, 2017 ICE Contracting Officer Roberta Halls sent a letter to Gabriel Elliot, the Adelanto City Manager, reminding him of the City's obligations under the IGSA with ICE which requires procedures for requested facility tours and relevant tour restrictions.

These new California laws present clear obstacles to ICE's ability to contract with state and local authorities and with private corporations in order to obtain detention facility bedspace and services. The laws are also clearly invasive, jeopardizing facility security and giving access to detainees and to federal information in a manner that creates great potential for state interference with ICE's ability to carry out its federal mandates and policies. The California Attorney General's request for a tour is in all likelihood an exploratory initiative directed at compiling information for litigation against the facility service provider The GEO Group.

### Concerted Challenges to ICE Authority and to Federal Law

These lawsuits have placed GEO's operation of ICE facilities at odds with Congressional direction, as well as our contractual terms. Obviously, GEO does not engage in forced labor that violates the TVPA, a statute that federal agencies, including the Department of Homeland Security, are charged with enforcing. To the extent that plaintiffs allege that disciplinary segregation is an unlawful threat for refusal to work, this sanction comes directly from ICE policies, which ICE should assist in defending.

Likewise, the demand that GEO pay a state-mandated minimum wage is directly contrary to federal law and the terms of ICE and GEO's contracts. Congress has expressly provided that pay for detainee work is an "allowance," 8 U.S.C. §1555(d), and has never directed that detainees should be paid a minimum wage as employees. Decades of precedents under the Federal Labor Standards Act have upheld the $1 per day allowance for detainee work, holding that detainees are not the "employees" of detention facilities and that minimum wage standards are inapplicable to detainees. GEO's contracts with ICE require that GEO administer the VWP at the Aurora and Tacoma facilities, and set the reimbursable rate for that participation at $1 per detainee per day, an amount that cannot be increased without ICE's authorization. Yet, GEO finds itself defending the agency and its policies against allegations of state minimum wage violations. GEO should not shoulder the burdens and costs of defending agency policy, when GEO, as a government contractor, must carry out its contractual obligations to ICE, including administering the VWP as ICE specifies, at the contract reimbursement rate for the allowances to detainees of $1 per day.

2018-ICLI-00052   2754

ICE-FOIA2018_0000707



## Request for ICE/DOJ Legal Intervention

**We believe that if ICE/DOJ continues to abstain from intervention in these cases, and laws such as California's go unchallenged, other parties and states will consider similar litigation and legislation, thereby multiplying the impediments to ICE's administration of the immigration detention system.** GEO believes that the course of the litigation in Colorado, Washington, and California (and similar lawsuits that are likely to follow) could be significantly changed by ICE/DOJ intervention. The federal government needs to defend its Congressional mandates and its policies against these suits, which are designed to force changes in federal immigration policy by targeting the federal government's private contractors.

**GEO views its defense of these lawsuits and its potential liability as a cost of performance of its contracts with ICE. The potential costs are significant.** Thus far, GEO's legal fees and costs in *Menocal* exceed $1.6 million, which will increase sharply now that the Tenth Circuit has affirmed the class-certification. In the Washington litigation, the defense fees and costs are already approximately $440,000, and could quickly exceed $1 million once discovery begins, or increase exponentially if class-certification is granted in each lawsuit. Even more concerning is that there is the potential for damages under the TVPA reaching as many as 60,000 detainees at the Aurora facility over 10 years, and claims for disgorgement of unpaid wages to VWP participants stemming back multiple years.

**Monetary damages in each of the Colorado, Washington, and California cases could reach several millions of dollars. Were GEO to receive an adverse judgment in any of these cases, GEO would have no alternative but to seek an equitable adjustment to cover the cost for past and future damages.** The impact is even more problematic given the reasonably foreseeable likelihood that this litigation would be repeated in other jurisdictions with antagonistic public officials seeking to target private federal contractors as a means of changing federal detention policy that DHS and ICE are in the best position to defend.

We respectfully request a meeting on this matter for next Thursday morning, February 22, 2018. If you have any questions or need any additional information, please don't hesitate to contact me via email at (b)(6);(b)(7)(C) or by telephone at (b)(6);(b)(7)(C). In my absence, please contact (b)(6);(b)(7)(C) or via telephone at (b)(6);(b)(7)(C).

Very truly yours,

(b)(6);(b)(7)(C)

Senior Vice President
Business Development

2018-ICLI-00052  2755

ICE-FOIA2018_0000708