EXHIBIT 28

OFFICE OF INSPECTOR GENERAL

# Concerns about ICE Detainee Treatment and Care at Four Detention Facilities


Homeland Security

**June 3, 2019**
**OIG-19-47**

NOVOA_0008008



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

June 3, 2019

MEMORANDUM FOR:   Mark A. Morgan
                  Acting Director
                  U.S. Immigration and Customs Enforcement

FROM:             John V. Kelly
                  Acting Inspector General

SUBJECT:          *Concerns about ICE Detainee Treatment and Care at Four Detention Facilities*

Attached for your information is our final report, *Concerns about ICE Detainee Treatment and Care at Four Detention Facilities*. We incorporated the formal comments from the U.S. Immigration and Customs Enforcement in the final report.

Consistent with our responsibility under the *Inspector General Act*, we will provide copies of our report to congressional committees with oversight and appropriation responsibility over the Department of Homeland Security. We will post the report on our website for public dissemination.

Please call me with any questions, or your staff may contact Diana Shaw, Assistant Inspector General for Special Reviews and Evaluations, at (202) 981-6000.

Attachment



# DHS OIG Highlights
*Concerns about ICE Detainee Treatment and Care at Four Detention Facilities*

**June 3, 2019**

## Why We Did This Inspection

In response to concerns raised by immigrant rights groups and complaints to the Office of Inspector General (OIG) Hotline about conditions for detainees held in U.S. Immigration and Customs Enforcement (ICE) custody, we conducted unannounced inspections of four detention facilities to evaluate their compliance with ICE detention standards.

## What We Recommend

We made one recommendation to improve ICE's oversight of detention facility management and operations.

**For Further Information:**
Contact our Office of Public Affairs at (202) 981-6000, or email us at
DHS-OIG.OfficePublicAffairs@oig.dhs.gov

## What We Found

Overall, our inspections of four detention facilities revealed violations of ICE's *2011 Performance-Based National Detention Standards*, which set requirements for facilities housing detainees. This report summarizes findings on our latest round of unannounced inspections at four detention facilities housing ICE detainees. Although the conditions varied among the facilities and not every problem was present at each, our observations, detainee and staff interviews, and document reviews revealed several common issues. Because we observed immediate risks or egregious violations of detention standards at facilities in Adelanto, CA, and Essex County, NJ, including nooses in detainee cells, overly restrictive segregation, inadequate medical care, unreported security incidents, and significant food safety issues, we issued individual reports to ICE after our visits to these two facilities. All four facilities had issues with expired food, which puts detainees at risk for food-borne illnesses. At three facilities, we found that segregation practices violated standards and infringed on detainee rights. Two facilities failed to provide recreation outside detainee housing units. Bathrooms in two facilities' detainee housing units were dilapidated and moldy. At one facility, detainees were not provided appropriate clothing and hygiene items to ensure they could properly care for themselves. Lastly, one facility allowed only non-contact visits, despite being able to accommodate in-person visitation. Our observations confirmed concerns identified in detainee grievances, which indicated unsafe and unhealthy conditions to varying degrees at all of the facilities we visited.

## ICE Response

ICE concurred with the report recommendation and described corrective actions to address the issues identified in this report. We consider the recommendation resolved and open.



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

## Table of Contents

Background ................................................................................... 2

Results of Inspection .................................................................. 3

    Food Service Issues at All Facilities Endanger Detainee Health and Welfare ................................................................................... 3

    Inappropriate Segregation Practices at Three Facilities Infringe on Detainee Rights ........................................................................ 5

    Absence of Recreation outside Housing Units at Two Facilities May Reduce Detainee Mental Health and Welfare ........................................... 7

    Poor Conditions at Two Facilities Present Health Risks ......................... 8

    Improper Provision of Clothing and Toiletries at One Facility Hinders Detainee Abilities to Maintain Acceptable Personal Hygiene Practices..... 9

    Lack of In-Person Visitation at One Facility May Diminish Detainee Morale and Social Ties ........................................................... 11

Recommendation ...................................................................... 12

Management Comments and OIG Analysis .................................... 12

## Appendixes

    Appendix A: Objective, Scope, and Methodology ................................. 14
    Appendix B: ICE Comments to the Draft Report................................... 16
    Appendix C: Office of Special Reviews and Evaluations Major Contributors to This Report ................................................... 23
    Appendix D: Report Distribution......................................................... 24

## Abbreviations

| | |
|---|---|
| ERO | Enforcement Removal Operations |
| ICE | Immigration and Customs Enforcement |
| OIG | Office of Inspector General |
| PBNDS | Performance Based National Detention Standards |



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

# Background

U.S. Immigration and Customs Enforcement (ICE) apprehends, detains, and removes aliens who are in the United States unlawfully. ICE Enforcement and Removal Operations (ERO) oversees the detention of aliens in nearly 200 facilities that it manages in conjunction with private contractors or state or local governments. Contracts and agreements with facilities that hold ICE detainees require adherence to the *2000 National Detention Standards*, ICE's *2008 Performance-Based National Detention Standards* (PBNDS), or the 2011 PBNDS.

All ICE detainees are held in civil, not criminal, custody, which is not supposed to be punitive. According to ICE, the PBNDS establish consistent conditions of confinement, program operations, and management expectations within ICE's detention system. These standards set requirements for areas such as:

- environmental health and safety: e.g., cleanliness, sanitation, security, detainee searches, segregation[1] (Special Management Units), and disciplinary system;
- detainee care: e.g., food service, medical care, and personal hygiene;
- activities: e.g., visitation and recreation; and
- grievance system.

In response to concerns raised by immigrant rights groups and complaints to the Office of Inspector General (OIG) Hotline about conditions for detainees held in ICE custody, and consistent with Congress' direction,[2] we made unannounced visits to four detention facilities between May and November, 2018: Adelanto ICE Processing Center (California), LaSalle ICE Processing Center (Louisiana), Essex County Correctional Facility (New Jersey), and Aurora ICE Processing Center (Colorado). The Adelanto, LaSalle, and Aurora facilities are owned and operated by the GEO Group Inc., and the Essex facility is owned and operated by the Essex County Department of Corrections. Based on their contracts or agreements, all four facilities must comply with the 2011 PBNDS. Together these facilities can house a maximum of 4,981 detainees, according to ICE.

This report summarizes the violations of ICE standards and problems we identified during our visits to the four facilities. However, some of the conditions and actions we observed at the Adelanto and Essex facilities

---

[1] Segregation is the process of separating certain detainees from the general population for administrative, disciplinary, or protective reasons.
[2] Joint Explanatory Statement, 164 Cong. Rec. H2045, H2547 (daily ed. Mar. 22, 2018)

NOVOA_0008742



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

represented immediate, unaddressed risks or egregious violations of the PBNDS and warranted individual reporting to ICE for corrective action.[3] The inspection at the Adelanto facility revealed significant health and safety risks, including nooses in detainee cells, improper and overly restrictive segregation, and inadequate detainee medical care. At the Essex facility, we found unreported security incidents, food safety issues, and facility conditions that endanger detainee health.

# Results of Inspection

This report summarizes findings on our latest round of unannounced inspections at four detention facilities housing ICE detainees. Because we observed immediate risks or egregious violations of detention standards at the Adelanto and Essex facilities, we issued individual reports to ICE after our visits to these two facilities and recommended ICE conduct a full review of the facilities to ensure compliance with ICE's 2011 PBNDS. Overall, our inspections of the four detention facilities revealed violations of ICE's detention standards and raised concerns about the environment in which detainees are held. Although the conditions varied among the facilities and not every problem was present at each, our observations, interviews with detainees and staff, and reviews of documents revealed several persistent issues. All four facilities had issues with expired food, which puts detainees at risk for food-borne illnesses. At three facilities, we found that segregation practices violated standards and infringed on detainee rights. Two facilities failed to provide recreation outside detainee housing units. Bathrooms in two facilities' detainee housing units were dilapidated and moldy. At one facility, detainees do not receive appropriate clothing and hygiene items to ensure they could properly care for themselves. Lastly, one facility allowed only non-contact visits, despite being able to accommodate in-person visitation. Our observations confirmed concerns identified in detainee grievances, which indicated unsafe and unhealthy conditions to varying degrees at all of the facilities we visited.

**Food Service Issues at All Facilities Endanger Detainee Health and Welfare**

Our observations of all four facility kitchens indicated some level of noncompliance with ICE standards. We observed spoiled and moldy food in kitchen refrigerators, as well as food past its expiration date. We also found

---

[3] *Management Alert – Issues Requiring Action at the Adelanto ICE Processing Center in Adelanto, California*, OIG-18-86, Sept. 27, 2018, https://www.oig.dhs.gov/sites/default/files/assets/Mga/2018/oig-18-86-sep18.pdf; *Issues Requiring Action at the Essex County Correctional Facility in Newark, New Jersey*, OIG-19-20, Feb. 13, 2018, https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-20-Feb19.pdf

NOVOA_0008743



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

meat thawing without labels indicating when it had begun thawing or the date by which it must be used. The issues at the LaSalle and Aurora facilities were minor and easily fixed during our visits, whereas those at the Adelanto and Essex facilities were egregious. At Essex, the food handling in general was so substandard that ICE and facility leadership had the kitchen manager replaced during our inspection. Overall, the issues we identified represent health and food safety risks.

- At Essex, open packages of raw chicken leaked blood all over refrigeration units, as shown in figure 1; lunch meat was slimy, foul-smelling and appeared to be spoiled; and moldy bread was stored in the refrigerator.

- At Adelanto, lunch meat and cheese were mixed and stored uncovered in large walk-in refrigerators; lunch meat was also unwrapped and unlabeled; chicken smelled foul and appeared to be spoiled; and food in the freezer was expired.

- At LaSalle, some bread was out of date by up to 1 week. All bread was stored in the refrigerator.

- At LaSalle and Aurora, open packaged food was not properly relabeled and dated for future consumption, as shown in figure 1.



Figure 1. Open packaged raw meat and food items leaking blood, not relabeled and dated, observed by OIG at the Essex facility on July 24, 2018 (left); food not properly labeled or stored at LaSalle facility on August 7, 2018 (center); and unlabeled food with no description or date at Aurora facility on November 6, 2018 (right). *Source*: OIG

NOVOA_0008744



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Inappropriate Segregation Practices at Three Facilities Infringe on Detainee Rights

Facility staff may separate detainees from the general population and place them in either disciplinary segregation or administrative segregation for a number of reasons, including violations of facility rules, risk of violence, or their own protection from other detainees. Our spot inspections of the Adelanto, Essex, and Aurora facilities identified serious issues with the administrative and disciplinary segregation of detainees. Two facilities prematurely placed detainees in disciplinary segregation. All three facilities placed detainees in disciplinary segregation in restraints when outside their cells. One facility strip-searched detainees entering segregation. Two facilities did not provide detainees in segregation the required recreation time or time outside cells. These practices violate ICE detention standards and infringe on detainee rights.

ICE standards[4] obligate facilities to place detainees in disciplinary segregation only after they have committed a prohibited act. At Adelanto and Essex, detainees are placed in disciplinary segregation before the disciplinary hearing panel finds the detainee guilty of the charged offense. In addition, facility forms incorrectly state these detainees are in administrative segregation when they are actually in disciplinary segregation.

Detainees in segregation at Adelanto, Essex, and Aurora were not treated with the care required under ICE detention standards. According to ICE standards,[5] placement in disciplinary segregation alone does not constitute a valid basis for using restraints. However, these three facilities require the use of restraints (handcuffs), as shown in figure 2, while detainees are outside their cells in disciplinary segregation. In addition, ICE standards[6] also restrict the use of strip searches on detainees unless there is reasonable suspicion to do so. However, at Essex, detainees were strip searched when they entered either

---

[4] ICE, *Performance-Based National Detention Standards, 2011,* Section 2.12.II, Special Management Units (Revised Dec. 2016). "A detainee shall be placed in disciplinary segregation only after a finding by a disciplinary hearing panel that the detainee is guilty of a prohibited act or rule violation...."

[5] ICE, *Performance-Based National Detention Standards, 2011,* Section 2.12.V.E, Special Management Units (Revised Dec. 2016). "Placement in an SMU does not constitute a valid basis for the use of restraints while in the SMU or during movement around the facility."

[6] ICE, *Performance-Based National Detention Standards, 2011,* Section 2.10.II, Searches of Detainees (Revised Dec. 2016). "A strip search shall be conducted only when properly authorized by a supervisor and only in the event that there is reasonable suspicion that contraband may be concealed on the person, or when an officer has reasonable suspicion that a good opportunity for concealment has occurred...."

NOVOA_0008745



# OFFICE OF INSPECTOR GENERAL
### Department of Homeland Security

disciplinary or administrative segregation, even though they were just being moved from another part of the facility, with no justification documented.



Figure 2. Red placard indicating disciplinary segregation detainees must be moved in restraints at all times, compared to administrative segregation placard indicating social time approved. Observed by OIG at the Aurora facility on November 6, 2018. *Source*: OIG

Although ICE standards[7] require facilities to give detainees recreation time while in segregation, we found that detainees held in segregation at two facilities are offered very limited time outside their cells. At Adelanto, our review of disciplinary segregation files identified that some detainees were not offered any recreation or showers while in segregation. In addition, detainees in administrative segregation were only offered recreation 3 days a week instead of each day. At Essex, detainees in disciplinary segregation were only given 1 hour per day outside their cell for showering, using the phone to speak with their attorney, and recreation time.

Adelanto management admitted to an issue with recreation time due to the availability of outdoor recreation space and the need to keep segregated detainees separate from the general population. Facility management indicated that they had updated the recreation schedule to offer more time to those in segregation; however, the segregation unit had not yet implemented the new

---

[7] ICE, *Performance-Based National Detention Standards, 2011,* Section 2.12.V.Z, Special Management Units (Revised Dec. 2016). "Detainees in the SMU for administrative reasons shall be offered at least one hour of recreation per day, outside their cells and scheduled at a reasonable time, at least seven days per week. Detainees in the SMU for disciplinary reasons shall be offered at least one hour of recreation per day, outside their cells and scheduled at a reasonable time, at least five days per week."

NOVOA_0008746



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

schedule. Essex staff reported limiting time for detainees in segregation due to limited staffing in the segregation unit. During our briefing with management, both facilities agreed to address the issue.

### Absence of Recreation outside Housing Units at Two Facilities May Reduce Detainee Mental Health and Welfare

ICE standards[8] require that all detainees be allowed outdoor recreation time outside their living area. However, the Essex and Aurora facilities do not provide outdoor space, and recreation for detainees was located within housing units. We observed enclosures inside detainee living areas with mesh cages at the top to allow in outside air, as shown in figure 3. We also identified, at the Aurora site, that female and male detainees had to share a recreation space, half-days each, so their access was limited. Further, detainees we interviewed at Aurora and Essex stated they wanted true outdoor recreation for the fresh air, sunshine, and exercise, and for playing soccer with their fellow detainees.

Studies have shown that there are both health and social benefits to outdoor recreation. Reports have found that proximity to green space has reduced stress, depressive symptoms, and interpersonal violence. Positive impacts to outdoor recreation also include improved attention, self-discipline, and social ties. Detainees are held in civil, not criminal, custody; yet, according to the National Institute for Jail Operations,[9] the loss or reduction of recreation-related amenities (indoor recreation; no fresh air and direct sunlight) may result in increased idle time and a significantly lower quality of life.

---

[8] ICE, *Performance-Based National Detention Standards, 2011,* Section 5.4.II, Recreation (Revised Dec. 2016). The pertinent part of this standard requires that "detainees shall have access to exercise opportunities and equipment at a reasonable time of day, including at least one hour daily of physical exercise outside the living area, and outdoors when practicable. Facilities lacking formal outdoor recreation areas are encouraged to explore other, secure outdoor areas on facility grounds for recreational use. Daily indoor recreation shall also be available."
[9] National Institute for Jail Operations, *Prisoner Recreation: Right or Privilege,* 2017, https://jailtraining.org/prisoner-recreation-right-or-privilege/

NOVOA_0008747



# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security




Figure 3. General population outdoor recreation yard shared by two 80-person dorm modules with partially covered roof. Observed by OIG at the Aurora facility on November 6, 2018 (left). Also, as observed by OIG at the Essex facility on July 24, 2018, mesh cages were added to glass enclosures inside housing areas to provide "outdoor" recreation for detainees (right). *Source*: OIG

## Poor Conditions at Two Facilities Present Health Risks

An expected outcome of ICE standards is that "facility cleanliness and sanitation shall be maintained at the highest level."[10] However, at the Adelanto and Essex facilities, we observed detainee bathrooms that were in poor condition, including mold and peeling paint on walls, floors, and showers, and unusable toilets, as shown in figure 4. At the Essex facility, mold permeated all walls in the bathroom area, including ceilings, vents, mirrors, and shower stalls. These environmental conditions present health risks as mold and mildew growth, for example, can lead to serious health issues for detainees, including allergic reactions and persistent illnesses.

---

[10] ICE, *Performance-Based National Detention Standards, 2011,* Section 1.2.I, Environmental Health and Safety (Revised Dec. 2016). "This detention standard protects detainees, staff, volunteers and contractors from injury and illness by maintaining high facility standards of cleanliness and sanitation, safe work practices and control of hazardous substances and equipment."

NOVOA_0008748



# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

  

Figure 4. Shower stall with mold, mildew, and peeling paint (left). Outdoor recreation area with stuffed and overflowing toilet (center). Observed by OIG at the Adelanto facility on May 1, 2018. Detainee bathroom with mold and non-working toilet (right). Observed by OIG at the Essex facility on July 24, 2018. *Source*: OIG

## Improper Provision of Clothing and Toiletries at One Facility Hinders Detainee Abilities to Maintain Acceptable Personal Hygiene Practices

Although facilities are required[11] to provide detainees with size appropriate, presentable clothing, we found the Essex facility was issuing detainees clothing in size 3x and 4x, shown in figure 5. Inspection of the warehouse revealed that the facility only had size 3x and 4x with no other sizes available. The facility was also completely out of stock on boxer shorts and those previously provided to detainees were in size 3x and 4x, which detainees could not even keep on. Detainees reported and facility staff confirmed that improperly sized uniforms are never replaced, as detainees are required to keep uniforms provided during intake and wash them during their stay at the facility.

The facility holds uniforms in their intake unit, where detainees are tasked with packing bags for new detainee arrivals that include clothing items. However, items are selected based on what is available, not on the actual size of the detainee. This process caused detainees to receive incorrect sized uniforms, and appropriate sized uniforms were not being restocked. The warehouse manager was unaware the facility was out of smaller sized uniforms

---

[11] ICE, *Performance-Based National Detention Standards, 2011,* Section 4.5.V.B, Personal Hygiene (Revised Dec. 2016). The pertinent part of this standard requires that at no cost to the detainee, all new detainees shall be issued clean, laundered, indoor/outdoor temperature-appropriate, size appropriate, presentable clothing during intake.

NOVOA_0008749



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

until we brought it to his attention. The facility ordered additional uniforms during our visit to replenish smaller sizes that were out of stock.

 

Figure 5. Improperly sized uniform pants and boxer shorts issued to detainees. Observed by OIG at the Essex facility on July 24, 2018. *Source*: OIG

Facilities are required to provide toiletry items,[12] including shampoo, toothbrushes, toothpaste, lotion, and soap. When they enter the facility, detainees at Essex receive a bag with one bar of soap, one stick of deodorant, one toothbrush, a small tube of toothpaste, and a comb, shown in figure 6. Detainees reported never being given lotion or shampoo and never receiving any toiletries after intake. Our review of the facility toiletry stock revealed that the facility had no lotion on hand and the housing units did not have any toiletry supplies to provide to detainees. Facility staff told us the detainees just need to purchase hygiene items through the commissary, which is in direct violation of the ICE standards.



Figure 6. Toiletry bag provided at intake and never replenished. Observed by OIG at the Essex facility on July 24, 2018. *Source*: OIG

---

[12] ICE, *Performance-Based National Detention Standards, 2011,* Section 4.5.V.D, Personal Hygiene (Revised Dec. 2016). The pertinent part of this standard requires that staff directly supervise the issuance of personal hygiene items and replenish supplies as needed.

NOVOA_0008750



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**Lack of In-Person Visitation at One Facility May Diminish Detainee Morale and Social Ties**

In the 2011 PBNDS, ICE outlines standards to ensure "that detainees shall be able to maintain morale and ties through visitation with their families, the community, legal representatives and consular officials, within the constraints of the safety, security and good order of the facility."[13] As part of this standard, ICE encourages facilities to provide opportunities for both contact and non-contact visitation with approved visitors. However, the Aurora facility allowed detainees only non-contact visits. Detainees were not allowed in-person visitation, even though the facility has rooms that can accommodate this for detainees, shown in figure 7. Further, detainees we interviewed at Aurora emphasized that contact visits, especially to see their children and other family members, should be allowed.

Facility management indicated they had security concerns about the passing of weapons, drugs, or other contraband between visitors and detainees. Yet, facility management acknowledged the finding of our spot inspection that contact visits should be considered and implemented in coordination with ICE.



Figure 7. Private visitation meeting rooms and open area room for contact visits exist though the facility does not use them. Observed by OIG at the Aurora facility on November 6, 2018. *Source*: OIG

---

[13] ICE, *Performance-Based National Detention Standards, 2011,* Section 5.7.I, Visitation (Revised Dec. 2016)

NOVOA_0008751



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Conclusion

Treatment and care of detainees at facilities can be challenging. Nevertheless, complying with the PBNDS and establishing an environment that protects the rights, health, and safety of detainees are crucial to detention. ICE could mitigate and resolve many of these issues through increased engagement and interaction with the facilities and their operations.

# Recommendation

We recommend the Acting Director of U.S. Immigration and Customs Enforcement ensure that Enforcement and Removal Operations field offices that oversee the detention facilities covered in this report address the additional issues outlined in this report and ensure facility compliance with ICE's *2011 Performance-Based National Detention Standards*.

## Management Comments and OIG Analysis

We obtained management comments to the draft report from ICE. We included a copy of those comments, in their entirety, in appendix B. We also made other revisions, where appropriate, to address separate technical comments ICE provided. A summary of ICE's response and our analysis follows.

**ICE Response:** Concur. ICE Enforcement and Removal Operations has reviewed each of the issues outlined in this report, and field offices have taken corrective action at each facility when warranted. ICE has identified ongoing actions to address the OIG deficiencies identified.

Specifically, according to ICE, improvements have been made to the Essex County Correctional Facility (Essex), including: replacing the Food Service Manager, training staff on proper food handling, removing and replacing menu items with input from detainees, and conducting random food quality testing. Essex also reported improvements in its segregation practices, including documenting why detainee strip searches were conducted and revising recreation schedules to add additional recreation time. ICE has reported improvements to facility conditions, including an extensive and systematic cleaning and renovation of the ICE detainee housing units and improving its provision of toiletries for detainees.

At the LaSalle ICE Processing Center, ICE reported taking corrective action to address food labeling.

NOVOA_0008752



# OFFICE OF INSPECTOR GENERAL
### Department of Homeland Security

At the Adelanto ICE Processing Center, ICE reported improvements to food service and facility conditions, including: implementing staff instructions on proper food handling and storage, with daily management checks to ensure compliance; increasing recreation time for detainees; cleaning showers daily, with weekly inspections; monitoring shower maintenance and sanitation by facility staff; and cleaning, power washing, and painting showers with a special acrylic marine paint.

At the Aurora ICE Processing Center, ICE reported the Food Service Manager had the packaged food properly relabeled and dated, and provided remedial counseling to staff on proper food storage.

ICE responded it is committed to correcting all issues identified by OIG. ICE will provide documentation to OIG as each facility is reviewed to ensure corrective actions have been completed. Estimated Completion Date: September 30, 2019.

**OIG Analysis:** We consider these actions responsive to the recommendation, which is resolved and open. We will close this recommendation when we receive documentation confirming that the follow-up inspections and other corrective actions have been completed.

NOVOA_0008753



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix A
## Objective, Scope, and Methodology

The Department of Homeland Security (DHS) Office of Inspector General (OIG) was established by the *Homeland Security Act of 2002* (Public Law 107–296) by amendment to the *Inspector General Act of 1978*.

DHS OIG initiated this inspection program, consistent with Congress' direction, and in response to concerns raised by immigrant rights groups and complaints to the DHS OIG Hotline about conditions for aliens in U.S. Customs and Border Protection and ICE custody. We generally limited our scope to the ICE PBNDS for health, safety, medical care, mental health care, grievances, classification and searches, use of segregation, use of force, language access, and staff training. We focused on elements of the PBNDS that could be observed and evaluated without specialized training in medical, mental health, education, or corrections. Our visits to these four facilities were unannounced so we could observe normal conditions and operations.

Prior to our inspections, we reviewed relevant background information, including:
- OIG Hotline complaints
- ICE *Performance-Based National Detention Standards*
- DHS Office for Civil Rights and Civil Liberties reports
- ICE Office of Detention Oversight reports
- Information from nongovernmental organizations

We visited four facilities:
- Adelanto ICE Processing Center, California (May 1–3, 2018);
- LaSalle ICE Processing Center, Louisiana (July 10–12, 2018);
- Essex County Correctional Facility, New Jersey (July 24–26, 2018); and
- Aurora ICE Processing Center, Colorado (November 6–8, 2018).

During the inspections we:
- inspected areas used by detainees, including intake processing areas; medical facilities; kitchens and dining facilities; residential areas, including sleeping, showering, and toilet facilities; legal services areas, including law libraries, immigration proceedings, and rights presentations; recreational facilities; and barber shops;
- reviewed facilities' compliance with key health, safety, and welfare requirements of the PBNDS for classification and searches, segregation, use of force and restraints, medical care, mental health care, staffing,

NOVOA_0008754



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

training, medical and nonmedical grievances, and access to translation and interpretation;

- interviewed ICE and detention facility staff members, including key ICE operational and detention facility oversight staff, detention facility wardens or someone in an equivalent position, and detention facility medical, classification, grievance, and compliance officers;
- interviewed detainees held at the detention facilities to evaluate compliance with PBNDS grievance procedures and grievance resolution; and
- reviewed documentary evidence, including electronic and paper medical files and grievance logs and files.

We conducted this review under the authority of the *Inspector General Act of 1978, as amended,* and according to the *Quality Standards for Inspection and Evaluation* issued by the Council of the Inspectors General on Integrity and Efficiency.

NOVOA_0008755



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix B
## ICE Comments to the Draft Report

*Office of the Chief Financial Officer*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536

**U.S. Immigration and Customs Enforcement**

**APR 2 9 2019**

MEMORANDUM FOR:  John V. Kelly
Acting Inspector General
Office of Inspector General

FROM:  Stephen A. Roncone
Chief Financial Officer and
Senior Component Accountable Official

SUBJECT:  Management Response to OIG Draft Report: "Concerns about ICE Detainee Treatment and Care at Four Detention Facilities" (Project No. 17-123-ISP-ICE)

Thank you for the opportunity to review and comment on this draft report. U.S. Immigration and Customs Enforcement (ICE) appreciates the work of the Office of Inspector General (OIG) in planning and conducting its review and issuing this report.

The safety, rights, and health of detainees in ICE's care are paramount. ICE is committed to continually enhancing civil detention operations to promote a safe and secure environment for both detainees and staff. ICE utilizes a layered approach to monitor conditions at facilities, with processes in place to implement corrective actions in instances of non-compliance with ICE detention standards. ICE's detention operations are overseen by field office personnel, through inspections by the Office of Professional Responsibility (OPR), and via other programmatic oversight and inspections by Enforcement and Removal Operations (ERO). ICE works daily with its ERO field offices, the OPR Office of Detention Oversight, and the DHS Office for Civil Rights and Civil Liberties to ensure that facilities comply with ICE detention standards or take the necessary corrective action to address any concerns. In a 2018 report, the OIG noted ICE's collaboration with stakeholders for more than a decade to improve the safety, security, and conditions of confinement for detainees. The OIG reported that ICE ERO "has a Detention Monitoring Program through which onsite [Detention Service Monitors]... continuously monitor compliance with ICE detention standards." The OIG found that the OPR Office of Detention Oversight "uses effective methods and processes to thoroughly inspect facilities and identify deficiencies."

ICE has made substantial progress to address the findings and recommendation in the OIG's draft report, "Concerns about ICE Detainee Treatment and Care at Four Detention Facilities." The OIG has recently issued individual reports on two of the four facilities covered in the current draft report. ICE agreed with the recommendations in those two

www.ice.gov

NOVOA_0008756



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

reports and has completed significant corrective actions to address identified issues.  ICE
also agrees with several of the findings the OIG had not previously reported on, and has
initiated corrective action on these as well.  However, for certain other findings, ICE is
providing additional context for clarification.

The draft report contained one recommendation with which ICE concurs.  Attached find
our detailed response to the recommendation.  Technical comments were previously
provided under separate cover.

Again, thank you for the opportunity to review and comment on this draft report.  Please
feel free to contact me if you have any questions.  We look forward to working with you
again in the future.

Attachment

NOVOA_0008757



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

### Attachment:  Management Response to Recommendation Contained in 17-123-ISP-ICE

**Recommendation 1:**  We recommend the Acting Director of U.S. Immigration and Customs Enforcement ensure that Enforcement and Removal Operations field offices that oversee the detention facilities covered in this report address the additional issues outlined in this report and ensure facility compliance with ICE's 2011 *Performance-Based National Detention Standards* (PBNDS).

**Response:**  Concur.  ICE Enforcement and Removal Operations (ERO) has reviewed each of the issues outlined in this report, and field offices have taken corrective action at each facility when warranted.  ICE is conducting inspections at each facility to validate that corrective actions have been completed and have achieved compliance with ICE's 2011 PBNDS.  ICE completed inspections at Adelanto and provided documentation to OIG in March 2019; completed its inspections at LaSalle and is working to submit documentation to OIG; scheduled an inspection for this summer at Essex; and will schedule an inspection at Aurora this summer.  ICE is committed to correcting all issues identified by OIG.  ICE will provide documentation to OIG as each facility is reviewed to ensure corrective actions have been completed.  Estimated Completion Date: September 30, 2019.

More specifically:

Essex County Correctional Facility (ECCF)

ERO Newark discussed the OIG's findings with the auditors at the conclusion of the inspection, and immediately initiated corrective actions.

ERO Newark has taken significant steps to address the food service issues.  On July 24, 2018, ERO Newark oversaw an immediate, thorough, on-the-spot response to remedy the food service findings, including replacing the contract Food Service Manager.  Since that date, the contract food services staff has received training on the safe and proper handling and storage of food, and the kitchen area remains well organized and in a high state of cleanliness and good operating order.  Food storage inventory is consistently dated, documented, and packaged in compliance with the ICE PBNDS 2011 Standard for Food Service.

The current ECCF Food Service Manager has removed certain items from the menu and enhanced the menu with items selected by ICE and other detainees through a food services survey.  Food quality testing is conducted randomly, and newly contracted food inspection services will also be conducted monthly for the entire food holding and preparation area.  In addition to weekly unannounced "spot inspections" implemented by

NOVOA_0008758



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

the ECCF management and Quality Assurance Coordinator, ERO Newark jail liaison officers and the ECCF ICE Detention Service Manager (DSM) conduct daily inspections of the food service area to ensure continuity of compliance measures. Daily visits of the food service area are entered in a logbook, and any problems or deficiencies are noted within weekly checklist reports.

Since the OIG inspection, ICE has taken immediate action when citing the vendor for a deficiency, in accordance with the contract terms and conditions, by issuing a Contract Discrepancy Report (CDR) and deducting 10 percent of its housing invoice.

Regarding segregation practices at ECCF, ICE provides the following:
- The ECCF policy for the use of restraints is compliant with the ICE 2011 PBNDS.
- Strip searches are conducted upon placement in disciplinary segregation only in accordance with the established ECCF policy for strip searches. A new policy has been implemented and it is now mandatory to document any strip search performed. When a detainee is involved in an incident (e.g., a fight involving a weapon, discovery of contraband) necessitating a strip search, ECCF documentation must state clearly why the strip search was implemented.
- ECCF management has committed to examining the staffing and scheduling requirements that will provide a second, additional 1.5-hour period (within the same day) of recreation, showering, and telephone time out of cell for ICE detainees in the SHU.

The recreation areas within the ECCF are compliant with the ICE 2011 PBNDS. However, ECCF management is investigating both on- and off-site options to improve the outdoor recreation opportunities available.

Regarding the issue on facility conditions, ECCF immediately undertook an extensive and systematic cleaning and renovation of the ICE detainee housing units. Detainees were removed completely from the unit, needed repairs were completed, and all ceilings, walls and floors were sanitized. All bathroom shower stalls were renovated by installing fiberglass wall inserts, which have enhanced ECCF's ability to keep stalls clean and sanitary. As of March 25, 2019, shower stall inserts have been fitted in 10 housing units, one is underway, and three units remain to be retrofitted. Additionally, ECCF management implemented a response protocol for water leaks to reflect initiation of repair times, re-check repairs effectuated, and remediate the area via painting and cleaning. ECCF management and the Quality Assurance Coordinator conduct weekly unannounced "spot inspections." In addition, ERO Newark jail liaison officers and the ECCF ICE DSM conduct daily inspections of the housing units. To address air quality and health concerns, ECCF management has contracted a certified environmental testing company to conduct air and surface testing. An initial test was completed from February 25-27, 2019, and a follow-up test was completed March 27-29, 2019. ECCF intends to

NOVOA_0008759



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

continue to conduct quarterly testing.  In addition, a review of ECCF medical unit records
shows no instance of airborne contagion.

Regarding the provision of clothing and toiletries, ECCF added lotion and shampoo to the
intake inventory for new detainees to ensure that every detainee entering ECCF is
provided shampoo and lotion in addition to the other personal hygiene items.  While the
ECCF detainee handbook does not currently provide information on how to request
additional personal hygiene items, an update of the Detainee Handbook is underway to
reflect that information.

LaSalle ICE Processing Center

ICE has taken immediate corrective action to address the OIG's findings regarding bread
and packaged food labeling.  These deficiencies were noted and resolved/corrected
during the July 2018 OIG inspection.  Additionally, the facility subsequently underwent a
2011 PBNDS Inspection over September 25-27, 2018, and a GEO Corporate quality
assurance/internal inspection March 12-15, 2019.  These deficiencies were not identified
as a repeat finding in either inspection.

Adelanto ICE Processing Center (AIPC)

ICE has taken significant steps to address issues identified on food service and facility
conditions at AIPC.

To address OIG's concerns with food service, on May 2-4, 2018, the food service
supervisors verbally instructed all food service staff that all pans placed in refrigerator or
freezer must have covers.  Additionally, the Food Service Manager and production
managers conduct daily checks to ensure all pans in the refrigerator or the freezer have a
cover.  AIPC staff have found no evidence of expired food having been served.

Regarding the use of restraints, AIPC uses the minimum amount of restraints necessary in
accordance with the PBNDS 2011.  Restraints are only applied for the least amount of
time necessary.  Detainees in a Special Management Unit (SMU) are handcuffed on a
case-by-case basis for the safety and security of the detainee, other detainees, and staff,
and before any escorted movement outside of the SMU.  Detainees are only placed in leg
irons (shackles) when they are being escorted outside of the secure perimeter.

ICE has corrected the issue regarding recreation time.  During the OIG inspection, the 7
day/week recreation schedule was immediately posted and enacted the revised recreation
schedule.  Since then, all detainees in disciplinary segregation status have received at
least one hour of outdoor recreation per day, seven days per week.  Detainees in
administrative segregation status receive a minimum of one hour of outdoor recreation
every day, seven days per week, and additional day room time seven days per week.

NOVOA_0008760



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

With respect to showers and recreation time for detainees in disciplinary segregation, showers are offered to all detainees in special management housing seven days per week. The SMU lieutenant was reminded to review activity sheets daily to verify documentation is complete. The activity sheets are also reviewed by the duty officer and administrative staff during daily and weekly rounds.

ICE has completed significant actions to address facility conditions at AIPC, which were covered in the OIG's previously issued report on the center. As part of AIPC's regular sanitation program, the showers are cleaned daily. In addition, showers are inspected on a weekly basis, and any maintenance issues are immediately identified and reported. In addition, AIPC has assigned a dedicated staff member to monitor shower maintenance and sanitation.

 

The photos above show AIPC detainee showers after being cleaned, power washed, and painted with a special acrylic marine paint.

The AIPC immediately addressed the function of the toilet in the recreation yard pictured in Figure 4 of the OIG report. To prevent a recurrence of this issue, the toilet is visually inspected by the recreation program's supervisor twice per shift during all outside recreation times, and verification of the inspections is documented in the recreation log book.

### Aurora ICE Processing Center

ICE has taken steps to address the OIG's findings. During the OIG inspection, the food services manager immediately had the packaged food item properly relabeled and dated, and provided remedial counseling to the Food Service Officer in question.

NOVOA_0008761



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Regarding segregation, security staff were provided refresher training during shift briefings on Restricted Housing Units (RHU). This training included instruction on when and when not to use restraints on detainees assigned to the RHU. The Administrative Captain will monitor compliance of officers in the RHU via the required daily security camera reviews.

Regarding recreation outside housing units, the Aurora IPC is fully compliant with all recreation requirements of the PBNDS 2011[1] and the American Correctional Association (ACA). The facility's physical design has an open-air recreation area between each pair of housing units, exceeding the square footage required by the ACA for the number of detainees using the space at a given time. The recreation areas have a chain link cover over the top of the recreation area (to prevent escapes) with a small roofed area to protect the outdoor exercise equipment from rain, snow, and any inclement weather. The design allows for fresh air, sunshine, and outdoor temperatures. The recreation areas are large enough to play basketball, handball, and limited soccer. The physical design of the open-air recreation areas allows each housing unit to have dedicated access to the recreation area for a specific period each day. Thus, no two housing units use the area concurrently. The recreation schedule posted in each housing unit shows open-air recreation area is available every day, and each pair of units alternates the hours of recreation daily, providing detainees with seven to eight hours of open-air recreation daily. The PBNDS 2011 only requires four hours of daily recreation for general population detainees. Aurora IPC far exceeds all recreation requirements of the PBNDS.

Regarding in-person visitation, although the Aurora IPC does not have a contact visitation program except for legal visits, the PBNDS does not require contact visitation for personal visitors. However, in light of this recommendation, ICE management reviews each request for contact visits on a case by case basis.

---

[1] PBNDS 5.4.V.D "Recreational activities shall be based on the facility's size and location. Recreational activities may include limited-contact sports, such as soccer, basketball, volleyball, and table games, and may extend to intramural competitions among units."

NOVOA_0008762



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**Appendix C**
**Office of Inspection Major Contributors to This Report**

John D. Shiffer, Chief Inspector
Stephanie Christian, Lead Inspector
Michael Rich, Lead Inspector
Kim Lake de Pulla, Lead Inspector
Ryan Nelson, Senior Inspector
Erika Algeo, Independent Referencer

NOVOA_0008763



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix D
## Report Distribution

### Department of Homeland Security

Secretary
Deputy Secretary
Chief of Staff
General Counsel
Executive Secretary
Director, GAO/OIG Liaison Office
Assistant Secretary for Office of Policy
Assistant Secretary for Office of Public Affairs
Assistant Secretary for Office of Legislative Affairs
ICE Liaison

### Office of Management and Budget

Chief, Homeland Security Branch
DHS OIG Budget Examiner

### Congress

Congressional Oversight and Appropriations Committees

NOVOA_0008764

## Additional Information and Copies

To view this and any of our other reports, please visit our website at: www.oig.dhs.gov.

For further information or questions, please contact Office of Inspector General Public Affairs at: DHS-OIG.OfficePublicAffairs@oig.dhs.gov.
Follow us on Twitter at: @dhsoig.



## OIG Hotline

To report fraud, waste, or abuse, visit our website at www.oig.dhs.gov and click on the red "Hotline" tab. If you cannot access our website, call our hotline at (800) 323-8603, fax our hotline at (202) 254-4297, or write to us at:

Department of Homeland Security
Office of Inspector General, Mail Stop 0305
Attention: Hotline
245 Murray Drive, SW
Washington, DC 20528-0305