Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Counsel for Plaintiffs
***Additional Counsel on Signature Page***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA**, **JAIME CAMPOS FUENTES**, **ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION**<br><br>**[Filed concurrently with Declaration of Lydia Wright and exhibits thereto]**<br><br>Date: November 18, 2019<br>Time: 9:00 a.m.<br>Courtroom: 1<br>Judge: The Honorable Jesus G. Bernal |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 1

II.   THE CLASSES SATISFY RULE 23. ............................................ 2

    A.    Commonality and Predominance. ......................................... 2

        1.    GEO notes nearly two dozen common issues of law and/or fact that will generate common answers for the Adelanto Forced Labor Class. ............................... 2

        2.    The record contains substantial evidence of a system-wide policy that subjects all members of the Nationwide HUSP Class to the same harm. ............................ 4

        3.    GEO fails to identify a single relevant issue which requires an individualized assessment. ....................................... 9

        4.    GEO advances upon inapposite legal authority. .................... 12

    B.    Adequacy. ......................................................................... 13

    C.    Typicality........................................................................... 16

    D.    Superiority. ....................................................................... 19

    E.    Numerosity......................................................................... 20

III.  SIMILAR CLASSES HAVE ALREADY BEEN CERTIFIED IN THE NINTH AND TENTH CIRCUITS. .................................... 21

IV.   CONCLUSION ........................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013)...................................................2, 15

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) .......................................17

*Badhdasarian v. Amazon.com, Inc.,*
258 F.R.D. 383 (C.D. Cal. 2009) ...................................2

*Brandon v. Nat'l R.R. Passenger Corp. Amtrak,*
2013 WL 800265 (C.D. Cal. Mar. 1, 2013).....................18

*Brown v. Abercrombie & Fitch Co.,*
2015 WL 9690357 (C.D. Cal. July 16, 2015)..................17

*CE Design Ltd. v. King Architectural Metals, Inc.,*
637 F.3d 721 (7th Cir. 2011) .......................................16

*Colapinto v. Esquire Deposition Servs., LLC,*
2011 WL 913251 (C.D. Cal. Mar. 8, 2011).....................13

*Dibb v. Allianceone Receivables Mgmt., Inc.,*
2015 WL 8970778 (W.D. Wash. Dec. 16, 2015).............18

*Dubin v. Miller,*
132 F.R.D. 269 (D. Colo. 1990)....................................16

*Evans v. IAC/Interactive Corp.,*
244 F.R.D. 568 (C.D. Cal. 2007) ..................................17

*Garcia v. Cty. of Riverside,*

2017 WL 3052981 (C.D. Cal. July 17, 2017)...................................................12, 13, 18

*Gomez v. Vernon,*

255 F.3d 1118 (9th Cir. 2001) .................................................................................11

*Guido v. L'Oreal, USA, Inc.,*

2012 WL 2458118 (C.D. Cal. June 25, 2012) .........................................................16

*Hadley v. Kellogg Sales Co.,*

324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..................................................................15

*Harris v. Vector Mktg. Corp.,*

753 F. Supp. 2d 996 (N.D. Cal. 2010) ...............................................................13, 14

*Headley v. Church of Scientology Int'l,*

687 F.3d 1173 (9th Cir. 2012) .............................................................................12, 13

*Hernandez v. Lynch,*

2016 WL 7116611 (C.D. Cal. Nov. 10, 2016), *aff'd sub nom. Hernandez v.*

*Sessions*, 872 F.3d 976 (9th Cir. 2017) ....................................................................5

*Hunter v. Am. Gen. Life & Acc. Ins. Co.,*

2004 WL 5231631 (D.S.C. Dec. 2, 2004) ...............................................................18

*In re Computer Memories Sec. Litig.,*

111 F.R.D. 675 (N.D. Cal. 1986)............................................................................14

*In re First Alliance Mortgage Co.,*

471 F.3d 977 (9th Cir. 2006) ....................................................................................1

*Lyon v. U.S. Immigration & Customs Enf't,*

308 F.R.D. 203 (N.D. Cal. 2015)...........................................................................4, 5

*Martinez v. Combs,*
  49 Cal. 4th 35 (2010) ................................................................. 10

*Menocal v. GEO Grp., Inc.,*
  320 F.R.D. 258 (D. Colo. 2017), *aff'd,* 882 F.3d 905 (10th Cir.
  2018), *cert. denied,* 139 S. Ct. 143 (2018)................................... 8, 10, 17, 18, 19, 20, 21

*Nat'l Fed'n of Blind v. Target Corp.,*
  582 F.Supp.2d 1185 (N.D. Cal. 2007).......................................... 19

*Newberry v. Cty. of San Bernardino,*
  2015 WL 9701153 (C.D. Cal. July 23, 2015).................................. 21

*Nghiem v. Dick's Sporting Goods, Inc.,*
  318 F.R.D. 375 (C.D. Cal. 2016) ................................................. 16

*Nuñag–Tanedo v. East Baton Rouge Parish School Board,*
  2011 WL 7095434, (C.D. Cal. Dec. 12, 2011) ............................... 10

*Nwauzor v. The GEO Group, Inc.,*
  No. 17-cv-5769 (W.D. Wash. Aug. 6, 2018); *petition for permission to
  appeal denied,* No. 18-80095 (9th Cir. Nov. 8, 2018) ........................... 18, 21

*Parsons v. Ryan,*
  754 F.3d 657 (9th Cir. 2014) ...................................................... 11

*Rai v. CVS Caremark Corp.,*
  2013 WL 10178675 (C.D. Cal. Oct. 11, 2013)................................. 20

*Schwartz v. Upper Deck Co.,*
  183 F.R.D. 672 (S.D. Cal. 1999) ................................................. 21

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ................................................................ 11, 13

*Tourgeman v. Collins Fin. Servs., Inc.*,

    2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) .............................................11

*United States v. Dann*,

    652 F.3d 1160 (9th Cir. 2011) ...................................................................10

*Wal–Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ........................................................................... 3, 4, 9

*Walters v. Reno*,

    145 F.3d 1032 (9th Cir. 1998) .....................................................................5

*Williams v. City of Philadelphia*,

    270 F.R.D. 208 (E.D. Pa. 2010) ..................................................................5

**Statutes**

Trafficking Victims Protection Act,

    18 U.S.C. § 1589(a)(1), (a)(2), (a)(3), (c)(2) ...............................................9

Trafficking Victims Protecton Act,

    18 U.S.C. § 1594.........................................................................................9

California Penal Code § 236.1(h)(3) .................................................................9

California Penal Code § 236.1(h)(4) ...............................................................10

California Unfair Competition Law,

    Cal. Bus. & Prof. Code § 1720................................................................ 13, 18

**Other Authorities**

U.S. Immigration and Customs Enforcement 2011 Performance-Based

    National Detention Standards ......................................................... 3, 4, 6, 7, 8, 11, 12

**Rules**

Federal Rule of Civil Procedure 23(a) .................................................................................. 2

Federal Rule of Civil Procedure 23(a)(1) ........................................................................... 21

Federal Rule of Civil Procedure 23(a)(2) ........................................................................ 2, 3

Federal Rule of Civil Procedure 23(a)(3) ......................................................................... 19

Federal Rule of Civil Procedure 23(a)(4) ......................................................................... 16

Federal Rule of Civil Procedure 23(b) ............................................................................... 2

Federal Rule of Civil Procedure 23(b)(2) ........................................................... 1, 2, 4, 5, 22

Federal Rule of Civil Procedure 23(b)(3) .................................................... 2, 3, 20, 21, 22

# I.   INTRODUCTION

In opposition to class certification, GEO presents a jumble of merits-based assertions, immaterial tangents, demonstrably incorrect representations stated as fact, and misstatements of the law. Untangling GEO's arguments proves particularly difficult because GEO makes no attempt to distinguish between the three proposed classes or discuss how the four uniform policies and practices at issue affect any specific class. Instead, GEO focuses almost singularly on the merits of Plaintiffs' claims related to the Deprivation Policy, which pertains only to the Adelanto Forced Labor Class and Subclasses. But no merits-based issues weigh against class certification, and GEO's claims to the contrary only underscore the common, predominant questions that make this case ripe for class adjudication.

GEO agrees with Plaintiffs on several key points. GEO does not dispute, for example, the proposed class definitions or class periods. GEO raises no challenge to certification of the Adelanto Wage Class and does not dispute the law applicable to any of Plaintiffs' claims. With respect to adequacy, GEO concedes that Plaintiffs and their counsel have no conflicts of interest with other class members and will prosecute this action vigorously on behalf of the classes. And GEO does not dispute that the requirements of Rule 23(b)(2) are satisfied with respect to the Adelanto Forced Labor Class and Subclasses and the Nationwide HUSP Class.

This case stands well-suited for class treatment under governing Ninth Circuit authority because the claims involve a common course of conduct by GEO directed at immigrants detained at Adelanto and elsewhere. *See, e.g., In re First Alliance Mortgage Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (calling for class treatment of claims stemming from a "common course of conduct"). The alternative to a class action would be an unwieldy and inefficient process, wherein courts and juries in this District and nationwide would be required to decide the same legal and factual questions time and again in potentially thousands of separate proceedings. The Court should certify this case as a class action because Plaintiffs have met their burden under Rule 23.

## II.     THE CLASSES SATISFY RULE 23.

For a class to be certified, Plaintiffs must satisfy the requirements of Rule 23(a) and at least one requirement of Rule 23(b). "Any doubts a court has about class certification should be resolved in favor of certification." *Badhdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383, 386 (C.D. Cal. 2009) (citation omitted). Class certification is not the time for a mini-trial on the merits. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent— but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). Plaintiffs have met their burden under Rule 23.

### A.     Commonality and Predominance.

GEO raises no commonality or predominance arguments with respect to the Adelanto Wage Class and engages in no predominance analysis for the Adelanto Forced Labor Class.[1] Plaintiffs have already discussed Rule 23(a)(2) and Rule 23(b)(3) in depth and will not burden the Court by repeating that discussion here. *See* ECF 192-1 (Plaintiffs' Memorandum in Support of Class Certification, hereinafter "Plaintiffs' Memo") at 29-33 (commonality); 37-40 (predominance). GEO's commonality arguments focus on the claims of the Adelanto Forced Labor Class and Subclasses and the Nationwide HUSP Class, which Plaintiffs address below.

### 1.     GEO notes nearly two dozen common issues of law and/or fact that will generate common answers for the Adelanto Forced Labor Class.

According to GEO, "Plaintiffs advance three common contentions: (1) they were deprived of basic necessities—requiring them to work in the [Work Program] for $1/day, (2) they risked serious harm if they did not work, and (3) the 'uncompensated

---

[1] Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). The Adelanto Forced Labor Class and Nationwide HUSP Class satisfy Rule 23(b)(2) for the reasons discussed in Plaintiffs' Memo, ECF 192-1 at 36.

work is neither required nor permitted by [ICE].'" ECF 205 (GEO's Opposition to Plaintiffs' Motion for Class Certification (hereinafter "Opp.")) at 19. Plaintiffs agree: these are common questions of fact or law which are capable of resolution on a class-wide basis. Each of these issues alone satisfies the Court's inquiry under Rule 23(a)(2) and (b)(3) with respect to the Adelanto Forced Labor Class. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[e]ven a single [common] question" will suffice).

GEO goes further to identify numerous additional common issues of fact and/or law, each of which is ripe for class-wide adjudication:

- Whether detained immigrants at Adelanto "are coerced into participating in the [Work Program] to purchase the minimum essentials needed to maintain basic standards of cleanliness and nutrition," Opp. at 19;

- Whether "individuals at Adelanto are provided basic necessities, as prescribed by the PBNDS, at no charge," Opp. at 20;

- Whether GEO has "a general policy of withholding necessities," Opp. at 20;

- Whether the range of food items sold at the Adelanto commissary "constitute[] basic necessities," Opp. at 20;

- Whether GEO maintains "a widespread policy that detainees participated [sic] in the [Work Program] (not the necessary chores in their common living area) under the threat of serious harm," Opp. at 21;

- Whether "GEO meets [the class members'] basic needs by providing—among other items—three meals a day, shelter, clothing, outdoor recreation activities, television, and Xboxes," Opp. at 21;

- Whether "[the class members'] work is . . . not voluntary," Opp. at 21;

- Whether "[the class members'] work is performed under constant threat of solitary confinement or deprivation of life necessities," Opp. at 21-22;

- Whether it is "a policy of GEO to put somebody in solitary confinement, a detainee, for not cleaning their area," Opp. at 22;

- Whether "[c]onsistent with GEO's informal policy, no [class member] was ever deprived of meals, water, or other necessities," Opp. at 22;

- Whether "[the class members] were . . . placed in solitary confinement for failing to work," Opp. at 22;

- Whether "not participating in the [Work Program] would result in solitary confinement or an adverse impact on [the class members'] legal case," Opp. at 22;

- Whether there is a "common and pervasive policy under which [the class members] were subject to 'serious harm,'" Opp. at 23;

- Whether GEO has taken "steps to preserve order in compliance with the PBNDS," Opp. at 23;

- Whether those alleged "steps . . . to preserve order" are, as GEO claims, exempt from the federal and/or California forced labor statutes, Opp. at 23;

- Whether "GEO's HUSPs are in compliance with all ICE contracts, PBNDS and ACA standards, the ICE Handbook and relevant laws," Opp. at 23; and

- Whether "ICE itself reviewed and signs off on the HUSP," Opp. at 23.

These issues, along with those identified in Plaintiffs' Memo, ECF 192-1 at 29-33, will generate "common answers apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc.*, 564 U.S. at 350 (citation omitted).

## 2. The record contains substantial evidence of a system-wide policy that subjects all members of the Nationwide HUSP Class to the same harm.

Citing neither facts in the record nor legal authority, GEO contends that purported variations between its civil immigration detention facilities might defeat commonality for the Nationwide HUSP Class. Opp. at 23-24.  Not so.

"[W]hen the practices or conditions of several different facilities are challenged, certain factual variations among facilities will not defeat commonality as long as class members were subject to roughly the same harm." *Lyon v. U.S. Immigration & Customs Enf't*, 308 F.R.D. 203, 211 (N.D. Cal. 2015) (certifying a Rule 23(b)(2) class of immigrants

detained at three facilities who were denied effective access to telephones). *See also Hernandez v. Lynch*, 2016 WL 7116611, at *17 (C.D. Cal. Nov. 10, 2016) (Bernal, J.), *aff'd sub nom. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) (certifying a Rule 23(b)(2) class of individuals subjected to the same immigration bond determination policies and practices in the Central District of California); *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (affirming certification of a Rule 23(b)(2) class where plaintiffs alleged that forms used by the Immigration and Naturalization Service on a nationwide basis did not adequately advise them of their rights); *Williams v. City of Philadelphia*, 270 F.R.D. 208 (E.D. Pa. 2010) (certifying a Rule 23(b)(2) class of inmates who demonstrated a system-wide denial of constitutional rights that spanned all facilities in the Philadelphia Prison System).

Like in *Lyon*, *Hernandez*, *Walters*, and *Williams*, Plaintiffs have alleged (and provided substantial evidence of) a system-wide corporate policy or practice of coercing detained immigrants to provide uncompensated labor under threat of serious harm or abuse of legal process. *See* ECF 192-1 (Plaintiffs' Memo) at 18-23.

| Fact | Evidence |
|---|---|
| GEO has a specific policy— the HUSPs—in force at each of the twelve immigration detention centers at issue for the Nationwide HUSP Class.[2] | • ECF 193-34 (GEO's Deemed Admissions) at Nos. 11-22 (admitting that GEO operates a HUSP at each facility).<br>• ECF 174 (GEO's Opposition to Motion for Leave to Amend) at 7; 8; 12; 13 (conceding the existence of a nationwide corporate HUSP). |

---

[2] Those twelve facilities are: the Adelanto Facility; the Aurora ICE Processing Center in Aurora, Colorado; the Basile Detention Center in Basile, Louisiana; the Broward Transitional Center in Pompano Beach, Florida; the Montgomery Processing Center in Conroe, Texas; the Folkston ICE Processing Center in Folkston, Georgia; the LaSalle ICE Processing Center in Jena, Louisiana; the Karnes County Adult Detention Center (formerly the Karnes County Residential Center) in Karnes City, Texas; the Mesa Verde ICE Processing Center in Bakersfield, California; the South Texas Detention Complex in Pearsall, Texas; the Pine Prairie ICE Processing Center in Pine Prairie, Louisiana; and the Tacoma Northwest Detention Center in Tacoma, Washington. *See* ECF 193-34 at Nos. 11-22.

| Fact | Evidence |
|---|---|
| | • Wright Decl. at **Exhibit 1** (Amber Martin Dep.) at 130:11-138:8; 148:7-23; 155:17-161:16 (discussing the HUSP at GEO's Aurora ICE Processing Center).<br>• Wright Decl. at **Exhibit 2** (Saavedra-Roman Testimony to House Judiciary Committee) at 2 (discussing the HUSP at GEO's Montgomery Processing Center in Conroe, Texas).<br>• ECF 193-18; 193-23; 193-24 (the Adelanto HUSP). |
| GEO is required to comply with some version of ICE's 2011 PBNDS at each facility. | • ECF 200 (GEO's Answer to Third Amended Complaint) at ¶ 67 (admitting that "[a]t each facility, GEO is contractually required to comply with some version of ICE's 2011 PBNDS"). |
| The HUSPs are GEO policies. | • Wright Decl. at **Exhibit 3** (Declaration of Shannon Ely, ICE) at ¶ 21 ("The Housing Unit Sanitation Policy (HUSP) is a GEO policy, created by GEO. The GEO HUSP is not created by ICE nor is it a requirement of the contract. ICE did not draft or negotiate GEO's HUSP."). |
| The HUSPs are distinct from the Work Program. | • ECF 200 (GEO's Answer to Third Amended Complaint) at ¶ 75 (admitting that "[d]etained immigrants do not perform labor under the HUSPs as part of the ICE-sanctioned Work Program"). |
| The HUSPs require detained immigrants to perform uncompensated cleaning and maintenance work in communal areas of their housing units. | • ECF 200 (GEO's Answer to Third Amended Complaint) at ¶ 76 (admitting that "[d]etained immigrants are not paid to perform labor under the HUSPs").<br>• ECF 193-15 (GEO's Work Program Policy) at § II.C ("Detainees are not required to work except to do personal housekeeping and to clean their housing area.").<br>• ECF 193-4 (Janecka Dep.) at 52:21-53:3 (defining "housing area" to include "the |

| Fact | Evidence |
|---|---|
| | common area, the dayrooms where they sit, where they eat, where they socialize"). |
| | • Wright Decl. at **Exhibit 4** (Dawn Ceja Dep.) at 132:18-136:4 (testifying as GEO's corporate representative that the HUSP requires detained immigrants to perform uncompensated cleaning and maintenance work in communal areas of their housing units). |
| | • Wright Decl. at Ex. 1 (Amber Martin Dep.) at 157:7-159:13 (testifying that the HUSP requires detained immigrants to engage in a "total sanitation mission" of scheduled cleaning in their housing units). |
| Detained immigrants who do not comply with the HUSPs are threatened with serious harm and/or abuse of legal process. | • ECF 193-34 (GEO's Deemed Admissions) at No. 24 (admitting that at each facility, "[r]efusal to clean assigned living area" is classified as a 300-level "High Moderate" offense punishable by up to 72 hours in disciplinary restriction). |
| | • Wright Decl. at **Exhibit 2** (Saavedra-Roman Testimony) at 4 ("If you refused to clean, it would be written on your record. We were made to believe that refusing any orders would lead to write ups which would then directly affect our immigration cases."). |
| | • ECF 206-1 (Campos Fuentes Dep.) at 75:12-24 (". . . GEO or the officers would lock us up in our rooms or cells until somebody went to do it."). |
| | • ECF 206-2 (Novoa Dep.) at 44:15-18 ("I wouldn't get some things that I needed. My bunk was scattered. They would go through my bunk."). |
| | • ECF 206-4 (Karim Dep.) at 88:23-90:3 (". . . if I don't do those things, it will affect my case; I was not going to get bond; I was not going to get released."). |

| Fact | Evidence |
|---|---|
| GEO believes its HUSPs are within the scope of PBNDS § 5.8.V.C. | • ECF 193-34 (GEO's Deemed Admissions) at No. 23 ("GEO interprets ICE's PBNDS 5.8.V.C to permit GEO to require detainees to perform tasks for no compensation that are in addition to and separate from the four enumerated personal housekeeping tasks identified in PBNDS 5.8.V.C"). <br>• ECF 193-26 (Venturella Letter to ICE) at ICE-FOIA2018_0000707 ("To the extent that plaintiffs allege that disciplinary segregation is an unlawful threat for refusal to work, this sanction comes directly from ICE policies . . ."). <br>• ECF 200 (GEO's Answer to Third Amended Complaint) at ¶ 77 (denying that "[t]he work required by the HUSPs is outside the scope of the four specified personal housekeeping tasks articulated by ICE in PBNDS § 5.8.V.C"). <br>• Wright Decl. at **Exhibit 4** (Dawn Ceja Dep.) at 130:4-136:17; 137:18-138:12; 140:5-10; 141:10-14 (testifying in *Menocal* as GEO's corporate representative that GEO believes the HUSP is within the scope of PBNDS § 5.8.V.C). |
| GEO's HUSPs violate PBNDS § 5.8.V.C. | • ECF 193-14 (PBNDS § 5.8) at 7 ("Work assignments are voluntary; however, all detainees are responsible for personal housekeeping. Detainees are required to maintain <u>their immediate living areas</u> in a neat and orderly manner by: (1) making their bunk beds daily; (2) stacking loose papers; (3) keeping the floor free of debris and dividers free of clutter; and (4) refraining from hanging/draping clothing, pictures, keepsakes, or other objects from beds, overhead lighting fixtures or other furniture.") (emphasis added). <br>• Wright Decl. at **Exhibit 5** (OIG-17-43-MA, "Management Alert on Issues Requiring Immediate Action at the Theo Lacy Facility in Orange, California") at 6 ("<u>[R]equiring detainees to clean common areas used by all detainees is in violation of ICE standards, as detainees are only</u> |

| Fact | Evidence |
|------|----------|
|      | required to clean their immediate living area.") (emphasis added). |

All proposed Nationwide HUSP class members have been subjected to the same forced labor practices and policies by GEO. If the HUSPs are found illegal, each class member would be entitled to the same relief from GEO's practice of forcing or coercing detained immigrants to work for free under threat of serious harm or abuse of legal process. The Nationwide HUSP Class members' claims that the HUSPs are illegal can and should be disposed of "in one stroke." *Wal–Mart Stores, Inc.*, 564 U.S. at 350 (citation omitted).

### 3.   GEO fails to identify a single relevant issue which requires an individualized assessment.

In disputing commonality, GEO demonstrates a fundamental misunderstanding of both the applicable law and the underlying facts. For instance, GEO contends that "the inquiry about what constitutes 'serious harm'" is inherently individualized because "Plaintiffs were never subjected to solitary confinement." Opp. at 22.  But GEO ignores both the nature of Plaintiffs' claims and the plain text of the forced labor statutes.

First, GEO can be held civilly liable for **attempting** to violate the forced labor statute under 18 U.S.C. § 1594. *See* ECF 184 (Plaintiffs' Third Amended Complaint) at ¶¶ 244-252 (asserting a claim for attempt under 18 U.S.C. § 1594). It is irrelevant whether some class members labored for reasons other than GEO's improper means of coercion because GEO still attempted to obtain their labor via those means. As a result, class members are entitled to the same civil remedy, rendering unnecessary any individual causation inquiry.

Second, the California and federal forced labor statutes turn on the defendant's **threats** and whether those threats are intended to cause victims to believe they will be subject to sanctions. 18 U.S.C. § 1589(a)(1) ("threats of . . . physical restraint"), § 1589(a)(2) ("threatened abuse . . . of legal process"), § 1589(a)(3) ("plan . . . intended

to cause the person to believe"); Cal. Penal Code § 236.1(h)(3) ("threats of unlawful injury"). Liability under the forced labor statutes does not depend on whether GEO actually follows through on those threats.[3] *See Menocal v. GEO Grp., Inc.*, 320 F.R.D. 258, 265 (D. Colo. 2017), *aff'd*, 882 F.3d 905 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 143 (2018) ("I find it irrelevant that no Representative was actually disciplined with segregation for violating the Policy, since the forced labor statute includes threats, schemes, plans, and patterns as improper means of coercion.").

GEO's argument that "whether a particular detainee felt compelled to participate in the [Work Program] is highly individualized," Opp. at 20; 22, fails for a similar reason. Where, as here, liability depends on a threat of harm, the forced labor statutes call for the application of an objective standard to determine whether a "reasonable person"—in this case, a detained immigrant involuntarily confined in a civil immigration detention facility—would perform the work mandated by GEO. Cal. Penal Code § 236.1(h)(4); 18 U.S.C. § 1589(c)(2). *See also United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) (applying an objective standard to claims under the federal TVPA); *Nuñag–Tanedo v. East Baton Rouge Parish School Board*, 2011 WL 7095434, (C.D. Cal. Dec. 12, 2011) (same).

Indeed, an individual's motivation behind working is not a factor under the law applicable to <u>any</u> of the proposed classes. *See, e.g.*, *Martinez v. Combs*, 49 Cal. 4th 35 (2010). With respect to the Adelanto Wage Class, the employer's motivation for offering work

---

[3] Beyond threats, the record is clear that Plaintiffs actually faced serious harm for refusing to work. *See, e.g.*, ECF 206-1 (Campos Fuentes Dep.) at 75:16-24 ("If we did not do what the officers told us to do—cleaning—we were deprived of our rights. The necessary rights. The shower or heating up food in the microwave. Because since there wasn't the right of pay, GEO or the officers would lock us up in our rooms or cells until somebody went to do it. If there wasn't that someone, they would choose from the cleaning group, and I was included in that group."); ECF 206-2 (Novoa Dep.) at 96:24-97:6 ("And at one point I encouraged detainees to not work for a dollar verbally, and I was threatened that I would be put in segregation if I didn't shut up, and I was harassed. So at that point it's like I don't want to lose those four quarters I get a day. So I just left it at that."); ECF 206-4 (Karim Dep.) at 58:2-63:12 (describing being held in an intake room "from lunchtime until night" by a GEO officer as punishment for refusing to clean).

and the employee's subjective reason for working—whether to stave off boredom or to buy more and better food, hygiene items and to pay for phone calls with attorneys and family, as was the case for each Plaintiff—make no difference in assessing whether an employee should be paid for the work actually performed.   Similarly, it makes no difference whether a detained immigrant was hired to clean the officer's break room or serve trays in the kitchen, because GEO's authority to make job assignments, control job performance, and set the rate of pay remain the same regardless of the individual job assignments. *See* ECF 192-1 (Plaintiffs' Memo) at 14-18 (discussing the Work Program Policy and Uncompensated Work Program Policy). The record demonstrates that GEO's control and the detained immigrants' dependence remain constant across the different job and housing unit assignments at Adelanto.

Next, GEO's contention that Plaintiffs offer no proof of uniform policies is easily belied by the evidence adduced to date: the detainee handbook, the PBNDS, GEO's contract with ICE, GEO's own documents, the declarations and testimony of Plaintiffs and witnesses, and the declarations and testimony of GEO's own witnesses, which all describe uniform policies and a common scheme for managing and compelling detainee labor. *See* ECF 192-1 (Plaintiffs' Memo) at 13-26 (describing GEO's uniform policies and practices).

GEO denies the existence of the Deprivation Policy and Uncompensated Work Program Policy because they "are not enumerated" in the handbook or housekeeping plan. Opp. at 5-6. This position is simply without basis in the law. *See Parsons v. Ryan*, 754 F.3d 657, 669 (9th Cir. 2014) (for class certification purposes, a uniform policy or practice does not have to be in writing to be actionable); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (same). Moreover, merely denying the existence of a policy or practice in the face of overwhelming evidence to the contrary is not sufficient to defeat class certification. *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) ("[A] weighing of competing evidence is inappropriate at this stage of the litigation."); *Tourgeman v. Collins Fin. Servs., Inc.*, 2011 WL 5025152, at *3 (S.D. Cal. Oct. 21, 2011) (reasoning "the

court may not go so far as to judge the validity of the moving party's claims" and noting that the court has "broad discretion" to certify the class) (citation omitted).

The logic and legal import of GEO's remaining commonality and predominance arguments are unclear. With no citation to legal authority or further explanation, GEO contends that, "insofar as Plaintiffs claim they are due back-wages, the number of meals each detainee received will require an individual deposition of each, as it is clear from the deposition testimony of Plaintiffs that many detainees were consistently receiving additional meals." Opp. at 21. Similarly, GEO fails to explain or provide legal authority for its bizarre contention that, "in order to identify whether any individual was deprived of a 'necessity,' GEO would need to depose each detainee class member regarding his or her commissary accounts, account summary, and work history." Opp. at 21. These arguments are not relevant to any issue presently before the Court.

### 4.    <u>GEO advances upon inapposite legal authority.</u>

Commonality and predominance are satisfied here, and the three cases relied upon by GEO do not change this result. In *Garcia v. Cty. of Riverside*, 2017 WL 3052981 (C.D. Cal. July 17, 2017) (Bernal, J.), this Court declined to certify a Rule 23(b)(3) class claiming violations of the Fourteenth Amendment for wrongful incarceration because, under the governing law concerning mistaken identities, "whether there is a violation will depend on the exact facts of the detention, including its length, the reasonableness of the mistake, and so on." *Id.* at *8. Such individualized inquiries do not exist in this case, which turns on GEO's uniform policies and practices that apply to all detained immigrants at Adelanto and, for the Nationwide HUSP Class, to all detained immigrants at eleven other GEO facilities.

GEO cites *Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir. 2012) for the argument that "allegations that GEO has taken steps to preserve order in compliance with the PBNDS . . . do not give rise to TVPA liability." Opp. at 23. Even under a generous reading, *Headley* does not stand for this proposition. In that case, two former ministers claimed the Church of Scientology forced them to provide labor in violation

of the federal TVPA. The court granted summary judgment in favor of the Church because the ministers "[were] able to leave the Church throughout that time and thus could have avoided providing labor" and "claims of psychologically coerced labor were barred by the ministerial exception." *Id.* at 1179-80. Unlike the ministers in *Headley*, Plaintiffs and the class members—immigrants held involuntarily in civil detention—could not simply walk away from Adelanto to avoid providing their free or nearly free labor to GEO. Likewise, no exception, ministerial or otherwise, shields GEO from liability under the forced labor statutes. Finally, *Headley* was not a class action and therefore does not speak to the issues presently before the Court.

Finally, GEO relies on *Colapinto v. Esquire Deposition Servs., LLC*, 2011 WL 913251 (C.D. Cal. Mar. 8, 2011) (unpublished) for its sweeping—and incorrect—conclusion that class actions under the California Unfair Competition Law "usually cannot be certified." Opp. at 23. *Colapinto* neither stands for that principle nor provides any support for GEO's position. The court there declined to find commonality because the defendant negotiated different fee arrangements with various clients and did not have a uniform agreement. *Id.* at *5. Here, in contrast, each member of each proposed class was subject to the same uniform policy imposed upon them by GEO. *Colapinto*, like *Garcia* and *Headley*, does not advance GEO's commonality or (to the extent they exist) predominance arguments.

**B.    Adequacy.**

GEO concedes that Plaintiffs and their counsel have no conflicts of interest with other class members and will prosecute this action vigorously on behalf of the classes. This alone is sufficient for a finding of adequacy. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (To determine whether the representation meets the adequacy standard, courts "ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"); *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (explaining that

competency of counsel and absence of antagonistic interests are usually considered determinative); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) (the existence of a conflict of interest is the most important consideration for adequacy).

GEO's only adequacy argument is an unfounded assertion that each Plaintiff "committed verifiable perjury" by testifying that he relied on commissary purchases for daily necessities. Opp. at 24-25. In the Ninth Circuit, "[c]haracter attacks . . . not combined with a showing of a conflict of interest have generally not been sympathetically received." *In re Computer Memories Sec. Litig.*, 111 F.R.D. at 682. "Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Harris*, 753 F. Supp. 2d at 1015.

GEO's manufactured credibility attack is undermined by its own records, which demonstrate that Plaintiffs regularly bought basic necessities, including food and hygiene products, from the Adelanto commissary. *See* ECF 206-9 at 2-20 (Mr. Novoa purchased ramen, canned sardines, canned mackerel, canned clams, crackers, summer sausage, peanut butter, rice noodles, refried beans, tortillas, instant rice, canned stew, canned chili, oatmeal, flip flop shoes, multivitamins, cough drops, deodorant, baby powder, dental floss loops, soap, nail clippers, ear plugs, fluoride, shampoo, and sunscreen); ECF 207-1 at 2-5 (Mr. Campos Fuentes purchased ramen, instant rice, and refried beans);[4] ECF 207-2 at 2-4 (Mr. Mancia purchased ramen, tortillas, instant rice, rice noodles, canned mackerel, refried beans, nail clippers, cotton swabs, mouthwash, deodorant, baby powder, and lip balm); ECF 207-3 at 2-15 (Mr. Karim purchased powdered milk, ramen, canned tuna, canned sardines, canned mackerel, instant rice, peanuts, crackers, oatmeal, macaroni and cheese, peanut butter, lip balm, nail clippers and baby oil).

---

[4] Mr. Campos Fuentes was detained at Adelanto from December 2016 until January 2018, but GEO has produced his commissary purchase records from only March 16, 2017 to December 2017. *See* ECF 207-1. Accordingly, Plaintiffs may seek a judicial inference that Mr. Campos Fuentes' full commissary purchase records demonstrate that he purchased food and other basic necessities from the Adelanto commissary.

GEO also argues that Plaintiffs purchased items from commissary that GEO does not consider to be "basic staples," and that this somehow defeats adequacy. Opp. at 31. There is no dispute that the Adelanto commissary does not sell fresh fruit or vegetables, lean proteins, or complex carbohydrates. *See* ECF 205-3 (Adelanto Facility Commissary Menu) at 4-5. *See also* ECF 206-1 (Campos Fuentes Dep.) at 97:11-17; ECF 206-3 (Mancia Dep.) at 67:3-15.  Mr. Campos Fuentes testified that he prioritized purchasing food from commissary because he could not afford to purchase everything he needed. ECF 206-1 (Campos Fuentes Dep.) at 56:3-4; 57:21-58:7 (explaining that seven individual packages of ramen cost four full days' wages at commissary). He would trade his commissary purchases with other detained immigrants in exchange for items he needed. *Id.* at 101:7-21.[5]

The record is clear that Plaintiffs, like all members of the Adelanto Forced Labor Class, made due with what commissary offered and what they could afford. GEO's adequacy arguments fall woefully short of raising any true credibility issue that is "so sharp as to jeopardize the interests of absent class members," as might preclude finding of adequacy. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1119 (N.D. Cal. 2018) (citation omitted) (finding adequacy where plaintiff's grocery store purchase records did not include the products at issue).

In the very case upon which GEO relies, the Seventh Circuit warns against the exact ploy GEO attempts here:

> We don't want to be misunderstood, however, as extending an invitation to defendants to try to derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class

---

[5] GEO also seems to suggest that Plaintiffs could have requested necessities from GEO. Opp. at 13. While this merits-based inquiry is irrelevant to any Rule 23 inquiry, *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013), the record demonstrates that GEO's grievance procedure is not a reliable or effective way for detained immigrants to obtain necessities. *See* ECF 206-1 (Campos Fuentes) at 96:21-97:9 (testifying that the "kite" system is unreliable and ineffective); ECF 206-2 (Novoa Dep.) at 121:20-122:5 (same); ECF 206-3 (Mancia Dep.) 68:13-69:10 (same); ECF 206-4 (Karim Dep.) at 67:25-68:14 (same).

representative. Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class, as emphasized in *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990), where the judge, while decertifying the class, remarked that "few plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished. For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims."

*CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728  (7th Cir. 2011). The other cases upon which GEO relies are wildly inapposite. *See, e.g., Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375 (C.D. Cal. 2016) (plaintiff  "manufactured" a lawsuit by deliberately fishing for unauthorized mobile alerts for the specific purpose of finding a Telephone Consumer Protection Act violation to support litigation); *Guido v. L'Oreal, USA, Inc.*, 2012 WL 2458118 (C.D. Cal. June 25, 2012) (unreported) (plaintiff "was exposed to more information than the rest of the class" regarding the potentially dangerous product at issue).

As GEO has conceded, Plaintiffs can and will continue to vigorously prosecute this action on behalf of the classes. No conflicts of interest exist that would compromise the adequacy of Plaintiffs or their counsel. Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied with respect to each class.

## C. Typicality.

GEO's typicality arguments are largely a rehashing of its challenges to commonality and adequacy. For instance, GEO repeats its legally and factually incorrect contention that Plaintiffs "never encountered adverse legal action" or "faced serious harm for refusing to work," adding only that "Plaintiffs have failed to demonstrate that they faced any harm at all, let alone harm that is typical of the class [sic] they seek to represent." Opp. at 30. Similarly, GEO again asserts that "Plaintiffs were not deprived of necessities," adding only that "[t]herefore, Plaintiffs are not typical of a class they purport to represent—a group of individuals who were allegedly denied soap, water, and

food . . ." Opp. at 30-31. Whether packaged as challenges to typicality, adequacy, commonality, or something else altogether, GEO's arguments fail for the reasons discussed above.

GEO also repeats its earlier assertion that superficial differences between Plaintiffs' experiences are somehow disqualifying. According to GEO, Plaintiffs are not typical because they "cannot show that they have knowledge of each living area at Adelanto," Opp. at 31-32, and "there are five jobs that no Plaintiff has ever worked," Opp. at 33. But "[m]erely because a named plaintiff's experience varied somewhat from that of each class member, their claims are not necessarily atypical if they were subject to a common practice or policy." *Brown v. Abercrombie & Fitch Co.*, 2015 WL 9690357, at *15 (C.D. Cal. July 16, 2015) (Bernal, J.) ("[C]lass representatives need not have held each job category included in the class in order to satisfy the typicality requirement"). *See also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (factual differences among class members do not defeat typicality in cases concerning a uniform policy or practice, provided that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct"); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir.), *cert. denied*, 139 S. Ct. 143 (2018) ("[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory.").

With respect to the Nationwide HUSP Class, GEO contends that Plaintiffs "do not have a basis to represent individuals nationwide" and "do not know any individuals housed at other facilities." Opp. at 32.  But, Plaintiffs have already explained, all class members were subjected to GEO's enterprise-wide policies and practices. *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 573, 576 (C.D. Cal. 2007) (certifying Texas resident for national class where he was subject to the same "common course of conduct" and "policy" as all class members).

GEO's typicality arguments based on the statutes of limitations are similarly misplaced. At the outset, GEO concedes that Plaintiffs' claims under the California Minimum Wage Law are subject to a three-year statute of limitations and that each Plaintiff performed work for GEO within that period. Opp. at 32. Each Plaintiff is also well within the four-year statute of limitations period for their Unfair Competition Law claim. *See* Cal. Bus. & Prof. Code § 17208. Accordingly, the class period for the Adelanto Wage Class should be from December 19, 2013—not 2014—until the date of final judgment in this matter. *See Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, 2013 WL 800265 (C.D. Cal. Mar. 1, 2013), at *3 (C.D. Cal. March 1, 2013) ("Under the UCL, wages are recoverable, and courts favor UCL suits over claims under statutes with shorter statutes of limitations").

GEO erroneously asserts that Plaintiffs "cannot represent individuals who may have been aggrieved" from May 2011 to June 2012 or from February 3, 2015 to December 2016, Opp. at 32-33. Not so. *See Nwauzor v. The GEO Group, Inc.*, No. 17-cv-5769 (W.D. Wash. Aug. 6, 2018); *petition for permission to appeal denied*, No. 18-80095 (9th Cir. Nov. 8, 2018) (finding typicality where class representatives were not detained during the entire period GEO operated the facility); *Menocal*, 320 F.R.D. at 265 (same). Here, again, GEO relies on inapposite caselaw. *See Garcia v. Cty. of Riverside*, 2017 WL 3052981 (C.D. Cal. July 17, 2017) (Bernal, J.) (reaching no typicality finding); *Hunter v. Am. Gen. Life & Acc. Ins. Co.*, 2004 WL 5231631 (D.S.C. Dec. 2, 2004) (unpublished) (noting that plaintiffs' claims related to insurance policies "from early 1900's through 1981" but declining to make any typicality finding at all).

In any event, class certification would not be defeated even if a statute of limitations issue existed here, which it does not. *See Dibb v. Allianceone Receivables Mgmt., Inc.*, 2015 WL 8970778, at *8 (W.D. Wash. Dec. 16, 2015) ("Courts have been nearly unanimous in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiff, does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3)

class action, predominance, are otherwise present."); *Nat'l Fed'n of Blind v. Target Corp.*, 582 F.Supp.2d 1185, 1201 (N.D. Cal. 2007) ("As long as the proposed class satisfies the requirements of Rule 23, the court may certify the class conditioned upon the substitution of another named plaintiff.").

Finally, GEO claims that "[Mr.] Karim is not a typical representative" because he was deported to Somalia in August 2019 after spending nearly two years detained at Adelanto. Opp. at 33-34. Neither Mr. Karim's location nor his status as a deported person impact whether his claims are typical of the classes he seeks to represent. *See Menocal*, 320 F.R.D. at 265 (finding typicality where at least one class representative lived outside the United States).

Plaintiffs have presented evidence of four common policies and practices aimed at securing the free- or nearly-free labor of detained immigrants. All members of the Adelanto Wage Class, including Plaintiffs, share the same legal or remedial theory that the Work Program Policy, Uncompensated Work Program Policy, and Adelanto HUSP caused them economic injury in the form of lost wages. *See* ECF 193-32 (Summary of Proposed Classes and Subclasses). And all members of the Adelanto Forced Labor Class and Nationwide HUSP Class, including Plaintiffs, share the same legal or remedial theory that all four common policies and practices threatened—or were intended to cause them to believe they would suffer—serious harm or abuse of legal process if they refused to comply. *See id.* The typicality requirement of Rule 23(a)(3) is satisfied.

**D.    Superiority.**

GEO does not dispute that many class members have a limited understanding of the law, limited English skills, limited resources to pursue recovery, and a meaningful fear of retaliation, which all "weigh in favor of class certification." *Menocal*, 882 F.3d at 915. Indeed, "the class action device is especially pertinent to vulnerable populations." *Id. See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (explaining that in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of

'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'").

Instead, GEO patronizingly pretends it wants to protect class members "who are struggling to avoid dire circumstances in countries they are seeking to flee" from having "another burden thrust upon them." Opp. at 37. GEO would avoid imposing this "burden" on the classes by eliminating the possibility of justice and forcing class members to bring individual actions in a country where they no longer reside. GEO's individual-action alternative is patently designed to forestall the resolution of these important but complex issues and to insulate GEO from liability for these claims.

GEO's remaining superiority arguments are that "the proposed class members often are not in possession of legal documentation of identity" and that Mr. Karim's deposition was taken at a time that was inconvenient for GEO. Opp. at 38. GEO fails to tether these arguments to any relevant issue presently before the Court. Such issues, to the extent they exist at all, clearly demonstrate that a class action is the superior—indeed, the only effective—method of adjudicating the claims at issue here. *See, e.g.*, *Menocal*, 882 F.3d at 915. The single case upon which GEO relies does not change this result. *See Rai v. CVS Caremark Corp.*, 2013 WL 10178675 (C.D. Cal. Oct. 11, 2013) (Bernal, J.) (holding that a class action was not superior to individual litigation because there was no evidence of a common policy or practice supporting the plaintiffs' class claims).

Given the number of potential class members, their relative lack of resources, access to counsel, and the multitude of common issues, it is beyond dispute that a class action is the superior means to fairly and efficiently adjudicate this case. *See* Fed. R. Civ. P. 23(b)(3).

### E.   Numerosity.

GEO steadfastly refuses to acknowledge the numerosity of the putative classes. This is true even though GEO admits the classes comprise "thousands of people," Opp. at 38, and argues that the vastness of the classes and alleged individualized concerns

make a finding of commonality, predominance, and superiority impossible.    GEO
cannot reconcile these divergent positions because the requirements of Rule 23(a)(1) are
easily met on this record.

As before, the cases GEO relies upon do not advance its position. In *Newberry v.
Cty. of San Bernardino*, 2015 WL 9701153 (C.D. Cal. July 23, 2015) (Bernal, J.), the
plaintiffs offered "that the class number is in excess of one hundred" but failed to
provide any corroborating proof.  *Id.* at *4.  Similarly, the plaintiffs in *Schwartz v. Upper
Deck Co.*, 183 F.R.D. 672 (S.D. Cal. 1999), failed to show "some evidence of or
reasonably estimate the number of class members" and instead relied only on allegations
in their complaint. *Id.* at 681. In stark contrast to both *Newberry* and *Schwartz*, Plaintiffs
have put forth significant evidence—including GEO's own admissions, records of
reimbursements GEO received for Work Program payments, and bed capacities at
GEO's facilities—demonstrating that each class likely exceeds 1,000 individuals. *See*
ECF 192-1 (Plaintiffs' Memo) at 28-29 (discussing and citing evidence establishing
numerosity). Numerosity is satisfied.

## III.   SIMILAR CLASSES HAVE ALREADY BEEN CERTIFIED IN THE NINTH AND TENTH CIRCUITS.

The Ninth Circuit has already upheld certification under Rule 23(b)(3) of a class
of immigrants detained at GEO's Tacoma ICE Processing Center alleging GEO violated
the Washington Minimum Wage Act by paying detained immigrants participating in the
Work Program only $1 per day. *Nwauzor v. The GEO Group, Inc.*,  No. 17-cv-5769 (W.D.
Wash. Aug. 6, 2018); *petition for permission to appeal denied*, No. 18-80095 (9th Cir. Nov. 8,
2018); *see* ECF 193-1 (*Nwauzor* Orders).

The Tenth Circuit has upheld certification under Rule 23(b)(3) of a class of
immigrants detained at GEO's Aurora ICE Processing Center alleging GEO was
unjustly enriched by paying detainee workers only $1 per day and challenging GEO's
HUSP under the federal forced labor statute. *Menocal v. The GEO Group, Inc.*, 320 F.R.D.
258 (D. Colo. 2017), *aff'd*, 882 F.3d 905 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 143 (2018).

# IV.   CONCLUSION

For the reasons above and those discussed in Plaintiffs' Memorandum In Support of Class Certification, ECF 192-1, Plaintiffs respectfully request that the Court certify (a) the Adelanto Wage Class under Rule 23(b)(3); (b) the Adelanto Forced Labor Class, including (i) the Work Program Subclass and (ii) the Uncompensated Work Program Subclass, under Rules 23(b)(2) and 23(b)(3); and (c) the Nationwide HUSP Class under Rule 23(b)(2). Plaintiffs further request that the Court designate Plaintiffs Raul Novoa, Jaime Campos Fuentes, Abdiaziz Karim, and Ramon Mancia as class representatives; appoint the law firms of Burns Charest, Ahdoot and Wolfson, and the Law Office of R. Andrew Free as class counsel; and order that notice of this action be provided to the classes.

Dated:      November 4, 2019      */s/ Lydia Wright*
Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
C. Jacob Gower (admitted *pro hac vice*)
jgower@burnscharest.com
LA Bar # 34564
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (CA Bar # 321366)
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

***Attorneys for Plaintiffs.***

## CERTIFICATE OF SERVICE

On November 4, 2019, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

/s/ Lydia Wright

Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765