Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Counsel for Plaintiffs
*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA**, **JAIME CAMPOS FUENTES**, **ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> **THE GEO GROUP, INC.**, <br><br> *Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx |

# EXHIBIT A TO PLAINTIFFS' SUBPOENA DUCES TECUM TO DEPARTMENT OF HOMELAND SECURITY OFFICE OF INSPECTOR GENERAL

Plaintiffs, through counsel, demand production of the following documents pursuant to Federal Rule of Civil Procedure 45 and in accordance with the definitions and instructions included at the end of this Exhibit A. Plaintiffs request that, where possible, the documents requested herein be delivered electronically to Plaintiffs'

counsel, Lydia Wright, at lwright@burnscharest.com.  Please provide Plaintiffs' counsel with a timeline regarding the production of the documents requested herein.

1. All documents, emails, notes, drafts, files, correspondence, communications, memoranda, assessments, investigations, reports, video recordings, audio recordings, or other materials created by the Department of Homeland Security Office of Inspector General ("OIG") during the Relevant Time Period and related to each of the following OIG reports:

    a. The report issued on September 27, 2018 by OIG entitled "Management Alert—Issues Requiring Action at the Adelanto ICE Processing Center in Adelanto, California" ("OIG-18-86");

    b. The report issued on June 3, 2019 by OIG entitled "Concerns about ICE Detainee Treatment and Care at Four Detention Facilities" ("OIG-19-47");

    c. The report issued on June 26, 2018 by OIG entitled "ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements" ("OIG-18-67");  and

    d. The report issued on January 29, 2019 by OIG entitled "ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards" ("OIG-19-18").

The Relevant Time Period for this request is six months prior to and two months following publication of each report listed above.  Plaintiffs believe the requested

information may be in the custody of the Office of the Inspector General for Inspections and Evaluations.

2. All documents, emails, notes, drafts, files, correspondence, communications, memoranda, assessments, investigations, reports, video recordings, audio recordings, or other materials created by OIG during the Relevant Time Period and related to the following OIG report:

   a. The report issued on March 6, 2017 by OIG entitled "Management Alert on Issues Requiring Immediate Action at the Theo Lacy Facility in Orange, California" ("OIG-17-43-MA").

The Relevant Time Period for this request is six months prior to and two months following publication of the report listed above. Plaintiffs believe the requested information may be in the custody of the Office of the Inspector General for Inspections and Evaluations.

3. All documents, emails, notes, drafts, files, correspondence, communications, memoranda, assessments, investigations, reports, video recordings, audio recordings, or other materials created by OIG during the Relevant Time Period and related to the following conditions of confinement at the Adelanto ICE Processing Center ("Adelanto Facility"):

   a. Environmental health and safety: e.g., cleanliness, sanitation, security, admission into facilities, classification, detainee searches, segregation (Special Management Units), and disciplinary system;
   b. Detainee care: e.g., food service, medical care, and personal hygiene;

      c. Activities: e.g., religious practices, telephone access, and visitation;

      d. Operation of a commissary;

      e. Work Program; and

      f. Grievance system.

The Relevant Time Period for this request is from May 1, 2011 to the present. Plaintiffs believe the requested information may be in the custody of the Office of the Inspector General for Inspections and Evaluations.

## **Definitions**

1. The term "OIG" shall mean the Department of Homeland Security Office of Inspector General and includes, but is not limited to, any predecessor or successor agencies, and any divisions, departments, affiliates, agents, attorneys, representatives, employees, and/or other persons acting on its behalf.

2. The term "DHS" is defined as the U.S. Department of Homeland Security and includes, but is not limited to, any predecessor or successor agencies, and any divisions, departments, affiliates, agents, attorneys, representatives, employees, and/or other persons acting on its behalf.

3. The term "ICE" is defined as the United States Immigration and Customs Enforcement and includes, but is not limited to, any predecessor or successor agencies, and any divisions, departments, affiliates, agents, attorneys, representatives, employees, and/or other persons acting on its behalf.

4. The term "GEO" is defined as the Defendant The GEO Group, Inc., and any affiliated corporate entity or subsidiary (including any taxable REIT subsidiary) through which The GEO Group, Inc. conducts business or receives revenue, as well any officer, agent, employee, executive, or representative of GEO as defined herein.

5. The term "Work Program" is defined as any program GEO operates involving labor performed by detainees for remuneration of any kind that includes tasks outside those described in Section 5.8.V.C of the 2011 ICE Performance-Based National Detention Standards ("PBNDS") (rev. 2016).

6. The terms "Adelanto Facility" and "Adelanto Detention Center" are defined as the Adelanto ICE Processing Center located in Adelanto, California, and operated by GEO pursuant to a federal contract with ICE.

7. The term "detainee" is defined as any person detained in an immigration detention facility operated by GEO.

8. The term "person" is defined as any natural person or business, legal, or governmental entity or association.

9. The terms "Plaintiffs," "Plaintiff," and "Defendant," as well as a party's full or abbreviated name or pronoun referring to a party, mean the party and, where applicable, his officers, directors, employees, partners, corporate parent, subsidiaries, predecessors, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

10. The term "compensation" means all monies and benefits, including: salaries, hourly wages, overtime wages, commissions, raises, and bonuses; or any other benefits given in return for work, tasks and/or duties.

11. The term "hours" includes full hours and partial hour(s).

12. The terms "policy" or "policies" mean each rule, procedure, or directive, formal or informal, written or unwritten, and each common understanding or course of conduct that was recognized as such by Defendant or persons acting or purporting to act on Defendant's behalf, that has been in effect at any time during the period covered by these demands. These terms include any change of policy.

13. The singular of each word shall be construed to include its plural and vice-versa, and the root word and all derivations (i.e., "ing," "ed," etc.) shall be construed to include each other.

14. The words "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys.

15. The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

16. The term "communication" means the transmittal of information by any means (in the form of facts, ideas, inquiries, or otherwise).

17. The terms "you" or "your" means GEO including, without limitation, any agents and representatives, each person acting or purporting to act on its behalf, each of its predecessors, subsidiaries, and affiliates, and each of its present or former officers, employees, agents, representatives, and attorneys.

18. The terms "concerning" "regarding" and "relating to" mean relating to, supporting, contradicting, summarizing memorializing, describing, evidencing, constituting, containing, studying, identifying, analyzing, considering, regarding, explaining, mentioning, showing, discussing, comprising or commenting on.

19. Each of the terms "all," "any," "each," and "every" shall be construed as meaning all, any, each and every.

20. The terms "and" and "or" shall be construed both disjunctively and conjunctively.

21. The term "document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of translations, notations, or markings) or any and all

other written, printed, typed, punched, taped, filmed, or graphic matter or recorded or tangible thing, or whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), and shall include all attachments to and enclosures with any requested item, to which they are attached or with which they are enclosed, and each draft thereof. The term document shall specifically include all recorded or retrievable electronic data or communications such as electronic mail (e-mail) and the like and all translations thereof. Any document with any marks of any sheet or side thereof, including but limited to initials, routing instructions, metadata, date stamps, and/or any comment, marking or notation of any kind or character which is not a part of the original and/or any reproduction thereof, is to be considered a separate document.

22. "Communication" shall refer to any form of communication, including any oral, written, electronic, or other exchange of words, thoughts, information, or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by facsimile, or by any other process, electric, electronic, or otherwise. All such communications in writing shall include, without limitation, printed, typed, handwritten, or other readable documents, correspondence, memoranda, reports, contracts, drafts (both initial and subsequent), computer discs or transmissions, e-mails, instant messages, tape or video recordings, voicemails, diaries, log books, minutes, notes, studies, surveys and forecasts, and any and all copies thereof.

23. The present tense includes the past and future tenses.

**Instructions**

1. Plaintiffs request that, where possible, the documents requested herein be delivered electronically to Plaintiffs' counsel, Lydia Wright, at lwright@burnscharest.com.

2. Please provide Plaintiffs' counsel with a timeline regarding the production of the documents requested herein.

3. Produce any electronically stored information in either native format or in single page TIFFs, OCR'd, with load files for Summation Enterprise. Produce any ESI created in Outlook as PST files. For any documents produced in native format that are not Microsoft Word, Excel, or Outlook or Word Perfect, convert them into TIFF files and maintain all associated metadata.

4. Any Request that includes a call to produce email or text messages shall be construed to include a request for production of all associated metadata.

5. If a document requested is not within your possession or control, but you know of its existence, the response shall identify the document by author, title, recipient, date, and present location (if known).

6. References to any specific person shall be interpreted to include all agents, employees, representatives, attorneys, investigators and consultants of that person.

7. Terms in the singular include the plural and vice versa.

8. If you object that any Request is overbroad or unduly burdensome, explain with particularity the grounds for your objection by explaining why you believe the request to be overly broad or unduly burdensome, and provide documents responsive to any portion of the Request to which you do not object (e.g. if you believe a request covers an overly broad period of time, produce all requested documents for the period of time you believe to be appropriate).

9. If an otherwise responsive document was, but no longer is, in your possession, custody or control, state or identify: (a) all such document(s) (or, where not

possible, each category of such documents); (b) who last had possession, custody or control of the document(s); (c) what disposition was made of the document(s) (or storage device containing the ESI), including when, how, why and by whom; (d) each person that authorized such disposition, including when, how, and why; and (e) each person with knowledge of the reasons for and/or circumstances of the disposition.

10. If any information is withheld, in whole or in part, for any reason, on the basis of a privilege or other protection, please set forth separately with respect to each such document:

    a. the nature of the privilege or ground of confidentiality claimed;
    b. the type of information;
    c. who created such document;
    d. when the document was created;
    e. each person who received or reviewed or had possession, custody or control of the document;
    f. the general subject matter of the document; and
    g. each and every fact or basis on which such privilege is claimed or under which the document is withheld.

11. Unless otherwise expressly stated, the time period covered by these document requests is May 1, 2011 to the present.

## *TOUHY* STATEMENT

Plaintiffs request documents in the possession of the Department of Homeland Security Office of the Inspector General ("OIG") pursuant to *United States ex re. Touhy v. Ragen*, 340 U.S. 462 (1951) and 6 C.F.R. § 5.45.[1]

---

[1] By providing this Statement, Plaintiffs do not concede that 6 C.F.R. § 5.41, *et seq.,* regulates the terms of this subpoena.

EXHIBIT A TO PLAINTIFFS' SUBPOENA
DUCES TECUM TO DHS OIG

9

5:17-cv-02514-JGB-SHK

### A. Background

In December 2017, Plaintiffs filed a class action lawsuit against The GEO Group, Inc. ("GEO") alleging wage theft, forced labor, and unjust enrichment at the Adelanto ICE Processing Center in Adelanto, California. *Raul Novoa et al. v. The GEO Group, Inc.*, Case No. 5:17-cv-02514 (C.D. Cal.) (Bernal, J.). GEO is a private corporation that operates the Adelanto Facility pursuant to a contractual relationship with Immigration and Customs Enforcement ("ICE").

Pursuant to that contractual relationship and the ICE Performance-Based National Detention Standards ("PBNDS"), GEO maintains a Detainee Voluntary Work Program ("Work Program") at the Adelanto Facility. GEO pays detainees in the Work Program $1 per day—or nothing at all—regardless of the amount of hours they work. GEO also maintains a policy whereby detained immigrants must work for free for an arbitrary period before being hired into the Work Program. Those detained immigrants sometimes receive extra food or basic necessities for their labor, but are not paid. Finally, GEO also maintains a Housing Unit Sanitation Policy ("HUSP"), whereby each and every immigrant detained at the Adelanto Facility is required to engage in cleaning and sanitation tasks in the common areas of their living quarters. Plaintiffs allege that GEO's HUSPs violate the Personal Housekeeping Requirement of the PBNDS, PBNDS § 5.8.V.C.

GEO maintains a corporate policy and uniform practice at the Adelanto Facility of threatening detainees who refuse to work with serious harm or abuse of legal process, including disciplinary segregation or solitary confinement, reporting their actions to ICE, or referring them for criminal prosecution. GEO also maintains a corporate policy and uniform practice at the Adelanto Facility of withholding necessary care from its detainees. As a result, detained immigrants are forced to submit to GEO's $1 per day scheme in order to buy necessities – including food, water, and hygiene products – that

GEO refuses to provide for them. These abusive practices and threats of abuse ensure that detained immigrants will continue working for subminimum wages.

Plaintiffs allege that GEO significantly reduces its labor costs and expenses, and increases its already vast profits, by unlawfully forcing and coercing detainees to perform labor at subminimum wages and in exchange for extra food and other basic necessities. These policies and practices violate California minimum wage law, the California Unfair Competition Law, and federal and California Trafficking Victims Protection Acts, which prohibit forced labor.

### B. The requested information is relevant to Plaintiffs' claims and GEO's defenses and cannot be obtained elsewhere.

At the outset, the position of the United States as articulated earlier this year in an amicus curiae brief filed in the Eleventh Circuit provides important context for the information requested herein. *See Ahmed v. CoreCivic, Inc.*, No. 18-15081, Br. for the United States of America as Amicus Curiae in Support of Neither Party, (11th Cir. filed Apr. 1, 2019). There, the United States Department of Justice ("DOJ") posited that a private government contractor that operates civil immigration detention facilities within the confines of the PBNDS will generally not be subject to liability for forced labor under the federal Trafficking Victims Protection Act. While the DOJ's position has not been adopted by any court, GEO's compliance with the PBNDS is directly relevant to the merits of Plaintiffs' forced labor claims and GEO's defenses.

OIG is one of only two or three oversight entities that conduct unannounced, spot inspections and investigations of the Adelanto Facility. OIG's inspections of the Adelanto Facility have yielded reports with a significant volume of information pointing to GEO's failure to comply with the PBNDS and its ICE contract. *See, e.g.*, OIG-18-86; OIG 19-47. Separately, OIG has observed that ICE fails to use the contracting tools available to it to punish contractors like GEO for PBNDS violations. *See, e.g.*, OIG 18-67; OIG 19-18. Plaintiffs seek the materials underlying these reports because that

material will likely contain documentary evidence regarding conditions at the Adelanto Facility that bear directly on Plaintiffs' claims in this litigation. The materials subject to this request will additionally contain significant evidence that Plaintiffs will use to refute GEO's affirmative defenses, which include preemption and derivative sovereign immunity. Plaintiffs cannot obtain these materials from any other party.

In addition to the foregoing, the nature and relevance of the records Plaintiffs seek is set forth below:

1. **All documents, emails, notes, drafts, files, correspondence, communications, memoranda, assessments, investigations, reports, video recordings, audio recordings, or other materials created by the Department of Homeland Security Office of Inspector General ("OIG") during the Relevant Time Period and related to each of the following OIG reports:**

    a. **The report issued on September 27, 2018 by OIG entitled "Management Alert—Issues Requiring Action at the Adelanto ICE Processing Center in Adelanto, California" ("OIG-18-86");**

    b. **The report issued on June 3, 2019 by OIG entitled "Concerns about ICE Detainee Treatment and Care at Four Detention Facilities" ("OIG-19-47");**

    c. **The report issued on June 26, 2018 by OIG entitled "ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements" ("OIG-18-67"); and**

      **d. The report issued on January 29, 2019 by OIG entitled "ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards" ("OIG-19-18").**

**The Relevant Time Period for this request is six months prior to and two months following publication of each report listed above. Plaintiffs believe the requested information may be in the custody of the Office of the Inspector General for Inspections and Evaluations.**

**Relevance:**

Plaintiffs allege that GEO violates the federal and California Trafficking Victims Protection Acts by knowingly maintaining a corporate policy and uniform practice at the Adelanto Facility aimed at obtaining nearly free detainee labor and services by threatening Plaintiffs and the class members with physical restraint, serious harm, and abuse of law or legal process if they refuse to provide their labor, organize a work stoppage, or participate in a work stoppage. Plaintiffs also allege that GEO maintains a corporate policy and uniform practice at the Adelanto Facility of withholding sufficient basic necessities from the class members to induce them to work for $1 per day or for extra basic necessities, including food. Plaintiffs allege that GEO's conduct violates federal law and the PBNDS, including PBNDS § 5.8 and its subparts.

GEO denies all these allegations, and claims that it complies with the PBNDS and its contract with ICE. Specifically, GEO claims that it provides detained immigrants with sufficient food and basic necessities, and that it does not violate PBNDS § 5.8 by coercing or requiring detained immigrants to work anywhere in the Adelanto Facility under threat of serious harm. GEO claims that ICE conducts rigorous compliance inspections of the Adelanto Facility and has not identified violations of the PBNDS

during those inspections, and that therefore GEO does not violate the PBNDS. GEO claims if it did violate its contract or the PBNDS, ICE would hold the company accountable. GEO points to the lack of penalties or other disciplinary action by ICE as evidence of its compliance with the law and the PBNDS.

The requested information is highly relevant to Plaintiffs' claims and GEO's defenses in this litigation because it may describe the events at issue in this litigation, including GEO's policies and practices at the Adelanto Facility and conditions of confinement there. Information contained in "emails," "correspondence," or "communications" among OIG personnel, as well as documentation pertaining to OGI's "investigations" of incidents relevant to the reports, are likely to include information relevant to this litigation but that ultimately was not published in the final report. While the OIG reports themselves are publicly-available, the requested information pertaining to those reports is not. Accordingly, it cannot be obtained elsewhere.

2. **All documents, emails, notes, drafts, files, correspondence, communications, memoranda, assessments, investigations, reports, video recordings, audio recordings, or other materials created by OIG during the Relevant Time Period and related to the following OIG report:**

   a. **The report issued on March 6, 2017 by OIG entitled "Management Alert on Issues Requiring Immediate Action at the Theo Lacy Facility in Orange, California" ("OIG-17-43-MA").**

**The Relevant Time Period for this request is six months prior to and two months following publication of the report listed above. Plaintiffs believe**

**the requested information may be in the custody of the Office of the Inspector General for Inspections and Evaluations.**

**Relevance:**

As stated above, Plaintiffs allege that GEO violates the federal and California Trafficking Victims Protection Acts by knowingly maintaining a corporate policy and uniform practice at the Adelanto Facility aimed at obtaining nearly free detainee labor and services by threatening Plaintiffs and the class members with physical restraint, serious harm, and abuse of law or legal process if they refuse to provide their labor. Specifically, Plaintiffs allege that GEO maintains a Housing Unit Sanitation Policy ("HUSP") at the Adelanto Facility whereby each and every detained immigrant is responsible for mandatory and uncompensated cleaning in the communal areas of their housing units, and is subject to threats of serious harm and abuse of legal process for refusing to comply. Plaintiffs allege that this practice violates the narrow scope of PBNDS § 5.8.V.C (the "Personal Housekeeping Requirement"). GEO denies these allegations, claiming that its HUSPs are within the scope of PBNDS § 5.8.V.C.

In OIG-17-43-MA, OIG observed that the very practices alleged to be unlawful in this case violate the PBNDS when implemented at the Theo Lacy Facility. *See* OIG-17-43-MA at 6 ("Additionally, requiring detainees to clean common areas used by all detainees is in violation of ICE standards, as detainees are only required to clean their immediate living area."). Plaintiffs seek OIG's records and correspondence leading to that conclusion. OIG's conclusions, opinions, drafts, emails, correspondence, and/or communications regarding this statement are highly relevant to Plaintiffs' claims and GEO's defenses, described above. While OIG-17-43-MA itself are publicly-available, the requested information pertaining to those reports is not. Accordingly, it cannot be obtained elsewhere.

3. **All documents, emails, notes, drafts, files, correspondence, communications, memoranda, assessments, investigations, reports, video recordings, audio recordings, or other materials created by OIG during the Relevant Time Period and related to the following conditions of confinement at the Adelanto ICE Processing Center ("Adelanto Facility"):**

   a. **Environmental health and safety: e.g., cleanliness, sanitation, security, admission into facilities, classification, detainee searches, segregation (Special Management Units), and disciplinary system;**
   b. **Detainee care: e.g., food service, medical care, and personal hygiene;**
   c. **Activities: e.g., religious practices, telephone access, and visitation;**
   d. **Operation of a commissary;**
   e. **Work Program; and**
   f. **Grievance system.**

   **The Relevant Time Period for this request is from May 1, 2011 to the present. Plaintiffs believe the requested information may be in the custody of the Office of the Inspector General for Inspections and Evaluations.**

**Relevance:**

As stated above, Plaintiffs allege that GEO violates the law and the PBNDS by withholding basic necessities from detained immigrants. Plaintiffs also allege that GEO threatens detained immigrants with serious harm or abuse of legal process for refusing to work, and by paying subminimum wages to detained immigrants who participate in the Voluntary Work Program. That the conditions of detention at the Adelanto Facility effectively force or coerce detainees to participate in the Voluntary Work Program to purchase basic necessities.

The requested information is highly relevant to Plaintiffs' claims that the conditions of detention at the Adelanto Facility effectively force or coerce detainees to participate in the Voluntary Work Program to purchase basic necessities, or to work for free to possibly receive extra food or basic necessities from GEO. The information is also relevant to Plaintiffs' claims that GEO generally fails to adhere to the standards of the PBNDS at the Adelanto Facility and that GEO misuses disciplinary measures to punish detainees who refused supply their un- or under-paid labor. Because of OIG's unique position as one of only two or three oversight entities that conduct unannounced, spot inspections and investigations of the Adelanto Facility, the requested information cannot be obtained elsewhere.

Dated: November 15, 2019

Respectfully Submitted,

*/s/ Lydia Wright*

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
C. Jacob Gower (admitted *pro hac vice*)
jgower@burnscharest.com
LA Bar # 34564
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221

Facsimile: (615) 829-8959

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex Straus (CA Bar # 321366)
Astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

***Attorneys for Plaintiffs.***