1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION-RIVERSIDE

4                             - - -

5          HONORABLE JESUS G. BERNAL, DISTRICT JUDGE PRESIDING

6                             - - -

7   RAUL NOVOA, JAIME CAMPOS FUENTES,  )
    ABDIAZIZ KARIM, and RAMON MANCIA,  )
8   individually and on behalf of all  )
    others similarly situated,         )
9                                      )
                          Plaintiffs,  )
10                                     )
             vs.                       )   No. EDCV 17-2514-JGB
11                                     )
    THE GEO GROUP, INC.,               )
12                                     )
                          Defendant.   )
13  _____  )

14

15            REPORTER'S TRANSCRIPT OF ORAL PROCEEDINGS

16                   Riverside, California

17                  Monday, November 18, 2019

18                        9:21 a.m.

19

20

21

22
                    PHYLLIS A. PRESTON, CSR, FCRR
23              Federal Official Court Reporter
                   United States District Court
24                   3470 Twelfth Street
                  Riverside, California 92501
25                    stenojag@aol.com

```
 1   APPEARANCES:

 2

 3   For the Plaintiffs:

 4                         BURNS CHAREST LLP
                           BY:  DANIEL CHAREST
 5                              LYDIA WRIGHT
                           900 Jackson Street, Suite 500
 6                         Dallas, Texas 75202

 7                         AHDOOT & WOLFSON, PC
                           BY:  THEODORE MAYA
 8                         1016 Palm Avenue
                           West Hollywood, California 90069
 9
                           LAW OFFICES OF R ANDREW FREE
10                         BY:  ANDREW FREE
                           PO Box 90568
11                         Nashville, Tennessee 37209

12

13

14   For the Defendant:

15                         AKERMAN LLP
                           BY:  COLIN BARNACLE
16                         1900 Sixteenth Street, Suite 1700
                           Denver, Colorado 80202
17

18

19

20

21

22

23

24

25
```

```
1              MONDAY, NOVEMBER 18, 2019; RIVERSIDE, CALIFORNIA

2                              -o0o-

3              THE CLERK:  Calling Item No. 1, Case No. EDCV

4   17-2514-JGB, Raul Novoa v. The GEO Group, Inc.

5              Counsel, please come forward and state your          09:21

6   appearances.

7              MR. FREE:  My name is Andrew Free.  I represent the

8   plaintiffs.

9              THE COURT:  Good morning.

10             MR. MAYA:  Theodore Maya appearing on behalf of      09:21

11  plaintiffs.

12             THE COURT:  Good morning.

13             MR. CHAREST:  Please the Court, Daniel Charest on

14  behalf of plaintiffs as well.

15             THE COURT:  Good morning.                            09:21

16             MS. WRIGHT:  Good morning, Your Honor.  Lydia Wright

17  for the plaintiffs.

18             THE COURT:  Good morning.

19             MS. WRIGHT:  And with the Court's permission, we have

20  three of the four named plaintiffs with us today, and I'd like  09:21

21  to introduce them to the Court.

22             THE COURT:  You may.

23             MS. WRIGHT:  Go ahead and stand up.

24             Your Honor, this is Raul Novoa.  He was detained at

25  Adelanto for about two and a half years.                       09:21
```

 1             THE COURT:  Good morning.

 2             MR. NOVOA:  Good morning, Your Honor.

 3             MS. WRIGHT:  Next to him is Jaime Roberto Campos

 4   Fuentes.  He was there for about 13 months.

 5             THE COURT:  Good morning.                        09:21

 6             MR. FUENTES:  Good morning.

 7             MS. WRIGHT:  And Ramon Mancia was at Adelanto for

 8   about six months.  He was just released on October 11th.

 9             MR. MANCIA:  Good morning, Your Honor.

10             THE COURT:  Good morning.  Thank you for being here.  09:22

11             MR. BARNACLE:  Good morning, Your Honor.  Colin

12   Barnacle on behalf of the defendant The GEO Group.

13             THE COURT:  Good morning to you, Mr. Boggs (sic).

14             Very well.  So the matter is on calendar on a motion

15   by the plaintiffs to certify, well, three classes and then one  09:22

16   subclass within those three classes, so a total of four classes

17   pursuant to various policies which the plaintiffs claim were

18   instituted or executed at the Adelanto Detention Facility as to

19   one of those classes, the so-called HUSP Class Nationwide.  So

20   we have some matters to go through.                       09:22

21             What I'd first like to focus in is what appears to be

22   the most disputed elements of Rule 23, which are, as they often

23   are, commonality and typicality and predominance.  And I'm

24   particularly interested in hearing about the TVPA and the CPA,

25   I guess, and how each side views the commonality requirements  09:23

 1   as to those particular -- that particular class.

 2          So, for instance, GEO argues commonality and

 3   predominance do not exist as to the class because whether or

 4   not the plaintiffs were deprived of necessity required them to

 5   work for a dollar a day and whether or not there was a threat          09:23

 6   of serious harm, they failed to do so, and whether or not the

 7   uncompensated work was either permitted or required by ICE

 8   would lead to a series of individual inquiries which would

 9   defeat commonality and predominance.

10          Ms. Wright, how do you respond to those arguments?          09:24

11   Their claim is that these are highly individualized inquiries

12   which will require individual determinations and would

13   therefore defeat commonality and predominance.

14          MS. WRIGHT:  Yes, Your Honor.  Thank you.

15          I think it's helpful to start with the framework of          09:24

16   the Forced Labor Statute.  The Forced Labor Statute prohibits

17   GEO from knowingly obtaining or providing labor or attempting

18   to do so by means of threats.  And the statute is very clear

19   about what those threats are; threats of physical restraint or

20   threats of serious harm or threats of abuse of law or the legal          09:24

21   process.

22          The statute also prohibits GEO from obtaining labor,

23   and I'm quoting here, *by means of any scheme, plan or pattern*

24   *intended to cause the person to believe that if he did not*

25   *perform such labor, he would suffer serious harm or physical*          09:24

1  *restraint as a result.*

2      The statute next defines serious harm as any harm --

3      THE COURT:  Is that the second part of which you

4  basically claim your commonality inquiry, that there was a

5  policy in place which would result in, what, retaliation or the   09:25

6  exercise of force if the detainees did not actually perform the

7  uncompensated work?

8      MS. WRIGHT:  It's actually the first part of the

9  two-pronged TVPA analysis, and that's GEO's scienter, GEO's

10  intent in threatening harm.   09:25

11      The second prong of the TVPA analysis goes to what

12  serious harm means.  And that's defined in the statute as any

13  harm, physical, psychological, emotional, reputational,

14  nonphysical, any kind of harm that is sufficiently serious

15  under all the surrounding circumstances to compel a reasonable   09:25

16  person of the same background in the same circumstances to

17  perform labor to avoid incurring that harm.

18      So the TVPA inquiry, the Forced Labor inquiry is two

19  parts.  The first is an analysis of GEO's intent in threatening

20  harm.  And the second is an analysis of a reasonable person's   09:26

21  perception of those threats.

22      THE COURT:  So how do you think those are subject to

23  a common resolution?

24      MS. WRIGHT:  There's actually no individualized

25  inquiry that's required or contemplated at all in the TVPA.   09:26

1    The TVPA does not look at how each named plaintiff perceived

2    Geo's actions.  There is no inquiry into how any -- whether any

3    individual class member subjectively felt compelled to work.

4    Instead, the focus in the TVPA is squarely on GEO's conduct and

5    a reasonable person in the same circumstances, under the same          09:26

6    -- with the same background, a reasonable person's perception

7    of that conduct.

8            THE COURT:  And by "reasonable person," you mean who,

9    the detainees or GEO?

10           MS. WRIGHT:  The reasonable person in this context is          09:26

11   a reasonable person in the plaintiffs' shoes.

12           THE COURT:  Right.  So there is a component where --

13   an objective component that the reasonable person in the

14   detainees' circumstances that would feel either threatened or

15   coerced or compelled to perform the work, right?                       09:27

16           MS. WRIGHT:  Well, the --

17           THE COURT:  Or the perception of harm.

18           MS. WRIGHT:  The focus, again, Your Honor, is

19   squarely on GEO's conduct and what the reasonable person would

20   perceive.  So, yes, it's not an inquiry into what any               09:27

21   individual class member actually felt or whether they

22   subjectively felt compelled to work.  We look at the objective,

23   reasonable person standard to make this TVPA inquiry.  And the

24   reasonable person in this case is -- you know, all the class

25   members share a number of common characteristics.  They are all       09:27

1   immigrants.  They are all currently or formerly civilly

2   detained at Adelanto where they are subject to the complete

3   control and power of GEO.  They are subject to the same uniform

4   conditions of confinement.  Their lives are operated by the

5   same standard and uniform policies and procedures that are

6   required of them by GEO.

7          And it's also important to note that all class

8   members and the reasonable person in this case is civilly

9   detained, not for punitive purposes, not to await sentencing or

10  to serve a criminal sentence.

11         THE COURT:  Right.  I understand the decision.

12         MS. WRIGHT:  Well, Your Honor, as a result of the

13  nature of civil immigration detention, this is a uniquely,

14  highly vulnerable population, because losing a case here at

15  Adelanto results in deportation.  And for some, like Mr. Karim

16  or like Mr. Campos Fuentes, deportation means being sent back

17  to a country that they've risked everything to flee.  Or for

18  others, like Mr. Mancia and Mr. Novoa, it means being sent back

19  to a country that they haven't known since childhood.  So this

20  is a highly vulnerable population that is --

21         THE COURT:  Right.  I understand that.  But how would

22  GEO have any impact on the result of their immigration case?

23  And how does that play into whether or not a reasonable person

24  will perceive that GEO's actions compel labor?

25         MS. WRIGHT:  Well, Your Honor, first of all,

09:28
09:28
09:28
09:28
09:29

```
 1   immigration harm has been held by the Ninth Circuit to be one
 2   of a type of serious harm that arises to liability under the
 3   Trafficking Victims' Protections Act.
 4         THE COURT:  I understand that.  The question is, how
 5   would GEO's policies impact immigration harm?                    09:29
 6         MS. WRIGHT:  And here is exactly how:  The record
 7   demonstrates that GEO operates a facility-wide scheme intended
 8   to obtain detainee labor through threats of harm and abusive
 9   legal process.  We've been calling this scheme the Deprivation
10   Policy.  But it's really -- you can take a step back and it's    09:29
11   really better conceived of as sort of a compulsion policy.
12         GEO wields complete power and control over every
13   detainee at Adelanto.  GEO literally controls their bodies and
14   decides --
15         THE COURT:  So you're repeating yourself.  So what I       09:30
16   want to know is, how do GEO's policies impact the result of the
17   immigration status of the detainees, if that's what you're
18   arguing?
19         So, yes, I get it.  The policies and the fact that
20   they're detained civilly and they're facing immigration         09:30
21   consequences means that GEO is in almost total control over the
22   daily activities.  I get it, okay.  What I want to know is, you
23   talk about immigration harm, how do GEO's policies affect the
24   immigration harm, the result of their immigration proceedings,
25   if that's what you mean?                                         09:30
```

1          MS. WRIGHT:  Yes.  There is evidence in the record

2     that GEO threatens detainees with either negative consequences

3     to their immigration case if they refuse to work or with

4     positive benefits to their immigration case.

5          Mr. Karim testified that he was told by GEO officers     09:30

6     that if he worked and if he didn't complain about working that

7     they would inform the ICE -- the immigration judge that he was

8     a compliant detainee and that that would help his case.

9          THE COURT:  So if that happened to an isolated

10     detainee, does that mean that that's a policy and that's a     09:31

11     possibility as to all detainees?

12          MS. WRIGHT:  I'm sorry, Your Honor, I don't

13     understand.

14          THE COURT:  So if that happened as to that particular

15     detainee, that detainee was told if he didn't work then it     09:31

16     might affect his immigration case, right?  Couldn't that be an

17     isolated incident?  In other words, the fact that that happened

18     or may have happened, does that mean that every other detainee

19     felt the same way even though they were not told that?

20          MS. WRIGHT:  Well, Your Honor, that's an example.     09:31

21     That's an exemplar of what we believe the evidence will prove

22     on a class-wide basis.  That is one type of threat that GEO

23     wields against detainees in order to compel their labor.

24          And again, it's an objective standard.  So what

25     matters for the TVPA analysis is GEO's intent in threatening     09:31

1   harm and how a reasonable person would perceive that harm.

2   There is no room for individualized inquiries here.  It's that

3   two-pronged approach, and that's how the Central District of

4   California and the Ninth Circuit have both interpreted the TVPA

5   in the past.                                                    09:32

6          THE COURT:  Let me hear from Mr. Boggs on that point.

7          MS. WRIGHT:  I'm sorry?

8          THE COURT:  Let me hear from Mr. Boggs on that point.

9          MR. BARNACLE:  Thank you, Your Honor.  I think the

10  initial question was commonality and predominance.             09:32

11         THE COURT:  I'm sorry, Mr. Barnacle.

12         MR. BARNACLE:  Barnacle, yes.

13         THE COURT:  Sorry, I have the other case in mind.

14         MR. BARNACLE:  No worries.

15         I think the argument that all of these policies apply    09:32

16  with equal uniformity to not only Adelanto but all of the

17  facilities around the country, you have to -- if you're looking

18  at the TVPA, I think two of the classes are keenly focused on

19  TVPA forced labor.  One is the Forced Labor Class.

20         THE COURT:  Right.                                       09:33

21         MR. BARNACLE:  And the second would be the National

22  -- Nationwide HUSP Class.  If you're looking at the Forced

23  Labor Class itself, there are numerous factual predicates you

24  have to jump through in order to be able to identify whether

25  somebody is or is not appropriately a class member entitled to  09:33

1  that legal relief.  First, you have to say, okay, there is a

2  policy of deprivation of necessities.  Were each of them

3  deprived of basic necessities?  The testimony you'll receive

4  from all four of the named plaintiffs are all over the board on

5  whether or not they truly were deprived of basic necessities.          09:33

6        They all testified that they received all of the

7  things that they were promised.  I think the argument is, they

8  weren't happy with what they were provided.  They weren't happy

9  with the quantity or the quality and a lot of it was more of a

10 preference.  So you would expect for those individuals to then         09:33

11 use their commissary funds to buy basic necessities and almost

12 exclusively basic necessities, and you don't see that.  You see

13 them buying a variety of different things, many of which

14 they've admitted aren't basic necessities.

15        You also have to look -- if they're being forced             09:34

16 because they're not being given --

17        THE COURT:  If they bought basic necessities and

18 nonbasic necessities, that doesn't negate the argument that

19 they were forced to buy basic necessities.

20        MR. BARNACLE:  True and I agree with that.  I think         09:34

21 you would -- if the situation were as dire as alleged and they

22 are deprived and they are dehydrated and they're suffering

23 malnutrition, you would expect to see the commissary purchases

24 be almost exclusively for those basic necessities.  And all I'm

25 saying is the facts in the record don't support that.  And you          09:34

1    have to go through individually for the detainees, what are

2    they buying?  Are they buying almost exclusively basic

3    necessities?

4         THE COURT:  Again, that's not logically accurate.  If

5    somebody has $5, right, and they buy a food item, right,                     09:34

6    because they're not meeting the basic necessity, by buying that

7    $5 would meet their basic necessities.  Another person has $20,

8    buys that same item to supplement what their basic necessities

9    are and buys other stuff, that still means that both are not

10   being met with basic necessities because they're both buying      09:35

11   food.  Yeah, one of them is buying something else, but he's

12   buying that food because the basic necessities are not met,

13   right.  So it's not logical to say that they would almost

14   exclusively buy basic necessities, because that means that what

15   is missing from the basic necessities is all they can afford,     09:35

16   which is not necessarily the case.

17        MR. BARNACLE:  And I respect that.  I think you would

18   expect to see, particularly if somebody alleges in their

19   complaint and their declaration that they were dehydrated and

20   the water ran black at the facility and they said that they       09:35

21   bought bottled water, and the commissary sold bottled water,

22   yet not one single purchase of bottled water was made during

23   the entire detention.  So there's a gap between what is being

24   alleged as deprivation and what is being purchased.

25        I think the second piece is, the allegation is             09:36

1   they're forced to volunteer because they are deprived and they

2   have to use those dollars to buy those basic necessities.  It

3   makes sense then you would look at their commissary accounts

4   and say, okay, the only money in their account probably should

5   be these dollars being received for the Voluntary Work Program      09:36

6   because they're forced to work to get that dollar to buy those

7   necessities.  But if you look, and the testimony shows, if you

8   look at those commissary accounts, you know, it's in our brief,

9   a slight percentage of the total amount of money in their

10  commissary accounts comes from the Voluntary Work Program.          09:36

11            They're receiving significant amounts of money from

12  outside sources, some of which they can explain, some of which

13  they can't explain.  But you would expect, if it's truly a

14  forced labor situation, which the TVPA is arguing, you would

15  expect that the only source of money they're getting is from       09:36

16  the Voluntary Work Program, and that's just not the case.

17            And then I think, finally, you do have to look at

18  what they're buying.  And, you know, does it support the

19  allegation that they have to buy basic necessities because

20  they're being deprived of those necessities.                       09:37

21            THE COURT:  Right.  That's also assuming that what

22  they're buying that are not basic necessities, they are the

23  ones that eventually are consuming them and not trading them

24  for something else.

25            MR. BARNACLE:  True.  That is very true.  But I think     09:37

 1  the overall point I'm trying to make on the Forced Labor Class

 2  itself is, it's necessary to examine each of these four -- each

 3  of these three factual predicates I just laid out to identify

 4  who is and who is not truly deprived, who actually participates

 5  in the Voluntary Work Program because they need that dollar and        09:37

 6  they're using that dollar to buy those basic necessities.  I

 7  think the evidence in the record shows that the four named

 8  plaintiffs don't meet the class that they're trying to have

 9  certified today.  That's not me saying there aren't people out

10  there that do.  There might be people that do, but it's not           09:37

11  them.

12          THE COURT:  Right.  That's more of a typicality

13  argument.

14          Let's switch then to the HUSP aspect.  How do you

15  deal with the *Menocal* decision in Colorado which certified a        09:38

16  class based on the TVPA as a result of the HUSP policy?

17          MR. BARNACLE:  Your Honor, I wasn't counsel on that

18  case so I didn't make that -- I didn't write those motions or

19  make those arguments.  How I would argue in this case is

20  largely based on the testimony we received from the four named        09:38

21  plaintiffs over the last month regarding that policy.  I think

22  similar to the Forced Labor Class, you have to look at a

23  certain number of factual predicates that you have to satisfy

24  before you can say that any individual detainee is entitled to

25  that relief.                                                          09:38

1          Those factual predicates, from our point of view,

2     are, A, is there an HUSP and is it the same?  All we have right

3     now is an Adelanto specific HUSP.

4          Is there an HUSP at other facilities?  Yes.  But is

5     it the same?  There is no evidence whatsoever in the record           09:39

6     that the HUSP at every single facility reads precisely the way

7     the Adelanto one does.  There is nothing in the record at all

8     that shows what it says, what it requires, what it doesn't

9     require.

10          THE COURT:  I realize that's the plaintiffs' burden.            09:39

11     But is there evidence that it is not?

12          MR. BARNACLE:  There is no evidence whatsoever either

13     way.

14          THE COURT:  And that evidence would be in your

15     possession?                                                          09:39

16          MR. BARNACLE:  Absolutely.

17          THE COURT:  So you would have presented if there were

18     differences between them if you had it?

19          MR. BARNACLE:  We haven't produced them.  We haven't

20     even reviewed them at this point.  So if there are differences,      09:39

21     absolutely.  That's not something --

22          THE COURT:  Do you know, in fact, whether there are

23     differences?

24          MR. BARNACLE:  I don't.  I don't.  Sitting here right

25     now, I don't.                                                        09:39

```
 1              THE COURT:  Did you attempt to find out?

 2              MR. BARNACLE:  Absolutely.

 3              THE COURT:  You attempted to find out?

 4              MR. BARNACLE:  No, no, I have not attempted to find

 5    out.                                                          09:39

 6              THE COURT:  Why didn't you attempt to find out?  It

 7    would have helped your case if you found out that they were

 8    different.

 9              MR. BARNACLE:  Understood, Your Honor.  I think, you

10    know, sitting here right now, we have not engaged in          09:39

11    class-wide, nationwide discovery because it hasn't been ordered

12    yet.  You know, once it is ordered, we will pull all the

13    documentation and, you know, provide them and show where there

14    are or are not differences.  We haven't engaged in that today.

15              THE COURT:  I understand that.                      09:40

16              Let me have Ms. Wright respond to what you just said.

17              MS. WRIGHT:  Your Honor, there is abundant evidence

18    in the record to support the plaintiffs' Forced Labor Claims

19    with respect to the Nationwide HUSP Class.  There is no dispute

20    that GEO operates a HUSP at each of the 12 civil immigration   09:40

21    detention facilities at issue.  GEO has admitted it that these

22    policies exist.  There is no dispute that the HUSPs are GEO

23    policies.  ICE has come forward and said that each HUSP is from

24    GEO.  It's drafted and negotiated by GEO, not ICE.

25              There also is no dispute that the HUSPs are the same. 09:40
```

1   Pursuant to each HUSP, detained immigrants at each facility are

2   subjected to mandatory, compulsory cleaning and maintenance

3   work in the common areas of their housing units.  That is

4   undisputed.  GEO has admitted it.

5         It's also undisputed that GEO believes that its HUSPs

6   are legal, that they're valid under the PBNDS.

7         It's also undisputed that those who violate the HUSPs

8   or refuse to provide their free labor to GEO pursuant to the

9   HUSPs are subjected to serious harm.  GEO has admitted that at

10  each of the 12 facilities failure to clean an assigned living

11  area is punishable by up to three days in disciplinary

12  segregation or solitary confinement.  So there is really no

13  question that at each facility every single class member is

14  subject to roughly the same harm and that that harm comes from

15  GEO's uniform HUSPs, GEO's uniform policies.

16        If I may, Your Honor, I'd like to return to this idea

17  of a deprivation policy that pertains only to the Forced Labor

18  Class, the Adelanto Forced Labor Class.

19        Your Honor, this idea of GEO's ability to provide

20  nutrition to detainees or withhold it to induce detainees to

21  work for an extra tray, that's one element of the broader

22  compulsion scheme.  That's one element of the serious harm that

23  GEO wields in order to compel detainee labor.

24        GEO also threatens detainees with disciplinary

25  segregation, with solitary confinement for refusing to clean.

1    That's in the record.

2           GEO threatens to revoke --

3           THE COURT:  Right.  The problem with that is, though,

4    that, yeah, there is some evidence that, you know, if they

5    work, the guards might give them an extra tray, if they do this      09:42

6    on an isolated incident, they might get that benefit.  But what

7    is there for me to conclude that that is a policy that applies

8    to all detainees, or is that a requirement, in your view, that

9    that policy of reward or deprivation is applied uniformly or

10   fairly uniformly throughout the detainees?                           09:43

11          MS. WRIGHT:  Your Honor, in the record there are

12   emails from Warden Janecka, the warden of Adelanto, instructing

13   everybody, all GEO officials to provide detainee kitchen crews

14   with extra food as an inducement for them to work.  There are

15   emails in the record of Warden Janecka requiring GEO officials      09:43

16   throughout the entire facility to suspend all recreation

17   because not a single detainee is working to clean the facility.

18   That's not voluntary.

19          GEO has admitted in this case that recreation is a

20   personal necessity.  And we have evidence of the warden of the      09:43

21   facility instructing that all recreation is suspended because

22   detainees are not cleaning.

23          We have evidence that's abundant in the record that

24   GEO operates a housing unit sanitation policy at Adelanto, and

25   pursuant to that policy, each and every detainee is made to         09:44

1    clean and sanitize common areas of their housing units, and

2    that violates the PBNDS.  And if they refuse, we have the

3    evidence from GEO's own handbook, the Corporate Supplemental

4    Detainee Handbook at Adelanto as well as the testimony of each

5    of the four named plaintiffs that refusal to comply with an                09:44

6    officer's orders to pick up a mop can lead to disciplinary

7    segregation.  It can lead to your bunk being tossed.  It can

8    lead to disciplinary housing classifications, which is a way

9    that GEO controls a detainee's personal security.  All of these

10   things are part of GEO's compulsion scheme.                               09:44

11          The intent of the scheme which, again, is the first

12   prong of the TVPA inquiry, GEO's intent in threatening harm,

13   there is evidence in the record of what GEO's intent exactly

14   is.  GEO's intent is to maximize profits by minimizing costs.

15   Under the terms of its contract, its fixed cost contract, every           09:45

16   penny that GEO saves goes directly to its bottom line.

17          So GEO relies on detainee labor for nearly every

18   aspect, nearly every non-security aspect at Adelanto.  Why?

19   Because GEO doesn't have to pay anybody from the outside to

20   come in.  They don't have to pay the minimum wage for anybody            09:45

21   else to do that work.  So every time GEO can compel a detained

22   immigrant to pick up a mop, GEO is saving money that goes

23   straight to its bottom line.  It's undeniable that GEO relies

24   on detainee labor to maintain and operate the facility.

25          THE COURT:  Let me have Mr. -- again, I forget your                09:45

```
 1   name -- Mr. Barnacle have the last word.
 2            MR. BARNACLE:  Thank you, Your Honor.  I think I'll
 3   take these in reverse order.  I think the argument that was
 4   just made regarding the undeniability of GEO's profitability on
 5   the backs of this Voluntary Work Program and the HUSP is not        09:46
 6   only deniable, it's not true.
 7            In the State of Washington v. GEO case, there is
 8   testimony in that record from the administrator of finance that
 9   the way pricing goes on these contracts is if you don't have a
10   Voluntary Work Program, which they are required to have, they       09:46
11   will staff this with outside labor, and they have a profit
12   markup margin on that outside labor.  So, in fact, it costs GEO
13   money.  They don't get to profit off of any labor at the
14   Adelanto facility.  Where if the VWP doesn't exist --
15            THE COURT:  Wait.  You lost me on that.  Can you           09:46
16   backtrack and repeat that again.
17            MR. BARNACLE:  Yeah.  I think the argument is that
18   GEO profits off of the Voluntary Work Program.
19            THE COURT:  Right.  Because if it doesn't have the
20   detainees perform the work, it has to have outside people do        09:47
21   it, and that's a cost.
22            MR. BARNACLE:  It is a cost.  But when you're pricing
23   the contract from the beginning and when ICE tells GEO it has
24   to have a Voluntary Work Program, they don't have a choice.
25   They have to operate certain amounts of labor internally            09:47
```

1  through that program by necessity through ICE.  If the

2  Voluntary Work Program literally went away, if it didn't exist

3  at all and GEO priced the contract to ICE, to have outside

4  labor, non-detainee labor come and do that work, they get a ten

5  percent profit markup on that outside labor.                    09:47

6          THE COURT:  That's at the inception of the contract.

7          MR. BARNACLE:  Yes.

8          THE COURT:  Once the contract gets signed then you're

9  locked into either using the detainees or using outside labor.

10          MR. BARNACLE:  That is true.  If there was            09:47

11  automatically a change in that and say the detainee labor was

12  entitled to minimum wage, that would be a change in

13  circumstances that would require a repricing of the contract.

14          You know, I think the evidence is not clear.  It's

15  not undisputed in the record that the HUSPs at every facility   09:48

16  are exactly the same.  Plaintiffs have admitted in this case

17  and they've actually argued that HUSPs are locally drafted and

18  locally negotiated.  So it just doesn't make sense that every

19  single HUSP would be identical to the one that we have access

20  to here at the Adelanto facility.                               09:48

21          THE COURT:  Again, the HUSPs are not so intricate

22  that -- I mean, basically, says that the detainees are required

23  to help in cleaning or clean the common areas, right?  There's

24  not a lot of intricacy in that that would require really major

25  differences among different programs, is there?  I mean, what   09:48

1    could be the differences?

2          MR. BARNACLE:  I don't know.  I don't know.  What I

3    do know is that even when we're looking at the HUSP at the

4    Adelanto facility that says that detainees are responsible for

5    cleaning their cells or their bunks and --                          09:49

6          THE COURT:  Right.  But that's straight out of the

7    PBND, right?

8          MR. BARNACLE:  And their common living areas, that's

9    what the HUSP would say.  It's fine to make that argument that

10   that's the policy and that's generally what GEO requires, but       09:49

11   if you look at the actual testimony in this case, particularly

12   from Plaintiff Novoa who was a janitor, he worked as a

13   Voluntary Work Program janitor, his testimony in this case is

14   that there are two separate facilities.  There is an east

15   facility and a west facility.  The east facility is a wide open     09:49

16   space with rows of bunk beds.  The west facility is a common

17   living area with pods with cells that have four people.  He

18   testified that when he was a Voluntary Work Program janitor and

19   he did work at the east facility, his responsibility was to

20   clean the bunks and clean all the common living areas.  So his      09:50

21   testimony is, as a VWP he's getting a dollar a day.  He is

22   doing that cleaning.  And really the only obligation of the

23   detainee in that circumstance is to clean up their bunk.

24          In the west facility, he testified that it's the

25   detainees' responsibility to clean the inside of their cells       09:50

```
 1    and that it's the janitor's job to clean the common living

 2    area.  That's his testimony.  So even at the Adelanto facility,

 3    his testimony shows that's perfectly compliant with the PBNDS.

 4    That's compliant with Section 5.8.  So it's unclear that in

 5    practice the HUSP is even operated the way that they're            09:50

 6    alleging it is.  Because you have -- you know, it's actually,

 7    per his testimony, it's exactly the way that Section 5.8 says.

 8              THE COURT:  Right.  I understand.  But that doesn't

 9    solve the issue.

10              So I think I've heard enough.  What I'm going to do      09:50

11    is, I am going to certify the class and grant the plaintiffs'

12    motion.  And I'll say a little word about the motion to

13    exclude.  I think that's supposed to be noticed for

14    December 2nd.  The issue has been brought as an ex parte

15    application.  I realize there was a previous ex parte            09:51

16    application, but I think I'm going to deny that and vacate the

17    hearing on December 2nd.  An order will issue.

18              Once again, thank you for your briefing.  Thank you

19    for your argument.  Thank you for the detainees being here.

20              I'll issue the order shortly.  Thank you.              09:51

21              MR. BARNACLE:  Thank you.

22              MS. WRIGHT:  Thank you.

23                        (Proceedings concluded.)

24                             -o0o-

25
```

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4            I, PHYLLIS A. PRESTON, FEDERAL OFFICIAL REALTIME

5    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

6    THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

7    PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

8    FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

9    STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

10   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

11   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

12   THE UNITED STATES.

13

14

15                    DATED THIS 22ND DAY OF NOVEMBER, 2019

16

17

18                    /s/ PHYLLIS A. PRESTON

19                    _____

20                    PHYLLIS A. PRESTON, CSR No. 8701, FCRR

21                    FEDERAL OFFICIAL COURT REPORTER

22

23

24

25

## $

**$20** [1] - 13:7

## /

**/s** [1] - 25:18

## 1

**1** [1] - 3:3
**1016** [1] - 2:8
**11th** [1] - 4:8
**12** [2] - 17:20, 18:10
**13** [1] - 4:4
**17-2514-JGB** [2] - 1:10, 3:4
**1700** [1] - 2:16
**18** [2] - 1:17, 3:1
**1900** [1] - 2:16

## 2

**2019** [3] - 1:17, 3:1, 25:15
**22ND** [1] - 25:15
**23** [1] - 4:22
**28** [1] - 25:7
**2nd** [2] - 24:14, 24:17

## 3

**3470** [1] - 1:24
**37209** [1] - 2:11

## 5

**5** [2] - 13:5, 13:7
**5.8** [2] - 24:4, 24:7
**500** [1] - 2:5

## 7

**75202** [1] - 2:6
**753** [1] - 25:7

## 8

**80202** [1] - 2:16
**8701** [1] - 25:20

## 9

**900** [1] - 2:5
**90069** [1] - 2:8
**90568** [1] - 2:10
**92501** [1] - 1:24
**9:21** [1] - 1:18

## A

**a.m** [1] - 1:18
**ABDIAZIZ** [1] - 1:7

**ability** [1] - 18:19
**able** [1] - 11:24
**ABOVE** [1] - 25:10
**ABOVE-ENTITLED** [1] - 25:10
**absolutely** [3] - 16:16, 16:21, 17:2
**abundant** [2] - 17:17, 19:23
**abuse** [1] - 5:20
**abusive** [1] - 9:8
**access** [1] - 22:19
**account** [1] - 14:4
**accounts** [3] - 14:3, 14:8, 14:10
**accurate** [1] - 13:4
**Act** [1] - 9:3
**actions** [2] - 7:2, 8:24
**activities** [1] - 9:22
**actual** [1] - 23:11
**Adelanto** [18] - 3:25, 4:7, 4:18, 8:2, 8:15, 9:13, 11:16, 16:3, 16:7, 18:18, 19:12, 19:24, 20:4, 20:18, 21:14, 22:20, 23:4, 24:2
**administrator** [1] - 21:8
**admitted** [6] - 12:14, 17:21, 18:4, 18:9, 19:19, 22:16
**affect** [2] - 9:23, 10:16
**afford** [1] - 13:15
**agree** [1] - 12:20
**AHDOOT** [1] - 2:7
**ahead** [1] - 3:23
**AKERMAN** [1] - 2:15
**allegation** [2] - 13:25, 14:19
**alleged** [2] - 12:21, 13:24
**alleges** [1] - 13:18
**alleging** [1] - 24:6
**almost** [5] - 9:21, 12:11, 12:24, 13:2, 13:13
**amount** [1] - 14:9
**amounts** [2] - 14:11, 21:25
**analysis** [5] - 6:9, 6:11, 6:19, 6:20, 10:25
**AND** [3] - 25:5, 25:8, 25:10
**Andrew** [1] - 3:7
**ANDREW** [2] - 2:9, 2:10
**APPEARANCES** [1] - 2:1

**appearances** [1] - 3:6
**appearing** [1] - 3:10
**application** [2] - 24:15, 24:16
**applied** [1] - 19:9
**applies** [1] - 19:7
**apply** [1] - 11:15
**approach** [1] - 11:3
**appropriately** [1] - 11:25
**area** [3] - 18:11, 23:17, 24:2
**areas** [5] - 18:3, 20:1, 22:23, 23:8, 23:20
**argue** [1] - 15:19
**argued** [1] - 22:17
**argues** [1] - 5:2
**arguing** [2] - 9:18, 14:14
**argument** [8] - 11:15, 12:7, 12:10, 13:1, 21:3, 21:17, 23:9, 24:19
**arguments** [2] - 5:10, 15:19
**arises** [1] - 9:2
**aspect** [3] - 15:14, 20:18
**assigned** [1] - 18:10
**assuming** [1] - 14:21
**attempt** [2] - 17:1, 17:6
**attempted** [2] - 17:3, 17:4
**attempting** [1] - 5:17
**automatically** [1] - 22:11
**Avenue** [1] - 2:8
**avoid** [1] - 6:17
**await** [1] - 8:9

## B

**background** [2] - 6:16, 7:6
**backs** [1] - 21:5
**backtrack** [1] - 21:16
**barnacle** [2] - 11:11, 21:1
**BARNACLE** [25] - 2:15, 4:11, 11:9, 11:12, 11:14, 11:21, 12:20, 13:17, 14:25, 15:17, 16:12, 16:16, 16:19, 16:24, 17:2, 17:4, 17:9, 21:2, 21:17, 21:22, 22:7, 22:10, 23:2, 23:8, 24:21
**Barnacle** [2] - 4:12,

11:12
**based** [2] - 15:16, 15:20
**basic** [20] - 12:3, 12:5, 12:11, 12:12, 12:14, 12:17, 12:19, 12:24, 13:2, 13:6, 13:7, 13:8, 13:10, 13:12, 13:14, 13:15, 14:2, 14:19, 14:22, 15:6
**basis** [1] - 10:22
**beds** [1] - 23:16
**beginning** [1] - 21:23
**behalf** [4] - 1:8, 3:10, 3:14, 4:12
**believes** [1] - 18:5
**benefit** [1] - 19:6
**benefits** [1] - 10:4
**BERNAL** [1] - 1:5
**better** [1] - 9:11
**between** [2] - 13:23, 16:18
**black** [1] - 13:20
**board** [1] - 12:4
**bodies** [1] - 9:13
**Boggs** [3] - 4:13, 11:6, 11:8
**bottled** [3] - 13:21, 13:22
**bottom** [2] - 20:16, 20:23
**bought** [2] - 12:17, 13:21
**Box** [1] - 2:10
**brief** [1] - 14:8
**briefing** [1] - 24:18
**broader** [1] - 18:21
**brought** [1] - 24:14
**bunk** [3] - 20:7, 23:16, 23:23
**bunks** [2] - 23:5, 23:20
**burden** [1] - 16:10
**BURNS** [1] - 2:4
**buy** [8] - 12:11, 12:19, 13:5, 13:14, 14:2, 14:6, 14:19, 15:6
**buying** [9] - 12:13, 13:2, 13:6, 13:10, 13:11, 13:12, 14:18, 14:22
**buys** [2] - 13:8, 13:9
**BY** [4] - 2:4, 2:7, 2:10, 2:15

## C

**calendar** [1] - 4:14
**CALIFORNIA** [3] - 1:2, 3:1, 25:6

**California** [4] - 1:16, 1:24, 2:8, 11:4
**Campos** [2] - 4:3, 8:16
**CAMPOS** [1] - 1:7
**Case** [1] - 3:3
**case** [19] - 7:24, 8:8, 8:14, 8:22, 10:3, 10:4, 10:8, 10:16, 11:13, 13:16, 14:16, 15:18, 15:19, 17:7, 19:19, 21:7, 22:16, 23:11, 23:13
**cells** [3] - 23:5, 23:17, 23:25
**Central** [1] - 11:3
**CENTRAL** [2] - 1:2, 25:6
**certain** [2] - 15:23, 21:25
**CERTIFICATE** [1] - 25:1
**certified** [2] - 15:9, 15:15
**certify** [2] - 4:15, 24:11
**CERTIFY** [1] - 25:6
**change** [2] - 22:11, 22:12
**characteristics** [1] - 7:25
**CHAREST** [3] - 2:4, 2:4, 3:13
**Charest** [1] - 3:13
**childhood** [1] - 8:19
**choice** [1] - 21:24
**Circuit** [2] - 9:1, 11:4
**circumstance** [1] - 23:23
**circumstances** [5] - 6:15, 6:16, 7:5, 7:14, 22:13
**civil** [2] - 8:13, 17:20
**civilly** [3] - 8:1, 8:8, 9:20
**claim** [3] - 4:17, 5:11, 6:4
**Claims** [1] - 17:18
**Class** [9] - 4:19, 11:19, 11:22, 11:23, 15:1, 15:22, 17:19, 18:18
**class** [13] - 5:1, 5:3, 7:3, 7:21, 7:24, 8:7, 10:22, 11:25, 15:8, 15:16, 17:11, 18:13, 24:11
**class-wide** [2] - 10:22, 17:11
**classes** [5] - 4:15, 4:16, 4:19, 11:18

**classifications** [1] - 20:8
**clean** [10] - 18:10, 18:25, 19:17, 20:1, 22:23, 23:20, 23:23, 23:25, 24:1
**cleaning** [5] - 18:2, 19:22, 22:23, 23:5, 23:22
**clear** [2] - 5:18, 22:14
**CLERK** [1] - 3:3
**CODE** [1] - 25:7
**coerced** [1] - 7:15
**Colin** [1] - 4:11
**COLIN** [1] - 2:15
**Colorado** [2] - 2:16, 15:15
**commissary** [6] - 12:11, 12:23, 13:21, 14:3, 14:8, 14:10
**common** [9] - 6:23, 7:25, 18:3, 20:1, 22:23, 23:8, 23:16, 23:20, 24:1
**commonality** [7] - 4:23, 4:25, 5:2, 5:9, 5:13, 6:4, 11:10
**compel** [5] - 6:15, 8:24, 10:23, 18:23, 20:21
**compelled** [3] - 7:3, 7:15, 7:22
**complain** [1] - 10:6
**complaint** [1] - 13:19
**complete** [2] - 8:2, 9:12
**compliant** [3] - 10:8, 24:3, 24:4
**comply** [1] - 20:5
**component** [2] - 7:12, 7:13
**compulsion** [3] - 9:11, 18:22, 20:10
**compulsory** [1] - 18:2
**conceived** [1] - 9:11
**conclude** [1] - 19:7
**concluded** [1] - 24:23
**conditions** [1] - 8:4
**conduct** [3] - 7:4, 7:7, 7:19
**CONFERENCE** [1] - 25:11
**confinement** [3] - 8:4, 18:12, 18:25
**CONFORMANCE** [1] - 25:11
**consequences** [2] - 9:21, 10:2
**consuming** [1] - 14:23
**contemplated** [1] -

6:25
**context** [1] - 7:10
**contract** [7] - 20:15, 21:23, 22:3, 22:6, 22:8, 22:13
**contracts** [1] - 21:9
**control** [3] - 8:3, 9:12, 9:21
**controls** [2] - 9:13, 20:9
**Corporate** [1] - 20:3
**CORRECT** [1] - 25:8
**cost** [3] - 20:15, 21:21, 21:22
**costs** [2] - 20:14, 21:12
**counsel** [2] - 3:5, 15:17
**country** [3] - 8:17, 8:19, 11:17
**COURT** [50] - 1:1, 3:9, 3:12, 3:15, 3:18, 3:22, 4:1, 4:5, 4:10, 4:13, 6:3, 6:22, 7:8, 7:12, 7:17, 8:11, 8:21, 9:4, 9:15, 10:9, 10:14, 11:6, 11:8, 11:11, 11:13, 11:20, 12:17, 13:4, 14:21, 15:12, 16:10, 16:14, 16:17, 16:22, 17:1, 17:3, 17:6, 17:15, 19:3, 20:25, 21:15, 21:19, 22:6, 22:8, 22:21, 23:6, 24:8, 25:5, 25:21
**Court** [4] - 1:23, 1:23, 3:13, 3:21
**Court's** [1] - 3:19
**CPA** [1] - 4:24
**crews** [1] - 19:13
**criminal** [1] - 8:10
**CSR** [2] - 1:22, 25:20

## D

**daily** [1] - 9:22
**Dallas** [1] - 2:6
**Daniel** [1] - 3:13
**DANIEL** [1] - 2:4
**DATED** [1] - 25:15
**DAY** [1] - 25:15
**days** [1] - 18:11
**deal** [1] - 15:15
**December** [2] - 24:14, 24:17
**decides** [1] - 9:14
**decision** [2] - 8:11, 15:15
**declaration** [1] - 13:19

**defeat** [2] - 5:9, 5:13
**defendant** [1] - 4:12
**Defendant** [1] - 1:12, 2:14
**defined** [1] - 6:12
**defines** [1] - 6:2
**dehydrated** [2] - 12:22, 13:19
**demonstrates** [1] - 9:7
**deniable** [1] - 21:6
**Denver** [1] - 2:16
**deny** [1] - 24:16
**deportation** [2] - 8:15, 8:16
**Deprivation** [1] - 9:9
**deprivation** [4] - 12:2, 13:24, 18:17, 19:9
**deprived** [7] - 5:4, 12:3, 12:5, 12:22, 14:1, 14:20, 15:4
**detained** [6] - 3:24, 8:2, 8:9, 9:20, 18:1, 20:21
**Detainee** [1] - 20:4
**detainee** [7] - 9:8, 9:13, 10:8, 10:10, 10:15, 10:18, 15:24, 18:23, 19:13, 19:17, 19:25, 20:17, 20:24, 22:4, 22:11, 23:23
**detainee's** [1] - 20:9
**detainees** [18] - 6:6, 7:9, 9:17, 10:2, 10:11, 10:23, 13:1, 18:20, 18:24, 19:8, 19:10, 19:22, 21:20, 22:9, 22:22, 23:4, 24:19
**detainees'** [2] - 7:14, 23:25
**Detention** [1] - 4:18
**detention** [3] - 8:13, 13:23, 17:21
**determinations** [1] - 5:12
**differences** [6] - 16:18, 16:20, 16:23, 17:14, 22:25, 23:1
**different** [3] - 12:13, 17:8, 22:25
**dire** [1] - 12:21
**directly** [1] - 20:16
**disciplinary** [4] - 18:11, 18:24, 20:6, 20:8
**discovery** [1] - 17:11
**dispute** [3] - 17:19, 17:22, 17:25
**disputed** [1] - 4:22

**DISTRICT** [5] - 1:1, 1:2, 1:5, 25:5, 25:6
**District** [2] - 1:23, 11:3
**DIVISION** [1] - 1:3
**DIVISION-RIVERSIDE** [1] - 1:3
**DO** [1] - 25:6
**documentation** [1] - 17:13
**dollar** [5] - 5:5, 14:6, 15:5, 15:6, 23:21
**dollars** [2] - 14:2, 14:5
**drafted** [2] - 17:24, 22:17
**during** [1] - 13:22

## E

**east** [3] - 23:14, 23:15, 23:19
**EASTERN** [1] - 1:3
**EDCV** [1] - 3:3
**eDCV** [1] - 1:10
**either** [5] - 5:7, 7:14, 10:2, 16:12, 22:9
**element** [2] - 18:21, 18:22
**elements** [1] - 4:22
**emails** [2] - 19:12, 19:15
**emotional** [1] - 6:13
**engaged** [2] - 17:10, 17:14
**entire** [2] - 13:23, 19:16
**entitled** [3] - 11:25, 15:24, 22:12
**ENTITLED** [1] - 25:10
**equal** [1] - 11:16
**eventually** [1] - 14:23
**evidence** [14] - 10:1, 10:21, 15:7, 16:5, 16:11, 16:12, 16:14, 16:17, 19:4, 19:20, 19:23, 20:3, 20:13, 22:14
**ex** [2] - 24:14, 24:15
**exactly** [4] - 9:6, 20:13, 22:16, 24:7
**examine** [1] - 15:2
**example** [1] - 10:20
**exclude** [1] - 24:13
**exclusively** [4] - 12:12, 12:24, 13:2, 13:14
**executed** [1] - 4:18
**exemplar** [1] - 10:21
**exercise** [1] - 6:6
**exist** [4] - 5:3, 17:22, 21:14, 22:2

**expect** [5] - 12:10, 12:23, 13:18, 14:13, 14:15
**explain** [2] - 14:12, 14:13
**extra** [3] - 18:21, 19:5, 19:14

## F

**facilities** [5] - 11:17, 16:4, 17:21, 18:10, 23:14
**Facility** [1] - 4:18
**facility** [20] - 9:7, 13:20, 16:6, 18:1, 18:13, 19:16, 19:17, 19:21, 20:24, 21:14, 22:15, 22:20, 23:4, 23:15, 23:16, 23:19, 23:24, 24:2
**facility-wide** [1] - 9:7
**facing** [1] - 9:20
**fact** [4] - 9:19, 10:17, 16:22, 21:12
**facts** [1] - 12:25
**factual** [4] - 11:23, 15:3, 15:23, 16:1
**failed** [1] - 5:6
**failure** [1] - 18:10
**fairly** [1] - 19:10
**FCRR** [2] - 1:22, 25:20
**FEDERAL** [2] - 25:4, 25:21
**federal** [1] - 1:23
**felt** [4] - 7:3, 7:21, 7:22, 10:19
**finally** [1] - 14:17
**finance** [1] - 21:8
**fine** [1] - 23:9
**first** [6] - 4:21, 6:8, 6:19, 8:25, 12:1, 20:11
**fixed** [1] - 20:15
**flee** [1] - 8:17
**focus** [3] - 4:21, 7:4, 7:18
**focused** [1] - 11:18
**food** [4] - 13:5, 13:11, 13:12, 19:14
**FOR** [2] - 25:5
**force** [1] - 6:6
**forced** [6] - 11:19, 12:15, 12:19, 14:1, 14:6, 14:14
**Forced** [10] - 5:16, 6:18, 11:19, 11:22, 15:1, 15:22, 17:18, 18:17, 18:18
**FOREGOING** [1] -

25:8
**forget** [1] - 20:25
**FORMAT** [1] - 25:10
**formerly** [1] - 8:1
**forward** [2] - 3:5,
17:23
**four** [8] - 3:20, 4:16,
12:4, 15:2, 15:7,
15:20, 20:5, 23:17
**framework** [1] - 5:15
**free** [1] - 18:8
**FREE** [3] - 2:9, 2:10,
3:7
**Free** [1] - 3:7
**FUENTES** [2] - 1:7,
4:6
**Fuentes** [2] - 4:4, 8:16
**funds** [1] - 12:11

## G

**gap** [1] - 13:23
**generally** [1] - 23:10
**GEO** [46] - 1:11, 3:4,
4:12, 5:2, 5:17, 5:22,
7:9, 8:3, 8:6, 8:22,
9:7, 9:12, 9:13, 9:21,
10:2, 10:5, 10:22,
17:20, 17:21, 17:22,
17:24, 18:4, 18:5,
18:8, 18:9, 18:23,
18:24, 19:2, 19:13,
19:15, 19:19, 19:24,
20:9, 20:16, 20:17,
20:19, 20:21, 20:22,
20:23, 21:7, 21:12,
21:18, 21:23, 22:3,
23:10
**Geo's** [20] - 6:9, 6:19,
7:2, 7:4, 7:19, 8:24,
9:5, 9:16, 9:23,
10:25, 18:15, 18:19,
20:3, 20:10, 20:12,
20:13, 20:14, 21:4
**given** [1] - 12:16
**grant** [1] - 24:11
**GROUP** [1] - 1:11
**Group** [2] - 3:4, 4:12
**guards** [1] - 19:5
**guess** [1] - 4:25

## H

**half** [1] - 3:25
**handbook** [1] - 20:3
**Handbook** [1] - 20:4
**happy** [1] - 12:8
**harm** [25] - 5:6, 5:20,
5:25, 6:2, 6:10, 6:12,
6:13, 6:14, 6:17,

6:20, 7:17, 9:1, 9:2,
9:5, 9:8, 9:23, 9:24,
11:1, 18:9, 18:14,
18:22, 20:12
**hear** [2] - 11:6, 11:8
**heard** [1] - 24:10
**hearing** [2] - 4:24,
24:17
**held** [1] - 9:1
**HELD** [1] - 25:9
**help** [2] - 10:8, 22:23
**helped** [1] - 17:7
**helpful** [1] - 5:15
**HEREBY** [1] - 25:6
**highly** [3] - 5:11, 8:14,
8:20
**Hollywood** [1] - 2:8
**Honor** [9] - 3:16,
3:24, 4:2, 4:9, 4:11,
5:14, 7:18, 8:12,
8:25, 10:12, 10:20,
11:9, 15:17, 17:9,
17:17, 18:16, 18:19,
19:11, 21:2
**HONORABLE** [1] - 1:5
**housing** [4] - 18:3,
19:24, 20:1, 20:8
**HUSP** [17] - 4:19,
11:22, 15:14, 15:16,
16:2, 16:3, 16:4,
16:6, 17:19, 17:20,
17:23, 18:1, 21:5,
22:19, 23:3, 23:9,
24:5
**HUSPs** [9] - 17:22,
17:25, 18:5, 18:7,
18:9, 18:15, 22:15,
22:17, 22:21

## I

**ICE** [7] - 5:7, 10:7,
17:23, 17:24, 21:23,
22:1, 22:3
**idea** [2] - 18:16, 18:19
**identical** [1] - 22:19
**identify** [2] - 11:24,
15:3
**immigrant** [1] - 20:22
**immigrants** [2] - 8:1,
18:1
**immigration** [14] -
8:13, 8:22, 9:1, 9:5,
9:17, 9:20, 9:23,
9:24, 10:3, 10:4,
10:7, 10:16, 17:20

25:10
**Inc** [1] - 3:4
**INC** [1] - 1:11
**inception** [1] - 22:6
**incident** [2] - 10:17,
19:6
**incurring** [1] - 6:17
**individual** [5] - 5:8,
5:12, 7:3, 7:21,
15:24
**individualized** [3] -
5:11, 6:24, 11:2
**individually** [2] - 1:8,
13:1
**individuals** [1] - 12:10
**induce** [1] - 18:20
**inducement** [1] -
19:14
**inform** [1] - 10:7
**initial** [1] - 11:10
**inquiries** [2] - 5:8,
5:11, 11:2
**inquiry** [8] - 6:4, 6:18,
6:25, 7:2, 7:20, 7:23,
20:12
**inside** [1] - 23:25
**instance** [1] - 5:2
**instead** [1] - 7:4
**instituted** [1] - 4:18
**instructing** [2] -
19:12, 19:21
**intended** [2] - 5:24,
9:7
**intent** [7] - 6:10, 6:19,
10:25, 20:11, 20:12,
20:13, 20:14
**interested** [1] - 4:24
**internally** [1] - 21:25
**interpreted** [1] - 11:4
**intricacy** [1] - 22:24
**intricate** [1] - 22:21
**introduce** [1] - 3:21
**IS** [2] - 25:8, 25:10
**isolated** [3] - 10:9,
10:17, 19:6
**issue** [5] - 17:21, 24:9,
24:14, 24:17, 24:20
**item** [2] - 13:5, 13:8
**Item** [1] - 3:3
**itself** [2] - 11:23, 15:2

## J

**Jackson** [1] - 2:5
**JAIME** [1] - 1:7
**Jaime** [1] - 4:3
**Janecka** [2] - 19:12,
19:15
**janitor** [3] - 23:12,
23:13, 23:18

**janitor's** [1] - 24:1
**JESUS** [1] - 1:5
**job** [1] - 24:1
**JUDGE** [1] - 1:5
**judge** [1] - 10:7
**JUDICIAL** [1] - 25:11
**jump** [1] - 11:24

## K

**KARIM** [1] - 1:7
**Karim** [2] - 8:15, 10:5
**keenly** [1] - 11:18
**kind** [1] - 6:14
**kitchen** [1] - 19:13
**knowingly** [1] - 5:17
**known** [1] - 8:19

## L

**Labor** [10] - 5:16, 6:18,
11:19, 11:23, 15:1,
15:22, 17:18, 18:17,
18:18
**labor** [22] - 5:17, 5:22,
5:25, 6:17, 8:24, 9:8,
10:23, 11:19, 14:14,
18:8, 18:23, 20:17,
20:24, 21:11, 21:12,
21:13, 21:25, 22:4,
22:5, 22:9, 22:11
**laid** [1] - 15:3
**largely** [1] - 15:20
**last** [2] - 15:21, 21:1
**LAW** [1] - 2:9
**law** [1] - 5:20
**lead** [4] - 5:8, 20:6,
20:7, 20:8
**legal** [4] - 5:20, 9:9,
12:1, 18:6
**liability** [1] - 9:2
**line** [2] - 20:16, 20:23
**literally** [2] - 9:13,
22:2
**lives** [1] - 8:4
**living** [5] - 18:10, 23:8,
23:17, 23:20, 24:1
**LLP** [2] - 2:4, 2:15
**locally** [2] - 22:17,
22:18
**locked** [1] - 22:9
**logical** [1] - 13:13
**logically** [1] - 13:4
**look** [9] - 7:1, 7:22,
12:15, 14:3, 14:7,
14:8, 14:17, 15:22,
23:11
**looking** [3] - 11:17,
11:22, 23:3
**losing** [1] - 8:14

**lost** [1] - 21:15
**Lydia** [1] - 3:16
**LYDIA** [1] - 2:5

## M

**maintain** [1] - 20:24
**maintenance** [1] -
18:2
**major** [1] - 22:24
**malnutrition** [1] -
12:23
**Mancia** [2] - 4:7, 8:18
**MANCIA** [2] - 1:7, 4:9
**mandatory** [1] - 18:2
**margin** [1] - 21:12
**markup** [2] - 21:12,
22:5
**MATTER** [1] - 25:10
**matter** [1] - 4:14
**matters** [2] - 4:20,
10:25
**maximize** [1] - 20:14
**Maya** [1] - 3:10
**MAYA** [2] - 2:7, 3:10
**mean** [6] - 7:8, 9:25,
10:10, 10:18, 22:22,
22:25
**means** [8] - 5:18, 5:23,
6:12, 8:16, 8:18,
9:21, 13:9, 13:14
**meet** [2] - 13:7, 15:8
**meeting** [1] - 13:6
**member** [4] - 7:3,
7:21, 11:25, 18:13
**members** [2] - 7:25,
8:8
**Menocal** [1] - 15:15
**met** [2] - 13:10, 13:12
**might** [4] - 10:16,
15:10, 19:5, 19:6
**mind** [1] - 11:13
**minimizing** [1] - 20:14
**minimum** [2] - 20:20,
22:12
**missing** [1] - 13:15
**Monday** [1] - 1:17
**MONDAY** [1] - 3:1
**money** [6] - 14:4,
14:9, 14:11, 14:15,
20:22, 21:13
**month** [1] - 15:21
**months** [2] - 4:4, 4:8
**mop** [2] - 20:6, 20:22
**morning** [13] - 3:9,
3:12, 3:15, 3:16,
3:18, 4:1, 4:2, 4:5,
4:6, 4:9, 4:10, 4:11,
4:13
**most** [1] - 4:22

**motion** [3] - 4:14, 24:12
**motions** [1] - 15:18
**MR** [30] - 3:7, 3:10, 3:13, 4:2, 4:6, 4:9, 4:11, 11:9, 11:12, 11:14, 11:21, 12:20, 13:17, 14:25, 15:7, 16:12, 16:16, 16:19, 16:24, 17:2, 17:4, 17:9, 21:2, 21:17, 21:22, 22:7, 22:10, 23:2, 23:8, 24:21
**MS** [21] - 3:16, 3:19, 3:23, 4:3, 4:7, 5:14, 6:8, 6:24, 7:10, 7:16, 7:18, 8:12, 8:25, 9:6, 10:1, 10:12, 10:20, 11:7, 17:17, 19:11, 24:22

**N**

**name** [2] - 3:7, 21:1
**named** [6] - 3:20, 7:1, 12:4, 15:7, 15:20, 20:5
**Nashville** [1] - 2:11
**National** [1] - 11:21
**nationwide** [1] - 17:11
**Nationwide** [4] - 4:19, 11:22, 17:19
**nature** [1] - 8:13
**nearly** [2] - 20:17, 20:18
**necessarily** [1] - 13:16
**necessary** [1] - 15:2
**necessities** [23] - 12:2, 12:3, 12:5, 12:11, 12:12, 12:14, 12:17, 12:18, 12:19, 12:24, 13:3, 13:7, 13:8, 13:10, 13:12, 13:14, 13:15, 14:2, 14:7, 14:19, 14:20, 14:22, 15:6
**necessity** [4] - 5:4, 13:6, 19:20, 22:1
**need** [1] - 15:5
**negate** [1] - 12:18
**negative** [1] - 10:2
**negotiated** [2] - 17:24, 22:18
**next** [2] - 4:3, 6:2
**Ninth** [2] - 9:1, 11:4
**non** [2] - 20:18, 22:4
**non-detainee** [1] - 22:4
**non-security** [1] -

20:18
**nonbasic** [1] - 12:18
**nonphysical** [1] - 6:14
**note** [1] - 8:7
**nothing** [1] - 16:7
**noticed** [1] - 24:13
**NOVEMBER** [2] - 3:1, 25:15
**November** [1] - 1:17
**Novoa** [4] - 3:4, 3:24, 8:18, 23:12
**NOVOA** [2] - 1:7, 4:2
**number** [2] - 7:25, 15:23
**numerous** [1] - 11:23
**nutrition** [1] - 18:20

**O**

**objective** [3] - 7:13, 7:22, 10:24
**obligation** [1] - 23:22
**obtain** [1] - 9:8
**obtaining** [2] - 5:17, 5:22
**October** [1] - 4:8
**OF** [9] - 1:2, 1:15, 2:9, 25:1, 25:6, 25:8, 25:11, 25:15
**officer's** [1] - 20:6
**officers** [1] - 10:5
**OFFICES** [1] - 2:9
**OFFICIAL** [3] - 25:1, 25:4, 25:21
**Official** [1] - 1:23
**officials** [2] - 19:13, 19:15
**often** [1] - 4:22
**once** [3] - 17:12, 22:8, 24:18
**one** [11] - 4:15, 4:19, 9:1, 10:22, 11:19, 13:11, 13:22, 16:7, 18:21, 18:22, 22:19
**ones** [1] - 14:23
**open** [1] - 23:15
**operate** [2] - 20:24, 21:25
**operated** [2] - 8:4, 24:5
**operates** [3] - 9:7, 17:20, 19:24
**ORAL** [1] - 1:15
**order** [6] - 10:23, 11:24, 18:23, 21:3, 24:17, 24:20
**ordered** [2] - 17:11, 17:12
**orders** [1] - 20:6
**outside** [8] - 14:12,

20:19, 21:11, 21:12, 21:20, 22:3, 22:5, 22:9
**overall** [1] - 15:1
**own** [1] - 20:3

**P**

**PAGE** [1] - 25:10
**Palm** [1] - 2:8
**part** [3] - 6:3, 6:8, 20:10
**parte** [2] - 24:14, 24:15
**participates** [1] - 15:4
**particular** [2] - 5:1, 10:14
**particularly** [3] - 4:24, 13:18, 23:11
**parts** [1] - 6:19
**past** [1] - 11:5
**pattern** [1] - 5:23
**pay** [2] - 20:19, 20:20
**PBND** [1] - 23:7
**PBNDS** [3] - 18:6, 20:2, 24:3
**PC** [1] - 2:7
**penny** [1] - 20:16
**people** [4] - 15:9, 15:10, 21:20, 23:17
**per** [1] - 24:7
**perceive** [3] - 7:20, 8:24, 11:1
**perceived** [1] - 7:1
**percent** [1] - 22:5
**percentage** [1] - 14:9
**perception** [3] - 6:21, 7:6, 7:17
**perfectly** [1] - 24:3
**perform** [5] - 5:25, 6:6, 6:17, 7:15, 21:20
**permission** [1] - 3:19
**permitted** [1] - 5:7
**person** [14] - 5:24, 6:16, 7:5, 7:8, 7:10, 7:11, 7:13, 7:19, 7:23, 7:24, 8:8, 8:23, 11:1, 13:7
**person's** [2] - 6:20, 7:6
**personal** [2] - 19:20, 20:9
**pertains** [1] - 18:17
**PHYLLIS** [4] - 1:22, 25:4, 25:18, 25:20
**physical** [3] - 5:19, 5:25, 6:13
**pick** [2] - 20:6, 20:22
**piece** [1] - 13:25

**place** [1] - 6:5
**Plaintiff** [1] - 23:12
**plaintiff** [1] - 7:1
**plaintiffs** [13] - 3:8, 3:11, 3:14, 3:17, 3:20, 4:15, 4:17, 5:4, 12:4, 15:8, 15:21, 20:5, 22:16
**Plaintiffs** [2] - 1:9, 2:3
**plaintiffs'** [4] - 7:11, 16:10, 17:18, 24:11
**plan** [1] - 5:23
**play** [1] - 8:23
**PO** [1] - 2:10
**pods** [1] - 23:17
**point** [5] - 11:6, 11:8, 15:1, 16:1, 16:20
**policies** [4] - 4:17, 8:5, 9:5, 9:16, 9:19, 9:23, 11:15, 17:22, 17:23, 18:15
**policy** [12] - 6:5, 9:11, 10:10, 12:2, 15:16, 15:21, 18:17, 19:7, 19:9, 19:24, 19:25, 23:10
**Policy** [1] - 9:10
**population** [2] - 8:14, 8:20
**positive** [1] - 10:4
**possession** [1] - 16:15
**possibility** [1] - 10:11
**power** [2] - 8:3, 9:12
**practice** [1] - 24:5
**precisely** [1] - 16:6
**predicates** [4] - 11:23, 15:3, 15:23, 16:1
**predominance** [5] - 4:23, 5:3, 5:9, 5:13, 11:10
**preference** [1] - 12:10
**presented** [1] - 16:17
**PRESIDING** [1] - 1:5
**PRESTON** [4] - 1:22, 25:4, 25:18, 25:20
**previous** [1] - 24:15
**priced** [1] - 22:3
**pricing** [2] - 21:9, 21:22
**problem** [1] - 19:3
**procedures** [1] - 8:5
**PROCEEDINGS** [2] - 1:15, 25:9
**proceedings** [1] - 9:24, 24:23
**process** [2] - 5:21, 9:9
**produced** [1] - 16:19
**profit** [2] - 21:11, 21:13, 22:5

**profitability** [1] - 21:4
**profits** [2] - 20:14, 21:18
**Program** [11] - 14:5, 14:10, 14:16, 15:5, 21:5, 21:10, 21:18, 21:24, 22:2, 23:13, 23:18
**program** [1] - 22:1
**programs** [1] - 22:25
**prohibits** [2] - 5:16, 5:22
**promised** [1] - 12:7
**prong** [2] - 6:11, 20:12
**pronged** [2] - 6:9, 11:3
**Protections** [1] - 9:3
**prove** [1] - 10:21
**provide** [4] - 17:13, 18:8, 18:19, 19:13
**provided** [1] - 12:8
**providing** [1] - 5:17
**psychological** [1] - 6:13
**pull** [1] - 17:12
**punishable** [1] - 18:11
**punitive** [1] - 8:9
**purchase** [1] - 13:22
**purchased** [1] - 13:24
**purchases** [1] - 12:23
**purposes** [1] - 8:9
**PURSUANT** [1] - 25:7
**pursuant** [4] - 4:17, 18:1, 18:8, 19:25

**Q**

**quality** [1] - 12:9
**quantity** [1] - 12:9
**quoting** [1] - 5:23

**R**

**RAMON** [1] - 1:7
**Ramon** [1] - 4:7
**ran** [1] - 13:20
**Raul** [2] - 3:4, 3:24
**RAUL** [1] - 1:7
**reads** [1] - 16:6
**realize** [2] - 16:10, 24:15
**really** [5] - 9:10, 9:11, 18:12, 22:24, 23:22
**REALTIME** [1] - 25:4
**reasonable** [14] - 6:15, 6:20, 7:5, 7:6, 7:8, 7:10, 7:11, 7:13, 7:19, 7:23, 7:24, 8:8, 8:23, 11:1
**receive** [1] - 12:3
**received** [3] - 12:6,

14:5, 15:20
**receiving** [1] - 14:11
**record** [14] - 9:6, 10:1,
12:25, 15:7, 16:5,
16:7, 17:18, 19:1,
19:11, 19:15, 19:23,
20:13, 21:8, 22:15
**recreation** [3] - 19:16,
19:19, 19:21
**refusal** [1] - 20:5
**refuse** [3] - 10:3, 18:8,
20:2
**refusing** [1] - 18:25
**regarding** [2] - 15:21,
21:4
**REGULATIONS** [1] -
25:11
**released** [1] - 4:8
**relief** [2] - 12:1, 15:25
**relies** [2] - 20:17,
20:23
**repeat** [1] - 21:16
**repeating** [1] - 9:15
**REPORTED** [1] - 25:9
**Reporter** [1] - 1:23
**REPORTER** [3] - 25:1,
25:5, 25:21
**REPORTER'S** [1] -
1:15
**represent** [1] - 3:7
**repricing** [1] - 22:13
**reputational** [1] - 6:13
**require** [4] - 5:12,
16:9, 22:13, 22:24
**required** [6] - 5:4, 5:7,
6:25, 8:6, 21:10,
22:22
**requirement** [1] - 19:8
**requirements** [1] -
4:25
**requires** [2] - 16:8,
23:10
**requiring** [1] - 19:15
**resolution** [1] - 6:23
**respect** [2] - 13:17,
17:19
**respond** [2] - 5:10,
17:16
**responsibility** [2] -
23:19, 23:25
**responsible** [1] - 23:4
**restraint** [2] - 5:19, 6:1
**result** [7] - 6:1, 6:5,
8:12, 8:22, 9:16,
9:24, 15:16
**results** [1] - 8:15
**retaliation** [1] - 6:5
**return** [1] - 18:16
**reverse** [1] - 21:3
**reviewed** [1] - 16:20

**revoke** [1] - 19:2
**reward** [1] - 19:9
**risked** [1] - 8:17
**RIVERSIDE** [2] - 1:3,
3:1
**riverside** [2] - 1:16,
1:24
**Roberto** [1] - 4:3
**room** [1] - 11:2
**roughly** [1] - 18:14
**rows** [1] - 23:16
**Rule** [1] - 4:22

## S

**sanitation** [1] - 19:24
**sanitize** [1] - 20:1
**satisfy** [1] - 15:23
**saves** [1] - 20:16
**saving** [1] - 20:22
**scheme** [6] - 5:23, 9:7,
9:9, 18:22, 20:10,
20:11
**scienter** [1] - 6:9
**second** [5] - 6:3, 6:11,
6:20, 11:21, 13:25
**Section** [2] - 24:4,
24:7
**SECTION** [1] - 25:7
**security** [2] - 20:9,
20:18
**see** [4] - 12:12, 12:23,
13:18
**segregation** [3] -
18:12, 18:25, 20:7
**sense** [2] - 14:3, 22:18
**sent** [2] - 8:16, 8:18
**sentence** [1] - 8:10
**sentencing** [1] - 8:9
**separate** [1] - 23:14
**series** [1] - 5:8
**serious** [9] - 5:6, 5:20,
5:25, 6:2, 6:12, 6:14,
9:2, 18:9, 18:22
**serve** [1] - 8:10
**share** [1] - 7:25
**shoes** [1] - 7:11
**shortly** [1] - 24:20
**show** [1] - 17:13
**shows** [4] - 14:7, 15:7,
16:8, 24:3
**sic** [1] - 4:13
**side** [1] - 4:25
**signed** [1] - 22:8
**significant** [1] - 14:11
**similar** [1] - 15:22
**similarly** [1] - 1:8
**single** [5] - 13:22,
16:6, 18:13, 19:17,
22:19

**sitting** [2] - 16:24,
17:10
**situated** [1] - 1:8
**situation** [2] - 12:21,
14:14
**six** [1] - 4:8
**Sixteenth** [1] - 2:16
**slight** [1] - 14:9
**so-called** [1] - 4:19
**sold** [1] - 13:21
**solitary** [2] - 18:12,
18:25
**solve** [1] - 24:9
**sorry** [4] - 10:12, 11:7,
11:11, 11:13
**sort** [1] - 9:11
**source** [1] - 14:15
**sources** [1] - 14:12
**space** [1] - 23:16
**specific** [1] - 16:3
**squarely** [2] - 7:4,
7:19
**staff** [1] - 21:11
**stand** [1] - 3:23
**standard** [3] - 7:23,
8:5, 10:24
**start** [1] - 5:15
**State** [1] - 21:7
**state** [1] - 3:5
**STATES** [4] - 1:1,
25:5, 25:7, 25:12
**States** [1] - 1:23
**status** [1] - 9:17
**Statute** [2] - 5:16
**statute** [4] - 5:18,
5:22, 6:2, 6:12
**STENOGRAPHICAL
LY** [1] - 25:9
**stenojag@aol.com**
[1] - 1:25
**step** [1] - 9:10
**still** [1] - 13:9
**straight** [2] - 20:23,
23:6
**Street** [3] - 1:24, 2:5,
2:16
**stuff** [1] - 13:9
**subclass** [1] - 4:16
**subject** [4] - 6:22, 8:2,
8:3, 18:14
**subjected** [2] - 18:2,
18:9
**subjectively** [2] - 7:3,
7:22
**suffer** [1] - 5:25
**suffering** [1] - 12:22
**sufficiently** [1] - 6:14
**Suite** [2] - 2:5, 2:16
**supplement** [1] - 13:8

**Supplemental** [1] -
20:3
**support** [3] - 12:25,
14:18, 17:18
**supposed** [1] - 24:13
**surrounding** [1] - 6:15
**suspend** [1] - 19:16
**suspended** [1] - 19:21
**switch** [1] - 15:14

## T

**ten** [1] - 22:4
**Tennessee** [1] - 2:11
**terms** [1] - 20:15
**testified** [4] - 10:5,
12:6, 23:18, 23:24
**testimony** [11] - 12:3,
14:7, 15:20, 20:4,
21:8, 23:11, 23:13,
23:21, 24:2, 24:3,
24:7
**Texas** [1] - 2:6
**THAT** [3] - 25:6, 25:7,
25:10
**THE** [57] - 1:11, 3:3,
3:9, 3:12, 3:15, 3:18,
3:22, 4:1, 4:5, 4:10,
4:13, 6:3, 6:22, 7:8,
7:12, 7:17, 8:11,
8:21, 9:4, 9:15, 10:9,
10:14, 11:6, 11:8,
11:11, 11:13, 11:20,
12:17, 13:4, 14:21,
15:12, 16:10, 16:14,
16:17, 16:22, 17:1,
17:3, 17:6, 17:15,
19:3, 20:25, 21:15,
21:19, 22:6, 22:8,
22:21, 23:6, 24:8,
25:5, 25:6, 25:7,
25:8, 25:9, 25:10,
25:11, 25:12
**THEODORE** [1] - 2:7
**Theodore** [1] - 3:10
**therefore** [1] - 5:13
**they've** [3] - 8:17,
12:14, 22:17
**THIS** [1] - 25:15
**threat** [2] - 5:5, 10:22
**threatened** [1] - 7:14
**threatening** [4] - 6:10,
6:19, 10:25, 20:12
**threatens** [3] - 10:2,
18:24, 19:2
**threats** [7] - 5:18,
5:19, 5:20, 6:21, 9:8
**three** [3] - 3:20, 4:15,
4:16, 15:3, 18:11
**throughout** [2] -

19:10, 19:16
**TITLE** [1] - 25:7
**TO** [1] - 25:7
**today** [3] - 3:20, 15:9,
17:14
**tossed** [1] - 20:7
**total** [3] - 4:16, 9:21,
14:9
**trading** [1] - 14:23
**Trafficking** [1] - 9:3
**TRANSCRIPT** [3] -
1:15, 25:8, 25:10
**tray** [2] - 18:21, 19:5
**TRUE** [1] - 25:8
**True** [1] - 14:25
**true** [4] - 12:20, 14:25,
21:6, 22:10
**truly** [3] - 12:5, 14:13,
15:4
**trying** [2] - 15:1, 15:8
**TVPA** [15] - 4:24, 6:9,
6:11, 6:18, 6:25, 7:1,
7:4, 7:23, 10:25,
11:4, 11:18, 11:19,
14:14, 15:16, 20:12
**Twelfth** [1] - 1:24
**two** [6] - 3:25, 6:9,
6:18, 11:3, 11:18,
23:14
**two-pronged** [2] - 6:9,
11:3
**type** [2] - 9:2, 10:22
**typicality** [2] - 4:23,
15:12

## U

**unclear** [1] - 24:4
**uncompensated** [2] -
5:7, 6:7
**undeniability** [1] -
21:4
**undeniable** [1] - 20:23
**under** [5] - 6:15, 7:5,
9:2, 18:6, 20:15
**understood** [1] - 17:9
**undisputed** [4] - 18:4,
18:5, 18:7, 22:15
**uniform** [4] - 8:3, 8:5,
18:15
**uniformity** [1] - 11:16
**uniformly** [2] - 19:9,
19:10
**uniquely** [1] - 8:13
**unit** [1] - 19:24
**UNITED** [3] - 25:5,
25:7, 25:12
**uNITED** [1] - 1:1
**United** [1] - 1:23
**units** [2] - 18:3, 20:1

**up** [5] - 3:23, 18:11, 20:6, 20:22, 23:23

10:12, 10:20, 11:7, 17:17, 19:11, 24:22
**write** [1] - 15:18

## V

**vacate** [1] - 24:16
**valid** [1] - 18:6
**variety** [1] - 12:13
**various** [1] - 4:17
**Victims'** [1] - 9:3
**view** [2] - 16:1, 19:8
**views** [1] - 4:25
**violate** [1] - 18:7
**violates** [1] - 20:2
**Voluntary** [11] - 14:5, 14:10, 14:16, 15:5, 21:5, 21:10, 21:18, 21:24, 22:2, 23:13, 23:18
**voluntary** [1] - 19:18
**volunteer** [1] - 14:1
**vs** [1] - 1:10
**vulnerable** [2] - 8:14, 8:20
**VWP** [2] - 21:14, 23:21

## W

**wage** [2] - 20:20, 22:12
**wait** [1] - 21:15
**Warden** [2] - 19:12, 19:15
**warden** [2] - 19:12, 19:20
**Washington** [1] - 21:7
**water** [4] - 13:20, 13:21, 13:22
**West** [1] - 2:8
**west** [3] - 23:15, 23:16, 23:24
**whatsoever** [2] - 16:5, 16:12
**wide** [4] - 9:7, 10:22, 17:11, 23:15
**wields** [3] - 9:12, 10:23, 18:23
**WITH** [1] - 25:11
**withhold** [1] - 18:20
**WOLFSON** [1] - 2:7
**word** [2] - 21:1, 24:12
**words** [1] - 10:17
**worries** [1] - 11:14
**Wright** [3] - 3:16, 5:10, 17:16
**WRIGHT** [22] - 2:5, 3:16, 3:19, 3:23, 4:3, 4:7, 5:14, 6:8, 6:24, 7:10, 7:16, 7:18, 8:12, 8:25, 9:6, 10:1,

## Y

**years** [1] - 3:25
**yourself** [1] - 9:15