**AKERMAN LLP**
DAMIEN P. DELANEY (SBN 246476)
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342
Email: damien.delaney@akerman.com

ASHLEY E. CALHOUN (SBN 270530)
COLIN L. BARNACLE (admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email: ashley.calhoun@akerman.com
Email: colin.barnacle@akerman.com

Attorneys for Defendant
THE GEO GROUP, INC.

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

THE GEO GROUP, INC.,

Defendant.

THE GEO GROUP, INC.,

Counter-Claimant,

vs.

RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated,

Counter-Defendant.

Case No. 5:17-cv-02514-JGB-SHK

Assigned to Hon. Jesus G. Bernal and the Honorable Shashi H. Kewalramani

**DISCOVERY MATTER**

**DEFENDANT THE GEO GROUP, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER**

TAC Filed: September 16, 2019
SAC Filed: December 24, 2018
FAC Filed: July 6, 2018
Complaint Filed: December 19, 2017
Trial Date: June 23, 2020

PLEASE TAKE NOTICE that pursuant to the Minute Order entered at docket number 226, Defendant The GEO Group, Inc. ("GEO") hereby moves this Court for a protective order prohibiting the deposition of Dr. George C. Zoley, Chairman of the Board and CEO of GEO. Good cause exists to prevent the deposition of Dr. Zoley because Plaintiff has failed to identify any relevant information that would be obtained from Dr. Zoley and has failed to meet the heightened standard for deposing high-level corporate officers.

Submitted herewith in support of GEO's motion is (1) GEO's Memorandum and Points of Authorities in Support of its Motion for a Protective Order; (2) the Declaration of Colin Barnacle; and (3) the Declaration of George C. Zoley.

Dated: December 10, 2019

**AKERMAN LLP**

By: */s/ Damien P. DeLaney*
Damien P. DeLaney
Ashley E. Calhoun
Colin L. Barnacle (admitted *pro hac vice*)
Attorneys for Defendant THE GEO GROUP, INC.

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**GEO'S MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER REGARDING THE DEPOSITION OF DR. GEORGE C. ZOLEY**

If there is one fixed principle of the American discovery process, it is that discovery may not be used to harass or unduly burden those from whom the discovery is sought. That is precisely what Plaintiffs seek to do by noticing the deposition of GEO's Founder, Chairman of the Board, and Chief Executive Officer, Dr. George C. Zoley. Dr. Zoley has *no unique information* relevant to the claims or defenses in this case. Rather, any relevant information that Plaintiffs could obtain from Dr. Zoley could instead be obtained from other GEO employees. More fundamentally, none of the topics Plaintiffs hope to explore with Dr. Zoley are even *relevant* to this case. Plaintiffs have opted to go straight to the top, insisting on hauling GEO's highest officer into the deposition room. There is only one plausible explanation for Plaintiffs' demand that they be allowed to depose Dr. Zoley on irrelevant topics without having first tried to obtain that information in less-burdensome ways: Plaintiffs seek to use the discovery process to make this litigation as unpleasant as possible for GEO by harassing its Chairman and CEO. Protective orders exist to prevent precisely the kinds of litigation tactics employed by Plaintiffs here, and this Court should therefore enter a protective order barring Dr. Zoley's deposition.

## I. BACKGROUND

### A. Nature of the Case

GEO provides complementary, turnkey solutions for numerous government partners worldwide across a spectrum of diversified correctional and community reentry services. Among other activities, GEO operates the Adelanto ICE Processing Center ("Adelanto" or the "Adelanto Facility") on behalf of U.S. Immigration and Customs Enforcement ("ICE"). Pursuant to its contract with ICE, GEO offers detainees the opportunity to participate in a Voluntary Work Program ("VWP") by which they can earn money while in ICE custody.

Plaintiffs filed this lawsuit on December 19, 2017, as a proposed class action on behalf of a group of individuals who were detained at the Adelanto Facility. ECF 1.

Thereafter, GEO moved to dismiss for failure to state a claim. This Court granted, in part, GEO's motion to dismiss. In response, Plaintiffs amended their complaint. Most recently, Plaintiffs filed their Third Amended Complaint, seeking certification of three separate classes: (1) the California Wage Class; (2) the California Forced Labor Class; and (3) the Nationwide HUSP Class. ECF 184. This Court granted Plaintiffs' motion on December 6, 2019. ECF 229. Since early 2018, and continuing to the present, the parties have diligently engaged in written and deposition discovery.

This Court has set February 12, 2020 as the discovery cut-off date. Trial is scheduled for June 23, 2020.

**B. Dr. Zoley's Roles Within GEO**

Dr. Zoley is the Founder, Chairman of the Board, and Chief Executive Officer of GEO. Zoley Dec. ¶ 2. As its highest-ranking officer, Dr. Zoley manages GEO's overall operations and plays a central role in corporate-level decisions. *Id.* Dr. Zoley plays no role in the day-to-day operations of the Adelanto Facility. *Id.* ¶ 3. In particular, he plays no role in the day-to-day operation of the Adelanto Facility's VWP or in the housekeeping and sanitation policies at Adelanto that are the subjects of this lawsuit. *Id.* Rather, to the extent that Dr. Zoley has information about the operations of the Adelanto Facility and ICE's oversight of the facility, his knowledge is derived from other GEO employees, not his first-hand experience. *Id.* ¶ 4. On occasion, Dr. Zoley has participated in site visits to Adelanto or in meetings with ICE, but in any such visits or meetings, other GEO employees have been involved and could readily testify about the circumstances and events. *See id.*; *see also* Barnacle Dec., Ex C, 3-4.

Consistent with Dr. Zoley's roles as Chairman and CEO, David Venturella, GEO's Senior Vice-President of Business Development, testified that GEO officers or employees besides Dr. Zoley were present at any meeting with ICE about this litigation. *See* Barnacle Dec., Ex C, 7-8. Dr. Zoley, too, has testified that other GEO officers or employees were involved in any communications he had with ICE about this litigation. Zoley Dec. ¶ 8.

Again, consistent with Dr. Zoley's roles within GEO, he met on one occasion with

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

officials from the City of Adelanto about the termination of the City's inter-governmental service agreement ("IGSA") with ICE, a termination that occurred in June 2019. *Id.* ¶ 7. At least one other GEO officer or employee was present for that meeting. *Id.* Dr. Zoley has testified that he is aware of no other communications between him and officials from the City of Adelanto related to the termination of the IGSA.

Indeed, the record contains *no evidence* that Dr. Zoley has had meetings with ICE or with the City of Adelanto relating to the Adelanto Facility or this litigation without other GEO employees being present; nor does the record contain any evidence that Dr. Zoley exchanged communications with ICE or the City of Adelanto relating to the Adelanto Facility or this litigation without other GEO employees being copied on or being involved in such communications. *See* Barnacle Dec. ¶¶ 5–6.

In short, there is no basis for believing that Dr. Zoley possesses unique, non-repetitive, first-hand, or even relevant knowledge about this case that could not be obtained from other, lower-level GEO employees. *Id.*; Barnacle Dec., Ex E (Zoley Decl. ¶ 9).

**C. The Parties' Conferral.**

On October 28, 2019, Plaintiffs informed GEO's counsel that they intended to notice the deposition of Dr. Zoley for a date in December. *See* Declaration of Barnacle, Ex. A. GEO objected to Dr. Zoley's proposed deposition because Plaintiffs had provided no information regarding its relevance, had failed to identify any information that Dr. Zoley uniquely possessed relating to this litigation, and had failed to exhaust less-intrusive means of obtaining any such information. On November 7, Plaintiffs noticed the deposition of Dr. Zoley and asserted:

During their depositions this summer, GEO's executives introduced evidence of Mr. Zoley's direct involvement in GEO's efforts to defend against this litigation and to get ICE to do the same. Specifically, Plaintiffs would refer GEO to Exhibit 15 to the Venturella Deposition, as well as the testimony of Mr. Venturella regarding a meeting between Mr. Zoley and ICE in Washington, D.C. in February 2018.

///

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Mr. Zoley's personal involvement in issues related to this litigation also include personal correspondence between Mr. Zoley and ICE officials regarding this lawsuit, personal discussions between Mr. Zoley and both ICE and City of Adelanto officials regarding the Adelanto contract, and Mr. Zoley's personal knowledge of discussions related to ICE's oversight of the Adelanto Facility which bear directly on the claims and defenses at issue in this case.

*See* Barnacle Dec., Ex. A.

Exhibit 15 to Mr. Venturella's deposition is a letter from Dr. Zoley to ICE asking for an equitable adjustment related to the "out-of-scope" costs in defending the VWP in the present lawsuit and others filed around the country.[1] *See* Barnacle Dec., Ex. B. The question Plaintiffs' sought to have answered in Mr. Venturella's deposition about Exhibit 15 was whether there was any follow-up to the letter. The relevant portion of Mr. Venturella's deposition left unresolved a single question:

Q. Okay, were you involved in the April 18th updated individual requests for equitable adjustments out of Adelanto, Aurora and Tacoma that is reflected in this letter?

A. No.

Q. Okay, did you know that those updated individual requests for equitable adjustments had been submitted to ICE on behalf of GEO?

A. I was not aware of their submittal, but aware - I was aware that they were being prepared.

Q. Okay, and how did you know that?

A. With counsel.

Q. Okay, have you had any communications with anyone at ICE about this letter? I know you haven't seen it before today, but --

A. No.

[1] It is unclear why Plaintiffs believe that the costs of this and other litigation is relevant to Plaintiffs' case or GEO's defenses. Nevertheless, even if relevant, as explained herein, Exhibit 15 does not justify a deposition of Dr. Zoley.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Q. Okay.

A. Excuse me.

Q. That's all right. And do you know if anybody else at GEO has followed up on this May 30th letter?

A. I do not.

Barnacle Dec., Ex. C at 9-10.

Although Mr. Venturella did not know if there was a follow-up to Exhibit 15, Plaintiffs soon obtained the answer to their question through documents in the record. Specifically, Plaintiffs obtained ICE's subsequent letter denying GEO's request for an equitable adjustment through a FOIA request. *See* Barnacle Dec., Ex D.

Accordingly, on December 2, GEO informed Plaintiffs that they were already in possession of the information that was responsive to their outstanding question. Moreover, Plaintiffs could have obtained this information through written discovery or by deposing other GEO employees who participated in the interactions with ICE, but they chose not to seek such discovery. Plaintiffs have thus failed to identify any knowledge relevant to this lawsuit that was uniquely within Dr. Zoley's possession. *See* Barnacle Dec., Ex. A.

Thirty minutes after GEO provided Plaintiffs with its detailed response, Plaintiffs sent a follow-up email that cursorily concluded the parties were at an impasse:

> Mr. Zoley is well-aware of the personal role he played not only in requesting ICE's intervention in this case and others, but also in his personal lobbying efforts with City of Adelanto officials for them to end the City's Inter-Governmental Services Agreement with ICE. So are we. Plaintiffs did not choose to personally involve Mr. Zoley in these matters, GEO did. As such, his testimony is essential, and the *Apex* doctrine does not apply. I suggest the parties are at an impasse regarding the Zoley Deposition.

*See* Barnacle Dec., Ex. A.

Plaintiffs did not provide any evidence or citation to the record for their claim that Dr. Zoley participated in efforts to end the contract with the City of Adelanto. Nor did Plaintiffs allege that Dr. Zoley was the only one at GEO who participated in those efforts, likely because they could not make such an allegation. Indeed, at least one other GEO officer or employee participated in the meeting with City of Adelanto officials regarding

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

the termination of the contract. *See* Barnacle Dec., Ex E (Zoley Dec. ¶ 7). Although Plaintiffs had served 38 RFPs, 7 interrogatories, and 27 RFAs prior to noticing the deposition of Dr. Zoley, they had never (and still have not) sought any information through written discovery specifically referencing Dr. Zoley or concerning the interactions with ICE and/or the City of Adelanto. Barnacle Dec., ¶ 7. Nor have Plaintiffs specifically sought any information about Dr. Zoley's role in this litigation or at the Adelanto Facility through written discovery or in the 3 depositions that have occurred to date. *Id.* Nor had Plaintiffs completed their Rule 30(b)(6) deposition (scheduled to occur on December 11th and another, yet unscheduled date) prior to noticing the deposition of Dr. Zoley.[2]

## II. ARGUMENT

Federal Rule of Civil Procedure 26(c) authorizes "[a] party or any person from whom discovery is sought" to "move for a protective order." FED. R. CIV. P. 26(c). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." *Id.* Good cause exists for a protective order shielding Dr. Zoley from deposition for two independent reasons. First, the information Plaintiffs seek from the deposition is not relevant. And second, Plaintiffs have failed to satisfy the heightened standard for deposing a high-level corporate officer.

### A. Plaintiffs Have Failed To Identify Any Relevant Information That Dr. Zoley Could Provide in a Deposition.

A party is only entitled to discovery into matters "relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1), (b)(2)(C). Although "the deposition-discovery rules are to be accorded a broad and liberal treatment," they nonetheless have "ultimate and necessary boundaries," such as "when the inquiry touches upon the irrelevant." *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947); *see also*

[2] It is also important to note that Plaintiffs have noticed 23 separate topics for their upcoming Rule 30(b)(6) deposition (scheduled for tomorrow, December 11, 2019), none of which seek any information about Dr. Zoley's role in this litigation or at the Adelanto Facility.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 331 (9th Cir. 1961); 8 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 2008 (3d ed.) ("No one would suggest that discovery should be allowed of information that has no conceivable bearing on the case."). Indeed, although the right of discovery is broad, that breadth only encompasses litigants' "wide access to *relevant* facts." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (emphasis added). Plaintiffs have identified no relevant information that they would seek during a deposition of Dr. Zoley, and they therefore have no basis for demanding his testimony.

Plaintiffs have stated that they would seek information in the proposed deposition relating to the following: (1) Dr. Zoley's alleged personal involvement "in requesting ICE's intervention in this case and others"; (2) alleged "personal discussions between Dr. Zoley and both ICE and City of Adelanto officials regarding the Adelanto contract" including asking "City of Adelanto officials . . . to end the City's Inter-Governmental Services Agreement with ICE"; and (3) Dr. Zoley's alleged "personal knowledge of discussions related to ICE's oversight of the Adelanto Facility." *See* Barnacle Dec., Ex. A. Yet, Plaintiffs' Third Amended Complaint alleges violations of (1) California's minimum-wage statute; (2) California's common law of unjust enrichment; (3) California's unfair competition law; (4) California's Trafficking Victims Protection Act; and (5) the Federal Trafficking Victims Protection Act, in addition to (6) raising a claim for retaliation. The gravamen of these claims (other than the retaliation claim) is that GEO has violated State and Federal law by paying detainees less than the law requires in exchange for their labor. Some of their claims also allege that GEO pressured detainees into performing work by withholding food and other necessities. As for retaliation, Plaintiffs allege that GEO has brought a counterclaim for declaratory relief as an "*in terrorem* tactic against Plaintiffs and the class members for bringing their claims to court." TAC ¶ 262. None of the information Plaintiffs propose to seek from Dr. Zoley is relevant to the foregoing allegations.

First, whatever efforts, if any, that Dr. Zoley took to obtain ICE's participation in this litigation has absolutely nothing to do with the veracity of Plaintiffs' legal claims.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Either GEO paid detainees less than the law requires and/or pressured them into performing work—or it did not. Either GEO's counterclaim constituted improper retaliation against Plaintiffs—or it did not. Even assuming, as Plaintiffs allege, that Dr. Zoley personally tried to get ICE to defend against Plaintiffs' lawsuit, that would not in any way affect whether GEO has paid detainees less than the law requires or whether GEO has filed its counterclaim in retaliation. It is utterly irrelevant.

The same is true of Plaintiffs' second basis for the deposition: the alleged "personal discussions between Mr. Zoley and both ICE and City of Adelanto officials regarding the Adelanto contract" including asking "City of Adelanto officials . . . to end the City's Inter-Governmental Service Agreement with ICE." Plaintiffs do not allege that those ostensible conversations affected the challenged conduct in this case *in any way*. For example, they do not allege that, as a result of GEO entering into a contract directly with ICE, GEO started paying detainees a different amount or changed the VWP in some material way. And because the contract currently governing Adelanto is substantively almost identical to the Inter-Governmental Service Agreement that previously governed Adelanto, insofar as it relates to the issues actually relevant to this action (*e.g.*, the VWP and the 2011 Performance Based Detention Standards ("PBNDS")), Plaintiffs cannot reasonably maintain that a change to the Adelanto Facility's contractual arrangement that does not change the VWP, the application of the PBNDS, and/or the housekeeping and sanitation policies in any material way has any bearing on its operations. Regardless of what Dr. Zoley allegedly said to City of Adelanto officials and/or ICE regarding the Adelanto contract, it has no relevance to Plaintiffs' claims.

Additionally, Dr. Zoley's alleged "personal knowledge of discussions related to ICE's oversight of the Adelanto Facility" is also irrelevant. This vaguely expressed basis for deposing Dr. Zoley is not sufficient to satisfy the relevance standard under Rule 26(b)(1) and justify his deposition. Plaintiffs have offered no explanation—and GEO can think of none—as to how Dr. Zoley's alleged communications with ICE officials and the City of Adelanto could possibly have any bearing on their claims that GEO paid detainees

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

in the VWP less than the law requires. Such a speculative and amorphous allegation does not justify the burden of hauling the Chairman and CEO of a major corporation into the deposition room.

Finally, none of the information Dr. Zoley is alleged to know has any relevance to GEO's affirmative defenses. In its answer to Plaintiffs' Third Amended Complaint, GEO raised ten affirmative defenses, none of which are bolstered or in any way affected by either ICE's participation in this litigation or by the City of Adelanto ending its Inter-Governmental Services Agreement with ICE. Plaintiffs' claims and GEO's defenses both rise or fall based on their legal merits. The communications between Dr. Zoley and ICE or the City of Adelanto that Plaintiffs allege are nothing but distractions to the timely and orderly resolution of this case.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

### B. Even if the Sought-After Information Were Relevant, Plaintiffs Have Not Met the Heightened Standard for Deposing a High-Level Corporate Officer.

Under the Federal Rules of Civil Procedure, a trial court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C). And avoiding "undue burden and expense" is a "good cause" sufficient to secure a protective order forbidding or modifying discovery. *Id.* at R. 26(c)(1).

Consistent with the Rules' general preference for convenient and cost-effective discovery, it is well established that "a high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action." *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)) (collecting cases from eight circuits). "High-ranking government officials are generally shielded from depositions because they have greater duties and time constraints than other witnesses," and "[i]f courts did not limit these depositions, such officials would spend an

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

inordinate amount of time tending to pending litigation." *Id.* (quotation marks omitted); *see also Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979).

For the same reasons that high-level government officials are generally shielded from deposition, "[v]irtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C-05-4374-MMC-JL, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Major corporations—like GEO today, at this very moment—often face multiple simultaneous lawsuits, and if the CEO could be hauled into a deposition for each case simply by virtue of his or her position in the company, the CEO's time "would be monopolized by preparing and testifying in such cases." *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993).

Moreover, plaintiffs armed with this power would be able to subject high-level corporate officers—such as Chairmen and CEOs—to deposition solely for purposes of inflicting pain on the defendant in the hopes of forcing a settlement or other litigation concessions. *See Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012) ("The Court, attuned to the potential for abuse in the deposition of high-level corporate employees, will intervene where a requested deposition represents *an in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence . . . ." (quotation marks omitted)). Such harassment is exactly the sort of "annoyance, embarrassment, [or] oppression" that is a "good cause" for a protective order. FED. R. CIV. P. 26(c)(1).

These considerations explain why, for instance, the Northern District refused to allow a party to depose Steve Jobs when the party could not justify its need to depose high-level corporate officers. *See Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011). Put simply, the Federal Rules do not require that Jeff Bezos, Mark Zuckerberg, or Dr. George Zoley spend their days in an endless series of depositions; indeed, that is precisely the kind of "undue burden" Rule 26(c) is designed to prevent. And

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

that burden is even greater where, as here, the would-be deponent occupies *two* distinct, high-level corporate positions entailing separate responsibilities (i.e., Chairman and CEO).

Accordingly, courts evaluating a request to depose a high-level corporate officer have applied "more exacting scrutiny" compared with "a garden-variety request to take a deposition." *Prosonic Corp. v. Stafford*, 2008 WL 64710, at *1 (S.D. Ohio Jan. 3, 2008); *see Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681–82 (7th Cir. 2002); *Thomas v. IBM*, 48 F.3d 478, 483 (10th Cir. 1995); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). This "apex doctrine" "presumes that high-level officials delegate lower-level responsibilities, that they are more likely to be removed from the everyday activities of the organizations they lead, and that they are therefore less likely to have unique personal knowledge of the facts at issue in many lawsuit against their organizations." *Smith v. City of Stockton*, 2017 WL 11435161, at *2 (E.D. Cal. Mar. 27, 2017).

In applying the apex doctrine, courts typically consider two factors: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Reinsdorf v. Skechers U.S.A., Inc.*, 2012 WL 12883889, at *2 (C.D. Cal. May 9, 2012). That is to say, "[w]hen a high-level corporate executive lacks unique or superior knowledge of the facts in dispute," or the party seeking a deposition has not tried to obtain the information through less-burdensome means, "courts have found that good causes exists to prohibit [his] deposition." *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 2002 WL 32155478, at *2 (C.D. Cal. Nov. 6, 2002); *Mar. v. ABM Sec. Servs., Inc.*, 2010 WL 11684788, at *2–3 (S.D. Cal. Nov. 5, 2010).

Some courts go so far to say that the apex doctrine "shifts the initial Rule 26(c) burden from the person resisting discovery to the person seeking it." *Smith*, 2017 WL 11435161, at *2; *see also Affinity Labs*, 2011 WL 1753982, at *15-16 (party seeking deposition of Steve Jobs had the burden of meeting the two apex criteria); *Celerity*, 2007 WL 205067, at *5. Other courts characterize the doctrine as essentially easing the burden apex officers would otherwise shoulder in showing that a good cause exists for limiting

discovery. *See, e.g.*, *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *2 (N.D. Cal. Mar. 6, 2014); *Powertech Tech., Inc. v. Tessera, Inc.*, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013). In any event, even if Plaintiffs' bases for deposing Dr. Zoley were relevant—and they are not—the apex factors strongly support a protective order in this case.

First, it is "an essential component of the standard for an apex deposition" that the proposed deponent have "*unique* personal knowledge . . . unavailable from less intrusive discovery, including interrogatories and the depositions of lower-level employees." *Celerity, Inc.*, 2007 WL 205067, at *4 (emphasis added). Plaintiffs have not even alleged—much less provided a plausible basis for believing—that Dr. Zoley has *unique* knowledge about any of the alleged communications with ICE or the City of Adelanto, and Dr. Zoley has now testified that he has no such unique knowledge. Zoley Dec. ¶¶ 7–9. Nor do Plaintiffs provide any basis for believing that Dr. Zoley is the only GEO employee with knowledge of the alleged discussions—between whom, Plaintiffs do not say—"related to ICE's oversight of the Adelanto Facility." Again, Dr. Zoley has now testified that he has no unique knowledge of this topic either. *Id.* ¶¶ 4, 9.

In justifying their attempt to depose Dr. Zoley, Plaintiffs only cited the deposition testimony of Mr. Venturella. *See* Barnacle Dec., Ex. A. But Mr. Venturella also testified that at least three other individuals were present at any meetings that Dr. Zoley also attended. In other words, there is simply no basis whatsoever in the record to suggest that Dr. Zoley met or communicated with officials from ICE or the City of Adelanto without the involvement of another GEO employee, *see* Barnacle Dec. ¶ 5, and any such employee could either have been the subject of depositions or could be deposed in the future. *See LF Centennial Ltd. V. Z-Line Designs, Inc.*, No. 16cv929 JM (NLS), 2017 WL 121803, at *3 (S.D. Cal. Apr. 6, 2017) (granting a protective order where an apex officer's deposition would "cover[] the same information addressed" in another deposition and where "there is no reason to believe that [the alternative deponent] will not adequately testify to the matters noticed").

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Second, deposing an apex officer is also inappropriate unless "other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Affinity Labs of Tex.*, 2011 WL 1753982, at *15. This is precisely why "[c]ourts generally refuse to allow the immediate deposition of high-level executives . . . *before* the depositions of lower level employees . . . ." *Mehmet v. PayPal, Inc.*, No. 5:09-cv-1961, 2009 WL 921637, at *2 (N.D. Cal. Apr. 3, 2009); *see also Affinity Labs of Tex.*, 2011 WL 1753982, at *6 ("Courts regularly require interrogatories, requests for admission, and depositions of lower level employees before allowing the deposition of an apex witness."). It is also why litigants cannot "take half-hearted depositions of lower-level employees in order to set up an opportunity to depose" the apex officer. *Celerity, Inc.*, 2007 WL 205067, at *5. Rather, the litigant seeking to depose the apex officer "must make a good faith effort to extract the information it seeks from interrogatories and depositions of lower-level . . . employees." *Id.*

Plaintiffs have not previously sought information specifically related to the alleged communications with ICE or the City of Adelanto from any past GEO deponents (other than the questions put to Mr. Venturella). Nor have they explained why they have failed to serve written discovery specifically relating to the alleged communications. Nor have they explained why they have not sought this information through additional depositions of lower-level employees, depositions of the City of Adelanto officials who allegedly met with Dr. Zoley, or even as a topic in their Rule 30(b)(6) deposition scheduled to commence tomorrow. Plaintiffs have had plenty of opportunities to do so. Their decision to bypass all of these alternative sources—and instead catapult straight to the apex of GEO's corporate structure—has no factual or legal foundation. Without any serious justification for Plaintiffs' interest in deposing Dr. Zoley, this Court should conclude that Plaintiffs' efforts here are nothing more than the "annoyance, embarrassment, [or] oppression" the Federal Rules protect against. FED. R. CIV. P. 26(c)(1).

///

///

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## III. Conclusion

GEO respectfully requests that this Court enter a protective order prohibiting the deposition of Dr. Zoley.

Dated: December 10, 2019

**AKERMAN LLP**

By: */s/ Colin L. Barnacle*
Damien P. DeLaney
Ashley E. Calhoun
Colin L. Barnacle (admitted *pro hac vice*)
Attorneys for Defendant THE GEO GROUP, INC.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# PROOF OF SERVICE

STATE OF COLORADO )

COUNTY OF DENVER )

I am employed in the County of Denver, State of Colorado; I am over the age of 18 years and not a party to this action. My business address is 1900 Sixteenth Street, Suite 1700, Denver, Colorado 80202.

On **December 10, 2019**, I served the following document(s) described as:

**DEFENDANT THE GEO GROUP, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER**

on the persons as indicated below:

☒ **(CM/ECF ELECTRONIC FILING**) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed below by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

Charles J. Gower (admitted *pro hac vice*)
jgower@burnscharest.com
Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Ruhandy Glezakos (CA Bar # 307473)
rglezakos@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
BURNS CHAREST LLP
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

☒ (MAIL) I placed the envelope to R. Andrew Free for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Denver, Colorado.

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
LAW OFFICE OF R. ANDREW FREE
P.O. Box 90568
Nashville, Tennessee 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on December 10, 2019, at Denver, Colorado.

Nick Mangels
(Print Name)

(Signature)

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342