1  R. Andrew Free (admitted *pro hac vice*)
2  andrew@immigrantcivilrights.com
   TN Bar # 030513
3  **LAW OFFICE OF R. ANDREW FREE**
   P.O. Box 90568
4  Nashville, TN 37209
5  Telephone: (844) 321-3221
   Facsimile: (615) 829-8959
6  *Class Co-Counsel*
7  **Additional Counsel on Signature Page**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **RAUL NOVOA** and **JAIME CAMPOS FUENTES**, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> **THE GEO GROUP, INC.**, <br><br> *Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx <br><br> **PLAINTIFFS' MEMORADUM OF LAW AND POINTS OF AUTHORITIES IN OPPOSITION TO GEO'S MOTION FOR A PROTECTIVE ORDER** <br><br> Judge: The Honorable Shashi Kewalramani |

**INTRODUCTION**

Defendant The GEO Group, Inc. ("GEO") seeks an order denying Plaintiffs and the certified classes they represent the right to depose GEO's Chairman and Chief Executive Officer, George C. Zoley ("Zoley"), regarding his unique, firsthand

knowledge of interactions he had with the City of Adelanto, California ("City") and U.S. Immigration and Customs Enforcement ("ICE") about issues at the heart of this case. ECF No. 231. Plaintiffs seek to question Zoley regarding his private, one-on-one contacts with officials from the City about the March 2019 termination of its Inter-Governmental Services Agreement ("IGSA") with ICE to run the Adelanto Detention Facility ("Adelanto"). Plaintiffs also seek to question Zoley about his interactions with ICE officials before, during, and after a February 2018, meeting at ICE Headquarters in Washington, D.C. about this and other cases pending against GEO. Plaintiffs seek Zoley's testimony about how he derived knowledge from ICE that he apparently used in orchestrating the termination of the City's IGSA, and in replacing it with a direct contract between ICE and GEO.

Both lines of inquiry bear directly on GEO's affirmative defenses of preemption, derivative sovereign immunity, and inter-governmental immunity. GEO blocked Plaintiffs' attempts to obtain this information through other means, including interrogatories, requests for production, and depositions of two GEO corporate vice-presidents, GEO's Warden at Adelanto, and a 30(b)(6) corporate representative. Plaintiffs therefore have the right to depose Zoley about them.

**FACTS**

A. Plaintiffs' Claims.

Plaintiffs' Third Amended Complaint ("TAC") alleges GEO violates the law by: (1) failing to pay detained immigrants at Adelanto the state minimum wage for the work they perform, *see generally* ECF No. 184 ¶¶ 190-202; (2) unjustly enriching itself in violation of California law by unlawfully retaining the benefits of detained immigrants' labor, *id.* ¶¶ 203-211; engaging in unfair business practices in violation of California law by violating state and federal law, *id.* ¶¶ 212-218; and violating the forced labor and attempted forced labor provisions of the California, *id.* ¶¶ 219-230, and federal Trafficking Victims Protection Acts. *Id.* ¶¶ 231-252.[1]

B. <u>GEO's Defenses.</u>

GEO relies on several "immunity" defenses that Plaintiffs anticipate will include preemption, derivative sovereign immunity, and inter-governmental immunity. GEO has previously raised these defenses explicitly in this and other similar cases. *See generally* ECF 200, GEO Answer to TAC, at 30 (Second Affirmative Defense). As to preemption, GEO claims it operates its Work Program at Adelanto subject to a uniform federal scheme from which neither ICE nor GEO may deviate. Similarly, with respect to derivative sovereign immunity, GEO contends it is simply following the contract requirements ICE sets when it operates the Work Program and other activities at Adelanto, and that the company lacks discretion to alter its practices in ways Plaintiffs and the certified classes demand. Finally, with respect to inter-governmental immunity,

---

[1] Plaintiffs also bring a retaliation claim not at issue here. ECF No. 183, ¶¶ 253-273.

both GEO and ICE have argued to another federal court that application of a generally applicable state minimum wage law to GEO would violate the doctrine's anti-federal-discrimination principles. *See State of Washington v. The GEO Grp.*, No. 3:17-cv-05806-RJB, Dkt. No. 322, Order (W.D. Wash. Oct. 9, 2019). GEO's intergovernmental immunity arguments in this case may implicate questions of whether ICE contracts with a state or local government to provide services at Adelanto, as required by the authorizing language of federal detention statutes, and how the presence or absence of an IGSA with the City may affect GEO's obligations under California law.[2]

In sum, GEO's immunity defenses all hinge in large part on the contracts under which it operates Adelanto. The company's performance under these agreements, the parties' interpretations of their terms, and GEO's ability to change these agreements at its own initiation—rather than at the behest of ICE, may all affect the viability of GEO's immunity defenses.

C. Zoley's Personal Role in Terminating the IGSA.

With respect to GEO's role in the City's termination of the IGSA, Chairman Zoley attests under oath, that he "met on one occasion with the City of Adelanto to discuss the potential termination of the IGSA for the Adelanto Facility." ECF No. 231-5, ¶ 7.

---

[2] Congress authorized ICE to enter into detention agreements only with state or local government entities. *See* 8 U.S.C. §§ 1103(a)(11)(A) & (B). *See also* DHS-OIG Report No. OIG-18-53 at 18-24 (Feb. 21, 2018) *available at* https://tinyurl.com/dhsoig1.

Plaintiffs have confirmed that this meeting occurred on January 16, 2019. Ex. A. Adelanto-CPRA_0007267. But Zoley also offers the following statement in an effort to avoid answering live questions under oath: "<u>Other than that one meeting, I am aware of no other communications between me and officials from the City of Adelanto related to the termination of the IGSA</u>." ECF No. 231-5, Zoley Decl. ¶ 7 (emphasis added).

The City's records do not support Zoley and GEO's version of the facts.[3] According to these records, Zoley personally called and left a voicemail for Adelanto City Manager Jessie Flores sometime before 11:32 a.m. PST on February 5, 2019, and then had his assistant send an email on his behalf requesting a call with Flores "at [Flores'] earliest convenience." Ex B – Adelanto-CPRA_0007266. Zoley also called Adelanto Warden James Janecka the same day and directed him to arrange a call with Flores. Ex. C – Adelanto-CPRA_0007263-65. Janecka obliged and emailed City officials at least three times over the course of the afternoon asking for a good time for Zoley to call Flores. *Id.* Zoley and Flores spoke by phone sometime before 10:00 a.m. PST on the morning of February 6, 2019. After the call, Zoley had his assistant email Flores "the two letters we discussed" under the subject line: "Per your conversation with Dr. Zoley." Ex. D – Adelanto-CPRA_0007258  Zoley informed Flores by email sent through his assistant: "If possible he would like them to go out today." Ex. D. – Adelanto-CPRA_0007258.

---

[3] Plaintiffs obtained these records through subpoena, though they were previously released to requestors by the City under California's sunshine laws.

Flores responded that he would "have our legal counsel and finance director review and get back to you by the end of the day." Ex. D – Adelanto-CPRA_0007257.

The attachments Zoley sent to Flores and the City on GEO's behalf are two notices of termination of the IGSA supposedly issued by the City and addressed to GEO's Amber Martin and ICE's Bethany Sutler, respectively. Ex. D – Adelanto-CPRA_0007260-7261. The notices state stating the City would end its IGSA in 90 days. *Id.* Less than three hours after sending the IGSA termination letters that GEO apparently drafted for the City and that Zoley apparently told Flores he would provide during their February 6 call, Zoley's assistant emailed Flores under the subject line: "Term letter": "George asked me to let you know there would be no financial impact to the City." Ex. D – Adelanto-CPRA_0007262.

On March 13, 2019, before the City terminated the IGSA, Zoley, through his assistant, emailed Flores a two-page memo providing GEO's arguments for why the City should terminate the IGSA. Ex. E - Adelanto-CPRA_0000134, 0005931-32. Zoley re-assured the City that GEO would make up for any revenue loss such termination might cause, even though the City's role would be eliminated. *Id.* Zoley also made several factual representations about ICE's involvement in the IGSA that appear at odds with the public positions of GEO and ICE. *Id.* The City ultimately copied the letters Zoley provided Flores onto its letterhead, changed the date, and sent notices of

termination as requested to ICE and GEO on March 27, 2019. Ex. F – Adelanto-CPRA_000133 (City to GEO) and City Termination Letter to ICE.

City records also indicate that GEO Senior Vice President David Venturella and Adelanto Warden James Janecka participated in other communications between Zoley and City officials about the IGSA termination which they failed to mention while under oath. When asked under oath on June 13, 2019, why the City of Adelanto gave notice that it terminated the IGSA in March, Venturella, who was scheduled to be on at least one conference call between Zoley and Flores on February 8, 2019, apparently about the termination, Ex. G. Adelanto-CPRA_0006842, stated that he did not know why the City terminated the IGSA, that he did not have any information about it. Ex. H – Venturella Dep. Excerpt. 45:12-23. Venturella also denied having any discussions with anyone regarding the termination of the Adelanto IGSA during his deposition. *Id.* But Warden Janecka later testified on GEO's behalf that Mr. Venturella was, in fact, present during the January 16, 2019, meeting with City officials and GEO that Zoley states involved a discussion of terminating the City's IGSA. Ex. I-Janecka Rough Dep. Transcript 33:12-34:2. Similarly, Janecka, who sat for deposition in both his personal capacity and as a designee of GEO pursuant to Fed. R. Civ. P. 30(b)(6)[4], provided sworn

---

[4] GEO produced Janecka to testify on its behalf about, *inter alia*, "GEO's understanding of what role, if any, the City of Adelanto played in the contract(s) to operate the Adelanto Facility prior to the cancellation of those contracts, and what role, if any, the City of Adelanto still plays in the operation of those contract(s), including any payments GEO or its agents may continue to remit to the City or its representatives." Ex. J, Pltfs' Amended 30(b)(6) Deposition Notice.

testimony on GEO's behalf regarding the City's termination of the IGSA. Asked under oath why the City terminated the IGSA, GEO, through Janecka, failed to disclose Zoley's intervention, and his assistance with it. Asked directly whether GEO drafted the City's termination notices, GEO, through Janecka, did not admit Zoley's drafting of termination notices for the City.

## ARGUMENT

GEO's motion for a protective order should be denied because GEO cannot establish good cause for blocking Plaintiffs' right to depose Zoley about his actions.

### A. The *Apex* Doctrine Does Not Relieve GEO of Its Burden Under Rule 26 or Create Mandatory Pre-Requisites Before Deposing Corporate Bigwigs.

The *Apex* doctrine does not displace the burden GEO, as the moving party, bears to show good cause warranting a protective order under Rule 26. *See Hunt v. Continental Casualty Co.*, No. 13-cv-05966-HSG, 2015 WL 1518067 *1 n.1. (N.D. Cal. Apr. 3, 2015). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2014 WL 939287, at *1 (N.D. Cal. 2014) (citing *Phillips v. GMC*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)). "A strong showing is required before a party will be denied entirely the right to take a deposition." *Blankenship v. Hearst Corp.*, 519 F.2d 419, 429 (9th Cir. 1975) *See also Apple Inc v. Samsung Electronics Co. Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Accordingly, a "party seeking to prevent a deposition carries a heavy burden to show why discovery should be

8

denied." *In re Google Litig.*, No. C-08-03172 RMW, 2011 WL 4985279 *2 (N.D. Cal. 2011).

This court has "broad discretion" in determining whether, on the totality of the record, GEO has met its burden. *See, e.g.*, *Apple*, 282 F.R.D. at 262-63. "The party seeking to take such a deposition does not need to prove conclusively in advance that the deponent definitely has unique, non-repetitive information; instead, 'where a corporate officer may have *any* first-hand knowledge of relevant facts, the deposition should be allowed.'" *Hunt*, 2015 WL 2015 WL 1518067 *2, (quoting *Grateful Dead Productions v. Sagan*, No. C 06-7727 (JW) PVT, 2007 WL 2155693, at *1, n. 5 (N.D. Cal. 2007) (emphasis in original) (citing *Blankenship*, 519 F.2d at 429 and *Anderson v. Air West, Inc.*, 542 F.2d 1090, 1092-93 (9th Cir. 1976)). *See also Powertech*, 2013 WL 3884254 at *2 (noting that the party seeking deposition "was not required to prove that [deponent] certainly has [relevant] information."). And though exhaustion of other discovery routes is an "important consideration" in the *Apex* analysis, it is not a prerequisite. *Hunt* 2015 WL 1518067 at 2, (citing *In re Transpacific* 2014 WL 939287 at *5). A executive's busy schedule and bare assertions of burden are insufficient to establish good cause. *See, e.g.*, *In re Transpacific*, 2014 WL 939287 at *3 ("that the apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery"); *In re Google Litig.*, 2011 WL 4985279 at *2 (permitting the deposition of Google CEO Larry Page despite his busy schedule).

**B. GEO Fails to Establish Good Cause to Block Zoley's Deposition.**

As demonstrated above, George Zoley unquestionably possesses unique, firsthand, non-repetitive knowledge regarding the claims and defenses in this litigation that cannot be obtained from anyone else. Zoley's personal knowledge is directly relevant to GEO's defenses: GEO's apparently ability to effectuate a fundamental alteration of the contracting regime governing Adelanto bears directly on the company's ability to ensure any impediment the contract imposes to giving Plaintiffs the relief they seek, namely, paying more than $1 per day for work performed. Similarly, GEO's derivative sovereign immunity defense that it is ICE, not the company, who dictates how GEO performs is weakened if, as it appears here, GEO can simply rewrite the contractual scheme as it sees fit. Finally, to the extent that the City's termination of the IGSA bears on GEO's obligations under California law, whether Zoley discussed its intergovernmental immunity defense or the new contract with ICE is directly relevant to its defenses.

Plaintiffs sought this information from GEO through less intrusive means, including written discovery, deposition testimony of lower-level corporate executives and a GEO-designated corporate representative. GEO failed to provide it. Now, to ensure Plaintiffs cannot question him under oath, GEO and Zoley submitted an account of his actions that bears no resemblance to the records of what he actually did. Accordingly, GEO's motion for protective order based on the *Apex* doctrine should be denied, and Plaintiffs should be able to question Zoley under oath.

Dated: December 16, 2019         */s/ R. Andrew Free*
R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
C. Jacob Gower (admitted *pro hac vice*)
jgower@burnscharest.com
LA Bar # 34564
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org

11

5:17-cv-02514-JGB-SHKx

NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866


Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002


*Class Counsel*

# CERTIFICATE OF SERVICE

I, R. Andrew Free, electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated:   December 16, 2019        */s/ R. Andrew Free*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959