1  Korey A. Nelson (admitted *pro hac vice*)
   knelson@burnscharest.com
2  Lydia A. Wright (admitted *pro hac vice*)
   lwright@burnscharest.com
3  **BURNS CHAREST LLP**
4  365 Canal Street, Suite 1170
   New Orleans, LA 70130
5  Telephone: (504) 799-2845
   Facsimile: (504) 881-1765
6
7  *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION**

| | |
|---|---|
| **RAUL NOVOA**, *et al.*, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx |

**AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION OF THE GEO GROUP, INC.**

Please take notice that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs in the above-captioned matter will take the deposition(s) by oral examination of Defendant The GEO Group, Inc. ("GEO") through one or more officers, directors, managing agents, or such other authorized persons who consent to testify on GEO's behalf. The deposition(s) will take place at the following dates, times, and places before a court reporter and videographer:

Date & Time:    December 11, 2019 at 9:00 a.m. PST

Place:          Veritext
                316 West 2nd Street, Suite 200
                Los Angeles, CA 90012

1

Case 5:17-cv-02514-JGB-SHK   Document 233-11   Filed 12/16/19   Page 2 of 19   Page ID
#:4711

      Method of Recording:      Stenograph and Videotape

The deposition will continue in Boca Raton, Florida on a mutually-agreeable date in December 2019.

GEO has a duty to designate one or more officers, directors, managing agents, or other persons with sufficient knowledge to testify on its behalf on all information known or reasonably available to each on the topics set forth below.

The deposition(s) will be taken for the purpose of discovery, to perpetuate the testimony of the witness(es) for use at trial, and for all other purposes permitted under the Federal Rules of Civil Procedure. The deposition(s) will be taken before a notary public or other officer authorized by law to administer oaths for use in this litigation as set forth above. The deposition(s) will continue from day to day until completed.

**DEFINITIONS**

1.    The term "GEO" is defined as the Defendant The GEO Group, Inc., and any affiliated corporate entity or subsidiary (including any taxable REIT subsidiary) through which The GEO Group, Inc. conducts business or receives revenue, as well any officer, agent, employee, executive, or representative of GEO as defined herein.

2.    The term "ICE" is defined as the United States Immigration and Customs Enforcement and includes, but is not limited to, any predecessor or successor agencies, and any divisions, departments, affiliates, agents, attorneys, representatives, employees, and/or other persons acting on its behalf.

3.    The term "Adelanto Facility" is defined as the Adelanto ICE Processing Center, located in Adelanto, California, and operated by GEO pursuant to a federal contract with ICE.

4.    The term "Voluntary Work Program" is defined as any program GEO operates involving labor performed by detainees for remuneration of any kind that includes tasks outside those

AMENDED NOTICE OF RULE 30(B)(6)                      5:17-cv-02514-JGB
DEPOSITION OF THE GEO GROUP, INC.

described in Section 5.8.V.C of the 2011 ICE Performance-Based National Detention Standards ("PBNDS") (rev. 2016).

5. The term "Adelanto Policy and Procedures Manual" is defined as any document or series of documents authored, issued, or promulgated by GEO involving policies, procedures, practices, post orders, guidelines, standards, or expectations regarding the maintenance and operation of the Adelanto Facility, *e.g.* GEO-Novoa_00000221.

6. The term "PBNDS" is defined as any version of the 2011 ICE Performance-Based National Detention Standards.

7. The terms "Housing Unit Sanitation Policy, " "HUSP," "HUSPs," and "Sanitation Procedures/Housekeeping Plan" are defined as any program, policy, plan, or procedure GEO operates involving labor performed by detainees for no remuneration that includes sanitation and cleaning tasks in the detainees' housing units, dormitories, pods, or living areas. *See, e.g.*, GEO-Novoa_00000515 ("Sanitation Procedures/Housekeeping Plan").

8. The term "detainee" or "detained immigrant" is defined as any person detained in an immigration detention facility operated by GEO.

9. The term "person" is defined as any natural person or business, legal, or governmental entity or association.

10. The terms "Plaintiffs," "Plaintiff," and "Defendant," as well as a party's full or abbreviated name or pronoun referring to a party, mean the party and, where applicable, his officers, directors, employees, partners, corporate parent, subsidiaries, predecessors, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

11. The term "compensation" means all monies and benefits, including: salaries, hourly wages, overtime wages, commissions, raises, and bonuses; or any other benefits given in return for work, tasks and/or duties.

3

AMENDED NOTICE OF RULE 30(B)(6) DEPOSITION OF THE GEO GROUP, INC.

5:17-cv-02514-JGB

12. The term "hours" includes full hours and partial hour(s).

13. The terms "policy" or "policies" mean each rule, procedure, or directive, formal or informal, written or unwritten, and each common understanding or course of conduct that was recognized as such by Defendant or persons acting or purporting to act on Defendant's behalf, that has been in effect at any time during the period covered by these demands. These terms include any change of policy.

14. The singular of each word shall be construed to include its plural and vice-versa, and the root word and all derivations (i.e., "ing," "ed," etc.) shall be construed to include each other.

15. The words "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys.

16. The word "including" shall have its ordinary meaning and shall mean "including but not limited to" and shall not indicate limitation to the examples or items mentioned.

17. The term "communication" means the transmittal of information by any means (in the form of facts, ideas, inquiries, or otherwise).

18. The terms "you" or "your" means GEO including, without limitation, any agents and representatives, each person acting or purporting to act on its behalf, each of its predecessors, subsidiaries, and affiliates, and each of its present or former officers, employees, agents, representatives, and attorneys.

19. The terms "concerning" "regarding" and "relating to" mean relating to, supporting, contradicting, summarizing memorializing, describing, evidencing, constituting, containing, studying, identifying, analyzing, considering, regarding, explaining, mentioning, showing, discussing, comprising or commenting on.

20. Each of the terms "all," "any," "each," and "every" shall be construed as meaning all, any, each and every.

4

AMENDED NOTICE OF RULE 30(B)(6)  
DEPOSITION OF THE GEO GROUP, INC.

5:17-cv-02514-JGB

21. The terms "and" and "or" shall be construed both disjunctively and conjunctively.

22. The term "document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of translations, notations, or markings) or any and all other written, printed, typed, punched, taped, filmed, or graphic matter or recorded or tangible thing, or whatever description, however produced or reproduced (including computer-stored or generated data, together with instructions or programs necessary to search and retrieve such data and hard copies where available and retrievable), and shall include all attachments to and enclosures with any requested item, to which they are attached or with which they are enclosed, and each draft thereof. The term document shall specifically include all recorded or retrievable electronic data or communications such as electronic mail (e-mail) and the like and all translations thereof. Any document with any marks of any sheet or side thereof, including but limited to initials, routing instructions, metadata, date stamps, and/or any comment, marking or notation of any kind or character which is not a part of the original and/or any reproduction thereof, is to be considered a separate document.

23. "Communication" shall refer to any form of communication, including any oral, written, electronic, or other exchange of words, thoughts, information, or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by facsimile, or by any other process, electric, electronic, or otherwise. All such communications in writing shall include, without limitation, printed, typed, handwritten, or other readable documents, correspondence, memoranda, reports, contracts, drafts (both initial and subsequent), computer discs or transmissions, e-mails, instant messages, tape or video recordings, voicemails, diaries, log books, minutes, notes, studies, surveys and forecasts, and any and all copies thereof.

5

AMENDED NOTICE OF RULE 30(B)(6)　　　　　　　　　　　　　　　　　　　5:17-cv-02514-JGB
DEPOSITION OF THE GEO GROUP, INC.

## RULE 30(b)(6) TOPICS

The deponent(s) shall be prepared to address the following topics:

**Topic 1**

Withdrawn at this time.

**Topic 2**

Any and all contracts, agreements, or memoranda of understanding, including drafts, final versions, and subsequent modifications, pursuant to which GEO has agreed to operate and maintain the Adelanto Facility, including but not limited to:

a. Intergovernmental Services Agreement ("IGSA") between the City of Adelanto and ICE, and any modifications thereto;

b. Services Contract between the City of Adelanto and GEO, and any modifications thereto; and

c. Any contract between GEO and ICE, and any modifications thereto.

GEO has identified Amber Martin as its designee for Topic 2.

**Topic 3**

Any and all contracts, agreements, or memoranda of understanding, including drafts, final versions, and subsequent modifications, between GEO and any third party organizations or vendors which currently provide or have provided any services, products, consulting, or staffing to the Adelanto Facility, including but not limited to: Correct Care Solutions, Keefe Group, and American Correctional Association. GEO has represented that it intends to produce those contracts in advance of the deposition. GEO has also represented that it does not directly contract with Spectrum Security Services, Creative Corrections, Trinity Services Group, or the Nakamoto Group, Inc.

GEO has identified Chuck Hill as its designee for Topic 3.

6

AMENDED NOTICE OF RULE 30(B)(6)
DEPOSITION OF THE GEO GROUP, INC.

5:17-cv-02514-JGB

**Topic 4**

GEO's participation in inspections, audits, and/or assessments conducted by any oversight agency and their contractors—including, but not limited to, to the Nakamoto Group, the Department of Homeland Security Office of Inspector General, the California State Auditor, and the California Department of Justice—and GEO's receipt of recommendations, results, and other reports related to the Adelanto Facility during the class periods.

GEO has designated Dan Ragsdale as its designee for Topic 4.

**Topic 5**

Any and all policies and procedures, written or otherwise, concerning GEO's operation of the Adelanto Detention Center, including but not limited to ICE's 2011 Performance Based National Detention Standards (rev. 2016) and policies contained in GEO's Adelanto Policy and Procedure Manual.

GEO has identified James Janecka and Dan Ragsdale as its designees for Topic 5.

**Topic 6**

GEO's policies, procedures, and practices at the Adelanto Facility related to the following:

    a. Environmental health and safety: *e.g.*, cleanliness, sanitation, security, admission into facilities, classification, detainee searches, segregation (Special Management Units), and disciplinary system;

    b. Detainee care: *e.g.*, food service, nutritional program; medical care, dental care; and personal hygiene;

    c. Activities: *e.g.*, religious practices, telephone access, and visitation;

    d. Operation of a commissary, including the type and price of items sold;

    e. Voluntary Work Program; and

7

    f.   Grievance system.

GEO has identified James Janecka as its designee for Topic 6.

**Topic 7**

GEO's knowledge of the deaths of immigrants detained at the Adelanto Facility since May 1, 2011, including the circumstances and investigations of those deaths, as well as GEO's standard practices and responses upon learning of a detainee death at the Adelanto Facility.

GEO has identified James Janecka as its designee for Topic 7.

**Topic 8**

GEO's interpretation of its obligations to ICE with respect to the Voluntary Work Program at the Adelanto Facility since May 2011, including but not limited to:

    a.   The total number of detainees participating in the Voluntary Work Program each year, starting May 1, 2011;

    b.   Detainee work assignments and shifts;

    c.   Training, supervision, and evaluation of detainee workers;

    d.   Payroll, compensation and the process by which wages are calculated; and

    e.   Hiring and termination of detainee workers.

GEO has identified James Janecka as its designee for Topic 8.

**Topic 9**

The total dollar amount of Voluntary Work Program reimbursements received by GEO from ICE for detainee workers at the Adelanto Facility and the total dollar amount of Voluntary Work

8

AMENDED NOTICE OF RULE 30(B)(6)                              5:17-cv-02514-JGB
DEPOSITION OF THE GEO GROUP, INC.

Program reimbursements paid by GEO to detainee workers at the Adelanto Facility during the time period indicated in the Court's Order regarding Class Certification.

GEO has identified Chuck Hill as its designee for Topic 9.

**Topic 10**

The division of duties between GEO and ICE with respect to the operation of the Adelanto Facility, including which entity (GEO or ICE) bears responsibility for the following: proposing and/or setting the number of participants in the VWP, creating various work crews, assigning detainee workers to work crews, setting detainee work schedules, providing tools and equipment to detainee workers, supervising and/or instructing detainee workers, setting the scope of labor to be completed by detainee work details/crews, assessing detainee worker job performance, proposing changes to VWP wage rates, and determining in the first instance whether a detainee will be sent to administrative segregation.

GEO has identified James Janecka as its designee for Topic 10.

**Topic 11**

GEO's understanding of what role, if any, the City of Adelanto played in the contract(s) to operate the Adelanto Facility prior to the cancellation of those contracts, and what role, if any, the City of Adelanto still plays in the operation of those contract(s), including any payments GEO or its agents may continue to remit to the City or its representatives.

GEO has identified James Janecka as its designee for Topic 11.

**Topic 12**

GEO's operation of a Housing Unit Sanitation Policy at the following Facilities:

   a.  Adelanto ICE Processing Center in Adelanto, California;

b. Aurora ICE Processing Center in Aurora, Colorado;

c. Basile Detention Center in Basile, Louisiana;

d. Broward Transitional Center in Pompano Beach, Florida;

e. Montgomery Processing Center in Conroe, Texas;

f. Folkston ICE Processing Center in Folkston, Georgia;

g. LaSalle ICE Processing Center in Jena, Louisiana;

h. Karnes County Residential Center in Karnes City, Texas;

i. Mesa Verde ICE Processing Center in Bakersfield, California;

j. South Texas Detention Complex in Pearsall, Texas;

k. Pine Prairie ICE Processing Center in Pine Prairie, Louisiana; and

l. Tacoma Northwest Detention Center in Tacoma, Washington.

GEO has identified James Janecka as its designee for Topic 12(a). GEO has identified Dan Ragsdale as its designee for Topic 12(b)-12(l).

**Topic 13**

GEO's application of the HUSP(s) to detained immigrants at each Facility listed in Topic 12, above, since December 19, 2007, including, but not limited to, the following:

a. GEO's understanding of ICE's policies and practices relating to the HUSP(s), including discipline or other consequences for a detainee's failure to comply with the HUSP(s);

b. GEO's policies and practices relating to the HUSP(s), including discipline or other consequences for a detainee's failure to comply with the HUSP(s) and the purpose behind such policies and practices;

c. GEO's understanding of its communications and agreements with ICE regarding the use of detainee labor to clean the Facilities listed in Topic 12;

d. GEO's understanding of communications and agreements with ICE regarding the use of administrative or disciplinary segregation;

10

AMENDED NOTICE OF RULE 30(B)(6)                                    5:17-cv-02514-JGB
DEPOSITION OF THE GEO GROUP, INC.

e. Policies related to the HUSP(s), including any changes to those policies;

f. The Performance-Based National Detention Standards ("PBNDS") and their relationship to the HUSP(s);

g. Detainees' responsibilities under the HUSP(s), including the specific cleaning tasks required under the HUSP(s);

h. The ICE Detainee Handbook and its relationship to the HUSP(s);

i. The facility-specific Supplemental Detainee Handbooks and their relationship to the HUSP(s);

j. GEO's understanding of revisions or changes to the PBNDS, the ICE Detainee Handbook, and GEO's facility-specific Supplemental Detainee Handbooks;

k. All locations within the Facilities listed in Topic 12 which are cleaned or otherwise maintained by detainees under the HUSP(s);

l. Equipment used by detainees to perform tasks under the HUSP(s) and any policies and/or practices regarding detainees' use of equipment to perform tasks under the HUSP(s);

m. The frequency and duration of tasks performed by detainees under the HUSP(s), as well as any records and/or logs of such tasks and the location of and retention policy for such records and/or logs;

n. Communications with detainees regarding the HUSP(s), including the consequences of not performing work required under the HUSP(s), including GEO's general practices, policies, and procedures regarding communications with detainees concerning the HUSP(s);

o. Policies and practices regarding the training and oversight of GEO officers and staff in relation to the HUSP(s);

p. GEO employee and/or contractor positions that perform or supervise the cleaning tasks required by the HUSP(s);

q. GEO employee and/or contractor positions that perform or supervise other cleaning tasks that are <u>not</u> required by the HUSP(s);

r. GEO's budgets for cleaning and otherwise maintaining the Facilities listed in Topic 12;

s. Any differences and/or similarities between the use of the HUSP at the Adelanto Facility and at other GEO immigrant detention facilities; and

t. The origins and objectives of the HUSP(s).

11

AMENDED NOTICE OF RULE 30(B)(6)
DEPOSITION OF THE GEO GROUP, INC.

5:17-cv-02514-JGB

GEO has identified Amber Martin and Dan Ragsdale as its designees for Topic 13.

**Topic 14**

GEO's understanding of any and all policies and practices since May 1, 2011 relating to discipline for detainees' violation of GEO's rules or regulations, including, but not limited to, the following:

a. The origins of GEO's Segregation/Special Management Unit Officer policy, *see, e.g.* GEO-Novoa_00005526;

b. The implementation of the Segregation/Special Management Unit Officer policy at the Adelanto Facility;

c. Policies and practices regarding administrative segregation, disciplinary segregation, and protective custody including removing a detainee from segregation;

d. Training and oversight of GEO officers regarding procedures or guidelines related to administrative segregation and disciplinary segregation at the Adelanto Facility;

e. The detainee violations for which administrative or disciplinary segregation is a potential consequence;

f. Policies and/or practices relating to communications with detainees regarding administrative or disciplinary segregation;

g. Policies and/or practices regarding communications with detainees regarding GEO's rules and the consequences for violating GEO's rules;

h. Detainees' written complaints regarding the use of administrative or disciplinary segregation as a possible consequence for not complying with the HUSP. This includes GEO's policies, practices and procedures regarding detainee complaints about the use of administrative or disciplinary segregation as a possible consequence for not complying with the HUSP;

i. Policies and/or practices for determining appropriate detainee discipline for a violation of GEO's rules;

j. Detainee complaints regarding administrative or disciplinary segregation;

k. The nature of administrative or disciplinary segregation, including the nature of the facilities used for segregation and policies and procedures applied to those in segregation;

AMENDED NOTICE OF RULE 30(B)(6)   5:17-cv-02514-JGB
DEPOSITION OF THE GEO GROUP, INC.

    l. GEO's practices regarding communications with ICE regarding detainee violations of GEO's rules; and

    m. GEO's practices regarding communications with ICE regarding the use of administrative or disciplinary segregation.

GEO has identified Amber Martin and Dan Ragsdale as its designees for Topic 14.

**Topic 15**

GEO's interpretation of PBNDS 5.8.V.C, including the relationship between PBNDS 5.8.V.C and the HUSP(s).

GEO has identified Amber Martin as its designees for Topic 15.

**Topic 16**

Detainees' participation in the Voluntary Work Program at the Adelanto Facility since May 1, 2011, including, but not limited to, the following:

    a. Communications and agreements with ICE regarding the Voluntary Work Program;

    b. ICE's policies and procedures regarding to the Voluntary Work Program;

    c. GEO's policies and procedures regarding the Voluntary Work Program at the Adelanto Facility, including but not limited to the Detainee Work Plan, *see e.g.* GEO-Novoa_00000221, and the implementation of those policies and procedures;

    d. GEO's policies and practices related to staffing needs at the Adelanto Facility;

    e. Current staffing at the Adelanto Facility, including janitorial, maintenance, laundry, and kitchen staff;

    f. Similarities and differences between the Voluntary Work Program as implemented at the Adelanto Facility and the Voluntary Work Program as implemented at other GEO immigrant detention facilities. Specifically: (a) the maximum rate of detainee pay per shift or per day at each of GEO's 72hr+ Adult Detention Facilities; (b) the maximum rate of ICE reimbursement for detainee shifts per at each of GEO's 72hr+ Adult Detention Facilities; and (c) the process by which GEO proposed (if it did) departure from the $1 per day rate where it has done so at these facilities.

    g. Maintenance requirements at the Adelanto Facility;

13

AMENDED NOTICE OF RULE 30(B)(6)                                            5:17-cv-02514-JGB
DEPOSITION OF THE GEO GROUP, INC.

h. Daily logs or records, including any records reflecting time worked, maintained by GEO officers at the Adelanto Facility;

i. Communications with detainees regarding the Voluntary Work Program, and policies or practices regarding communications to detainees about the Voluntary Work Program;

j. Method of determining the pay rate for Voluntary Work Program participants at the Adelanto Facility and other GEO immigration detention facilities;

k. GEO's budget for cleaning and otherwise maintaining the Adelanto Facility;

l. Policies and practices regarding supervision of Voluntary Work Program participants, including work hours and breaks;

m. Policies and practices for training Voluntary Work Program participants and any training provided to Plaintiffs related to their Voluntary Work Program participation; and

n. Policies and practices regarding violations of the Voluntary Work Program, including but not limited to such violations as requiring detainees to work longer than eight hours in a day.

GEO has identified James Janecka as its designee for Topic 16(c),(d),(e),(g),(h),(j), and (k). GEO has identified Amber Martin and Dan Ragsdale as its designees for Topic 16(a), (b), (f), (i), (j), (l), (m), and (n).

**Topic 17**

GEO's policies and practices since May 1, 2011 relating to uncompensated detainee labor (i.e., tasks that are not compensable under the Voluntary Work Program), including but not limited to:

a. The similarities and differences between "paid" and "volunteer" or uncompensated detainee workers;

b. Work assignments, shifts, and working conditions of uncompensated detainee workers;

c. The total number of uncompensated detainee workers each year from May 1, 2011 through the present;

d. Training, supervision, and evaluation of uncompensated detainee workers;

14

  e. The process by which uncompensated detainee workers become compensated detainee workers;

  f. Hiring and termination of uncompensated detainee workers; and

  g. The origins and objectives of GEO's policies and practices relating to uncompensated detainee labor.

GEO has identified Amber Martin and Dan Ragsdale as its designees for Topic 17.

**Topic 18**

GEO's policies and practices since May 1, 2011 relating to the provision of extra food, clothing, batteries, and/or personal hygiene items to detainees at the Adelanto Facility who perform work, tasks, or other labor, and the origins and objectives of those policies and practices.

GEO has identified James Janecka as its designee for Topic 18.

**Topic 19**

The following public statements made by GEO:

- https://wearegeo.com/2019/01/18/geo-group-statement-on-reuters-story/
- https://www.motherjones.com/politics/2017/04/geo-forced-labor-lawsuit/
- https://publicintegrity.org/business/immigration/despite-outrage-over-immigrant-detention-private-prisons-bottom-line-is-still-strong/
- https://www.wsj.com/articles/detention-operators-face-suits-over-1-a-day-work-programs-for-migrants-1532170801
- GEO's 2018 Q2 Earnings Call.

GEO has identified David Venturella as its designee for Topic 19.

**Topic 20**

The text of the contract provisions at facilities in the Nationwide HUSP Class where GEO pays more than $1 per day, including the contracts list reimbursement rates of $1 per unit of detained immigrant wages and/or any contracts list reimbursement rates of greater than $1.

GEO has identified Amber Martin as its designee for Topic 20.

AMENDED NOTICE OF RULE 30(B)(6)            5:17-cv-02514-JGB
DEPOSITION OF THE GEO GROUP, INC.

**Topic 21**

GEO's quarterly and annual profits received from revenue generated as a result of its operations at the Adelanto Facility from May 1, 2011 until the present.

GEO has identified Chuck Hill as its designee for Topic 21.

**Topic 22**

The monthly and annual operating costs of the Adelanto Facility from May 1, 2011 until the present.

GEO has identified Chuck Hill as its designee for Topic 22.

**Topic 23**

The amount of compensation received by GEO from the City of Adelanto and/or ICE related to the operation of the Adelanto Facility for the time period indicated in the Court's Order regarding class certification.

GEO has identified Chuck Hill as its designee for Topic 23.

**Topic 24**

Withdrawn at this time.

**Topic 25**

Withdrawn at this time.

**Topic 26**

GEO's knowledge regarding discovery responses and filings in this litigation.

GEO has designated Amber Martin and Dan Ragsdale as its designees for Topic 26.

Dated: December 6, 2019

                              Respectfully,

                              */s/ Lydia Wright*
                              Korey A. Nelson (admitted *pro hac vice*)
                              knelson@burnscharest.com
                              LA Bar # 30002
                              Lydia A. Wright (admitted *pro hac vice*)
                              lwright@burnscharest.com
                              LA Bar # 37926
                              C. Jacob Gower (admitted *pro hac vice*)
                              jgower@burnscharest.com
                              LA Bar # 34564
                              **BURNS CHAREST LLP**
                              365 Canal Street, Suite 1170
                              New Orleans, LA 70130
                              Telephone: (504) 799-2845
                              Facsimile: (504) 881-1765

                              R. Andrew Free (admitted *pro hac vice*)
                              andrew@immigrantcivilrights.com
                              TN Bar # 030513
                              **LAW OFFICE OF R. ANDREW FREE**
                              P.O. Box 90568
                              Nashville, TN 37209
                              Telephone: (844) 321-3221
                              Facsimile: (615) 829-8959

                              Robert Ahdoot (CA Bar # 172098)
                              rahdoot@ahdootwolfson.com
                              Tina Wolfson (CA Bar # 174806)
                              twolfson@ahdootwolfson.com
                              Theodore W Maya (CA Bar # 223242)
                              tmaya@ahdootwolfson.com
                              Alex Straus (CA Bar # 321366)
                              Astraus@ahdootwolfson.com
                              **AHDOOT & WOLFSON, PC**
                              10728 Lindbrook Drive
                              Los Angeles, California 90024-3102
                              Telephone: (310) 474-9111
                              Fax: (310) 474-8585

17

AMENDED NOTICE OF RULE 30(B)(6)                                         5:17-cv-02514-JGB
DEPOSITION OF THE GEO GROUP, INC.

| | |
|---|---|
| 1 | Nicole Ramos (admitted *pro hac vice*) |
| 2 | nicole@alotrolado.org<br>NY Bar # 4660445 |
| 3 | **AL OTRO LADO**<br>511 E. San Ysidro Blvd., # 333 |
| 4 | San Ysidro, CA 92173<br>Telephone: (619) 786-4866 |
| 5 | |
| 6 | Will Thompson (CA Bar # 289012)<br>wthompson@burnscharest.com |
| 7 | Warren Burns (admitted *pro hac vice*)<br>wburns@burnscharest.com |
| 8 | TX Bar # 24053119<br>Daniel H. Charest (admitted *pro hac vice*) |
| 9 | dcharest@burnscharest.com<br>TX Bar # 24057803 |
| 10 | **BURNS CHAREST LLP** |
| 11 | 900 Jackson St., Suite 500<br>Dallas, Texas 75202 |
| 12 | Telephone: (469) 904-4550<br>Facsimile: (469) 444-5002 |
| 13 | ***Attorneys for Plaintiffs.*** |

18

AMENDED NOTICE OF RULE 30(B)(6)
DEPOSITION OF THE GEO GROUP, INC.

5:17-cv-02514-JGB

# CERTIFICATE OF SERVICE

Plaintiffs, by and through undersigned counsel, hereby certifies that a true and correct copy of this notice of Rule 30(b)(6) deposition of The GEO Group, Inc. was served upon the following counsel in this matter, by email, on December 6, 2019.

Colin Barnacle
Christopher J. Eby
**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, CO 80202
T: 303-260-7712
F: 303-260-7714
colin.barnacle@akerman.com
christopher.eby@akerman.com

Damien DeLaney
Ashley Calhoun
**AKERMAN LLP**
601 West Fifth Street Suite 300
Los Angeles, CA 90071
T: 213-688-9500
F: 213-627-6342
damien.delaney@akerman.com
ashley.calhoun@akerman.com

Dated: December 6, 2019

/s/ Lydia Wright
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765