**AKERMAN LLP**
DAMIEN P. DELANEY (SBN 246476)
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342
Email: damien.delaney@akerman.com
ASHLEY E. CALHOUN (SBN 270530)
ADRIENNE SCHEFFEY (admitted *pro hac vice*)
COLIN L. BARNACLE (admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email: ashley.calhoun@akerman.com
Email: colin.barnacle@akerman.com

Attorneys for Defendant
THE GEO GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | Case No. 5:17-cv-02514-JGB-SHK<br><br>Assigned to Honorable Jesus G. Bernal<br>Honorable Shashi H. Kewalramani<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |
| THE GEO GROUP, INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated,<br><br>Counter-Defendant. | TAC Filed: September 16, 2019<br>SAC Filed: December 24, 2018<br>FAC Filed: July 6, 2018<br>Complaint Filed: December 19, 2017<br>Trial Date: June 23, 2020 |

51206235;1

Case No. 5:17-cv-02514-JGB-SHK

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Plaintiffs' response makes almost no effort to show the relevance of the information they seek from a deposition of GEO's Chairman and CEO, Dr. George Zoley. The response brief cites no evidence in the record showing that Dr. Zoley possesses unique, first-hand information pertinent to this case (indeed, Plaintiffs do not even *allege* that Dr. Zoley possesses such information); it cites no written discovery or deposition testimony in which Plaintiffs sought to obtain the information through less-burdensome means; and it abandons several of Plaintiffs' previously asserted bases for seeking Dr. Zoley's deposition. Instead, Plaintiffs try to shift the focus from the relevance and apex tests, making vague insinuations and untrue allegations about the prior testimony of GEO's corporate officers. Plaintiffs' response confirms that their purpose in seeking Dr. Zoley's deposition is to harass and intimidate GEO. There is no legal or factual basis for permitting the deposition of Dr. Zoley, and this Court should grant GEO's motion for a protective order.

## I. Plaintiffs Have Failed to Show That the Testimony They Seek Is Relevant.

Although Plaintiffs spend almost the entirety of their brief discussing communications between GEO and the City of Adelanto, none of these communications matter if they have no bearing on the claims or defenses in this case. The threshold question, therefore, is whether any of the information that Plaintiffs seek from Dr. Zoley is relevant to this lawsuit. The answer is plainly "no." Indeed, Plaintiffs' response brief only confirms the irrelevance of Dr. Zoley's deposition.

First, Plaintiffs make no argument that Dr. Zoley possesses information relevant to *their* claims, asserting only that Dr. Zoley's testimony may be relevant to *GEO's* defenses. See Doc. 233 at 2, 10. GEO demonstrated in its opening brief that Dr. Zoley's deposition would not yield information relevant to Plaintiffs' claims, *see* ECF. 230 at 9–11, and Plaintiffs have no response. They have therefore forfeited any argument that testimony from Dr. Zoley's deposition may be relevant to their claims. *See Johnson v. Ocwen Loan Servicing, LLC*, 2017 WL 10619758, at *5 (C.D. Cal. Oct. 10, 2017)

(Bernal, J.) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

Second, Plaintiffs have effectively withdrawn two of their three purported bases for claiming that Dr. Zoley's testimony might be relevant to GEO's intergovernmental immunity defense. In their pre-motion emails to GEO's counsel, Plaintiffs identified three subjects about which they wished to question Dr. Zoley: (1) alleged personal discussions between Dr. Zoley and City of Adelanto officials asking them "to end the City's Inter-Governmental Services Agreement with ICE"; (2) Dr. Zoley's alleged personal involvement "in requesting ICE's intervention in this case and others"; and (3) Dr. Zoley's alleged "personal knowledge of discussions related to ICE's oversight of the Adelanto Facility." Plaintiffs have completely abandoned the third purported basis for Dr. Zoley's deposition; nowhere in their opposition brief do they mention—much less assert—that Dr. Zoley has relevant information about ICE's oversight of the Adelanto facility.

Nor have Plaintiffs made any serious argument supporting the relevance of Dr. Zoley's alleged request for ICE intervention in this case. Plaintiffs offer only a single sentence on this point: "Finally, to the extent that the City's termination of the IGSA bears on GEO's obligations under California law, whether Zoley discussed its intergovernmental immunity defense or the new contract with ICE is directly relevant to its defenses." ECF 233 at 10. Plaintiffs do not assert that Dr. Zoley did, in fact, discuss intergovernmental immunity with ICE, since they have no basis in the record for making such an assertion. Nor do Plaintiffs assert that such discussions, if they happened, would actually be relevant to GEO's defenses, hedging their bet with the caveat "to the extent that the City's termination of the IGSA bears on GEO's obligations under California law." Most importantly, they do not offer any explanation for how these alleged discussions could have any bearing on the purely legal question whether GEO is entitled to intergovernmental immunity, nor do they identify *any authority at all* supporting the

notion that these alleged discussions are relevant to GEO's intergovernmental immunity defense. That is not surprising, since there is no such authority. In short, Plaintiffs' drive-by assertion is devoid of substance and cannot meet the threshold for relevance under the Federal Rules.[1]

That leaves only the first subject Plaintiffs invoke to justify Dr. Zoley's deposition: alleged personal discussions between Dr. Zoley and City of Adelanto officials asking them "to end the City's Inter-Governmental Services Agreement with ICE." But these alleged personal discussions also have nothing to do with any of GEO's defenses that Plaintiffs cite, *see* ECF 233 at 2, all of which raise pure questions of law that are completely unaffected by the discussions surrounding the termination of the City of Adelanto contract. Either Federal law preempts Plaintiffs' state-law claims—or it does not; the answer depends on a comparison between Federal law and State law. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 611 (2011). Either GEO's contract shields it from liability as a matter of derivative sovereign immunity—or it does not; the answer depends on whether GEO "exceeded [its] authority" under its Adelanto Facility contract, which simply involves reading what the contract says and comparing it with GEO's operation of the Adelanto Facility. *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 21 (1940). And as noted above, either the state laws at issue in this case violate intergovernmental immunity when applied to GEO—or they do not; the answer depends on whether the state laws "regulate the [Federal] Government directly or discriminate against it." *North Dakota v. United States*, 495 U.S. 423, 434 (1990) (plurality opinion).[2] None of these

---

[1]  Plaintiffs' speculation that Dr. Zoley "derived knowledge from ICE that he apparently used in orchestrating the termination of the City's IGSA, and in replacing it with a direct contract between ICE and GEO," ECF 233 at 2, has no support in the record, and Plaintiffs cite none. In any event, for the reasons discussed above, such "derived knowledge," if it existed, is utterly irrelevant to GEO's defenses, and Plaintiffs make no effort to argue otherwise.

[2]  Plaintiffs speculate that "the presence or absence of an IGSA with the City may affect GEO's obligations under California law," ECF 233 at 4, but they offer no

legal questions hinge on what Dr. Zoley did or did not say to Adelanto officials in some meeting at some point in the past. His alleged communications with Adelanto officials are completely irrelevant.

Plaintiffs assert that the termination of the IGSA shows that "GEO can simply rewrite the contractual scheme as it sees fit," which Plaintiffs say weakens GEO's derivative sovereign immunity defense. *Id*. But Plaintiffs cite *no authority at all* for the proposition that the ease with which a contractor may change the terms of a contract is relevant to a derivative sovereign immunity analysis. And even if it were relevant, Plaintiffs have pointed to no evidence that GEO did, in fact, "rewrite the contractual scheme as it [saw] fit"; indeed, Plaintiffs do not dispute that *the substance* of GEO's Adelanto Facility contract remained *the same* in every material way after the termination of the IGSA. *See* ECF 230 at 10 ("the contract currently governing Adelanto is substantively almost identical to the Inter-Governmental Service Agreement that previously governed Adelanto, insofar as it relates to the issues actually relevant to this action"). And most importantly, even if GEO's contract for the Adelanto Facility *had* changed in some material way after termination of the IGSA, and even if such a change was somehow relevant to GEO's derivative sovereign immunity defense, that change would be attributable to the City's decision to terminate the IGSA and ICE's decision to alter the terms of the Adelanto Facility contract, neither of which are within *Dr. Zoley's* control. And any such changes to the Adelanto Facility contract would be readily

---

explanation for why that might be so and cite no authority for that proposition. In any event, even if the absence of an IGSA somehow affected GEO's state-law duties, it is undisputed that the IGSA for Adelanto was terminated—that is, no one doubts that there is no longer an IGSA governing the Adelanto Facility—so there would be no need to depose anyone (let alone Dr. Zoley) to establish the factual predicate for Plaintiffs' speculative legal argument. And while it is not pertinent to adjudicating this motion, GEO nonetheless disputes Plaintiffs' assertion that "Congress authorized ICE to enter into detention agreements *only* with state or local government entities," *id.* at 4 n.2 (emphasis added), and GEO will address that assertion in detail if and when it becomes relevant to this case.

discernible from the face of the contracts themselves; Dr. Zoley's conversations with Adelanto officials would still be completely irrelevant.

Plaintiffs have not come close to showing that the information they seek from a deposition of Dr. Zoley is relevant to any claim or defense in this case. This Court should grant GEO's motion for a protective order based on relevance alone.

## II. Plaintiffs Have Failed to Meet the Heightened Standard for Deposing a High-Level Corporate Officer.

Even if the information Plaintiffs seek were relevant—which it plainly is not—they have failed to show that the deposition of GEO's highest-ranking corporate officer is justified. Plaintiffs do not deny that courts apply a heightened standard in deciding whether to allow the deposition of high-level corporate officers. Indeed, all three of the cases on which Plaintiffs principally rely applied the two-factor test described in GEO's opening brief: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Hunt v. Cont'l Cas. Co.*, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015); *see also Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011). Plaintiffs have failed to meet their burden on either prong of the apex test.

First, Plaintiffs have provided *no evidence* that Dr. Zoley possesses "*unique* first-hand, *non-repetitive* knowledge of facts at issue in the case." *Hunt*, 2015 WL 1518067, at *2 (emphases added). Plaintiffs do not deny that Dr. Zoley only had one meeting with Adelanto officials regarding the termination of the IGSA and that at least one GEO employee was present at the meeting and could testify to what was said. *See* Doc. 233 at 5–8; *see also* Doc. 231-5 ¶ 7.[3] Nor do they allege that Dr. Zoley engaged in other

---

[3]   As noted above, Plaintiffs have essentially abandoned their assertion that Dr. Zoley's alleged discussions with ICE about this litigation are a basis for taking his deposition. Nonetheless, GEO notes that Plaintiffs do not dispute that Dr. Zoley has

communications with Adelanto officials regarding the termination of the IGSA in which no other GEO employee was involved. Indeed, they do not dispute Dr. Zoley's testimony that "[a]ny knowledge [he would] have about" "GEO's communications with City of Adelanto officials regarding the termination of the Adelanto IGSA" "would likewise be known by lower-level GEO officers or employees who participated in each of these communications." Doc. 231-5 ¶ 9. This complete lack of evidence—or even an allegation—that Dr. Zoley has unique, personal knowledge about the termination of the IGSA is dispositive.

Because they have no evidence that Dr. Zoley possesses *unique* information *about the termination of the IGSA*, Plaintiffs try to shift the focus to whether Dr. Zoley has *any* information about *anything related to the City of Adelanto*. They cite emails from February 5, 2019 (apparently from other GEO employees) asking Adelanto's City Manager to call Dr. Zoley, *see* Docs. 233-3; 233-4; point out that Dr. Zoley left the City Manager a voicemail on February 5, *see* Doc. 233-3; and note that Dr. Zoley was scheduled to be on a call with David Venturella and the City Manager on February 8, *see* Doc. 233-8. Yet, there is no evidence that *any* of these communications related to the termination of the IGSA, and even if they did relate to the termination of the IGSA, there is no evidence that they occurred without the involvement of, or outside the presence of, other GEO employees, who could testify to their substance. As for the communications that do appear to concern the termination of the IGSA, *see* Docs. 233-5; 233-6, Plaintiffs provide no evidence that this information did not involve other GEO employees. All of the documents cited by Plaintiffs are consistent with the principal assertion of Dr. Zoley's testimony: that he "do[es] not possess any unique knowledge" about "GEO's

---

"never had any communications with ICE relating to this litigation in which another GEO officer or employee was not present (in the case of any meeting) or directly involved (in the case of any written communication)." Doc 231-5 ¶ 8. That undisputed fact would dispose of this once-asserted basis for deposing Dr. Zoley, even if Plaintiffs had meaningfully attempted to show that Dr. Zoley's alleged discussions with ICE are relevant to this case.

communications with City of Adelanto officials regarding the termination of the Adelanto IGSA," since "lower-level GEO officers or employees . . . participated in each of these communications." *See* Doc. 231-5 ¶ 9.

Given that Dr. Zoley oversees a worldwide corporation and is involved in countless communications at any given time, it is hardly surprising that Plaintiffs can point to a single phone call from nearly a year ago that may have escaped his recollection. And even if the draft termination letters and memo to the City Manager had any bearing on this case, Plaintiffs could have easily obtained these documents via written discovery without the need to depose Dr. Zoley, though it appears that the documents were already a matter of public record. *See* Doc. 233 at 5 n.3. In any event, the question on which this motion turns is whether there is any evidence that Dr. Zoley possesses unique, first-hand information relevant to this case. And on that score, Plaintiffs have produced nothing.

Plaintiffs try to minimize their evidentiary burden under the apex doctrine, citing *Hunt* for the proposition that the party seeking the deposition "does not need to prove *conclusively* in advance that the deponent *definitely* has unique, non-repetitive information," Doc. 233 at 9 (quoting *Hunt*, 2015 WL 1518067, at *2 (emphases added)), but *Hunt* also makes clear that Plaintiffs must "proffer[ ] *a substantial basis* for concluding that [Dr. Zoley] may have" such information, *Hunt*, 2015 WL 1518067, at *2 (emphasis added); *see also id.* at *3 (repeating the same evidentiary standard). In fact, *Hunt* strongly cuts against Plaintiffs' request to depose Dr. Zoley. In that case, the Plaintiffs allegations about the information possessed by the apex officer "rest[ed] not only on information and belief, but on a number of direct interactions with" the deponent, as well as on the deposition testimony of other deponents expressly identifying relevant information possessed *only* by the apex officer. *See id.* at *2–3. There is nothing like that in this case.[4]

---

[4] It is notable that the other two cases on which Plaintiffs principally rely—*Apple*, 282 F.R.D. at 265–66, and *In re Google Litig.*, 2011 WL 4985279, at *2—both granted, at least in part, motions for a protective order based on the apex doctrine.

Second, Plaintiffs have failed to "exhaust[ ] other less intrusive discovery methods." *Id.* at *2. Plaintiffs assert that they "sought this information from GEO through less intrusive means, including written discovery." Doc. 233 at 10. This is simply not true. Although Plaintiffs claim that they served "interrogatories" and "requests for production" relating to Dr. Zoley's "private, one-on-one contacts with officials from the City" about the IGSA and relating to Dr. Zoley's "interactions with ICE . . . about this and other cases," Doc. 233 at 2, 10, they neither cite nor describe any specific written discovery requests in the record to support their naked assertion. That is because none exist. *See* Doc. 231 ¶ 7; *see also* Declaration of Barnacle at ¶ 5.

Plaintiffs also state that they sought their desired information through "deposition testimony of lower-level corporate executives and a GEO-designated corporate representative," Doc. 233 at 10, but once again, they fail to cite any specific deposition testimony to support this claim. The only deposition testimony Plaintiffs cite comes from the depositions of GEO's Senior Vice-President of Business Development, David Venturella, and the Adelanto Facility Administrator, James Janecka. Doc. 233 at 7–8. Plaintiffs did not ask either Mr. Venturella or Mr. Janecka about Dr. Zoley's communications, specifically, with Adelanto officials relating to the termination of the IGSA. *See* Doc. 231 ¶ 7.

Plaintiffs attempt to manufacture a conflict between Mr. Venturella's testimony and Mr. Janecka's[5] as to whether Mr. Venturella was present at a meeting with Adelanto

---

[5] Plaintiffs accuse Mr. Janecka of "fail[ing] to disclose Zoley's intervention" in the City's termination of the IGSA and of "not admit[ting] Zoley's drafting of termination notices for the City." Doc. 233 at 8. But Mr. Janecka disclosed Dr. Zoley's participation in two separate meetings with Adelanto officials (only one of which concerned the termination of the IGSA), *see* Dec. of Barnacle, Janecka Dep. at 250:3–23; testified that, "[t]o [his] knowledge," the City Manager "wrote the [IGSA termination] letter and sent it," *id.* at 255:11–14; and testified that, "[t]o the best of [his] knowledge," the City terminated the IGSA because doing so was "in the best interest of the City," *id.* at 37:25-38:1-3. These might not be the answers that Plaintiffs' counsel was hoping to receive, but there is no basis for suggesting that Mr. Janecka's testimony was misleading.

officials in which the cancellation of the IGSA was discussed, *see* Doc. 233 at 7–8, but no such conflict exists. Mr. Venturella was specifically asked whether he "had any discussions with anybody in the City of Adelanto about the *termination* of the [IGSA] contract," Venturella Dep. at 45:20–22 (emphasis added), and he responded that he had not, *id.* at 45:23. By contrast, while Plaintiffs selectively excerpt the portion of Mr. Janecka's testimony in which he vaguely references "a couple [of] meetings" in response to counsel's question about discussions "regarding the cancellation of the IGSA," Dec. of Barnacle, Janecka Dep. at 38:20–24, when Plaintiffs' counsel followed up and specifically asked Mr. Janecka "[w]hat did you talk about [at] this January, February 2019 [meeting], about the contract," *id.* at 45:9–13, Mr. Janecka did *not* say that termination of the IGSA was discussed. Rather, he testified that the discussion was "about the differences between the IGSA and the developmental agreement," and he eventually clarified that he "wasn't in the actual conversation" about the IGSA because he "actually picked the gentleman up from the corporate office that flew in and drove him to City Hall." *Id.* at 45:11–20; *see also id.* at 41:11–13 ("There was discussions about the contract. I don't recall the exact meeting. It's been almost a year ago."). And as for the second of the two meetings Mr. Janecka referenced, Plaintiffs' counsel never asked whether termination of the IGSA was discussed, and even if it was, Mr. Janecka did *not* testify that Mr. Venturella was at this second meeting (nor, as it turns out, was Mr. Janecka even sure that *he* was at the second meeting). *See id.* at 45:15-20, 251:1-252:25. There is no conflict between Mr. Venturella's testimony and Mr. Janecka's.[6]

---

[6] Plaintiffs, perhaps realizing that Mr. Janecka did *not* testify that termination of the IGSA was discussed during the meeting in which Mr. Venturella purportedly participated, assert that *Dr. Zoley* testified that that meeting "involved a discussion of terminating the City's IGSA." Doc. 233 at 7. But Mr. Janecka identified *two* meetings between Adelanto officials and Dr. Zoley that occurred in the spring of 2019, *see* Janecka Dep. at 250:1-251:25, and Dr. Zoley did not identify when the meeting he had with Adelanto officials about termination of the IGSA took place, *see* Doc. 231-5 ¶ 7. There is no reason to doubt that—of those two meetings between Dr. Zoley and

In short, Plaintiffs have done nothing to obtain the information they seek from Dr. Zoley via less-burdensome means. They have submitted no written discovery specifically inquiring about Dr. Zoley's personal conversation with Adelanto officials relating to termination of the IGSA; nor have they posed deposition questions to elicit this information. Instead, they ask this Court to let them go straight to the top, bypassing the safeguards that the apex doctrine puts in place to prevent the very kind of abusive litigation tactics that Plaintiffs are employing here. And they make this request even though there is no evidence in the record that Dr. Zoley possesses unique, first-hand information relevant to this case, and Dr. Zoley has testified—without contradiction—that he possesses no such information. Under these circumstances, there is no basis for allowing Dr. Zoley's deposition to go forward.

## Conclusion

GEO respectfully requests that this Court enter a protective order prohibiting the deposition of Dr. Zoley.

Dated: December 20, 2019         **AKERMAN LLP**

By: */s/ Colin L. Barnacle*
    Colin L. Barnacle (admitted *pro hac vice*)
    Ashley E. Calhoun
    Damien P. DeLaney
    Adrienne Scheffey (admitted *pro hac vice*)
    Attorneys for Defendant
    THE GEO GROUP, INC.

---

Adelanto officials—Mr. Venturella participated in one that did *not* involve a discussion of terminating the IGSA. Plaintiffs point to an email from the City Manager referencing a January 16, 2019 meeting with "Dr. Zoley and his executive team" as proof that this was the meeting in which Dr. Zoley discussed termination of the IGSA, *see* Doc. 233 at 4–5, but nothing in that email suggests that termination of the IGSA was discussed during the January meeting, rather than in the second meeting later in the spring, at which Mr. Venturella was not present.