Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Theodore Maya, SBN 223242
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111; Fax: 310-474-8585

Counsel for Plaintiffs
***Additional Counsel on Signature Page***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM,** and **RAMON MANCIA**, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br><br> **THE GEO GROUP, INC.**, <br><br> *Defendant.* | Civil Action No. 5:17-cv-02514-JGB-SHKx <br><br> **JOINT STIPULATION RE DISCOVERY DISPUTE** <br><br> Hearing Date: January 21, 2020 <br> Time: 10:00 a.m. <br><br> Discovery Cutoff Date: Feb. 11, 2019 <br> Pretrial Conf. Date: June 8, 2020 <br> Trial Date: June 23, 2020 <br><br> The Honorable Shashi Kewalramani |

**JOINT STIPULATION**

**STATEMENT OF ISSUES**

In accordance with Central District of California Local Rule 37, Plaintiffs Raul Novoa, Jaime Campos Fuentes, Abdiaziz Karim, and Ramon Mancia (collectively, "Plaintiffs") and Defendant The GEO Group, Inc., ("Defendant"), by and between their respective undersigned counsel, hereby submit this Joint Stipulation Regarding Plaintiffs' Second Set of Requests for Production. This follows multiple meet-and-confer efforts between the parties, including a telephonic conference on December 3, 2019.

**I.**

**INTRODUCTION**

**A.    Plaintiffs' Introductory Statement:**

Plaintiffs bring this Motion to Compel because Defendant has refused to produce relevant discovery relating to: (1) financial records (many of which it previously agreed to produce in response to Plaintiffs' prior motion to compel), (2) certain communications with U.S. Immigration and Customs Enforcement ("ICE"), (3) staffing information, (4) the square footage for the Adelanto Facility, (5) documents concerning Local Union 880, and (6) incident reports and detainee grievances.  Defendant also has failed to produce a privilege/redaction log concerning its productions to-date, which include many apparently inappropriate redactions, and has failed to produce documents it identified in its initial disclosures.  Finally, GEO has designated its documents "Confidential," "Highly Confidential," or "Highly Confidential—Attorneys' Eyes Only," *en masse*, and without justification.

This is now the second time Plaintiffs' have been forced to seek Court intervention for GEO's refusal to comply with discovery.  The madness must end.  Plaintiffs face a discovery cut-off date of February 12, 2020, and cannot wait any longer for GEO to live up to promises of compliance that never materializes.  Plaintiffs respectfully request that the Court grant this motion, order GEO to comply, and sanction any further failures to do so.

51196119;2

### 1. GEO's Financial Records

Plaintiffs' Second Set of RFPs included Nos. 22, 23, and 27 seeking financial records for the Adelanto Facility and Work Program. Plaintiffs' First Set of RFPs included Nos. 6-7, which sought similar information; these Requests were withdrawn based on GEO's amended responses to those RFPs, in which it stated it would comply, with certain limitations. (Maya Decl. Ex. A (Supp. Responses); Dkt. 196 (reflecting withdrawal of prior motion based on GEO's representations of compliance, following multiple hearings on prior motion).) During negotiations preceding this Motion, Defendant similarly represented that it would comply with RFPs 22, 23, and 27, to the same extent it was required to comply with requests seeking its financial records in *State of Washington v. The GEO Group, Inc.*, No. 17-cv-05806-RJB (W.D. Wash.) (Maya Decl., Ex. B.)

Despite its representations of compliance and extensive prior motion practice on these issues, GEO never produced the financial records at issue. (*Id.* ¶ 4.) Accordingly, Plaintiffs respectfully request an order compelling such production.

### 2. Privilege and Redaction Logs

On December 6, 2019, the Court ordered GEO to provide a privilege log containing any materials that it is withholding based on privilege as required under Rule 26(b)(5). (*See* ECF No. 227, p. 6.) GEO has not provided Plaintiffs with privilege and/or redaction logs, though it's withheld and redacted a great volume of documents. And it has not produced all documents identified in its Rule 26 Initial Disclosures. GEO should not be allowed to continue delaying discovery in this matter, especially because the discovery sought is directly relevant to their claims.

To give the Court some context, in its latest, 14th production, GEO produced 462 documents. Of those, GEO withheld approximately 360 as non-responsive. Of the documents produced, hundreds of pages are full-page redactions (*e.g.*, 36680-36693; 36705-36718; 36721-36734; 36847-37211). (Maya Decl. ¶ 5.) GEO must identify (a) the nature of any privilege claimed, (b) the type of information withheld, (c) who created the document at issue, (d) when the document was created, (e) each person who received or reviewed or

had possession, custody, or control of the withheld documents, (f) the general subject matter of the documents or redacted information, or (g) each and every fact or basis on which a claim of privilege is claimed or under which information or a document is withheld. Without this information, Plaintiffs have no way to assess the purported relevance of the information withheld. *See, e.g.*, *In re Medeva Sec. Litig.*, 1995 WL 943468, at *3 (C.D. Cal. 1995) (explaining why courts "[do] not welcome the unilateral editing of documents by the producing party"). Plaintiffs respectfully request that the Court compel GEO to produce privilege and redaction logs for all documents it has withheld or redacted.

### 3. GEO's Initial Disclosures

On August 16, 2018, GEO served its initial disclosures identifying several categories of relevant documents. It subsequently failed to timely locate and disclose these documents, and to date, still has not produced several categories of documents it identified in its initial disclosures. (Maya Decl. ¶ 6 & Ex. C.) These documents include GEO's business records from the Adelanto Facility, including but not limited to records pertaining to Raul Novoa's commissary purchases (item 7); food, hygiene, and sanitation records for the Adelanto Facility (item 8); and ICE policies and regulations related to the Voluntary Work Program (item 9). Discovery in this matter closes on February 12, 2020. Plaintiffs thus, respectfully request that GEO be compelled to promptly produce all documents responsive to GEO's Rule 26 Initial Disclosures and Supplemental Initial Disclosures.

### 4. GEO's Blanket Confidentiality Designations

GEO has designated thousands of documents in its productions as "Confidential," "Highly Confidential," or "Highly Confidential – Attorneys' Eyes Only." Again, for example, in its 14th production, GEO designated all but about a dozen documents Confidential or Highly Confidential. GEO even designated as confidential the *public* OIG report about ICE contracting tools which we produced to them. GEO-Novoa_00037716. (Maya Decl. ¶¶ 5, 7.)

Plaintiffs wish to rely on some of these documents in support of their claims or defenses. To that end, Plaintiffs have complied with Local Rule 79-5.2.2(b), which requires

Plaintiffs to meet and confer with GEO at least 3 days before seeking to file any such document under seal.  However, despite multiple attempts by Plaintiffs to get GEO to identify what information, if any, from various papers is confidential, GEO has ignored Plaintiffs.

GEO is impermissibly controlling the timing and pace of this litigation by preventing Plaintiffs from relying on discoverable evidence to support their claims and defenses. Accordingly, Plaintiffs seek an Order compelling GEO to fully respond to Plaintiffs' existing L.R. 79-5.2.2(b) requests, including all future Rule 79-5.2.2(b) requests, within three days of receiving those requests.

Plaintiffs will address any otherwise unaddressed points in Defendant's overlength introductory statement at the hearing, but have kept their statement here to three pages.

## B.   Defendant's Introductory Statement.

Plaintiff's Motion to Compel is misleading, largely premature, and without any basis in the facts or the law.

In fact, the Motion further corroborates Plaintiffs' *modus operandi* of failing to compromise on any discovery request or legitimate dispute.  Cooperation and compromise are necessary in any type of litigation; they are particularly indispensable in this case, which involves national security, third party privacy, and far-reaching financial and personnel information.  GEO reiterates its request that Plantiffs engage in a good-faith effort to seek relevant, discoverable information rather than requests that leave GEO no alternative but to object, and no choice but to rely on Court intervention to curb Plaintiffs' abuse of the discovery process.  Moreover, once the production of categories of documents is established, GEO requires a reasonable period of time to collect the documents, complete the complex review process required by ICE, and produce them to Plaintiffs.

Plantiffs identify the following principal categories of documents and issues: (1) The production of financial records, most of which GEO has either produced or has made clear that it will produce in rolling productions beginning on December 27, 2019; (2) logs

reflecting documents withheld or redacted based on privilege, almost all of which have been dictated by ICE but which GEO has agreed to prepare–one privilege log is provided to Plaintiffs' counsel along with this stipulation, and the only other one shall be provided by December 31, 2019; (3) documents reflected in GEO's Initial Disclosures, which are not identified by Plaintiffs and a large percentage of which have already been provided; and (4) GEO's "blanket" confidentiality designations, which in some cases have been  marked to reduce the number of redactions by  ICE, and other times to reduce the  number of redactions by GEO—the exact purpose of a protective order. For example, both GEO and ICE have taken the reasonable position that its employees names and personal information should not be made public, but should also not be withheld in full from Plaintiffs' counsel who may seek that information in discovery. Accordingly, both GEO and ICE have relied upon the confidentiality designations in not redacting that information. This is an appropriate use of a protective order. Additionally, GEO has consistently cooperated with Plaintiffs to permit the public filing of designated documents with reasonable redactions by informing Plaintiffs of the information GEO believes is confidential in each document; indeed, Plaintifffs cannot identify a single instance of being restricted in using by their designation. And, the *single*  document Plaintiffs do identify was not raised at any point in conferral prior to its identification in this joint statement. Had it been raised in conferral, the parties could have discusses de-designating it—if necessary. The identification of a single document (that was never discussed before approaching this Court) certainly does not justify the sweeping allegations raised by Plaintiffs.

In addition to these issues, GEO is forced to deal with categories of intrusive and overbroad requests that would obligate GEO to produce the paystubs and staffing schedules for all of its own employees (not the class members), in addition to incident reports that have no connection to this case.  Plaintiffs' continuing effort to compel confidential pay records of third parties, and huge categories of proprietary documents with only a tangential

relationship to the core issues in the litigation, should be rejected.  Plaintiffs' Motion should be denied. [1]

### 1. Plaintiffs Seek to Compel Financial Documents Before the Date Agreed to for Their Production.

Plaintiffs preface their discussion of issues in dispute by asserting that "[t]he madness must end." (Intro., p. __.)  In fact, the "madness" here applies to Plaintiffs' filing of a motion to compel documents which GEO has agreed to produce beginning less than a week from now.

As Plaintiffs acknowledge, during the meet and confer conference between counsel regarding discovery issues on December 3, 2019,  GEO reached agreement with Plaintiffs that GEO would produce financial records applicable to the Adelanto facility in the same categories as documents produced in the *Nwauzor* action pending in the Western District of Washington.  These documents consist (in summary) of financial statements and profit and loss statements applicable to the facility, in addition to documents reflecting operating costs and financial models and analyses of the Voluntary Work Program in effect at Adelanto, and per diem rate calculations and costs of providing services to detainees at the facility pursuant to GEO's contract.  (Maya Dec. Ex. CB, pp. 9-10.)

In November, the parties conferred about outstanding discovery requests following the Court's entry of an order certifying a class.  During that time, GEO reiterated that it was preparing documents for ICE review and would produce them as soon as ICE did so.  In a November 12, 2019 email message, GEO indicated that it anticipated being in a position to

---

[1] Plaintiffs' counsel also represented on a telephone conference on December 23, 2019 regarding discovery issues, that they intend to request an adverse inference from the Court in connection with certain documents that they claim have been improperly withheld from production, if such documents are not produced by January 15, 2019. They have not identified the specific documents under which they intend to request an adverse inference, or what specific inference they wish to seek.  Without such knowledge, GEO cannot adequately respond.   GEO therefore seeks a list of the particular documents pursuant to which counsel for Plaintiffs intend to seek an adverse inference.

51196119;2

1    produce responsive documents as part of an additional rolling production beginning on

2    December 27, 2019, if not before.   Following the meet and confer conference on December

3    3, 2019, a 30(b)(6) conferral on December 5th, and a conference with the Court on December

4    6, 2019, GEO proceeded with its proposal to produce responsive documents as part of its

5    additional rolling production commencing the same month. Nonetheless Plaintiffs did not

6    see fit to wait until this date had passed to file a motion to compel.

7         Frankly, the bad faith inherent in this tactic is self-evident  Plaintiffs do not, and

8    cannot, explain why they filed a motion to compel production of documents only two (2)

9    weeks after GEO provided the date for their production (not to mention the fact that GEO

10    has already produced many responsive documents, which Plaintiffs acknowledge).   The

11    Court should deny Plaintiffs' motion as premature at best, and duplicitous at most.  *See*

12    *Cannon v. Austal USA LLC,* 2017 WL 715413, * 2 (S.D. Cal.Feb. 23, 2017)(denying motion

13    to compel where "defendants' time to respond to the requests has yet to expire"); *Tri-Star*

14    *Pictures, Inc. v. Unger*, 171 F.R.D 94, 100 (S.D.N.Y 1997)(finding lack of good faith where

15    party filed motion to compel beore discovery responses were due).

16         Common sense dictates that the Court deny Plaintiffs' efforts to compel production

17    of financial information that GEO has agreed to produce, and will produce.

18            2.    **GEO Has Produced Documents Pursuant to its Initial**

19                **Disclosures**

20         The same argument applies to Plaintiffs' claim that GEO has not produced

21    documetns that are referenced in GEO's Initial Disclosures.  Plaintiffs do not deny that

22    GEO has produced copious documents included in the Initial Disclsures, nor do they

23    identify any deadline that GEO has failed to meet.  Plaintiffs simply reference a few types

24    of documents included within the Initial Disclosures, and assert that GEO has not produced

25    every possible document encompassed within it. This is not a legitimate subject of a

26    discovery dispute. Without specific documents that Plaintiffs believe have not been

27    produced, GEO cannot meaningfully respond.  By way of example, included in GEO's

28    initial disclosures were the PBNDS, which provide ICE standards for the VWP (produced

at Novoa_00018754 through GEO-Novoa_00019208). Plaintiffs have relied upon the PBNDS multiple times in public filings with this Court. Likewise, The GEO has produced myriad contracts with ICE, including but not limited to:

- GEO-Novoa_00021067 — GEO-Novoa_00021149
- GEO-Novoa_00021058—GEO-Novoa_00021149
- GEO-Novoa_00020710 — GEO-Novoa_00020792
- GEO-Novoa_00020703 — GEO-Novoa_00020792
- GEO-Novoa_00020455—Novoa_00020475
- GEO-Novoa_00020453—GEO-Novoa_00020475
- GEO-Novoa_00020536—GEO-Novoa_00020556
- GEO-Novoa_00020536—GEO-Novoa_00020556
- GEO-Novoa_00021060—GEO-Novoa_00021066
- GEO-Novoa_00021058
- GEO-Novoa_00021149
- GEO-Novoa_00020703GEO-Novoa_00035044 to GEO-Novoa_00035249

And, most egregiously, it is disingenuous for Plaintiffs to claim they do not have Plaintiff Novoas's commissary records, which were produced at GEO-Novoa_00030158 through GEO-Novoa_00030185 and ***filed with this Court*** as an exhibit to GEO's Opposition to Class Certification at the end of October.

### 3.   GEO Has not Delayed in Producing Privilege/Redaction Logs

Plaintiffs' attempt to involve the Court in GEO's preparation of a privilege log is also premature.  GEO has agreed to produce a privilege log as necessary for each of its productions, despite the fact that almost all of the redactions were dictated by ICE, not GEO.

Only two of the productions (Volumes 9 and 13) included any significant redactions or documents withheld on privilege grounds.  Plaintiffs do not identify any deadline GEO failed to meet with respect to producing the privilege logs, because none exists.  GEO has worked to diligently to investeigate and catalog the privilege objections made by ICE, and

1  reflect them for Plaintiffs.  Plaintiffs categorically fail to provide any basis to conclude that

2  GEO's efforts have been dilatory or untimely.

3       In fact, one of the two privilege logs is produced with GEO's response to Plaintiffs'

4  Motion.  The other is being prepared and will be provided to Plaintiffs by December 31,

5  2019.  Given the complexity of issues in the case and the fact that GEO is in the difficult

6  position of chronicling the objections made by a third party (IE), GEO  has acted diligently

7  and timely.  Plaintiffs provide no basis to conclude otherwise.

8      **4.**    **GEO Has Not Made Improper Confidentiality Designations**.

9       Plaintiffs' complaints about GEO's confidentiality designations is likewise baseless,

10  for several reasons.  First, Plaintiffs' method of challenging the confidentiality designations

11  is inconsistent with the requirements of the Protective Order entered into by the parties,

12  which requires the party challenging the designation to identify the challenged material and

13  state the basis for the challenge.  (Protective Order (Dkt. 151), ¶ 6.2).

14       Rather than comply with that requirement, Plaintiffs simply complain that GEO has

15  designated too much material as confidential.  This is precisely the type of blanket objection

16  that the Protective Order was drafted to prevent.  Plaintiffs' attempt to bypass the Protective

17  Order that it helped to draft, should be rejected out of hand.

18       Plaintiffs also take issue with GEO's "blanket" confidentiality designations, which in

19  some cases have been  marked to reduce the number of redactions by  ICE, and other times

20  to reduce the  number of  redactions by GEO—the exact purpose of a protective order.

21  For example, both GEO and ICE have taken the reasonable position that its employees

22  names and personal information should not be made public, but should also not be withheld

23  in full from Plaintiffs' counsel who may seek that information in discovery. Accordingly,

24  both GEO and ICE have relied upon the confidentiality designations in not redacting that

25  information. This is an appropriate use of a protective order. Additionally, GEO has

26  consistently cooperated with Plaintiffs to permit the public filing of designated documents

27  with reasonable redactions by informing Plaintiffs of the information GEO believes is

28  confidential in each document; indeed, Plaintifffs cannot identify a single instance of being

1  restricted in using by their designation. And, the *single* document Plaintiffs do identify was

2  not raised at any point in conferral prior to its identification in this joint statement. Had it

3  been raised in conferral, the parties could have discusses de-designating it—if necessary.

4  The identification of a single document (that was never discussed before approaching this

5  Court) certainly does not justify the sweeping allegations raised by Plaintiffs.

6       Plaintiffs also fail to demonstrate even one instance in which they have been harmed

7  by the confidentiality designations.  They do nothing more than make the conclusory (and

8  absurd) allegation that GEO has "prevent[ed] Plaintiffs from relying on discoverable

9  evidence." (p. ).  To the contrary.  For example, Plaintiffs were not prevented from relying

10  on a single document in their class certification motion based on a confidentiality

11  designation.

12       Based on all of these undisputed facts, Plaintiffs' objections are frivolous.

13       **5.  Plaintiffs are Fishing for Evidence by Seeking Irrelevant**

14       **Employee Information.**

15       In addition to not identifyhing any concrete basis that GEO has fallen short of its

16  discovery obligations, Plaintiffs continue their own pattern of pressing their objectionable

17  discovery requests.

18       First, Plaintiffs have a newfound fascination with documents pertaining to the

19  schedules and the compensation of GEO's employees at the Adelanto facility.  In this

20  Motion, Plaintiffs seek (1) every paystub for GEO's employees over the past six years; (2)

21  all work schedules for GEO's employees over the past six years; and (3) all agreements and

22  communications between GEO and the Union representing its employees at Adelanto.  To

23  be clear, GEO's employees are not members of any class Plaintiffs represent.  To the

24  contrary, they are third parties from whom Plaintiffs seek detailed and confidential

25  information.

26       The categoriesof document requests highlighted above represent an unfocused and

27  intrusive fishing expedition that Plaintiffs claim will lead to evidence to support an

28  amorphous theory of "understaffing"; i.e., that GEO's workforce is understaffed and

1  therefore depends upon the voluntary detainee labor force. Plaintiffs  offer nothing more

2  than speculation to show that the discovery will yield any probative evidence.  What is clear,

3  however, is that it will result in a massive disclosure of confidential employee information

4  without any equally significant evidentiary benefit.  Courts routinely reject similar requests.

5  *See Americans for Prosperity Foundation v. Harris*, 2015 WL 12859225, * 3 (C.D. Cal. Oct. 13,

6  2015)(denying request to compel production of compensation information of third parties,

7  where its relevance is "not so significant as to warrant an invasion of the affected people's

8  privacy interests"); *cf Bennet v SimplexGrinnel LP*, 2012 WL 12920190, * 2 (N.D. Cal. Sept. 25,

9  2012)(holding that plaintiffs demonstrated "compelling need" to compel compensation

10  information of putative class members in wage-hour matter).  Here, Plaintiffs seek a broad

11  swath of compensation information for third party employees of GEO, not class members.

12  Plaintiffs fail to show any need for such information, much less a compelling one.

13        The facts and applicable law make the Court's decision clear – the request should be

14  denied.

15        **6.      Plaintiffs' Reframed Requests Fail To Reduce The Burden**.

16        Requests for Production 33 and 34 represent  Plaintiffs' attempt to reframe overbroad

17  requests that previously sought every single detainee grievance (Request for Production 16)

18  and every single incident or accident report referring to a physical assault or a sexual assault

19  (Request for Production 17) at the Adelanto facility going back twelve (12) years.

20        Not surprisingly, the Court expressed skepticism at the breadth of those requests and

21  their limited probative value.  Plaintiffs have now narrowed these requests, but not

22  meaningfully or in a way that tailors them to the issues in dispute.  Despite claiming that the

23  new requests seek documents limited to "Plaintiffs' claims of forced or underpaid labor," a

24  simple reading of the requests confirms that this is not the case.  In fact, Request 33

25  encompasses *all* incidents between GEO employees or agents and detainees, regardless of

26  the reason or the context.  As for 34, it seeks documents relating to any reports of grievances

27  related to the Voluntary Work Program, regardless of the context.  The requests are as

28

1   unacceptable as the previous ones which the Court rejected – Plaintffs provide no basis for

2   GEO or the Court to change their position.

3          In fact, Plaintiffs have taken a position with respect to discovery that it is inconsistent

4   with this request and others like it.  As recently as December 23, Plaintiffs' counsel expressed

5   skepticism and disapproval at the statement by GEO's counsel that significant class-wide

6   discovery targeting particular GEO facilities and detainees was essential, in light of the

7   nationwide class that was recently certified (for example, Plaintiffs' counsel appeared to

8   reject out of hand the possibility of taking 100 class member depositions in a class of over

9   100,000)..  Plaintifs cannot legitimately limit GEO's ability to engage in significant classwide

10  discovery, while at the same time insisting on obtaining grievances regarding every incident

11  involving a detainee, and other comprehensive requests.

12         Plaintiffs' attempt to compel production of these reports should ge denied.  Should

13  the Court order GEO to produce every grievence, GEO requests that Plaintiffs bear a

14  portion of the cost of reviewing, redacting, and producing those documents in response to

15  this overlybroad request.

16         **7.     Plaintiffs Serve New Overbroad and Unduly Burdensome Requests**.

17         Plaintiffs have continued this pattern by propounding additional requests that suffer

18  from the same defects as their previous discovery.

19         Requests for Production 29, 30, and 32  seek every work schedule for detainees and

20  non-detainees for the past five years (No. 29); every document reflecting the square footage

21  of the Adelanto, and the number of meals served at the facility over the past five years (No.

22  30); and every document reflecting communications between any GEO employee and a

23  representative of ICE regarding (among other things) compensation paid to detainees as

24  part of the Voluntary Work Program (No. 32).

25          Plaintiffs fail to explain how any of these requests are appropriately tailored to the

26  needs of the case.  Simply stating that GEO utilizes work performed by "both detained

27  immigrant workers and non-detained workers," for example, fails to justify seeking every

28  staffing schedule for both groups over a five-year period.  Nor can Plaintiffs justify the

security concerns triggered by the requests that implicate communications involving ICE and documents that reflect the layout of the secured and unsecured sections of the Adelanto facility. As GEO has made clear in conferral, should Plaintiffs seek this information, they should do so by making the appropriate *Touhy* request from ICE. And, Plaintiffs are well aware of this restriction as they themselves produced documents received from the City of Adelanto where all floorplans and squarefootage information appears to have been redacted.

Plaintiffs' efforts to compel this information are half-hearted at best, and should be denied.

For all of these reasons, Plaintiffs' Motion should be denied in its entirety. Moreover, GEO has been required to expend time and attention (at significant cost) to respond to this Motion, when the facts demonstrate that it is unnecessary and vexatious. GEO respectfully requests that the Court order Plaintiffs to reimburse GEO for at least a portion of its fees in responding to this Motion. Stop the madness, indeed.

## II.

## REQUESTS FOR PRODUCTION AND RESPONSES IN DISPUTE

### REQUEST FOR PRODUCTION NO. 6:

Please provide all financial records reflecting the monthly and annual operating costs of the Adelanto Facility from December 19, 2007 to present. This includes, but is not limited to, the cost of providing food, shelter, clothing, bedding, utilities, recreation, entertainment, medical health services, optical health services, dental services, and mental health services to detainees during that period.

### ORIGINAL RESPONSE TO NO. 6:

GEO objects to this Request as the time period extends outside the relevant time period relating to Novoa's detention at the Adelanto Facility. GEO objects to this Request on the grounds that "all financial records reflecting the monthly and annual operating costs of the Adelanto Facility" would be unduly burdensome to produce when documents sufficient to show these costs would be reasonable and proportionate. Subject to and

51196119;2

1   without waiving GEO's above-stated objections, GEO will conduct a reasonable search of

2   documents on active electronic systems and reasonably accessible paper storage areas that

3   GEO reasonably believes contain potentially relevant information within its possession,

4   custody, and control, and produce relevant, responsive, non-privileged documents, to the

5   extent they exist and subject to the protective order entered in this case, sufficient to show

6   actual expenditures at the Adelanto Facility regarding the Voluntary Work Program and

7   costs incurred providing goods and services to detainees during the time Novoa was a

8   detainee at the Adelanto Facility. Should a class be certified in this case at a later date, GEO

9   is willing to meet and confer regarding additional information it will provide in response to

10  this Request subject to the Court's defined class period and subject to ICE approval and

11  court orders. GEO will withhold documents subject to the above-stated objections.

12  **SUPPLEMENTAL RESPONSE TO NO. 6:**

13      GEO objects to this Request as the time period extends outside the relevant time

14  period relating to Novoa's detention at the Adelanto Facility. GEO objects to this Request

15  on the grounds that "all financial records reflecting the monthly and annual operating costs

16  of the Adelanto Facility" would be unduly burdensome to produce when documents

17  sufficient to show these costs would be reasonable and proportionate. Subject to and

18  without waiving GEO's above-stated objections, and pursuant to the agreement of the

19  parties after meeting and conferring, GEO will produce its financial statements; profit and

20  loss statements; budgets; to the extent they exist, all documents related to the operating costs

21  of the VWP at Adelanto, the profit or loss of the VWP at Adelanto, any financial analyses,

22  financial models, analyses of profits earned, valuation of the work performed, or any other

23  assessment of the VWP at Adelanto; to the extent they exist, all documents containing

24  financial performance analyses, financial models, or other financial evaluations prepared for

25  the purpose of GEO Group's offer(s) and bid( s ), and negotiations related to amendment(

26  s) and renewal( s) of contracts related to Adelanto; and, to the extent they exist, any per

27  diem rate calculations and models related to GEO's Adelanto contract, including VWP costs

28  and expenses, labor costs and payroll expenses, expected and guaranteed occupancy, and

other costs of providing services, and desired margins, during the years in which Plaintiffs were detainees at the Adelanto Facility.

### **PLAINTIFFS' POSITION ON GEO's RESPONSE TO NO. 6:**

After multiple hearings on Plaintiffs' prior motion to compel, Plaintiffs ultimately withdrew that motion as to this Request based on GEO's Supplemental Response, which appears above, in which it stated it would comply with the Request, with certain limitations. (Dkt. 196.)  GEO's continued refusal to produce the documents is shocking.

This evidence is well within the scope of discovery, for the same reasons as described below in connection with RFPs 22-23 and 27 (from the Second Set), and for the reasons explained in Plaintiffs' prior statement in the prior joint stipulation concerning this request. (Dkt. 179-1.)  As explained in that prior briefing, GEO contends that it cannot pay detainees more than $1 per day at the Adelanto Facility, and this evidence would speak to that contention.

GEO should not be permitted to flout its discovery obligations, in direct contravention of its prior representations to this Court that it would comply with this Request, as narrowed so as to remove it from the scope of the Court's prior order.  Plaintiffs respectfully request that GEO now be ordered to comply, and sanctioned for any failure to do so.

### **GEO's POSITION ON NO. 6:**

Plaintiffs assertion that GEO has "flouted its discovery obligations" is as unfounded as it is inflammatory.  Plaintiffs fail to mention that GEO has made clear its intention to produce documents responsive to this request under a timetable that has *not even occured.*

As described above, and as Plaintiffs acknowledge, during the meet and confer conference between counsel regarding discovery issues on December 3, 2019,   GEO reached agreement with Plaintiffs that GEO would produce financial records applicable to the Adelanto facility in the same scope as documents ordered to be produced by the Ninth Circuit in the *State of Washington* action pending in the Western District of Washington. These documents   consist largely of financial statements and profit and loss statements

1  applicable to the facility, in addition to documents reflecting operating costs and financial

2  models and analyses of the Voluntary Work Program in effect at the facility, documents

3  related to the profit or loss of the Voluntary Work program,and per diem rate calculations

4  and costs of providing services to detainees at the facility pursuant to GEO's contract.

5  (Maya Dec. Ex. CB, pp. 9-10.)

6          Following the meet and confer conference on December 3, 2019, and a conference

7  with the Court on December 6, 2019, GEO represented that it would produce responsive

8  documents as soon as it could collect them, including as part of its additional rolling

9  production commencing the same month, December 27, 2019, if not before.  Nonetheless,

10 Plaintiffs did not see fit to wait until this date had passed to file a motion to compel.

11         Plaintiffs do not, and cannot, explain why they filed this Motion to compel

12 production of documents only two (2) weeks after the agreement was reached for their

13 production (not to mention the fact that GEO has already produced some responsive

14 documents, which Plaintiffs acknowledge).  The Court should deny Plaintiffs' Motion.  *See*

15 *Cannon v. Austal USA LLC,* 2017 WL 715413, * 2 (S.D. Cal.Feb. 23, 2017)(denying motion

16 to compel where "defendants' time to respond to the requests has yet to expire"); *See Tri-*

17 *Star Pictures, Inc. v. Unger*, 171 F.R.D 94, 100 (S.D.N.Y 1997)(finding lack of good faith where

18 party filed motion to compel beore discovery responses were due).

19         The Court should deny Plaintiffs' Motion to compel this request.

20          **REQUEST FOR PRODUCTION NO. 7:**

21         Please provide any and all documents summarizing, constituting or recording the

22 amount of compensation received by GEO from the City of Adelanto and/or ICE related

23 to the operation of the Adelanto Facility.

24          **ORIGINAL RESPONSE TO NO. 7:**

25         GEO objects to this Request as the time period extends outside the relevant time

26 period relating to Novoa's detention at the Adelanto Facility. GEO objects to this request

27 as outside the scope of discovery under FRCP 26(b)(1) as all compensation received by

28 GEO from the City of Adelanto and/or ICE related to the operation of the Adelanto

Facility is not relevant to the claims or defenses in this case. GEO objects to the extent it requests information protected by the attorney- client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. Subject to and without waiving GEO's above-stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non- privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show compensation received by GEO from the City of Adelanto and/or ICE related to the operation of the Voluntary Work Program during the time Novoa was a detainee at the Adelanto Facility. Should a class be certified in this case at a later date, GEO is willing to meet and confer regarding additional information it will provide in response to this Request subject to the Court's defined class period and subject to ICE approval and court orders. GEO will withhold documents subject to the above-stated objections.

**SUPPLEMENTAL RESPONSE TO NO. 7:**

GEO objects to this Request as the time period extends outside the relevant time period relating to Novoa's detention at the Adelanto Facility. GEO objects to this Request on the grounds that "all financial records reflecting the monthly and annual operating costs of the Adelanto Facility" would be unduly burdensome to produce when documents sufficient to show these costs would be reasonable and proportionate. Subject to and without waiving GEO's above-stated objections, and pursuant to the agreement of the parties after meeting and conferring, GEO will produce its financial statements; profit and loss statements; budgets; to the extent they exist, all documents related to the operating costs of the VWP at Adelanto, the profit or loss of the VWP at Adelanto, any financial analyses, financial models, analyses of profits earned, valuation of the work performed, or any other assessment of the VWP at Adelanto; to the extent they exist, all documents containing financial performance analyses, financial models, or other financial evaluations prepared for the purpose of GEO Group's offer(s) and bid( s ), and negotiations related to amendment(

1   s) and renewal( s) of contracts related to Adelanto; and, to the extent they exist, any per
2   diem rate calculations and models related to GEO's Adelanto contract, including VWP costs
3   and expenses, labor costs and payroll expenses, expected and guaranteed occupancy, and
4   other costs of providing services, and desired margins, during the years in which Plaintiffs
5   were detainees at the Adelanto Facility.

6

7   **PLAINTIFFS' POSITION ON GEO's RESPONSE TO NO. 7:**

8       Like the prior request, Plaintiffs ultimately withdrew their prior motion as to this
9   Request based on GEO's Supplemental Response, which appears above, in which it stated
10  it would comply with the Request, with certain limitations. (Dkt. 196.)  GEO's continued
11  refusal to produce the documents is shocking.

12      Again, this evidence is well within the scope of discovery, for the same reasons as
13  described below in connection with RFPs 22-23 and 27 (from the Second Set), and for the
14  reasons explained in Plaintiffs' prior statement in the prior joint stipulation concerning this
15  request. (Dkt. 179-1.)  As explained in that prior briefing, GEO contends that it cannot pay
16  detainees more than $1 per day at the Adelanto Facility, and this evidence would speak to
17  that contention.

18      GEO should not be permitted to flout its discovery obligations, in direct
19  contravention of its prior representations to this Court that it would comply with this
20  Request, as narrowed so as to remove it from the scope of the Court's prior order.  Plaintiffs
21  respectfully request that GEO now be ordered to comply, and sanctioned for any failure to
22  do so.

23  **GEO's POSITION ON NO. 7:**

24      GEO incorporates its response to No. 6 above.

25      Plaintiffs persist in moving to compel documents that GEO agreed to produce
26  according to a rolling timetable beginning December 27, 2019, the same month that the
27  agreement was reached regarding the scope of financial data to be prodced.

28

1    Plaintiffs do not, and cannot, explain why they filed a motion to compel production

2    of documents only two (2) weeks after GEO made clear that it would produce the

3    documents requested (not to mention the fact that GEO has already produced some

4    responsive documents, which Plaintiffs acknowledge).  *See Cannon v. Austal USA LLC,* 2017

5    WL 715413, * 2 (S.D. Cal.Feb. 23, 2017)(denying motion to compel where "defendants' time

6    to respond to the requests has yet to expire"); *Tri-Star Pictures, Inc. v. Unger,* 171 F.R.D 94,

7    100 (S.D.N.Y 1997)(finding lack of good faith where party filed motion to compel beore

8    discovery responses were due).

9    The Court should deny Plaintiffs' Motion to compel this request.

10   **REQUEST FOR PRODUCTION NO. 22:**

11   Please provide any and all interim financial statements regarding the Adelanto Facility,

12   including but not limited to balance sheets, income statements, and cash-flow statements,

13   dated at any time between January 1, 2014 and the present, including:

14        a.    Source of revenue, such as number of detained immigrants, amount received

15              per detained immigrant, commissary sales, and reimbursement from

16              governmental agencies;

17        b.    Line-item detail of all expense categories, including a breakout of major Selling,

18              General, and Administrative costs including, but not limited to, salaries of

19              facility staff, contract labor, and commissary costs of goods sold; and

20        c.    Any year-over-year variance analyses performed against forecasts and/or prior

21              year's performance.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

23   GEO objects to this Request as the time period covers a timeframe in which Plaintiffs

24   were not detainees at the Adelanto Facility. GEO objects to this request as multiple, and

25   attempting to evade the limits of discovery by seeking a myriad of unrelated information in

26   numerous subparts. GEO objects to this Request on the grounds that "all interim financial

27   statements regarding the Adelanto Facility" would be unduly burdensome to produce. GEO

28   objects to this Request on the grounds that the phrase "interim financial statements" is

1   vague, ambiguous, and overbroad. GEO objects to the subparts of this Request as vague as

2   GEO is unable to ascertain how the subparts relate to the main category of documents in

3   this Request. GEO is willing to meet and confer should Plaintiffs wish to clarify this

4   Request. Subject to and without waiving GEO's above-stated objections, this issue has

5   already been litigated extensively in *Washington v. GEO***,** including in the Ninth Circuit. GEO

6   is amenable to providing the same scope of documents ordered in that case, tailored to the

7   present action. The relevant Order can be found at *Washington v. GEO***,** Western District of

8   Washington Case No. 17-cv-05806-RJB, ECF 133 (October 2, 2018). GEO also directs

9   Plaintiffs to GEO's response to Request No. 6 in GEO's Second Amended Responses and

10  Objections to Plaintiff Raul Novoa's First Set of Requests for Production served on October

11  14, 2019.

12  **PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 22**

13        This request, from Plaintiffs' Second Set, was not at issue in the prior motion to

14  compel.  It seeks interim financial statements regarding the Adelanto Facility, including

15  balance sheets, income statements, and cash flow statements.  GEO responded to this

16  request by stating that it "is amenable to providing the same scope of documents ordered

17  in [*Washington v. GEO*, Case No. 17-cv-05806-RJB (W.D. Wash.)], ECF 133." (CITE.)  In

18  that case, GEO was ordered to produce all documents showing profits and losses, operating

19  costs, contract payments, reimbursements, and revenue.  It was also ordered to produce all

20  documents containing financial performance analyses, financial models, and/or financial

21  evaluations.  This is all discovery also being sought in this request.  And yet, GEO has not

22  produced any of these documents.  It has only produced a two-page financial summary

23  without any supporting financial documents, which is clearly less than what it agreed to

24  produce.  Because the financial documents sought are relevant to the claims being brought

25  for unfair competition and unjust enrichment, Plaintiffs respectfully request that the Court

26  compel a further response that states unequivocally that GEO will produce these categories

27  of documents.

28

Plaintiffs seek to ascertain the value of the detainee labor on which GEO relied to operate the Adelanto Facility. This relates directly to Plaintiffs claims and is critical to the analysis of GEO's liability. Under California law, Plaintiffs are entitled to GEO's financial documents and information to prove that a benefit was obtained from the labor of detained workers, that such value is unjust, and the value of that benefit. *See Baltazar v. Apple, Inc.*, 2011 WL 588209, at *5 (N.D. Cal. Feb. 10, 2011).

Determining the amount of profit GEO derives from the unfair detainee labor practices at the Adelanto facility is also necessary for the computation of "disgorgement," the remedy for unjust enrichment, and the restitution of wages to which class members are entitled under their unfair competition claim. While the difference between a "fair wage" and the $1 per day paid is an essential part of the disgorgement of unjust enrichment analysis, Plaintiffs are also entitled to discover and evaluate the full value of the benefit received and retained by GEO resulting from its practice of failing to pay adequate compensation to detained workers at the Adelanto facility. As such, Plaintiffs must have access to GEO's financial information, statements, and documents to understand the scope of GEO's benefit and enrichment and to effectively litigate this case. In short, Plaintiffs are entitled to discovery regarding this theory of recovery. *See Gabriel Techs. Corp. v. Qualcomm, Inc.*, 2012 WL 3150604, at *3 (S.D. Cal. Aug. 2, 2012) (allowing discovery of financial records to determine amount to be disgorged in unjust enrichment suit).

In unjust enrichment cases, courts routinely compel financial "documents relevant to the benefit [defendant] allegedly received." *See id* (holding that plaintiffs are entitled to financial discovery regarding damages, even where their unjust enrichment claim was dismissed in its entirety); *Am. KUSA Corp. v. Advantus Corp.*, 2009 WL 10674756, at *3 (C.D. Cal. Sept. 29, 2009) (citation omitted) ("defendants' profit… is not only [relevant,] . . . but it is patently central to the [plaintiff's] claims."); *Fietz v. Southland Nat. Ins. Co.*, 2007 WL 1068486, at *5-6 (W.D. La. Apr. 5, 2007) (holding that financial documents related to claims for unjust enrichment are relevant, and therefore clearly discoverable); *Bob Barker Co., Inc. v. Ferguson Safety Products, Inc.*, 2006 WL 648674, at *3 (N.D. Cal. Mar. 9, 2006) ("[Plaintiff's]

claim for disgorgement of profits entitles it to inquire into what profits were in fact made, and to the production of sufficient back up documentation to allow it to test any figures listed on tax returns, profit and loss statements, or the like."); *State Farm Mut. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp.2d 141, 156 (E.D. N.Y. 2005) (financial records relevant to profit).

This was precisely the conclusion reached by the U.S. District Court for the Western District of Washington in another action against GEO arising out of its unfair labor practices regarding detained immigrant workers. *See State of Washington v. The GEO Group, Inc.*, No. 17-cv-05806-RJB (W.D. Wash.). There, the court ordered GEO to produce financial records related to the operation of the Northwest Detention Center, even though GEO voluntarily dismissed its affirmative defense of offset.

So too, here. Circumstances particular to GEO's operations require — at a minimum — discovery of financial information regarding the Adelanto facility operation as a whole to complete the liability, restitution, and disgorgement analysis necessary for Plaintiffs' unjust enrichment and unfair competition claims.

Separately, the parties' defenses in this case put GEO's financial records squarely at issue. For instance, GEO has contended in support of its preemption and *Yearsley* defenses that ICE and Congress set the $1 per day rate GEO pays participants in the Voluntary Work Program. Given this contention, and the replete evidence that GEO pays more than $1 per day at other facilities, GEO's financial records and, particularly, any labor cost windfalls that would drive the corporation's decision to pay only a $1 per day at Adelanto are relevant and discoverable. To defend against GEO's affirmative defenses and retain the equitable nature of the unjust enrichment remedy of which it is a part, Plaintiffs are entitled to full discovery related to the care of detainees, revenue, costs, profits, and reimbursements GEO receives from ICE.

### GEO'S POSITION ON ITS RESPONSE TO NO. 22:

GEO incorporates its response to No. 6 above.

After acknowledging that GEO agreed to produce the same financial data related to the Adelanto facility that GEO is producing in the *Nwauzor* action, Plaintiffs request that "the Court compel a further response that states unequivocally that GEO will produce these categories of documents." Plaintiffs' request is unnecessary, and flankly baffling.

Plaintiffs persist in moving to compel a further response confirming GEO's agreement to produce documents that GEO has already agreed to produce according to a rolling timetable beginning December 27, 2019, the same month that the agreement was reached regarding the scope of financial data to be produced.    Plaintiffs do not, and cannot, explain why they filed a motion to compel only two (2) weeks after the agreement regarding their production (not to mention the fact that GEO has already produced some responsive documents, which Plaintiffs acknowledge).  *See Cannon v. Austal USA LLC,* 2017 WL 715413, * 2 (S.D. Cal.Feb. 23, 2017) (denying motion to compel where "defendants' time to respond to the requests has yet to expire"); *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D 94, 100 (S.D.N.Y 1997) (finding lack of good faith where party filed motion to compel beore discovery responses were due).

Plaintiffs' Motion constitutes a waste of the Court's time and the parties' resources. Plaintiffs' Motion should be denied.

## **REQUEST FOR PRODUCTION NO. 23:**

Please provide any and all financial projections, operating forecasts, and/or breakeven analyses regarding the Adelanto Facility, dated at any time between January 1, 2014 and the present, including supporting analyses and/or basis of assumptions.

## **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility. GEO further objects to this Request on the grounds that "financial projections," "operating forecasts," and "breakeven analyses" are not relevant to the claims or defenses in this case because projections and forecasts of GEO's revenues and expenses are irrelevant to detainee work, the Volunteer Work Program (the "VWP"), and allegations of forced labor. GEO objects to this Request to the extent

that documents "supporting analyses and/or basis of assumptions" are not relevant to the claims or defenses in this case. GEO further objects to the phrase "supporting analyses" as the phrase is vague and overbroad. GEO also objects to this Request to the extent it seeks information protected by the attorney client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. Additionally, to the extent that this seeks financial information upon which GEO gains a competitive advantage, GEO objects that any tangential relevance of the documents requested does not outweigh the harm to GEO of disclosing its trade secret documents. Subject to and without waiving GEO's above-stated objections, this issue has already been litigated extensively in *Washington v. GEO*, including in the Ninth Circuit where a Request that was materially identical to the one listed above was stricken. As noted in response to Request 22, GEO is amenable to providing the a similar scope of financial documents as the court ordered in that case. GEO will not provide documents beyond those agreed to in Request 22.  GEO is withholding documents subject to the above-stated objections.

## **PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 23**

The same arguments advanced in support of Request 22 apply to this Request.  Here, Plaintiffs seek GEO's financial projections, operating forecasts, and/or breakeven analyses regarding the Adelanto facility.  These documents are relevant to Plaintiffs' theory of liability, as it will help show the full value and benefit obtained from the Work Program. And it will demonstrate that the continued operation of the facility was dependent on the labor of detained immigrant workers.  Plaintiffs will use such information to compute the liability, restitution, and disgorgement analysis necessary for Plaintiffs' unjust enrichment and unfair competition claims.  Furthermore, GEO's defenses put these financial records squarely at issue.  GEO has contended in support of its preemption and *Yearsley* defenses that ICE and Congress set the $1 per day rate GEO pays participants in the Work Program. Given this contention, and the replete evidence that GEO pays more than a $1 per day at other facilities, GEO's financial records and, particularly, any labor cost windfalls that would

drive the corporation's decision to pay only $1 per day at Adelanto are relevant and discoverable.

GEO responded to this request by stating that it "is amenable to providing the same scope of documents ordered in [*Washington v. GEO*, Case No. 17-cv-05806-RJB (W.D. Wash.), ECF 133]." In that case, GEO was ordered to produce all documents containing financial performance analyses, financial models, and/or financial evaluations—analogous to the financial projections, operating forecasts, and breakeven analyses being sought in this request. Yet, GEO has not produced any of these documents. It has only produced a two-page financial summary without any supporting financial documents, which is clearly less than what it agreed to produce. (Maya Decl. ¶ 8.) Because the financial documents sought are relevant to the claims being brought for unfair competition and unjust enrichment, Plaintiffs respectfully request that the Court compel a further response that states unequivocally that GEO will produce these categories of documents.

### **GEO'S POSITION ON ITS RESPONSE TO NO. 23:**

GEO incorporates its response to No. 22 above.

After acknowledging that GEO agreed to produce the same financial data related to the Adelanto facility that GEO is producing in the *Nwauzor* action, Plaintiffs request that "the Court compel a further response that states unequivocally that GEO will produce these categories of documents." (p. _.)

Plaintiffs persist in moving to compel a further response confirming GEO's agreement to produce documents that GEO has already agreed to produce according to a rolling timetable beginning December 27, 2019, the same month that the agreement was reached regarding the scope of financial data to be produced. Plaintiffs do not, and cannot, explain why they filed a motion to compel only two (2) weeks after the agreement regarding their production (not to mention the fact that GEO has already produced some responsive documents, which Plaintiffs acknowledge). *See Cannon v. Austal USA LLC,* 2017 WL 715413, * 2 (S.D. Cal.Feb. 23, 2017)(denying motion to compel where "defendants' time to

respond to the requests has yet to expire"); *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D 94, 100 (S.D.N.Y 1997)(finding lack of good faith where party filed motion to compel beore discovery responses were due).

Plaintiffs' Motion constitutes a waste of the Court's time and the parties' resources. Plaintiffs' Motion should be denied.

### REQUEST FOR PRODUCTION NO. 27:

Please provide any and all documents constituting paystubs for all non-detainee janitors, warehouse employees, laundry personnel, maintenance staff, and food services workers employed at the Adelanto Facility, dated at any time between January 1,2014 and the present, including:

> a. Hourly wage;
>
> b. Number of hours worked; and
>
> c. Explanation of benefits received (e.g., health insurance).

### RESPONSE TO REQUEST FOR PRODUCTION NO. 27:

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility. GEO objects to this request as multiple, and attempting to evade the limits of discovery by seeking a myriad of unrelated information in numerous subparts. GEO objects to this Request on the grounds that "paystubs for all non-detainee janitors, warehouse employees, laundry personnel, maintenance staff, and food services workers employed at the Adelanto Facility" are not relevant to the claims or defenses in this case. Compensation and benefits for non-detainee employees at the Adelanto Facility do not relate to detainee work, the VWP, or allegations of forced labor as alleged in the TAC. Further, there are no allegations in the TAC regarding the compensation and benefits of non-detainee employees. GEO objects to this Request as it seeks disclosure of personal, confidential and private information of non-parties, including health and employment records. GEO further objects to this Request on the grounds that it is unduly burdensome to the extent it seeks documents contained in individual non-detainee employee

1 files. GEO is not producing documents in response to this Request and is withholding

2 documents subject to the above-stated objections.

3 **PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 27**

4 This request seeks documents pertaining to the compensation of regular employees

5 at Adelanto.  GEO has refused to produce these documents claiming that they "are not

6 relevant to the claims or defenses in this case" because "[c]ompensation and benefits for

7 non-detainee employees at the Adelanto Facility do not relate to detainee work, the VWP,

8 or allegations of forced labor as alleged in the TAC."   But Plaintiffs are seeking this

9 information to determine the difference between the wages detainees were receiving and the

10 wages they would have been paid as regular employees, which is directly at issue in this case.

11 This is also the amount of restitution Plaintiffs are seeking under their unjust enrichment

12 claim.  And as stated above, GEO's defenses make the information sought relevant.  GEO

13 contends that ICE and Congress set the $1 per day rate GEO pays participants in the

14 Voluntary Work Program.  Given this contention, and the replete evidence that GEO pays

15 more than a $1 per day at other facilities, the wages that GEO should have been paying

16 detainee workers, and any labor cost windfalls that would drive the corporation's decision

17 to pay only $1 per day at Adelanto are relevant and discoverable.

18 **GEO'S POSITION ON ITS RESPONSE TO NO. 27:**

19 Request for Production No. 27 seeks the payroll records of most of GEO's entire

20 workforce at the Adelanto facility for a period of over five (5) years.  The overbreadth and

21 intrusiveness of the request is self-evident.  It both imposes significant burdens on GEO

22 and infringes on the undeniable privacy rights of its employees, without any showing of a

23 compelliug need for such information.  The request should be denied.

24 It is well-established that compensation information of employess in California

25 constitutes information protected an employee's right to privacy, and that parties seeking

26 such information in discovery must show a "compelling need" to obtain it.  *Bennet v*

27 *SimplexGrinnel LP*, 2012 WL 12920190, * 2 (N.D. Cal. Sept. 25, 2012)(holding that plaintiffs

28

1  demonstrated "compelling need" to compel compensation information of putative class

2  members in wage-hour matter).

3      Plaintiff's entire basis for this extraordinary request is that they need this information

4  to compare the wages that employees earn in the facility to determine what the detainees

5  would have been paid had they been treated as employees.  This theory relies on a fallacy --

6  that the wages employees earn in the facility are equivalent to the wages that GEO would

7  pay detainees if detainees were subject to the Labor Code.  However, if detainees are found

8  to be subject to the Labor Code, their remedy would consist of the minimum wage, not

9  some differential between what employees at the facility earn and what detainees are

10  currently paid. And,  Plaintiffs are already in possession of the specific wages set forth for

11  each position under the Service Contract Act. Those wage rates are explicitly contained

12  within the contracts with ICE, which have already been produced to Plaintiffs. Plaintiffs

13  offer no explination of why this information, that has already been produced, is not

14  sufficient.

15      Plaintiffs offer nothing more than speculation to show that the broad swath of

16  financial information from third parties (not class members) will yield any probative

17  evidence.  Courts routinely reject similar requests. *See Americans for Prosperity Foundation v.*

18  *Harris*, 2015 WL 12859225, * 3 (C.D. Cal. Oct. 13, 2015)(denying request to compel

19  production of compensation information of third parties, where its relevance is "not so

20  significant as to warrant an invasion of the affected people's privacy interests").

21      Plaintiffs' Motion to compel this request should be denied.

22

23  **REQUEST FOR PRODUCTION NO. 29:**

24      Please provide any and all documents constituting or describing staffing schedules

25  for both detained immigrant workers and non-detained immigrant workers at the Adelanto

26  Facility at any time between January 1, 2014 and the present.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

28      GEO objects to this Request as the time period covers a timeframe in which Plaintiffs

1  were not detainees at the Adelanto Facility. GEO further objects to this Request as overly

2  broad, unduly burdensome, and disproportionate to the needs of the case as it seeks

3  information wholly unrelated and not relevant to the claims and defenses.  This Request

4  does not request staffing schedules for detainees related to the VWP at the Adelanto Facility.

5  GEO also objects to this Request to the extent it seeks documents constituting or describing

6  staffing schedules for "non-detained immigrant workers" at the Adelanto Facility. GEO

7  does not employ "non-detained immigrant workers" and is not clear what this category is

8  intended to represent. To the extent this Request is seeking this information for non-

9  detained employees, GEO also objects to this Request because the negligible benefit of this

10  information to the Plaintiffs is far outweighed   by the security risks incurred by disclosing

11  the staffing schedules of employees working at the Adelanto facility. Many of these

12  documents are handwritten and will require individual review as they are comprised of

13  individual detainee signatures. At this time, preliminary searches indicate that over 18,000

14  documents need to be reviewed. Subject to and without waiving GEO's objections, GEO

15  is willing to discuss an agreed-upon procedure for reviewing and producing, to the extent

16  they exist, staffing schedules for detainees in the VWP, during the years in which Plaintiffs

17  were detainees at the Adelanto Facility. Until such a discussion occurs, GEO is withholding

18  documents that are responsive to this request.

19  **PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 29**

20        There is no question that GEO operated the Adelanto detention center with labor

21  from both detained immigrant workers and non-detained workers.  This is why Plaintiffs

22  are seeking their staffing schedules.  But GEO has refused to provide staffing schedules for

23  non-detained workers, agreeing to only provide staffing schedules for detained immigrant

24  workers.  It claims that  "the negligible benefit of this information to Plaintiffs is far

25  outweighed by the security risks incurred by disclosing the staffing schedules of [non-

26  detainee] employees working at the Adelanto Facility."  But the benefit of this information

27  is not negligible.  Plaintiffs allege that GEO uses detainee immigrants to clean, maintain,

28  and operate the Adelanto Facility.  (Compl. ¶ 32, ¶¶ 45-65, ¶74).  And that this practice

allows GEO to avoid recruiting from the traditional labor market and paying costs associated with potential, current, and former employment relationships, thereby reducing operational costs and increasing its own profits.  Staffing schedules showing whether Adelanto was understaffed and being predominately operated by detained workers relates directly to this claim.  Furthermore, the disclosure of this information poses no genuine security risk.  These are schedules for maintenance workers and kitchen staff.  These are not wardens nor security guards, and there is no reason to believe that these employees would be targeted.  As such, Plaintiffs respectfully request that the Court order GEO to produce staffing schedules for detained immigrant workers and non-detained immigrant workers for the entire class period.

**GEO'S POSITION ON ITS RESPONSE TO NO. 29**

Request for Production No. 29 both imposes significant burdens on GEO and infringes on the udeniable privacy rights of its employees, without any showing of a compelliug need for such information.

Plaintiffs argue that the staffing schedules for all Adelanto employees, in addition to detainees participating in the Voluntary Work Program ("VWP"), will somehow support a theory that GEO understaffed the facility and made up that shortfall with detainee labor. In fact, the VWP is not even designed  to supplement employee labor; the VWP is a diversionary program *mandated by GEO's contract with ICE.*  Plaintiffs' theory assumes that employees and detainees in the VWP are interchangeable.  They are not.

Comparatively, the burden of production here is excessive, and disproportionate to the needs of the case.  As GEO indicated in its initial response, there are at least 18,000 documents in its database that are potentially responsive to this request.  These are predominantly handwritten documents that cannot be electronically searched for responsiveness, but rather require manual review.  GEO offered to meet and confer with Plaintiffs to discuss a reasonable compromise with respect to this material, but as is their custom, Plaintiffs remain unwilling to accept anything less than production of every single responsive schedule.

51196119;2

In addition to the overbreadh and limited relevance of the massive request, Plaintiffs disregard the security and privacy concerns posed by these documents.   GEO has no alternate but to maintain the privacy of all individuals present at the facility, and cannot agree to a wholesale disclosure of work schedules of detainees and thrd party employees without a compelling need for the information.   Plaintiffs have not met this standard or even come close to it.   The request should be denied.   Should the Court order GEO to produce every handwritten staffing schedule, GEO requests that Plaintiffs bear a portion of the cost of reviewing, redacting, and producing those documents in response to this overlybroad request.

**REQUEST FOR PRODUCTION NO. 30:**

Please provide any and all documents describing or indicating the following:

a.      The square footage of the secured and unsecured areas of the Adelanto Facility;

b.      The total number of bathrooms, sinks, and toilets in the secured and unsecured portions of the Adelanto Facility; and

c.      The average number of meals prepared and served each day at the Adelanto Facility at any time between January 1, 2014and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility. GEO objects to this request as multiple, and attempting to evade the limits of discovery by seeking a myriad of unrelated information in numerous subparts.   GEO objects to this Request on the grounds that the negligible benefit of obtaining information regarding "the square footage of the secured and unsecured areas of the Adelanto Facility" to the Plaintiff is far outweighed by the security risks incurred by disclosing the information. GEO further objects to this request as not relevant to the claims at issue. There are no claims in which the number of restrooms would be relevant.   To the extent Plaintiffs claim that this is relevant to their understanding of what areas were cleaned inside the Adelanto Facility, they are already aware and have equal access to information

1  regarding how many toilets and showers they had access to and cleaned. Further, Plaintiffs

2  know how many meals they received each day. And, GEO has already produced

3  information about the food programs at the Adelanto Facility, including but not limited

4  to bates numbers   GEO-Novoa_00004553-GEO-Novoa_00004555;   GEO-Novoa

5  00004565-GEO-Novoa_00004567;   GEO-Novoa_00004582-GEO-Novoa_00004585;

6  GEO-Novoa_00004586-GEO   Novoa_00004588;   GEO-Novoa   00006637-GEO-

7  Novoa_00006738 (showing weekly schedule for breakfast, lunch, and dinner with a menu);

8  GEO-Novoa_00024210-GEO-Novoa_00024215;   GEO-Novoa_00002566-GEO-

9  Novoa_00002569; GEO-Novoa_00002580-GEO Novoa_00002582;   GEO-

10  Novoa_00002593-GEO-Novoa 00002595; GEO-Subject to and without waiving GEO's

11  objections, GEO will produce updated menus for 2019 showing the average number of

12  meals prepared and served each day at the Adelanto Facility.

13  **PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 30**

14  Plaintiffs allege that GEO is dependent on the labor of detained immigrants to clean

15  and maintain its Adelanto facility. (*See* Compl. ¶ 32, ¶¶ 45-65, ¶74).  To show that there

16  were not enough regular workers to do this, Plaintiffs seek the total square footage of the

17  Adelanto Facility.  Such information is also relevant because detainees are prohibited from

18  entering or working in unsecured portions of the facility.  Knowing the square footage of

19  the entire facility will also show whether GEO hired just enough workers to clean restricted

20  areas.  This information will, *inter alia*, be helpful to Plaintiffs' experts' damages analyses.

21  Plaintiffs also allege that GEO uses detained immigrants to prepare, cook, and serve

22  detainee meals. (*See Id.*, ¶ 58).  To show whether GEO hires enough regular workers for

23  these tasks, Plaintiffs seek the average number of meals prepared and served each day at

24  Adelanto since January 1, 2014.  In response, GEO has only agreed to produce updated

25  menus for 2019.  But the Court has already certified a class for detained immigrants at

26  Adelanto between December 19, 2014 and the date of final judgment. (*See* Dkt. No. 223,

27  Certification Order at p. 13).  Thus, Plaintiffs are entitled to discovery for the entire class

28  period, and GEO should not be allowed to unilaterally limit the scope of Plaintiffs' request.

51196119;2

Separately, in an effort to meet and confer in good faith, Plaintiffs agreed to forego their request for documents relating to the number of bathrooms, sinks, and toilets at the Adelanto facility, which originally was a part of this request.

**GEO'S POSITION ON ITS RESPONSE TO NO. 30**

Plaintiffs purportedly seek the information requested in Request for Production No. 30 to prove their theory of understaffing.  First, GEO has already produced copious documents regarding the extent of food service at the facility.  Plaintiffs fail to even address how this information is insufficient to show the volume of food service at the facility.

Second, Plaintiffs fail to show how the information is directly relevant.  They seek every document describing the precise measurements of the "secured and unsecured areas" of the Adelanto facility (i.e., the entire facility), based on the theory that it can show whether GEO "hired enough workers to clean restricted areas."  The request fails to conform to the information requested, which could plainly be gathered through depositions or other, less burdensome means.  The same is true for the request for documents reflecting all meals served at the facility for the past five (5) years, which Plaintiffs claim is necessary to indicate whether GEO employs enough workers to perform this task.  As usual, Plaintiffs fail to tailor their requests to the information sought, or to accept any reasonable compromise that reduces the burden on GEO or the intrusive effect on its employees.

Third, Plaintiffs ignore the security concerns inherent in requesting detailed information regarding the size and layout of a facility that houses immigrant detainees. GEO believes that it is likely barred by ICE from producing documents responsive to this request, even if it were directly relevant and tailored to the reason provided. Likewise, this information is important to the security of the Aldelanto Facility, and GEO cannot release it at the risk of its employees and detainees security.   Indeed, just recently, Plaintiffs produced documents from the City of Adelanto where all documents with square footage information were redacted. Further, ICE has indicated that the layout and size of the detention facility is sensitive information it intends to protect from videography or photography during any site inspection. Therefore, any square footage information should

be sought from ICE so that the federal government can assert any privilege which Plaintiffs can thereafter challenge in this Court, if necessary. Plaintiffs fail to even acknowledge this issue, much less provide an alternative approach to address it.

Plaintiffs' request should be denied.

**REQUEST FOR PRODUCTION NO. 32:**

Please provide any and all documents relating to, constituting, or recording communications between GEO and any representative or employee of ICE, dated between December 19, 2007 and the present and which reference or mention any of the following:

a.      Housing   Unit   Sanitation   Policies,   HUSP(s),   and/or   Sanitation Procedures/Housekeeping Plans;

b.      Personal Housekeeping Requirement of the PBNDS (PBNDS 5.8.V.C.);

c.      Any and all Contract Discrepancy Reports (CDRs) and/or Uniform Correction Action Plans (UCAPs) regarding the Adelanto Facility;

d.      Any and all audits or inspections of the Adelanto Facility; and

e.      Any compensation or payments made to detained immigrants who participate in the Voluntary Work Program at the Adelanto Facility.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32**

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility. GEO also objects to this request as "vague and ambiguous" as to the term "HUSP" and "housekeeping plans" as it is not clear what documents Plaintiffs are referring to. GEO objects to this request as multiple, and attempting to evade the limits of discovery by seeking a myriad of unrelated information in numerous subparts. GEO objects to this Request as violating Fed. R. Civ. P. 26(b)(1) because it asks for information that is outside the scope of discovery. Specifically, the breadth of the Request would include documents that have no bearing on the claims or defenses in this case.   For example, email communications between GEO and ICE that merely mention "Housing Unit Sanitation Policies," "Personal Housekeeping Requirement," "PBNDS (PBNDS 5.8.V.C.)" "Contract Discrepancy Reports (CDRs)" or "Uniform

Correction Action Plans (UCAPs)" and policies or plans concerning the Adelanto Facility may indeed "relate to" these subjects but have no bearing on the claims or defenses in this case. In addition, subparts a and b of this Request are not limited to the Adelanto Facility. GEO objects to this Request on the grounds that it is unduly burdensome and not proportional to the needs of the case as it seeks any and all correspondence between ICE and GEO that might relate or refer to a "Housing Unit Sanitation Policy", a "Personal Housekeeping Requirement", Contract Discrepancy Reports and/or Uniform Correction Action Plans, audits or inspections of the Adelanto Facility, and compensation or payments made to detainees who participated in the VWP. GEO objects to this Request on the grounds that "any and all audits or inspections of the Adelanto Facility" would include inspections of the Adelanto Facility that are not relevant to the claims or defenses in this case. For example, inspections of the Adelanto Facility may relate to fire safety, which have no bearing on the claims or defenses in this case. Moreover, Plaintiffs subpoenaed Creative Corrections LLC, The Office of the General Counsel of DHS, and the American Correctional Association in December 2018 for audit information. Plaintiffs have offered no justification as to why those documents are not sufficient, so as to justify the significant burden upon GEO that is associated with this request. GEO also objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. As for the burden, preliminary searches revealed over 30,000 documents that would need to be reviewed and culled in order to respond to this request-which is simply not justified in light of any tangential relevance.

Subject to and without waiving GEO's above-stated objections, and subject to ICE review and approval, GEO will produce, to the extent they exist, sanitation and housekeeping policies for the Adelanto Facility during the years in which Plaintiffs were detainees at the Adelanto Facility. ICE must review and approve this production. GEO will withhold all other documents, barring a discussion about the appropriate scope of this broad request and, as necessary, a cost-sharing agreement.

51196119;2

**PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 32**

This request seeks communications between GEO and ICE that reference or mention the Housing Unit Sanitation Policies, HUSP(s), Sanitation Procedures/Housekeeping Plans, PBNDS § 5.8.V.C, Contract Discrepancy Reports and/or Uniform Correction Action Plans regarding the Adelanto Facility; audits or inspections of the Adelanto Facility; and compensation or payments made to participants of the Voluntary Work Program at the Adelanto Facility. GEO refuses to produce responsive documents, claiming they are "vague and ambiguous" and beyond the scope of Fed. R. Civ. P. 26(b)(1). But this discovery is related directly to Plaintiffs' claims, and communications referencing or mentioning these policies will show *inter alia* how GEO's implemented the policies. Plaintiffs seek such information to show the implementation of GEO's relevant policies and practices.

GEO's "vague and ambiguous" objection is not well taken. Plaintiffs seek communications relating to five indisputably relevant categories: Housing Unit Sanitation Policies, Sanitation Procedures/Housekeeping Plans, Contract Discrepancy Reports and/or Uniform Correction Action Plans regarding the Adelanto Facility, audits or inspections of the Adelanto Facility, and compensation or payments made to participants of the Work Program at the Adelanto Facility.  Because these categories relate directly to claims that GEO used detainees to clean, maintain, and operate its facilities, Plaintiffs are entitled to such discovery.  (See Dkt. 223, Certification Order.)

**GEO'S POSITION ON ITS RESPONSE TO NO. 32**

Request for Production No. 32 is overbroad, implicates security conerns that are outside of GEO's power to control, and duplicates discovery that Plaintiff has taken and that GEO has provided.

First, the request goes beyond communications that are tied to Plaintiffs' claims of coerced labor, and instead encompasses any communications between any employee of GEO and any representative of ICE regarding the HUSPs, sanitation or housekeeping

1  requirements of the Adelanto contract, or any audit of the facility.  The request as phrased

2  belies Plaintiffs' claim that the requset is "directly related to Plaintiffs' claims."

3      Moreover, Plaintiffs ignore the significant security concerns implicated by a request

4  for any communications with ICE representatives regarding conditions at the facility.  The

5  request potentially seeks more than 30,000 documents, which would require review for

6  potentially private, privileged, or confidential information.  Plaintiffs' insistence on targeting

7  communications with ICE makes it unavoidable that any production would be subject to a

8  lengthy process of review and redaction by ICE.

9      Not only is the request  burdensome and intrusive,  but it is also duplicative of other

10  discovery Plaintiffs have taken in the case, including Request for Production 14 and the

11  subpoenas Plaintiffs have served on Creative Corrections LLC, The Office of the General

12  Counsel of DHS, and the American Correctional Association in December 2018.  Plaintiffs

13  have offered no explanation why the discovery they have already obtained is not sufficient

14  to the showing they seek to make.

15      Plaintiffs cannot justify the request as phrased, which is neither tailored nor necessary

16  to gather truly relevant information.  The request should be denied.

17  **REQUEST FOR PRODUCTION NO. 33:**

18      Please provide any and all documents relating to, constituting, or recording incidents

19  including, but not limited to, incident reports or accident reports relating to incidents

20  between GEO officials, officers, guards, employees, or contractors and detained immigrants

21  at the Adelanto Facility at any time between December 19, 2007 and the present.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

23      GEO objects to this Request as the time period extends outside the relevant time

24  period relating to the years in which Plaintiffs were detainees at the Adelanto Facility. GEO

25  objects to this Request as violating Fed. R. Civ. P. 26(b)(1) because it asks for information

26  that is outside the scope of discovery. GEO objects on the grounds that "incident reports

27  or accident reports" are not relevant to the claims or defenses in this case. Moreover, to the

28  extent GEO possesses documents concerning incident reports, these documents may be

1  kept in individual detainee files, requiring individual review of each file for relevant

2  documents and thereafter ICE approval. As Ms. Ellison informed Plaintiffs in her February

3  6, 2019 correspondence, the detainee files consist of over 1.8 million pages of documents,

4  and individual review of each page would be extremely time intensive and burdensome. The

5  documents consist mainly of handwritten materials that cannot be electronically culled or

6  searched in any meaningful way. As a class has not yet been certified in this case, GEO

7  objects to this Request on the grounds that it is unduly burdensome and disproportionate

8  to the needs of the case to the extent it seeks documents contained solely in individual

9  detainee files. GEO also objects to this Request to the extent it seeks disclosure of personal,

10 confidential and private information of non-detainee employees at the Adelanto facility and

11 non-parties. GEO further objects to this Request to the extent it seeks information

12 protected by the attorney-client privilege, the work product doctrine, the common interest

13 privilege, and/or any other applicable privileges or immunities. GEO is withholding

14 documents subject to the above stated objections. Subject to, and without waiving these

15 objections, GEO states that it has already produced the detainee files for the named

16 Plaintiffs and will conduct a reasonable search for documents related to incidents involving

17 the named Plaintiffs and GEO staff.

18    **<u>PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 33</u>**

19      A broader version of this request was at issue in Plaintiffs' prior motion to compel,

20 but Plaintiffs agreed to withdraw the Request and re-propound it in this limited fashion in

21 light of the Court's concerns regarding the breadth of the original request, as expressed at

22 oral argument on that motion.  The present request is well tailored and well within the scope

23 of permissible discovery.

24      Plaintiffs allege that GEO coerces detainees to work for a dollar a day or less by

25 threatening them with physical restraint and serious harm, and depriving detainees of due

26 process if they refuse to provide their labor, organize a work stoppage, or participate in a

27 work stoppage.  Plaintiffs seek incident reports for Adelanto to show whether detainees

28 were punished for refusing to work.  Yet, GEO still claims that the documents sought are

not relevant to the claims or defense of this case, and that the reports can only be retrieved from individual files, which would be too burdensome to search for information responsive to this request.

GEO has offered no evidence supporting its assertion regarding burden and, Plaintiffs are informed and believe that the incident reports are recorded and documented in a GEO tracking database. Information about these reports are therefore accessible outside individual detainee files.

Plaintiffs have worked in good faith to narrow the scope of requested documents to ease Defendant's purported burden. As mentioned above, Plaintiffs withdrew their previous request (RFP No. 17), which sought all incident reports or accident reports relating to incidents of physical assault and/or sexual assault at the Adelanto Facility. Now, Plaintiffs are only seeking incident reports between GEO employees and detainees, which relates directly to Plaintiffs' claims of forced and underpaid labor. Plaintiffs respectfully request that the Court order GEO to comply.

### GEO'S POSITION ON ITS RESPONSE TO NO. 33:

Plaintiffs' Requests 33 and 34 seek all "incident reports" in broad categories related to the Adelanto facility. When Plaintiffs previously issued requests regarding incident reports at Adelanto, the Court expressed such skepticism at their scope that Plaintiffs withdrew the requests entirely.

Despite Plaintiffs' claim that the new requests are "well tailored and well within the scope of permissive discovery," the requests are hardly more restrained than the originals. As for Request for Production No. 33, Plaintiffs simply modified the original request (Request for Production No. 17) to eliminate the reference to reports of "physical assault and/or sexual assault," and instead include any "incidents between GEO officials, officers, guards, employees, or contractors and detained immigrants." Plaintiffs' claim that this change targets incident reports that "relate[] directly to Plaintiffs' claims of force and underpaid labor" is patently untrue. The request includes *any* incident reports involving

1  detainees; presumably many "incidents" between GEO staff and detainees have nothing to

2  do with detainee work.

3         Again, while Plaintiffs claim that this broad request will identify grievances showing

4  that detainees were "punished for refusing to work," they have not placed any such limitation

5  on the request.  Moreover, the burden here is enormous.  As GEO has repeatedly informed

6  Plaintiffs, the information sought resides in detainee files, which contain millions of pages,

7  many of which are handwritten and cannot be electronically searched.

8         Insofar as Plaintiffs allude to a tracking database, insofar as electronic recordings of

9  the number of certain incidents exist, [2]   Plaintiffs make no representation that they would

10  accept data about the number of incidents related to their request as opposed to the specific

11  incident reports at issue. Therefore, Plaintiffs vague reference does not reduce the burden

12  to GEO to review each grievance individually.

13         Additionally, Plaintiffs have taken a position with respect to discovery that it is

14  inconsistent with this request and others like it.  As recently as December 23, Plaintiffs'

15  counsel expressed skepticism and disapproval at the statement by GEO's counsel that

16  significant class-wide discovery targeting particular GEO facilities and detainees was

17  essential, in light of the nationwide class that was recently certified (for example, Plaintiffs'

18  counsel appeared to reject out of hand the possibility of taking 100 class member depositions

19  in a class of over 100,000)..  Plaintifs cannot legitimately limit GEO's ability to engage in

20  significant classwide discovery, while at the same time insisting on obtaining grievances

21  regarding every incident involving a detainee, and other comprehensive requests.

22         Further, Plaintiffs still have not addressed the significant privacy concern implicated

23  by producing detainee incident reports.  Such reports potentially contain confidential

24  information, including medical or mental health records.  Despite the compelling need to

25  _____

26

27  [2] Even if it were true that grievences are electronically tracked, Plaintiffs' request is not
narrowed to information that could be accessed electronically; instead, it seeks ALL

28  documents relating to grievances, which means that GEO's search could not be simply
limited to a database search even if a comprehensive one existed.

1  justify production under these circustances, Plaintiffs disregard the issue entirely.   The

2  request should be denied.  Should the Court order GEO to produce every incident report,

3  GEO requests that Plaintiffs bear a portion of the cost of reviewing, redacting, and

4  producing those documents in response to this overlybroad request.

5

6  **REQUEST FOR PRODUCTION NO. 34:**

7       Please provide any and all documents relating to, constituting or recording grievances

8  filed by detained immigrants at the Adelanto Facility between December 19, 2007 and the

9  present which relate to any of the following:

10            a.    The Voluntary Work Program;

11            b.    Payment or nonpayment for work performed by detainees at the

12  Adelanto Facility;

13            c.    The quantity and/or quality of food, water, clothing, personal hygiene

14  items, medicine, dental hygiene items provided to detained immigrants at the Adelanto

15  Facility; and

16            d.    The quality, timeliness, or availability of medical care, mental healthcare,

17  and/or dental care provided to detained immigrants at the Adelanto Facility.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

19       GEO objects to this Request as the time period extends outside the relevant time

20  period relating to the years in which Plaintiffs were detainees at the Adelanto Facility. GEO

21  objects to this request as multiple, and attempting to evade the limits of discovery by seeking

22  a myriad of unrelated information in numerous subparts. GEO objects to this Request as

23  violating Fed. R. Civ. P. 26(b)(1) because it asks for information that is outside the scope of

24  discovery. GEO objects on the grounds that "grievances filed" are not relevant to the claims

25  or defenses in this case. Moreover, to the extent GEO possesses documents concerning

26  grievances, sometimes described as "Kites" these documents are contained within individual

27  detainee files. The review of these files for specific documents is incredibly burdensome and

28  time intensive as the handwritten notes each require individual review of over 1.8 million

pages. The burden cannot be reduced by targeted search terms or other culling methods. Accordingly,  as a class has not yet been certified in this case, GEO objects to this Request on the grounds that it is unduly burdensome  and disproportionate to the needs of the case to the extent it seeks documents contained in individual detainee files for individuals who have no relevance to the present action. Moreover, as noted in response to Request No. 33 above, GEO has already produced the detainee files for the named Plaintiffs, which include their Kites. Finally, GEO objects to the request for grievances about medical treatment as they are not relevant to the underlying claims in this case. Plaintiffs have not alleged that medical treatment was in any way tied to performance in the VWP or their personal housekeeping requirements. Accordingly, medical grievances are wholly unrelated to this case. GEO is withholding documents subject to the above stated objections.

### **PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 34**

Like the prior request, this is a more limited version of a broader request that was at issue in the prior motion to compel.  (RFP 16.)  As stated above, Plaintiffs allege that GEO coerces detainees to work for a dollar a day or less by threatening them with physical restraint and serious harm, and depriving detainees of due process if they refuse to provide their labor, organize a work stoppage, or participate in a work stoppage.  Plaintiffs seek grievances submitted by detainees at Adelanto to show whether detainees were punished for refusing to work.  Yet, GEO still claims that the documents sought are not relevant to the claims or defense of this case, and that the reports can only be retrieved from individual files, which would be too burdensome.

Again, GEO has offered no evidence supporting its assertion of burden and, upon information and belief, grievances are recorded and documented in a GEO tracking database.   Information about these reports are therefore accessible outside individual detainee files.  Plaintiffs have also worked in good faith to narrow the scope of requested documents to ease Defendant's purported burden.   Plaintiffs withdrew their previous request (RFP No. 16), which sought all grievances filed by detainees at Adelanto.  Now Plaintiffs seek only grievances related to the Work Program along with any complaints by

1  detainees for unpaid wages, and grievances concerning the quantity/quality of food. And
2  Plaintiffs have withdrawn their request for grievances related to medical, dental, and mental
3  healthcare, which was originally a part of this request.

4  **GEO'S POSITION ON ITS RESPONSE TO NO. 34**

5  Again, Plaintiffs attempt to rehabilitate a request previously questioned by the Court
6  and withdrawn by Plaintiffs. Here, they have narrowed a blanket request for all detainee
7  grievances over the past twelve (12) years to four categories. Each category implicates
8  significant privacy concerns, however, and Plaintiffs has still failed to remedy the far-
9  reaching and burdensome scope of the request. Ultimately, the Court's concerns have not
10  been remedied.

11  First, the request encompasses every grievance related to the VWP, regardless of its
12  subject matter, and any request related to the qualify of services provided by detainees.
13  Plaintiffs have again propounded document requests that are not tailored to the issues in
14  this lawsuit, and which impose an extraordinary burden on GEO.

15  And the burden to GEO is enormous. As GEO has repeatedly informed Plaintiffs,
16  the information sought resides in detainee files, which contain millions of pages in total,
17  many of which are handwritten and cannot be electronically searched. ]

18  Insofar as Plaintiffs allude to a tracking database, insofar as electronic recordings of
19  the number of certain incidents exist, [3] Plaintiffs make no representation that they would
20  accept data about the number of incidents related to their request as opposed to the specific
21  incident reports at issue. Therefore, Plaintiffs vague reference does not reduce the burden
22  to GEO to review each grievance individually.

23  Additionally, Plaintiffs have taken a position with respect to discovery that it is
24  inconsistent with this request and others like it. As recently as December 23, Plaintiffs'

25
26
27
28

[3] Even if it were true that all of the grievances could be electronically searched, Plaintiffs' request is not narrowed to information that could be accessed electronically; instead, it seeks ALL documents relating to grievances, which means that GEO's search could not be simply limited to a database search even if a comprehensive one existed.

1  counsel expressed skepticism and disapproval at the statement by GEO's counsel that

2  significant class-wide discovery targeting particular GEO facilities and detainees was

3  essential, in light of the nationwide class that was recently certified (for example, Plaintiffs'

4  counsel appeared to reject out of hand the possibility of taking 100 class member depositions

5  in a class of over 100,000).  Plaintifs cannot legitimately limit GEO's ability to engage in

6  significant classwide discovery, while at the same time insisting on obtaining grievances

7  regarding every incident involving a detainee, and other comprehensive requests.

8      Moreover, Plaintiffs fail to acknowledge much less address, the privacy concerns

9  implicated in a request that seeks any grievance by a detainee related to "medical care [or]

10  mental healthcare."   GEO is obligated to observe the privacy rights of detainees to

11  confidential medical information, absent a compelling basis for its production.  Indeed,

12  while Plaintiffs profess their concern for the rights of civil detainees residing in GEO

13  facilities nationwide, they appear to have little interest in such rights when they constitute a

14  barrier to Plaintiffs' desire to obtain massive caches of documents from GEO.

15      Plaintiffs' request suffers from the same defects as the previous request that

16  concerned the Court and which Plaintiffs withdrew.  The request should be denied. Should

17  the Court order GEO to produce every grievence, GEO requests that Plaintiffs bear a

18  portion of the cost of reviewing, redacting, and producing those documents in response to

19  this overlybroad request.

20  **REQUEST FOR PRODUCTION NO. 35:**

21      Please provide any and all contracts, agreements, memoranda of understanding, or

22  communications between GEO and the Local 880 Union regarding the Adelanto Facility at

23  any time between December 19, 2007 and the present.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

25      GEO objects to this Request as the time period extends outside the relevant time

26  period relating to the years in which Plaintiffs were detainees at the Adelanto Facility. GEO

27  objects to this Request as violating Fed. R. Civ. P. 26(b)(1) because it asks for information

28  that is outside the scope of discovery. GEO objects on the grounds that GEO's contract

with Local 880 Union and communications between GEO and Local 880 Union regarding the Adelanto Facility are not relevant to the claims or defenses in this case. GEO also objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO is withholding documents subject to the above-stated objections.

### PLAINTIFFS' POSITION ON GEO'S RESPONSE TO NO. 35

Plaintiffs allege that GEO is dependent on the free or nearly-free labor of detained immigrants to operate its Adelanto Facility.  In fact, Plaintiffs allege that when there are not enough detained immigrants to staff a work crew, GEO must suspend essential operations at the Adelanto facility.   Thus, Plaintiffs seek information relating to GEO's regular employees to assess whether shifts were being purposefully understaffed.   Specifically, Plaintiffs seek all agreements or communications related to GEO's employment of officers, guards, or other staff from the Local 880 Union. Such documents will likely show the work hours, working conditions, and work responsibilities agreed to for these employees.  This information is key to understanding the work contract that GEO negotiated for its employees, and whether the Adelanto Facility could have operated without the detainee workforce.   Communications between GEO and the Local 880 Union will likely show complaints of chronic understaffing being reported by employees to the union.   Such information relates directly to Plaintiffs' claims that GEO was dependent on its detainee workforce to operate the Adelanto Facility.

### GEO'S POSITION ON ITS RESPONSE TO NO. 35

Request for Production No. 35 seeks documents reflecting any communications between anyone at GEO and Local 880, the union representing Adelanto employees. over the past twelve (12) years.  The request is patently overbroad and irrelevant; indeed, it borders on frivolous.

Plaintiffs seek to justify this request by stating that it will yield information regarding "complaints of chronic understaffing being reported by employees to the union."   Even

assuming such an inquiry is relevant, this request is clearly not designed to elicit such information.  Instead, the request targets any communications between GEO and the union, about any topic.

Ir scarcely needs to be noted that the vast majority of communications with the Union have nothing to do with detainees performing work at Adelanto, or the other issues present in this case.  Once again, Plaintiffs' professed goal through its requests is contradicted by the requests themselves, which are neither tailored in the most basic manner nor mindful of the confidentiality concerns and privacy rights of GEO's employees, outside organizations such as Local 880, and the detainees themselves.

Plaintiffs' cannot articulate any convincing basis for their request for documents reflecting every communciation between GEO and the union representing its employees The request should be denied.


Respectfully submitted,

Dated: December 26, 2019

/s/ Theodore Maya
Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
C. Jacob Gower (admitted *pro hac vice*)

jgower@burnscharest.com
LA Bar # 34564
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

***Attorneys for Plaintiffs.***

51196119;2

Dated: December ___, 2019            **AKERMAN LLP**

                                     By:_____
                                           Michael L. Gallion (CA SBN 189128)
                                           David Van Pelt (CA SBN 163690)
                                           Ashley E. Calhoun (CA SBN 270530)
                                           Attorneys for Defendant
                                           THE GEO GROUP, INC.


                                     **Attestation of Filer**

        I, Theodore Maya, attest that all other signatories whose electronic signature ("/s/")

appears above, on whose behalf the filing is submitted, concur in the filing's content and

have authorized the filing.

Dated:        December 26, 2019       */s/ Theodore Maya*_____
                                      Theodore W Maya (CA Bar # 223242)
                                      tmaya@ahdootwolfson.com
                                      **AHDOOT & WOLFSON, PC**
                                      10728 Lindbrook Drive
                                      Los Angeles, California 90024-3102
                                      Telephone: (310) 474-9111

                                      Fax: (310) 474-8585

51196119;2