UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:17-cv-02514-JGB (SHKx) | Date: | January 2, 2020 |
| Title: | *Raul Novoa, et al. v. The Geo Group, Inc.* | | |

Present: The Honorable  Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):  Attorney(s) Present for Defendant(s):

None Present  None Present

**Proceedings (IN CHAMBERS):   ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

## I.   BACKGROUND

The background of this matter is set forth in detail in the District Judge's Order (1) GRANTING Plaintiffs' Motion for Class Certification (Dkt. No. 192); (2) DENYING Defendant's Motion to Exclude (Dkt. No. 211); and (3) VACATING the December 2, 2019 Hearing ("Order Granting Class Cert.") and is incorporated into this Order.  Electronic Case Filing Number ("ECF No.") 223, Order Granting Class Cert. at 3-8.  On December 6, 2019, the District Judge issued an Order on Plaintiffs' Motion for Class Certification ("Order on Class Cert.") and in it defined the three classes: the Adelanto Wage Class, the Adelanto Forced Labor Class, and the Nationwide HUSP Class.  ECF No. 229, Order on Class Cert. at 1-3.  In it, the Court also identified the class representatives and class counsel.  Id. at 3.

On December 4, 2019, the parties participated in a telephonic conference regarding the deposition that Plaintiffs seek to take of George Zoley, the Chief Executive Officer ("Zoley" or "CEO") and founder of Defendant the Geo Group, Inc. ("Defendant" or "GEO"), ECF No. 226, and on December 6, 2019, the parties filed a Joint Stipulation for Protective Order Briefing.  ECF No. 228.  Pursuant to that briefing schedule, Defendant filed its Motion for Protective Order ("Motion" or "Mot.") on December 10, 2019, ECF Nos. 230, 231; Plaintiffs filed their Opposition to Motion ("Opposition" or "Opp'n") on December 16, 2019, ECF No. 233; and Defendant filed its Reply in Support of Motion ("Reply") on December 20, 2019.  ECF No. 235.  The matter is ready for decision and for the reasons set forth below, the Motion is GRANTED.

## II. DISCUSSION

### A. General Legal Standards Regarding Discovery

In <u>Dale Evans Parkway 2012, LLV. v. Nat'l Fire and Marine Ins. Co.</u>, ED CV 15-979-JGB (SPx), 2016 WL 7486606, at *3–4 (C.D. Cal. Oct. 27, 2016), this Court provided the following applicable general scope for discovery under Federal Rule of Civil Procedure 26 ("Rule 26"):

> Fed. R. Civ. P. 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be relevant, the information sought "need not be admissible in evidence"; however, it must be "proportional to the needs of the case." <u>Id.</u> In determining the needs of the case, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." <u>Id.</u> A "relevant matter" under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L.Ed. 2d 253 (1978). Relevancy should be "construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting <u>Miller v. Pancucci</u>, 141 F.R.D. 292, 296 (C.D. Cal. 1992)).

### B. Standards Regarding Apex Depositions

The applicable standards regarding "apex" depositions are set out in detail, and adopted by this Magistrate Judge, in <u>Hunt v. Cont'l Cas. Co.</u>, No. 13-CV-05966-HSG, 2015 WL 1518067, at *1–2 (N.D. Cal. Apr. 3, 2015):

> Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by prohibiting a deposition or limiting its scope. Fed.R.Civ.P. 26(c)(1)(A) and (B). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." <u>In re Transpacific Passenger Air Transp. Antitrust Litig.</u>, No. C 07–05634 CRB, 2014 WL 939287, at *1 (N.D.Cal.2014) (citing <u>Phillips v. GMC</u>, 307 F.3d 1206, 1210–1211 (9th Cir.2002)). Absent extraordinary circumstances, it is rare for a court to disallow the taking of a deposition. See <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir.1975) ("[A] strong showing is required before a party will be denied entirely the right to take a deposition.") (internal quotations and citations omitted); <u>In re Google Litig.</u>, No. C 08–03172 RMW, 2011 WL 4985279, at *2

(N.D.Cal.2011) ("A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied."); Apple Inc. v. Samsung Electronics Co., Ltd., 282 F.R.D. 259, 263 (N.D.Cal.2012) ("[I]t is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.") (internal quotations and citation omitted); Powertech Technology, Inc. v. Tessara Inc., No. C 11–6121 CW, 2013 WL 3884254, at *1 (N.D.Cal.2013) (same).

"In determining whether to allow an apex deposition [i.e., the deposition of a high-level executive], courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." Apple v. Samsung, 282 F.R.D. at 263. A district court has broad discretion to determine whether, on the totality of the record, a party seeking a protective order has met its burden of showing good cause to block an apex deposition. See Apple v. Samsung, 282 F.R.D. at 262–263 (finding that upon a party's showing of good cause, the court has discretion to limit or preclude an apex deposition, particularly where the discovery sought can be obtained from a less burdensome source); In Re Google Litig., 2011 WL 4985279 at *2 (finding that when a party seeks to pursue an apex deposition, "the court may exercise its discretion under the federal rules to limit discovery" by precluding or limiting the deposition). The party seeking to take such a deposition does not need to prove conclusively in advance that the deponent definitely has unique, non-repetitive information; instead, "where a corporate officer may have *any* first-hand knowledge of relevant facts, the deposition should be allowed." Grateful Dead Productions v. Sagan, No. C 06–7727(JW) PVT, 2007 WL 2155693, at *1, n. 5 (N.D.Cal.2007) (emphasis in original) (citing Blankenship, 519 F.2d at 429 and Anderson v. Air West, Inc., 542 F.2d 1090, 1092–93 (9th Cir.1976)). See also Powertech, 2013 WL 3884254 at *2 (noting that the party seeking deposition "was not required to prove that [deponent] certainly has [relevant] information"). Nor has formal "exhaustion" been viewed as an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion. In re Transpacific, 2014 WL 939287 at *5 (noting that exhaustion of other discovery routes is an "important consideration" but not a necessary precondition to the taking of an apex deposition).

Additionally, as in Hunt, No. 13-CV-05966-HSG, 2015 WL 1518067, at *1, n.1, this Magistrate Judge also finds that the burden remains with the party seeking the protective order, in this case Defendant, to prevent the taking of the deposition.

### C. Analysis

Defendant argues that this Court should issue a protective order preventing the deposition of its CEO because the information that Plaintiffs are seeking from its CEO is not relevant, ECF No. 230, Motion at 8, and that the information could have been sought by other

means, such as written discovery and depositions of other persons at Defendant. Id. at 15. In support of its motion, Defendant's provided the declaration of its counsel and its CEO as well as a true and correct copy of the correspondence between the parties leading up to this dispute. ECF No. 231, Declaration and Materials in Support of Motion ("Dec.").

In their opposition, Plaintiffs argue that Defendant has not carried its burden and argue that Defendant's CEO's deposition is appropriate to allow Plaintiffs to explore the following areas:

- "[I]nteractions with ICE officials before, during, and after a February 2019, meeting at ICE Headquarters in Washington, D.C. about this and other cases pending against GEO." ECF No. 233, Opp'n at 2.

- Defendant's CEO's testimony "about how [the CEO] derived knowledge from ICE that [the CEO] apparently used in orchestrating the termination of the City's IGSA, and it replacing it with a direct contract between ICE and GEO." Id.

Plaintiffs also argue that "both lines of inquiry bear directly on GEO's affirmative defenses of preemption, derivative sovereign immunity, and inter-governmental immunity." Id. Finally, Plaintiffs argue that they are forced to go this route because Defendant "blocked Plaintiffs' attempts to obtain this information through other means, including interrogatories, requests for production, and depositions of two GEO corporate vice-presidents, GEO's Warden at Adelanto, and a 30(b)(6) corporate representative." Id.

At the outset, there is no dispute that Defendant's CEO is a high level executive to whom the "apex" deposition analysis applies. Consequently, the Magistrate Judge now turns to the reasons for depositions and determines whether Defendant's objections sufficiently outweigh those reasons.

### 1. The IGSA Related Issues

With respect to the areas of inquiry, Plaintiffs' discuss the inter-governmental service agreement ("IGSA") between ICE and the City of Adelanto and its relevance to the case. Specifically, Plaintiffs argue that "presence or absence with the City [of Adelanto] may affect GEO's obligations under California law." Id. at 4. Plaintiffs also argue that "[t]he company's performance under these agreements, the parties' interpretation of the terms, and GEO's ability to change these agreements at its own initiation—rather than at the behest of ICE, may all affect the viability of GEO's immunity defenses." Id.

As to the importance of Defendant's CEO's potential testimony to this issue, Plaintiffs argue that the CEO's communications with City of Adelanto were misrepresented in the CEO's declaration. Id. at 4-5. Plaintiffs then cite to the transcripts of depositions already taken and point to discrepancies as the reason for further warranting Zoley's deposition. Id. at 5-8.

In its opening brief, Defendant referred to and attached an e-mail chain between Defendant's counsel and Plaintiffs' counsel regarding the conferral regarding the deposition and in it Plaintiffs' counsel refers to the IGSA as the basis for warranting the deposition. ECF No. 231, Dec. at-1 at 2-7. In its reply, after having the opportunity to review Plaintiffs' Opposition here, Defendant more directly addresses the IGSA and argues that Plaintiffs do not "assert that such discussions, if they happened, would actually be relevant to GEO's defenses , hedging their bet with the caveat 'to the extent that the City's termination of the IGSA bears on GEO's obligations under California law.'" ECF No. 235 at 3.

Based on the record before it, the Magistrate Judge agrees with Defendant's argument that it is difficult to understand how Zoley's discussions with the City of Adelanto's officials will impact the legal analysis regarding Defendant's immunity defenses. Additionally, Plaintiffs do not provide any guidance in this regard nor do Plaintiffs illustrate how this testimony would be relevant to the California causes of action. On this basis alone, the Magistrate Judge does not believe the deposition of Defendant's CEO is warranted because the information sought is not relevant – even under the broad relevancy standard used in discovery.

Additionally, though not required, Plaintiffs failed to show they have even sought this information through other means, much less exhausted the other mechanisms. Though Plaintiffs argue that Defendant "blocked Plaintiffs' attempts to obtain this information through other means, including interrogatories, requests for production, and depositions of two GEO corporate vice-presidents, GEO's Warden at Adelanto, and a 30(b)(6) corporate representative," ECF No. 233 at 2, other than the purported inconsistent testimony of various witnesses, Plaintiffs do not identify examples of such behavior. On the other side, Defendant's counsel stated in his attached declarations that upon a review of "Plaintiffs' discovery requests and noticed 30(b)(6) topics[,] [n]one of the discovery requests or 30(b)(6) topics seek information about Dr. Zoley's role at or related to the Adelanto Facility, role related to issues relevant to this case, or even his role more generally within GEO." ECF No. 231 at 2; see also ECF No. 235-1 at 2 (noting that upon review of various RFPs and RFAs "none of the requests seek information about Mr. Zoley's meetings with Adelanto").

Consequently, taking this "important consideration" into account, In re Transpacific, 2014 WL 939287 at *5, the Magistrate Judge does not believe that an "apex" deposition is warranted on this basis.

### 2. Interactions With ICE Officials

This basis also fails for the same reasons.

First, Plaintiffs do not explain how Zoley's interactions with ICE officials is relevant to the claims of, essentially, underpaying or not paying detainees at Defendant run facilities or the defenses that Plaintiffs believes Defendant's may assert in this case.

Second, Plaintiffs offer no argument or evidence to counter Defendant's claim that "Plaintiffs have not previously sought information specifically related to the alleged communications with ICE or the City of Adelanto from any past GEO deponents (other than the

questions put to Mr. Venturella).'" ECF No. 230 at 15.  Again, though not a pre-requisite to warranting the deposition of Defendant's CEO, it is an important consideration.

### III.   CONCLUSION

For the reasons previously set forth, the Court finds Defendant has carried its burden and **GRANTS** Defendant's Motion for Protective Order.

**IT IS SO ORDERED.**