# **EXHIBIT 5**

# **to Declaration of David Van Pelt**

# Exhibit A

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
AARON KOLLITZ (Cal. Bar No. 238580)
Assistant United States Attorney
JOSEPH A. DARROW
Assistant United States Attorney
  Federal Building, Suite 7516
  300 North Los Angeles Street
  Los Angeles, California 90012
  Telephone: (213) 894-2083 / 0436
  Facsimile: (213) 894-7819
  E-mail: Aaron.Kollitz@usdoj.gov
     Joseph.Darrow@usdoj.gov

Attorneys for Defendants: UNITED STATES DEPARTMENT OF HOMELAND SECURITY; CHAD WOLF, Acting Secretary of Homeland Security; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; MATTHEW ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director, Immigration and Customs Enforcement; DAVID MARIN, Field Office Director, Los Angeles Field Office of ICE

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| ERENSTO TORRES, DESMOND TENGHE, JASON NSINANO, YAKUBU RAJI, on behalf of themselves and all others similarly situated, AMERICAN IMMIGRATION LAWYERS ASSOCATION, IMMIGRANT DEFENDERS LAW CENTER,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; CHAD WOLF, Acting Secretary of Homeland Security; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; MATTHEW ALBENCE, Acting Director, Immigration and Customs Enforcement; DAVID MARIN, Field Office Director, Los Angeles Field Office of ICE; ORANGE COUNTY SHERRIF'S DEPARTMENT; GEO GROUP, INC., a Florida corporation,<br><br>  Defendants. | No. EDCV 18-02604-JGB(SHK)<br><br>**DECLARATION OF GABRIEL VALDEZ**<br><br>Honorable Jesús G. Bernal<br>United States District Judge |

1

# DECLARATION OF GABRIEL VALDEZ

I, GABRIEL VALDEZ, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the foregoing is true and correct.

1. I am currently an Assistant Field Office Director ("AFOD") of Enforcement and Removal Operations ("ERO"), U.S. Immigration and Customs Enforcement ("ICE"), in the Los Angeles, California ICE Field Office. I have held this position since January 2011. I am currently the Officer in Charge at the Adelanto ICE Processing Center (the "APC") in Adelanto, California. I have worked in various other positions within ICE and the former Immigration and Naturalization Service since June 21, 1998.

2. A detainee may request a non-recorded/non-monitored legal call at the APC by submitting a request to GEO through the kite (informal request) system to have the attorney phone number placed on a non-recorded/non-monitored legal call status. GEO staff will research the number to verify it is a valid number to the stated person/office and place the number on the unmonitored list via the Talton platform. Currently, the APC does not accept attorney requests to be placed on non-recorded/non-monitored legal call status. Attorneys have been instructed to contact their clients and advise them to use the above procedure. Detainees are all apprised of the process by which to ensure legal calls are not monitored by instructions in the supplemental handbook provided to each detainee during intake processing and through postings in the housing units and intake hold rooms.

3. Detainees at the APC and attorneys have successfully placed phone numbers on non-recorded/non-monitored legal call status using the procedure described in Paragraph 2.

4. Positive acceptance for a specific phone number may be removed at the request of the affected detainee, attorney or other affected party. Currently, a detainee may submit a request on behalf of himself or his attorney to GEO to request removal of positive acceptance for a specific phone number, but if positive acceptance is removed, the detainee will be charged for a failed call. An affected party that is not the detainee or detainee's attorney may submit a request to have their phone number set to passive acceptance to GEO management or ICE management at the APC.

5. There has been one recent request for removal of positive acceptance at the APC. The request was granted.

6. As of the date of this declaration, there have been two contact attorney visits (*i.e.*, in person with no plexiglass barrier) at the APC since the imposition of COVID-19

2

procedures on March 13, 2020. The attorneys requested these visits and appeared at the facility with proper personal protective equipment.

7. The APC has eight attorney visit rooms, four asylum interview rooms and two consular visit rooms at the Adelanto West facility. There are two attorney visit rooms, three asylum interview rooms, one visitation room with a pass-through window (through which documents may be passed) and one consular visit room at the Adelanto East facility, for a total of twenty-one rooms at the APC. The twenty-one rooms identified are currently available for private telephonic attorney-client conferences. The attorney visit rooms may be used for contact visits and private telephonic attorney-client conferences, and the other rooms (asylum interview rooms and consular visit rooms) may be temporarily used for private telephonic attorney-client conferences.

8. A detainee may submit a request for a private call in one of the rooms described in Paragraph 7 by using the kite (informal request) system. The request must include the phone number, date and requested time for the call. Currently, attorneys may request to schedule a call through ICE. ICE and GEO are exploring options to allow for attorneys to schedule calls directly with the facility. The APC asks for 24-hours' notice but will accommodate calls as soon as practicable. Calls may be accommodated at any hour barring any unforeseen or emergent issues in the facility. The only time of day restrictions on use of these rooms is during counts, which typically take between 30 and 45 minutes.

9. There are 30 ICE Deportation Officers ("DO's") at the APC. Each DO is assigned an office number and an email address containing first and last names, as well as middle initials in many instances. The email address is for internal communications with other ERO, government and contract entities as well as limited outside entities at the DO's discretion.

10. If an attorney wants to contact a DO at the APC, they may call the facility and request to be transferred to the DO. If the DO does not pick up the phone, they may leave the DO a voice message. Attorneys may also email a general inbox at the Los Angeles ERO Field Office, which will be routed to the DO. Attorneys may also call the Detention Reporting and Information Line (DRIL) for assistance and their message will be routed to the facility to be distributed to the correct DO. Attorneys may also mail, courier, or otherwise deliver documents and requests to the facility. For attorneys who visit the facility, there are drop boxes in each lobby for documents, client passports and other identity documents, messages for DO's and other information attorneys wish to deliver to DO's. These boxes are checked multiple times during each workday (Monday -Friday) and the information is delivered directly to the DO's desks.

3

11. DO's are continually moving through the APC during their shifts, presenting documents to detainees for signature, serving NTA's, serving parole documents, serving notices and decisions, speaking with detainees, conducting detainee interviews, answering detainee requests in person, conducting observation of the facility, among many other duties. As a result, DO's are often away from their desks and email, such that providing their contact information would be of limited use to immigration attorneys and organizations.

12. To my knowledge, as a general matter, ICE field offices do not typically provide individual contact information of DO's to immigration attorneys or organizations. Although an ICE employee may choose to share their email address with parties outside the government, there is no requirement and I am not aware of any established ICE field office or headquarters policy requiring such disclosure.

13. Providing DO information poses security and privacy risks for the DO's and their families. Government email addresses contain data that could be utilized to compromise an employee's personal data and locate a person's residence or family residence addresses. The current hostile environment created by some members of the public toward ICE places ICE employees at greater risk of harm or retaliation for perceived actions or associations in the course of their duties.

14. Providing DO information poses logistical difficulties and would be of little practical use to immigration attorneys and organizations. Officers frequently change roles and facilities, such that any contact information provided would quickly become out-of-date and would require continual updating.

15. New detainees are being brought to the APC during the COVID-19 pandemic. All new arrival detainees are medically screened in a more thorough manner than facility visitors. In addition, these detainees are housed separately from the general population for fourteen days to allow for observation for any onset of COVID-19 symptoms. During those fourteen days, these detainees are not introduced into the general population. During those fourteen days, new detainees have equivalent access to attorney visits, telephones, and tablets as detainees in the general population.

16. Detainees are issued a pin number upon arrival to the APC. This allows detainees access to the phone and tablet systems. Detainees may use this pin to retrieve voice messages using the Talton system. For detainees to be able to video call or receive calls on the tablets, they must set up an account at Gettingout.com. Tablets are always freely available in the individual housing units, medical infirmary, and special management unit, except when charging. Tablets are charged in a rotating process to ensure there are always tablets ready for use. In order to make video calls, the tablets must be docked

at the one of the two docking stations in each of the housing unit dayrooms. The docking stations are mounted to walls within the general access areas of the dorms. Tablets cannot be utilized outside the assigned housing units due to the limitations of the linking technology. When making audio calls, detainees may move around their housing unit with the tablets.

17. Detainees can use the tablets to videoconference with their attorneys, as well as family and friends. On the tablets, detainees may also receive pictures and send/receive messages. Detainees may not send photos due to security concerns.

18. Audio calls on the tablets are the same cost as phone calls from phones in housing units, which is 7 cents per minute for most calls. Video calls are approximately a flat rate of 21 cents per minute.

19. Detainees who are assessed to have symptoms associated with COVID-19 infection are isolated in a negative pressure room in the medical infirmary and tested for COVID-19, as well as Influenza A&B. If the detainee has been housed, his or her housing unit will be placed on modified programming and monitored daily with temperature/symptom screenings until the result of the COVID-19 test is received. Only detainees presenting with the symptoms that the Centers for Disease Control and Prevention has identified as being associated with COVID-19 infection will be tested. These symptoms include fever (temperature above 100.4 degrees), shortness of breath (as assessed and defined by a medical provider), and cough.

20. Medical isolation/quarantine is dependent on test results. A detainee suspected of having COVID-19 is placed alone in negative pressure room in the medical infirmary. As of the date of this declaration, detainees at the APC have only had COVID-19 test results come back negative and the turnaround time on those tests have been 2-3 days. A positive COVID-19 test result could require many days of isolation/quarantine for the detainee depending on their symptoms. Detainees who are in medical isolation for possible COVID-19 infection or confirmed COVID-19 infection should not be moved out of a negative pressure room for court/attorney visits or any other reason. Detainees in medical isolation will have access to mail, phones, and tablets similar to detainees in general population - however, phones and tablets must be thoroughly disinfected once used by the detainee.

21. The APC has COVID-19 test kits.

22. No APC detainee or staff member has tested positive for COVID-19.

5

23. When there is a suspicion that an individual in a housing unit was exposed to COVID-19, their housing unit is placed in modified programming pending the results of the COVID-19 test on the suspect detainee. During modified programming, the housing unit does not eat meals in the dining hall and does not interact with other housing units. The housing unit will be monitored for symptoms and fever twice a day.

24. If positive, the infected alien will remain in medical isolation for the duration of his/her treatment. For the housing unit that was on modified programming, it will become a cohort and will be in that status for fourteen days unless another detainee becomes symptomatic which would then extend the cohort.

25. The APC has one housing unit currently on modified programming.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 6th day of April, 2020

_____
Gabriel Valdez
Assistant Field Office Director, Los Angeles
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement

6