Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

***Additional Counsel on Signature Page***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM**, and **RAMON MANCIA** individually and on behalf of all others similarly situated, <br> *Plaintiffs*, <br><br> v. <br><br> **THE GEO GROUP, INC.,** <br> *Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER REQUIRING COVID-19 PREVENTION MEASURES FOR NATIONWIDE HUSP CLASS** <br><br> Hearing: April 14, 2020, at 2:00 p.m. <br> The Honorable Jesus G. Bernal |

i

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER REQUIRING COVID-19
PREVENTION MEASURES FOR NATIONWIDE
HUSP CLASS

5:17-cv-02514-JGB

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   ISSUES PRESENTED ........................................................................................3

      A.    The Merits: Plaintiffs' Nationwide HUSP allegations
            pertain to labor beyond the scope of required
            personal housekeeping tasks enumerated in the
            PBNDS. ..............................................................................................3

      B.    The Harm: GEO forces Class Members to face
            increased risk of exposure to COVID-19 by
            requiring they clean common areas without reliable
            access to soap, sanitizer, disinfectants, or PPE. .....................3

      C.    The Relief: Plaintiffs seek an order enjoining GEO's
            HUSPs to ensure that anyone who cleans their
            common living areas is safe. ......................................................4

III.  REBUTTAL EVIDENCE ....................................................................................5

      A.    What Doctors Say: All epidemiology supports
            injunctive relief. .........................................................................5

      B.    What the CDC Says: CDC COVID-19 guidelines for
            correctional and detention facilities require cleaning
            supplies and PPE. ........................................................................8

      C.    What Class Members Say: GEO's assurances about
            COVID-19 precautions do not comport with reality. ...............9

IV.   ARGUMENT ...................................................................................................10

      A.    Plaintiffs and the Class have Article III standing. ...............10

            i.    GEO's failure to address the standing
                  question in the context of a certified class
                  dooms its Article III challenge. ..................................11

            ii.   The HUSP Class has standing to pursue
                  injunctive relief. ..........................................................11

ii

          1.    Class Members face an injury that is
"concrete and particularized" and
"actual or imminent." ....................................................... 12

          2.    The threatened injury is "fairly
traceable to the challenged action" of
GEO. ................................................................................. 12

          3.    The Court can redress Plaintiffs'
claims. ............................................................................... 13

     B.    Plaintiffs are entitled to injunctive relief. ............................ 14

         i.    Plaintiffs are likely to succeed on the merits. ........................... 14

         ii.    The Nationwide HUSP Class will suffer
irreparable harm in the absence of an
injunction. ....................................................................... 16

         iii.    The balance of the equities and the public
interest favor a temporary restraining order. ........................... 18

V.    CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001 .................................................................. 14

*Barrientos v. CoreCivic, Inc.,*
   951 F.3d 1269 (11th Cir. 2020)........................................................14, 15

*Bates v. United Parcel Service, Inc.,*
   511 F.3d 974 (9th Cir. 2007) ............................................................... 11

*Bennett v. Spear,*
   520 U.S. 154 (1997) ............................................................................ 12

*Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.,*
   No. CV 12-9861-GW(SSX), 2016 WL 4650428 (C.D. Cal. Feb.
   1, 2016) ............................................................................................... 12

*Bresgal v. Brock,*
   843 F.2d 1163 (9th Cir.1987) .............................................................. 19

*Covington v. Jefferson Cty.,*
   358 F.3d 626 (9th Cir. 2004) ............................................................... 12

*Davidson v. Kimberly Clark Corp.,*
   889 F.3d 956 (9th Cir. 2017) ............................................................... 10

*Doe 2 v. Mattis,*
   344 F. Supp. 3d 16 (D.D.C. 2018) ....................................................... 14

*Doe v. Kelly,*
   878 F.3d 710 (9th Cir. 2017) ............................................................... 17

*Easyriders Freedom F.I.G.H.T. v. Hannigan,*
   92 F.3d 1486 (9th Cir.1996) ................................................................ 19

*Harris v. Bd. of Supervisors, Los Angeles Cty.,*
   366 F.3d 754 (9th Cir. 2004) ................................................... 12, 17, 18

*Hernandez v. Wolf,*
   No. ED-CV-20-00617-THJ, slip op. (C.D. Cal. Apr. 1, 2020).........17, 18

iv

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................... 11

*Johnson v. California*,
543 U.S. 499 (2005) .............................................................................. 14

*Jones v. Tex. Dep't. of Crim. Justice*,
880 F.3d 756 (5th Cir. 2018) .................................................................. 17

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ................................................................. 11

*Lewis v. Casey*,
518 U.S. 343 (1996) .............................................................................. 14

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
638 F.3d 644 (9th Cir. 2011) .................................................................. 19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........................................................................ 12, 13

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010) .................................................................. 14

*Mendia v. Garcia*,
768 F.3d 1009 (9th Cir. 2014) ................................................................. 12

*Michigan v. U.S. Army Corps of Engineers*,
667 F.3d 765 (7th Cir. 2011) .................................................................. 16

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002 ................................................................... 11

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) ................................................................. 11

*Renee v. Duncan*,
686 F.3d 1002 (9th Cir. 2012) ................................................................. 13

*Rodde v. Bonta*,
357 F.3d 988 (9th Cir. 2004) .................................................................. 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

v

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013) ........................................................................ 18

*Sosna v. Iowa,*
    419 U.S. 393 (1975) ........................................................................................ 11

*Thakker v. Doll,*
    No. 1:20-cv-00480-JEJ (M.D. Pa. Mar. 31, 2020) ...................................... 17

*Trudeau v. Bockstein,*
    No. 05-CV-1019 GLS-RFT, 2008 WL 3413903 (N.D.N.Y.
    Aug. 8, 2008) .................................................................................................. 16

*Unknown Parties v. Johnson,*
    No. CV-15-00250-TUC-DCB, 2016 WL 8188563 (D. Ariz.
    No. 18, 2016) .................................................................................................. 17

*Velazquez v. GMAC Mortg. Corp.,*
    No. CV-08-05444 (DDP), 2009 WL 2959838 (C.D. Cal. Sept.
    10, 2009) ......................................................................................................... 11

**Other Authorities**

PBNDS § 5.8.V.C ........................................................................................................ 3

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... 10

vi

# I.   INTRODUCTION

On behalf of the Nationwide Housing Unit Sanitation Policy (HUSP) Class, Plaintiffs request minimal but vital relief: exempt the HUSP Class Members from cleaning the common areas in GEO's detention centers, or, in the alternative, provide the individuals performing the cleaning with protective equipment and test them for COVID-19. GEO's HUSP violated human trafficking laws before the COVID-19 epidemic, but GEO's cost-cutting HUSP program now threatens Class Members' lives.

GEO contests a great many aspects of Plaintiffs' application. But it cannot contest the central reality of this moment: a highly contagious, deadly, and incurable virus that has ravaged the world and swept across America is now spreading at an exponential rate inside this country's immigration detention centers:



Source: www.ice.gov/coronavirus (Confirmed Cases tab).

Time is of the essence. And the HUSP Class is running out of it. If Class Members are to be spared the likelihood of infection by the thousands and hospitalization or death in the hundreds, the Court must act now. Assurances by GEO wardens and federal officials that they are "monitoring"—but not actually following—guidelines by the Centers for Disease Control and Prevention (CDC) fall flat when

1

measured against the results of these efforts and the impulse of GEO's profit-driven motives.[1]

GEO's HUSP program exceeds the company's lawful authority from the federal government and forces Class Members to perform labor for GEO under threats for force, abuse of process, and other serious harms. While Class Members will prove the merits of their claim in trial, the parties' present dispute centers on whether the risk of harm to Class Members in light of the COVID-19 epidemic is so immediate and so irreparable as to require emergency intervention by this Court.

On the record before the Court, GEO cannot meaningfully contest that its practice of forcing Class Members to clean and sanitize and disinfect common living areas puts Class Members at far greater risk of infection, disease, and death than if GEO staff performed the cleaning tasks. Similarly, and in the alternative, simply providing Class Members with sufficient personal protective equipment, cleaning supplies, and COVID-19 testing to ensure their safety would mitigate this immediate, present risk.

For GEO, risking Class Members' lives is a business decision: protecting them costs money. Instead, GEO chooses to force Class Members to perform sanitation tasks without protection. The Court should stop GEO's unprotected implementation of the HUSP program in order to protect Class Members from COVID-19 exposure. In the present circumstance, the law calls for relief for the Class Members.

---

[1] Notably, on the day Plaintiffs filed the TRO application, GEO announced a nearly $60 million dividend to its shareholders:

> We are pleased to declare a quarterly cash dividend of $0.48 per share, or $1.92 per share annualized, which is indicative of our continued commitment to return value to our shareholders.

George C. Zoley, Chairman and Chief Executive Officer of GEO (quoted from GEO press release dated April 6, 2020) following a Board of Directors meeting in Boca Raton. https://www.businesswire.com/news/home/20200406005049/en/GEO-Group-Declares-Quarterly-Cash-Dividend-0.48.

2

## II.    ISSUES PRESENTED

Because GEO's Opposition relies on factual and legal red herrings, Plaintiffs first clarify the scope of several issues before the Court.

### A. The Merits: Plaintiffs' Nationwide HUSP allegations pertain to labor beyond the scope of required personal housekeeping tasks enumerated in the PBNDS.

Plaintiffs allege—and GEO admits—that GEO maintains HUSPs at each of its facilities requiring Class Members to perform cleaning and sanitization work without remuneration outside their immediate living areas.[2] Because Section 5.8.V.C of the federal Performance-Based National Detention Standards ("PBNDS") provides only four enumerated tasks GEO can force detained immigrants to perform without pay under threat of sanctions, and GEO's HUSPs go beyond those four tasks, Plaintiffs contend GEO is liable for violating the Trafficking Victims Protection Act ("TVPA").

GEO muddies the waters by conflating its HUSP with the PBNDS. But the PBNDS does not give it a blank check to compel cleaning and sanitation of common areas. And GEO uses phrases like "cleaning up after themselves," "housekeeping duties," "keeping one's area clean," and "cleaning one's living area"[3] to describe to GEO's HUSP program when that is <u>not</u> what this case is about. The TVPA claims of the Nationwide HUSP Class have always been about GEO's HUSP program, and that remains true today.

### B. The Harm: GEO forces Class Members to face increased risk of exposure to COVID-19 by requiring they clean common areas without reliable access to soap, sanitizer, disinfectants, or PPE.

GEO states that "Plaintiffs provide absolutely no evidence that detainees are at a higher risk of contracting COVID-19 by cleaning up after themselves in their general

---

[2] *See* Dkt. 223 at 3–7 (setting forth PBNDS § 5.8.V.C-permitted tasks and contrasting with the labor GEO requires through its HUSP program. *See also* Dkt. 252 at 5–7 (discussing the HUSP program).
[3] *See, e.g.,* Dkt. 255 at 8.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR                                   5:17-cv-02514-JGB
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

living areas." The assertion defies both logic and the CDC's recommendations.[4] By definition, people are exposed to whatever they are cleaning. And GEO's HUSP program compels this exposure because GEO refuses either to supply Class Members with proper PPE and cleaning chemicals or to pay its own employees to do the cleaning.[5] This unprotected, preventable exposure of Class Members to COVID-19, along with the illness and death it will cause them, combine to present immediate, irreparable harm to Class Members because of GEO's unlawful forced labor policy.

### C. The Relief: Plaintiffs seek an order enjoining GEO's HUSPs to ensure that anyone who cleans their common living areas is safe.

GEO describes the relief requested as "the elimination of housekeeping requirements" and, later, suggest that "Plaintiffs proposed relief . . . would be inconsistent with the clear guidance from the CDC."[6] But Plaintiffs are not asking that GEO cease cleaning common areas; rather, Plaintiffs simply seek to have GEO stop forcing Class Members to perform these tasks in violation of the PBNDS and TVPA. Acknowledging that the nature of the global pandemic may present staffing challenges for GEO,[7] Class Members alternatively propose an order requiring GEO to immediately equip Class Members with PPE when performing the work, and supply sufficient testing to avoid community spread through GEO's use of detained immigrants to conduct the cleaning tasks GEO cannot perform using its own workers.

---

[4] So too does the assertion that "it is unclear how detainees are at a higher risk of contracting COVID-19 by complying with a policy that serves to ensure that basic tenets of personal hygiene are followed."

[5] Second Declaration of Daniel Charest, Ex. B, Adam Kimball Richards, M.D., M.P.H. Decl. (Richards Decl.) ¶ 41 ("The process of wiping, scrubbing or otherwise removing virus particles from potentially contaminated surfaces increases aerosolization of viral particles and increases risk of infection."); Ex. E., Homer Venters, M.D. Decl (Venters Decl.) ¶ 3.e. All exhibits cited in this reply are exhibits to the Second Declaration of Daniel Charest unless otherwise noted.

[6] *See, e.g.*, Dkt. 255 at 2, 15.

[7] *See, e.g.*, Alex Rose, "Guards: GEO stiffs employees infected with COVID-19," Delco Times (Apr. 11, 2020) available at https://www.delcotimes.com/news/guards-geo-stiffs-employees-infected-with-covid-19/article_1cb59fb8-7b82-11ea-9532-4f56c2d92c2e.html.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR          5:17-cv-02514-JGB
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

Class Members, forced by GEO to risk their lives working in unsafe areas GEO owns, ask simply that either GEO use the employees it pays do so, or at the very least, supply the protective measures necessary to reduce Class Members exposure to disease, serious illness, and even death. But GEO resists even this. And, to protect the Class Members, the Court should grant the injunctive relief Plaintiffs seek.

### III. REBUTTAL EVIDENCE

#### A. What Doctors Say: All epidemiology supports injunctive relief.

GEO presents the Court with a number of declarations by non-medical personnel attesting to the sufficiency of the company's alleged efforts to prevent the spread of COVID-19 within its facilities. To rebut these declarations, Plaintiffs offer declarations from four leading medical experts who offer their opinions as to the efforts GEO and ICE describe.[8]

Doctor Adam Kimball Richards, a licensed California infectious disease clinician, who is himself treating COVID-19 patients in the Los Angeles area, offers his opinion regarding the grave risk of harm GEO's HUSP program poses to Class Members at Adelanto. Based on his review of the Valdez and Janecka declarations, Dr. Richards concludes that GEO's sub-par efforts to control COVID-19 in its facilities does not provide sufficient protection for the Class Members involved in the HUSP:

> By failing to provide these basic needs and requiring Class Members to clean, disinfect, and sanitize[ ] their common living areas without adequate supplies, <u>GEO exposes them to a heightened risk of serious illness or death</u>.[9]

---

[8] Richards Decl. ¶¶ 8–14, 19–46 (analyzing the Valdez and Janecka Declarations);   Venters Decl. ¶¶ 1–5 (analyzing ICE declarations regarding the agency's COVID-19 response); Ex. H, Carlos Franco-Paredes, M.D., M.P.H. Decl. (Franco-Paredes Decl.) ¶¶ 6, 28, 29, 31 (analyzing the Ceja Declaration); Ex. W, Mark Stern, M.D. Decl. (Stern Decl.) ¶¶ 8–17 (analyzing COVID-19 response at, *inter alia*, GEO's Mesa Verde facility).

[9] Richards Decl. ¶ 46 (emphasis added).

5

Former Rikers Island Chief Medical Officer Homer Venters, MD, MS, testifies similarly as to the situation across all immigration detention facilities, including GEO's:

> The reliance on detainees for conducting critical environmental cleaning, without proper training, protection or supervision, represents a gross deviation from correctional practices, and will likely contribute to the spread of COVID-19 throughout the ICE detention system.[10]

Dr. Carlos Franco-Paredes, a Colorado-based epidemiologist with experience treating patients at GEO's Aurora facility, reached the following conclusion based on his review of the Ceja declaration that GEO submitted:

> [I]t is my opinion that GEO's current protocols, even if followed to the letter, do not substantially reduce the risk of transmission and contraction of COVID-19 to detained immigrants who are required to perform the compulsory cleaning and sanitation of commons areas such as showers, bathrooms, dayrooms, phone banks, and other areas in their dorm or pod.
>
> It is my opinion that detained immigrants at the Aurora facility would be significantly less likely to contract COVID-19 if they were not being forced to risk exposure by performing mandatory cleaning duties without access to PPE such as masks, gloves, and without reliable testing inside the facility.
>
> Forcing some detained immigrants at Aurora to break their social distancing by cleaning their entire common areas amounts to a willful decision by Officer Ceja and her employer [i.e., GEO] to risk preventable exposure, infection, illness, and death of detained immigrants to COVID-19. In sum, the procedures Officer Ceja lays out fall woefully short of a responsible, evidence-based public health approach to combatting the spread of this deadly pandemic.[11]

Finally, Dr. Marc Stern, who served for four years as a subject-matter expert on healthcare in immigration detention for the Department of Homeland Security's Office for Civil Rights and Civil Liberties, has declared that the risk of spreading COVID-19

---

[10] Venters Decl. ¶ 3.e (emphasis added).
[11] Franco-Paredes Decl. ¶¶ 29–31.

6

is significantly increased once the virus is introduced because detention centers are congregate environments.[12] He opines that GEO is "failing to implement COVID-19 infection control measures recommended by the CDC[ ]" at its Mesa Verde facility.[13]

Other key pieces of evidence deserve mention here:

- "The process of wiping, scrubbing or otherwise removing virus particles from potentially contaminated surfaces increases aerosolization of viral particles and increases risk of infection. <u>Anyone cleaning these areas should be provided with PPE.</u>"[14]

- CDC guidance explicitly states that the CDC Recommendations apply to detainees as well as staff in detention facilities:

  "Note that <u>these recommendations apply to staff as well as to incarcerated/detained individuals</u> who may come in contact with contaminated materials during the course of their work placement in the facility (e.g., cleaning)."[15]

- "GEO's decision to require detained immigrants to continue cleaning and disinfecting common areas inside their dorms and pods at Adelanto without providing them personal protective equipment, adequate sanitization and disinfectant supplies, and adequate access to soap, hot water, and paper towels <u>places Class Members at Adelanto at an increased risk of contracting, becoming ill, and potentially dying from COVID-19</u>, as well as spreading the virus if they are asymptomatic carriers."[16]

---

[12] Stern Decl. ¶ 7 ("Detention facilities are congregate environments, i.e. places where people live and sleep in close proximity.").
[13] Stern Decl. ¶ 9.
[14] Richards Decl. ¶ 40 (emphasis added).
[15] Richards Decl. ¶ 43 (emphasis added) (quoting CDC guidelines).
[16] Richards Decl. ¶ 45 (emphasis added).

7

**B. What the CDC Says: CDC COVID-19 guidelines for correctional and detention facilities require cleaning supplies and PPE.**

In response to the COVID-19 epidemic, the CDC established guidelines for correctional and detention facilities and law enforcement agencies that have custodial authority for detained populations (i.e., U.S. Immigration and Customs Enforcement).[17]

To comply with CDC guidelines, GEO facilities must ensure sufficient stocks of cleaning supplies (including hand drying supplies and EPA-registered disinfectants that are effective against the virus that causes COVID-19) and PPE (including facemasks, N95 respirators, eye protection, disposable medical gloves, and disposable gowns/one-piece suits).[18] Similarly, the CDC recommends that anyone who performs the cleaning of these spaces wears the recommended PPE of N95 respirators, facemasks, eye protection, gloves, and gowns/coveralls.[19] Indeed, the CDC has specific PPE and hand hygiene guidelines for those who are responsible for the cleaning and disinfection of community facilities like a correctional or detention facility.[20] Cleaning staff should wear disposable gloves and gowns for all tasks in the cleaning process, including while handling trash.[21] The gloves and gowns worn should be compatible with the cleaning or disinfectant product that is being used and additional PPE might be required based on the cleaning or disinfectant product being used and whether there is a risk of splash.[22]

---

[17] Centers for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (updated Apr. 9, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html# (last accessed April 10, 2020).

[18] *Id.*

[19] Centers for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (updated Apr. 9, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#.

[20] Centers for Disease Control and Prevention, *Cleaning and Disinfection for Community Facilities* (updated April 1, 2020) available at https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaning-disinfection.html.

[21] *Id.*

[22] *Id.*

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

5:17-cv-02514-JGB

### C. What Class Members Say: GEO's assurances about COVID-19 precautions do not comport with reality.

In response to the factual representations by GEO's facility administrators at Adelanto, Aurora, Tacoma, and LaSalle, Class Members and their advocates offer sworn testimony from Class Members,[23] their lawyers,[24] and their community advocates[25] recounting the lived experiences of people locked inside GEO's facilities. Their accounts differ significantly from the rosy picture painted by GEO's wardens. This rebuttal evidence supports a finding that GEO continues to force Class Members to perform mandatory cleaning, disinfection, and sanitization of common living areas at all facilities covered by this Court's Certification Order.[26] They establish that GEO has refused to supply Class Members with personal protective equipment like gloves,

---

[23] Ex. C, Yoselin Reina Moran Decl. (Reina Decl.) (Adelanto); Ex. D, Jairo Guardado Aparicio Decl. (Guardado Decl.) (Adelanto); Ex. I, C.J.H.S. Decl. (C.J.H.S. Decl.) (Adelanto); Ex. J, Karlena Dawson Decl. (Dawson Decl.) (Tacoma); Ex. K, Alfredo Espinoza Esparza Decl. (Espinoza Decl.) (Tacoma); Ex. L, Flavio Lopez Gonzalez Decl. (Lopez Gonzalez Decl.) (Tacoma); Ex. M, Norma Lopez Nuñez Decl. (Lopez Nuñez Decl.) (Tacoma); Ex. N, Leonidas Plutin Hernandez Decl. (Plutin Decl.) (Tacoma); Ex. P, A.A.L. Decl. (A.A.L. Decl.) (Aurora); Ex. Q, B.H.M. Decl. (B.H.M. Decl.) (Aurora); Ex. R, D.R.M. Decl. (D.R.M. Decl.) (Aurora); Ex. X, Juan Carlos Minchaca Ramos Decl. (Minchaca Decl.) (Mesa Verde); Ex. Y, Claude Bent Decl. (Bent Decl.) (Mesa Verde).

[24] Ex. F, Meredyth Yoon, Esq. Decl. (Yoon Decl.) ¶¶ 5–17 (describing conditions observed by attorneys with the Southern Poverty Law Center (SPLC)'s Southeast Immigrant Freedom Initiative (SiFi) serving Class Members at GEO's Folkston facility); Ex. G, Karina Huber, Esq. Decl. (Huber Decl.) ¶¶ 3–33 (describing conditions observed by attorneys with SPLC SiFi serving Class Members at GEO's Jena, Pine Prairie, and South Louisiana facilities); Ex. O, Andrew W. Augustine, Esq. Decl. (Augustine Decl.) ¶¶ 3–11 (describing conditions observed providing representation to Class Members at GEO's Tacoma facility); Ex. S, Christina Brown, Esq. Decl. (Brown Decl.) ¶¶ 4–11 (describing her experiences representing Class Members at GEO's Aurora facility); Ex. U, Supplemental Decl. of Lisa Knox, Esq. (Supp. Knox Decl.) ¶¶ 3–11 and Ex. V, Lisa Knox, Esq. Decl. (Knox Decl.) ¶¶ 3–11(describing conditions obtained by attorneys with Centro Legal de la Raza serving Class Members at GEO's Mesa Verde facility); Ex. Z, Kathrine Russell, Esq. Decl. (Russell Decl.) ¶¶ 2–10 (describing conditions observed by attorneys with the Refugee and Immigrant Center for Education and Legal Services (RAICES) serving Class Members at GEO's Pearsall facility); Ex. AA, Tatiana Obando Decl. (Obando Decl.) ¶¶ 3–10 (describing conditions observed by RAICES attorneys serving Class Members at GEO's Joe Corley and Montgomery facilities).

[25] Ex. A, Rebecca Merton Decl. (Merton Decl.) ¶¶ 5–10 (describing recent Freedom For Immigrants hotline calls by Class Members in GEO's Adelanto, Aurora, Jena, Mesa Verde, South Louisiana, and Tacoma facilities); Ex. T, Francis L. 'Bud' Conlin Decl. (Conlin Decl.) ¶ 3–19 (describing conditions observed and reported by Class Members at GEO's Broward facility).

[26] Merton Decl. ¶¶ 5–10 (Adelanto, LaSalle, Northwest, Aurora, South Louisiana, and Mesa Verde).

9

eyewear, N95 masks, and gowns when they are forced to clean pursuant to the HUSP.[27] They demonstrate a chronic shortage of access to adequate, quality supplies of hand soap, sanitizer, and cleaning supplies.[28] And these declarations establish that GEO increases the risk of harm to Class Members by failing to allow them to practice social distancing guidelines.[29] In sum, the factual assertions of GEO facility administrators do not align with the facts on the ground at their facilities. And the facts demand action.

## IV.   ARGUMENT

### A. Plaintiffs and the Class have Article III standing.

GEO cites and quotes blanket precepts regarding the three-part test for standing. But it fails to correctly apply those axioms to the factual and procedural circumstance here: a certified class under Fed. R. Civ. P. 23(b). Not a single case cited by GEO involves a class action, much less a certified class. By contrast, this case concerns the certified Nationwide HUSP Class of thousands of detained immigrants who are forced to implement GEO's "total sanitation mission" by cleaning "all commonly accessible areas of the unit" including "microwaves, tables, and chairs."[30]

While GEO correctly lists the three requirements of standing, "injury-in-fact, causation, and redressability,"[31] the question for this case is whether they are met based on the claims as plead and the record before this Court: a certified class that seeks injunctive relief to bar using Class Members to provide services under the HUSPs.

---

[27] Merton Decl. ¶¶ 5–10 (Adelanto, LaSalle, Northwest, Aurora, South Louisiana); Yoon Decl. ¶ 17 (Folkston); Russell Decl. ¶¶ 7–10 (South Texas).
[28] Merton Decl. ¶¶ 5–9 (Adelanto, LaSalle, Northwest, Aurora, South Louisiana); Yoon Decl. ¶ 9 (Folkston); Huber Decl. ¶¶ 19–20, 22–23 (Jena, Pine Prairie, South Louisiana); A.A.L. Decl. ¶¶ 3–5 (Aurora); Conlin Decl. ¶¶ 7–8, 15–17 (Broward); Supp. Knox Decl. ¶ 8 (Mesa Verde); Russell Decl. ¶ 8 (Pearsall).
[29] Merton Decl. ¶¶ 5-9 (Adelanto, LaSalle, Northwest, Aurora, South Louisiana); Yoon Decl. ¶¶ 6–7 (Folkston); Huber Decl. ¶¶ 4, 6 (Jena, Pine Prairie, South Louisiana); Conlin Decl. ¶ 6 (Broward); Supp. Knox Decl. ¶ 6 (Mesa Verde); Russell Decl. ¶¶ 4–6 (Pearsall).
[30] Dkt 223 at 6.
[31] *Davidson v. Kimberly Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2017)

10

### i. GEO's failure to address the standing question in the context of a certified class dooms its Article III challenge.

"[O]nce certified, a class acquires a legal status separate from that of the named plaintiffs," such that the named plaintiff's loss of standing does "not necessarily call for the simultaneous dismissal of the class action, if members of that class might still have live claims."[32] The existence of a certified class changes the focus from named representatives to the HUSP Class as a whole:

> [O]nce a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs. The certification of a class changes the standing aspects of a suit, because <u>a properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff</u>.[33]

The Court should disregard GEO's arguments based on the lack standing of the individual movants to pursue the injunctive relief sought. That is not the inquiry.

### ii. The HUSP Class has standing to pursue injunctive relief.

Plaintiffs' live pleadings seek injunctive relief prohibiting GEO from compelling Class Members' participation in the HUSPs.[34] The injunctive relief plead for in the

---

[32] *Velazquez v. GMAC Mortg. Corp.*, No. CV-08-05444 (DDP), 2009 WL 2959838, at *3 (C.D. Cal. Sept. 10, 2009).

[33] *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1072 (N.D. Cal. 2015) (emphasis added) (*quoting Payton v. County of Kane,* 308 F.3d 673, 680 (7th Cir. 2002)); *see also Sosna v. Iowa,* 419 U.S. 393, 399 (1975) ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant."); *Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081, 1090 (9th Cir. 2011) (once a class has been certified, "an Article III controversy now exists between a named defendant and a member of the certified class"); *Bates v. United Parcel Service, Inc.,* 511 F.3d 974, 987 (9th Cir. 2007) (stating that once a class has been certified, "the class of unnamed persons described in the certification acquires a legal status separate from the representative"); *LaDuke v. Nelson,* 762 F.2d 1318, 1325 (9th Cir. 1985) (noting that "certification will preserve a class's standing even after the named individual representatives have lost the required 'personal stake'").

[34] *See* Dkt. 184 (Third Amended Complaint) ¶ 189 (seeking a Rule 23(b)(2) injunction prohibiting "GEO policies and practices that place every detainee at the Adelanto and GEO's other civil immigration detention facilities in peril of wage theft, forced labor, attempted forced labor, and serious harm"); *id.* at ¶ 237(a) (seeking relief

---

11

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

5:17-cv-02514-JGB

Third Amended Complaint has not changed—only its urgency. And Article III standing is present here for the HUSP Class to seek that relief.

### 1. Class Members face an injury that is "concrete and particularized" and "actual or imminent."

"To satisfy the 'injury in fact' requirement, plaintiffs must allege an imminent threat of concrete injury, and must distinguish themselves from the public at large by demonstrating that the alleged injury 'affect[s them] in a personal and individual way.'"[35] Actual injury need not be proven; a "concrete risk of harm . . . is sufficient for injury in fact."[36] That requirement is met because the injuries and rights abuse original outlined in the complaint remain. And, added to those, Class Members face an imminent threat of severe illness and death.

### 2. The threatened injury is "fairly traceable to the challenged action" of GEO.

For Article III purposes, standing's causation element "requires a showing that [the] injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"[37] The causation component is met here since Class Members are less likely to contract COVID-19 if they do not participate in the HUSP.

On this issue, GEO posits yet another a false framing of Plaintiffs' claims. Plaintiffs do <u>not</u> contend that "ending general housekeeping policies would make it less

---

from being forced to provide "janitorial, maintenance, or other work at a GEO civil immigration detention facility above and beyond the four personal housekeeping tasks enumerated in the ICE PBNDS pursuant to GEO's HUSP").

[35] *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 761 (9th Cir. 2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

[36] *Covington v. Jefferson Cty.*, 358 F.3d 626, 638 (9th Cir. 2004).

[37] *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *see also Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, No. CV 12-9861-GW(SSX), 2016 WL 4650428, at *107 (C.D. Cal. Feb. 1, 2016) (noting that "standing does not require the defendant's action to be the sole source of the injury [and] there is no requirement that the defendant's conduct comprise the last link in the chain" citations omitted).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR                    5:17-cv-02514-JGB
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

likely for individuals to contract COVID-19 in the future."[38] Nor do they seek to stop the "routine cleaning of frequently touched surfaces."[39] <u>Never</u> do Plaintiffs argue GEO's efforts to clean and sanitize the facilities should be ended or even curtailed. Plaintiffs only seek an order that stops GEO from forcing Class Members to perform those tasks: the same relief sought in the Third Amended Petition.[40]

GEO should continue all sanitation efforts. But GEO should employ properly screened and protected workers to do so. In light of GEO's April 6 dividend of $.48 per share (which amounts to nearly $60 million), GEO has the resources to hire, equip, and pay workers who accept its risks, rather than Class Members, who do the work under force. GEO chooses not to pay for Class Members' work. GEO chooses to put Class Members in those situations without PPE and training.[41] Either way, the requested relief will reduce the spread of COVID-19 among Class Members.

### 3. The Court can redress Plaintiffs' claims.

To establish redressability, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[42] The burden to demonstrate redressability is "relatively modest."[43] A party "need not demonstrate that there is a 'guarantee' that [her] injuries will be redressed by a favorable

---

[38] GEO Response, Dkt. 255 at 10.

[39] *Id.*

[40] *See* Dkt. 184 at 48–51. GEO also puts forth a false premise that Plaintiffs' motion is deficient because they do not explicitly challenge the practice of obtaining Voluntary Work Program ("VWP") volunteers to assist with cleaning tasks in the housing areas. GEO Response, Dkt. 255 at 8–9. But, as this Court is aware, the VWP Class is only for detainees at the Adelanto Facility, and each one of those detainees is a member of the HUSP Class, rendering GEO's argument disingenuous at best.

[41] Indeed, a telling revelation would be whether GEO would (or even <u>could</u>) get "outside" workers to perform the HUSP tasks <u>without</u> the PPE and supplies it has not provided to Class Members.

[42] *Lujan*, 504 U.S. at 561.

[43] *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012).

13

decision;"[44] rather, a plaintiff need only "show a 'substantial likelihood' that the relief sought would redress the injury."[45]

An order removing Class Members from the HUSPs work force would address the imminent threat of their contracting COVID-19 by being forced to clean common areas that are frequented by the overall populace. Moreover, "[t]he scope of injunctive relief is dictated by the extent of the violation established."[46] Entry of the requested order will protect Class Members system wide, a result that "can prevent a 'flood of duplicative litigation' by allowing similarly situated non-party individuals to benefit from an injunction rather than filing separate actions for similar relief."[47]

On the record before the Court, Plaintiffs meet and exceed the required showing for the relief requested.

## B. Plaintiffs are entitled to injunctive relief.

### i.    Plaintiffs are likely to succeed on the merits.

Rather than address the TVPA claim that the Nationwide HUSP Class actually asserts, GEO's opposition fabricates two of its own and knocks those down instead. The Court should reject GEO's straw-man arguments.

First, GEO argues that a policy it does not implement complies with the TVPA. Specifically, it argues that *Barrientos v. CoreCivic, Inc.* "explicitly endorsed the housekeeping procedures at issue in this action."[48] GEO's argument misstates the

---

[44] *Id.*

[45] *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010).

[46] *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds*, *Johnson v. California*, 543 U.S. 499 (2005) (citing *Lewis v. Casey*, 518 U.S. 343, 359 (1996)).

[47] *See Doe 2 v. Mattis*, 344 F. Supp. 3d 16, 24 (D.D.C. 2018); *see also id.* at 25 ("Here, Plaintiffs have established a likelihood of success on their claim that Defendants' plan constitutes a systemwide violation of their rights. Accordingly, the systemwide scope of the Court's preliminary injunction is appropriate."). As is clear from the many declarations submitted in this and other actions in this District, litigation seeking to protect detainees from the COVID-19 threat is pending in courts across the country.

[48] Dkt. 255 at 12.

14

record and minimizes its own HUSP. The court in *Barrientos* declined to "call into question longstanding requirements that detainees or inmates be required to perform basic housekeeping tasks."[49] But basic housekeeping in *Barrientos* means "certain 'personal housekeeping' tasks such as "making their bunk beds daily,' 'stacking loose papers,' and 'keeping the floor free of debris.'"[50] The *Barrientos* court noted, however, that "forc[ing] detainees to perform labor (beyond personal housekeeping tasks)" violates the TVPA.[51]

GEO's HUSP requires detainees to do more than the personal housekeeping in *Barrientos*. GEO's HUSP provides that "all Housing Units will be subject to a total sanitation mission to assure standards are met and maintained."[52] And this assignment is not voluntary. If the HUSP Class does not comply with the HUSP, GEO threatens them with punishment.[53] Further, the Court has rejected the argument that these tasks cannot constitute a TVPA violation three times: twice when it denied GEO's two motions to dismiss and, again, when it certified the Nationwide HUSP Class.[54]

Second, GEO asserts that a claim (which the Class does not assert) is unlikely to succeed. In this regard, GEO argues that Plaintiffs cannot show a likelihood of success on the merits because they have not shown that their exposure to COVID-19 violates the TVPA.[55] This argument conflates the likelihood-of-success and irreparable-harm inquiries. A likelihood of success on the merits "is an early measurement of the quality

---

[49] *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1278 (11th Cir. 2020).
[50] *Id.* at 1272 (quoting PBNDS §§ 5.8(II)(2), 5.8(V)(C)).
[51] *Id.* at 1277 (emphasis added); *see also id.* at 1272 (quoting PBNDS §§ 5.8(I), 5.8(V)(A)).
[52] Wright Decl. (Dkt. 193), Ex. 18 (Housekeeping Plan) at 2.
[53] Dkt. 192-3 (Novoa Decl.) ¶ 13; Dkt. 192-4 (Campos Fuentes Decl.) ¶¶ 14, 15; Dkt. 192-5 (Karim Decl.) ¶¶ 10–13; Dkt. 192-6 (Mancia Decl.) ¶¶ 10–11; Dkt. 192-8 (Munoz Decl.) ¶¶ 5, 6, 9; Dkt. 192-7 (Marwaha Decl.) ¶¶ 11–13.
[54] *See* Dkt. 44 at 12; Dkt. 61 at 8–9; Dkt. 223.
[55] Dkt. 255 at 11–12.

15

of the underlying lawsuit, while the likelihood of irreparable harm takes into account how urgent the need for equitable relief really is."[56]

The HUSP Class's exposure to COVID-19 is not the basis for their TVPA claim. The basis of the Class's TVPA claim remains the same as it was before the epidemic: forcing the Nationwide HUSP Class to clean the common areas in its facilities under threat of deportation, punishment, or solitary confinement violates the TVPA. What has changed, however, is the urgency of the need for equitable relief. And while GEO's violations of forced-labor law has always been illegal, it now threatens Class Members with serious illness and death.

### ii. The Nationwide HUSP Class will suffer irreparable harm in the absence of an injunction.

Each time GEO forces the Nationwide HUSP Class to clean common areas without proper personal protective equipment carries the potential that Class Members will contract COVID-19, fall gravely ill, and possibly die. GEO, nonetheless, asserts that reducing the Class's exposure to high-touch surfaces or providing the Class protective equipment while cleaning those surfaces "would not meaningfully reduce the spread of COVID-19" in its facilities.[57] But exempting the Nationwide HUSP Class from the HUSP during the COVID-19 epidemic will completely eliminate the risk that GEO's TVPA violations will expose Class Members to COVID-19. That GEO believes the virus will spread in its facilities even after this risk is eliminated only underscores the urgency of the Class's motion.

GEO argues that the movants are not in detention, so they "will not suffer any harm regardless of the outcome of this motion."[58] In doing so, GEO conflates a

---

[56] *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 787–88 (7th Cir. 2011); *see also Trudeau v. Bockstein*, No. 05-CV-1019 GLS-RFT, 2008 WL 3413903, at *4 (N.D.N.Y. Aug. 8, 2008).
[57] Dkt. 255 at 15.
[58] *Id.* at 14.

16

standing inquiry—whether the Plaintiffs can bring this motion when they are no longer in detention—and the inquiry as to whether the Nationwide HUSP Class will benefit from the temporary restraining order. As explained above, the HUSP Class has standing to bring this motion. And there is little doubt that the thousands of Class Members currently in detention will benefit by reducing contact with high-touch surfaces, having personal protective equipment, and being tested for COVID-19.

GEO also argues that the availability of habeas relief "negat[es] the need for injunctive relief."[59] This argument completely misses the point. GEO may well be right that the conditions of confinement in its facilities are so poor as to merit habeas relief against the federal government. But that does not change the analysis as to GEO. Regardless of whether the HUSP Class has causes of action against non-parties, GEO's violation of the TVPA still subjects the HUSP Class to an injury that cannot be remedied at law—severe illness and death. Courts regularly and correctly find that these are irreparable harms that merit injunctive relief.[60]

Moreover, the only case GEO cites in support of this argument, *Hernandez v. Wolf*, disproves GEO's position. In *Hernandez*, the plaintiff filed a petition for a writ of habeas corpus alleging that the conditions of his confinement in GEO's detention facility violated his constitutional rights.[61] The plaintiff then filed a motion for a temporary restraining order demanding the immediate release from the facility.[62] Were GEO correct that the ability of habeas relief precluded injunctive relief, the court would

---

[59] Dkt. 255 at 14.

[60] *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 756 (9th Cir. 2004); *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8188563, at *15 (D. Ariz. No. 18, 2016), *aff'd sub nom Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017); *Jones v. Tex. Dep't. of Crim. Justice*, 880 F.3d 756, 760 (5th Cir. 2018); *Thakker v. Doll*, No. 1:20-cv-00480-JEJ, Memorandum and Order (M.D. Pa. Mar. 31, 2020) ("Based upon the nature of the virus, the allegations of current conditions in the prisons, and Petitioners' specific medical concerns, detailed below, we therefore find that Petitioners face a very real risk of serious, lasting illness or death.").

[61] *Hernandez v. Wolf*, No. ED-CV-20-00617-THJ, slip op. at 7 (C.D. Cal. Apr. 1, 2020).

[62] *Id.*

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

5:17-cv-02514-JGB

1   have denied the plaintiff's motion. It did not. The court granted the plaintiff's motion

2   and released him from GEO's custody without a final judgment on the merits of his

3   habeas petition.[63]

4           ### iii.    The balance of the equities and the public interest favor

5                       a temporary restraining order.

6           GEO does not even try to address whether balancing the equities favors a

7   temporary restraining order. The result of that inquiry is clear: The Nationwide HUSP

8   Class's interest in reducing their exposure to a potentially deadly virus outweighs GEO's

9   economic interest in obtaining unpaid labor through violations of federal human-

10  trafficking law.[64] And GEO suffers no injury when it is forced to comply with the law

11  or the PBNDS.[65] To the contrary, GEO admits that its staff, administration, and

12  families will benefit by reducing the HUSP Class's exposure to COVID-19.[66]

13          Rather than tangle with this issue, GEO only addresses whether a temporary

14  restraining order favors the public interest. Both parties agree that "the best methods

15  for preventing spread of COVID-19 . . . include 'routinely cleaning and disinfecting

16  surfaces and objects that are frequently touched.'"[67] Plaintiffs only ask that GEO's staff

17  do this work. And, on this point, GEO indicates agreement with Plaintiffs when GEO's

18  brief admits that "the public interest is best served by allowing the orderly medical

19  processes and protocols implemented by government professionals."[68] The HUSP

20

---

21  [63] *Id.* at 13–14.

22  [64] *See Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004); *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754,
    766 (9th Cir. 2004).

23  [65] *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *Hernandez v. Wolf*, No. 5:20-cv-00617-TJH (C.D.
    Cal.) ("[T]here is no harm to the Government when a court prevents the Government from engaging in
    unlawful practices.").

24  [66] Dkt. 256-1 (Janecka Decl.) ¶ 4 (declaring that the "health, safety, and well-being of detainees . . . correlates
    with the health, safety, and well-being of GEO staff, GEO administration, and [their] families."); Dkt. 256-2
25  (Ceja Decl.) ¶ 3 (same); Dkt. 256-3 (Cole Decl.) ¶ 4 (same); Dkt. 256-4 (Langford Decl.) ¶ 5 (same).

26  [67] Dkt. 255 at 16 (quoting the CDC's website) (emphasis removed).
    [68] Dkt. 255 at 16 (emphasis added).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR                                    5:17-cv-02514-JGB
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER

Class currently implements those protocols. But does so without protection. And the public interests are served by cleanliness that does not infect Class Members.

GEO's argument against protecting Class Members falsely assumes that its facilities will go uncleaned without the unpaid labor it has obtained by threats and uses of force. If GEO cannot perform the HUSP tasks with its own paid labor force, Plaintiffs' motion provides another option: "protect those detainees who provide HUSP services by (i) providing protective clothing and antiseptic supplies and (ii) conducting testing of all Class Members to detect COVID-19."[69] To that, GEO has no answer on the merits.

As a last resort, GEO argues the temporary restraining order weighs against the public interest because <u>all</u> nationwide injunctions are against the public interest.[70] The Ninth Circuit and its District Courts disagree. The only courts that have expressed reservations about a court's ability to enter a nationwide TRO were limited to injunctions issued <u>before</u> class certification.[71] There is no such concern in this case, as the Court has already certified a nationwide HUSP Class.[72]

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs request this Court grant a temporary restraining order in the form submitted and set this matter for determination of extending its ruling in the form of a preliminary injunction.

---

[69] Dkt. 252 at 2.

[70] Dkt. 255 at 19 (describing a district court's ability to issue a nationwide injunction as "tenuous at best").

[71] *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (noting that the rule against issuing overly burdensome injunctions "applies with special force where there is no class certification"); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir.1996) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification."); *cf. Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir.1987) (there is no bar against nationwide relief in the district courts or courts of appeal, even if the case was not certified as a class action, if such broad relief is necessary to give prevailing parties the relief to which they are entitled).

[72] Dkt. 229 at 2.

19

Dated:  April 12, 2020

Respectfully submitted,

/s/ Daniel H. Charest

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (CA Bar # 321366)
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002

20

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER REQUIRING COVID-19
PREVENTION MEASURES FOR NATIONWIDE
HUSP CLASS

5:17-cv-02514-JGB

Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
C. Jacob Gower (admitted *pro hac vice*)
jgower@burnscharest.com
LA Bar # 34564
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

***Attorneys for Plaintiffs***

21

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER REQUIRING COVID-19
PREVENTION MEASURES FOR NATIONWIDE
HUSP CLASS

5:17-cv-02514-JGB

# CERTIFICATE OF SERVICE

On April 12, 2020, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ Daniel H. Charest*

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

22

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
EX PARTE APPLICATION FOR A TEMPORARY
RESTRAINING ORDER REQUIRING COVID-19
PREVENTION MEASURES FOR NATIONWIDE
HUSP CLASS

5:17-cv-02514-JGB