Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

***Additional Counsel on Signature Page***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM,** and **RAMON MANCIA** individually and on behalf of all others similarly situated,<br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.,**<br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF THEIR *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER REQUIRING COVID-19 PREVENTION MEASURES FOR NATIONWIDE HUSP CLASS**<br><br>The Honorable Jesus G. Bernal |

i

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

5:17-cv-02514-JGB

# **TABLE OF CONTENTS**

1.      ICE ERO COVID-19 PRR ......................................................................2

2.      CDC Guidance for facilities without reported
        COVID-19 Cases.....................................................................................5

3.      CDC Guidance for facilities with reported COVID-
        19 Cases ................................................................................................9

ii

The Court held a hearing on plaintiffs' application for temporary restraining order and plaintiffs' motion for expedited discovery. (*See generally* dkt. 263.) At the conclusion of the hearing, the Court requested further briefing on the requirements over defendant The GEO Group, Inc. ("GEO") with respect to personal protective equipment (PPE) to protect detainees in the HUSP Class.

Here is the answer:

1. GEO <u>must</u> provide all detainees, at a minimum, with cloth masks.
2. GEO <u>must</u> provide all cleaning personnel—and that means HUSP Class Members—with gloves, outer garments, and hand cleaner/sanitizer.
3. GEO <u>must</u> secure sufficient supplies of PPE for staff and detainees alike.

The three most important documents that define these requirements are: (1) the *ICE ERO COVID-19 Pandemic Response Requirements*,[1] issued by U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO"); (2) the *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*,[2] issued by Centers for Disease Control and Prevention ("CDC"); and (3) the *Interim Recommendations for U.S. Community Facilities with Suspected/Confirmed Coronavirus Disease 2019 (COVID-19)*,[3] issued by CDC. Each are discussed in turn. But

---

[1] ICE Enforcement and Removal Operations, *COVID-19 Pandemic Response Requirements* (Version 1.0), (hereinafter "ICE ERO COVID-19 PRR, attached as Exhibit A), available at https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf.

[2] Centers for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (attached as Exhibit B) (hereinafter, "CDC Correctional & Detention Facilities Guidance") (last accessed April 17, 2020).

[3] Centers for Disease Control and Prevention, *Interim Recommendations for U.S. Community Facilities with Suspected/Confirmed Coronavirus Disease 2019 (COVID-19)*, available at

1

the three documents, i.e., the two CDC guidance documents, and the ICE document that invokes and cements them, all work together. And they should be read consistent with their purpose: to protect staff, detainees, and the United States from exposure to and illness from COVID-19.

## 1. **<u>ICE ERO COVID-19 PRR</u>**

On April 10, 2020, ICE ERO issued the ICE ERO COVID-19 PRR.[4] By its express terms, the ICE ERO COVID-19 PRR applies to each facility covered in the HUSP Class because each such facility constitutes a dedicated ICE facility.[5] And its express terms confirm that the ICE ERO COVID-19 PRR is mandatory: "the ERO PRR builds upon previously issued guidance and <u>sets forth specific mandatory requirements expected to be adopted by all detention facilities housing ICE detainees</u>, as well as best practices for such facilities, to ensure that detainees are appropriately housed and that available mitigation measures are implemented during this

---

https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaning-disinfection.html (attached as Exhibit C) (hereinafter "CDC Community Facilities Cleaning Guidance") (last accessed April 17, 2020).

[4] *See* Declaration of Russell Hott (dkt. 125-1 in *Fraihat*) (describing ICE ERO COVID-19 PRR).

[5] For the benefit of a clean record, the HUSP Class relates to the following facilities:
1. Adelanto ICE Processing Center ("Adelanto")
2. Aurora ICE Processing Center ("Aurora") (f/k/a Aurora Contract Detention Facility)
3. Broward Transitional Center ("BTC")
4. Folkston ICE Processing Center ("Folkston")
5. Joe Corley Processing Center ("Corley")
6. LaSalle ICE Processing Center ("La Salle")
7. Mesa Verde ICE Processing Center ("Mesa Verde")
8. Montgomery Processing Center ("Montgomery")
9. Northwest ICE Processing Center ("Northwest/Tacoma")
10. Pine Prairie ICE Processing Center ("Pine Prairie")
11. South Louisiana ICE Processing Center ("Basile")
12. South Texas ICE Processing Center ("Pearsall").

2

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

5:17-cv-02514-JGB

unprecedented public health crisis."[6] Further, the ICE ERO COVID-19 PRR explains that "[t]he ERO <u>PRR is intended for use across ICE's entire detention network, applying to all facilities housing ICE detainees</u>, including ICE-owned Service Processing Centers, facilities operated by private vendors, and facilities operated by local government agencies that have mixed populations of which ICE detainees comprise only a small fraction."[7]

For each of the facilities within the HUSP Class—all ICE dedicated detention facilities—the PRR is unquestionably mandatory:

*All ICE dedicated detention facilities <u>must</u>:*

- Comply with the provisions of their relevant ICE contract or service agreement.
- Comply with the ICE national detention standards applicable to the facility, generally the Performance-Based National Detention Standards 2011 (PBNDS 2011).[8]
- Comply with the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities.[9]

---

[6] ICE ERO COVID-19 PRR, at 3 ("Purpose and Scope") (emphasis added); *see also id.* at 4 ("Given the seriousness and pervasiveness of COVID-19, ICE is taking necessary and prompt measures in response. ICE is providing guidance on the <u>minimum measures required for facilities housing ICE detainees to implement to ensure consistent practices throughout its detention operations</u> and the provision of medical care across the full spectrum of detention facilities to mitigate the spread of COVID-19." (emphasis added)).

[7] ICE ERO COVID-19 PRR, at 5 (Concept of Operations).

[8] In addition to imposing new protections on GEO's operation of the facilities, the ICE ERO COVID-19 PRR reiterates that the PBNDS—and its limitations—remains in place. *Id.* That means GEO's ability to rely on the PBNDS as an authority for being able to coerce labor remains limited to the four delineated measures set out in the PBNDS. For a more detailed discussion of the PBNDS limitations, *see* dkt. 259 at 14–15. GEO's arguments about having detainees "clean up after themselves" and the like lack support—even with COVID-19. The existence of an emergency does not provide GEO with a basis to violate applicable law and demand further detainee work. To the contrary, the exposure risk inherent to Class Members when performing the sanitation functions in facility common areas underscores the need for trained, protected individuals to perform the work.

[9] ICE ERO COVID-19 PRR, at 5 (Dedicated ICE Detention Facilities) (footnote omitted).

3

* * *

*In addition to the specific measures listed above, all detention facilities housing ICE detainees **must** also comply with the following:*

* * *

- Ensure that sufficient stocks of hygiene supplies (soap, hand sanitizer, tissues), personal protective equipment (PPE) (to include facemasks, N95 respirators, eye protection, disposable medical gloves, and disposable gowns/one-piece coveralls), and medical supplies (consistent with the healthcare capabilities of the facility) are on hand, and have a plan in place to restock as needed if COVID-19 transmission occurs within the facility. [10]

* * *

- **Cloth face coverings should be worn by detainees and staff** (when PPE supply is limited) to help slow the spread of COVID-19. Cloth face masks should:
  - fit snugly but comfortably against the side of the face
  - be secured with ties or ear loops where possible or securely tied
  - include multiple layers of fabric
  - allow for breathing without restriction
  - be able to be laundered and machine dried without damage or change to shape. [11]

* * *

- **Adhere to CDC recommendations for cleaning and disinfection** during the COVID-19 response.[12]

---

[10] ICE ERO COVID-19 PRR, at 7–8 (emphasis in original).
[11] ICE ERO COVID-19 PRR, at 9 (emphasis added).
[12] ICE ERO COVID-19 PRR, at 9–10 (Cleaning/Disinfecting Practices) (citing CDC Community Facilities Cleaning Guidance) (emphasis added).

4

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN                                    5:17-cv-02514-JGB
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

By its express terms, ICE ERO COVID-19 PRR calls for cloth masks for all detainees (and staff).[13] The cloth-mask requirement provides no limit with respect to exposure, area history, or any other issue that GEO argued applied. The requirement is unambiguous. And GEO is violating it.

Similarly, the ICE ERO COVID-19 PRR demands that GEO maintain sufficient levels of soap, hand sanitizer, tissues, and PPE (which includes facemasks, N95 respirators, eye protection, disposable medical gloves, and disposable gowns/one-piece coveralls).[14] Further, ICE ERO COVID-19 PRR requires that GEO put into place a plan to "restock as needed if COVID-19 transmission occurs within the facility."[15] As such, GEO's arguments (which remain unsubstantiated) about GEO's inability to provide detainees with PPE and hand cleanser when laboring under the HUSP fall short of its obligations under ICE's directive.

These two points alone—clear obligations on GEO to provide for the safety of the detainee population—demonstrate GEO's failure with regard to the HUSP Class. And, while ICE's directive imposes protections independent of CDC guidance, the ICE ERO COVID-19 PRR plainly renders implementing the requirements of both the CDC Community Facilities Cleaning Guidance and the CDC Correctional & Detention Facilities Guidance mandatory as an additional layer of protection over the facilities.

**2.    CDC Guidance for facilities without reported COVID-19 Cases**

When recognizing the need for CDC guidance about the COVID-19 virus for correctional and detention facilities, the CDC addressed the inherent risk of introduction into—and inevitable spread throughout—a typical detention facility:

---

[13] ICE ERO COVID-19 PRR, at 9.
[14] ICE ERO COVID-19 PRR, at 8.
[15] ICE ERO COVID-19 PRR, at 8.

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN                                              5:17-cv-02514-JGB
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

**Why is this guidance being issued?**

Correctional and detention facilities can include custody, housing, education, recreation, healthcare, food service, and workplace components in a single physical setting. The integration of these components presents unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors. Consistent application of specific preparation, prevention, and management measures can help reduce the risk of transmission and severe disease from COVID-19.

- Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, <u>heightening the potential for COVID-19 to spread once introduced</u>.
- In most cases, incarcerated/detained persons are not permitted to leave the facility.
- <u>There are many opportunities for COVID-19 to be introduced into a correctional or detention facility</u>, including daily staff ingress and egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances, and to outside medical visits; and visits from family, legal representatives, and other community members. Some settings, particularly jails and detention centers, have high turnover, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.
- Persons incarcerated/detained in a particular facility often come from a variety of locations, increasing the potential to introduce COVID-19 from different geographic areas. . . .[16]

---

[16] CDC Correctional & Detention Facilities Guidance, at 1-2.

6

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN                                    5:17-cv-02514-JGB
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

The CDC Correctional & Detention Facilities Guidance addresses the need for cleaning and protection—even when COVID-19 has not been identified in a facility:[17]

**Cleaning and Disinfecting Practices**

<u>Even if COVID-19 cases have not yet been identified inside the facility or in the surrounding community</u>, begin implementing intensified cleaning and disinfecting procedures according to the recommendations below. These measures may prevent spread of COVID-19 if introduced.

Adhere to CDC recommendations for cleaning and disinfection during the COVID-19 response. Monitor these recommendations for updates.

* * *

Ensure adequate supplies to support intensified cleaning and disinfection practices, and have a plan in place to restock rapidly if needed.[18]

Notably, the reference to "CDC recommendations for cleaning and disinfection during the COVID-19 response" contains a hyperlink to the CDC Community Facilities Cleaning Guidance. And the CDC Community Facilities Cleaning Guidance expressly

---

[17] Out of the twelve facilities in the HUSP Class, five facilities have reported cases of COVID-19 for either detainees or staff. *See* ICE, *ICE Guidance on COVID-19*, https://www.ice.gov/coronavirus (last visited Apr 17, 2020) (listing confirmed COVID-19 diagnoses at GEO's Aurora ICE Processing Center, LaSalle ICE Processing Center, Pine Prairie ICE Processing Center); *Benavides v. Gartland*, No. 5:20-cv-00046-LGW-BWC, dkt. 29-1 (S.D. Ga.) (listing a confirmed COVID-19 diagnosis at GEO's Folkston ICE Processing Center); Elizabeth Trovall, *Immigrant Detention Center Employee Tests Positive For COVID-19*, Houston Public Media (Mar. 24, 2020), https://www.houstonpublicmedia.org/articles/news/health-science/coronavirus/2020/03/24/365114/immigrant-detention-center-employee-tests-positive-for-covid-19/ (last visited Apr 17, 2020) (identifying a positive COVID-19 diagnosis at GEO's Montgomery Processing Center). Of note, however, neither ICE nor GEO has provided any data about suspected cases, which would invoke the heightened measures discussed below.

[18] CDC Correctional & Detention Facilities Guidance, at 7-8 (emphasis added).

7

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN                                    5:17-cv-02514-JGB
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

calls for PPE (gloves and garments) and hand wash/sanitizer for those people who are doing the cleaning work:

**Personal Protective Equipment (PPE) and Hand Hygiene**

- The risk of exposure to cleaning staff is inherently low. **Cleaning staff should wear disposable gloves and gowns for all tasks in the cleaning process, including handling trash.**
  - ○ Gloves and gowns should be compatible with the disinfectant products being used.
  - ○ Additional PPE might be required based on the cleaning/disinfectant products being used and whether there is a risk of splash.
  - ○ Gloves and gowns should be removed carefully to avoid contamination of the wearer and the surrounding area. Be sure to clean hands after removing gloves.
  - ○ If gowns are not available, coveralls, aprons or work uniforms can be worn during cleaning and disinfecting. Reusable (washable) clothing should be laundered afterwards. Clean hands after handling dirty laundry.
  - ○ Gloves should be removed after cleaning a room or area occupied by ill persons. Clean hands immediately after gloves are removed.
  - ○ Cleaning staff should immediately report breaches in PPE such as a tear in gloves or any other potential exposures to their supervisor.
  - ○ **Cleaning staff and others should clean hands often,** including immediately after removing gloves and after contact with an ill person, by washing hands with soap and water for 20 seconds. If soap and water are not available and hands are not visibly dirty, an alcohol-based hand sanitizer that contains at least 60% alcohol may be

8

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

5:17-cv-02514-JGB

used. However, if hands are visibly dirty, always wash hands with soap and water.[19]

Again, these requirements—gloves, gown, and hand cleansers—are both plain and mandatory. And GEO is not protecting the Class Members as required.[20]

## 3.  CDC Guidance for facilities with reported COVID-19 Cases

The CDC Correctional & Detention Facilities Guidance calls for an additional layer of protection for facilities in which COVID-19 cases have been confirmed or suspected: "If there has been a suspected COVID-19 case inside the facility (among incarcerated/detained persons, staff, or visitors who have recently been inside), begin implementing Management strategies while test results are pending."[21] With respect to cleaning in the circumstance of a reported case—like there has been with five of the twelve facilities that house the HUSP Class—the CDC Correctional & Detention Facilities Guidance calls for the continuation of the above-described steps ("Continue adhering to recommended cleaning and disinfection procedures for the facility at large. (See above.)"), and implementation of additional cleaning measures specific to the exposure.[22] Notably, the "(See above.)" language from the CDC Correctional & Detention Facilities Guidance hyperlinks directly to the above-quoted "Cleaning and Disinfecting Practices," which call for the cleaning of common areas and the provision of PPE/handwash for cleaning staff. Under this guidance, the minimum protections

---

[19] CDC Community Facilities Cleaning Guidance, at 4-5. The header "Personal Protective Equipment (PPE) and Hand Hygiene" appears on the online version of the CDC Community Facilities Cleaning Guidance but not the downloaded PDF. For the sake of context and clarity, it is quoted here.

[20] With respect to the reference to the "risk of exposure to cleaning staff" being low, that is true if—and only if—the cleaning staff is provided with the protections mandated in the CDC Community Facilities Cleaning Guidance. The reference should not be read to vitiate the very protections the guidance demands.

[21] CDC Correctional & Detention Facilities Guidance, at 11.

[22] CDC Correctional & Detention Facilities Guidance, at 12 (Cleaning and Disinfecting Practices).

9

remain in place and are supplemented by additional layers of protection depending on the circumstances.

The additional cleaning—accessed by a hyperlink in the text "(See below.)"—appears in the section titled "Cleaning Spaces where COVID-19 Cases Spent Time."[23] That section describes in detail the additional steps required to clean a specific area where a confirmed (or suspected) positive COVID-19 case spent time. In addition to the additional cleaning requirements, the CDC Correctional & Detention Facilities Guidance makes reference to the potential need for additional PPE: "Ensure that staff and incarcerated/detained persons performing cleaning wear recommended PPE. (See PPE section below.)"[24] And that hyperlink leads to another section, called "Recommended PPE and PPE Training for Staff and Incarcerated/Detained Persons."[25]

The Recommended PPE and PPE Training for Staff and Incarcerated/Detained Persons section describes various types of PPE and, as to the combinations and need for PPE in situations where confirmed cases exist, provides that "[r]ecommended PPE for incarcerated/detained individuals and staff in a correctional facility will vary based on the type of contact they have with COVID-19 cases and their contacts (see Table 1)."[26] And the CDC Correctional & Detention Facilities Guidance calls for both detainee training and administrator vigilance regarding PPE requirements for various jobs.[27] The CDC Correctional & Detention Facilities Guidance's Table 1 (referenced

---

[23] CDC Correctional & Detention Facilities Guidance, at 14.
[24] CDC Correctional & Detention Facilities Guidance, at 14.
[25] CDC Correctional & Detention Facilities Guidance, at 18-20.
[26] CDC Correctional & Detention Facilities Guidance, at 19.
[27] CDC Correctional & Detention Facilities Guidance, at 19 ("If administrators anticipate that incarcerated/detained persons will request unnecessary PPE, consider providing training on the different types of PPE that are needed for differing degrees of contact with COVID-19 cases and

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

5:17-cv-02514-JGB

several times in the Recommended PPE and PPE Training for Staff and Incarcerated/Detained Persons section) sets out different PPE combination.[28] The most likely scenario for HUSP Class Members in a work situation (i.e., "Incarcerated/detained persons in a work placement cleaning areas where a COVID-19 case has spent time") calls for gloves and gown/coveralls and, potentially, more PPE.[29] The potential "additional PPE" requirement, in turn, links generally to the CDC Community Facilities Cleaning Guidance.[30]

\*   \*   \*   \*   \*

Whether the facility has reported incidents of positive COVID-19 cases—as five out of twelve of the facilities have here—or no reported cases, the ICE-mandated minimum protections for the HUSP Class Members remain the same:

1. GEO <u>must</u> provide all detainees, at a minimum, with cloth masks.
2. GEO <u>must</u> provide all cleaning personnel—and that means HUSP Class Members—with gloves, outer garments, and hand cleaner/sanitizer.
3. GEO <u>must</u> secure sufficient supplies of PPE for staff and detainees alike.

GEO is doing none of these things. And it refuses to do so. To protect the Class Members, the Court should order GEO to stop using unprotected detainees to clean facility common areas beyond the PBNDS-permitted delineated tasks. In the alternative, the Court should order GEO to adhere to the ICE ERO COVID-19 PRR and—for so

---

contacts, and the reasons for those differences (see Table 1). Monitor linked CDC guidelines in Table 1 for updates to recommended PPE.")

[28] CDC Correctional & Detention Facilities Guidance, at 19-20.
[29] CDC Correctional & Detention Facilities Guidance, at 19.
[30] CDC Correctional & Detention Facilities Guidance, at 19 (hyperlink to CDC Community Facilities Cleaning Guidance).

11

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

5:17-cv-02514-JGB

1   long as it used detainee labor in the HUSP—not only provide (a) masks (cloth or better),

2   (b) gloves, (c) gowns/coveralls, and (d) hand cleaner/sanitizer but also maintain an

3   adequate supply of such PPE to protect the HUSP Class Members during the COVID-

4   19 pandemic.

5   Dated:  April 17, 2020                              Respectfully submitted,

6

7                                                       */s/ Daniel H. Charest*
                                                        Daniel H. Charest (admitted *pro hac vice*)

8                                                       dcharest@burnscharest.com
                                                        TX Bar # 24057803

9                                                       Will Thompson (CA Bar # 289012)

10                                                      wthompson@burnscharest.com
                                                        Warren Burns (admitted *pro hac vice*)

11                                                      wburns@burnscharest.com
                                                        TX Bar # 24053119

12                                                      E. Lawrence Vincent (admitted *pro hac vice*)

13                                                      lvincent@burnscharest.com
                                                        TX Bar # 20585590

14                                                      **BURNS CHAREST LLP**

15                                                      900 Jackson St., Suite 500
                                                        Dallas, Texas 75202

16                                                      Telephone: (469) 904-4550

17                                                      Facsimile: (469) 444-5002

18                                                      Robert Ahdoot (CA Bar # 172098)

19                                                      rahdoot@ahdootwolfson.com
                                                        Tina Wolfson (CA Bar # 174806)

20                                                      twolfson@ahdootwolfson.com
                                                        Theodore W Maya (CA Bar # 223242)

21                                                      tmaya@ahdootwolfson.com

22                                                      Alex R. Straus (CA Bar # 321366)

23                                                      astraus@ahdootwolfson.com
                                                        **AHDOOT & WOLFSON, PC**

24                                                      10728 Lindbrook Drive

25                                                      Los Angeles, California 90024-3102

26                                                      12

Telephone:  (310) 474-9111
Fax:  (310) 474-8585

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
C. Jacob Gower (admitted *pro hac vice*)
jgower@burnscharest.com
LA Bar # 34564
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

***Attorneys for Plaintiffs***

13

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

5:17-cv-02514-JGB

# CERTIFICATE OF SERVICE

On April 17, 2020, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ Daniel H. Charest*

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

14

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN
SUPPORT OF THEIR EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER
REQUIRING COVID-19 PREVENTION
MEASURES FOR NATIONWIDE HUSP CLASS

5:17-cv-02514-JGB