**AKERMAN LLP**
MICHAEL L. GALLION (SBN 189128)
DAVID VAN PELT (SBN 163690)
ASHLEY BOBO (SBN 312714)
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342
Email:  michael.gallion@akerman.com
        david.vanpelt@akerman.com
        ashley.bobo@akerman.com

COLIN L. BARNACLE (admitted *pro hac vice*)
ADRIENNE SCHEFFEY (admitted *pro hac vice*)
ASHLEY E. CALHOUN (SBN 270530)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email:  colin.barnacle@akerman.com
        adrienne.scheffey@akerman.com
        ashley.calhoun@akerman.com

Attorneys for Defendant
THE GEO GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE GEO GROUP, INC.,<br><br>Defendant.<br><br>THE GEO GROUP, INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated,<br><br>Counter-Defendant. | Case No. 5:17-cv-02514-JGB-SHKx<br><br>Assigned to Hon. Jesus G. Bernal<br><br>**DEFENDANT THE GEO GROUP, INC.'S SUPPLEMENTAL RESPONSE IN SUPPORT OF OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER REQUIRING COVID-19 PREVENTION MEASURES FOR NATIONWIDE HUSP CLASS**<br><br>Hearing Date:<br>Date:  April 16, 2020<br>Time:  2:00 p.m. (Telephonic)<br><br>TAC Filed:  September 16, 2019<br>SAC Filed:  December 24, 2018<br>FAC Filed:  July 6, 2018<br>Comp. Filed:  December 19, 2017<br>Trial Date:  February 2, 2021 |

## I. Introduction

On Thursday, April 16, 2020, this Court held a hearing on Plaintiffs' Application for a Temporary Restraining Order Requiring COVID-19 Measures for the Nationwide HUSP Class ("Application"). ECF 252, ECF 263. During the hearing, the Court ordered the Parties to submit additional briefing about what, if any Personal Protective Equipment ("PPE") requirements GEO must abide by as it relates to its detainee population. The Court's directions were to focus on the Centers for Disease Control and Prevention ("CDC") Guidance, the scope of which the Parties disputed. During the hearing, Plaintiffs also raised evidence that was not in the record, an Immigration and Customs Enforcement ("ICE") ERO Guidance document filed in a separate case pending before this Court, *Fraihat et al v. U.S. Immigration and Customs Enforcement*, Case No. 5:19-cv-01546-JGB-SHK, ECF 124 (April 13, 2020).[1] While the Court left open whether the ICE ERO Guidance should be part of the present briefing, the ICE ERO Guidance identified by Plaintiffs encompasses the relevant CDC Guidance (defined below). Accordingly, in an abundance of caution GEO has reviewed the document and responds to it herein.

## II. Guidance for ICE Detention Facilities

In the attached ICE ERO Guidance, there are both "mandatory requirements expected to be adopted by all detention facilities housing ICE detainees" and "best practices" which are recommended to facilities, but as their title suggests, are not mandatory. Exhibit A, 3. This is confirmed by the declaration filed in the *Fraihat* case accompanying the ICE ERO Guidance. Exhibit B, ¶14. Among the mandatory requirements, GEO must comply with the CDC's "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities"

---

[1] To the extent Plaintiffs were referencing a different document in the *Fraihat* case, GEO asks that this Court order them to file it in this matter to ensure all Parties are addressing the same evidence.

52771880;1     2     CASE NO. 5:17-CV-02514-JGB-SHKx

**DEFENDANT THE GEO GROUP, INC.' SUPPLEMENTAL RESPONSE IN SUPPORT OF OPPOSITION TO PLAINTIFFS'** *EX PARTE* **APPLICATION FOR TRO**

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

("CDC Guidance").[2] Exhibit A, 5, 6. The CDC Guidance covers everything from initial planning and preparedness to caring for those infected with COVID-19. Exhibit C. The CDC Guidance specifically states that as part of a facility's cleaning and disinfecting practices, facilities should "consider increasing the number of staff and/or incarcerated/detained persons trained and responsible for cleaning common areas to ensure continual cleaning of these areas throughout the day." *Id*. There is no requirement that detainees generally wear PPE to clean their living areas, but there are recommendations for PPE in other circumstances. The PPE-related guidance is described below.

### A. Recommended PPE for Incarcerated/Detained Persons

The CDC Guidance provides clear instruction for when detainees should be provided PPE.[3] PPE requirements vary based upon contact with a COVID-19 case. None of the circumstances covered by the CDC Guidance *require* PPE when detainees are participating in routine housekeeping where there is no COVID-19 exposure:

Table 1. Recommended Personal Protective Equipment (PPE) for Incarcerated/Detained Persons and Staff in a Correctional Facility during the COVID-19 Response

| Classification of Individual Wearing PPE | N95 respirator | Face mask | Eye Protection | Gloves | Gown/Coveralls |
|---|---|---|---|---|---|
| **Incarcerated/Detained Persons** | | | | | |
| Asymptomatic incarcerated/detained persons (under quarantine as close contacts of a COVID-19 case*) | Apply face masks for source control as feasible based on local supply, especially if housed as a cohort | | | | |
| Incarcerated/detained persons who are confirmed or suspected COVID-19 cases, or showing symptoms of COVID-19 | – | ✓ | – | – | – |
| Incarcerated/detained persons in a work placement handling laundry or used food service items from a COVID-19 case or case contact | – | – | – | ✓ | ✓ |
| Incarcerated/detained persons in a work placement cleaning areas where a COVID-19 case has spent time | Additional PPE may be needed based on the product label. See CDC guidelines for more details. | | | ✓ | ✓ |

---

[2] *Correctional and Detention Facilities*, updated Mar. 23, 2020, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf. This document is also attached hereto as Exhibit C.

[3] The excerpts inserted herein appear on page 25 of Exhibit C. GEO has included these excerpts in the body of the brief to assist the Court in its review. The chart related to detainee use of PPE can also be found in the record at ECF 256-1, 34.

52771880;1                                3                       CASE NO. 5:17-CV-02514-JGB-SHKx

**DEFENDANT THE GEO GROUP, INC.' SUPPLEMENTAL RESPONSE IN SUPPORT OF OPPOSITION TO PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR TRO**

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Under the first section, the CDC Guidance recommends face masks for those detainees who are asymptomatic but who were in close contact with a confirmed COVID-19 case, and the Guidance further clairfies that where a facility routinely quarantines all new intakes (as GEO does), facemasks are not necessary:

> \* If a facility chooses to routinely quarantine all new intakes (without symptoms or known exposure to a COVID-19 case) before integrating into the facility's general population, face masks are not necessary.

Plaintiffs have submitted no evidence that GEO has not complied with these measures. In fact, GEO is complying with these measures as detailed in the declaration of its Chief Medical Officer. Exhibit D ¶ 7.

The guidance also provides information about when staff should be provided PPE, including standards that differ from the guidance provided to detainees:

| Classification of Individual Wearing PPE | N95 respirator | Face mask | Eye Protection | Gloves | Gown/Coveralls |
|---|---|---|---|---|---|
| **Staff** | | | | | |
| Staff having direct contact with asymptomatic incarcerated/detained persons under quarantine as close contacts of a COVID-19 case* (but not performing temperature checks or providing medical care) | – | Face mask, eye protection, and gloves as local supply and scope of duties allow. | | | – |
| Staff performing temperature checks on any group of people (staff, visitors, or incarcerated/detained persons), or providing medical care to asymptomatic quarantined persons | – | ✓ | ✓ | ✓ | ✓ |
| Staff having direct contact with (including transport) or offering medical care to confirmed or suspected COVID-19 cases (see CDC infection control guidelines) | ✓** | ✓ | ✓ | ✓ | ✓ |
| Staff present during a procedure on a confirmed or suspected COVID-19 case that may generate respiratory aerosols (see CDC infection control guidelines) | ✓ | – | ✓ | ✓ | ✓ |
| Staff handling laundry or used food service items from a COVID-19 case or case contact | – | – | – | ✓ | ✓ |
| Staff cleaning an area where a COVID-19 case has spent time | Additional PPE may be needed based on the product label. See CDC guidelines for more details. | | | ✓ | ✓ |

\*\* A NIOSH-approved N95 is preferred. However, based on local and regional situational analysis of PPE supplies, face masks are an acceptable alternative when the supply chain of respirators cannot meet the demand. During this time, available respirators should be prioritized for procedures that are likely to generate respiratory aerosols, which would pose the highest exposure risk to staff.

This additional Guidance provides information for this Court about how staff and detainee PPE use may be provided in different circumstances, consistent with CDC Guidance. Again, there are no specific requirements for cleaning areas that are not contaminated with COVID-19. And, as noted in prior briefing and declarations, GEO complies with this Guidance.[4] Both staff and detainee PPE reccomendations also depend upon the availability of supplies.

### B. Cleaning Spaces Where COVID-19 Contact Is Confirmed.

Consistent with the chart above, the CDC Guidance includes additional admonitions about the use of PPE to clean areas where a confirmed or suspected COVID-19 case spent time. Exhibit C, 18. The CDC anticipates that both staff and detained persons may assist with cleaning an area where an infected person was housed or otherwise had contact. *Id.* Where detainees are asked to clean an area with confirmed COVID-19 contact (which there is no evidence has happened in any of GEO's facilities) both the staff and the detainees should wear the "recommended PPE," as discussed in the chart above. *Id.* at 25. The CDC Guidance recommends the use of gloves and a gown, but not face masks. *Id.*

During oral argument, Plaintiffs cited to an updated version of this CDC Guidance contained in footnote 20 of their Reply. ECF 259, 8.[5] While this Guidance has not yet been adopted as mandatory by ICE, it nonetheless provides helpful information. The section on PPE as it relates to cleaning an area where COVID-19 is present, or where ill persons are housed, provides a clear disclaimer:

"The risk of exposure to cleaning staff is inherently low."[6]

---

[4] *See generally* ECF Nos. 255, 256, 256-1, 256-2, 256-3, 256-4, 256-5.
[5] Cleaning and Disinfection for Community Facilities, April 2, 2020, update available at https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/cleaning-disinfection.html (last visited April 16, 2020).
[6] *Id.*

The CDC also confirms that the only PPE recommended for cleaning a *contaminated* area are gowns and gloves.[7] The CDC Guidance further explains that if gowns are not available, coveralls or work uniforms can be worn during cleaning and disinfecting.[8] <u>These provisions do not add additional requirements for PPE for detainees who are performing cleaning tasks of areas that are not contaminated</u>. GEO's Chief Medical Officer agrees with the CDC Guidance and has facilitated the implementation of the requirements throughout GEO's ICE facilities. Exhibit D.

### C. Supplies.

The ICE Guidance also provides that GEO must assess its supplies to plan for addressing the likely prolonged effects of COVID-19. Exhibit A, 8. To that end, the ICE Guidance instructs, in its "Supply" section, that each facility should ensure it has sufficient stocks of hygiene supplies and PPE. Exhibit A, 7. The ICE Guidance does not provide specifics for each facility, but instead the facilities must prepare based upon the totality of the Guidance. The ICE Guidance recommendations follows closely the "Operations and Supplies" section of the CDC Guidance.[9] Both the CDC and ICE Guidance provide that facilities should ensure sufficient supplies of hygiene supplies, PPE, and medical supplies. Exhibit A, 8; Exhibit C, 7-8. While both documents allow for accommodations in the face of a shortage of PPE, it is the ICE Guidance that specifically permits the facilities holding ICE detainees to use cloth face coverings for cleaning contaminated areas (rather than the surgical masks recommended in the CDC Guidance) when PPE supply is limited. Exhibit A, 8. Nothing in the "Supply" section of the ICE Guidance expands the requirements provided by the CDC above.

Additionally, the ICE Guidance provides that GEO must also follow the CDC guidance entitled "Strategies for Optimizing the Supply of PPE." Exhibit A, 8. This

---

[7] *Id.*
[8] *Id.*
[9] Exhibit C, 7-8; also available at *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#recommended-ppe (last visited April 16, 2020) (emphasis added).

Guidance addresses "strategies or options to optimize supplies of disposable N95 filtering facepiece respirators (commonly called 'N95 respirators') <u>in healthcare settings</u> when there is limited supply. It does not address other aspects of pandemic planning."[10] This Guidance therefore is not relevant to the present issue before the Court.

### III. GEO's Experience with PPE Shortages.

As noted above, much of the guidance surrounding PPE is flexible, depending upon the availability of PPE in the locality. Certainly, there can be no question that PPE is in scarce supply, as detailed in GEO's Opposition. Indeed, the shortage led the President of the United States to declare that PPE is a "scarce material."[11] As is relevant here, GEO's experience obtaining PPE mirrors that of the rest of the United States. As additional information for this Court's decision, GEO provides information about obstacles it has faced in obtaining the PPE. At this time, GEO does not anticipate that those obstacles are likely to be removed in the near future.

Of note, as detailed in the Declaration of J. David Donahue, GEO's Senior Vice President, has been working to obtain PPE since long before Plaintiffs' Application was filed. Exhibit E, ¶ 6,7. He has experienced a number of challenges in doing so, including supply chain shortages for PPE that result in long delays for shipments of PPE. Exhibit E, ¶ 10a. GEO's needs are subservient to those of hospitals and emergency response teams. Exhibit E, ¶ 10c. Most domestic suppliers are unable to fulfill requests and there are significant delays in receiving PPE from overseas. Exhibit E, ¶ 10d,e,f. In particular, N95 masks are extremely difficult to procure. Exhibit E, ¶ 10g. Surely, these challenges would only be amplified if this Court were to Order GEO to provide surgical masks to all detainees in short order.

### IV. GEO's Proposed Response

Without conceding that GEO is subject to additional requirements beyond those

---

[10] Strategies for Optimizing the Supply of N95 Respirators, *available at* https://www.cdc.gov/coronavirus/2019-ncov/hcp/respirators-strategy/indExhibithtml (last visited April 16, 2020).

[11] Cite to Executive Order from March 23, 2020.


detailed above, the Court's concern that GEO staff receives face coverings while detainees do not is well taken. GEO understands that all detainees and staff feel angst in light of the continued spread of COVID-19 across the world. To that end, GEO proposes a compromise. In addition to the measures that GEO is currently taking to combat the spread or introduction of COVID-19 in its facilities (all of which comply with CDC guidance and requirements), GEO is amenable to providing face coverings to all detainees by early next week. GEO cannot agree to provide surgical face masks as documented above, but GEO *can* agree to provide *at a minimum* cloth face coverings for all detainees. GEO believes it will be able to implement this policy by April 23, 2020 nationwide, if not sooner.

### V. Conclusion

For the foregoing reasons, GEO asks this Court to deny Plaintiffs' Application for a TRO in full.

Dated: April 17, 2020

**AKERMAN LLP**

By: /s/ Michael L. Gallion
Michael L. Gallion
Colin L. Barnacle
David Van Pelt
Adrienne Scheffey
Ashley Bobo
Ashley E. Calhoun
Attorneys for Defendant
THE GEO GROUP, INC.

52771880;1     8     CASE NO. 5:17-CV-02514-JGB-SHKx

**DEFENDANT THE GEO GROUP, INC.' SUPPLEMENTAL RESPONSE IN SUPPORT OF OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR TRO**