UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **5:17-cv-02514-JGB (SHKx)** | Date: | May 22, 2020 |
| Title: | ***Raul Novoa, et al. v. The Geo Group, Inc.*** | | |

Present: The Honorable   Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings (IN CHAMBERS):   ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION NOS. 6, 7, 22, 23, 27, 29, 30, 32-35**

## I.    BACKGROUND

The background of this matter is set forth in detail in the District Judge's Order: (1) GRANTING Plaintiffs' Motion for Class Certification (Dkt. No. 192); (2) DENYING Defendant's Motion to Exclude (Dkt. No. 211); and (3) VACATING the December 2, 2019 Hearing ("Order Granting Class Cert.") and is incorporated into this Order.  Electronic Case Filing Number ("ECF No.") 223, Order Granting Class Cert. at 3-8; see also Dkt. No. 229 (separate order).

Previously, the District Judge certified the following classes and subclasses:

**1. The Adelanto Wage Class**: All civilly detained immigrants who: (i) were detained at the Adelanto [Immigration and Customs Enforcement ("]ICE["")] Processing Center any time between December 19, 2014 and the date of final judgment in this matter, and either (ii) participated in the Voluntary Work Program at any point during their detention, or (iii) performed work for no compensation in the Uncompensated Work Program pending their participation in the Voluntary Work Program, or (iv) performed work for no compensation pursuant to the Adelanto Housing Unit Sanitation Policy.

**2. The Adelanto Forced Labor Class**: All civil immigration detainees who were detained at the Adelanto ICE Processing Center any time between May 1, 2011 and the date of final judgment in this matter (the "Adelanto Forced Labor Class"), with the following subclasses:

      a. The Work Program Subclass: All individuals who participated in the Voluntary Work Program at any point during their detention; and

      b. The Uncompensated Work Program Subclass: All individuals who participated in the Uncompensated Work Program at any point during their detention.

**3. The Nationwide HUSP Class**: All civilly detained immigrants who (i) were detained at any civil immigration detention center owned or operated by GEO in the United States between December 19, 2007 and the date of final judgment in this matter, and (ii) were subject to a GEO Housing Unit Sanitation Policy (HUSP) at any point during their detention.

Excluded from the definition of the Nationwide HUSP Class are the following: (1) individuals detained in GEO's family residential detention facility in Karnes City, Texas; (2) individuals detained in the Alexandria Staging Facility in Alexandria, Louisiana; (3) any individual detained in the custody of the U.S. Marshall or any other law enforcement agency at a GEO facility where the company also detains civil immigration detainees pursuant to contracts with ICE; and (4) civilly detained immigrants detainees held at the Aurora ICE Processing Center in Aurora, Colorado at any time before October 22, 2014.

ECF No. 229, Order On Pls.' Mot. for Class Cert.

The parties filed a Joint Stipulation ("Jt. Stip.") pursuant to Local Rule 37 to address the outstanding discovery issues. ECF No. 239, Jt. Stip. Subsequently, Defendant filed a supplemental brief in support of its position, ECF No. 245, Def.'s Supp. Dis. Mot., and, Plaintiffs also filed a supplemental brief, ECF No. 246, Pls.' Supp. Dis. Mot. The Magistrate Judge held several hearings regarding the requests. ECF Nos. 270, 272.

According to the Joint Stipulation and the hearings, the Requests for Production ("RFPs") at issue are RFP Nos. 6, 7, 22, 23, 27, 29, 30, and 32-35. In the Joint Stipulation, the parties also provided their arguments regarding the asserted objections that were expanded upon during the hearings in the matter.

## II.    DISCUSSION

### A. Legal Standards

Federal Rule of Civil Procedure ("Rule") 26(b)(2) governs the scope of permissible discovery and provides:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Nguyen v. Lotus by Johnny Dung Inc., No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (internal citations and quotation marks omitted). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. See Fed. R. Civ. P. 26(b)(1); Nguyen, No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1. Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." United States ex rel. Brown v. Celgene Corp., No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

Additionally, this case, like most, implicates Electronically Stored Information ("ESI") and the provisions in Rule 34(2)(E) pertaining to the production of material kept in electronic format. This rule provides:

(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

## B.  Analysis

The RFP and Responses provided below were all copied from the Joint Stipulation filed by the parties.

1.  Plaintiffs' RFP No. 6

a.  <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 6:</u>

Please provide all financial records reflecting the monthly and annual operating costs of the Adelanto Facility from December 19, 2007 to present.  This includes, but is not limited to, the cost of providing food, shelter, clothing, bedding, utilities, recreation, entertainment, medical health services, optical health services, dental services, and mental health services to detainees during that period.

<u>ORIGINAL RESPONSE TO NO. 6:</u>

GEO objects to this Request as the time period extends outside the relevant time period relating to Novoa's detention at the Adelanto Facility.  GEO objects to this Request on the grounds that "all financial records reflecting the monthly and annual operating costs of the Adelanto Facility" would be unduly burdensome to produce when  documents sufficient  to show  these  costs  would  be  reasonable  and  proportionate.   Subject  to and without waiving GEO's above-stated objections, GEO will conduct a reasonable search of documents on active electronic systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non-privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show actual expenditures at the Adelanto Facility regarding the Voluntary Work Program and costs incurred providing goods and services to detainees during the time Novoa was a detainee at the Adelanto Facility.  Should a class be certified in this case at a later date, GEO is willing to meet and confer regarding additional information it will provide in response to this Request subject to the Court's defined class period and subject to ICE approval and court orders.  GEO will withhold documents subject to the above-stated objections.

<u>SUPPLEMENTAL RESPONSE TO NO. 6:</u>

GEO objects to this Request as the time period extends outside the relevant time period relating to Novoa's detention at the Adelanto Facility.  GEO objects to this Request on the grounds that "all financial records reflecting the monthly and annual operating costs of the Adelanto Facility" would be unduly burdensome to produce when documents sufficient to show

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk DC

these costs would be reasonable and proportionate.  Subject to and without waiving GEO's above-stated objections, and pursuant to the agreement of the parties after meeting and conferring, GEO will produce its financial statements; profit and loss statements; budgets; to the extent they exist, all documents related to the operating costs of the VWP at Adelanto, the profit or loss of the VWP at Adelanto, any financial analyses, financial models, analyses of profits earned, valuation of the work performed, or any other assessment of the VWP at Adelanto; to the extent they exist, all documents containing financial performance analyses, financial models, or other financial evaluations prepared for the purpose of GEO Group's offer(s) and bid( s ), and negotiations related to amendment(s) and renewal( s ) of contracts related to Adelanto; and, to the extent they exist, any per diem rate calculations and models related to GEO's Adelanto contract, including VWP costs and expenses, labor costs and payroll expenses, expected and guaranteed occupancy, and other costs of providing services, and desired margins, during the years in which Plaintiffs were detainees at the Adelanto Facility.

      b.  <u>Analysis</u>

As stated on the record, the parties agreed that the applicable date range for this RFP is from 2011 to the present.

Further, in order to better understand the information that Defendant provided in response to this RFP, the parties provided the Magistrate Judge an exemplar of a two page document containing an actual financial summary and a budgeted financial summary provided on an annual basis from 2011 to 2019.  The summary included the total revenue amount, various expense categories, and information regarding the gross and net margins for the Adelanto facility.

During the initial hearing, the Magistrate Judge learned that the financial information sought was located on Defendant's financial management system called Hyperion.  According to the Oracle® website, which sells this financial management system:

> Oracle Hyperion Financial Management is a comprehensive, Web-based application that delivers global financial consolidation, reporting and analysis in a single, highly scalable software solution. Oracle Hyperion Financial Management utilizes today's most advanced technology, yet is built to be owned and maintained by the enterprise's finance team.

https://www.oracle.com/middleware/technologies/financial-management.html.  In short, it appears that much of the financial information that Plaintiffs were seeking could have been obtained by entering in parameters for a report Defendant would need to be generated and could include the types of information that Defendant would want to generate for a particular time period.

Defendant's initially countered that the monthly data was not what was agreed to in, what the parties have represented, to be a similar type of case pending in the U.S. District Court for the Western District of Washington, <u>The State of Washington v. GEO Group</u>, Case No. 3:17-05806-RJB, ("Washington Case"), and which Defendant believed set the outside parameters of what discovery Plaintiff was seeking in this case.  Though it is unclear whether this agreement

has changed between Plaintiffs' counsel and Defendant's counsel, it does not meaningfully affect the outcomes of current discovery disputes.

Prior to the second hearing on these RFPs, Defendant provided actual financial information, on a monthly basis, from 2011 to the present for the Adelanto Facility. From the hearing, the Magistrate Judge confirmed that the form of these documents were similar to the exemplar previously provided, which was on annual basis, and included revenue information as well as information related to various expense categories. During the second hearing, Defendant's counsel also confirmed that similar reports for budgets during the same time period and same monthly frequency would be provided, if it had not already been provided.

According to Plaintiffs' counsel, however, there appears to be certain financial information that is outstanding. Specifically, Plaintiffs seek to obtain documents to which Plaintiffs believe Defendant has access and maintained in the Keefe system, which would show the amount of money paid to detainees. An Internet search shows that "Keefe Commissary Network (KCN) is the nation's leading provider of automated commissary management services and technologies to city, county and state correctional facilities nationwide." https://www.keefegroup.com/companies/keefe-commissary-network-112. This appears to be seeking duplicative information, because Plaintiffs' counsel represented that the financial information relating to salaries paid to detainees coupled with the staffing information would allow for Plaintiffs' counsel to make the necessary determinations as it relates to the amounts paid to detainees.

Therefore, Plaintiffs' motion to compel in this regard is DENIED.

    2.   Plaintiffs' RFP No. 7

        a.  <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 7:</u>

Please provide any and all documents summarizing, constituting or recording the amount of compensation received by GEO from the City of Adelanto and/or ICE related to the operation of the Adelanto Facility.

<u>ORIGINAL RESPONSE TO NO. 7:</u>

GEO objects to this Request as the time period extends outside the relevant time period relating to Novoa's detention at the Adelanto Facility. GEO objects to this request as outside the scope of discovery under FRCP 26(b)(1) as all compensation received by GEO from the City of Adelanto and/or ICE related to the operation of the Adelanto Facility is not relevant to the claims or defenses in this case. GEO objects to the extent it requests information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. Subject to and without waiving GEO's above-stated objections, GEO will conduct a reasonable search of documents on active electronic

systems and reasonably accessible paper storage areas that GEO reasonably believes contain potentially relevant information within its possession, custody, and control, and produce relevant, responsive, non-privileged documents, to the extent they exist and subject to the protective order entered in this case, sufficient to show compensation received by GEO from the City of Adelanto and/or ICE related to the operation of the Voluntary Work Program during the time Novoa was a detainee at the Adelanto Facility.  Should a class be certified in this case at a later date, GEO is willing to meet and confer regarding additional information it will provide in response to this Request subject to the Court's defined class period and subject to ICE approval and court orders.  GEO will withhold documents subject to the above-stated objections.

<u>SUPPLEMENTAL RESPONSE TO NO. 7:</u>

GEO objects to this Request as the time period extends outside the relevant time period relating to Novoa's detention at the Adelanto Facility.  GEO objects to this Request on the grounds that "all financial records reflecting the monthly and annual operating costs of the Adelanto Facility" would be unduly burdensome to produce when documents sufficient to show these costs would be reasonable and proportionate.  Subject to and without waiving GEO's above-stated objections, and pursuant to the agreement of the parties after meeting and conferring, GEO will produce its financial statements; profit and loss statements; budgets; to the extent they exist, all documents related to the operating costs of the VWP at Adelanto, the profit or loss of the VWP at Adelanto, any financial analyses, financial models, analyses of profits earned, valuation of the work performed, or any other assessment of the VWP at Adelanto; to the extent they exist, all documents containing financial performance analyses, financial models, or other financial evaluations prepared for the purpose of GEO Group's offer(s) and bid( s ), and negotiations related to amendment(s) and renewal( s ) of contracts related to Adelanto; and, to the extent they exist, any per diem rate calculations and models related to GEO′s Adelanto contract, including VWP costs and expenses, labor costs and payroll expenses, expected and guaranteed occupancy, and other costs of providing services, and desired margins, during the years in which Plaintiffs were detainees at the Adelanto Facility.

b.   <u>Analysis</u>

As with the previous RFP, the parties agree that the time period this RFP should cover is from 2011 to the present.  With respect to the remaining arguments provided in the Joint Stipulation, the Magistrate Judge is neither provided a reason why the information beyond the financial documents that Defendant has now provided is relevant, nor why the production of the materials is burdensome.

Specifically, in the Joint Stipulation, Plaintiffs argue:

Again, this evidence is well within the scope of discovery, for the same reasons as described below in connection with RFPs 22-23 and 27 (from the Second Set), and for the reasons explained in Plaintiffs' prior statement in the prior joint stipulation concerning this request. (Dkt. 179-1). As explained in that prior briefing,

GEO contends that it cannot pay detainees more than $1 per day at the Adelanto Facility, and this evidence would speak to that contention.

GEO should not be permitted to flout its discovery obligations, in direct contravention of its prior representations to this Court that it would comply with this Request, as narrowed so as to remove it from the scope of the Court's prior order. Plaintiffs respectfully request that GEO now be ordered to comply, and sanctioned for any failure to do so.

ECF No. 239-1, Jt. Stip. at 22.

This Magistrate Judge feels it is inefficient to require the Magistrate Judge to go back and find all the arguments that a party has previously made in previous hearings and previous filings to identify the most applicable ones to the current discovery dispute. Though the Magistrate Judge can guess and make arguments for why the information is relevant, this is likely to cause the Magistrate Judge to not sufficiently recognize, what might be, important factors in determining the relevancy of the materials sought. That is because counsel for the parties are likely to have much more in depth knowledge of why particular material is relevant to a claim or defense and can better articulate this for the Court in a filing.

In sum, Plaintiffs' general claim that "this evidence would speak" to a particular contention does not give the Magistrate Judge a meaningful argument to assess the relevancy of the material sought by this particular RFP as compared to the financial information provided in response to RFP No. 6.

Therefore, Plaintiffs' motion to compel a response with respect to RFP No. 7 is GRANTED IN PART and DENIED IN PART. To the extent Plaintiffs seek documents, such as contracts or the like, that set out the revenue earned from services provided through the Adelanto facility to the City of Adelanto and ICE it is relevant and is appropriate discovery. However, requiring Defendant to search through all electronically maintained documents is disproportionate to the needs of the case in light of the financial information provided to Plaintiffs, absent some key word/custodian limitations that the parties may discuss. With respect to the amount of revenue earned from ICE and the City of Adelanto, Defendant is required to determine whether that information can be derived from the Hyperion system by identifying the source of the revenue generated by the Adelanto facility.

With respect to the key word/custodian limitations, the parties are to meet and confer and schedule a phone call with this Magistrate Judge no later than June 2, 2020 to apprise the Magistrate Judge of the progress made in this regard.

/ / /

/ / /

3. Plaintiffs' RFP No. 22

    a. <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 22:</u>

Please provide any and all interim financial statements regarding the Adelanto Facility, including but not limited to balance sheets, income statements, and cash-flow statements, dated at any time between January 1, 2014 and the present, including:
    a. Source of revenue, such as number of detained immigrants, amount received per detained immigrant, commissary sales, and reimbursement from governmental agencies;
    b. Line-item detail of all expense categories, including a breakout of major Selling, General, and Administrative costs including, but not limited to, salaries of facility staff, contract labor, and commissary costs of goods sold; and
    c. Any year-over-year variance analyses performed against forecasts and/or prior year's performance.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 22:</u>

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility. GEO objects to this request as multiple, and attempting to evade the limits of discovery by seeking a myriad of unrelated information in numerous subparts. GEO objects to this Request on the grounds that "all interim financial statements regarding the Adelanto Facility" would be unduly burdensome to produce. GEO objects to this Request on the grounds that the phrase "interim financial statements" is vague, ambiguous, and overbroad. GEO objects to the subparts of this Request as vague as GEO is unable to ascertain how the subparts relate to the main category of documents in this Request. GEO is willing to meet and confer should Plaintiffs wish to clarify this Request. Subject to and without waiving GEO's above-stated objections, this issue has already been litigated extensively in *Washington v. GEO*, including in the Ninth Circuit. GEO is amenable to providing the same scope of documents ordered in that case, tailored to the present action. The relevant Order can be found at *Washington v. GEO*, Western District of Washington Case No. 17-cv-05806-RJB, ECF 133 (October 2, 2018). GEO also directs Plaintiffs to GEO's response to Request No. 6 in GEO's Second Amended Responses and Objections to Plaintiff Raul Novoa's First Set of Requests for Production served on October 14, 2019.

    b. <u>Analysis</u>

As stated on the record, the parties are agreeable to the date of any relevant production to be from January 1, 2014 to the present. Additionally, as stated during the hearing, the focus of the dispute surrounding this RFP is the material that is not contained in the Hyperion system. One specific type of "interim financial statement" that remain outstanding include "flash" reports, which are financial reports run at various times from the Hyperion system but that are not stored on the Hyperion system. This is because, as represented by Defendant's counsel, the Hyperion system does not keep archives of previously run reports from the Hyperion system.

    **CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk DC

Therefore, Plaintiffs seek this type of information that may reside in another repositories within Defendant's care, custody, or control, including e-mail systems.  Plaintiffs believe that this information is relevant, even though Defendant has committed to providing budget analyses, on a monthly basis, beginning in 2011, regarding the Adelanto facility because the reports may show the motivation of Defendant to allocate and assign duties to detainees without paying them.

Another type of report Plaintiffs seek and believe exists are the "variance analyses."  As stated during the hearing, these reports are relevant and provide information different than just the underlying financial data because they contain a comments column that provides information regarding reasons why certain actions were taken in relation to the, allegedly, improper use of detainee labor.

In the briefing, Defendant's focus on the argument that the scope of the discovery responsive to this RFP was litigated in the Washington Case and this information is outside of that scope.  Neither in their written objections nor in the briefing did Defendant expand upon the burdensomeness objection made in response to this RFP.

As discussed during the hearing, however, the burden appears to be from being required to review unlimited electronically stored documents and e-mails as well as the duplicative nature of this information because the monthly budget documents are going to be provided.  With respect to the ESI, Plaintiffs' counsel represented that previous efforts to seek information stored in e-mails from Defendant resulted in a response from Defendant that looking through e-mails would be too burdensome and there did not appear to be any discussions regarding the use of key word searches or limiting the search to particular custodians, until recently.

In light of the commitment to provide budget documents from 2011 to the present for the Adelanto facility and recognizing the burden of looking through electronic files, without limitation, is disproportionate to the needs of the case, the Court GRANTS the motion to compel subject to the application of key words and custodian limitations, agreed to by the parties.  This is because the Court finds the argument regarding the comments sections in the variance analyses persuasive and as well as documentation that may accompany particular "flash" reports.  Though Plaintiffs can make the arguments regarding Defendant's motivations from the data themselves, this does not mean that Defendant's own words are not relevant and are discoverable, subject to appropriate key word/custodian limitations to comply with the mandates of proportionality under Rule 26.  As with RFP No. 7, the parties are to meet and confer regarding the appropriate key word /custodian limitations and report back to the Court, no later than June 2, 2020.

/ / /

/ / /

/ / /

/ / /

4.  Plaintiffs' RFP No. 23

a.  <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 23:</u>

Please provide any and all financial projections, operating forecasts, and/or breakeven analyses regarding the Adelanto Facility, dated at any time between January 1, 2014 and the present, including supporting analyses and/or basis of assumptions.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 23:</u>

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility.  GEO further objects to this Request on the grounds that "financial projections," "operating forecasts," and "breakeven analyses" are not relevant to the claims or defenses in this case because projections and forecasts of GEO's revenues and expenses are irrelevant to detainee work, the Volunteer Work Program (the "VWP"), and allegations of forced labor.  GEO objects to this Request to the extent that documents "supporting analyses and/or basis of assumptions" are not relevant to the claims or defenses in this case.  GEO further objects to the phrase "supporting analyses" as the phrase is vague and overbroad.  GEO also objects to this Request to the extent it seeks information protected by the attorney client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities.

Additionally, to the extent that this seeks financial information upon which GEO gains a competitive advantage, GEO objects that any tangential relevance of the documents requested does not outweigh the harm to GEO of disclosing its trade secret documents.

Subject to and without waiving GEO's above-stated objections, this issue has already been litigated extensively in *Washington v. GEO*, including in the Ninth Circuit where a Request that was materially identical to the one listed above was stricken. As noted in response to Request 22, GEO is amenable to providing the a [sic] similar scope of financial documents as the court ordered in that case. GEO will not provide documents beyond those agreed to in Request 22. GEO is withholding documents subject to the above-stated objections.

b.  <u>Analysis</u>

In the Joint Stipulation, Plaintiffs argue that, contrary to Defendant's argument that this information was not required to be produced in the Washington Case, this information was ordered to be produced by that court when it granted the State of Washington's motion to compel "all documents containing financial performance analyses, financial models, and/or financial evaluations" and that this information is analogous to the information sought here. ECF No. 239-1, Jt. Stip. at 26.  Plaintiffs, however, appear to have provided an incomplete recitation of what was ordered in the Washington Case.  Specifically, the modified RFP No. 43 in the Washington Case required Defendant to produce: "all documents that contain financial

analysis, financial models, analysis of profits earned, valuation of the work performed, or other assessments **of the Voluntary Work Program at the NWDC from 2005 to present.**" <u>Washington v. GEO Grp., Inc.</u>, No. 3:17-CV-05806-RJB, 2018 WL 9457998, at *5 (W.D. Wash. Oct. 2, 2018) (emphasis added), <u>reconsideration denied</u>, No. 3:17-CV-05806-RJB, 2018 WL 9458078 (W.D. Wash. Oct. 17, 2018), <u>cert. denied</u>, No. 3:17-CV-05806-RJB, 2018 WL 6179307 (W.D. Wash. Nov. 27, 2018), and <u>cert. denied</u>, No. 3:17-CV-05806-RJB, 2018 WL 6179307 (W.D. Wash. Nov. 27, 2018).

In an effort to show that a similar RFP was deemed inappropriate in the Washington Case, Defendant argues that this matter was litigated and resolved in the Washington Case. This Magistrate Judge was unable to see that a similarly worded RFP was denied in the Washington Case. Additionally, it does not appear that this matter was resolved at the Ninth Circuit, contrary to Defendant's claim that the Ninth Circuit struck a "materially identical" RFP. Rather, it appears the Ninth Circuit addressed the narrow issue of whether the matter should be addressed on mandamus, and declined to do so. <u>In re GEO Grp., Inc.</u>, 776 F. App'x 535, 536 (9th Cir. 2019) (stating that "[w]e have jurisdiction under 28 U.S.C. § 1651 and deny the petition"). Consequently, this RFP does not appear to have been decided in Defendant's favor in either the Washington Case or by the Ninth Circuit.

With respect to this RFP, the limitation in the Washington Case to the similar type of information appears appropriate. That is, Defendant is to provide financial projections, operating forecasts, and/or breakeven analyses, to the extent the data or documents exist, regarding the Adelanto Facility as they relate to the Voluntary Work Program, Uncompensated Work Program pending their participation in the Voluntary Work Program, or the Adelanto Housing Unit Sanitation Policy from January 1, 2014 to the present. This information is consistent with the class that has been certified and limits the information that is being sought to the applicable classes. Additionally, with respect to ESI, the parties are to meet and confer regarding the appropriate key word/custodian limitations and provide such information to the Court by June 2, 2020. Therefore, Plaintiffs' motion to compel is GRANTED IN PART with respect to RFP No. 23.

     5.  Plaintiffs' RFP No.27

        a.  <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 27:</u>

Please provide any and all documents constituting paystubs for all non-detainee janitors, warehouse employees, laundry personnel, maintenance staff, and food services workers employed at the Adelanto Facility, dated at any time between January 1, 2014 and the present, including:

a. Hourly wage;
b. Number of hours worked; and
c. Explanation of benefits received (e.g., health insurance).

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 27:</u>

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility.  GEO objects to this request as multiple, and attempting to evade the limits of discovery by seeking a myriad of unrelated information in numerous subparts.  GEO objects to this Request on the grounds that "paystubs for all nondetainee janitors, warehouse employees, laundry personnel, maintenance staff, and food services workers employed at the Adelanto Facility" are not relevant to the claims or defenses in this case.  Compensation and benefits for non-detainee employees at the Adelanto Facility do not relate to detainee work, the VWP, or allegations of forced labor as alleged in the TAC.  Further, there are no allegations in the TAC regarding the compensation and benefits of non-detainee employees.  GEO objects to this Request as it seeks disclosure of personal, confidential and private information of non-parties, including health and employment records.  GEO further objects to this Request on the grounds that it is unduly burdensome to the extent it seeks documents contained in individual non-detainee employee files.  GEO is not producing documents in response to this Request and is withholding documents subject to the above-stated objections.

b.  <u>Analysis</u>

At the hearing, Plaintiffs' counsel notified the Court that Plaintiffs received documents that provide the requisite information for subparts a (hourly wage) and c (explanation of benefits).  Plaintiffs, however, were still seeking information related to subpart b (number of hours worked).  Further, Plaintiffs had modified the RFP to not seek paystubs, but rather, documents sufficient to show this information.

During the hearing, Plaintiffs offered to accept information that Defendant would have provided to ICE regarding whether the staffing levels diverged from what was allowable under Defendant's contract with ICE by more than ten percent.  This proposal was apparently presented for the first time to Defendant's counsel during the hearing.  Plaintiffs also referred to an "end of shift packet" that would also provide this information and appears to have been generated from the Kronos wage management system.  Plaintiffs' basis for this information is that this information is necessary to "to determine the difference between the wages detainees were receiving and the wages they would have been paid as regular employees, which is directly at issue in this case."  ECF No. 239-1, Jt. Stip. at 31.

Defendant's opposition is based on the privacy rights of the third party employees and that Plaintiffs' position relies on a "fallacy" because Defendant would not be liable for the equivalent wage of non-detainees but rather to the minimum wage, if this case were covered by the Labor Code (presumably of California).  <u>Id.</u> at 31-32.  At the hearing, Defendant indicated that the production regarding the divergence from ICE staffing requirements by ten percent may require no more than identifying the months where Defendant notified ICE of such divergence.  Finally, Defendant's counsel indicated that they know of no easy mechanism to obtain the actual number of hours worked by non-detainee workers at the Adelanto facility.

It is unclear why the exact staffing hours are relevant and non-duplicative of the other
information Plaintiffs have been provided and because the financial documents previously
discussed would allow Plaintiffs to make the necessary showings and arguments regarding unjust
enrichment and disgorgement.  In sum, this last bit of information and the effort it will require to
obtain such information does not appear proportional to the needs of the case, with the exception
of the variance reports described during the hearings.  Therefore, Plaintiffs' motion to compel a
response to RFP No. 27 is GRANTED IN PART and DENIED IN PART

      6.   Plaintiffs' RFP No.29

          a.   <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 29:</u>

Please provide any and all documents constituting or describing staffing schedules for
both detained immigrant workers and non-detained workers at the Adelanto Facility at any time
between January 1, 2014 and the present.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 29:</u>

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs
were not detainees at the Adelanto Facility.  GEO further objects to this Request as overly broad,
unduly burdensome, and disproportionate to the needs of the case as it seeks information wholly
unrelated and not relevant to the claims and defenses.  This Request does not request staffing
schedules for detainees related to the VWP at the Adelanto Facility.  GEO also objects to this
Request to the extent it seeks documents constituting or describing staffing schedules for "non-
detained immigrant workers" at the Adelanto Facility.  GEO does not employ "non-detained
immigrant workers" and is not clear what this category is intended to represent.  To the extent
this Request is seeking this information for nondetained employees, GEO also objects to this
Request because the negligible benefit of this information to the Plaintiffs is far outweighed by the
security risks incurred by disclosing the staffing schedules of employees working at the Adelanto
facility.  Many of these documents are handwritten and will require individual review as they are
comprised of individual detainee signatures.  At this time, preliminary searches indicate that over
18,000 documents need to be reviewed.  Subject to and without waiving GEO's objections, GEO
is willing to discuss an agreed-upon procedure for reviewing and producing, to the extent they
exist, staffing schedules for detainees in the VWP, during the years in which Plaintiffs were
detainees at the Adelanto Facility. Until such a discussion occurs, GEO is withholding
documents that are responsive to this request.

          b.   <u>Analysis</u>

Following the initial hearing, Plaintiffs' counsel indicated that this RFP was re-formulated
to request documents sufficient to show this information rather than the actual work schedules of

non-detained workers from January 1, 2014.  Further, that Plaintiffs received sufficient information regarding work done by detainees and the non-detainee work force information is all that remains with respect to this RFP.  Plaintiffs also pointed to the Kronos system and referred to a "census detail" document that refers to the staffing that occurred during a particular time period and the three shifts that occurred every day – meaning three shifts, for 365 days, and over five years.  As stated previously during the hearing, this "census detail" or "end of shift" packet, which appear to be the same set of documents, was over 30 pages.

In the Joint Stipulation, Plaintiffs argue that "[s]taffing schedules showing whether Adelanto was understaffed and being predominately operated by detained workers relates directly to this claim.  Furthermore, the disclosure of this information poses no genuine security risk.  These are schedules for "maintenance workers and kitchen staff."  ECF No. 239-1, Jt. Stip. at 34.  This is not what the plain language of the RFP seeks.

In the briefing, Defendant responds that the information is not relevant because the VWP program is not meant to supplement a shortfall of staffing but is rather a separate program pursuant to an agreement with ICE.  Additionally, Defendant argues that the burden of producing this information is excessive and states that there are "at least 18,000 documents in its database that are potentially responsive to this request."  Id.  It is unclear whether this number includes information related to detained workers, which has already been provided, as well or just to non-detained workers.  Finally, Defendant raises the argument regarding the security and privacy issues raised by having to provide this information.

With respect to relevance, in light of the variance reports that are discussed in RFP No. 27, and the documents that appear to have been produced regarding agreed upon staffing, this information appears duplicative to the Court and when weighed against the burden and volume of documents at issue, does not appear to be proportional to the needs of the case.  Further, the information in the RFP seeks all non-detainee staffing information, including security personnel, which does not appear relevant to the claims and defenses in this case.  Finally, the privacy concerns of third parties was not addressed in the briefing at all by Plaintiffs and though there is a protective order in place, this is not an action that is seeking to vindicate the rights of the non-detainee workers, and is a further consideration this Court believes supports the decision to deny the motion to compel with respect to this RFP.

Therefore, the motion to compel with respect to RFP No. 29 is DENIED.

7.   Plaintiffs' RFP No. 30

a.   RFP and Responses

REQUEST FOR PRODUCTION NO. 30:

Please provide any and all documents describing or indicating the following:
a. The square footage of the secured and unsecured areas of the Adelanto Facility;

b. The total number of bathrooms, sinks, and toilets in the secured and unsecured portions of the Adelanto Facility; and

c. The average number of meals prepared and served each day at the Adelanto Facility at any time between January 1, 2014 and the present.

RESPONSE TO REQUEST FOR PRODUCTION NO. 30:

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility. GEO objects to this request as multiple, and attempting to evade the limits of discovery by seeking a myriad of unrelated information in numerous subparts. GEO objects to this Request on the grounds that the negligible benefit of obtaining information regarding "the square footage of the secured and unsecured areas of the Adelanto Facility" to the Plaintiff is far outweighed by the security risks incurred by disclosing the information. GEO further objects to this request as not relevant to the claims at issue. There are no claims in which the number of restrooms would be relevant. To the extent Plaintiffs claim that this is relevant to their understanding of what areas were cleaned inside the Adelanto Facility, they are already aware and have equal access to information regarding how many toilets and showers they had access to and cleaned. Further, Plaintiffs know how many meals they received each day. And, GEO has already produced information about the food programs at the Adelanto Facility, including but not limited to bates numbers GEO-Novoa_00004553-GEO-Novoa_00004555; GEO-Novoa 00004565-GEO-Novoa_00004567; GEO-Novoa_00004582-GEO-Novoa_00004585; GEONovoa_00004586-GEO Novoa_00004588; GEO-Novoa 00006637-GEONovoa_00006738 (showing weekly schedule for breakfast, lunch, and dinner with a menu);GEO-Novoa_00024210-GEO-Novoa_00024215; GEO-Novoa_00002566-GEONovoa_00002569; GEO-Novoa_00002580-GEO Novoa_00002582; GEONovoa_00002593-GEO-Novoa 00002595; GEO-Subject to and without waiving GEO's objections, GEO will produce updated menus for 2019 showing the average number of meals prepared and served each day at the Adelanto Facility.

b.   Analysis

Plaintiffs indicated that the motion to compel for this RFP is withdrawn because Plaintiffs received sufficient information in this regard from Defendant.

8.   Plaintiffs' RFP No. 32

a.   RFP and Responses

REQUEST FOR PRODUCTION NO. 32:

Please provide any and all documents relating to, constituting, or recording communications between GEO and any representative or employee of ICE, dated between December 19, 2007 and the present and which reference or mention any of the following:

a. Housing Unit Sanitation Policies, HUSP(s), and/or Sanitation Procedures/Housekeeping Plans;

b. Personal Housekeeping Requirement of the PBNDS (PBNDS 5.8.V.C.);

c. Any and all Contract Discrepancy Reports (CDRs) and/or Uniform Correction Action Plans (UCAPs) regarding the Adelanto Facility;

d. Any and all audits or inspections of the Adelanto Facility; and

e. Any compensation or payments made to detained immigrants who participate in the Voluntary Work Program at the Adelanto Facility.

RESPONSE TO REQUEST FOR PRODUCTION NO. 32

GEO objects to this Request as the time period covers a timeframe in which Plaintiffs were not detainees at the Adelanto Facility. GEO also objects to this request as "vague and ambiguous" as to the term "HUSP" and "housekeeping plans" as it is not clear what documents Plaintiffs are referring to. GEO objects to this request as multiple, and attempting to evade the limits of discovery by seeking a myriad of unrelated information in numerous subparts. GEO objects to this Request as violating Fed. R. Civ. P. 26(b)(1) because it asks for information that is outside the scope of discovery.  Specifically, the breadth of the Request would include documents that have no bearing on the claims or defenses in this case.  For example, email communications between GEO and ICE that merely mention "Housing Unit Sanitation Policies," "Personal Housekeeping Requirement," "PBNDS (PBNDS 5.8.V.C.)", "Contract Discrepancy Reports (CDRs)" or "Uniform Correction Action Plans (UCAPs)" and policies or plans concerning the Adelanto Facility may indeed "relate to" these subjects but have no bearing on the claims or defenses in this case.  In addition, subparts a and b of this Request are not limited to the Adelanto Facility.  GEO objects to this Request on the grounds that it is unduly burdensome and not proportional to the needs of the case as it seeks any and all correspondence between ICE and GEO that might relate or refer to a "Housing Unit Sanitation Policy", a "Personal Housekeeping Requirement", Contract Discrepancy Reports and/or Uniform Correction Action Plans, audits or inspections of the Adelanto Facility, and compensation or payments made to detainees who participated in the VWP.  GEO objects to this Request on the grounds that "any and all audits or inspections of the Adelanto Facility" would include inspections of the Adelanto Facility that are not relevant to the claims or defenses in this case. For example, inspections of the Adelanto Facility may relate to fire safety, which have no bearing on the claims or defenses in this case.  Moreover, Plaintiffs subpoenaed Creative Corrections LLC, The Office of the General Counsel of DHS, and the American Correctional Association in December 2018 for audit information.  Plaintiffs have offered no justification as to why those documents are not sufficient, so as to justify the significant burden upon GEO that is associated with this request.  GEO also objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities.  As for the burden, preliminary searches revealed over 30,000 documents that would need to be reviewed and culled in order to respond to this request-which is simply not justified in light of any tangential relevance.

Subject to and without waiving GEO's above-stated objections, and subject to ICE review and approval, GEO will produce, to the extent they exist, sanitation and housekeeping policies for the Adelanto Facility during the years in which Plaintiffs were detainees at the Adelanto

Facility. ICE must review and approve this production. GEO will withhold all other documents, barring a discussion about the appropriate scope of this broad request and, as necessary, a cost-sharing agreement.

      b.  <u>Analysis</u>

At the hearing, Plaintiffs stated that they had served an amended RFP No. 32 which sought information from 2011 to the present and which "constitute, reference, or discuss" the same sub-categories of information.  Plaintiffs indicated that they were amenable to a key word limitation if this would facilitate the discovery.  Plaintiffs also clarified that the materials related to the "Contract Discrepancy Reports (CDRs) and/or Uniform Correction Action Plans (UCAPs) regarding the Adelanto Facility" go to the derivative sovereign immunity defense raised by Defendant as well as the unjust enrichment claim.

In the briefing, Plaintiffs argue that this information "is related directly to Plaintiffs' claims, and communications referencing or mentioning these policies will show *inter alia* how GEO's implemented the policies."  ECF No. 239-1, Jt. Stip. at 40.  Further, Plaintiffs argue that they are entitled to this discovery, citing generally to the Certification Order, because "these categories relate directly to claims that GEO used detainees to clean, maintain, and operate its facilities . . . ."

In response to the argument at the hearing, Defendant confirmed that a preliminary search indicated that approximately 30,000 documents were found to be responsive.  Further, Defendant did not believe that this number would go down significantly in light of limiting the documents sought after 2011.  In its briefing, Defendant argued that it was burdensome, seeks irrelevant information, and is duplicative of previously propounded discovery.

In order to assess the burdensomeness, the Court must determine the relative importance of the information sought by the RFP.  In that regard, the Court turns to the description of the certified classes: The Adelanto Wage Class, The Adelanto Forced Labor Class, and The Nationwide HUSP Class.  Plaintiffs' arguments and briefing in this regard do not allow for the Court to make this qualitative assessment and stating that  it "relate[s] directly to claims that GEO used detainees to clean, maintain, and operate its facilities" are too conclusory and not of assistance.

Though the Court could see how the information sought in sub-categories a (Housing Unit Sanitation Policies, HUSP(s), and/or Sanitation Procedures/Housekeeping Plans) and e (Any compensation or payments made to detained immigrants who participate in the Voluntary Work Program), and as Plaintiffs explained how the information sought in sub-category c (Any and all Contract Discrepancy Reports (CDRs) and/or Uniform Correction Action Plans (UCAPs) regarding the Adelanto Facility) is relevant, this is not enough to warrant an unlimited search of communications that Defendant has represented include a large number of results. Additionally, there is no explanation in the briefing why sub-categories b (Personal Housekeeping Requirement of the PBNDS (PBNDS 5.8.V.C.)) and d (Any and all audits or inspections of the Adelanto Facility), as re-phrased are not overbroad.

Requiring this Court to limit the categories keyword/custodian limitations is very difficult for the Court to do and would likely not be done as well as if Plaintiffs' and Defendant's counsel would agree to these limitations, based on their knowledge of this case and particular relevancy of the materials sought.

Therefore, though the Court DENIES the motion to compel a response to RFP. No. 32, the parties are ordered to meet and confer regarding the appropriate keyword/custodian search to tether the search more particularly to the classes that have been certified, and the claims and defenses at issue and to report back to the Court by June 2, 2020 regarding their progress in this regard.

9. Plaintiffs' RFP No. 33

a. <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 33:</u>

Please provide any and all documents relating to, constituting, or recording incidents including, but not limited to, incident reports or accident reports relating to incidents between GEO officials, officers, guards, employees, or contractors and detained immigrants at the Adelanto Facility at any time between December 19, 2007 and the present.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 33:</u>

GEO objects to this Request as the time period extends outside the relevant time period relating to the years in which Plaintiffs were detainees at the Adelanto Facility. GEO objects to this Request as violating Fed. R. Civ. P. 26(b)(1) because it asks for information that is outside the scope of discovery. GEO objects on the grounds that "incident reports or accident reports" are not relevant to the claims or defenses in this case.  Moreover, to the extent GEO possesses documents concerning incident reports, these documents may be kept in individual detainee files, requiring individual review of each file for relevant documents and thereafter ICE approval.  As Ms. Ellison informed Plaintiffs in her February 6, 2019 correspondence, the detainee files consist of over 1.8 million pages of documents, and individual review of each page would be extremely time intensive and burdensome.  The documents consist mainly of handwritten materials that cannot be electronically culled or searched in any meaningful way.  As a class has not yet been certified in this case, GEO objects to this Request on the grounds that it is unduly burdensome and disproportionate to the needs of the case to the extent it seeks documents contained solely in individual detainee files. GEO also objects to this Request to the extent it seeks disclosure of personal, confidential and private information of non-detainee employees at the Adelanto facility and non-parties. GEO further objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities. GEO is withholding documents subject to the above stated objections.  Subject to, and without waiving these objections, GEO states that it

has already produced the detainee files for the named Plaintiffs and will conduct a reasonable search for documents related to incidents involving the named Plaintiffs and GEO staff.

      b.  <u>Analysis</u>

During the hearing, Plaintiffs' counsel indicated that, after conferring with Defendant's counsel, Defendant would determine whether these incident reports are kept in an electronic format such that they can be searched.  Other than this development, Plaintiffs believe the request and its scope is appropriate and Defendant continues to believe that the RFP is overbroad and seeks improperly irrelevant information.

In is briefing, Plaintiffs argue that this RFP seeks appropriately relevant information because "Plaintiffs allege that GEO coerces detainees to work for a dollar a day or less by threatening them with physical restraint and serious harm, and depriving detainees of due process if they refuse to provide their labor, organize a work stoppage, or participate in a work stoppage." ECF No. 239-1, Jt. Stip. at 43.  Therefore, "Plaintiffs seek incident reports for Adelanto to show whether detainees were punished for refusing to work."  <u>Id.</u>  Finally, Plaintiffs argue that Plaintiffs have sought to narrow this request and that "Plaintiffs are only seeking incident reports between GEO employees and detainees, which relates directly to Plaintiffs' claims of forced and underpaid labor."  <u>Id.</u>

In response, Defendant points to the fact that the RFP is not limited to those incidents related to detainees being punished for not working or forcing them to work, raises privacy concerns of detainees, and tracks its objections to this RFP.  ECF No. 239-1, Jt. Stip. at 43.

Though this information may be relevant if it is associated with the involuntary and underpaid work claims, the RFP here is not limited to such circumstances and the burden, as articulated by Defendant, is substantial.  Further, the privacy concerns of the detainees is another aspect that Plaintiffs have not addressed at all.

Consequently, as with RFP No. 32, though the Court DENIES the motion to compel a response to RFP. No. 33, the parties are ordered to meet and confer regarding the appropriate keyword/custodian search to tether the search more particularly to the reasons for the punishment or incidents as they relate to the classes that have been certified, and the claims and defenses at issue and to report back to the Court by June 2, 2020 regarding their progress in this regard.

      10.  Plaintiffs' RFP No. 34

      a.  <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 34:</u>

Please provide any and all documents relating to, constituting or recording grievances filed by detained immigrants at the Adelanto Facility between December 19, 2007 and the present which relate to any of the following:

a. The Voluntary Work Program;

b. Payment or nonpayment for work performed by detainees at the Adelanto Facility;

c. The quantity and/or quality of food, water, clothing, personal hygiene items, medicine, dental hygiene items provided to detained immigrants at the Adelanto Facility; and

d. The quality, timeliness, or availability of medical care, mental healthcare, and/or dental care provided to detained immigrants at the Adelanto Facility.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 34:</u>

GEO objects to this Request as the time period extends outside the relevant time period relating to the years in which Plaintiffs were detainees at the Adelanto Facility. GEO objects to this request as multiple, and attempting to evade the limits of discovery by seeking a myriad of unrelated information in numerous subparts. GEO objects to this Request as violating Fed. R. Civ. P. 26(b)(1) because it asks for information that is outside the scope of discovery. GEO objects on the grounds that "grievances filed" are not relevant to the claims or defenses in this case. Moreover, to the extent GEO possesses documents concerning grievances, sometimes described as "Kites" these documents are contained in individual detainee files. The review of these files for specific documents is incredibly burdensome and time intensive as the handwritten notes each require individual review of over 1.8 million pages. The burden cannot be reduced by targeted search terms or other culling methods.

Accordingly, as a class has not yet been certified in this case, GEO objects to this Request on the grounds that it is unduly burdensome and disproportionate to the needs of the case to the extent it seeks documents contained in individual detainee files for individuals who have no relevance to the present action. Moreover, as noted in response to Request No. 33 above, GEO has already produced the detainee files for the named Plaintiffs, which include their Kites. Finally, GEO objects to the request for grievances about medical treatment as they are not relevant to the underlying claims in this case. Plaintiffs have not alleged that medical treatment was in any way tied to performance in the VWP or their personal housekeeping requirements. Accordingly, medical grievances are wholly unrelated to this case. GEO is withholding documents subject to the above stated objections.

b.  <u>Analysis</u>

In the briefing, Plaintiffs make the same essential argument in support of this RFP, as with RFP No. 34. Specifically, "Plaintiffs seek grievances submitted by detainees at Adelanto to show whether detainees were punished for refusing to work." ECF No. 239-1, Jt. Stip. at 46. Plaintiffs also dispute Defendant's burdensomeness objection because Defendant "has offered no evidence supporting its assertion of burden and, upon information and belief, grievances are recorded and documented in a GEO tracking database." Id.  Finally, Plaintiffs state that they

have modified the RFP and "have withdrawn their request for grievances related to medical, dental, and mental healthcare, which was originally a part of this request." Id. at 47.

In support of their objections, Defendant states that "the information sought resides in detainee files, which contain millions of pages in total, many of which are handwritten and cannot be electronically searched." Id. at 47. Defendant also argues that the "request is not narrowed to information that could be accessed electronically; instead it seeks ALL documents relating to grievances . . . ." Id.

With respect to the relevancy, the documents that would show grievances related to sub-categories a (The Voluntary Work Program) and b (Payment or nonpayment for work performed by detainees at the Adelanto Facility) are quite relevant. The information related to sub-category c (The quantity and/or quality of food, water, clothing, personal hygiene items, medicine, dental hygiene items provided to detained immigrants at the Adelanto Facility) appears to be less relevant as it is not tied as directly to the issue of paying and not paying detainees at the Adelanto facility and whether they were punished for not working. For example, if the complaint is related to not receiving enough soap, it may not be related to failure or refusal to work, and a general complaint. The opposite is also true, however, that if a complaint is filed that a detainee did not receive enough soap, a further investigation may reveal that this was done after the detainee refused to work.

Turning to the burden, though this Court sometimes requires a declaration or other proof to determine sufficiency, here, Defendant's counsel, as officers of the Court, have made the unequivocal, specific representation to support the claim that the documents are not kept in electronic format that is searchable. The Court accepts that representation and has accepted similar types of representations from Plaintiffs' counsel regarding factual representations made in relation to discovery issues.

In light of this, the burden to produce this material appears quite substantial. To the extent the material is electronically searchable and subject to keyword/custodian limitations that the parties agree to, the motion to compel as to RFP No. 34 sub-categories a and b are GRANTED. However, the relevancy as compared to the burden to produce the items identified sub-category c does not appear to be proportionate, and the motion to compel as to this sub-category is DENIED.

    11.  Plaintiffs' RFP No. 35

        a.  <u>RFP and Responses</u>

<u>REQUEST FOR PRODUCTION NO. 35:</u>

Please provide any and all contracts, agreements, memoranda of understanding, or communications between GEO and the Local 880 Union regarding the Adelanto Facility at any time between December 19, 2007 and the present.

---

     **CIVIL MINUTES—GENERAL**      Initials of Deputy Clerk DC

RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

GEO objects to this Request as the time period extends outside the relevant time period relating to the years in which Plaintiffs were detainees at the Adelanto Facility.  GEO objects to this Request as violating Fed. R. Civ. P. 26(b)(1) because it asks for information that is outside the scope of discovery. GEO objects on the grounds that GEO's contract with Local 880 Union and communications between GEO and Local 880 Union regarding the Adelanto Facility are not relevant to the claims or defenses in this case.  GEO also objects to this Request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privileges or immunities.  GEO is withholding documents subject to the above-stated objections.

        b.   Analysis

In its briefing, Plaintiffs argue that the "[c]ommunications between GEO and the Local 880 Union will likely show complaints of chronic understaffing being reported by employees to the union.  Such information relates directly to Plaintiffs' claims that GEO was dependent on its detainee workforce to operate the Adelanto Facility."  ECF No. 239-1, Jt. Stip. at 49.  In opposition, Defendant argues that the RFP, as framed, is overbroad.  Id. at 49-50.

Presumably, Local 880 Union is the union representing the non-detained workers at the Adelanto Facility.  It is unclear from the argument, however, whether this union represents guards and security or the type of workers who performed the same or similar duties as the detainees, or both.

The Court agrees with Defendant, that as framed, the RFP seeks information that is unrelated to the issues in this case, namely the failure to pay, underpay, or force the detainees to work at the Adelanto facility.  Additionally, Plaintiffs do not propose or offer any mechanism by which to narrow the request to seek relevant information.  Therefore, Plaintiffs' motion to compel a response to RFP No. 35 is DENIED, but the parties are ordered to meet and confer regarding the use of appropriate keyword/custodian limitations that may result in the more efficient discovery of communications showing salaries paid to Local 880 Union members doing similar jobs as those done by detainees and that contain information regarding understaffing.

## III.    CONCLUSION

For the reasons previously set forth, the motions to compel the responses to the particular RFPs are ruled upon as set forth previously and the parties are ordered to contact the Court by June 2, 2020 to provide an update on any keyword/custodian limitations to which the parties agree or have a dispute regarding.

**IT IS SO ORDERED.**