Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Counsel for the Certified Classes
***Additional Counsel on Signature Page***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA**, **JAIME CAMPOS FUENTES**, **ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**PLAINTIFFS' OPPOSITION TO GEO'S EX PARTE APPLICATION TO EXTEND CERTAIN DEADLINES** |

GEO improperly seeks *ex parte* relief from an exigency of its own creation. *See* Dkt. 201, 208. GEO has known of the Scheduling Order—including the discovery cutoff date and expert rebuttal deadlines—since it stipulated to those deadlines <u>eight months</u> ago. *See* Dkt. 247. But inexplicably, GEO has not sought, noticed or conducted a single deposition since October 2019.   Nor has GEO even <u>reviewed</u> "tens of

1

thousands of documents" which, by its own admission, are responsive to requests for production served <u>more than a year ago</u>.[1]

GEO's application is riddled with manufactured excuses and misstatements of fact. It should be seen for what it is: a gambit to delay Plaintiffs' day in court. Tellingly, GEO waited until *after* it received Plaintiffs' expert reports to raise the specter of "[d]rastic harm" that it purports to face should the Court maintain the longstanding pretrial dates in this action. Dkt. 300 at 12.

GEO has not and cannot demonstrate good cause or irreparable injury on this record because any perceived exigency is a condition entirely of GEO's own making. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The class members have waited nearly three years for justice and should not be punished for GEO's dilatory behavior and continued malfeasance. Nor should the Court condone and reward GEO's actions here.

**A. Legal Standard**

*Ex parte* applications are a form of emergency relief that will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief. Moreover, it must be established that the moving party is without fault in creating the crisis or that the crisis occurred as a result of excusable neglect. *Clark v. Time Warner Cable*, 2007 WL 1334965 at *1 (C.D. Cal. May 3, 2007); *Yeiser Research & Development, LLC v. Teknor Apex Company*, 2019 WL 1298097 (S.D. Cal. March 20, 2019). GEO cannot satisfy either requirement.

Federal Rule of Civil Procedure 16(b)(4) allows a schedule to be modified for good cause and with a judge's consent. Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. *See, e.g., Johnson v. Mammoth*

---

[1] On August 7 and August 14, 2020, Plaintiffs informed GEO that they intend to seek sanctions and an adverse jury instruction based on GEO's failure to produce relevant discovery and spoliation of documents. Declaration of Lydia Wright ("Wright Decl.") at Ex. 1; *see also* Dkt. 290 (discussing the procedure for Plaintiffs to raise spoliation issues with implications at trial).

*Recreations Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also Rich v. Schrader*, 2013 WL 3710806 at 2 (S.D. Cal. 2013). In order to demonstrate good cause, GEO must demonstrate its diligence in taking discovery, its diligence in propounding or noticing the particular outstanding discovery, and explain why the parties could not exchange the particular discovery before the discovery cut-off date. *Rich*, 2013 WL 3710806, at *2. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the initial focus of the inquiry is upon the moving party's reasons for seeking modification. *Johnson*, 975 F.2d at 609. If that party was not diligent, as is the case here, the inquiry ends. *Id.*

**B. GEO faces no threat of irreparable harm.**

GEO presents three unfounded assertions of irreparable harm.

First, the one-way intervention doctrine is not an impediment to the timely resolution of this case. Four classes have been certified and class members will be notified immediately following Court approval of the proposed notice plan. *See* Dkt. 284. During the Local Rule 7-1 conferral process, Plaintiffs proposed an opt-out period of 60 days. GEO requested an opt-out period of 90 days, and Plaintiffs agreed to 75 days. GEO never raised any concerns about the Scheduling Order or the one-way intervention doctrine during those conferences. To remedy GEO's newfound concerns about the opt-out period, Plaintiffs will simply agree to amend the proposed notice plan to seek the standard 45 days.[2]

Second, GEO contends that Plaintiffs "continue to thwart GEO's ability to comply" with the Scheduling Order by propounding discovery and seeking court intervention for GEO's malfeasance. Dkt. 300 at 15. But GEO fails to explain how Plaintiffs' vigorous prosecution of their case and their reasonable requests that GEO satisfy its discovery obligations constitute a source of irreparable harm.

---

[2] Should the Court find merit in GEO's assertion, Plaintiffs request an opportunity to fully brief their position regarding the one-way intervention rule.

<u>Finally</u>, GEO's attempt to blame the pandemic for its misconduct is unavailing. Plaintiffs should not be punished because GEO has had to defend itself in COVID-related litigation. And GEO's "unique business" as a private prison contractor is not an excuse for its failure to comply with the Scheduling Order in this case. It is clear that GEO's concerns regarding COVID are trumped up, particularly since GEO <u>does not seek to reset the fourteen day jury trial in this matter</u>. *See* Dkt. 300 at 7; *see also* Dkt. 214 (GEO's Demand for Jury Trial).

**C. Any perceived exigency is of GEO's own making.**

GEO has failed to demonstrate any exigent or unforeseen circumstances that would warrant delaying adjudication of this case. GEO presents no justification for its decision to wait until <u>three weeks</u> before the discovery cutoff to seek relief from deadlines. The record is replete with examples of GEO's discovery misconduct, which has delayed discovery by several months and required significant judicial intervention.

**1. GEO has not sought, noticed, or conducted a single deposition since October 2019.**

In October 2019, GEO deposed the four class representatives. That was the only and last effort by GEO to obtain any deposition testimony in this case. GEO simply cannot justify its failure to act, and indeed does not even try. The company cannot now claim prejudice as a result.[3] *See Brantley v. Borg-Warner Morse Tec, Inc.*, 2013 WL 5204524 (S.D. Cal. Sept. 13, 2013) (denying *ex parte* application for an extension of time to complete discovery where counsel waited until ten days before the deadline to serve notice of the depositions).

**2. GEO has not sought expert discovery.**

Plaintiffs have noticed the deposition of GEO's lone expert, Jeffrey Kropf, for September 3. But GEO has made <u>no</u> attempt to depose Plaintiffs' experts. It is unclear

---

[3] While GEO claims in its application that it now seeks to depose class member Fernando Munoz-Aguilera, Dkt. 300 at 8, GEO has not informed Plaintiffs of its apparent intention.

4

why GEO believes it "will need to subpoena additional documents from Plaintiffs' experts." Dkt. 300 at 7. GEO has never raised this issue with Plaintiffs, and all documents relied upon by each of Plaintiffs' three experts is cited in their reports and/or have been produced in this case—totaling more than 4,800 pages. GEO, on the other hand, has yet to produce <u>any</u> documents relied upon by its expert, Mr. Kropf.

**3. GEO has not even <u>reviewed</u> "tens of thousands of documents" in response to Plaintiffs' Request for Production which were served more than one year ago.**

GEO claims that an extension is necessary because its "focus and energy" has been "taken" by discovery conferences and hearings with Magistrate Kewalramani. Dkt. 300 at 8. Indeed, the parties have engaged in approximately 17 discovery hearings or conferences with the Court arising out of GEO's ongoing failure to produce relevant documents, failure to produce privilege logs, and abuse of confidentiality designations. But *GEO* chose September 7, 2020 as its date of substantial compliance with its discovery obligations, not Magistrate Kewalramani.[4] And even GEO maintains that it intends to comply with the date it chose. Dkt. 300 at 9.

GEO's malfeasance with its discovery obligations is well documented. On August 17, 2020, GEO represented to Magistrate Kewalramani that it cannot even estimate the number of pages "and other materials" that remain to be produced. Wright Decl. at Ex. 2. By GEO's own count, there are approximately 32,000 responsive documents (of an unknown number of pages) which it has not produced, and less than 5,000 documents are awaiting ICE review. Worse yet, <u>GEO admits that it only sent those documents to ICE on August 6, 2020</u>. *Id.* As a result, there are at least 27,000 responsive documents that GEO has not yet even submitted for ICE review.[5] Wright Decl. at Ex. 3. GEO has

---

[4] GEO incorrectly asserts that its substantial compliance date applies only to documents responsive to Plaintiffs' first two sets of Requests for Production.

[5] GEO's delay is the result of intentional cost-savings that the company has sought in responding to Plaintiffs' requests. Specifically, GEO's counsel has represented to

ignored Plaintiffs' efforts to confer further regarding the company's document review process. *Id.* at Ex. 4.[6]

GEO next claims that "[o]n the eve of the close of discovery," Plaintiffs served GEO with voluminous discovery requests to which GEO simply cannot respond. Dkt. 300 at 7. The facts are clear that GEO—not Plaintiffs—has delayed seeking offensive written discovery in this case:

- On June 26, 2020, GEO served the four class representatives with 21 interrogatories <u>each</u>. Plaintiffs timely responded, and GEO has not identified any deficiencies with respect to any of Plaintiffs' responses.

- On July 15, 2020, Plaintiff Campos Fuentes served GEO with 13 interrogatories and 54 requests for admission. GEO requested an extension for its response date.  from Plaintiffs, to which Plaintiffs agreed. GEO served Mr. Campos Fuentes with their Objections and Responses on August 18, 2020.

- On July 31, 2020, GEO served the four class representatives with 41 requests for production <u>each</u>. Plaintiffs will timely respond and produce responsive documents on or before August 31, 2020, when their responses are due.

- On August 3, 2020, Plaintiffs served GEO with four interrogatories, 13 requests for admission and seven requests for production. GEO's response is due September 2, 2020—well within the discovery window. GEO has never conferred with Plaintiffs regarding their apparent inability to respond to these discovery requests.

---

Plaintiffs that to save money on data storage, GEO has adopted an e-discovery and document review protocol that only images the pages in a document when that document is actually reviewed. Wright Decl. at ¶ 3.

[6] GEO's counsel also represents the company in *Menocal v. The GEO Group, Inc.*, No. 1:14-cv-02887 (D. Colo.) and *Nwauzor v. The GEO Group, Inc.*, No. 17-cv-5769 (W.D. Wash.), cases raising similar claims against GEO at other facilities. In those cases, GEO has had no issue producing more than 40,000 <u>documents</u> by the close of the discovery period.

- On August 4, 2020, Plaintiffs served GEO with an additional four requests for production. GEO's response is due September 3, 2020. Yet. Again, GEO has never indicated to Plaintiffs that it is unable to satisfy its discovery obligations with respect to these requests.

The record clearly establishes that GEO has only belatedly complied with its discovery obligations—if at all—after significant court intervention. GEO's misconduct has delayed Plaintiffs' receipt of discoverable information by several months, and Plaintiffs have already notified GEO that they intend to seek sanctions and an adverse jury instruction. *Star Envirotech, Inc. v. Redline Detection, LLC,* 2015 WL 9093561 C.D. Cal. Dec. 16, 2015) (granting a monetary sanction of attorney's fees and costs associated with Defendants' discovery misconduct and recommending a jury instruction to address the belated production of certain information).

### D. GEO's application is procedurally improper.

While the Court should deny GEO's *ex parte* application due to counsel's failure to demonstrate due diligence or good cause, it is also appropriate to note that GEO's counsel completely failed to follow the letter and spirit of the Local Rules in their meet and confer efforts. Instead, GEO's counsel chose to saddle the Court with a problem entirely of its own making by means of an eleventh hour *ex parte* application.

### CONCLUSION

Plaintiffs are ready to proceed.[7]  For the reasons stated above, GEO's *ex parte* application, Dkt. 300, should be denied.

Dated:  August 23, 2020

*/s/ Lydia A. Wright*

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)

---

[7] Plaintiffs intend to move for summary judgment  within one week of the September 14, 2020 close of discovery and anticipate substantially narrowing the issues for trial.

7

lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333

8

San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (CA Bar # 321366)
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

*Class Counsel*

5:17-cv-02514-JGB-SHK

**CERTIFICATE OF SERVICE**

I, Lydia A. Wright, electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated: August 23, 2020

*/s/ Lydia Wright*

Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

5:17-cv-02514-JGB-SHK