Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Counsel for the Certified Classes
***Additional Counsel on Signature Page***

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

**RAUL NOVOA**, **JAIME CAMPOS FUENTES**, **ABDIAZIZ KARIM**, and **RAMON MANCIA** individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

**THE GEO GROUP, INC.**,

*Defendant*.

Civil Action No. 5:17-cv-02514-JGB-SHKx

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO APPROVE CLASS NOTICE PLAN AND FORM OF NOTICE**

Hearing Date: September 14, 2020
Time: 9:00 a.m. PST
Courtroom: Riverside, Courtroom 1
Judge: Hon. Jesus G. Bernal

The Honorable Judge Jesus G. Bernal

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO APPROVE CLASS NOTICE PLAN AND FORM OF NOTICE

Plaintiffs' proposed notice plan satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) as it includes information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt-out or remain a member of the class. GEO's arguments to the contrary are premised on a misunderstanding of the applicable law and misrepresentations of the facts. For instance, GEO's contention that notice must issue to the Nationwide HUSP Class ignores the plain text of Rule 23(b)(2), under which that class was certified. And the purported deficiencies GEO identifies in the proposed notice plan are not deficiencies at all, but the proposed notice plan provides "the best notice practicable under the circumstances."

**A. Applicable Law**

Pursuant to Rule 23(c)(2)(B), for classes certified under Rule 23(b)(3), the Court must direct to class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language:" (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.*

In contrast, classes certified under Rule 23(b)(2)—like the Nationwide HUSP Class—ordinarily are not entitled to individual notice and typically do not have the right to opt out of the lawsuit. *See* Fed. R. Civ. P. 23(c)(2)(A) (providing that "the court <u>may</u> direct appropriate notice to the class") (emphasis added); *see also* Federal Judicial Center, *Manual for Complex Litigation, Fourth*, § 21.222 (2004) (same). As the Supreme Court has observed, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be

enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (internal quotation marks and citation omitted).

**B. Plaintiffs' Proposed Class Notice Satisfies Rule 23(c)(2)(B).**

**1. Notice to the Nationwide HUSP class is neither necessary nor required.**

GEO first contends that Plaintiffs "have no plan to provide any notice to any members of the Nationwide HUSP Class." [Dkt. 303 at 8.] As a threshold issue, GEO is factually incorrect, as members of the Nationwide HUSP Class are also members of the Adelanto Wage Class and Adelanto Forced Labor Class that are receiving notice. Regardless, the answer is that notice to members of a class certified under Rule 23(b)(2) is simply not required under the law. Fed. R. Civ. P. 23(c)(2)(A).

GEO's argument that it faces "an unresolved concern about which class members are bound by the judgment and which ones are not," [Dkt. 303 at 9], is similarly unavailing because every member of the Nationwide HUSP Class will be bound by the injunctive and declaratory relief sought by that class. There is likewise no merit in GEO's contention that notice is required because "the action seeks both monetary and injunctive relief." [Dkt. 303 at 10.] It is well settled that only monetary relief that is "incidental" to injunctive relief can be pursued in Rule 23(b)(2) class actions. *Dukes*, 564 U.S. at 360. "[I]ncidental damages, which may remain available in (b)(2) class suits, are those that would flow to the class as a whole by virtue of its securing the sought after injunctive relief." *Torrent v. Yakult U.S.A., Inc.*, SACV1500124CJCJCGX, 2016 WL 4844106, at *5 (C.D. Cal. Jan. 5, 2016) (quoting Newberg on Class Actions § 4:36 (5th ed.)).

The Court certified the Nationwide HUSP Class pursuant to Rule 23(b)(2). [Dkt. 223 at 27.] In so doing, the Court recognized that the primary claim of the Nationwide HUSP Class is for injunctive relief. [Dkt. 223 at 26-27.] Any monetary damages sought by the Nationwide HUSP Class, by virtue of potential membership in a damages-seeking

class, are incidental to the primary claim addressed by the Nationwide HUSP Class, which seeks only non-monetary relief. *See Dukes*, 564 U.S. at 360. And those class members who are in both the Nationwide HUSP Class and monetary-relief classes will receive notice of monetary-relief classes through a separate means.

GEO cites no valid authority in support of its position. And the cases upon which GEO relies are (at best) inapposite. *Holmes v. Cont'l Can Co.*, 706 F.2d 1144 (11th Cir. 1983), is an appeal from a final order of the district court approving the settlement of an antidiscrimination class action certified under Rule 23(b)(2), whereby the eight named plaintiffs would receive half of the total fund dedicated to back pay to the class. 706 F.2d at 1145. In *Holmes*, the merits of the back pay claims were uniquely individual to each class member, and the proponents of the notice plan stressed the individualized nature of the monetary relief claims and contended that the class representatives possessed unique, atypical claims, claims not in tandem with the claims common to the class as a whole. *Id.* at 1159. Accordingly, the *Holmes* court held "that the right to opt out of the class, normally accorded only to members of classes certified under Rule 23(b)(3), must be extended to all members of this (b)(2) class." *Id.* at 1152. Here, the named plaintiffs are not unique, do not possess atypical claims, and their claims are in tandem with the claims common to the class as a whole. And, the relief does not vary between members.

In *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012), the complaint requested "maximum damages" but "not an injunction" and monetary damages "was the only remedy awarded that clearly applied to every class member." 691 F.3d at 224. GEO fails to note that court's observation that it "need not decide whether due process also requires notice and an opportunity to opt out when a claim for damages does not predominate." *Id.* Here, in contrast, the Nationwide HUSP Class plainly seeks declaratory and injunctive relief. [Dkt. 184 (Third Amended Complaint) at ¶ 242.]

The other case cited by GEO—*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)—provides only that "[i]f the forum State wishes to bind an absent plaintiff

concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection" and that "[t]he plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel." *Id.* at 811-12. GEO fails to mention that the Supreme Court then states that the "holding today is limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments[, and the Court] intimate no view concerning other types of class actions, such as those seeking equitable relief." *Id.* at 812 n.3 (emphasis added). Thus, the *Shutts* case is wholly inapplicable here.

Accordingly, Plaintiffs do not need to provide notice to the Nationwide HUSP Class.

**2. Mail notice is not required or feasible.**

GEO's contention that mail notice is required, [Dkt. 303 at 11], likewise finds no support in the law or facts.[1]

Rule 23 "accords considerable discretion to a district court in fashioning notice to a class." *In re "Agent Orange" Product Liability Litig.*, 818 F.2d 145, 168. (2d Cir. 1987). Further, due process is satisfied even if all class members do not receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform the persons affected. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 680 (N.D. Cal. 2016). Indeed, the notice efforts reasonable under the circumstances of the case rests in the sound discretion of the court. *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 00214(CM), at *3, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) (citing Manual for Complex Litigation § 30.211, at 223).

Despite the fact that GEO will post notice in the Adelanto facility, GEO seems to argue that the notice plan should also include mail notice to the address where each class member was detained. [Dkt. 303 at 11.] In other words, GEO suggests mailing hundreds of thousands of individuals spanning a ten-year period at their last known

[1] GEO raised the issue of mail notice—for the first time—at 3:41 pm est, on August 4, the day that Plaintiffs filed their Notice Plan, and after four weeks of conferral.

detention facilities. [Dkt. 303 at 11.] GEO's belief that this would provide "the best notice under the circumstances" fails to account for, among other things, the fact that the majority of class members are no longer detained at a GEO facility. For instance, GEO's proposal would have Plaintiffs mail notice to Raul Novoa (who lives in Los Angeles), Ramon Mancia (same), Jaime Campos Fuentes (same), and Abdiaziz Karim (who was deported), each to the Adelanto facility. That makes no sense.

GEO itself has described class members as "thousands of people scattered across the world, in different time zones, and with varying access to communication," in "diverse geographic locations" with "disparate personal circumstances" and of a "transitory nature." [Dkt. 205 at 38.] Once detainees are released or deported, they could be literally anywhere in the world. Under these circumstances, mail notice is not the best means of reaching class members.

Instead, Plaintiffs' plan includes posting the notice in the Adelanto facility, publication notice in three newspapers, a digital media campaign, a radio campaign, a press release to be distributed over PR Newswire, email outreach, and a dedicated website with information about a 24-hour, toll-free telephone line. [Dkt. 284 (Motion to Approve Class Notice Plan).] Plaintiffs' plan would generate over 15 million digital impressions abroad and 16 million digital impression in key states in the United States; 140 radio spots aired in key Spanish-speaking countries; more than 442,000 newspapers circulated in California; and the distribution of a press release to over 15,000 English and Spanish media outlets in the United States, over 4,000 in Spanish Latin America, and approximately 250 in India. [Dkt. 284-1 (Declaration of Keough) at ¶¶ 10-22.] Given the classes' geographic diversity, Plaintiffs' notice plan provides the best notice practicable under the circumstances. *See Johnson v. General Mills, Inc.*, 2013 WL 3213832, at *4 (C.D. Cal. June 17, 2013) (notice by publication is used when identity and location of class members cannot be determined through reasonable efforts.).

Even when plaintiffs have tried, GEO's data could not achieve mail notice to class members (detained in GEO's facilities or otherwise). For example, in *Menocal, et al. v. The GEO Group, Inc.*, Civil Action No. 1:14-cv-02887 JLK (D. Colo.), the court approved the plaintiffs' amended notice plan which specifically "limit[s] notice in this case to publication notice, without a mailed component."[2] There, GEO was unable to provide reliable contact information for the class members.[3]

**3. The Notice Plan survives GEO's specific criticisms.**

Print Publication. GEO argues erroneously that Plaintiffs' print publication plan is limited to Spanish-language newspapers circulated in Southern California. Not so. Plaintiffs' notice plan—which was provided to GEO during the four-week-long conferral process—includes a press release which will be distributed to over 19,000 media outlets on the following newslines: US1 in English, U.S. National Hispanic in English and Spanish; Latin America in Spanish; and India in Hindi. [*See e.g.*, Dkt. 284 (Motion to Approve Class Notice Plan) at 13-17.]

Digital Media and Radio Campaign. GEO argues that digital media and radio notices be "geared towards a nationwide audience." [Dkt. 303 at 13.] As stated above, Plaintiffs' notice plan—which was provided to GEO during the four-week-long conferral process—is designed to reach over 15 million digital impressions abroad and 16 million digital impression in key states in the United States. Under Plaintiffs' plan, the Notice Administrator will implement a targeted radio campaign in five Latin American markets including both Mexico City and Guadalajara, Mexico; San Salvador, El Salvador; Guatemala City, Guatemala; and Tegucigalpa, Honduras. A total of 140 thirty-second radio commercials, or 28 commercials per market, will air on various radio station

[2] Exhibit A, Order Granting Plaintiffs' Motion to Amend Notice Plan, *Menocal, et al. v. The GEO Group, Inc.*, Civil Action No. 1:14-cv-02887 JLK, United States District Court, District of Colorado, Dkt. 186.

[3] Exhibit B, Joint Motion for Approval for Plaintiffs' Class Notice Plan and Proposed Order Approving Plaintiffs' Class Notice Plan, *Menocal, et al. v. The GEO Group, Inc.*, Civil Action No. 1:14-cv-02887 JLK, United States District Court, District of Colorado, Dkt. 162 at 3; Exhibit B, Declaration of Michael J. Scimone in Support of Plaintiffs' Motion to Amend Notice Plan, Dkt. 185-2 at ¶¶ 5-9.

formats such as news, talk, and entertainment over a two-week period. [Dkt. 284 (Motion to Approve Class Notice Plan) at 15.]

Email Outreach. GEO contends that class members may be confused if they receive notice via email outreach groups that provide services to immigrants. [Dkt. 303 at 13.] GEO cites no legal authority or factual evidence in support of this baseless contention. The proposed notices clearly and conspicuously state that they are not a solicitation or a judicial endorsement. There is simply no merit to this argument.

**4. The form notices also survive GEO's concerns.**

GEO contends that the proposed long and short form notices are deficient because they are "unclear and biased against GEO." [Dkt. 303 at 14.]

First, GEO contends that notice documents should state the formal causes of action. However, legalese does not provide class members with an understanding of subject matter of the suit. *See* Fed. R. Civ. P. 23(c)(2)(B) ("The notice must clearly and concisely state in plain, easily understood language . . . ."); *In re Haier Freezer Consumer Litig.*, 5:11-CV-02911-EJD, 2013 WL 2237890, at *6 (N.D. Cal. May 21, 2013) ("[Notice should] present the requisite information in clear, easy to understand language."). Instead, Plaintiffs drafted the notice documents to include a brief and neutral description of the causes of action, as required by the federal rules. *See Hunt v. Check Recovery Sys., Inc.*, C05 04993 MJJ, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007), *aff'd sub nom. Hunt v. Imperial Merch. Services, Inc.*, 560 F.3d 1137 (9th Cir. 2009) ("The purpose of the mandatory notice requirement in 23(b)(3) actions is to present a fair recital of the subject matter of the suit . . . ."). Further, the notice documents clearly provide that "[t]he Court has not decided whether GEO did anything wrong."

Second, GEO argues that the notices inappropriately contain the terms "Voluntary Work Program," "Uncompensated Work Program," and "Housing Unit. Sanitation Policy." [Dkt. 303 at 15.] These terms are part of the class definitions, and accordingly the terms—and their definitions—belong in the notices.

Third, GEO contends that the description of class members' options in Sections 10 and 11 are "buried" at the bottom of the Long Form Notice. [Dkt. 303 at 15.] But GEO offers no explanation for this statement or suggestion for alternate placement.

Fourth, contrary to GEO's representations, the proposed notices state conspicuously that "The Court has not decided whether GEO did anything wrong. There are no benefits available now, and there is no guarantee there will be. . . ." and "The Court has not decided whether GEO or the Plaintiffs are correct. By establishing the Classes and issuing this Notice, the Court is not suggesting that the Plaintiffs will win or lose this case." [Dkt. 284-1 (Exhibits to Motion to Approve Class Notice Plan) at Exhibit G (Long Form Notice).] Nonetheless, Plaintiffs are willing to state, immediately below the caption of the Long Form Notice, that "The Court has not endorsed either party's position, and this class notice does not mean Plaintiffs have prevailed."[4]

Fifth, a mockup of the website is attached hereto as Exhibit D.

**C. The one-way intervention rule is easily avoided.**

In its opposition, GEO complains—for the first time—that the timing of the notice program conflicts with the scheduling order and, "if the deadlines are not extended, GEO will suffer avoidable prejudice." [Dkt. 303 at 15.] This argument, however, is not that the notice plan is deficient but that the scheduling order is deficient. At GEO's request—and before GEO ever raised any concern about one-way intervention—Plaintiffs agreed to extend the opt-out timing under the notice plan. Only after Plaintiffs' agreed to GEO's request did GEO raise the concern of one-way intervention. The Court has already instructed that GEO has "failed to show its case will be irreparably damaged if the underlying motion to extend deadlines is heard according to regular motion procedures, or that it is without fault in creating the conditions requiring ex parte relief." [Dkt. 309.] GEO's complaints related to the scheduling order

[4] The updated version of the Long Form Notice is attached hereto as Exhibit C.

(self-inflicted as they are) should go through the regular motion procedures rather than be addressed as part of the notice plan.

In any event, to remedy GEO's newfound concerns regarding one-way intervention, Plaintiffs would agree to shorten the opt-out period to 45 days. That amount of time eliminates the concern GEO raises and amply meets due process concerns. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (approving 31-day opt-out period); *Makaeff v. Trump Univ., LLC*, Nos. 10-cv-0940-GPC-WVG, 2015 WL 5638192, at *6-7 (S.D. Cal. Sept. 21, 2015) (setting opt-out deadline 45 days after mailing of notice and 35 days after first publication of notice); *In re National Football League Players' Concussion Injury Litigation*, 301 F.R.D. 191, 203 (E.D. Pa. 2014) ("It is well-settled that between 30 and 60 days is sufficient to allow class members to make their decisions to accept the settlement, object, or exclude themselves."). Amending the opt-out period would eliminate any risk of one-way intervention because, as proposed, the last day to opt out will be November 10, 2020, which is before the November 17, 2020 deadline for dispositive motions to be heard. Accordingly, the Court can decide GEO's motion for summary judgment after the opt-out deadline.

Alternatively, docket-maintenance practices exist that would allow the Court to maintain the schedule, use the proposed notice plan, and move the case forward. For example, the Court could maintain the current deadlines but defer ruling on any motion for summary judgment until after the opt-out deadline has passed. GEO's concern should not ruin the notice plan when it can be managed and avoided.

**D. Plaintiffs engaged in a good faith conferral process.**

Finally, GEO's repeated complaints about the conferral process are without merit. Plaintiffs began the conferral process on July 2, when they sent GEO six proposed notice documents with a summary of the process of the plan and requested comments

and a telephonic conference.[5] GEO did not respond. On July 8, Plaintiffs again requested a conference with GEO's counsel.[6] GEO's counsel represented that they would provide comments by July 16.[7] GEO did not provide comments until July 27.[8] As a result of several telephonic conferences that ensued, Plaintiffs incorporated many of GEO's suggestions into the proposed notice plan.[9] But GEO waited until August 4—Plaintiffs' stated filing date—to raise the issue of mail notice.[10] Other issues that GEO complains about now, including one-way intervention, were never raised at all.[11]

## CONCLUSION

Plaintiffs respectfully move for an order approving Plaintiffs' notice plan and form of notice.

---

[5] Exhibit E, Email from D. Charest to Novoa OC, Re. Novoa - Class Notice Program, dated July 2, 2020.

[6] Exhibit F, Email from D. Charest to Novoa OC, Re. Novoa - Class Notice Program, dated July 8, 2020.

[7] Exhibit G, Email from A. Hou to D. Charest, FW: Novoa – Class Notice Program, dated July 8, 2020.

[8] Exhibit H, Email from A. Hou to M. Biblo, Re: Novoa – Class Notice Program, dated July 27, 2020, at 2:45 pm est; Exhibit I, Email from A. Hou to M. Biblo, Re: Novoa – Class Notice Program, dated July 27, 2020, at 2:48 pm est.

[9] Exhibit J, Email from M. Biblo to A. Hou, Re: Novoa – Class Notice Program, dated July 31, 2020.

[10] Exhibit K, Email from A. Hou to M. Biblo, Re: Novoa – Class Notice Program, dated Aug. 4, 2020, at 3:41 pm est; Declaration of M. Biblo, dated Aug. 31, 2020, at ¶ 3.

[11] Declaration of M. Biblo, dated Aug. 31, 2020, at ¶ 2.

Dated: August 31, 2020

Respectfully submitted,

*/s/ Daniel H. Charest*

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (CA Bar # 321366)
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)

lwright@burnscharest.com
LA Bar # 37926
C. Jacob Gower (admitted *pro hac vice)*
jgower@burnscharest.com
LA Bar # 34564
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

On August 31, 2020, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ Daniel H. Charest*

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002