Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Counsel for Plaintiffs
**Additional Counsel on Signature Page**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM,** and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**PLAINTIFFS' OPPOSITION TO GEO'S MOTION TO COMPEL**<br><br>Hearing Date: October 2, 2020<br>Time: 11:00 a.m. PST<br><br>The Honorable Shashi Kewalramani |

Plaintiffs have fully complied with their discovery obligations. Ignoring the facts (or inventing facts) and the law, GEO seeks information that it either already has, cannot identify, or cannot articulate any entitlement to. At base, GEO's complaint are lodged as an attempt to imply both side have fallen short. But GEO is wrong. And GEO's tactic forces Plaintiffs and the Court to expend time and resources to set straight GEO's material misrepresentations of fact. GEO's motion to compel is frivolous and should be denied.

**A.      Plaintiffs have timely complied with their discovery obligations.**

GEO falsely accuses Plaintiffs of withholding expert materials, and contends that "ultimately Plaintiffs refused to comply with their production obligations and produced only four retainer agreements, not the key documents sought in GEO's expert subpoenas," Dkt. 332 at 4, n.1; *see also id.* at 3, n.2. GEO is wrong. And the assertion is preposterous.

In reality, Plaintiffs produced 5,481 pages of expert reliance materials to GEO days after disclosure of their respective reports and weeks before each expert's deposition:

| Expert | Disclosure | Production | Deposition |
|---|---|---|---|
| Jody Bland | August 17, 2020 | August 22, 2020<br>1,539 pages | September 23, 2020 |
| Dr. Michael Childers | August 17, 2020 | August 22, 2020<br>40 pages | September 21, 2020 |
| Dr. Margo Schlanger | August 17, 2020 | August 22, 2020<br>3,416 pages | September 25, 2020 |
| Dr. Craig Haney | August 31, 2020 | September 2, 2020<br>486 pages | September 25, 2020 |

Indeed, Plaintiffs produced these expert reliance materials before GEO served its untimely expert subpoenas on September 3. Even though GEO's subpoenas were procedurally deficient and requested responses after the close of discovery, Plaintiffs still responded to them. *See* Declaration of Daniel H. Charest ("Charest Decl.") at Ex. A. By then, Plaintiffs had already produced the documents—all 5,481 pages—to which GEO was entitled. GEO's representation to the Court that Plaintiffs have "produced only four retainer agreements," Dkt. 332 at 4, n.1, is false.

And GEO's representation that Plaintiffs have withheld "key documents" is also untrue. The "key documents" GEO seeks fall into two categories: information which Plaintiffs have already produced to GEO or information which GEO cannot even identify.

As to the first category, GEO first notified Plaintiffs of its intent to file the pending

motion on September 30, 2020—the day the motion was due. *See* Charest Decl. at ¶¶ 2-8; Ex. B at 5-6. Plaintiffs immediately arranged a telephonic conference with GEO to attempt to understand and resolve GEO's concerns. *Id.* at 1-5.

Following the conference—several hours <u>before</u> GEO filed its motion and within hours of learning of the actual issue—Plaintiffs provided GEO with Dr. Childers' prior engagements as an expert witness and Dr. Schlanger's email communications with Ms. Claire Trickler-McKnulty. *See* Charest Decl. at ¶ 8; Ex. C. Despite having those documents in hand, GEO chose to misrepresent to the Court that Plaintiffs never produced that information at all. Dkt. 332 at 5; *see also* Dkt. 332-1 at ¶ 13 (Robbins Decl.) (declaring under penalty of perjury that "[a]t the time of the filing of this motion, the parties have not reached a resolution regarding the issues outlined in this Motion."). In fact, as soon as GEO articulated an interest in conferral and explained what it wanted (both for the first time only hours before filing the pending motion), Plaintiffs provided all identified expert materials. Charest Decl. at ¶ 8.

As to the second category of "key documents," GEO asks the Court to compel the production of "spreadsheets used by [Dr.] Childers," "documents considered by Ms. Schlanger," and "documents relied upon by each of plaintiffs' experts that were not previously disclosed." Dkt. 332 at 5-6. But GEO cannot or will not identify these documents with any specificity. GEO will not even provide citations to the deposition transcripts of the experts, which might permit the parties to ascertain what information GEO seeks. It is therefore impossible for Plaintiffs to identify any of these documents or determine if those documents are among the 5,481 pages of expert reliance materials already in GEO's possession. It is not Plaintiffs' burden to guess what documents GEO has in mind, assuming GEO has in mind any specific documents at all. Plaintiffs have fully and completely complied with their discovery obligations.

**B.     GEO is not entitled to Plaintiffs' personal financial information.**

GEO seeks to compel documents responsive to three of its requests for production, each pertaining to Plaintiffs' personal financial information. But GEO has not provided any

coherent or credible reason it is entitled to any of that information. *See* Dkt. 332 at 6.

For instance, GEO provides no legal or factual support for its assertion that any income Plaintiffs earned outside of Adelanto (RFPs 20, 21, and 27) is relevant to whether they should be considered employees of GEO. *See* Dkt. 332 at 7.[1] And, in its motion, GEO does not even attempt to explain why this information would be relevant to the amount GEO would be obligated to pay its detainee workforce pursuant to the California Minimum Wage Law (the "MWL"). *See id.* Plaintiffs are aware of no legal authority supporting GEO's baseless assertion that that an individual's income history has <u>any</u> bearing on whether an employment relationship exists for the purposes of California labor law. *See Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), as modified (June 9, 2010). Previous income obviously has no bearing on whether an employee is entitled to the minimum wage.

GEO's attempt to compel the production of Plaintiffs' tax records (RFP 21) fails for the additional reason that those records are not discoverable at all. The Ninth Circuit imposes a high bar on a party seeking tax documents in discovery. *See Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (describing "public policy against unnecessary public disclosure" of taxpayer information). GEO bears the burden of demonstrating that the documents are "relevant to the subject matter of the action," <u>and</u> that "there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Brill v. Napolitano*, 2010 WL 11512400, at \*6 (C.D. Cal. May 12, 2010).

GEO makes no attempt at either showing, or to support its apparent belief that whether Plaintiffs paid taxes on their $1/day wages "directly relates to the issue of whether plaintiffs considered themselves to be employees or to have received renumeration." Dkt. 332 at 7. Again, the law does not support the test GEO advances. *See Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), as modified (June 9, 2010). And there is no question that Plaintiffs

---

[1] During the September 30, 2020 conference, GEO oddly asserted there might be records of employment while the Class Representatives were detained at Adelanto. The position still makes no sense.

4

5:17-cv-02514-JGB-SHK

considered themselves to be employees of GEO or that they received $1/day wages, when they were paid anything at all. *See, e.g.*, Dkt. 223 at 11-12 (finding that all four class representatives have standing to represent the Adelanto Wage Class).

Similarly, GEO fails to articulate any basis for its claim that documents showing Plaintiffs' purported receipt of public benefits are relevant to whether GEO was unjustly enriched by paying detainee workers less than it was required to under California law. *See* Dkt. 332 at 7. The cases relied upon by GEO do not support this assertion. *See, e.g.*, *Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 488 (D. Md. 1982) (calculating the amount of overtime and minimum wage payments due to employees in Maryland); *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163 (2000) (holding that payment of wages unlawfully withheld from an employee are a restitutionary remedy authorized by the California Unfair Competition Law). There is no exemption in California Labor Law that permits employers to pay subminimum wages to employees who receive public benefits. *See Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), as modified (June 9, 2010).

GEO fails to offer any cognizable basis for production. The Court should deny GEO's motion to compel.

**C.    *Touhy* does not apply to Dr. Schlanger's testimony in this case.**

Plaintiffs retained Dr. Margo Schlanger to opine regarding the general circumstances and standards governing civil immigration detention. Dr. Schlanger has been a tenured law professor at the University of Michigan since 2009, although for a two-year period in 2010 and 2011 she was on leave to serve as the Officer for Civil Rights and Civil Liberties (CRCL) at the U.S. Department of Homeland Security (DHS). Plaintiffs timely disclosed Dr. Schlanger's expert report on August 17, and she was deposed by GEO on September 25.

The evening before Dr. Schlanger's deposition, Plaintiffs received a letter from Leo E. Boucher, III, Assistant General Counsel for Administrative Law at DHS. Ex. D. In the letter, DHS asserts that Dr. Schlanger's testimony may be subject to the requirements of 6 C.F.R. §§ 5.41-5.49, commonly referred to as DHS's *Touhy* regulations, which purport to "govern the release of testimony or information in the custody and control of the

Department, or was acquired by Department employees, or former employees, as part of their official duties or because of their official status within the Department while such individuals were employed by or served on behalf of the Department." *Id.* (citing *United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951)).

As Plaintiffs informed DHS, *see* Ex. E, the agency's *Touhy* regulations do not apply to Dr. Schlanger's testimony in this case.[2] DHS's *Touhy* regulations provide certain restrictions on the release of information that "was acquired by Department employees, or former employees, as part of their official duties or because of their official status within the Department while such individuals were employed by or served on behalf of the Department." 6 C.F.R. § 5.41(e). As a threshold issue, DHS's position contradicts the plain text of the regulation itself, which applies only to the "former Secretaries of Homeland Security and all [current] employees of the Department of Homeland Security." 6 C.F.R. § 5.41(c). Dr. Schlanger is not a former Secretary of Homeland Security or a current DHS employee. She is therefore not within the ambit of the *Touhy* regulations at all.

But even if the regulations applied to Dr. Schlanger as a "former employee" of DHS, the *Touhy* restrictions, by their express terms, <u>do not extend</u> to "any expert or opinion testimony by a former employee of the Department . . . <u>where the testimony involves only</u> **general expertise** <u>gained while employed at the Department</u>." *Id.* § 5.49(b) (emphasis added). In this case, Dr. Schlanger will testify only as to the general circumstances and standards governing civil immigration detention. She formed her opinions based on a combination of the general expertise she gained while employed by the government and in academia, along with information readily accessible to the public or otherwise disclosed in this litigation. In fact, much of the information contained in Dr. Schlanger's declaration is currently publicly available on ICE's own website, in the testimony of current ICE officials, and in reports published by the DHS Office of Inspector General ("OIG"). <u>None</u> of her opinions involve any information or material acquired while she was employed by the

---

[2] The issue of *Touhy's* applicability has been before the Court before. *See* Dkt. 93.

government.

In its discussion of the *Touhy* issue, GEO claims that during Dr. Schlanger's deposition, "the witness and Plaintiffs' counsel objected numerous times to questions on the basis of *Touhy*." Dkt. 332 at 8. That is false. GEO has not and cannot provide any evidence of these objections, because none exists. Similarly, GEO has not provided any evidence of questions asked or information sought that Dr. Schlanger did not provide, on the basis of *Touhy* or anything else. When asked for examples of questions that GEO had that the witness could not answer, GEO could not identify even one. GEO has not been denied any material information, even in light of DHS's improper assertion of *Touhy*.

In sum, *Touhy* does not apply in this action at all, nor it does it have any applicability whatsoever to Dr. Schlanger's testimony. And in any event, GEO has not been denied any information necessary for this case.

## CONCLUSION

GEO's Motion to Compel should be denied in its entirety.

Dated: October 1, 2020                     Respectfully submitted,

*/s/ Daniel H. Charest*
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
**BURNS CHAREST LLP**
900 Jackson St., Suite 500

Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (CA Bar # 321366)
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

***Class Counsel***

# CERTIFICATE OF SERVICE

I, Daniel H. Charest, electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated: October 1, 2020

*/s/ Daniel H. Charest*
Daniel H. Charest (admitted *pro hac vice*)
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com