Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Class Counsel
**Additional Counsel on Signature Page**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHK<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF SERENA MORONES**<br><br>Hearing Date: November 16, 2020<br>Time: 9 a.m. PT<br>Courtroom: 1<br>Judge: Hon. Jesus G. Bernal |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1
II. LEGAL STANDARDS ............................................................................................ 1
   A. Motion to Strike for Failure to Disclose Expert Reliance Materials ..................... 1
   B. Motion to Exclude under *Daubert*. ..................................................................... 2
III. ARGUMENT ........................................................................................................... 2
   A. Morones' Testimony Should Be Excluded Under Rule 37(C)(1) Due to GEO's Failure to Comply With Rule 26(a)(2)(B). .............................................................. 3
   B. Morones' Opinions Do Not Pass Muster Under *Daubert*. ................................... 5
      1. Morones' opinions are not reliable ................................................................. 5
      2. Morones' opinions are not relevant to the task at hand because they do not pertain to any issues to be determined by the jury. ......................................... 8
IV. CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Building Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*,
  683 F.3d 1144 (9th Cir.2012) ...................................................................................10
*Cholakyan v. Mercedes-Benz, USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) .............................................................................12
*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ...............................................................................6, 13
*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ..................................................................................................9
*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ......................................................................................... 10, 15
*Goodman v. Staples The Office Superstore, LLC*,
  644 F.3d 817 (9th Cir. 2011) .....................................................................................5
*Hunt v. McNeil Consumer Healthcare*,
  297 F.R.D. 268 (E.D. La. 2014) ..............................................................................13
*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) .............................................................................12
*In re Google Adwords Litig.*,
  2010 WL 5185738 (N.D. Cal. Dec. 8, 2010) .................................................. 5, 8, 9
*In re Imperial Credit Indus., Inc. Securities Litig.*,
  252 F.Supp.2d 1005 (C.D. Cal. 2003) .....................................................................12
*Linares v. Crown Equip. Corp.*,
  2017 WL 10403454 (C.D. Cal. Sept. 13, 2017) .....................................................10
*Mukhtar v. Cal. State Univ.*,
  299 F.3d 1053 (9th Cir. 2002) ...................................................................................6
*Roman v. MSL Capital, LLC*,
  2019 WL 1449499 (C.D. Cal. Mar. 29, 2019) ........................................................10
*Yeti By Molly Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ...................................................................................5

**Rules**

Fed. R. Civ. Proc. 26 ......................................................................................................5, 9
Fed. R. Evid. 702…………………………………………………………………..6, 9

## I. INTRODUCTION

Defendant The GEO Group, Inc. ("GEO") retained Serena Morones to rebut the opinions of Plaintiffs' damages experts, Jody Bland and Dr. Michael Childers. Morones' proposed testimony should be stricken on several grounds. First, GEO has refused to disclose materials that Morones considered in reaching her opinions, resulting in undue and incurable prejudice to Plaintiffs and all but ensuring trial by surprise. Morones' testimony can and should be excluded due to GEO's failure to fulfill the required disclosure requirements of Fed. R. Civ. P. 26. Second, Morones' opinions are not the product of a reliable methodology and do not "fit" any issues in this case, and should be excluded under Fed. R. Evid. 702. The Court should strike GEO's rebuttal expert disclosure and prohibit GEO from calling Morones to testify as an expert witness.

## II. LEGAL STANDARDS

**A. Motion to Strike for Failure to Disclose Expert Reliance Materials.**

Under Federal Rule of Civil Procedure 26(a)(2)(B), an expert must disclose in her report "a complete statement of all opinions the expert will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." Fed. R. Civ. Proc. 26(a)(2)(B)(i)-(ii). "Rule 26(a)(2)(B)(ii) is worded specifically to provide the opposing party with access to all materials reviewed or considered by the expert." *In re Google Adwords Litig.*, 2010 WL 5185738, at *3 (N.D. Cal. Dec. 8, 2010).

Federal Rule of Civil Procedure 37 "gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011); *see also Yeti By Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001) ("[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. 37(c)(1).

**B.    Motion to Exclude under *Daubert*.**

Courts must carefully scrutinize proposed expert testimony "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002). As a threshold matter, the Court must determine whether the witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") (expert testimony is admissible only if it is first established that the individual whose testimony is being proffered is an expert in a particular field). If the proposed witness is qualified to give opinion testimony, a two-part inquiry follows to determine whether: (1) the reasoning or methodology underlying the testimony is scientifically valid (the reliability prong); and (2) whether that reasoning or methodology properly can be applied to the facts in issue (the relevancy prong). *Daubert*, 509 U.S. at 592-93. Failure at any step requires exclusion of the proffered testimony.

### III.   ARGUMENT

Morones was retained by GEO "to address the monetary relief that the plaintiffs could recover if they were to prevail on their claims."[1] Wright Decl. at Ex. A. (hereinafter, "Morones Report") at ¶ 3. In her Report, Morones offers the following four opinions:

a) "Mr. Bland may have failed to reduce his damages for the actual amounts paid to detainees." *Id.* at ¶ 23.

b) Bland relies on "limited sources" regarding detainee jobs and shift lengths, and in particular fails to consider assumptions disclosed by an expert in a different case against GEO. *Id.* at ¶¶ 25-31.

---

[1] GEO initially designated Morones' rebuttal report as Confidential. However, GEO's counsel does not object to the public filing of both Morones' rebuttal report and the Morones deposition transcript. *See* Dkt. 350.

    c) "Mr. Childers may have extrapolated the four months of data over the full year of 2011, despite the damage period beginning in May 2011 for the Forced Labor Class." *Id.* at ¶ 50.

    d) Childers' disgorgement analysis improperly relies on data from the Bureau of Labor and Statistics, instead of wage rates reflected in wage determination schedules issued by the Department of Labor. *Id.* at ¶ 56.

Morones offers her conclusions based on material which GEO has refused to produce to Plaintiffs. She also fails to provide testimony that will help the trier of fact understand the evidence or to determine a fact in issue. Her testimony should be excluded on either basis, both of which apply.

## A. Morones' Testimony Should Be Excluded Under Rule 37(C)(1) Due to GEO's Failure to Comply With Rule 26(a)(2)(B).

Morones serves as an expert in another GEO case, styled *Washington v. The GEO Group, Inc.*, Case No. 3:17-cv-05806 (W.D. Wa). In response to Plaintiffs' experts in this case, Morones relied the "Expert Report of Peter H. Nickerson, Ph.D dated September 20, 2018" (hereinafter, the "Nickerson Report"), which was disclosed by the State of Washington in that case. *See* Morones Report at Attachment B (listing "Information Considered"); *id.* at ¶¶ 29-31. Plaintiffs in this case did not make the Nickerson Report an issue; Morones did that by invoking the Nickerson Report as a data point that differed from Plaintiffs' experts here. In her deposition, Morones admitted that she reviewed everything Nickerson relied on reaching his conclusions in *Washington v. GEO*. Wright Decl. at Ex. B (hereinafter "Morones Dep.") at 143:13-16 (Q: "[Y]ou've seen everything that . . . Dr. Nickerson relied on in his report, right?" A: "Yes."); 263:13-265:20 (discussing Morones' review of the data underlying Nickerson's calculations); 268:6-21 (same); 291:16-21 (same). Further, Morones cited only to Nickerson's first report, even though he issued an amended report based on additional data produced in *Washington v. GEO*. Morones Dep. at 288:9-11; 290:4-291:2.

Despite the fact that Morones reviewed all of the data underlying the Nickerson Report (which she invoked in this case), GEO refused to produce the Nickerson Report or any

underlying data, reliance materials, subsequent and precedent reports, and rebuttal reports (collectively, the "Nickerson Materials") to Plaintiffs, despite its clear obligation to do so. *See In re Google Adwords Litig.*, 2010 WL 5185738, at *3 (N.D. Cal. Dec. 8, 2010) (Rule 26(a)(2)(B)(ii) "is worded specifically to provide the opposing party with access to all materials reviewed or considered by the expert."). GEO eventually produced the Nickerson Report and an amended Nickerson Report under Court order. Dkt. 315. But the Court only reiterated Rule 26's scope and mentioned the Nickerson Report as included by, not as a limitation on, Rule 26. *See id.* ("Defendant is to provide any information relied upon in the experts report, in compliance with the Federal Rules of Civil Procedure, which includes anything within the care, custody, or control of GEO Group, including the expert report of Nickerson, and any other information upon which any expert report relies."). Despite the order and the rules, GEO did not produce <u>any</u> underlying data, reliance materials, subsequent and precedent reports, or rebuttal reports related to the Nickerson materials upon which Morones relied.

Withholding this information appears to be GEO's strategy. GEO represented in *Washington v. GEO* that it sought to prevent "plaintiffs in detainee cases against GEO" from obtaining the information contained in the Nickerson Materials:

> While the State's service of Dr. Nickerson's report on GEO enabled it to address the State's failure, neither GEO nor the Court has any way to know whether the improperly-marked version of that report had already been disclosed to class counsel in *Nwauzor*. If so, did the State address its failure through the steps required by the Protective Order? <u>Have the underlying confidential documents or other confidential information been provided to the *Nwauzor* plaintiffs **or other plaintiffs in detainee cases against GEO**</u>? Only the State can answer these questions.

Wright Decl. at Ex. C (GEO's Motion for Reconsideration of Order Compelling Discovery of its Confidential Financial Information, Dkt. 142, *Washington v. GEO*, at 4) (emphasis added).

An expert cannot use an expert report from another case—a case in which the other party plays no role—and yet refuse to supply the data underlying that other report. Nor can

4

GEO funnel data to its rebuttal expert and refuse to produce that data to Plaintiffs. The most perverse aspect of this situation is that Nickerson relied on (and Morones reviewed) GEO's data, which has been denied Plaintiffs in this case based on GEO's assertion of its confidentiality rights under a protective order in *Washington v. GEO*. GEO had every right and opportunity to provide the data underlying the Nickerson Report. The data is GEO's. But it chose not to share that data—even after its expert invoked the Nickerson Report in this action and even after Morones admitted to having accessed to and reviewed the data. Rule 26(a)(2)(B)(ii) is intended to prevent precisely this type of discovery abuse. *See In re Google Adwords Litig.*, 2010 WL 5185738, at *3 (N.D. Cal. Dec. 8, 2010). Indeed, Morones herself admits it is unfair to expect Plaintiffs' expert to rely on data he cannot access. Morones Dep. at 197:20-198:9; 203:9-23. GEO's refusal to comply with Rule 26 has prejudiced Plaintiffs by limiting them from conducting meaningful expert discovery in preparation for their motion for summary judgment and for trial. Under these circumstances, exclusion of Morones' rebuttal report and testimony is the only appropriate sanction to prevent undue prejudice to Plaintiffs.

**B.      Morones' Opinions Do Not Pass Muster Under *Daubert*.**

Morones' testimony should be excluded for the alternate reason that it does not satisfy the *Daubert* standard. Morones' methodology is unreliable and her conclusions are not relevant to any issue in this case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

**1.      Morones' opinions are not reliable.**

Expert testimony is properly admitted only if it is "the product of reliable principles and methods" and "based on sufficient facts or data." Fed. R. Evid. 702. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

1  Morones' opinions are based on an unblinking reliance on information provided by
2  GEO's counsel, not objective, verified facts or data. Indeed, Morones concedes that <u>she
3  conducted no independent analysis of any evidence or facts at issue</u>. *Id.* at 18:5-19; 30:6-14;
4  31:14-20. *See Building Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144,
5  1154 (9th Cir.2012) (district court did not abuse its discretion in rejecting the declaration of
6  an expert who "offered unsupported assertions" with "no data forming the basis for [the
7  expert's] assumptions or conclusions"); *Roman v. MSL Capital, LLC*, 2019 WL 1449499, at
8  *4 (C.D. Cal. Mar. 29, 2019) (Bernal, J.) (excluding expert who "does not state steps he took
9  to analyze the facts of this case, but instead simply states a conclusion"); *Linares v. Crown
10 Equip. Corp.*, 2017 WL 10403454, at *12 (C.D. Cal. Sept. 13, 2017) (Bernal, J.) (finding an
11 expert's opinions unreliable where he "merely parrots the opinions of others" and failed to
12 conduct an independent evaluation of that evidence).

13 For instance, Morones criticizes Childers for using data from the Bureau of Labor and
14 Statistics ("BLS") to calculate the wages GEO pays its non-detainee employees. According
15 to Morones, GEO should or would pay its non-detainee employees the wages reflected in
16 the Department of Labor's 2014 wage determination schedule, which are lower than the BLS
17 wages. Morones Report at ¶ 56. But the only basis for Morones' conclusion is the say-so of
18 GEO's counsel. *Id.* at n.58; *see also* Morones Dep. at 93:4-19; 101:9-14. Morones undertook
19 no effort whatsoever to determine what GEO <u>actually</u> pays its non-detainee employees. *Id.*
20 at 92:11-15 (Q: "Even though you were on the phone with [GEO's counsel] talking to them
21 about this, and they were saying, 'Use this as a proxy,' you didn't say, "Well, what do they
22 actually pay,' right?" A: "I did not ask."); *id.* at 101:9-14 (Q: "But instead of asking your client,
23 GEO, what that number was, you accepted the representation from the lawyers and referred
24 to this 2014 schedule as the best assumption, right?" A: "Yes, I accepted the assumption that
25 this is what GEO would pay."); *id.* at 102:25-103:2 ("I don't know if GEO is compliant with
26 the wage determination schedule.").

Even worse, GEO's own documents—including those provided by GEO to Morones—demonstrate that the company actually <u>does</u> pay non-detainee employees higher wages than those reflected in the wage determination schedule upon which Morones blindly relies. *Id.* at 110:24-111:23; 117:3-4; 120:21-121:2 (admitting the rates in GEO's records "were higher than I assumed in determining the wage determination schedules"). But, again, Morones undertook no effort to reconcile the <u>actual</u> wage rates with the narrative GEO sought to advance. *Id.* at 115:6-11. Without confirming its validity, she simply accepted counsel's demonstrably incorrect instruction to form her opinions.

Similarly, Morones also asserts that Childers' shift length calculations should account for detainee workers' meal breaks. But Morones admits she undertook no effort to ascertain whether, in fact, any detainee workers at Adelanto actually get meal breaks. *Id.* at 128:4-7; 128:18-19 ("GEO would be the source of information about whether detainees get breaks."); 128:12-14 ("I did not ask anyone at GEO."); *id.* at 130:23-25; *id.* at 244:18-245:22. GEO's counsel told her it was true, so she repeated it in her report.

Morones asserts that Bland should have considered Nickerson's opinions in calculating shift lengths fails from the get-go.[2] Morones Report at ¶¶ 25-31. Even if GEO had disclosed those materials, Morones concedes that Nickerson "doesn't say anything about shift lengths <u>at Adelanto</u>." *Id.* at 135:17-18. And she took no steps to determine whether the apparent shift lengths at Northwest Detention Center are analogous to those at Adelanto. *Id.* at 136:1-7 ("I didn't do anything specifically in addition to my general knowledge of the Washington case and reviewing the materials in that case."); *id.* at 140:12-141:6 (admitting no ability to compare kitchen or laundry staffing, average shift lengths, or even the number of pods or chow halls at the two facilities). The only thing Morones knows about the comparison of work is that two facilities differ in size—Adelanto is larger—and that they require a different number of detainee workers. *Id.* at 136:25-137:13.

---

[2] For the reasons discussed above, Morones' assertion that Bland should have considered Nickerson's opinions in calculating shift lengths fails from the start, since GEO has refused to produce the Nickerson Materials to Plaintiffs.

Morones admits that her opinions regarding shift lengths at Adelanto and Northwest Detention Center is **based on speculation, not fact or data**. *Id.* at 190:18-24 (Q: "So any suggestion that Adelanto shift lengths and Northwest Detention Center shift lengths is based on speculation because you have no data to show that they are, in fact, related to each other, correct?" A: "Yes, that's correct."); *id.* at 192:12-193:1; *id.* at 270:22-271:12; *id.* at 284:25-285:4; *id.* at 302:7-15; *id.* at 303:7-10. Similarly, Morones concedes that her other opinions on this issue too are based, not on fact or data, but on the say-so of GEO's counsel. *See id.* at 208:25-209:9.

Courts routinely exclude opinion testimony where, such as here, a proposed expert merely parrots the opinions of others. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556-57 (C.D. Cal. 2014) ("An expert's sole or primary reliance on the opinions of other experts raises serious reliability questions."); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 545-47 (C.D. Cal. 2012) (finding an expert's opinions unreliable where the testifying expert copied "almost verbatim" the opinions of a non-testifying expert and failed to conduct "independent testing"); *In re Imperial Credit Indus., Inc. Securities Litig.*, 252 F.Supp.2d 1005, 1012 (C.D. Cal. 2003) ("The rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation"); *see also Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 275 (E.D. La. 2014) (finding an expert's opinions unreliable where the expert "merely parroted the opinions and conclusions of other experts whose testimony is shielded from cross examination"). Morones' testimony should be stricken for failure to satisfy the reliability requirement of Fed. R. Evid. 702.

**2.     Morones' opinions are not relevant to the task at hand because they do not pertain to any issues to be determined by the jury.**

Rule 702(a) requires that, before an expert may testify, the would-be expert's training and/or expertise "will help the trier of fact to understand the evidence or to determine a fact in issue." To that end, expert testimony must be "relevant to the task at hand." *Daubert II*, 43 F.3d at 1315 (quoting *Daubert*, 509 U.S. at 597). "Relevant evidence, of course, is evidence

that helps the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (citation omitted). In other words, there must be a proper "'fit' between the testimony and an issue in the case," *Daubert II*, 43 F.3d at 1320. There is no "fit" between Morones' proposed testimony and any issues in this case.

At the outset, Morones does not challenge the vast majority of the conclusions, assumptions, and methodologies of Childers or Bland. *See, e.g.*, Morones Dep. at 78:8-79 (agreeing with Childers that each dollar paid by GEO represents a day of detainee labor); 81:13-14 (no criticisms of Childers for relying on Bland's data); 81:20-82:3 (agreeing with Childers that employees and detainees would require the same amount of time to complete the same tasks); 82:22-83:11 (agreeing with Childers' categorization of detainee workers); 121:16-18 (no criticism of Childers' approach to calculating the but-for cost of using subcontracted employees); 125:11-16 (agreeing it is appropriate to include the cost of overhead and the profit margin in the but-for cost of using subcontracted employees); 161:24-162:5 (agreeing with Bland that each dollar paid by GEO represents a day of detainee labor); 162:19-23 (agreeing with Bland's categorization of detainee workers); 162:25-163:4 (agreeing with Bland's use of a weighted average with respect to job types outside the four main categorizations); 168:15-25 (agreeing with Bland's approach to calculating the total number of hours worked by detainees per month); 170:3-7 (agreeing with Bland's formula, calculation, and methodology for measuring the total hours worked by the detainee population); 170:17-171:8 (agreeing with Bland that job type mixture and shift length are necessary to the calculation).

Instead, Morones criticizes what Bland and Childers "<u>may have</u>" done or whether the evidence supports assumptions the two experts made. For instance, Morones seeks to testify that the detainee payroll sheets used by Bland to calculate shift lengths "<u>may not</u>" be representative of job types during the entire class period. Morones Report at ¶ 32 (emphasis added). But Morones does not know the answer, because she did not undertake any analysis of that data—or any other—at all. *Id.* at ¶ 33; Morones Dep. at 133:2-19; 207:22-208:8;

208:25-210:11. Similarly, Morones opines that GEO's detainee shift schedules "<u>may not</u>" be representative of actual hours worked. *Id.* at ¶ 26. Again, Morones does not know because she did not attempt to find out. Indeed, Morones has no factual or evidentiary basis to challenge Plaintiffs' experts, because <u>she undertook no independent evaluation of any facts or evidence at all</u>.[3] Similarly, throughout her report, Morones questions whether the other experts' assumptions are properly supported. But (unless counsel spoon-fed her a contrary assumption) she fails to conclude these assumptions are inaccurate or wrong. She just asks the question without answering anything.[4]

Morones is not an expert of weighing evidence or determining whether assumptions are properly supported. Those tasks are squarely within the provenance of the Court, then the jury. But that is exactly what she seeks to do. Morones seeks to opine as an expert on what "may" be true, what "may have" occurred, and why others "might" be wrong. She has no basis in fact or data for her conclusions. And her testimony, which asks questions but offers no information, will not assist the jury in determining any facts at issue. "[T]here is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. Morones' testimony should be excluded.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike GEO's rebuttal expert disclosure and prohibit GEO from calling Serena Morones to testify as an expert witness.

---

[3] Morones identified two mathematical errors in Plaintiffs' expert reports. Both mathematical errors have been corrected. *See* Morones Dep. at 173:2-5 (agreeing there are no mathematical errors in Bland's Amended Report).

[4] And her stance is all the more untenable when her client—GEO—has the data and information that would confirm her surmise. But she contended herself with asking questions and not providing answers.

Dated: October 16, 2020

*/s/ Lydia A. Wright*

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (CA Bar # 321366)
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

*Class Counsel*

# CERTIFICATE OF SERVICE

I, Lydia A. Wright, electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated: October 16, 2020

*/s/ Lydia Wright*
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765