# EXHIBIT A



Raul Novoa, Jaime Campos Fuentes, Abdiaziz Karim, and Ramon Mancia, individually and on behalf of all others similarly situated, v. The GEO Group, Inc., US District Court, District of California
Civil Action No. 5:17-cv-02514-JGBSHKx

Rebuttal Expert Report of Serena Morones, CPA, ASA, ABV, CFE

August 31, 2020

CONTAINS INFORMATION MARKED CONFIDENTIAL:  SUBJECT TO PROTECTIVE ORDER

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

## *Table of Contents*

*I.*   *Description of Assignment* ........................................................................ 1

*II.*   *Expert Qualifications* ............................................................................... 2

*III.*   *Information Considered* ........................................................................... 2

*IV.*   *Introduction of Parties* ........................................................................... 2

   **A.   Plaintiff Class Members** ................................................................ 2

   **B.   The GEO Group, Inc.** ..................................................................... 3

      1.   The GEO Group Inc. Background ............................................... 3
      2.   Adelanto ICE Processing Center ................................................ 4
      3.   Voluntary Work Program ............................................................. 4
      4.   Sanitation Policy ......................................................................... 5

*V.*   *Evaluation of Opinions of Jody Bland* .............................................. 5

   **A.   Summary of Bland Opinions** ........................................................ 5

   **B.   Response to Bland Opinions** ........................................................ 6

      1.   Lack of Sufficient Calculation Details ........................................ 6
      2.   Inadequate Support for Shift Length Assumptions .................... 8
      3.   Inadequate Support for Job Mixture Assumptions ................... 10
      4.   Incorrect Recreation and Kitchen Services Assumptions ........ 12

**VI.**   **Evaluation of Opinions of Michael Childers** ................................ 14

   **A.   Summary of Childers Opinions** .................................................. 14

   **B.   Response to Childers Opinions** ................................................. 16

      1.   Inadequate Support for Hours .................................................. 16
      2.   Inaccurate 2011 Hours ............................................................. 16
      3.   Inaccurate Subcontractor Scenario Calculation ...................... 17
      4.   Inaccurate Employee Scenario Wage & Benefits Rates .......... 18

**VII.**   **Conclusion** .............................................................................................. 19

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

## Raul Novoa et al v. The GEO Group, Inc

### I.    Description of Assignment

1.   Counsel for The GEO Group, Inc. ("The GEO Group") engaged me and my firm to review and evaluate the reasonableness and adequacy of support for the opinions reached by the Plaintiff's experts, Jody Bland and Michael Childers, PH.D., related to the above-referenced matter ("the Novoa Matter").  Jody Bland's opinions are documented in his expert report dated August 17, 2020 (the "Bland Report"). Michael Childers' opinions are documented in his expert report dated Jul 17, 2020 (the "Childers Report").  I have completed my analysis and set out my findings in the remainder of this report.

2.   I understand that the Novoa Matter involves wage claims and unjust enrichment claims by two classes of plaintiffs who were detained at the Adelanto ICE Processing Center (the "Adelanto Facility"). The claims under the federal Trafficking Victims Protection Act and the California Trafficking Victims Protection Act are made by a class of plaintiffs who were detained at the Adelanto Facility between May 1, 2011 and the present (the "Forced Labor Class").[1]  The claims under the California Labor Code are made by a class of plaintiffs who were detained between December 19, 2014 and the present (the "Wage Class").[2]  A third class of plaintiffs including a subset of detainees at all detention facilities operated by The GEO Group was not included in the Bland Report or the Childers Report.

3.   I take no position on the likelihood that the classes will prevail on their claims.  My opinions will address the monetary relief that the plaintiffs could recover if they were to prevail on their claims.  I reserve the right to express additional opinions if additional information is produced subsequent to my report, including expert reports and deposition testimony.

---

[1] Third Amended Complaint for Declaratory and Injunctive Relief and Damages, dated September 16,2019, ¶ 178

[2] Third Amended Complaint for Declaratory and Injunctive Relief and Damages, dated September 16,2019, ¶ 174

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

## II.    Expert Qualifications

4.    I am the owner of Morones Analytics, LLC, a Portland, Oregon based firm specializing in damage analysis for litigation and business valuation.  I have more than 30 years of accounting experience, including 24 years specializing in analyzing commercial damages, conducting forensic accounting investigations and performing business valuations. I have been qualified as an expert in damage assessment matters in federal and state courts, as well as arbitrations in several states.

5.    I graduated from the University of Oregon with a Bachelor of Arts in Accounting and earned a Master of Taxation degree from Portland State University.

6.    I am a Certified Public Accountant, licensed in Oregon.  I have earned two professional designations in business valuation: the Accredited Senior Appraiser (ASA) designation from the American Society of Appraisers and the Accredited in Business Valuation (ABV) credential from the American Institute of Certified Public Accountants. I am also a Certified Fraud Examiner. I hold membership in the Association of Certified Fraud Examiners, the American Institute of CPAs, the Oregon Society of CPAs, and the American Society of Appraisers and the Licensing Executives Society.  My curriculum vitae is attached to this report as **Attachment A**.

7.    Although all opinions expressed in this report are my own, several associates of my firm assisted with this analysis under my supervision.

## III.    Information Considered

8.    Information and documents that were considered in this analysis are listed at **Attachment B** to this report.

## IV.    Introduction of Parties

### A.  Plaintiff Class Members

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

9.  The Wage Class includes "all civilly detained immigrants who (i) were detained at the Adelanto ICE Processing Center any time between December 19, 2014 and the date of final judgement in this matter, and either (ii) participated in the Voluntary Work Program at any point during their detention, or (iii) performed work for no compensation in the Uncompensated Work Program pending their participation in the Voluntary Work Program, or (iv) performed work for no compensation pursuant to the Adelanto Housing Unit Sanitation Policy[.]"[3]

10. The Forced Labor Class includes "all civilly detained immigrants who (i) were detained at the Adelanto ICE Processing Center any time between May 1, 2011 and the date of final judgment in this matter, and (ii) participated in the Work Program or Uncompensated Work Program at any point during their detention."[4]

   **B.  The GEO Group, Inc.**

      **1.  The GEO Group Inc. Background**

11. According to its 2019 Annual Report, The GEO Group, headquartered in Boca Raton, Florida, is a corporation specializing in the ownership, leasing and management of secure re-entry facilities and processing centers in the United States and other countries.[5] The GEO Group owns, leases and operates a broad range of secure facilities and processing centers, as well as community based re-entry facilities. [6]

---

[3] Third Amended Complaint for Declaratory and Injunctive Relief and Damages, dated September 16,2019, ¶ 174

[4] Third Amended Complaint for Declaratory and Injunctive Relief and Damages, dated September 16,2019, ¶ 178

[5] The GEO Group, Inc. Annual Report for the fiscal year ended December 31, 2019 at page 24 and 139.

[6] The GEO Group, Inc. Annual Report for the fiscal year ended December 31, 2019 at page 24.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

12. The GEO Group performs services to provide housing and care of incarcerated individuals.[7] These include 24-hour care and supervision, and services such as medical, transportation, food service, laundry services and various programming activities.[8]

13. As of December 31, 2019, The GEO Group managed and/or owned 129 correctional, detention and community-based facilities housing approximately 95,000 beds.[9]

## 2.   Adelanto ICE Processing Center

14. The Adelanto Facility, located in Adelanto, California is owned by The GEO Group and has a current capacity of 1,940 occupants.[10]   The GEO Group entered into a contract with U.S. Immigration & Customs Enforcement ("ICE") regarding use of the Adelanto Facility on May 27, 2011, and ICE has become the facilities primary customer.[11, 12]

## 3.   Voluntary Work Program

15.  The GEO Group manages a Voluntary Work Program ("VWP") at the Adelanto Facility in accordance with the Performance Based National Detention Standards ("PBNDS"), which may include work or program assignments for janitorial, food service, laundry, barber, or maintenance duties.[13, 14]

16. According to ICE, the Voluntary Work Program, as defined in the PBNDS, "provides detainees opportunities to work and earn money while confined[.]"[15]  The expected outcomes of the VWP include reducing the "negative impact of confinement… through decreased

---

[7] The GEO Group, Inc. Annual Report for the fiscal year ended December 31, 2019 at page 26.

[8] The GEO Group, Inc. Annual Report for the fiscal year ended December 31, 2019 at page 26.

[9] The GEO Group, Inc. Annual Report for the fiscal year ended December 31, 2019 at page 45.

[10] The GEO Group, Inc. Form 10-K for the fiscal year ended December 31, 2019 at page 10.

[11] The GEO Group, Inc. webpage *"Facility Detail"*, as viewed on August 28th, 2020.
https://www.geogroup.com/FacilityDetail/FacilityID/24

[12] The GEO Group, Inc. Form 10-K for the fiscal year ended December 31, 2019 at page 10.

[13] Adelanto ICE Processing Center Policy and Procedure Manual, GEO_Novoa_00000221 - GEO_Novoa_00000223.

[14] Performance Based National Detention Standards, Section 5.8 "Voluntary Work Program", GEO-Novoa_00015461.

[15] Performance Based National Detention Standards, Section 5.8 "Voluntary Work Program", GEO-Novoa_00015461.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

idleness, improved morale, fewer disciplinary incidents" and enhancement of "essential operations and services… through detainee productivity." [16]

### 4.  Sanitation Policy

17. In accordance with the PBNDS, Adelanto Facility's Policy and Procedures Manual notes that detainees are not required to work, except to "maintain their immediate living areas in a neat and orderly manner."[17]  According to the PBNDS, " all detainees are responsible for personal housekeeping."[18]

## V.  *Evaluation of Opinions of Jody Bland*

### A.  Summary of Bland Opinions

18. In his expert report dated August 17, 2020, Mr. Bland provides two measures of damages for each plaintiff class.   The first measure of damages is based on California Minimum Wage rates, and the second is based on the wages and benefits provided in Service Contract Act ("SCA") Wage Determination schedules.   Mr. Bland's opinions are summarized in Table 1 in the Bland Report and excerpted in the table below.[19]

**Bland Summary of Damages**

| Wage Benchmark | Wage Class | Forced Labor Class |
|---|---|---|
| California Minimum Wage Approach | $16,099,000 | $20,748,000 |
| SCA Wage Approach | $24,288,000 | $32,366,000 |

19. Mr. Bland makes the following key assumptions in his calculation:

- Mr. Bland assumes that each dollar paid to detainees represents one day worked by a detainee.[20]

---

[16] Performance Based National Detention Standards, Section 5.8 "Voluntary Work Program", GEO-Novoa_00015461.

[17] Adelanto ICE Processing Center Policy and Procedure Manual, GEO-Novoa_00000222.

[18] Performance Based National Detention Standards, Section 5.8 "Voluntary Work Program", GEO-Novoa_00015462.

[19] Expert Report of Jody Bland dated August 17, 2020, page 6.

[20] Expert Report of Jody Bland dated August 17, 2020, ¶ 28.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

- Mr. Bland relies on a variety of sources, including daily activity schedules, to determine shift lengths and job types.[21]   Mr. Bland identifies four primary categories of job types: Custodial Services, Kitchen Services, Laundry and Recreation.[22]  For job types that do not correspond to his four primary categories, Mr. Bland calculates a weighted average shift length.[23]

- Mr. Bland relies on detainee sign-in sheets for November 1, 2017 through January 18, 2018, a period of 11 weeks, to estimate the mixture of job types.[24]

- Mr. Bland uses the detainee payments, job type mixtures and assumed shift lengths to estimate the total number of hours worked by detainees for each month.[25]  He then multiplies the hours by the California minimum wage rate or the SCA wage and benefits rate and subtracts the detainee payments to arrive at lost wages for each class.[26]

### B. Response to Bland Opinions

20.  Based on my review of the Bland Report, I find that that Mr. Bland's opinions are based on several assumptions that are not adequately supported, and minor changes to his assumptions have a significant impact on his conclusions.

### 1.  Lack of Sufficient Calculation Details

21.  Mr. Bland does not provide sufficient detail to support his calculations.   Using the assumptions and methodology described by Mr. Bland, I can recalculate two of his four

---

[21] Expert Report of Jody Bland dated August 17, 2020, ¶ 31.

[22] Expert Report of Jody Bland dated August 17, 2020, Table 3.

[23] Expert Report of Jody Bland dated August 17, 2020, page 16, footnote 38.

[24] Expert Report of Jody Bland dated August 17, 2020, ¶ 33.

[25] Expert Report of Jody Bland dated August 17, 2020, Exhibits 3a and 3b.

[26] Expert Report of Jody Bland dated August 17, 2020, ¶ 37-38.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

measures of damages to within 1% of the figures shown in Table 1 of the Bland Report.[27] However, I am unable to recalculate the damages shown in Table 1 of the Bland Report under his California Minimum Wage Approach for the Forced Labor Class or the damages under his SCA Wage Approach for the Minimum Wage Class due to the lack of support provided by Mr. Bland.

22. Using the assumptions and methodology described by Mr. Bland for his California Minimum Wage Approach and the Forced Labor Class, I recalculate a damages calculation of approximately $19,896,000, which is $852,000 lower than the corresponding measure of damages shown in Table 1 of the Bland Report.[28] This variance is within 2.3% of the total amount paid to detainees during the forced Labor Class Period as shown in the table below.

### Comparison of Damage Recalculation Variance to Payments

|  | Forced Labor Class |  |
|---|---|---|
| Recalculated CA Minimum Wages Due | $20,768,464 | |
| Less: Payments to Detainees | (872,630) | |
| CA Minimum Wage Scenario Damages | $19,895,834 | |
| Corresponding Damages per Bland Report | 20,748,000 | |
| Damages Variance | 852,166 | A |
| Payments to Detainees | 872,630 | B |
| Variance (B - A) | 20,464 | C |
| Variance as a percent of payments (C / B) | 2.3% | |

23. Based on the above analysis, Mr. Bland may have failed to reduce his damages for the actual amounts paid to detainees. However, due to the lack of sufficient detail to support Mr. Bland's calculation, I cannot conclusively determine whether he appropriately reduces his damage conclusion by the amounts paid to detainees as described in his report.[29]

---

[27] Schedule 1 to this report.

[28] See Schedule 1 to this report.

[29] Expert Report of Jody Bland dated August 17, 2020, ¶ 39.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

24. In sections two through four below, I only evaluate the impact of assumption changes on the two measures of damages that I can replicate to within 1% of Mr. Bland's damage figures. These two measures represent the lowest and highest measures of damages in the Bland Report.

## 2.   Inadequate Support for Shift Length Assumptions

25. Based on my review of the documents referenced in Exhibit 1 of the Bland Report, Mr. Bland relies on daily activity schedules, chronological routine events, security post orders, informal memos and email communications to determine the median shift length for each job type. These items list beginning and end times for detainees' activities, including when workers are transferred between locations.

26. Mr. Bland assumes the schedules represent actual hours worked. For example, to support the shift length of kitchen workers, Mr. Bland references a schedule from a security post order which notes that the listed times are a guide, subject to change, and that end of shift times may vary.[30]   The published schedules may not be representative of actual hours worked.

27. Mr. Bland assumes certain events correspond to the start and end time of a job.  For example, to support the shift length of laundry workers, Mr. Bland references the activity  "Laundry Pick-up" and the activity "Shoe & Clothing passed out to housing units" as support for the shift start and shift end times.[31]   Mr. Bland thus assumes that all laundry workers, begin their work when laundry is picked up and continue working until laundry is returned. Mr. Bland does not consider that the delivery of clean laundry could take place long after the cleaning work is complete.

---

[30] Security Post Orders: Food Service Officer, GEO-Novoa_00001508.

[31] GEO-Novoa_00005201 - GEO-Novoa_00005203, GEO-Novoa_00005209 - GEO-Novoa_00005211, GEO-Novoa_00005301 - GEO-Novoa_00005303, GEO-Novoa_00005304 - GEO-Novoa_00005306, GEO-Novoa_00005307 - GEO-Novoa_00005309, GEO-Novoa_00005505 - GEO-Novoa_00005507.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

28. Additionally, Mr. Bland only references sources from two days in March 2018 and one source with no documented date to conclude on kitchen worker shift lengths, and he does not evaluate the appropriateness of using this estimate across the entirety of both damage periods of either four or eight years.[32]   The activity during two days of March 2018 may not be representative of actual shift lengths throughout the damage periods.

### a. Alternative Shift Length Assumptions

29. The case State of Washington v. The GEO Group, Inc., US District Court, Western District of Washington, Case NO. 3:17-cv-05806-RJB (the "State of Washington Matter") involves wage claims made by a class of detainees at The GEO Group's Northwest Detention Center.[33]   Like the Adelanto Facility, the Northwest Detention Center houses detainees for ICE and operates a VWP in accordance with the PBNDS.[34]   Due to the similarities between the Novoa Matter and the State of Washington Matter, the plaintiff expert report on lost wages in the Washington Matter offers a useful comparison to the Bland Report.

30. Peter H. Nickerson, PhD. opines on lost wages in the State of Washington Matter in his expert report dated September 20, 2018 (the "Nickerson Report"). The Nickerson Report notes four job types: Janitor, Kitchen, Laundry, and Barber.[35]   Dr. Nickerson uses worker counts by job type and hours for each job type to calculate a weighted average of 1.72 hours worked for each detainee shift.[36]   The weighted average shift length based on the assumptions used by Mr. Bland is 38% higher than the weighted average shift length use in the Nickerson Report as illustrated in the table below.

---

[32] Geo-Novoa_00000668; Geo-Novoa_00000670; Geo-Novoa_00000706; GEO-Novoa_00000705.

[33] State of Washington v. The GEO Group, Inc., Complaint dated September 20, 2017, section 1.4.

[34] State of Washington v. The GEO Group, Inc., Complaint dated September 20, 2017, sections 4.2 through 4.4.

[35] Expert Report of Peter H. Nickerson, PH.D. dated September 20, 2018, section V.1.

[36] Expert Report of Peter H. Nickerson, PH.D. dated September 20, 2018, appendix C1.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

### Comparison of Shift Lengths

| Job Type | Percent of Total Shifts | Shift Length |
|---|---|---|
| Custodial Services | 62.6% | 1.50 |
| Kitchen Services | 14.1% | 5.00 |
| Laundry | 1.7% | 2.50 |
| Recreation | 5.8% | 2.50 |
| Multiple | 13.4% | 3.67 |
| Other | 2.5% | 2.17 |

| | | |
|---|---|---|
| Weighted Average Shift Length per Bland Report Assumptions | 2.38 | A |
| Weighted Average Shift Length per Nickerson Report | 1.72 | B |
| Variance in Shift Lenghts (A - B) | 0.66 | C |
| Increase over Nickerson Report (C / B) | 38% | |

31. I do not assert that the weighted average hours per shift used by Dr. Nickerson in the State of Washington Matter are accurate for use in calculating lost wages the Novoa Matter. However, given the limitations of the support for Mr. Bland's shift length assumptions, using the house per shift from the Nickerson Report is useful to illustrate the sensitivity of Mr. Bland's calculation to alternative assumptions. Using 1.72 hours as the weighted average shift length yields a calculation of damages approximately $4,653,000 lower than Mr. Bland's corresponding damage calculation as shown at Schedule 2 and summarized below.[37]

### CA Minimum Wage Approach with Alternative Shift Length Assumptions

| | Wage Class |
|---|---|
| Minimum Wages Due | $12,111,862 |
| Less: Payments Made | (665,398) |
| Damages with Alternative Assumptions | $11,446,464 |
| Damages per Bland Report | 16,099,000 |
| Impact of Alternative Shift Length Assumptions | ($4,652,536) |

## 3.   Inadequate Support for Job Mixture Assumptions

---

[37] I am unable to calculate the impact of using 1.72 hours per shift under Mr. Bland's SCA Wage Approach, which would require categorizing sign-in sheet data consistent with Dr. Nickerson's job types, due to the volume and format of sign-in sheet data and the limited time between the issuance of the Bland Report and the deadline for rebuttal reports.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

32. Mr. Bland relies on sign-in sheet data from a consecutive period of 78 days to determine the mixture of job types.[38]  The sign-in sheets during the period from November 1, 2017 to January 18, 2018 may not be representative of the mixture of job types during the nearly four year damage period for the Wage Class or the eight year damage period for the Forced Labor Class.

33. Due to the volume of sign-in sheets received and the format of the records, I have not yet evaluated the accuracy of the job mixture summary shown in Table 4 of the Bland Report.  I reserve the right to express additional opinions after analyzing the full set of sign-in sheet data.

34. Mr. Bland asserts that there is a "general consistency in the mix of shifts by job responsibility (as a percent of the total shifts worked) on a monthly basis."[39]  However, according to my analysis the differences between the periods summarized in Table 4 of the Bland Report are not in fact consistent.

### a. Alternative Job Mixture Assumptions

35. In order to calculate the significance of the variance between the periods summarized in Table 4 of the Bland Report, and to demonstrate the sensitivity of Mr. Bland's analysis, I use the job type mixture from the "January-18" column of the Bland Report for the full damage period for each class.[40]  This change yields damage calculations approximately $506,000 and $1,107,000 lower than the corresponding damage conclusions reached by Mr. Bland, as shown at Schedule 3 and summarized in the tables below.

---

[38] Expert Report of Jody Bland dated August 17, 2020, ¶ 34.

[39] Expert Report of Jody Bland dated August 17, 2020, ¶ 35.

[40] Expert Report of Jody Bland dated August 17, 2020, Table 4.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

**CA Minimum Wage Approach with Alternative Job Mixture Assumptions**

|  | Wage Class |
|---|---|
| Minimum Wages Due | $16,258,153 |
| Less: Payments Made | (665,398) |
| Damages with Alternative Assumptions | $15,592,755 |
| Damages per Bland Report | 16,099,000 |
| Impact of Alternative Job Mixture Assumptions | ($506,245) |

**SCA Wage Approach with Alternative Job Mixture Assumptions**

|  | Forced Labor Class |
|---|---|
| Wages Due | $32,232,035 |
| Less: Payments Made | (872,630) |
| Damages with Alternative Assumptions | $31,359,405 |
| Damages per Bland Report | 32,366,000 |
| Impact of Alternative Job Mixture Assumptions | ($1,006,595) |

## 4. Incorrect Recreation and Kitchen Services Assumptions

### a. Recreation Assumptions

36. Mr. Bland categorizes some shifts under the Recreation job type and assumes that a Recreation Specialist listed in the SCA Wage Determination schedules is a Representative Job Function.[41]  However, I understand that detainees working shifts described on sign-in sheets as Recreation perform the duties of a Recreation Sanitation Worker, which has a job description corresponding with the duties of other positions classified as Custodial Services.[42, 43]

---

[41] Expert Report of Jody Bland dated August 17, 2020, Exhibit 4.

[42] Relevance of the Recreation Sanitation Worker job description to the Recreation shifts is based on my August 27th, 2020 conversation with the Geo Group's counsel and the absence of support for duties that could be described as those of to a Recreation Specialist.

[43] GEO-Novoa_0000792

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

37. For the Custodial Services job type, Mr. Bland uses Janitor and Maid or Houseman as representative job functions from the SCA Wage Determination schedules.[44]  Janitors and Maids or Housemen are paid at a much lower rates than Recreation Specialists.[45]

38. Additionally, Mr. Bland refers to documents that show the opening and closing of the law library and recreation yard as support for the shift length for the Recreation job type.[46]  Using the hours of the law library and recreation yard as a proxy for shift length may have been a reasonable assumption if the detainees were acting as Recreation Specialist overseeing other detainee's activities, but the detainees cleaning the law library and recreation yard hours would not need to be present for others to access those facilities.  It is more accurate to assume that the shift lengths for the Recreation job type correspond to other shifts classified Custodial Services, for which Mr. Bland assumes a shift length of 1.5 hours.[47]

**b. Kitchen Services Assumptions**

39. Mr. Bland's assumption for the Kitchen Services shift length does not account for the detainee's scheduled mealtime during their work shift.  The kitchen worker rules and regulation and a food service production supervisor communication regarding "kitchen staff and their lunches" both note that detainees working in the kitchen are entitled to eat a meal during their shift, and Mr. Bland fails to adjust his assumptions for this break.[48]

**c. Impact of Revised Recreation and Kitchen Services Assumptions**

40. To calculate the impact of revised Recreation and Kitchen Services assumptions, I revised the SCA wage and benefits rates and the shift length for the Recreation job type to those used

---

[44] Expert Report of Jody Bland dated August 17, 2020, Exhibit 4.

[45] Expert Report of Jody Bland dated August 17, 2020, Exhibit 4.

[46] Based on my review of the documents listed in Exhibit 4 of the Expert Report by Jody Bland dated August 17, 2020.

[47] Expert Report of Jody Bland dated August 17, 2020, Table 3.

[48] GEO-Novoa_00000118; GEO-Novoa 00001227.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

by Mr. Bland for the Custodial Services job type, and I revised the hours per shift for the Kitchen Services job type to exclude a 25 minute meal break.[49]

41. Excluding any other possible adjustments, revising the shift length and wage and benefits rates for the Recreation Job type and revising the Kitchen Services shift length yields damage calculations approximately $1,009,000 and $2,863,000 lower than Mr. Bland's corresponding damage calculations as shown at Schedule 4 and summarized in the tables below.

**CA Minimum Wage Approach with Revised Recreation and Kitchen Assumptions**

|  | Wage Class |
|---|---|
| Minimum Wages Due | $15,755,568 |
| Less: Payments Made | (665,398) |
| Damages with Revised Assumptions | $15,090,170 |
| Damages per Bland Report | 16,099,000 |
| Impact of Revised Assumptions | ($1,008,830) |

**SCA Wage Approach with Revised Recreation and Kitchen Assumptions**

|  | Forced Labor Class |
|---|---|
| Wages Due | $30,375,441 |
| Less: Payments Made | (872,630) |
| Damages with Revised Assumptions | $29,502,811 |
| Damages per Bland Report | 32,366,000 |
| Impact of Revised Assumptions | ($2,863,189) |

42. Based on the limited timeframes used by Mr. Bland in developing his assumptions regarding job mixture, the limited sources used in developing assumptions regarding shift lengths, and the sensitivity of his calculation to revisions in those assumptions, I find that Mr. Bland's opinions are not adequately supported.

## VI.   Evaluation of Opinions of Michael Childers

### A.  Summary of Childers Opinions

---

[49] Martin Exhibit 166, p. 247 and 256.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

43. In his expert report dated July 17, 2020, Dr. Childers provides two measures of unjust enrichment. Dr. Childers' first measure is based on the cost of using employees in place of detainee labor, and his second measure is based on the cost of subcontracted employees in place of detainee labor as shown in Table 4 and Table 5 of the Childers Report and summarized in the excerpt below.

**Summary of Childers' Conclusions**

|  | Employees Scenario | Subcontractor Scenario |
|---|---|---|
| But-for Cost to The GEO Group | $27,581,630 | $20,334,440 |
| Less: Amount paid to Detainees | (846,582) | (846,582) |
| Extra Profits Realized by The GEO Group | $26,735,048 | $19,487,858 |

44. Dr. Childers makes the following key assumptions within his report.

- Dr. Childers assumes that each dollar The GEO Group pays to detainees represents one day of participation in the VWP.[50]

- Dr. Childers relies on the Bland Report for his assumptions regarding the number of hours worked by detainees on each day of participation in the VWP.[51]

- Dr. Childers assumes that the employees or subcontractors would have required the same amount of time as detainees performing tasks under the VWP.

- Dr. Childers categorizes the hours worked by detainees into four categories: Janitor, Food Prep, Laundry, and Barber.[52]

- Dr. Childers uses wages and benefits data from the Bureau of Labor and Statistics to determine the but-for costs of hiring employees.[53]

---

[50] Expert Declaration of Professor Michael Childers dated July 17, 2020, ¶ 11.

[51] Expert Declaration of Professor Michael Childers dated July 17, 2020, ¶ 20.

[52] Expert Declaration of Professor Michael Childers dated July 17, 2020, Table 2.

[53] Expert Declaration of Professor Michael Childers dated July 17, 2020, ¶ 20-22.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

- To calculate the but-for costs of using subcontracted employees, Dr. Childers uses California minimum wage rates, increased for workers compensation, unemployment insurance, and Medicare/Social Security withholding.[54]

### B. Response to Childers Opinions

45. Based on my review of the Childers Report, I find that Dr. Childers' opinions are based mathematical errors and assumptions that are inaccurate.

#### 1. Inadequate Support for Hours

46. Dr. Childers relies on Exhibit 3b of the Bland Report for his assumptions regarding the hours worked by detainees in the job categories he identifies.[55]   Therefore, Dr. Childers' assumptions are inadequately supported as described in my response to the opinions of Jody Bland above.

47. Dr. Childers uses the Kitchen hours from Exhibit 3b of the Bland report, and does not consider the impact of the meal break provided to detainees during their Kitchen detail shifts.   As such, Dr. Childers assumptions for kitchen hours are overstated.

#### 2. Inaccurate 2011 Hours

48. Dr. Childers does not provide his calculation of 2011 hours for each job type.  In Exhibit 3 to the Childers Report, hours by job type are shown for each month from September 2011 through November of 2019.  The annual totals of this monthly table agree to Dr. Childers' table summarizing the annual hours by his job categories, except for 2011 and 2019.

49. For 2019, I recalculate Dr. Childers' annual job category totals by extrapolating the January through November 2019 monthly hours over 12 months.

---

[54] Expert Declaration of Professor Michael Childers dated July 17, 2020, ¶ 26.

[55] Dr. Childers references Exhibit 3a to the Bland report in his footnote 7, but he appears to rely on Exhibit 3b to the Bland report.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

50. For 2011, the annual job category totals in Exhibit 3 to the Childers Report are exactly three times higher than the September through December 2011 monthly hours. Mr. Childers may have extrapolated the four months of data over the full year of 2011, despite the damage period beginning in May 2011 for the Forced Labor Class.

51. To estimate actual 2011 hours during the damage period for Dr. Childers' job categories, I calculate the monthly average from October to December 2011 at Schedule 5C, excluding September since the September total was lower than the other months and therefore could be a partial month of data.  I extrapolate this monthly average over the damage period from May to December 2011 for each job category.  I use this revised estimate of 2011 hours in the analyses that follow.

### 3.   Inaccurate Subcontractor Scenario Calculation

52. In his subcontractor scenario, Dr. Childers computes the "lowest legal cost contractor expenses" based on the "California minimum wage, with 10% added for workers compensation, unemployment insurance, and Medicare/Social Security withholding."[56]  Dr. Childers' adjusted minimum wage rates can be multiplied by the total hours for each minimum wage period to determine damages under this scenario because job categories are irrelevant to the minimum wage.

53.  In Exhibit 3, Dr. Childers calculates the total hours by year.  Exhibit 3 to the Childers Report also shows the minimum wage rate for each year and the resulting cost of subcontracted labor, however he does not provide his calculation of the modified rate showing the additional 10% added to the minimum wage.

54. Using the assumptions and methodology described by Dr. Childers for his subcontractor scenario, I multiply the California minimum wage rates, including a 10% premium, by the

---

[56] Expert Declaration of Professor Michael Childers dated July 17, 2020, ¶ 26.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

annual hours, including the revision to the 2011 hours described above, as shown at Schedule 5B.

55. My recalculation results in a damage calculation approximately $3,165,000 lower than Dr. Childers' corresponding damage calculation as shown at Schedule 5 and summarized in the table below.  Based on my analysis, Dr. Childers may have made a mathematical error in his calculation, or he has made an undisclosed assumption.

**Impact of Revised Minimum Wage & Benefits Rates**

|  | Subcontractor Scenario |
|---|---|
| But-for Wages | $17,169,268 |
| Less: Amounts paid to Detainees | (846,582) |
| Extra Profits with Revised Assumptions | $16,322,686 |
| Extra Profits per Childers Table 5 | 19,487,858 |
| **Impact of Revised Rate Assumptions** | **($3,165,172)** |

### 4.   Inaccurate Employee Scenario Wage & Benefits Rates

56. Dr. Childers relies on data from the Bureau of Labor and Statistics to develop his assumptions of wage and benefits rates to calculate the but-for costs of hiring employees in place of detainee labor.[57]  However, I understand that the GEO Group employees' wages and benefits are based on Wage Determination schedules issued by the Department of Labor in accordance with ICE agreements.[58]

57. At Schedule 6B, I calculate the total hourly wage and benefit rates for the Janitor, Food Prep, and Laundry job categories based on the Wage Determination schedules for each ICE contract period.  There was no position in the Wage Determination schedules that correspond to barbers.

---

[57] Expert Declaration of Professor Michael Childers dated July 17, 2020, ¶ 20-22.

[58] My understanding of the GEO Group compensation practices is based on my August 27th 2020 conversation with the GEO Group's counsel and review of the ICE contract amendment at GEO-Novoa_00018147.  The assumption that Wage Determination schedules determine employee wages is consist with the SCA approach in the Bland Report.

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

58. Using the revised rates per the Wage Determination schedules, and the revised 2011 hours as described above, results yields a damage calculation approximately $2,951,000 lower than Dr. Childers' corresponding damage calculation as shown at Schedule 6 and summarized in the table below.

**Impact of Revised Wage & Benefits Rates**

|  | Employee Scenario |
|---|---|
| But-for Wages | $24,630,991 |
| Less: Amounts paid to Detainees | (846,582) |
| Extra Profits with Revised Assumptions | $23,784,409 |
| Extra Profits per Childers Table 4 | 26,735,048 |
| **Impact of Revised Rate Assumptions** | **($2,950,639)** |

59. The analyses above show that Mr. Childers' opinions are based on mathematical errors and assumptions that are inaccurate.

## VII.   Conclusion

60. My opinions may be supplemented or amended upon receipt of additional information.  I may use any of the tables or attached schedules as demonstratives at trial.  I may also utilize any of the documents cited herein as a demonstrative exhibit at trial. I also reserve the right to amend and/or supplement my demonstratives to respond to points or opinions put forth by plaintiff's expert(s).

Yours Sincerely,

*Serena Morones*

Serena Morones, CPA, ASA, ABV, CFE
Morones Analytics, LLC

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

### *Statement of Compensation*

Morones Analytics, LLC was compensated at a rate of $475 per hour for work performed by

Serena Morones on this analysis.   Compensation related to other associates employed by

Morones Analytics ranged from $230-$350 per hour.

### *Morones Expert Testimony - Past Four Years*

Douglas P. Powell and Sandy Farms, LLC et al v. Robert Underwood and Transpacific Food, Inc.;
Multnomah County Circuit Court; (Trial) December 6, 2018

Douglas P. Powell and Sandy Farms, LLC et al v. Robert Underwood and Transpacific Food, Inc.;
Multnomah County Circuit Court; (TRO Hearing) November 17, 2017

Columbia Sportswear North America, Inc. v Seirus Innovative Accessories, Inc.; US District Court,
District of Oregon; Case No. 3:15-cv-00064-HZ; September 2017

Wanke Cascade Distribution LTD., v. Forbo Flooring Inc., US District Court, District of Oregon;
Case No. 3:13-cv-00768-AC; May 2017

OIC Holdings, LLC v. Thomas Gleason and Julie Gleason, Collin County Texas District Court,
Case No. 366-05061-2015; April 2017

PABD Resources v. Todd Baran and Todd Baran P.C., Multnomah County Circuit Court Case no.
14CV16482; November 2016

Eric Martinez and Summa Real Estate Group, Inc. v. Tim Horst, and Paul Knighton et al,
Multnomah County Circuit Court; Case Nol. 1210-13257; December 2015

Mukesh R. Patel, Shirish Patel and Bhupendra Patel v. OM Clackamas LLC, Alkesh Patel, Kanti
Patel and Bhanu Patel; Multnomah County Circuit Court, Case No. CV12090165; July 2015

Joseph Castleton v. Med-Tech Resource, LLC and Michael G. Modrich; Lane County Circuit Court
Case No. 1614-05568; February 2015

### *Depositions - Past Four Years*

Potential Dynamix LLC v. Amazon Services, LLC; United States Bankruptcy Court for the District
of Arizona; Case 2:11-bk 28944-DPC; August 2020

adidas America et al v. Forever 21 Inc. et al, US District Court, District of Oregon, Case No. 3:17-
cv-00377-YY, June 12, 2019.

Perfect Company v Adaptics Ltd, US District Court, Western District of Washington at Tacoma.
Case No. 3:14-cv-05976-RBL (Consolidated with 3:17-cv-05922-RBL), March 29, 2019

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential


Ameranth, Inc. v Starbucks, Corp., US District Court, Southern District of CA.   Case No. '13CV1072MMABGS, September 24, 2018.

John Doe 2 v. Thomas Hacker and Boy Scouts of America et al; Circuit Court of Cook County, Illinois; Case No:  17L 9365; January 2018

Vesta Corporation v. Amdocs Management Limited, US District Court, District of Oregon, Case No. 3:14-cv-01142-HZ; November 2017

Dexcom, Inc. v Waveform/AgaMatrix, Inc.  IPR for Patent No. 7,146,202, August 2017

OIC Holdings v. Tom Gleason and Julie Gleason; Collin County Texas District Court Case No. 366-05061-2015; October 2016

Bikila v. Vibram; US District Court, Western District of Washington, Case No. 3:15-cv-05082-JRC; September 2016

Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.; US District Court, District of Oregon; Case No. 3:15-cv-64; August 2016

Reser's Fine Foods, Inc. v. Bob Evans Farms, Inc. et al; US District Court, District of Oregon; Case No 3:13-cv-0098-AA.  August 2015

Skedco, Inc. v. Strategic Operations, Inc.; US District Court, District of Oregon; Case No.:  3:13-cv-00968 July 2015

Wanke Cascade Distribution LTD v. Forbo Flooring, Inc., US District Court for the District of Oregon, Portland Division, Case No. 3:13-cv-00768-AC; February 2015

### Published Articles

Serena Morones, Alina Niculita, and Paul Heidt, "Synergistic Values in the Organic and Natural Foods Industry," Financial Valuation and Litigation Expert, Issue 71, Feb/March 2018.

Serena Morones, "Financial Resolution of Partnership Disputes," Oregon State Bar Debtor-Creditor Newsletter, Volume XXXIII, Number 3.  Fall 2014

Serena Morones, "What It's Worth," ACQ Magazine, July 2010

Serena Morones, "Buzz Abounds on Markets for Trading Startup Shares," Portland Business Journal, July 16, 2010

Serena Morones, "Proving the Top Line:  Supporting Lost Sales in a Lost Profits Case", CPA Expert, a publication of the AICPA, Summer 2004

Serena Morones, "Exclusive Autograph Deals:  What Value to the Athlete and Their Fans?", Entertainment and Sports Lawyer, a publication of the American Bar Association, Volume 22 Number 1, Spring 2004

Expert Report of Serena Morones, CPA, ASA, ABV, CFE dated August 31, 2020
Novoa et al v. The Geo Group, Inc.
Confidential

Serena Morones, "Athlete Signature Lines:  Maximizing Endorsement Value for the Professional Athlete", Entertainment and Sports Lawyer, a publication of the American Bar Association, Volume 21 Number 3, Fall 2003

ATTACHMENT A



# Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

## Serena Morones, CPA, ASA, ABV, CFE



### Professional Experience

Serena Morones specializes in forensic accounting, damage analysis and business valuation. She has helped lead numerous large and complex litigation cases to financial resolution through settlement or expert testimony. Multiple parties to a matter will hire Ms. Morones as an independent expert to assist them in settling valuation or economic disputes. She serves as a frequent guest lecturer for legal CLEs and at several Oregon universities on topics of valuation, damages and forensic accounting.  Ms. Morones has practiced through her own firm since 2002 and began her forensic accounting/valuation specialty in 1996.

### Professional Credentials and Education

- Certified Public Accountant, Oregon
- Accredited Senior Appraiser (ASA) in Business Valuation, American Society of Appraisers
- Accredited in Business Valuation (ABV), American Institute of Certified Public Accountants
- Certified Fraud Examiner (CFE), American Association of Certified Fraud Examiners
- Master of Taxation, Portland State University
- Bachelor of Arts in Accounting, Cum Laude, University of Oregon

### Services Provided

- Economic loss analysis for litigation
- Fraud and forensic accounting investigations
- Analysis of intellectual property damages
- Business valuation for litigation, buy-sell transactions, estate planning
- Jointly hired expert to resolve business valuation or financial disputes

### Publications

- Serena Morones, Alina Niculita, Paul Heidt, Synergistic Values in the Organic and Natural Foods Industry," Financial Valuation and Litigation Expert, Issue 71, Feb/March, 2018
- Serena Morones, "Financial Resolution of Partnership Disputes."  Oregon State Bar Debtor-Creditor Newsletter, Fall 2014
- Serena Morones, "What It's Worth," ACQ Magazine, July 2010
- Serena Morones, "Buzz Abounds on Markets for Trading Startup Shares," Portland Business Journal, July 16, 2010
- Serena Morones, "Proving the Top Line:  Supporting Lost Sales in a Lost Profits Case," CPA Expert, a publication of the AICPA, Summer 2004
- Serena Morones, "Exclusive Autograph Deals: What Value to the Athlete and Their Fans?" Entertainment and Sports Lawyer, a publication of the American Bar Association, Volume 22 Number 1, Spring 2004
- Serena Morones, "Athlete Signature Lines: Maximizing Endorsement Value for the Professional Athlete," Entertainment and Sports Lawyer, ABA Volume 21 Number 3, Fall 200

ATTACHMENT A



# Morones Analytics
Valuation · Forensic Accounting · Damage Analysis

## Serena Morones, CPA, ASA, ABV, CFE

### Selected Litigation Case History

- Ameranth v. Starbucks, 2018
- Vesta v. Amdocs, 2017-2018
- Columbia Sportswear v Seirus Innovative Accessories, 2017
- Reser's Fine Foods v. Bob Evans Farms, 2015-2016.
- Multi-entity family farming operation, accounting dispute, 2015.
- Boyd Coffee v. Miller Nash, 2015
- Douglas Ossanna v. Nike, 2014
- Tobacco Master Settlement Agreement 2003 NPM Adjustment Proceedings for the State of Oregon; 2013
- FLIR v. Fluke 2012
- Leatherman Tool Group v. Coast Cutlery Co. 2012
- Jessica Schlesigner v. Barry Schlesigner, et al 2011-2012.
- Sikh Dharma International et al v. Kartar et al, 2011
- Evergreen Helicopters v. Erickson Air-Crane, 2011
- Doe v. Boy Scouts of America 2010
- City of Albany v. SVC, Inc. (PepsiCo) 2010
- Sunwest Investors v. Davis Wright Tremaine, LLP 2009
- Synetic Funds v. Craig Berkman and Arthur Andersen, 2008
- State of Oregon v. Lyle Mann, 2007
- McWilliams v. Portland Public Schools, 2006
- Fred Fields v. The Coe Manufacturing Company and Three Cities Research, 2005
- Various Class Actions v. Hollywood Entertainment, 2004
- Ochoco Lumber v. US Bank, 2003-2004
- Judith Belushi Pisano v. The House of Blues and Dan Aykroyd, 2002
- Professional Athlete v. Corporation, 2001
- Rentrak v. Hollywood entertainment, 1999-2000
- Oregon Public Employees Retirement Board v. Simat, Helliesen & Eichner, et al (Pamcorp) 1997-1998

### Selected Business Valuations

- Manufacturer of organic ice cream, revenues $60 million.
- Manufacturer of natural foods and tea, revenues $90 million
- Regional grocery chain, revenues $450 million
- Local grocery chain, revenues $40 million
- Steel fabricator, revenues $90 million
- Mill equipment manufacturer, revenues $60 million
- Wholesale lumber distributor, revenues $80 million
- Various medical practices revenues $5-$10 million
- Partnerships, including capital account analysis
- Hotel and family restaurant, revenues $600,000
- Dog grooming business, revenues $200,000
- Single family home builders
- Professional service firms, including engineering, advertising, architectural, real estate brokerage, insurance agencies
- Agricultural nursery
- Development stage companies, zero revenues
- Notes receivable
- Fractional interests in real estate or tenants in common

### Professional Associations

- Oregon Society of Certified Public Accountants
- American Institute of Certified Public Accountants
- American Society of Appraisers
- Association of Certified Fraud Examiners
- Licensing Executives Society

### Charitable

- Board Member, Portland Business Luncheons
- Past Board Member, Open Arms International
- Speak Africa, LLC, language learning company supporting humanitarian work.

## Information Considered

| Contracts/Agreements |
|---|
| Adelanto-CPRA_0002808.pdf |
| BRIDGE CONTRACT.pdf |
| DIRECT CONTRACT.pdf |
| GEO-Novoa_00018147.pdf |
| GEO-Novoa_00035044_GEO_VOL_014.pdf |
| GEO-Novoa_00035184.pdf |

| Depositions & Deposition Exhibits |
|---|
| 2019-06-12 Ragsdale, Daniel Condensed Deposition Transcript [COMBINED].pdf |
| 2019-06-13 Venturella, David Deposition Transcript - Volume I - full.PDF |
| 2019-06-13 Venturella, David Deposition Transcript - Volume II - full.PDF |
| 2019-06-26 Janecka, James Full-Size Transcript_69144148_1.PDF |
| 2019-12-11 Hill, James Deposition Transcript - full.PDF |
| 2020-07-22 Wise-McCormick, Mary Deposition Transcript - full.PDF |
| 4138234 Videotaped.Deposition of David J. Venturella, Volume I.EXHIBIT18.pdf |
| AmberMartin30b6_LinkPDF.pdf |
| David J. Venturella, Volume I.EXHIBIT10.pdf |
| David J. Venturella, Volume I.EXHIBIT11.pdf |
| David J. Venturella, Volume I.EXHIBIT12.pdf |
| David J. Venturella, Volume I.EXHIBIT13.pdf |
| David J. Venturella, Volume I.EXHIBIT14.pdf |
| David J. Venturella, Volume I.EXHIBIT15.pdf |
| David J. Venturella, Volume I.EXHIBIT16.pdf |
| David J. Venturella, Volume I.EXHIBIT17.pdf |
| David J. Venturella, Volume I.EXHIBIT19.pdf |
| David J. Venturella, Volume I.EXHIBIT20.pdf |
| David J. Venturella, Volume I.EXHIBIT21.pdf |
| Exhibit 161.PDF |
| Hill Exhibit 64.PDF |
| Hill Exhibit 65.PDF |
| Hill Exhibit 66.PDF |
| Hill Exhibit 67.pdf |
| Hill Exhibit 68.pdf |
| Hill Exhibit 69.pdf |
| Hill Exhibit 70.pdf |
| Hill Exhibit 71.pdf |
| Hill Exhibit 72.pdf |
| Hill Exhibit 73.pdf |
| Hill Exhibit 74.pdf |
| Hill Exhibit 75.pdf |
| Janecka Exhibit 1_69159173_1.PDF |
| Janecka Exhibit 15_69159289_1.PDF |
| Janecka Exhibit 2_69159287_1.PDF |
| Janecka Exhibit 22_69159291_1.PDF |
| Janecka Exhibit 23_69159292_1.PDF |
| Janecka Exhibit 24_69159293_1.PDF |
| Janecka Exhibit 25_69159298_1.PDF |
| Janecka Exhibit 26_69159300_1.PDF |
| Janecka Exhibit 27_69159301_1.PDF |
| Janecka Exhibit 28_69159302_1.PDF |
| Janecka Exhibit 29_69159303_1.PDF |
| Janecka Exhibit 30_69159304_1.PDF |
| Janecka Exhibit 31_69159306_1.PDF |
| Janecka Exhibit 32_69159307_1.PDF |
| Janecka Exhibit 33_69159308_1.PDF |
| Janecka Exhibit 34_69159311_1.PDF |
| Janecka Exhibit 35_69159313_1.PDF |
| Janecka Exhibit 36_69159318_1.PDF |



**Attachment B**
**Information Considered**

| Depositions & Deposition Exhibits |
|---|
| Janecka Exhibit 37_69159320_1.PDF |
| Janecka Exhibit 38_69159324_1.PDF |
| Janecka Exhibit 39_69159325_1.PDF |
| Janecka Exhibit 40_69159326_1.PDF |
| Janecka Exhibit 41_69159328_1.PDF |
| Janecka Exhibit 42_69159329_1.PDF |
| Janecka Exhibit 43_69159336_1.PDF |
| Janecka Exhibit 44_69159337_1.PDF |
| Janecka Exhibit 45_69159340_1.PDF |
| Janecka Exhibit 46_69159342_1.PDF |
| Janecka Exhibit 47_69159345_1.PDF |
| Martin Exhibit 1.PDF |
| Martin Exhibit 152.PDF |
| Martin Exhibit 153.PDF |
| Martin Exhibit 154.PDF |
| Martin Exhibit 155.PDF |
| Martin Exhibit 156.PDF |
| Martin Exhibit 157.PDF |
| Martin Exhibit 158.PDF |
| Martin Exhibit 159.PDF |
| Martin Exhibit 160.PDF |
| Martin Exhibit 162.PDF |
| Martin Exhibit 163.PDF |
| Martin Exhibit 164.PDF |
| Martin Exhibit 165.PDF |
| Martin Exhibit 166.PDF |
| Ragsdale Ex. 1 [Esquire Stamp].pdf |
| Ragsdale Ex. 2 [Esquire Stamp].pdf |
| Ragsdale Ex. 3 [Esquire Stamp].pdf |
| Ragsdale Ex. 4 [Esquire Stamp].pdf |
| Ragsdale Ex. 5 [Esquire Stamp].pdf |
| Ragsdale Ex. 6 [Esquire Stamp].pdf |
| Ragsdale Ex. 7 [Esquire Stamp].pdf |
| Ragsdale Ex. 8 [Esquire Stamp].pdf |
| Ragsdale Ex. 9 [Esquire Stamp].pdf |
| Venturella Exh. 10.pdf |
| Venturella Exh. 11.pdf |
| Venturella Exh. 12.pdf |
| Venturella Exh. 13.pdf |
| Venturella Exh. 14.pdf |
| Venturella Exh. 15.pdf |
| Venturella Exh. 16.pdf |
| Venturella Exh. 17.pdf |
| Venturella Exh. 18.pdf |
| Venturella Exh. 19.pdf |
| Venturella Exh. 20.pdf |
| Venturella Exh. 21.pdf |
| Wise-MckCormick Exhibit 100.pdf |
| Wise-MckCormick Exhibit 101.pdf |
| Wise-MckCormick Exhibit 102.pdf |
| Wise-MckCormick Exhibit 103.pdf |
| Wise-MckCormick Exhibit 104.pdf |
| Wise-MckCormick Exhibit 22.pdf |
| Wise-MckCormick Exhibit 26.pdf |
| Wise-MckCormick Exhibit 35.pdf |
| Wise-MckCormick Exhibit 82.pdf |
| Wise-MckCormick Exhibit 95.pdf |



**Attachment B**
**Information Considered**

| Depositions & Deposition Exhibits |
|---|
| Wise-MckCormick Exhibit 96.pdf |
| Wise-MckCormick Exhibit 97.pdf |
| Wise-MckCormick Exhibit 98.pdf |
| Wise-MckCormick Exhibit 99.pdf |

| Expert Reports |
|---|
| BVA Report - 2020-08-17 Novoa.pdf |
| Childers Report - 2020-08-17 Novoa.pdf |
| Expert Report of Peter H. Nickerson, PH.D. dated September 20, 2018 |

| Pleadings |
|---|
| [223] Order (1) GRANTING Plaintiffs' Motion for Class Certification.pdf |
| [229] Order on Plaintiffs Motion for Class Certification.pdf |
| 2018-08-27 GEOs Responses and Objections to Novoas First Set of RFPs.PDF |
| 2018-08-27 GEOs Responses to Plaintiffs First Set of RFAs.pdf |
| First Set of Discovery Requests (includes RFPs) 38552140 v1_65676134_1_69067199_1 - 2018.07.27 P_s.PDF |
| Order Granting Plaintiff's Motion for Class Certification.pdf |
| Third Amended Complaint for Declaratory and Injunctive Relief.PDF |

| Other |
|---|
| Activity Schedules.pdf |
| Geo00091785.xlsx |
| GEO-Novoa_00000089_GEO_VOL_001.pdf |
| GEO-Novoa_00000115_GEO_VOL_001.pdf |
| GEO-Novoa_00000515_GEO_VOL_001.pdf |
| GEO-Novoa_00000668.pdf |
| GEO-Novoa_00000670.pdf |
| GEO-Novoa_00000705.pdf |
| GEO-Novoa_00000779_GEO_VOL_002.pdf |
| GEO-Novoa_00000780_GEO_VOL_002.pdf |
| GEO-Novoa_00000781_GEO_VOL_002.pdf |
| GEO-Novoa_00000782_GEO_VOL_002.pdf |
| GEO-Novoa_00000783_GEO_VOL_002.pdf |
| GEO-Novoa_00000784_GEO_VOL_002.pdf |
| GEO-Novoa_00000785_GEO_VOL_002.pdf |
| GEO-Novoa_00000786_GEO_VOL_002.pdf |
| GEO-Novoa_00000787_GEO_VOL_002.pdf |
| GEO-Novoa_00000788_GEO_VOL_002.pdf |
| GEO-Novoa_00000790_GEO_VOL_002.pdf |
| GEO-Novoa_00000791_GEO_VOL_002.pdf |
| GEO-Novoa_00000792_GEO_VOL_002.pdf |
| GEO-Novoa_00001505.pdf |
| GEO-Novoa_00002177_GEO_VOL_003.pdf |
| GEO-Novoa_00002491_GEO_VOL_003.pdf |
| GEO-Novoa_00005201.pdf |
| GEO-Novoa_00005209.pdf |
| GEO-Novoa_00005292.pdf |
| GEO-Novoa_00005292_GEO_VOL_005.pdf |
| GEO-Novoa_00005389.pdf |
| GEO-Novoa_00005421.pdf |
| GEO-Novoa_00005505.pdf |
| GEO-Novoa_00005508.pdf |
| GEO-Novoa_00005878_GEO_VOL_005.pdf |
| GEO-Novoa_00005879_GEO_VOL_005.pdf |
| GEO-Novoa_00006261.pdf |
| GEO-Novoa_00006269.pdf |
| GEO-Novoa_00006276.pdf |
| GEO-Novoa_00006282.pdf |
| GEO-Novoa_00015059_GEO_VOL_009.pdf |
| Work Program Applications for each job type - (GEO-Novoa_00000143_GEO_VOL_001).pdf |



**Novoa et al. v The GEO Group, Inc.**

Summary of Morones Recalculation of Bland Damages

| California Minimum Wage Approach | | |
|---|---|---|
| | **Wage Class** | **Forced Labor Class** |
| Schedule | 1-1 | 1-2 |
| Minimum Wages Due | $16,728,165 | $20,768,464 |
| Less: Payments Made[1] | (665,398) | (872,630) |
| Damages per Recalculation | $16,062,767 | $19,895,834 |
| Damages per Bland Report | 16,099,000 | 20,748,000 |
| **Variance** | **($36,233)** | **($852,166)** |
| | (0%) | (4%) |

| SCA Wage Approach | | |
|---|---|---|
| | **Wage Class** | **Forced Labor Class** |
| Schedule | 1-3 | 1-4 |
| Wages Due | $25,535,297 | $33,223,708 |
| Less: Payments Made[1] | (665,398) | (872,630) |
| Damages per Recalculation | $24,869,899 | $32,351,078 |
| Damages per Bland Report | 24,288,000 | 32,366,000 |
| **Variance** | **$581,899** | **($14,922)** |
| | 2% | (0%) |

(1)  See **Schedule 7** for wages paid to each class of plaintiffs.

**Novoa et al. v The GEO Group, Inc.**

Recalculation of Bland Damages - Wage Class, Minimum Wage Approach

| Year | Shifts[1] | Hours per Shift[2] | Total Hours | Minimum Wage[3] | Wages Due |
|------|-----------|--------------------|-------------|-----------------|-----------|
| 2014 | 453 | 2.38 | 1,076 | $9.00 | $9,685 |
| 2015 | 97,532 | 2.38 | 231,693 | $9.00 | $2,085,237 |
| 2016 | 141,868 | 2.38 | 337,016 | $10.00 | $3,370,158 |
| 2017 | 151,754 | 2.38 | 360,501 | $10.50 | $3,785,256 |
| 2018 | 137,674 | 2.38 | 327,053 | $11.00 | $3,597,580 |
| 2019 | 136,117 | 2.38 | 323,354 | $12.00 | $3,880,248 |
| Total | 665,398 | | 1,580,692 | | $16,728,165 |

**Footnotes:**

(1) See detail of shifts by month at **Schedule 7**. The damage period for the Wage Class begins December 19, 2014.

(2) The weighted average hours per shift is calculated at **Schedule 9A.**

(3) California minimum wages for employers with 26 or more employees based on the effective dates shown below. These are consistent with Table 5a of the Bland Report.

| Effective Date Start | Effective Date End | California Minimum Wage |
|----------------------|--------------------|------------------------|
| 1/1/2008 | 6/30/2014 | $ 8.00 |
| 7/1/2014 | 12/31/2015 | $ 9.00 |
| 1/1/2016 | 12/31/2016 | $ 10.00 |
| 1/1/2017 | 12/31/2017 | $ 10.50 |
| 1/1/2018 | 12/31/2018 | $ 11.00 |
| 1/1/2019 | 12/31/2019 | $ 12.00 |



**Schedule 1-1**

**Novoa et al. v The GEO Group, Inc.**

Recalculation of Bland Damages - Forced Labor Class, Minimum Wage Approach

| Period[1] | Shifts[1] | Hours per Shift[2] | Total Hours | Minimum Wage[3] | Wages Due |
|---|---|---|---|---|---|
| 2011 | 6,842 | 2.38 | 16,254 | $8.00 | $130,029 |
| 2012 | 36,374 | 2.38 | 86,409 | $8.00 | $691,269 |
| 2013 | 77,379 | 2.38 | 183,818 | $8.00 | $1,470,547 |
| Jan-Jun 2014 | 43,715 | 2.38 | 103,848 | $8.00 | $830,781 |
| Jul-Dec 2014 | 43,375 | 2.38 | 103,040 | $9.00 | $927,359 |
| 2015 | 97,532 | 2.38 | 231,693 | $9.00 | $2,085,237 |
| 2016 | 141,868 | 2.38 | 337,016 | $10.00 | $3,370,158 |
| 2017 | 151,754 | 2.38 | 360,501 | $10.50 | $3,785,256 |
| 2018 | 137,674 | 2.38 | 327,053 | $11.00 | $3,597,580 |
| 2019 | 136,117 | 2.38 | 323,354 | $12.00 | $3,880,248 |
| **Total** | 872,630 | | 2,072,984 | | **$20,768,464** |

**Footnotes:**

(1) The damage period for the Forced Labor Class begins May 1, 2011.  2014 is split into two period based on the mid-year change in California minimum wage rates as noted below.  See detail of shifts by month at **Schedule 7.**

(2) The weighted average hours per shift is calculated at **Schedule 9A**.

(3) California minimum wages for employers with 26 or more employees based on the effective dates shown below. These are consistent with Table 5a of the Bland Report.

| Effective Date Start | Effective Date End | California Minimum Wage |
|---|---|---|
| 1/1/2008 | 6/30/2014 | $ 8.00 |
| 7/1/2014 | 12/31/2015 | $ 9.00 |
| 1/1/2016 | 12/31/2016 | $ 10.00 |
| 1/1/2017 | 12/31/2017 | $ 10.50 |
| 1/1/2018 | 12/31/2018 | $ 11.00 |
| 1/1/2019 | 12/31/2019 | $ 12.00 |


Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 1-2**

**Novoa et al. v The GEO Group, Inc.**

Recalculation of Bland Damages - Wage Class, SCA Wage Approach

| | Custodial Services | Kitchen Services | Laundry | Recreation | Multiple | Other | Total |
|---|---|---|---|---|---|---|---|
| **December 2014 - June 2019[1]** | | | | | | | |
| Shifts[2] | 374,746 | 84,367 | 10,428 | 34,459 | 80,108 | 14,863 | 598,971 |
| Hours per Shift[3] | 1.5 | 5.0 | 2.5 | 2.5 | 3.7 | 2.2 | |
| Total Hours | 562,118 | 421,836 | 26,071 | 86,146 | 294,393 | 32,327 | |
| Wage & Benefits Rate[4] | $14.44 | $16.96 | $14.28 | $20.03 | $15.85 | $15.85 | |
| Aug 2014 - Jun 2019 Wages Due | **$8,116,989** | **$7,154,336** | **$372,295** | **$1,725,511** | **$4,664,732** | **$512,226** | **$22,546,088** |
| **July 2019 - November 2019[1]** | | | | | | | |
| Shifts[2] | 41,560 | 9,356 | 1,157 | 3,822 | 8,884 | 1,648 | 66,427 |
| Hours per Shift[3] | 1.5 | 5.0 | 2.5 | 2.5 | 3.7 | 2.2 | |
| Total Hours | 62,340 | 46,782 | 2,891 | 9,554 | 32,649 | 3,585 | |
| Wage & Benefits Rate[4] | $17.40 | $19.92 | $17.21 | $24.75 | $18.94 | $18.94 | |
| Jul 2019 - Nov 2019 Wages Due | **$1,084,715** | **$931,905** | **$49,760** | **$236,456** | **$618,460** | **$67,912** | **$2,989,209** |
| **Total Wages Due to Forced Labor Class under SCA Wage Approach** | | | | | | | **$25,535,297** |

**Footnotes:**

(1) The damage period is bifurcated according to the effective date of contracts governing wages under the Services Contract Act as shown in Table 5b of the Bland Report. In the absence of daily data, I used the month that most closely corresponded to the effective contract dates.

(2) Total Shifts for each period are based on the monthly totals shown at **Schedule 7.** Shifts are allocated between job types based on Table 4 of the Bland Report as summarized below.

| | Custodial Services | Kitchen Services | Laundry | Recreation | Multiple | Other | Total |
|---|---|---|---|---|---|---|---|
| Shifts by Job Type | 62.6% | 14.1% | 1.7% | 5.8% | 13.4% | 2.5% | 100.0% |

(3) See **Schedule 9A** for the calculation of shift length by job type.

(4) See **Schedule 8** for the calculation of rates by job type.



**Schedule 1-3**

**Novoa et al. v The GEO Group, Inc.**

Recalculation of Bland Damages - Forced Labor Class, SCA Wage Approach

| | Custodial Services | Kitchen Services | Laundry | Recreation | Multiple | Other | Total |
|---|---|---|---|---|---|---|---|
| **September 2011 - July 2014[1]** | | | | | | | |
| Shifts[2] | 107,695 | 24,246 | 2,997 | 9,903 | 23,022 | 4,271 | 172,133 |
| Hours per Shift[3] | 1.5 | 5.0 | 2.5 | 2.5 | 3.7 | 2.2 | |
| Total Hours | 161,542 | 121,228 | 7,492 | 24,757 | 84,603 | 9,290 | |
| Wage & Benefits Rate[4] | $14.20 | $16.65 | $13.97 | $19.72 | $15.57 | $15.57 | |
| Sep 2011 - Jul 2014 Wages Due | **$2,293,900** | **$2,018,441** | **$104,668** | **$488,205** | **$1,317,366** | **$144,658** | **$6,367,237** |
| **August 2014 - June 2019[1]** | | | | | | | |
| Shifts[2] | 396,705 | 89,311 | 11,040 | 36,478 | 84,802 | 15,734 | 634,070 |
| Hours per Shift[3] | 1.5 | 5.0 | 2.5 | 2.5 | 3.7 | 2.2 | |
| Total Hours | 595,058 | 446,555 | 27,599 | 91,194 | 311,644 | 34,221 | |
| Wage & Benefits Rate[4] | $14.44 | $16.96 | $14.28 | $20.03 | $15.85 | $15.85 | |
| Aug 2014 - Jun 2019 Wages Due | **$8,592,635** | **$7,573,572** | **$394,111** | **$1,826,624** | **$4,938,079** | **$542,242** | **$23,867,262** |
| **July 2019 - November 2019[1]** | | | | | | | |
| Shifts[2] | 41,560 | 9,356 | 1,157 | 3,822 | 8,884 | 1,648 | 66,427 |
| Hours per Shift[3] | 1.5 | 5.0 | 2.5 | 2.5 | 3.7 | 2.2 | |
| Total Hours | 62,340 | 46,782 | 2,891 | 9,554 | 32,649 | 3,585 | |
| Wage & Benefits Rate[4] | $17.40 | $19.92 | $17.21 | $24.75 | $18.94 | $18.94 | |
| Jul 2019 - Nov 2019 Wages Due | **$1,084,715** | **$931,905** | **$49,760** | **$236,456** | **$618,460** | **$67,912** | **$2,989,209** |
| **Total Wages Due to Forced Labor Class under SCA Wage Approach** | | | | | | | **$33,223,708** |

**Footnotes:**

(1) The damage period is bifurcated according to the effective date of contracts governing wages under the Services Contract Act as shown in Table 5b of the Bland Report. The earliest month used By Mr. Bland was September 2011 due to limited date. In the absence of daily data, I used the month that most closely corresponded to the effective contract dates.

(2) Total Shifts for each period are based on the monthly totals shown at **Schedule 7**. Shifts are allocated between job types based on Table 4 of the Bland Report as summarized below.

| | Custodial Services | Kitchen Services | Laundry | Recreation | Multiple | Other | Total |
|---|---|---|---|---|---|---|---|
| Shifts by Job Type | 62.6% | 14.1% | 1.7% | 5.8% | 13.4% | 2.5% | 100.0% |

(3) See **Schedule 9A** for the calculation of shift length by job type.

(4) See **Schedule 8** for the calculation of rates by job type.



**Schedule 1-4**

**Novoa et al. v The GEO Group, Inc.**

Impact of Alternative Shift Length Assumptions on Bland Opinions

| CA Minimum Wage Approach, Alternative Shift Length Assumptions | |
| --- | --- |
| | **Wage Class** |
| Schedule | 2-1 |
| Minimum Wages Due | $12,111,862 |
| Less: Payments Made[1] | (665,398) |
| Damages with Alternative Assumptions | $11,446,464 |
| Damages per Bland Report | 16,099,000 |
| **Impact of Alternative Shift Length Assumptions** | **($4,652,536)** |
| | (29%) |

(1)  See **Schedule 7** for payments made to each class of plaintiffs.

**Novoa et al. v The GEO Group, Inc.**

Alternative Shift Length Assumptions - Wage Class, Bland Minimum Wage Approach

| Year | Shifts[1] | Based on Alternative Assumptions | | | |
| | | Hours per Shift[2] | Total Hours | Minimum Wage | Wages Due |
|------|------|------|------|------|------|
| 2014 | 453 | 1.72 | 779 | $9.00 | $7,012 |
| 2015 | 97,532 | 1.72 | 167,755 | $9.00 | $1,509,795 |
| 2016 | 141,868 | 1.72 | 244,013 | $10.00 | $2,440,130 |
| 2017 | 151,754 | 1.72 | 261,017 | $10.50 | $2,740,677 |
| 2018 | 137,674 | 1.72 | 236,799 | $11.00 | $2,604,792 |
| 2019 | 136,117 | 1.72 | 234,121 | $12.00 | $2,809,455 |
| **Total** | 665,398 | | 1,144,485 | | **$12,111,862** |

**Footnotes:**

(1) See detail of shifts by month at **Schedule 7**. The damage period for the Wage Class begins December 19, 2014.

(2) Alternative hours per shift based on the Expert Report of Peter H. Nickerson, Ph.D. dated September 20,2018 used in State of Washington v. The GEO Group, Inc., US District Court, Western District of Washington.  See further discussion in the Expert Report of Serena Morones dated August 31, 2020.

(3) California minimum wages for employers with 26 or more employees based on the effective dates shown below. These are consistent with Table 5a of the Bland Report.

| Effective Date Start | Effective Date End | California Minimum Wage |
|------|------|------|
| 1/1/2008 | 6/30/2014 | $  8.00 |
| 7/1/2014 | 12/31/2015 | $  9.00 |
| 1/1/2016 | 12/31/2016 | $  10.00 |
| 1/1/2017 | 12/31/2017 | $  10.50 |
| 1/1/2018 | 12/31/2018 | $  11.00 |
| 1/1/2019 | 12/31/2019 | $  12.00 |



**Novoa et al. v The GEO Group, Inc.**

Impact of Revised Job Mixture Assumptions on Bland Opinions

| CA Minimum Wage Approach with Alternative Job Mixture Assumptions | Wage Class |
|---|---|
| Schedule | 3-1 |
| Minimum Wages Due | $16,258,153 |
| Less: Payments Made[1] | (665,398) |
| Damages with Alternative Assumptions | $15,592,755 |
| Damages per Bland Report | 16,099,000 |
| **Impact of Alternative Job Mixture Assumptions** | **($506,245)** |
| | (3%) |

| SCA Wage Approach with Alternative Job Mixture Assumptions | Forced Labor Class |
|---|---|
| Schedule | 3-2 |
| Wages Due | $32,232,035 |
| Less: Payments Made[1] | (872,630) |
| Damages with Alternative Assumptions | $31,359,405 |
| Damages per Bland Report | 32,366,000 |
| **Impact of Alternative Job Mixture Assumptions** | **($1,006,595)** |
| | (3%) |

(1) See **Schedule 7** for payments made to each class of plaintiffs.

**Novoa et al. v. The GEO Group, Inc.**

Job Mixture per Bland Report

| Per Table 4 of the Bland Report | | | | Weighted Average[1] |
|---|---|---|---|---|
| Job Type | November-17 | December-17 | January-18 | |
| Custodial Services | 61.1% | 63.0% | 64.6% | 62.6% |
| Kitchen Services | 13.1% | 15.2% | 13.0% | 13.9% |
| Laundry | 1.2% | 2.2% | 1.5% | 1.7% |
| Recreation | 5.4% | 5.9% | 6.0% | 5.7% |
| Multiple | 17.6% | 10.5% | 12.4% | 13.6% |
| Other | 1.5% | 3.2% | 2.6% | 2.4% |

**Footnotes:**

(1)  The weighted average was calculated based on the number of days in each period.  The January period only includes the 1st through the 18th according to paragraph 32 of the Bland Report.


Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 3a**

**Novoa et al. v. The GEO Group, Inc.**

Average Shift Length Calculation with Alternative Job Mixture Assumptions

| Job Type | Based on Alternative Assumptions | |
|---|---|---|
| | Percent of Total Shifts[1] | Shift Length[2] |
| Custodial Services | 64.6% | 1.5 |
| Kitchen Services | 13.0% | 5.0 |
| Laundry | 1.5% | 2.5 |
| Recreation | 6.0% | 2.5 |
| Multiple[3] | 12.4% | 3.6 |
| Other[4] | 2.6% | 2.1 |
| Weighted Average Shift Length with Revised Job Mixture: | | **2.3** |

**Footnotes:**

(1) The allocation of shifts by job type based on the period January 1-18, 2018 as shown at **Schedule 3A**.

(2) Shift lengths are based on the median length per Table 3 of the Bland Report except as noted below.

(3) The Multiple shift length is based on the Other shift length plus the Custodial Services shift length as described in footnote 38 of the Bland Report.  See detailed calculation using Mr. Bland's assumptions at **Schedule 9A.**

(4) The Other shift length is based on the weighted average of the first four job types shown.  See detailed calculation using Mr. Bland's assumptions at **Schedule 9A.**

**Schedule 3B**

**Novoa et al. v. The GEO Group, Inc.**

Alternative Job Mixture Assumptions - Wage Class, Minimum Wage Approach

| Year | Shifts[1] | Based on Alternative Assumptions | | | |
|------|-----------|------------------|-------------|----------------|-----------|
|      |           | Hours per Shift[2] | Total Hours | Minimum Wage[3] | Wages Due |
| 2014 | 453 | 2.3 | 1,046 | $9.00 | $9,413 |
| 2015 | 97,532 | 2.3 | 225,183 | $9.00 | $2,026,648 |
| 2016 | 141,868 | 2.3 | 327,547 | $10.00 | $3,275,467 |
| 2017 | 151,754 | 2.3 | 350,372 | $10.50 | $3,678,902 |
| 2018 | 137,674 | 2.3 | 317,864 | $11.00 | $3,496,499 |
| 2019 | 136,117 | 2.3 | 314,269 | $12.00 | $3,771,224 |
| **Total** | 665,398 | | 1,536,280 | | **$16,258,153** |

**Footnotes:**

(1)  See detail of shifts by month at **Schedule 7**. The damage period for the Wage Class begins December 19, 2014.

(2)  Alternative hours per shift based on revised job mixture assumptions.  See **Schedule 3B**.

(3)  California minimum wages for employers with 26 or more employees based on the effective dates shown below.
These are consistent with Table 5a of the Bland Report.

| Effective Date Start | Effective Date End | California Minimum Wage |
|---------------------|--------------------|------------------------|
| 1/1/2008 | 6/30/2014 | $  8.00 |
| 7/1/2014 | 12/31/2015 | $  9.00 |
| 1/1/2016 | 12/31/2016 | $  10.00 |
| 1/1/2017 | 12/31/2017 | $  10.50 |
| 1/1/2018 | 12/31/2018 | $  11.00 |
| 1/1/2019 | 12/31/2019 | $  12.00 |



**Schedule 3-1**

**Novoa et al. v The GEO Group, Inc.**

Alternative Job Mixture Assumptions - Forced Labor Class, SCA Wage Approach

| | Based on Alternative Assumptions | | | | | | |
|---|---|---|---|---|---|---|---|
| | Custodial Services | Kitchen Services | Laundry | Recreation | Multiple | Other | Total |
| **September 2011 - July 2014[1]** | | | | | | | |
| Shifts[2] | 111,112 | 22,355 | 2,579 | 10,318 | 21,323 | 4,471 | |
| Hours per Shift[3] | 1.5 | 5.0 | 2.5 | 2.5 | 3.6 | 2.1 | |
| Total Hours | 166,668 | 111,775 | 6,449 | 25,794 | 77,247 | 9,491 | |
| Wage & Benefits Rate[4] | $14.20 | $16.65 | $13.97 | $19.72 | $15.57 | $15.57 | |
| Sep 2011 - Jul 2014 Wages Due | **$2,366,682** | **$1,861,048** | **$90,086** | **$508,661** | **$1,202,829** | **$147,778** | **$6,177,085** |
| **August 2014 - June 2019[1]** | | | | | | | |
| Shifts[2] | 409,292 | 82,347 | 9,502 | 38,006 | 78,546 | 16,469 | |
| Hours per Shift[3] | 1.5 | 5.0 | 2.5 | 2.5 | 3.6 | 2.1 | |
| Total Hours | 613,938 | 411,734 | 23,754 | 95,015 | 284,548 | 34,959 | |
| Wage & Benefits Rate[4] | $14.44 | $16.96 | $14.28 | $20.03 | $15.85 | $15.85 | |
| Aug 2014 - Jun 2019 Wages Due | **$8,865,269** | **$6,983,005** | **$339,205** | **$1,903,160** | **$4,508,744** | **$553,940** | **$23,153,322** |
| **July 2019 - November 2019[1]** | | | | | | | |
| Shifts[2] | 42,879 | 8,627 | 995 | 3,982 | 8,229 | 1,725 | |
| Hours per Shift[3] | 1.5 | 5.0 | 2.5 | 2.5 | 3.6 | 2.1 | |
| Total Hours | 64,318 | 43,134 | 2,489 | 9,954 | 29,810 | 3,662 | |
| Wage & Benefits Rate[4] | $17.40 | $19.92 | $17.21 | $24.75 | $18.94 | $18.94 | |
| Jul 2019 - Nov 2019 Wages Due | **$1,119,132** | **$859,238** | **$42,827** | **$246,364** | **$564,689** | **$69,377** | **$2,901,627** |
| **Total Wages Due to Forced Labor Class under SCA Wage Approach** | | | | | | | **$32,232,035** |

**Footnotes:**

(1) The damage period is bifurcated according to the effective date of contracts governing wages under the Services Contract Act as shown in Table 5b of the Bland Report.  The earliest month for which data was provided was September 2011.  In the absence of daily data, I used the month that most closely corresponded to the effective contract dates.

(2) Total shifts for each period are based on the monthly totals shown at **Schedule 7**.  Shifts are allocated between job types based on **Schedule 3B** and summarized below.  The sum of shifts calculated above exceeds the total shifts in **Schedule 7** due to rounding in the job mixture allocation.

| | Custodial Services | Kitchen Services | Laundry | Recreation | Multiple | Other | Total |
|---|---|---|---|---|---|---|---|
| Shifts by Job Type | 64.6% | 13.0% | 1.5% | 6.0% | 12.4% | 2.6% | 100.0% |

(3) See **Schedule 3B** for the calculation of shift length by job type.

(4) See **Schedule 8** for the calculation of rates by job type.



**Schedule 3-2**

**Novoa et al. v The GEO Group, Inc.**

Impact of Revised Recreation & Kitchen Assumptions on Bland Opinions

---

**CA Minimum Wage Approach with Revised Recreation & Kitchen Assumptions**

|  | Wage Class |
|---|---|
| Schedule | 4-1 |
| Minimum Wages Due | $15,755,568 |
| Less: Payments Made[1] | (665,398) |
| Damages with Revised Assumptions | $15,090,170 |
| Damages per Bland Report | 16,099,000 |
| **Impact of Revised Assumptions** | **($1,008,830)** |
|  | (6%) |

---

**SCA Wage Approach with Revised Recreation & Kitchen Assumptions**

|  | Forced Labor Class |
|---|---|
| Schedule | 4-2 |
| Wages Due | $30,375,441 |
| Less: Payments Made[1] | (872,630) |
| Damages with Revised Assumptions | $29,502,811 |
| Damages per Bland Report | 32,366,000 |
| **Impact of Revised Assumptions** | **($2,863,189)** |
|  | (9%) |

---

(1) See **Schedule 7** for payments made to each class of plaintiffs.

**Novoa et al. v The GEO Group, Inc.**

Weighted Average Shift Length with Revised Recreation & Kitchen Assumptions

| Job Type | Percent of Total Shifts[1] | Revised Shift Length[2] |
|---|---|---|
| Custodial Services | 62.6% | 1.5 |
| Kitchen Services[3] | 14.1% | 4.6 |
| Laundry | 1.7% | 2.5 |
| Recreation[4] | 5.8% | 1.5 |
| Multiple[5] | 13.4% | 3.5 |
| Other[6] | 2.5% | 2.0 |
| Weighted Average Shift Length with Revised Assumptions: | | **2.2** |

**Footnotes:**

(1) The allocation of shifts by job type is per Table 4 of the Bland Report.

(2) Shift lengths are based on the median length per Table 3 of the Bland Report except as noted below.

(3) I reduced the Kitchen Services shift length shown in Table 3 of the Bland report by 25 minutes to account for the lunch break taken by employees.  See further discussion in the Expert Report of Serena Morones dated August 31, 2020.

(4) I set the Recreation shift length equal to the Custodial Services shift length based on the Recreation Sanitation Worker job description shown at GEO-Novoa_0000792.

(5) The Multiple shift length is based on the Other shift length plus the Custodial Services shift length as described in footnote 38 of the Bland Report.  See detailed calculation using Mr. Bland's assumptions at **Schedule 9A.**

(6) The Other Shift Length is based on the weighted average of the first four job types shown.  See detailed calculation using Mr. Bland's assumptions at **Schedule 9A.**

Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 4A**

**Novoa et al. v The GEO Group, Inc.**

SCA Wage & Benefit Rates with Revised Recreation & Kitchen Assumptions

| Contract Period | Custodial Services | Kitchen Services | Laundry | Revised Assumptions | |
|---|---|---|---|---|---|
| | | | | Recreation[1] | Weighted Average[2] |
| 5/27/2011 - 8/6/2014 | $14.20 | $16.65 | $13.97 | $14.20 | $15.12 |
| 8/7/2014 - 6/24/2019 | $14.44 | $16.96 | $14.28 | $14.44 | $15.39 |
| 6/25/2019 - Present | $17.40 | $19.92 | $17.21 | $17.40 | $18.34 |

**Footnotes:**

(1) I set the Recreation rates equal to the Custodial Services rates based on the Recreation Sanitation Worker job description shown at GEO-Novoa_0000792.

(2) The job types Multiple and Other used in the Bland Report do not correspond to jobs listed in the SCA Wage Determinations.  For the Multiple and Other job type rates, I calculated a weighted average rate using the four other job types based the weighting factors below.  Mr. Bland does not show his calculation for these categories.  I based this calculation on my understanding of footnote 42 in the Bland Report.

| | Custodial Services | Kitchen Services | Laundry | Recreation |
|---|---|---|---|---|
| Shift Allocation | 62.6% | 14.1% | 1.7% | 5.8% |
| Hours per Shift (**Schedule 4A**) | 1.5 | 4.6 | 2.5 | 1.5 |

**Novoa et al. v The GEO Group, Inc.**

Revised Recreation & Kitchen Assumptions - Wage Class, Minimum Wage Approach

| Year | Shifts[1] | Based on Revised Assumptions | | | |
|---|---|---|---|---|---|
| | | Hours per Shift[2] | Total Hours | Minimum Wage[3] | Wages Due |
| 2014 | 453 | 2.2 | 1,014 | $9.00 | $9,122 |
| 2015 | 97,532 | 2.2 | 218,222 | $9.00 | $1,963,999 |
| 2016 | 141,868 | 2.2 | 317,421 | $10.00 | $3,174,213 |
| 2017 | 151,754 | 2.2 | 339,541 | $10.50 | $3,565,177 |
| 2018 | 137,674 | 2.2 | 308,037 | $11.00 | $3,388,412 |
| 2019 | 136,117 | 2.2 | 304,554 | $12.00 | $3,654,645 |
| **Total** | 665,398 | | 1,488,789 | | **$15,755,568** |

**Footnotes:**

(1) See detail of shifts by month at **Schedule 7**. The damage period for the Wage Class begins December 19, 2014.

(2) See calculation of the weighted average shift length at **Schedule 4A**.

(3) California minimum wages for employers with 26 or more employees based on the effective dates shown below.
These are consistent with Table 5a of the Bland Report.

| Effective Date Start | Effective Date End | California Minimum Wage | |
|---|---|---|---|
| 1/1/2008 | 6/30/2014 | $ | 8.00 |
| 7/1/2014 | 12/31/2015 | $ | 9.00 |
| 1/1/2016 | 12/31/2016 | $ | 10.00 |
| 1/1/2017 | 12/31/2017 | $ | 10.50 |
| 1/1/2018 | 12/31/2018 | $ | 11.00 |
| 1/1/2019 | 12/31/2019 | $ | 12.00 |



**Schedule 4-1**

**Novoa et al. v The GEO Group, Inc.**

Revised Recreation & Kitchen Assumptions - Forced Labor Class, SCA Wage Approach

| | Custodial Services | Laundry | Based on Revised Assumptions | | | | |
| | | | Kitchen Services[1] | Recreation[2] | Multiple | Other | Total |
|---|---|---|---|---|---|---|---|
| **September 2011 - July 2014[3]** | | | | | | | |
| Shifts[4] | 107,695 | 2,997 | 24,246 | 9,903 | 23,022 | 4,271 | 172,133 |
| Hours per Shift[5] | 1.5 | 2.5 | 4.6 | 1.5 | 3.5 | 2.0 | |
| Total Hours | 161,542 | 7,492 | 111,125 | 14,854 | 81,423 | 8,700 | |
| Wage & Benefits Rate[6] | $14.20 | $13.97 | $16.65 | $14.20 | $15.12 | $15.12 | |
| Sep 2011 - Jul 2014 Wages Due | **$2,293,900** | **$104,668** | **$1,850,238** | **$210,928** | **$1,230,877** | **$131,520** | **$5,822,131** |
| **August 2014 - June 2019[3]** | | | | | | | |
| Shifts[4] | 396,705 | 11,040 | 89,311 | 36,478 | 84,802 | 15,734 | 634,070 |
| Hours per Shift[5] | 1.5 | 2.5 | 4.6 | 1.5 | 3.5 | 2.0 | |
| Total Hours | 595,058 | 27,599 | 409,342 | 54,717 | 299,931 | 32,048 | |
| Wage & Benefits Rate[6] | $14.44 | $14.28 | $16.96 | $14.44 | $15.39 | $15.39 | |
| Aug 2014 - Jun 2019 Wages Due | **$8,592,635** | **$394,111** | **$6,942,441** | **$790,108** | **$4,614,490** | **$493,062** | **$21,826,846** |
| **July 2019 - November 2019[3]** | | | | | | | |
| Shifts[4] | 41,560 | 1,157 | 9,356 | 3,822 | 8,884 | 1,648 | 66,427 |
| Hours per Shift[5] | 1.5 | 2.5 | 4.6 | 1.5 | 3.5 | 2.0 | |
| Total Hours | 62,340 | 2,891 | 42,884 | 5,732 | 31,422 | 3,357 | |
| Wage & Benefits Rate[6] | $17.40 | $17.21 | $19.92 | $17.40 | $18.34 | $18.34 | |
| Jul 2019 - Nov 2019 Wages Due | **$1,084,715** | **$49,760** | **$854,246** | **$99,742** | **$576,411** | **$61,590** | **$2,726,464** |
| **Total Wages Due to Forced Labor Class under SCA Wage Approach** | | | | | | | **$30,375,441** |

Footnotes:

(1) I reduced the Kitchen Services shift length shown in Table 3 of the Bland report by 25 minutes to account for the lunch break taken by employees.  See further discussion in the Expert Report of Serena Morones dated August 31, 2020.

(2) The job duties of Recreation Sanitation Workers, as shown at GEO-Novoa_0000792, are primarily those of a janitor.  As such, I used the hours per shift and wage & benefits rate equal to those used for the job type Custodial Services.

(3) The damage period is bifurcated according to the effective date of contracts governing wages under the Services Contract Act as shown in Table 5b of the Bland Report.  The earliest month for which data was provided was September 2011.  In the absence of daily data, I used the month that most closely corresponded to the effective contract dates.

(4) Total Shifts for each period are based on the monthly totals shown at **Schedule 7.**  I allocated shifts between job types based on Table 4 of the Bland Report as summarized below.

| | Custodial Services | Laundry | Kitchen Services | Recreation | Multiple | Other | Total |
|---|---|---|---|---|---|---|---|
| Shifts by Job Type | 62.6% | 1.7% | 14.1% | 5.8% | 13.4% | 2.5% | 100.0% |

(5) See **Schedule 4A** for the calculation of shift length by job type.

(6) See **Schedule 4B** for the calculation of rates by job type.



**Schedule 4-2**

**Novoa et al. v The GEO Group, Inc.**

Impact of Revised Minimum Wage Rates on Childers Opinion

| Subcontractor Scenario with Revised Wage & Benefits Rates | |
|---|---:|
| But-for Wages (Schedule 5A) | $17,169,268 |
| Less: Amounts paid to Detainees[1] | (846,582) |
| Extra Profits with Revised Assumptions | $16,322,686 |
| Extra Profits per Childers Table 5 | 19,487,858 |
| **Impact of Revised Rate Assumptions** | **($3,165,172)** |
| | (16%) |

(1) Per Table 5 of the Childers Report.

Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 5**

**Novoa et al. v The GEO Group, Inc.**

But-for Wages, Subcontractor Scenario

| | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Total Hours[1] | 28,869 | 63,299 | 134,662 | 151,556 | 169,723 | 246,888 | 264,082 | 239,583 | 258,408 | 1,557,070 |
| Wage Rates Per Hour[2] | $8.80 | $8.80 | $8.80 | $9.35 | $9.90 | $11.00 | $11.55 | $12.10 | $13.20 | |
| But-for Wages, Subcontractor Scenario | $254,050 | $557,031 | $1,185,026 | $1,417,049 | $1,680,258 | $2,715,768 | $3,050,147 | $2,898,954 | $3,410,986 | **$17,169,268** |

**Footnotes:**

(1) Total hours by year for 2011 per **Schedule 5C.** 2012-2019 hours shown at Exhibit 3 to the Childers Report.

(2) See minimum wage rates and calculation of additional employer costs at **Schedule 5B.** The minimum wage rate changed on 6/30/2014, therefore I use the average of the beginning and ending rates for 2014 consistent with Exhibit 3 to the Childers Report.



**Schedule 5A**

**Novoa et al. v The GEO Group, Inc.**

Minimum Wage Rates

| Effective Date Start[1] | Effective Date End[1] | California Minimum Wage[1] | | Benefits Adjustment[2] | | Total Hourly Cost | |
|---|---|---|---|---|---|---|---|
| 1/1/2008 | 6/30/2014 | $ | 8.00 | $ | 0.80 | $ | 8.80 |
| 7/1/2014 | 12/31/2015 | $ | 9.00 | $ | 0.90 | $ | 9.90 |
| 1/1/2016 | 12/31/2016 | $ | 10.00 | $ | 1.00 | $ | 11.00 |
| 1/1/2017 | 12/31/2017 | $ | 10.50 | $ | 1.05 | $ | 11.55 |
| 1/1/2018 | 12/31/2018 | $ | 11.00 | $ | 1.10 | $ | 12.10 |
| 1/1/2019 | 12/31/2019 | $ | 12.00 | $ | 1.20 | $ | 13.20 |

**Footnotes:**

(1) California minimum wage rates for employers with 26 employees or more and effective dates per the California Department of Industrial Relations website at https://www.dir.ca.gov/iwc/minimumwagehistory.htm & https://www.dir.ca.gov/dlse/faq_minimumwage.htm

(2) I add 10% for additional employer expenses per Dr. Childers' methodology as described in paragraph 26 of the Childers Report.

**Novoa et al. v The GEO Group, Inc.**

Recalculation of 2011 Hours

| Per Childers Report Exhibit 3[1] | | | | | | |
|---|---|---|---|---|---|---|
| **Month** | **Custodial** | **Kitchen** | **Laundry** | **Other** | **Total** | |
| September 2011 | 584 | 438 | 27 | 34 | 1,083 | |
| October 2011 | 1,727 | 1,296 | 80 | 99 | 3,202 | |
| November 2011 | 1,979 | 1,485 | 92 | 114 | 3,670 | |
| December 2011 | 2,132 | 1,600 | 99 | 123 | 3,954 | |
| **Total** | **6,422** | **4,819** | **298** | **370** | **11,909** | **A** |
| | | | | | | |
| Oct-Dec Average[2] | 1,946 | 1,460 | 90 | 112 | 3,609 | |
| **Extrapolated May-Dec[3]** | **15,568** | **11,683** | **723** | **896** | **28,869** | |
| | | | | | | |
| Exhibit 3 2011 Annual Totals[3] | 19,266 | 14,457 | 894 | 1,110 | 35,727 | **B** |
| Multiple of annual totals to monthly totals per Exhibit 3 | 3.0 | 3.0 | 3.0 | 3.0 | 3.0 | **B / A** |

**Footnotes:**

(1) The 2011 hours by month for the relevant job categories are based on Exhibit 3 to the Childers report, which shows September as the first month.  The hours from the Other column are used for the Barber job category in the Childers Report.

(2) Dr. Childers does not provide daily data, but the significantly lower amounts in September may indicate that it is a partial month of data.  As such, we excluded it from the calculation of the average.

(3) We mutliply the monthly average by eight to estimate the 2011 portion of the damage period which begins in May, 2011 for the Forced Labor Class.  Dr. Childers' 2011 totals per Exhibit 3 to his report are three times higher than the September-December totals shown above.  He may have extrapolated the monthly average, including September, over 12 months, which would be outside the damage period.



**Schedule 5C**

**Novoa et al. v The GEO Group, Inc.**

Impact of Revised Wage Rates on Childers Opinion

| Employee Scenario with Revised Wage & Benefits Rates | |
|---|---:|
| But-for Wages (Schedule 6A) | $24,630,991 |
| Less: Amounts paid to Detainees[1] | (846,582) |
| Extra Profits with Revised Assumptions | $23,784,409 |
| Extra Profits per Childers Table 4 | 26,735,048 |
| **Impact of Revised Rate Assumptions** | **($2,950,639)** |
| | (11%) |

(1) Per Table 4 of the Childers Report.

Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 6**

**Novoa et al. v The GEO Group, Inc.**

But-For Wages, Employee Scenario

| | Janitor | Food Prep | Laundry | Barber | Total |
|---|---|---|---|---|---|
| **May 2011 - July 2014[1]** | | | | | |
| Hours[2] | 170,696 | 128,092 | 7,916 | 9,818 | |
| Wage & Benefits Rate[3] | $14.50 | $16.65 | $13.97 | $13.69 | |
| Period Total | $2,475,006 | $2,132,726 | $110,582 | $134,452 | $4,852,766 |
| **August 2014 - June 2019[1]** | | | | | |
| Hours[2] | 595,051 | 446,542 | 27,591 | 34,227 | |
| Wage & Benefits Rate[3] | $14.81 | $16.96 | $14.28 | $19.60 | |
| Period Total | $8,812,407 | $7,573,352 | $393,999 | $670,682 | $17,450,440 |
| **July 2019 - December 2019[1]** | | | | | |
| Hours[2] | 73,957 | 55,498 | 3,429 | 4,254 | |
| Wage & Benefits Rate[3] | $17.40 | $16.25 | $16.77 | $19.26 | |
| Period Total | $1,286,482 | $901,835 | $57,523 | $81,944 | $2,327,784 |
| **Total But-for Wages, Employee Scenario** | | | | | **$24,630,991** |

**Footnotes:**

(1) The damage period is bifurcated according to the effective date of contracts governing wages under the Services Contract Act.  In the absence of daily data, I used the months that most closely corresponded to the effective contract dates.

(2) Total shifts for 2012-2018 are based on the monthly totals for the relevant job categories shown at Exhibit 3 to the Childers Report.  2011 hours are are based on **Schedule 5C**. December 2019 hours are calculated based on the 2019 monthly average of Exhibit 3 to the Childers Report as shown below.

| Janitor | Food Prep | Laundry | Barber |
|---|---|---|---|
| 11,613 | 8,715 | 538 | 668 |

(3) See **Schedule 6B** for the calculation of the wage and benefits rates for the first three job types.  Barbers are not listed in the Wage Determination schedules, so I use the rates in Table 2 of the Childers report increased by 30.33% for benefits as described in his report.  I use the average of 2011-2014, the average of 2015-2018, and the 2019 rate for the first, second, and third contract period respectively.



**Schedule 6A**

**Novoa et al. v The GEO Group, Inc.**

But-for Wage Rates, Employee Scenario

**Note:** The source of the hourly rates shown below are Wage Determination schedules for each contract period as shown at Adelanto-CPRA_0002808, GEO-Novoa_00018147 and GEO-Novoa_00035184.

|  | Janitor[1] | Food Prep[2] | Laundry[3] |
|---|---|---|---|
| **Contract Period 5/27/2011 - 8/6/2014** | | | |
| Wage Rates | 11.00 | 13.15 | 10.47 |
| Benefits Rates | 3.50 | 3.50 | 3.50 |
| Total Hourly Rate | **$14.50** | **$16.65** | **$13.97** |
| | | | |
| **Contract Period 8/7/2014 - 6/24/2019** | | | |
| Wage Rates | 11.00 | 13.15 | 10.47 |
| Benefits Rates | 3.81 | 3.81 | 3.81 |
| Total Hourly Rate | **$14.81** | **$16.96** | **$14.28** |
| | | | |
| **Contract Period 6/24/2019 - Present** | | | |
| Wage Rates | 12.92 | 11.77 | 12.29 |
| Benefits Rates | 4.48 | 4.48 | 4.48 |
| Total Hourly Rate | **$17.40** | **$16.25** | **$16.77** |

**Footnotes:**

(1) For the Janitor role, I use the average rate for the positions Janitor, and Maid or Houseman for the most recent period.  No relevant position was included in the earlier contract periods.  As such, I use the changes between periods for the Cook I rate, which was included in all three Wage Determination Schedules, to calculate rates for the earlier periods.

| | Position | Rate |
|---|---|---|
| Period 5/27/2011 - 8/6/2014 | Cook I | $     13.15 |
| Period 8/7/2014 - 6/24/2019 | Cook I | $     13.15 |
| Period 6/24/2019 - Present | Cook I | $     15.44 |

(2) For the first and second contract periods, we used the rate for Cook I, as it was the only position listed that was relevant to the food service category.  For the current contract period, I use the rate for Food Service Worker because the position performs general kitchen work rather than focusing on cooking based on the Food Service Sanitation Worker job description shown at GEO-Novoa_00000115_GEO_VOL_001.

(3) For the Laundry category, I use the rate for the position Laundry Tech.  No position relevant to the Laundry category was included in the Wage Determination schedules for the current period.  Therefore, I use the increase in the Cook I rate to calculate the rate for the current period.

Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 6B**

**Novoa et al. v The GEO Group, Inc.**

Bland Report Monthly VWP Payments & Shifts

**Purpose:** This Schedule summarizes total payments made to VWP participants in each plaintiff class by month based exhibits of the Bland Report as described below.  Each payment is assumed to represent one detainees participation in the VWP for one day.

| Month | Wage Class Payments/Shifts[1] Bland Report Ex. 2a | Forced Labor Class Payments/Shifts[2] Bland Report Ex. 2b |
|---|---|---|
| Sep-2011 | - | 622 |
| Oct-2011 | - | 1,840 |
| Nov-2011 | - | 2,108 |
| Dec-2011 | - | 2,272 |
| Jan-2012 | - | 2,622 |
| Feb-2012 | - | 2,427 |
| Mar-2012 | - | 2,265 |
| Apr-2012 | - | 2,043 |
| May-2012 | - | 2,144 |
| Jun-2012 | - | 2,087 |
| Jul-2012 | - | 2,528 |
| Aug-2012 | - | 1,989 |
| Sep-2012 | - | 3,430 |
| Oct-2012 | - | 4,522 |
| Nov-2012 | - | 4,986 |
| Dec-2012 | - | 5,331 |
| Jan-2013 | - | 6,260 |
| Feb-2013 | - | 5,576 |
| Mar-2013 | - | 5,982 |
| Apr-2013 | - | 6,611 |
| May-2013 | - | 6,837 |
| Jun-2013 | - | 6,554 |
| Jul-2013 | - | 5,960 |
| Aug-2013 | - | 6,134 |
| Sep-2013 | - | 6,977 |
| Oct-2013 | - | 7,980 |
| Nov-2013 | - | 7,177 |
| Dec-2013 | - | 5,331 |
| Jan-2014 | - | 6,260 |
| Feb-2014 | - | 6,663 |
| Mar-2014 | - | 8,245 |
| Apr-2014 | - | 7,606 |
| May-2014 | - | 7,193 |
| Jun-2014 | - | 7,748 |
| Jul-2014 | - | 7,823 |
| Aug-2014 | - | 7,147 |
| Sep-2014 | - | 7,602 |
| Oct-2014 | - | 7,035 |
| Nov-2014 | - | 6,025 |
| Dec-2014 | 453 | 7,743 |
| Jan-2015 | 7,423 | 7,423 |
| Feb-2015 | 6,963 | 6,963 |
| Mar-2015 | 7,661 | 7,661 |
| Apr-2015 | 7,576 | 7,576 |
| May-2015 | 6,638 | 6,638 |
| Jun-2015 | 7,044 | 7,044 |
| Jul-2015 | 7,220 | 7,220 |
| Aug-2015 | 7,767 | 7,767 |
| Sep-2015 | 8,530 | 8,530 |

Morones Analytics

**Schedule 7**

**Novoa et al. v The GEO Group, Inc.**

| Month | Wage Class Payments/Shifts[1] | Forced Labor Class Payments/Shifts[2] |
|---|---|---|
| Oct-2015 | 9,294 | 9,294 |
| Nov-2015 | 10,179 | 10,179 |
| Dec-2015 | 11,237 | 11,237 |
| Jan-2016 | 9,789 | 9,789 |
| Feb-2016 | 9,757 | 9,757 |
| Mar-2016 | 10,476 | 10,476 |
| Apr-2016 | 9,933 | 9,933 |
| May-2016 | 12,427 | 12,427 |
| Jun-2016 | 11,931 | 11,931 |
| Jul-2016 | 12,382 | 12,382 |
| Aug-2016 | 15,403 | 15,403 |
| Sep-2016 | 12,073 | 12,073 |
| Oct-2016 | 11,972 | 11,972 |
| Nov-2016 | 13,595 | 13,595 |
| Dec-2016 | 12,130 | 12,130 |
| Jan-2017 | 13,727 | 13,727 |
| Feb-2017 | 12,040 | 12,040 |
| Mar-2017 | 13,522 | 13,522 |
| Apr-2017 | 12,379 | 12,379 |
| May-2017 | 13,473 | 13,473 |
| Jun-2017 | 12,638 | 12,638 |
| Jul-2017 | 11,928 | 11,928 |
| Aug-2017 | 12,627 | 12,627 |
| Sep-2017 | 10,937 | 10,937 |
| Oct-2017 | 12,448 | 12,448 |
| Nov-2017 | 13,526 | 13,526 |
| Dec-2017 | 12,509 | 12,509 |
| Jan-2018 | 13,765 | 13,765 |
| Feb-2018 | 10,737 | 10,737 |
| Mar-2018 | 11,133 | 11,133 |
| Apr-2018 | 10,892 | 10,892 |
| May-2018 | 7,880 | 7,880 |
| Jun-2018 | 10,677 | 10,677 |
| Jul-2018 | 13,171 | 13,171 |
| Aug-2018 | 13,252 | 13,252 |
| Sep-2018 | 11,052 | 11,052 |
| Oct-2018 | 13,266 | 13,266 |
| Nov-2018 | 10,843 | 10,843 |
| Dec-2018 | 11,006 | 11,006 |
| Jan-2019 | 12,060 | 12,060 |
| Feb-2019 | 10,963 | 10,963 |
| Mar-2019 | 11,429 | 11,429 |
| Apr-2019 | 12,234 | 12,234 |
| May-2019 | 12,499 | 12,499 |
| Jun-2019 | 10,505 | 10,505 |
| Jul-2019 | 14,074 | 14,074 |
| Aug-2019 | 13,900 | 13,900 |
| Sep-2019 | 13,900 | 13,900 |
| Oct-2019 | 13,057 | 13,057 |
| Nov-2019 | 11,496 | 11,496 |
| **Total** | **665,398** | **872,630** |

**Footnotes:**
(1) The damage period for the Wage Class begins December 19, 2014.
(2) The damage period for the Forced Labor Class begins May 1, 2011, but Exhibit 2b of the Bland Report notes that the "Detainee Payroll Summary begins September 2011."



**Schedule 7**

**Novoa et al. v The GEO Group, Inc.**

SCA Wage & Benefit Rates

| Based on Table 5 of the Bland Report | | | | | |
|---|---|---|---|---|---|
| **Contract Period** | **Custodial Services** | **Kitchen Services** | **Laundry** | **Recreation** | **Weighted Average**[1] |
| 5/27/2011 - 8/6/2014 | $14.20 | $16.65 | $13.97 | $19.72 | $15.57 |
| 8/7/2014 - 6/24/2019 | $14.44 | $16.96 | $14.28 | $20.03 | $15.85 |
| 6/25/2019 - Present | $17.40 | $19.92 | $17.21 | $24.75 | $18.94 |

**Footnotes:**

(1) The job types Multiple and Other used in the Bland Report do not correspond to jobs listed in the SCA Wage Determinations.  For the Multiple and Other job type rates, I calculated a weighted average rate using the four other job types based the weighting factors below.  Mr. Bland does not show his calculation for these categories.  I based this calculation on my understanding of footnote 42 in the Bland Report.

| | Custodial Services | Kitchen Services | Laundry | Recreation |
|---|---|---|---|---|
| Shift Allocation | 62.6% | 14.1% | 1.7% | 5.8% |
| Hours per Shift | 1.5 | 5 | 2.5 | 2.5 |

Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 8**

**Novoa et al. v The GEO Group, Inc.**

Weighted Average Shift Length based on Bland Report

| Job Type | Percent of Total Shifts[1] | Shift Length[2] |
|---|---:|---:|
| Custodial Services | 62.6% | 1.5 |
| Kitchen Services | 14.1% | 5.0 |
| Laundry | 1.7% | 2.5 |
| Recreation | 5.8% | 2.5 |
| Multiple | 13.4% | 3.7 |
| Other | 2.5% | 2.2 |
| Weighted Average Shift Length per Bland Report Assumptions | | **2.4** |

**Footnotes:**
(1) The allocation of shifts by job type is based on Table 4 of the Bland Report.
(2) See **Schedule 9A.**

Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 9**

**Novoa et al. v The GEO Group, Inc.**

Bland Report Shift Length by Job Type

| Job Type | Percent of Total Shifts[1] | Shift Length[2] |
|---|---|---|
| Custodial Services | 62.6% | 1.5 |
| Kitchen Services | 14.1% | 5.0 |
| Laundry | 1.7% | 2.5 |
| Recreation | 5.8% | 2.5 |
| Weighted Average of Primary Job Types (used for Other category) | | **2.2** |

| | | |
|---|---|---|
| Custodial Services | | 1.5 |
| Weighted Average | | 2.2 |
| Total (used for Multiple category) | | **3.7** |

**Footnotes:**
(1) The allocation of shifts by job type based on Table 4 of the Bland Report.
(2) The median length of each shift by job type per Table 3 of the Bland Report.

Morones Analytics
Valuation • Forensic Accounting • Damage Analysis

**Schedule 9A**