1  Korey A. Nelson (admitted *pro hac vice*)
   knelson@burnscharest.com
2  Lydia A. Wright (admitted *pro hac vice*)
   lwright@burnscharest.com
3
   **BURNS CHAREST LLP**
4  365 Canal Street, Suite 1170
   New Orleans, LA 70130
5  Telephone: (504) 799-2845
6  Facsimile: (504) 881-1765

7
   Counsel for the Certified Classes
8  **Additional Counsel on Signature Page**

9
                UNITED STATES DISTRICT COURT
10              CENTRAL DISTRICT OF CALIFORNIA
                      EASTERN DIVISION
11

12 **RAUL NOVOA**, **JAIME CAMPOS**          Civil  Action  No.  5:17-cv-02514-JGB-
13 **FUENTES**, **ABDIAZIZ KARIM**, and      SHKx
   **RAMON MANCIA**, individually and
14 on behalf of all others similarly situated,

15                                           **PLAINTIFFS' REPLY IN**
                    *Plaintiffs*,            **SUPPORT OF MOTION TO**
16                                           **EXCLUDE TESTIMONY OF DR.**
                                             **JEFFREY KROPF**
17 v.

18 **THE GEO GROUP, INC.**,

19                  *Defendant*.

20

21

22         GEO attempts to salvage the testimony of Dr. Jeffrey Kropf by narrowing his

23 proposed testimony to a single issue: "the psychological effects of seventy-two (72)

24 hours or less of segregation in a detention facility and how those effects vary across

25 individuals." Dkt. 349 at 8; *see also id.* at 21 (conceding that Kropf will not testify

26

27

28

                                           1

1   regarding any other issues set forth in his Report or Rebuttal Report).[1]  Even despite

2   this *mea culpa*, GEO has failed to carry its burden of showing by a preponderance of the

3   evidence that Kropf's proposed testimony is admissible. GEO cannot meet this burden,

4   because Kropf is not qualified to testify, and his opinions are neither reliable nor

5   relevant. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The

6   Court should grant Plaintiffs' motion and exclude Kropf's testimony in its entirety. *See*

7   *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (under

8   *Daubert*, "the judge is supposed to screen the jury from unreliable nonsense opinions.").

9   **A.   Kropf does not possess the specialized knowledge, training, insight, or**

10   **experience required to testify in this case.**

11   The record does not support GEO's characterization of Kropf as a "preeminent

12   authority on clinical psychology in detention centers" with "extensive qualifications in

13   the field of psychology of detained individuals." Dkt. 349 at 9; 12. As set forth in

14   Plaintiffs' Motion, Dkt. 333-1 at 7-8, Kropf has never authored, published, or edited any

15   research, scholarly papers, book chapters, books, or manuals on any topic. His only

16   published writing is a co-written lesson for physicians entitled "The Mentally Disordered

17   Offender's Path Within the California Correctional System: California's Mentally

18   Disordered Offender Act." *Id.* n.1. And the only research Kropf has conducted was for

19   his 1991 dissertation, which was "an exploration of Henry Murray's theory of

20   personology in relation to suicidality." Dkt. 333-5 (Kropf Dep.) at 71:16-18. Kropf has

21   never held an academic position, taught an academic course,  or served on the editorial

22   board of a scholarly journal or press. He holds no memberships in any professional

23   organizations. And it appears that the only professional honor he has ever received was

24   related to his undergraduate degree in 1984. *See* Dkt. 349 at 9.

---

26   [1] Based on GEO's concession that Kropf would opine <u>only</u> "as to the psychological
27   effects of seventy-two (72) hours or less of segregation in a detention facility and how
    those effects vary across individuals," Dkt. 349 at 8, Plaintiffs will address only the
28   narrowed scope of GEO's proffer here.

1    GEO admits that Kropf's professional experience is limited to treating individuals

2    confined to two state correctional institutions: the California Department of Corrections

3    and Rehabilitation's ("CDCR") Mentally Disordered Offender Unit and the Stark Youth

4    Correctional Facility ("Stark"). Dkt. 349 at 10. But GEO does not explain how or why

5    Kropf has expertise to opine on any issues in this case, which involves civil immigration

6    detention facilities (not jails or prisons) operated by a private contractor (not the state)

7    with a contractual obligation to comply with ICE's Performance Based National

8    Detention Standards (not the California Mentally Disordered Offender statute).

9    GEO fails to identify any relevant legal authority to support its position that

10   Kropf's possession of a Ph.D and a professional license overcome the dearth of relevant

11   expertise pertaining to the issues here. Indeed, every case relied upon by GEO reaches

12   the opposite conclusion, that is, that an expert must have actual knowledge of the issues

13   on which he or she seeks to opine. *See United States v. Young*, 916 F.3d 368, 380, n.6 (4th

14   Cir.), *cert. denied*, 140 S. Ct. 113 (2019) (expert qualified to testify based on his training

15   and extensive experience regarding the specific issues and factual situation presented in

16   the case); *In re Stand 'N Seal, Prod. Liab. Litig.*, 636 F. Supp. 2d 1333, 1337 (N.D. Ga.

17   2009) (same); *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir.), *opinion amended on*

18   *denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001) (same). *See also Tardif v. City of New York*, 344

19   F. Supp. 3d 579 (S.D.N.Y. 2018) (psychologist could testify that he examined the

20   plaintiff and diagnosed her with psychological injuries).

21   GEO cites *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957 (D. Ariz. 2007) for

22   the proposition that "peer review and publication is relevant, though not dispositive" of

23   an expert's credentials. Dkt. 349 at 15-16. But in that case, the court was actually

24   explaining that publication in a peer-reviewed journal of a theory or technique—not a

25   purported expert's scholarship—is relevant to "assessing the scientific validity of a

26   particular technique or methodology on which an opinion in premised." *Id.* at 960.

27

28

3

1    And, contrary to GEO's assertion, *Coppi v. City of Dana Point*, 2014 WL 12589639

2    (C.D. Cal. Feb. 24, 2014) (Bernal, J.) <u>supports Plaintiffs' position</u> that an expert must be

3    qualified to testify regarding the specific issues and factual situation presented in the

4    case. As a threshold issue, *Coppi* was a bench trial, so "concerns about admitting expert

5    legal opinion may be lessened." *Id.* at *7. *Coppi* involved a challenge under the Americans

6    with Disabilities Act to wheelchair accessibility of facilities around Strand Beach. *Id.* at

7    *1. An architect sought to testify as an expert regarding ADA compliance and

8    accessibility issues, including the appropriate specifications of wheelchair ramps. *Id.* at

9    *8. Finding the architect qualified to render an expert opinion on those issues, the Court

10   noted that he "is the former president of the Certified Access Specialist Institute. He is

11   currently a Certified Access Specialist, and has provided ADA access compliance

12   services for over 15 years. These services include ADA and access compliance seminars,

13   among others." *Id.* at *7.   The expert was certified not because he was a licensed

14   architect, but because he was an architect who specialized in ADA accessibility issues.

15   Here, in contrast to *Coppi*, Kropf has no expertise (let alone "extensive

16   qualifications," Dkt. 349 at 12) pertaining to the specific issues and factual situation at

17   issue. Kropf has no experience—academic or clinical—in civil immigration detention or

18   the PBNDS. Worse, he admits he has no understanding of how segregation at Adelanto

19   actually operates. *See* Dkt. 333-5 (Kropf Dep.) at 211:6-16 (assuming Adelanto has

20   congregate and segregated housing units because CDCR institutions have congregate

21   and segregated housing units); *id.* at. 212:13-21 ("I've not visited the Adelanto facility so

22   I can't offer a definitive description of segregated housing at that facility. I can offer an

23   impression based on my experience working at facilities that I imagine to be like

24   Adelanto."); *id.* at. 215 (stating that detainees in disciplinary segregation cannot

25   participate in the Voluntary Work Program because "I've never worked at a facility or

26   heard of a facility where a confined person placed in disciplinary housing would be

27   released from disciplinary housing to participate in activities in the general population.").

28

5:17-cv-02514-JGB-SHK

1   Kropf's general experience in psychology and apparent specialization in the

2   application of California's Mentally Disordered Offender statute do not qualify him to

3   testify as an expert on matters related to conditions of confinement with which he <u>admits</u>

4   he is not familiar. *See Burrows v. BMW of N. Am., LLC*, 2018 WL 6314187, at \*2 (C.D.

5   Cal. Sept. 24, 2018) ("Calef's broad automotive background and firsthand experience,

6   although impressive, does not qualify him to testify as an expert on all matters related to

7   the design and function of vehicles with which he is not personally familiar."). Indeed,

8   "clinical judgment does not provide an adequate basis for an opinion on an issue foreign

9   to [an expert's] clinical practice. This is the type of subjective belief and unsupported

10   speculation that *Daubert* guards against." *Nelson v. Matrixx Initiatives*, 2012 WL 3627399,

11   at \*12 (N.D. Cal. Aug. 21, 2012), *aff'd sub nom. Nelson v. Matrixx Initiatives, Inc.*, 592 F.

12   App'x 591 (9th Cir. 2015). Because Kropf lacks expertise relevant to this case, his

13   testimony should be excluded.

14   **B.   Kropf's opinions are not reliable.**

15   GEO concedes that expert testimony is "inadmissible when the facts upon which

16   the expert bases his testimony contradict the evidence." Dkt. 349 at 20 (citing *Tucker v.*

17   *Cty. of Riverside, California*, 2018 WL 6017036, at \*12 (C.D. Cal. May 23, 2018) (Bernal, J.).

18   And GEO admits that Kropf based his opinions on assumptions provided to him by

19   GEO's counsel, including the assumption that GEO complies with all applicable

20   contractual, regulatory, statutory, contract, client, and jurisdictional requirements in its

21   operation of Adelanto. *See* Dkt. 349 at 21. But there is no evidence supporting this

22   assumption; instead, <u>there is significant evidence already in the public record</u>

23   <u>contradicting it.</u> *See, e.g.* Dkt. 192-1 at 10-25 (citing record evidence demonstrating that

24   GEO does not comply with all applicable contractual, regulatory, statutory, contract,

25   client, and jurisdictional requirements in its operation of Adelanto). But Kropf did not

26   review any evidence or engage in any analysis of the fact of this case. *See, e.g.*, Dkt. 333-

27

28

5

5:17-cv-02514-JGB-SHK

1    1 (Kropf Dep.) at 261:7-20; 36:7-10; 116:7-22. He relied on no facts at all, but rather on

2    the mere say-so of GEO's counsel.

3         A purported expert may not opine, as GEO proffers Kropf to do, that his

4    conclusions are accurate simply because he has seen no "compelling evidence" to

5    suggest otherwise—especially when he admits (as does Kropf) that he engaged in no

6    investigation or analysis of any facts or data that affirmatively support his conclusions.

7    *See* Dkt. 333-1 (Kropf Dep.) at 30:10-18; 43:18-48:2; *Bragdon v. Abbott*, 524 U.S. 624, 653

8    (1998) (rejecting expert opinion "based on the absence of contrary evidence, not on

9    positive data," because "[s]cientific evidence and expert testimony must have a traceable,

10   analytical basis in objective fact before it may be considered on summary judgment");

11   *Nemes v. Dick's Sporting Goods, Inc.*, 2019 WL 3982212, at *15 (S.D.N.Y. Aug. 23, 2019)

12   (citing *Bragdon* and excluding expert testimony regarding injury causation reached

13   "simply by reading secondary documents and ruling out other hypothetical causes

14   without looking at the device in question or conducting any sort of particularized analysis

15   that build on his unique expertise").

16        Despite conducting no analysis of any fact or data—and, indeed, ignoring all

17   evidence to the contrary of GEO's preferred narrative—Kropf reaches the

18   "unequivocal" conclusion that solitary confinement for 72 hours or less does not cause

19   "serious psychological harm." Dkt. 349 at 11-12.  The basis for his conclusion is that he

20   **does not "recall"** any inmates or wards at CDCR or Stark "report[ing] or evidenc[ing]

21   distress" related to solitary confinement. *See* Dkt. 349 at 10 (citing Dkt. 333-3 at 24,  22).

22   Kropf's opinions, based on his "recollections" of what inmates in two state correctional

23   facilities have expressed to him, are not merely impeachable. They are inadmissible.

24        Kropf's literature review does not save his testimony. First, his proposed

25   testimony regarding the solitary confinement literature does not "grow naturally and

26   directly" out of his experience or research he conducted independent of this litigation.

27   *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Kropf conducted

28

5:17-cv-02514-JGB-SHK

1   his literature review (by Google search) only after he was retained by GEO.  Dkt. 333-5

2   (Kropf Dep.) at 265:25-266:23. His testimony should be excluded on this basis alone.

3   *Elbert v. Howmedica, Inc., a Div. Pfizer Hosp. Products Group, Inc.*, 59 F.3d 174, 1995 WL

4   383409, *1 (9th Cir. 1995) (excluding expert testimony where "prior to his enlistment as

5   an expert witness" he had no familiarity with the subject of his testimony). But even

6   beyond that, Kropf relies only on literature espousing outlier positions that are not

7   justified by existing scientific knowledge. *See* Dkt. 333-1 at 14-17.

8           GEO cites no relevant legal authority to support its position that Kropf's

9   proposed testimony is reliable. Instead, every case relied upon by GEO demonstrates

10  the opposite; that is, that expert testimony is admissible only where it is based on facts

11  and data. *See Tucker v. Cty. of Riverside, California*, 2018 WL 6017036, at *11 (C.D. Cal. May

12  23, 2018) (Bernal, J.) (permitting medical examiner to testify as to decedent's body

13  position and wounds because he performed the autopsy and thus his "conclusion is not

14  based on pure speculation without any factual support in the record"); *Brighton Collectibles,*

15  *Inc. v. Coldwater Creek Inc.*, 2010 WL 3718859, at *9 (S.D. Cal. Sept. 20, 2010) (permitting

16  economist to testify as to lost profit damages based on his extensive analysis of sales,

17  marketing, and financial data); *United States v. Tsosie*, 791 F. Supp. 2d 1099, 1115–16

18  (D.N.M. 2011) (permitting doctor to testify as to defendant's blood alcohol level because

19  her retrograde extrapolation was "scientifically valid and relevant to the facts of the case"

20  and "[t]he Supreme Court of New Mexico has approved experts using similar

21  assumptions"); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 960-70 (9th

22  Cir. 2013) (affirming district court's order permitting economist to testify as to lost

23  profits based on his analysis of underlying comparative sales, marketing, bankruptcy, and

24  market share data); *Linares v. Crown Equip. Corp.*, 2017 WL 10403454, at *9 (C.D. Cal.

25  Sept. 13, 2017) (Bernal, J.) (permitting a safety engineer to testify as to a forklift's

26  allegedly defective design based on his analysis of available data and experience

27  conducting safety inspections of forklifts).

28

5:17-cv-02514-JGB-SHK

1    As GEO's own legal research demonstrates, an expert's proposed testimony must

2    be based on facts and data, not speculation. Kropf's proposed testimony falls well short

3    of that requirement. These failings do not go to Kropf's credibility, but rather to the very

4    admissibility of his testimony. His testimony should be excluded.

5    **C.    Kropf's opinions are not relevant.**

6    GEO argues that Kropf's proposed testimony is relevant because the legal

7    definition of "serious harm" includes psychological harm, and Kropf is "keenly aware

8    of the effects of segregation and whether placement in segregation may give rise to

9    psychological harm." Dkt. 349 at 26-27. GEO's argument fails.

10   As GEO admits, "serious harm" is a term of art in the forced labor statutes. *Id.*

11   at 26-27; *see also* Dkt. 333-1 at 18. However, Kropf defines "serious psychological harm"

12   based on his understanding the term as used in the Mentally Disordered Offender statute

13   and Welfare and Institutions Code 1800. Dkt. 333-5 (Kropf Dep.) at 237:18-239:24;

14   237:10-14 (defining "serious psychological harm" as "a condition that substantially

15   impacts thoughts or perceptions of reality or emotional process or judgment or behavior

16   that is unlikely to remit without treating.").Civil immigration detention is not

17   penological, Class Members are not so-called "Mentally Disordered Offenders," and

18   California criminal statutes like the Mentally Disordered Offender Statute are not

19   relevant to any issue presented in this case. Kropf's proposed testimony—that Adelanto

20   is the same as CDCR and that Class Members are the same as Mentally Disordered

21   Offenders—will prejudice Plaintiffs by leading the jury to conflate criminal detention

22   with civil immigration detention. *See Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063–64

23   (9th Cir. 2002) (A trial court's "gatekeeping" obligation to admit only expert testimony

24   that is both reliable and relevant is especially important "considering the aura of

25   authority experts often exude, which can lead juries to give more weight to their

26   testimony."). And, again, while Kropf may be "keenly aware" of his own perception

27   about segregation at CDCR facilities and Stark based on his recollections, Dkt. 349 at

28

10, there is no question that Kropf has no knowledge whatsoever about segregation at Adelanto or any other civil immigration detention facility. *See* Section A, *supra.*

GEO again fails to cite any relevant legal authority to advance its position. In fact, GEO's proffered caselaw <u>does not even apply the correct legal standard</u>. *See Huddleston v. United States*, 485 U.S. 681, 681 (1988) (concerning the relevancy standard for the admissibility of character evidence under Fed. R. Evid. 404(b), not expert testimony under Fed. R. Evid. 702); *United States v. Hobson*, 519 F.2d 765 (9th Cir. 1975) (concerning the relevancy standard for the admissibility of physical evidence under Fed. R. Evid. 401, not expert testimony under Fed. R. Evid. 702); *Jacques v. Clean-Up Grp., Inc.*, 96 F.3d 506 (1st Cir. 1996) (concerning the relevancy standard for the admissibility of physical evidence under Fed. R. Evid. 401, not expert testimony under Fed. R. Evid. 702).

Similarly, *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993) (*en banc*) did not concern a *Daubert* challenge to expert testimony. There, the Ninth Circuit held that a prison policy requiring male guards to conduct random, nonemergency, suspicionless clothed body searches of female prisoners was cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 1531. In dicta, the court mentioned—in one paragraph of a 63-page opinion—that "[t]he inmates presented testimony from ten expert witnesses" including correctional officers and officials, social workers, psychologists, and an anthropologist. *Id.* at 1525-26. Is expert testimony generally a helpful tool in litigation? Sure. Does *Jordan* support GEO's supposition that Kropf's testimony is reliable simply because it is offered under the aura of expertise? No.

## CONCLUSION

For the reasons set forth herein and in Plaintiffs' Memorandum in Support of Motion to Exclude Testimony of Dr. Jeffrey Kropf, Dkt. 333-1, Plaintiffs respectfully request that the Court grant the pending motion and exclude Kropf's testimony for any purpose in this case.

5:17-cv-02514-JGB-SHK

Dated: October 19, 2020                Respectfully Submitted,


*/s/ Lydia A. Wright*
Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209

5:17-cv-02514-JGB-SHK

Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (CA Bar # 321366)
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

*Class Counsel*

5:17-cv-02514-JGB-SHK

1

## CERTIFICATE OF SERVICE

2      I, Lydia A. Wright, electronically submitted the foregoing document with the

3  clerk of the court for the U.S. District Court, Central District of California, using the

4  electronic case filing system. I hereby certify that I have provided copies to all counsel

5  of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

6

7  Dated: October 19, 2020

8                                             */s/ Lydia Wright*

9                                             Lydia A. Wright (admitted *pro hac vice*)
                                             lwright@burnscharest.com
                                             LA Bar # 37926

10                                            **BURNS CHAREST LLP**

11                                            365 Canal Street, Suite 1170
                                             New Orleans, LA 70130

12                                            Telephone: (504) 799-2845
                                             Facsimile: (504) 881-1765

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5:17-cv-02514-JGB-SHK