Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Class Counsel
***Additional Counsel on Signature Page***

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA**, **JAIME CAMPOS FUENTES**, **ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF SELENA MORONES** |

GEO's assertion that Plaintiffs' motion to exclude the testimony of its expert Selena Morones "is an attempt to challenge the substantive conclusions of her report," is wrong as a fundamental concept. Morones <u>effectively lacks</u> substantive conclusions because, as Morones repeatedly admitted, she undertook no actual analysis of Plaintiffs' damages. Her testimony centers on identifying possible problems but confirming nothing. At base, the testimony will provide nothing upon which this jury can determine the amount it should award Plaintiffs if liability is found.

Not only does Morones fail to provide any testimony upon which the jury could determine a fact in issue, she does not rebut the opinions of Plaintiffs' damages experts Jody Bland or Michael Childers. Morones only offers criticism of the assumptions used by Bland and Childers and does so—in the words of GEO's response—"based mostly in part on sheer mathematical calculations and general truths." Dkt. 368 (GEO Resp.) at 13. But those are not matters outside the general experience of a juror, so expert testimony is not warranted. Moreover, Morones testified that she actually <u>agrees</u> with the vast majority of the Childers and Bland assumptions and <u>all</u> of their methodologies, eliminating any value her testimony could provide.

In response, GEO <u>admits</u> that Morones offers no opinion as to any fact at issue. And GEO admits that Morones reviewed and considered materials it never produced. Each GEO concession provides an independent reason to exclude Morones' testimony in its entirety—especially given the lack of any benefit to the jury her "opinions" provide.

**I.      Morones offers no opinion on any fact at issue.**

Morones admits that she has no opinion regarding the quantum of damages Plaintiffs should be awarded. Dkt. 355-4 (Morones Dep.) at 206:18-207:3; *see also id.* at 23:23-24:16 (Morones has not quantified what you believe an appropriate damage measure is, has not reached an opinion about overall damages, and does not have any plan to testify about the appropriate damage amount for this case if called at trial). Instead, GEO argues that Morones' testimony is relevant because it is offered to "rebut" the testimony of Plaintiffs' damages experts. *See* Dkt. 368 (GEO Resp.) at 13. But the cases cited by GEO concern the appropriate <u>scope</u> of rebuttal testimony, not the <u>admissibility</u> of that testimony under *Daubert. See Estate of Goldberg v. Goss-Jewett Co., Inc.*, 2019 WL 8227387 (C.D. Cal. Oct. 29, 2019) (rebuttal report exceeded the limited scope of rebuttal permissible under Rule 26(a)(2)(D)); *Rodriguez v. Walt Disney Parks & Resorts U.S., Inc.*, 2018 WL 3532906 (C.D. Cal. July 2, 2018) (same); *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 635-36 (D. Haw. 2008) (same)).

In fact, GEO raises no legitimate argument to support the admissibility of Morones' testimony under the relevancy prong of *Daubert*. GEO contends that Morones' testimony would be relevant simply because this case involves damages. Dkt. 368 (GEO Resp.) at 19 ("expert testimony on monetary damages is relevant for the purposes of litigation."). GEO rests its argument on the relevance standard supplied by Federal Rule of Evidence 401 and 404 – not 702. *See* Dkt. 368 (GEO Resp.) at 19 (citing *Huddleston v. United States*, 485 U.S. 681, 681 (1988) (concerning the relevance standard for the admissibility of character evidence under Fed. R. Evid. 404(b), not expert testimony under Fed. R. Evid. 702); *United States v. Hobson*, 519 F.2d 765 (9th Cir. 1975) (concerning the relevance standard for the admissibility of physical evidence under Fed. R. Evid. 401, not expert testimony under Fed. R. Evid. 702); *Jacques v. Clean-Up Grp., Inc.*, 96 F.3d 506 (1st Cir. 1996) (concerning the relevance standard for the admissibility of physical evidence under Fed. R. Evid. 401, not expert testimony under Fed. R. Evid. 702)). But GEO ignores the *Daubert* standard set out in Fed. R. Evid. 702.

Next GEO argues that Morones' opinions are relevant because she "assessed the calculations put forth by Plaintiffs' experts, reviewed relevant evidence in this action, and determined that the final damage figures reached thereunder were flawed." Dkt. 368 (GEO Resp.) at 20. Again, the cases GEO relies on do not support its assertion. For instance, in *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 960-70 (9th Cir. 2013), an economist was permitted to offer expert opinions because he calculated lost profit damages by analyzing underlying comparative sales, marketing, bankruptcy, and market share data. And the accountant in *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1064 (D. Minn. 2015), reviewed a variety of evidence—including contemporaneous scheduling and payroll records, travel receipts, and computer log-in information—to reconstruct the plaintiff's workdays and calculate unpaid overtime compensation. *Id.* Morones did nothing of the sort.

Moreover, GEO is wrong. In contrast to both *Alaska Rent-A-Car* and *Longlois*, Morones has no opinion as to the proper or actual wage rates for GEO employees, the

average shift lengths of detainee workers at Adelanto, or the amount of backpay owed to class members. <u>She offers no opinions about any facts at all</u>. Morones characterized her work: "I reviewed the reports and analyzed the support, checked the math, pointed out areas that I thought the support was weak or the math was incorrect." Dkt. 355-4 (Morones Dep.) at 315:17-20. While the description is valid, her testimony as an expert is not. Morones' should not be permitted to testify under an aura of expertise about what she thinks Bland and Childers "may have" done, with no independent analysis of the issues or facts themselves—especially since her proffered testimony concerning the assumptions and analyses of Plaintiffs' experts Michael Childers and Jody Bland provide no relevant, reliable evidence to aid any determination of fact by the jury.[1]

## II. Morones' "evaluation" of Plaintiffs' experts' reports is not admissible expert evidence.

Morones is not being proffered to give any testimony upon which a juror could render a verdict. The sum and substance of her testimony is a series of critiques of certain assumptions used by Bland and Childers. But these challenges are properly presented at trial through cross-examination by GEO's counsel, not wrapped in the guise of expert testimony. *Stanley v. Novartis Pharm. Corp.*, 11 F. Supp. 3d 987, 995 (C.D. Cal. 2014) ("A trial court's gatekeeping obligation to admit only expert testimony that is both reliable and relevant is especially important 'considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony.'" (quoting *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063-64 (9th Cir. 2002))).

Even assuming Morones general qualifications as an accountant support her analysis of the mathematical calculations performed by Bland and/or Childers, GEO's attempt to use Morones to critique the assumptions they used is improper given Morones' demonstrable lack of expertise in or analysis of those assumptions themselves. *Certain Syndicate Subscribers to Down Side v. Lasko Prod., Inc.*, No. CIV-08-0220 MCA/DJS, 2010 WL

---

[1] With respect to valid observations regarding math, Plaintiffs' experts amended their calculations. But those changes eliminated any need to hear testimony about the math.

4

11507672, at *7 (D.N.M. Mar. 29, 2010) (excluding expert criticism of damages model assumption because, notwithstanding expert's "general qualifications" on the subject, he was not qualified to testify to the reasonableness of the underlying assumption itself). This foundational flaw pervades all of Morones' testimony. And, while GEO criticizes Plaintiffs' motion as "reductive" of Morones' opinions and touts from her report a list of the headings she provides as "opinions," an examination of that list and Morones' own testimony swiftly dispatches the relevance or admissibility of her opinions as to each.

**A.    Morones' evaluation of Michael Childers' report.**

First, when questioned about her review of Dr. Michael Childers' report, Morones admitted there is no real substance to her critique of either his assumptions, his methodology, or his conclusions. As to the six underlying assumptions she lists as having been made by Childers, Morones offered no actual rebuttal of anything:

- She has no criticism of Childers' <u>first</u> assumption ("that each dollar The GEO Group pays to detainees represents one day of participation in the VWP"), Dkt. 355-4 (Morones Dep.) at 78:6-19;

- Her sole criticism of Childers' <u>second</u> assumption regarding the number of hours worked per shift length is that Childers should not have relied on figures derived by Jody Bland (a critique addressed below), Dkt. 355-4 (Morones Dep.) at 80:21-81:14;

- She has no criticism of Childers' <u>third</u> assumption ("that the employees or subcontractors would have required the same amount of time as detainees performing tasks under the VWP "), Dkt. 355-4 (Morones Dep.) at 81:20-82:21;

- She has no criticism of Childers' <u>fourth</u> assumption (that he "categorizes the hours worked by detainees into four categories: Janitor, Food Prep, Laundry, and Barber"), Dkt. 355-4 (Morones Dep.) at 82:22-83:11; and

- Morones only criticism of Childers' <u>sixth</u> assumption (Childers' use of "California minimum wage rates, increased for workers compensation,

5

unemployment insurance, and Medicare/Social Security withholding" to calculate the but-for costs of using subcontracted employees) is in his mathematical calculations, Dkt. 355-4 (Morones Dep.) at 121:3-18.[2]

Morones' sole criticism of Dr. Childers' wages-based disgorgement analysis is based on what she characterizes as his <u>fifth</u> assumption: that he used "wages and benefits data from the Bureau of Labor and Statistics ["BLS"] to determine the but-for costs of hiring employees." Dkt. 355-3 (Morones Rep.) at ¶ 44. In her opinion, Morones believes Childers should have foregone use of the BLS data in favor of the figures given on the "wage determination schedules" attached to GEO's Adelanto contract <u>because she believed those schedules set forth the **mandatory** amounts GEO was required to pay its employees</u>. Dkt. 355-4 (Morones Dep.) at 102:8-103:12. Since she understood those amounts to set <u>mandatory</u> wage figures, Morones opined they provided a better measure of the benefit to GEO from its use of the dollar-a-day detainee labor. Dkt. 355-4 (Morones Dep.) at 84:23-85:13, 103:13-104:4.

Morones made her assumptive leap even though she understood the schedules represented the amount GEO would be reimbursed for its labors rather than what it was required to expend. Dkt. 355-4 (Morones Dep.) at 89:8-21. And she did no independent investigation, nor did she obtain any documentary basis, to confirm her assumption that the figures actually represented . Dkt. 355-4 (Morones Dep.) at 108:14-24. When confronted (for the first time) with GEO's own records showing her assumption was <u>wrong</u> and that the schedules do not reflect the amounts GEO was required to pay its employees, Morones "did not know" if she still believed her assessment to be a valid criticism of Childers' work at all. Dkt. 355-4 (Morones Dep.) at 112:14-17; 114:10-20.

But the law knows. Expert testimony based on facts that are contrary to the actual record is inadmissible. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d

---

[2] An error Dr. Childers corrected and testified about in his deposition which was the only issue Morones raised with regard to Dr. Childers' analysis based on a hypothesized use of a subcontractor to perform the work currently done by detainees.

6

235, 238 (S.D.N.Y. 1999), *aff'd*, 314 F.3d 48 (2d Cir. 2002) (damages expert testimony "is only helpful to the trier of fact if it is applicable to the facts of this case. His expertise is not helpful to the extent that it is based upon a causation assumption that plaintiff cannot prove."); *see also Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952-53 (8th Cir. 2014) (affirming the district court's exclusion of an expert opinion that "did not fit the specific facts" of the case).

Morones' sole actual criticism of the work by Dr. Childers is based on an incorrect, invalid assumption of her own—one contrary to the factual record. Plaintiffs therefore request this Court preclude any testimony or evidence from Selena Morones concerning the work, testimony, or opinions of Dr. Michael Childers.

**B.     Morones' evaluation of Jody Bland's report.**

As with Dr. Childers, Morones set forth four assumptions she thought Bland made when performing his analyses and based her critique of Bland's report on her disagreement with <u>one</u> of those assumptions. In her deposition Morones admitted that she agrees with the <u>first</u> assumption relied on by Bland ("that each dollar paid to detainees represents one day worked by a detainee"), Dkt. 355-4 (Morones Dep.) at 161:20-162:5; that she had no disagreement with Bland's four categorizations of job types, nor any disagreement with his use of a weighted average to deal with job types outside of the four main categorizations, *id.* at 162:19-163:4 (his <u>second</u> assumption); and no disagreement with his use of detainees' payments, job type mixtures and use of assumed shift lengths to estimate the total number of hours worked by detainees for each month, *id.* at 168:15-25, 169:22-170:7 (his <u>fourth</u> assumption). And, as to Bland's <u>third</u> assumption, his reliance on detainee sign-in sheets for a limited period of 11 weeks to estimate his mixtures of job types, Morones testified that she does not object to the use of the sign-in sheets to identify the mixture or that she even has any critique of the numbers used by Bland in his analysis; only that she does not see his data as consistent and that she would have preferred his use of a larger sample set—though she has no opinion of her own to offer on either of these issues. Dkt. 355-4

(Morones Dep.) at 163:23-164:7, 166:23-167:5, 212:18-213:14. At base, not a single Morones "opinion" disagrees with Bland on any of these topics.

Morones' only criticism of Bland's work is his calculation of the average shift length for the job categories he analyzed, a judgment based entirely on a comparison of Bland's number with that arrived at by Dr. Peter Nickerson in the case of *Washington v. GEO*, No. 3:17-cv-05806-RJB, In the United States District Court for the Western District of Washington.[3] Morones testified that she found Bland's work questionable since it reached a different shift-length figure than did Nickerson, and—in her opinion—the numbers should be comparable because they both analyzed work by detainees at facilities run by GEO. Dkt. 355-3 (Morones Rep.) at ¶¶ 25-31, Dkt. 355-4 (Morones Dep.) at 191:21-192:5. But Morones made her comparison despite <u>knowing</u> that two facilities are not the same size, detainees do not clean the same square footage in area, and the facilities do not employ the same number of workers to accomplish the necessary tasks. Dkt. 355-4 (Morones Dep.) at 136:25-137:10. Indeed, when asked about the lack of similarity—much less uniformity—between the facilities examined by Nickerson and Bland, Morones admitted she did not know if they were of the same construction type, the same layout, had the same number of pods, the same number of chow halls, the number of kitchen staff employed daily at either facility, or the number of laundry staff employed daily at either facility. Dkt. 355-4 (Morones Dep.) at 137:2-12; 140:12-22. Further, Morones admitted that she had no data to suggest that the same number of people are used per eight-hour shift at Adelanto (assessed by Bland), as are used in an eight-hour shift at the Northwest Detention Center (assessed by Nickerson). Dkt. 355-4 (Morones Dep.) at 190:13-17. Ultimately, <u>Morones</u>

---

[3] Morones did state in her report that Bland "assumes that a Recreation Specialist listed in the SCA Wage Determination schedules is a Representative Job Function," rather than a custodial job function; and thus "Mr. Bland's assumption for the Kitchen Services shift length does not account for the detainee's scheduled mealtime during their work shift." Dkt. 355-3 (Morones Rep.) at ¶¶ 36-39. But Morones never opines as to the actual job responsibilities of "the Recreation job type," nor has she undertaken or provided any analysis of whether kitchen workers actually <u>receive</u> meal breaks, an unfounded assumption which is at the heart of her challenge. *See* Dkt. 355-4 (Morones Dep.) at 128:4-7 (admitting she simply assumes detainees take their meals during work periods).

testified she had no data to support any analog between shift lengths at Northwest Detention Center and shift lengths at Adelanto, Dkt. 355-4 (Morones Dep.) at 192:22-193:1; and that she has never seen "anything, ever, that says the data that applies to Northwest Detention Center also applies to Adelanto," Dkt. 355-4 (Morones Dep.) at 193:21-25.

Morones used the shift-length figures reached by Nickerson in his analysis of GEO's Northwest Detention Center to criticize the shift-length figures reached by Bland in his analysis of GEO's Adelanto facility simply because they are both detention facilities run by GEO and she assumes GEO has uniform policies it applies to both.[4] Dkt. 355-4 (Morones Dep.) at 191:21-192:5. But Morones she admits she does not know that the Northwest Detention Center and Adelanto both operate their Voluntary Work Programs in compliance with the Performance-Based National Detention Standards ("PBNDS"), or if they actually are operated in the same manner by GEO. Dkt. 355-4 (Morones Dep.) at 178:13-25. Morones testified that she did nothing to determine whether it's reasonable to assume that the information contained in the Nickerson report relates at all to Adelanto and did not investigate the specifics of the operations to say they have uniform operational policies. Dkt. 355-4 (Morones Dep.) at 136:1-7, 192:8-11. Ultimately, Morones admitted that her assumption tying the two facilities together is an assumption "founded on no facts." Dkt. 355-4 (Morones Dep.) at 192:6-8.[5]

The failure by Ms. Morones to undertake any independent analysis of the shift-length issue, or to conduct an analysis of the evidence relied on by Nickerson when adopting his work as the measuring stick for Bland's opinions, renders her testimony inadmissible. *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. 2012) (noting that an expert my rely on the opinions of others "if other evidence supports

---

[4] Like many of her assumptions, Monones makes unfounded assumptions or asks questions about operations when GEO—the entity that hired her—has the information. But she either failed to ask GEO or she asked, and GEO failed to provide her data.

[5] Indeed, Morones testified that she measured the Bland analysis by the "benchmark" provided in the Nickerson Report, even though she has criticized the Nickerson Report itself as faulty and invalid. Dkt. 355-4 (Morones Dep.) at 194:11-25, 195:9-23.

his opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence").[6] The Court should reject it.

## III. GEO withheld materials reviewed and considered by Morones.

GEO failed to produce the materials from the *Washington* case reviewed and relied on by Morones to render her central criticism regarding the shift lengths worked by detainees used by Bland and Childers. On September 8, 2020, Magistrate Kewalramani ordered GEO to comply with its Rule 26 discovery obligations:

> [P]rovide any information relied upon in the experts report, in compliance with the Federal Rules of Civil Procedure, which includes anything within the care, custody, or control of GEO Group, including the expert report of Nickerson, and any other information upon which any expert report relies. As discussed on the record, appropriate documents shall be produced by close of business day September 10, 2020.

Dkt. 315.

Pursuant to that Order, GEO produced what it calls "the Nickerson report" on September 10, 2020. Dkt. 368 (GEO Resp.) at 8-9. Eleven days later, GEO disclosed what it calls "an additional Nickerson Report." *Id.* at 8-9 (emphasis added); *see also id.* at 10 (referring to "the relevant Nickerson Reports") (emphasis added). GEO asserts it "has produced every single document upon which Ms. Morones relied in preparing her opinion." Dkt. 368 (GEO Resp.) at 8. But that is not true. GEO ignores Morones' admission she reviewed everything relied upon by Nickerson in reaching his conclusions, Dkt. 355-4 (Morones Dep.) at 143:13-16, 145:2-4; and it does not deny that GEO has failed to produce the underlying data, reliance materials, and subsequent, precedent, and rebuttal reports by Nickerson.[7]

---

[6] As with Dr. Childers, the single objective concern regarding Bland's work made by Morones in her report, that "Mr. Bland may have failed to reduce his damages for the actual amounts paid to detainees," has been addressed by Bland in an amended report which Morones agreed eliminated any errors. Dkt. 355-4 (Morones Dep.) at 173:2-5.

[7] It bears mention that the materials that cause the Nickerson materials to be under seal in the *Washington* case are GEO's records. That is, GEO has demanded that Nickerson materials be kept under seal to protect GEO's secrets. And, in this action, GEO points to the *Washington* protective order as the reason it could not share the Nickerson materials. But those are all GEO materials.

GEO asserts that "Plaintiffs overstate the importance of the Nickerson materials to Ms. Morones' report" because all Morones did was "[use] one expert's conclusion in a similarly-situated lawsuit (which she participated in) to demonstrate the reasonableness of Mr. Childers' assumptions." Dkt. 368 (GEO Resp.) at 9. But Plaintiffs did not make the Nickerson materials an issue, Morones did by invoking the Nickerson Report as a data point. And GEO's admission that Morones never relied on the data and materials underlying Nickerson's work only fuels Plaintiffs' argument. GEO admits that Morones uses Nickerson's conclusions as "comparable" figures without any assessment of the basis upon which Nickerson reached his conclusions or why his calculations regarding a different work program, at a different facility, with different staffing needs provide a relevant and reliable basis for testimony in this "similarly-situated lawsuit." GEO's failed logic would allow expert testimony on materials costs, labor rates, or gross sales figures about a facility in one suit to compare to lost profits margins about a different facility in a different suit. It simply makes no sense.

GEO's remaining arguments on this point make even less sense. GEO fails to explain why Plaintiffs would or should have appealed Magistrate Kewalramani's Order requiring GEO to disclose the Nickerson Materials. *See* Dkt. 368 (GEO Resp.) at 9. The order was right. Contrary to GEO's assertions, both Rule 26 and the Court's Order require GEO to disclose all expert reliance materials, not just whatever materials GEO deems "important" or "relevant." *See* Dkt. 368 (GEO Resp.) at 9-10. GEO cannot choose what to produce and what to withhold. The proper remedy for GEO's discovery misconduct is exclusion of Morones' testimony.

## CONCLUSION

For the foregoing reasons, the Court should strike GEO's rebuttal expert disclosure and prohibit GEO from calling Selena Morones to testify as an expert witness.

Dated: November 2, 2020               Respectfully submitted,

/s/ *Lydia A. Wright*
Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221

Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (CA Bar # 321366)
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

*Class Counsel*

### CERTIFICATE OF SERVICE

I, Lydia A. Wright, electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).
Dated: November 2, 2020

*/s/ Lydia Wright*
Lydia A. Wright (admitted *pro hac vice*)
lwright@burnscharest.com
LA Bar # 37926
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765