UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-2514 JGB (SHKx)** | Date | December 18, 2020 |
|---|---|---|---|
| Title | ***Raul Novoa, et al. v. The GEO Group, Inc.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Plaintiffs' Motion to Exclude Testimony of Dr. Jeffrey Kropf (Dkt. No. 333); (2) DENYING Plaintiffs' Motion to Exclude Testimony of Serena Morones (Dkt. No. 355); and (3) VACATING the December 21, 2020 Hearing (IN CHAMBERS)**

Before the Court are Plaintiffs' motions to exclude the testimony of Dr. Jeffrey Kropf ("Kropf Motion," Dkt. No. 333) and Serena Morones ("Morones Motion," Dkt. No. 355) (collectively, "Motions"). The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motions, the Court GRANTS the Kropf Motion, and DENIES the Morones Motion. The Court VACATES the hearing set for December 21, 2020.

## I.   BACKGROUND

Plaintiffs filed the Kropf Motion on October 1, 2020. In support of the Kropf Motion, Plaintiffs filed the Declaration of Lydia A. Wright ("Wright Declaration ISO Kropf Motion," Dkt. No. 333-2), along with Exhibits A through J (Dkt. Nos. 333-3 to 12), including:
- Expert Report of Dr. Jeffrey Kropf ("Kropf Report," Dkt. No. 333-3);
- Rebuttal Report of Dr. Jeffrey Kropf ("Kropf Rebuttal Report," Dkt. No. 333-4); and
- Transcript of the Deposition of Dr. Jeffrey Kropf ("Kropf Deposition," Dkt. No. 333-5).

Defendant filed an Opposition on October 9, 2020. ("Kropf Opposition," Dkt. No. 349.) Plaintiffs replied on October 26, 2020. ("Kropf Reply," Dkt. No. 356.)

Plaintiffs filed the Morones Motion on October 16, 2020. (Morones Mot.) In support of the Morones Motion, Plaintiffs filed the Declaration of Lydia A. Wright ("Wright Declaration ISO Morones Motion," Dkt. No. 355-2), along with Exhibits A through C (Dkt. Nos. 355-3 to 5), including:

- Rebuttal Expert Report of Serena Morones ("Morones Report," Dkt. No. 355-3); and
- Transcript of the Deposition of Serena Morones ("Morones Deposition," Dkt. No. 355-4).

Defendant filed an Opposition on October 26, 2020. ("Morones Opposition," Dkt. No. 368.) Plaintiffs replied on November 2, 2020. ("Morones Reply," Dkt. No. 376.)

## II. LEGAL STANDARD

Expert witness testimony is governed by Federal Rule of Evidence 702, which provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 should be applied consistent with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion testimony.'" Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 588 (1993) (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169 (1988)). A trial court's "gatekeeping" obligation to admit only expert testimony that is both reliable and relevant is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." Mukhtar v. Cal. State Univ., 299 F.3d 1053, 1063–64 (9th Cir. 2002). Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010).

The trial court is accorded wide discretion when acting as gatekeepers for the admissibility of expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151–52 (1999). As an initial matter, the court must determine if a witness has the required expertise, whether it be "knowledge, skill, experience, training, or education" under Rule 702(a). Next, courts must ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. The expert's opinion must be based on "scientific knowledge;" opinions based on unsubstantiated generalizations or opinions not derived by the scientific method must be excluded. Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1316 (9th Cir. 1995)

//
//

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk MG

### III.  DISCUSSION

**A.  Motion to Exclude Testimony of Dr. Jeffrey Kropf**

Plaintiffs seek to exclude the opinion of Dr. Jeffrey Kropf, who rendered the following opinions:[1] "[t]hat placement in solitary confinement under typical conditions of solitary confinement for a period of 72 hours or less does not cause serious psychological harm, that awareness of potential placement in solitary confinement and standard conditions of solitary confinement for a period of 72 hours or less as a sanction for misconduct does not cause serious psychological harm, and that there are benefits, psychological benefits, associated with participating in the institutional work program." (Kropf Dep. 14:12-21.)  Defendant asserts that it designated Dr. Kropf "to offer expert opinions as to the psychological effects of seventy-two (72) hours or less of segregation in a detention facility and how those effects vary across individuals." (Kropf Opp'n at 1.)  Plaintiffs challenge Dr. Kropf's knowledge and expertise, as well as the reliability and relevance of his opinions. (See Kropf Mot.)

#### 1.  Dr. Kropf's Qualifications

Plaintiffs argue that Dr. Kropf does not have the specialized knowledge, training, insight, or experience required to testify in this case. (Mot. at 3; Reply at 2.)  Dr. Kropf is a psychologist licensed by the California Board of Psychology since 1992. (Kropf Report, Ex. B; Kropf Mot. at 3.)  He holds a Ph.D. in Clinical Psychology from the California School of Professional Psychology and a Bachelor's degree in Psychology from UCLA. (Id.)  He has worked as a psychologist at the California Department of Corrections & Rehabilitation's Mentally Disordered Offender Unit since 1999. (Id.)  Prior to that role, Dr. Kropf worked as a staff psychologist at the Heman Stark Youth Correctional Facility for six years. (Id.)

First, Plaintiffs argue that Dr. Kropf has never held a position in academia or taught an academic course; has not authored, published, edited, or peer-reviewed any research, articles, scholarly papers, book chapters, books, or manuals; has not served on the editorial board of a scholarly journal or press; is not a member of any professional organizations; and no federal court has qualified him as an expert in any subject. (Kropf Mot. at 3-4; Kropf Dep. 83:10-84:25, 89:1-8, 272:13-15.)  Defendant counters that "although publishing in a peer-reviewed publication is often

---

[1] Defendant clarified in its Kropf Opposition that assertions about GEO's compliance with regulatory and other requirements in its operation of the Adelanto ICE processing center, the voluntariness of the Voluntary Work Program, and Class Representatives' testimony about being coerced to meet cleaning responsibilities do not represent Dr. Kropf's opinions, but are instead other statements and assumptions. (Kropf Opp'n at 4.)  After a review of Dr. Kropf's report, the Court understands Plaintiffs' confusion, as the distinction between Dr. Kropf's purported opinions and assumptions is far for clear. (See Kropf Report.)  The Court notes, however, that as an expert witness, Dr. Kropf may not offer legal conclusions, including whether Defendant is in compliance with relevant regulations and statutes.  See Stanley v. Novartis Pharm. Corp., 2014 WL 12573393, at *4 (C.D. Cal. May 6, 2014).

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk MG

a hallmark of expert witness reliability, that hallmark is a guidepost, not a mandatory prerequisite to qualification as an expert." United States v. Young, 916 F.3d 368, 380 (4th Cir. 2019). (Kropf Opp'n at 7-8.) And even where an expert has not been qualified by a court, "it is the quality of the expert's qualifications that a district court must focus on." Id. (internal quotation marks omitted). The Court agrees that Dr. Kropf's lack of peer-reviewed publications and prior qualification alone do not warrant exclusion.

However, those limitations are compounded by Dr. Kropf's lack of any expertise in the field of civil immigration detention. (Kropf Mot. at 4; Kropf Reply at 2.) Dr. Kropf acknowledged that he has not "stepped foot in [an immigration facility][,]" (Kropf Mot. at 4), and bases his opinions on his professional experience treating individuals in two state correctional institutions. Plaintiffs argue that this experience translates poorly to this case, which involves civil immigration detention facilities (not jails or prisons) operated by a private contractor (not the state), applying ICE's Performance Based National Detention Standards ("PBNDS") (not the California Mentally Disordered Offender statute). (Kropf Reply at 3.) Indeed, Dr. Kropf has no academic or clinical experience in civil immigration detention or with the applicable regulations, nor does he appear to have an understanding of conditions of confinement at the civil immigration detention facilities at issue. He admits, for instance, that he "can't offer a definitive description of segregated housing at [Adelanto]" but can offer "an impression based on [his] experience working at facilities that [he] imagine[s] to be like Adelanto." (Kropf Reply at 4 (citing Kropf Dep. at 212:13-21).)

Defendant counters that Dr. Kropf's lack of experience working in immigration facilities does not diminish his qualifications in psychology and segregation in detention, and that Plaintiffs have not established how or why segregation within a criminal detention setting would be materially different from that in a civil immigration detention facility. (Kropf Opp'n at 11.) See Tardiff v. City of New York, 344 F. Supp. 3d 579, 599 (S.D.N.Y. 2018) (noting that "a lack of specialization is not a per se bar to qualification as an expert" if they have "educational and experiential qualifications in a general field closely related to the subject matter in question").

But after considering Dr. Kropf's qualifications, reports, and deposition testimony, the Court agrees with Plaintiffs that Dr. Kropf's general psychology background and experience performing psychological evaluations in correctional settings do not qualify him to testify as an expert on the effects of segregation in civil immigration detention, with which he admittedly is not familiar. See, e.g., Burrows v. BMW of N. Am., LLC, 2018 WL 6314187, at *2 (C.D. Cal. Sept. 24, 2018) ("Calef's broad automotive background and firsthand experience, although impressive, does not qualify him to testify as an expert on all matters related to the design and function of vehicles with which he is not personally familiar. Calef is not qualified to provide expert opinions that would be helpful to the trier of fact in this case."). Nor does his clinical judgment provide "an adequate basis for an opinion on an issue foreign to his clinical practice." Nelson v. Matrixx Initiatives, 2012 WL 3627399, at *12 (N.D. Cal. Aug. 21, 2012), aff'd sub nom. Nelson v. Matrixx Initiatives, Inc., 592 F. App'x 591 (9th Cir. 2015). Unlike the experts discussed in Defendant's authorities, Dr. Kropf does not purport to offer expert opinions about an individual he evaluated or in areas squarely within his training or expertise. Rather, he

purports to testify about "the psychological effects of seventy-two (72) hours or less of segregation in a detention facility," (Opp'n at 1), despite having little to no understanding of how segregation operates in civil immigration detention facilities like the one at issue, or about civil immigration detention more broadly.  These issues are "foreign to his clinical practice[,]" and particularly given his lack of specialized training or experience with empirical research, his testimony would be based on "the type of subjective belief and unsupported speculation that Daubert guards against."  Nelson, 2012 WL 3627399, at *12.

Having found that Dr. Kropf lacks relevant experience and qualifications to offer expert opinion on the effects of segregation in civil immigration facilities, the Court need not reach the reliability or relevancy of Dr. Kropf's opinions.  The Court GRANTS Plaintiffs' Kropf Motion and EXCLUDES Dr. Kropf's testimony.

**B.  Motion to Exclude Testimony of Serena Morones**

Plaintiffs also seek to exclude the testimony of Serena Morones, who Defendant retained as a rebuttal expert "to address the monetary relief that the plaintiffs could recover if they were to prevail on their claims."  (Morones Report at ¶ 3.)  Plaintiffs argue that the Court should exclude Morones's testimony because (1) GEO failed to disclose materials considered in reaching her opinion, and (2) Morones's opinions are not reliable or relevant.  (Morones Mot.)  For the reasons described below, the Court disagrees.

**1.  Failure to Disclose Reliance Materials**

Plaintiffs first argue that Defendant did not comply with Federal Rule of Civil Procedure 26, requiring that experts disclose "a complete statement of all opinions the expert will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them."  Fed. R. Civ. Proc. 26(a)(2)(B)(i)-(ii).  Pursuant to Rule 26, each party must "provide the opposing party with access to all materials reviewed or considered by the expert."  In re Google Adwords Litig., 2010 WL 5185738, at *3 (N.D. Cal. Dec. 8, 2010).  And Rule 37(C)(1) provides that any information that is not properly disclosed as required by Rule 26 may not be used at trial.  See Goodman v. Staples The Office Superstore, LLC, 644 F.3d 1101, 1106-07 (9th Cir. 2001).

Morones relied on the Expert Report of Peter H. Nickerson, Ph.D. dated September 20, 2018 ("Nickerson Report") and the underlying data in her Rebuttal Report.  (Morones Report, Attachment B.)  GEO failed to produce that report, a subsequent amended Nickerson Report, or any underlying data or reliance materials related to the Nickerson materials upon which Morones relied.  On September 8, 2020, Magistrate Judge Kewalramani ordered Defendant to "provide any information relied upon in the experts report, in compliance with the Federal Rules of Civil Procedure, which includes anything within the care, custody, or control of GEO Group, including the expert report of Nickerson, and any other information upon which any expert report relies."  (Dkt. No. 315.)  Plaintiffs argue that GEO only produced the Nickerson Report and amended report, but still did not produce any underlying data, reliance materials, subsequent

and precedent reports, or rebuttal reports.  (Morones Mot. at 4.)  Plaintiffs assert that they have been prejudiced by being limited from conducting meaningful expert discovery in preparation for the motion for summary judgment and for trial, and ask the Court to exclude the Morones rebuttal report.  (Id. at 5.)

Defendant counters that it fully complied with Rule 26 and Magistrate Judge Kewalramani's order, and adds that Morones did not rely on the Nickerson Report's substantive data. (Morones Reply at 5-6.)  But Morones testified that she reviewed everything that Nickerson relied on, and had access to underlying material from the Nickerson Report. (Morones Dep. at 143:13-16, 145:2-4; Morones Reply at 10.)  To comply with Rule 26, Defendant must provide Plaintiffs access to all materials reviewed or considered by Morones.  In re Google Adwords Litig., 2010 WL 5185738, at *3.

The Court, however, will not exclude the entirety of the Morones Report on this basis. The Court considers Defendant's assertion that the Nickerson materials are not central to the Morones Report, and the fact that any prejudice to Plaintiffs by Defendant's omission may be cured. (Morones Opp'n at 6-7.)  Rather, the Court ORDERS Defendant to produce any underlying materials related to the Nickerson Report that Morones reviewed and considered by January 4, 2021.  Defendant's failure to do so may be grounds for exclusion of Morones's testimony.

### 2. Morones's Qualifications

Plaintiffs do not appear to challenge Morones's qualifications or expertise.  Morones is a Certified Public Accountant licensed in Oregon. (Morones Report at 2.)  She holds a Master of Taxation degree from Portland State University, and a Bachelor of Arts in Accounting from the University of Oregon.  (Id.)  Morones has 30 years of accounting experience, which includes 24 years of specializing in analyzing commercial damages, conducting forensic accounting investigations, and performing business valuations.  (Id.)  She has been qualified as an expert in damages assessment matters in federal and state courts.  (Id.)  The Court finds that Morones is qualified to offer her expert opinions.

### 3. Reliability

The Supreme Court has provided a non-exclusive list of factors that courts may consider when determining the reliability of expert testimony, which includes: "(1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community."  Messick v. Novartis Pharm. Corp., 747 F.3d 1193, 1197 (9th Cir. 2014) (quoting Daubert, 509 U.S. at 592-594).  But these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (quoting Daubert, 509 U.S. at 594).  Because this list of factors was meant to be helpful, not definitive, the trial court has discretion to decide how to test

and expert's reliability based on the "particular circumstances of the particular case." <u>Primiano v. Cook</u>, 598 F.3d 558, 564 (9th Cir. 2010) (internal quotation marks omitted).

Plaintiffs argue that Morones's testimony is not reliable because it is based on "an unblinking reliance on information provided by GEO's counsel, not objective, verified facts or data." (Morones Mot. at 6.) Specifically, Plaintiffs object to Morones's failure to ascertain the actual wages GEO pays its non-detainee employees; and her failure to ascertain actual shift lengths at Adelanto, and whether they are analogous to those at another detention center which she opined Plaintiffs' expert should have considered. (<u>Id.</u> at 6-8.)

Defendant counters that Morones did not merely rely on Counsel's say-so, but instead mostly relied on "sheer mathematical calculations and general truths derived from specialized experience." (Morones Opp'n at 10.) Defendant adds that the wage rates and shift lengths Morones used in her analysis were also derived from her review of the ICE Contract Amendment, scheduling materials, and other evidence, and were comparative to the data used by Plaintiffs' experts. (<u>Id.</u> at 10-12.) While Morones may not merely parrot the opinions of others, she "can rely on data provided to [her] without independent verification because the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." <u>Mighty Enterprises, Inc. v. She Hong Indus. Co.</u>, 745 F. App'x 706, 709 (9th Cir. 2018) (internal quotation marks omitted). That is particularly true where Morones's experience and background make her competent to review these different sources of information and form a reasoned opinion. <u>See, e.g.</u>, <u>White v. Ford Motor Co.</u>, 312 F.3d 998 (9th Cir. 2002) ("Although [the expert witness] had not done any of the experiments himself, his training would make him competent to read the [available] reports, and those reports supported the opinion he gave.").

Although Plaintiffs take issue with Morones's assumptions and raise valid criticisms, these arguments are better directed at the weight of her testimony, rather than its admissibility. [2] <u>Mighty Enterprises, Inc.</u>, 745 F. App'x at 709 ("An expert can use assumptions, inferences, and comparisons. Such assumptions are admissible; their reliability is impeachable."). The Supreme Court has emphasized that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the tradition and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596. The Court therefore finds that Morones's opinions are reliable.

### 4. Relevance

Rule 702(a) provides that an expert may testify if their specialized knowledge will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony must be "relevant to the task at hand." <u>Daubert v. Merrell Dow Pharm., Inc.</u>,

---

[2] Plaintiffs insist that Morones' testimony is based on facts contrary to the actual record and is therefore inadmissible. (Morones Reply at 6.) The Court is not convinced, and finds Plaintiffs' arguments more appropriate for impeachment of Morones's testimony.

43 F.3d 1311, 1320 (9th Cir. 1995) (hereinafter <u>Daubert II</u>).  There must be a "fit" between the testimony and an issue in the case.  (<u>Id.</u>)  Plaintiffs argue that there is no such fit here because Morones does not challenge most of the conclusions, assumptions, and methodologies of Plaintiffs' damages experts, Jody Bland and Dr. Michael Childeres.  (Morones Mot. at 9.)  According to Plaintiffs, Morones instead criticizes what they "may have" done or whether the evidence "may not" support their assumptions.  (<u>Id.</u>)  Plaintiffs argue that Morones offers no opinions about any facts, as she has no opinion as to the proper or actual wage rates for GEO employees, average shift lengths of detainee workers, or amount of backpay owed to class members.  (Morones Reply at 3-4.)

Defendant replies that Morones's opinion as to whether Plaintiffs' experts' opinions are adequately supported bears on whether detainees should have been compensated at a particular rate of pay under Plaintiffs' theory of the case, the average shift length, and what amount of backpay would be warranted.  (Morones Opp'n at 16.)  The Court agrees that Morones's proffered opinion relates to key issues underlying this case and may aid the jury in resolving those issues, even where the validity of Morones's (and Plaintiffs' experts') assumptions may be disputed.  As established above, many of Plaintiffs' objections to Morones's testimony concern issues of weight rather than admissibility.  Based on the arguments and evidence presented at this juncture, the Court declines to exclude or limit Morones's testimony as irrelevant.

The Court therefore DENIES Plaintiffs' Morones Motion.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to exclude Dr. Kropf's expert testimony, and DENIES Plaintiffs' motion to exclude Morones's expert testimony.  In addition, the Court ORDERS Defendant to produce any underlying materials related to the Nickerson Report by January 4, 2021.

**IT IS SO ORDERED.**