# EXHIBIT H

DECLARATION OF GABRIEL A. VALDEZ

I, Gabriel A. Valdez, declare as follows:

1.      I am employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO).

2.      I am an Assistant Field Office Director (AFOD) with in the ERO Los Angeles Field Office. I have held this position since January 2011. I currently am assigned to the Adelanto ICE Processing Center (APC) in Adelanto, California. I have worked in various other positions within ICE since June 21, 1998.

3.      ICE/ERO at Adelanto is responsible for managing the immigration cases of detained individuals. In addition, ICE/ERO has a secondary responsibility to observe, identify, and notify the various contractors or sub-contractors of any perceived deficiencies in adherence to their responsibility under Performance-Based National Detention Standards 2011 (PBNDS 2011 or PBNDS). See https://www.ice.gov/detention-standards/2011 (2011 Operations Manual ICE Performance-Based National Detention Standards).

4.      As an AFOD, I manage the detained docket for the aliens who are detained at the APC. My primary responsibilities include immigration case management for those detained at APC and general oversight responsibilities for ICE interests, including monitoring of adherence to PBNDS.

5.      ICE is charged with removing aliens who lack lawful immigration status in the United States. Detention is an important and necessary part of immigration enforcement. Detained aliens who are in exclusion, deportation, or removal proceedings under the Immigration and Nationality Act are detained at Service Processing Centers or other detention locations under the authority of ICE, as are aliens who are pending appeals, results from the Board of

Exhibit

Exhibit No.: 9
Name: Ragsdale
Date: 6-12-19   VC
ESQUIRE

Case 5:18-cv-01125-R-GJS Document 52-1 Filed 03/09/18 Page 2 Page 3 Page ID #:359

Immigration Appeals, or aliens with administrative final orders of removal who are being
processed for removal to their native countries. ICE detains people for no other purpose than to
secure their presence for both immigration proceedings and their removal, with a special focus
on those who represent a risk to public safety, or for whom detention is mandatory by law.

6.      ICE acquires detention services through three primary types of arrangements: (1)
Service Processing Centers (SPCs), which are government-owned facilities and are operated
directly by ICE; (2) Contract Detention Facilities (CDFs), which are contractor-owned-and-
operated facilities at which ICE has contracts with private services providers; and (3)
Intergovernmental Service Agreements (IGSAs), which are agreements between ICE and a state
or political subdivision of a state, such as a local government. ICE's unique IGSA authority is
codified at 8 U.S.C. § 1103(a)(11)(A), which provides that ICE may enter into agreements with a
state or subdivision thereof to procure, "necessary clothing, medical care, necessary guard hire,
and the housing, care, and security of persons detained by [ICE] pursuant to Federal law . . . ."

7.      The APC, in the City of Adelanto, California, is operated under an IGSA between
ICE and an independent contractor, the City of Adelanto (City). (*See* IGSA, attached hereto as
Exhibit 1.) The IGSA's purpose is for the City to provide, "detention and care of persons
detained under the authority of the Immigration and Nationality Act." *See* IGSA Article I(A). It
also provides a detailed list of the "Covered Services" as: 1) bed space; 2) basic needs; 3) unit of
service and financial liability; 4) interpretive/translation services; 5) transport and transportation
services; 6) guard services; and, 7) medical services. *See* IGSA Article III(A)-(G).

8.      The IGSA between the City and ICE does not reserve to ICE any direct control of
any part of the contracted work and only provides that ICE "will conduct periodic inspections of
the facility to assure compliance with" ICE standards. *See* IGSA Article V. The IGSA is a

performance-based contract, which is a results-oriented method of contracting focused on

outputs, quality, and outcomes. Performance-based contracts do not designate how a contractor

is to perform the work, but rather establish the expected outcomes and results. It is then the

responsibility of the contractor as to how to meet the government's expectations.

9.      ICE/ERO conducts periodic inspections of APC through a contractor, Nakamoto

Group, Inc. In addition, APC is subject to ad hoc inspections from a variety of both private and

Federal government entities to include: ERO's Custody Management Division - Detention

Monitoring Unit, ICE Office of Professional Responsibility (OPR), Office for Civil Rights and

Civil Liberties (CRCL), DHS Office of the Inspector General (OIG) and Disability Rights

California (DRC). If PBNDS deficiencies are identified during these inspections, they are

addressed by the Contracting Officer's Representative (COR) who may take corrective action

through a Contract Discrepancy Report (CDR) and or implementation of a Uniform Corrective

Action Plan (UCAP).

10.     The GEO Group, Inc. (GEO) owns APC and entered into an independent

subcontractor agreement for GEO to operate the facility per the terms of the City's IGSA with

ICE. *See* IGSA Article II(D) (The city "shall notify and obtain approval from ICE" before

subcontracting). This subcontract was approved by ICE.

11.     ICE neither owns APC nor the land that the facility is situated on. To the best of

my knowledge, GEO owns the facility and the land on which APC is located. ERO's presence in

the facility is provided for by the IGSA.

12.     Under the Services Contract between GEO and the City, GEO assumed and

agreed without limitation to perform the City's obligations and responsibilities as set forth in the

IGSA. *See* Services Contract § 2.0 (attached hereto as Exhibit 2). However, the City retained

sole responsibility "for providing all health care services" to detainees. *See* Services Contract §13.0.

13.     Conditions of detention at the APC are governed by the PBNDS. The PBNDS reflects ICE's ongoing effort to tailor the conditions of immigration detention to its unique purpose while maintaining a safe and secure detention environment for detainees and staff.

14.     GEO acknowledged, accepted, and agreed without limitation to the scope of the limitations upon the authority, duties, and responsibilities of ICE and the City under the IGSA, and it provides the facility, management, personnel, and services for 24-hour supervision of detainees in ICE custody at the APC. *See* Services Contract § 2.0.

15.     In assuming the obligations and responsibilities of ICE and the City, GEO expressly agreed without limitation that their performance of the City's obligations and responsibilities as set forth in the IGSA, would be subject to and in full accordance with the terms and conditions set forth therein, and the applicability of the most current additions of the PBNDS. *See* Services Contract 2.0.

16.     The Hunger Strike provision of the PBNDS is located at section 4.2. (Attached hereto as Exhibit 3 is a true and complete copy of Section 4.2 (Hunger Strikes) of the PBNDS.) A hunger strike is considered to have taken effect after the detainee has not eaten for seventy-two hours. (Ex. 3 at 1.)

17.     In general, if a detainee enters hunger strike status at APC, ICE/ERO's responsibility is to report to our headquarters program through the submission of a Significant Incident Report (SIR). This prompts ICE Health Service Corps (IHSC) to begin monitoring the situation and provide daily reports from the GEO medical provider regarding the detainee's medical status and care to ICE/ERO. Neither ICE/ERO or IHSC has direct control over GEO's

Case 5:18-cv-01125-R-GJS   Document 52-1   Filed 03/08/19   Page 5 of 6   Page ID #:362

handling of the situation at APC, other than to observe and report on the situation.  ICE/ERO
does not control GEO's work and does not direct their staff how to interact with the detainees on
hunger strike.

18.   ICE/ERO will attempt to informally communicate with detainees in order to
resolve conflicts and misunderstandings related to their detention experience or immigration case
that may have triggered the hunger strike.  However, ICE/ERO's role is generally to advocate on
behalf of the detainee to ensure they are receiving proper care and not to supervise the care
provided by GEO.

19.   This declaration is based upon my personal and professional knowledge,
information obtained from other individuals employed by ICE, and information obtained from
various records and systems maintained by DHS. I provide this declaration based on the best of
my knowledge, information, belief, and reasonable inquiry for the above captioned case.  If
called upon to testify, I could and would do so.

Dated at Adelanto this 7th day of March, 2019

Gabriel A. Valdez
Assistant Field Office Director