1
2
3
4
5
6
7
8

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

9
10

Counsel for Plaintiffs
***Additional Counsel on Signature Page***

11
12
13

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

14
15
16
17
18
19
20
21

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM,** and **RAMON MANCIA**, individually and on behalf of all others similarly situated, *Plaintiffs,* v. **THE GEO GROUP, INC.,** *Defendant.* | Civil Action No. 5:17-cv-02514-JGB-SHKx  **PLAINTIFFS' OPPOSITION TO DEFENDANT'S  MOTION TO DECERTIFY THE CLASS** |

22
23
24
25
26
27
28

i

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     THE APPLICABLE LEGAL STANDARDS ....................................................1

III.    ARGUMENT ......................................................................................................4

        A.      Common Questions Exist Concerning All Plaintiffs' Forced
                Labor Claims. ...........................................................................................4

                1.      The Common Motivation: GEO's Pursuit of Profit. ................5

                2.      The Common Offense: GEO's Use of Forced Labor. .............5

                3.      The Common Mechanism: GEO's HUSP and
                        Enforcement Scheme. ..................................................................8

        B.      Common issues predominate regarding the CTVPA at
                Adelanto. ................................................................................................ 12

IV.     CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Amchem Prod., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................. 12, 13, 15

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) ..................................................................................... 3, 13

*Barrientos v. CoreCivic, Inc.,*
951 F.3d 1269 (11th Cir. 2020) .......................................................................... 8

*Bruno v. Eckhart Corp.,*
280 F.R.D. 540 (C.D. Cal. 2012) ....................................................................... 2

*Cole v. CRST, Inc.,*
317 F.R.D. 141 (C.D. Cal. 2016) ....................................................................... 2

*Edwards v. First Am. Corp.,*
289 F.R.D. 296 (C.D. Cal. 2012) ....................................................................... 3

*Gonzales v. Arrow Fin. Servs. LLC,*
489 F. Supp. 2d 1140 (S.D. Cal. 2007) ............................................................. 2

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .......................................................................... 15

*In re Apple iPod Antitrust Litig.,*
2014 WL 6783763 (N.D. Cal. Nov. 25, 2014) ................................................... 2

*In re Methionine Antitrust Litigation,*
No. 00-CV-1311, 2003 WL 22048232 (N.D. Cal. 2003) ................................... 2

*In re Myford Touch Consumer Litig.,*
No. 13-CV-03072-EMC, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) ............. 2

*In re Optical Disk Drive Antitrust Litig.,*
No. 10-md-02143-RS, 2017 WL 6448192 (N.D. Cal. Dec. 18, 2017) ............... 2

*Jimenez v. Allstate Ins. Co.,*
765 F.3d 1161 (9th Cir. 2014) ............................................................................ 4

*Knapp v. Gomez,*
No. 87–0067–H(M), 1991 WL 214172 (S.D. Cal. June 25, 1991) .................... 3

*Leslie Salt Co. v. United States,*
    55 F.3d 1388 (9th Cir. 1995) ........................................................................ 3

*Marlo v. UPS,*
    639 F.3d 942 (9th Cir. 2011) ..................................................................... 1, 2

*O'Connor v. Boeing N. Am., Inc.,*
    197 F.R.D. 404 (C.D. Cal. 2000) .................................................................. 2

*Owino v. CoreCivic, Inc.,*
    2018 WL 2193644 (S.D. Cal. May 14, 2018) ............................................. 12

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ........................................................................ 4

*Racies v. Quincy Bioscience, LLC,*
    No. 15-CV-00292-HSG, 2020 WL 2113852 (N.D. Cal. May 4, 2020) ........ 1

*Ramirez v. Trans Union, LLC,*
    No. 12-cv-00632, 2016 WL 6070490 (N.D. Cal. Oct. 17, 2016) ................. 2

*Ramos v. SimplexGrinnell LP,*
    796 F. Supp. 2d 346 (E.D.N.Y. 2011), *vacated in part*, 773 F.3d 394 (2d Cir. 2014) ................. 15

*Rodriguez v. Hayes,*
    591 F.3d 1105, (9th Cir. 2010) ..................................................................... 4

*Rosales v. El Rancho Farms,*
    *No. 09-cv-00707*, 2014 WL 321159 (E.D. Cal. Jan. 29, 2014) .................... 2

*Slaven v. BP Am., Inc.,*
    190 F.R.D. 649 (C.D. Cal. 2000) .................................................................. 2

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 3

*Tanedo v. E. Baton Rouge Par. Sch. Bd.,*
    2011 WL 7095434 (C.D. Cal. Dec. 12, 2011) ............................................. 6

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ............................................................................... 13

*U.S. v. Dann,*
    652 F.3d 1160 (9th Cir. 2011) ..................................................................... 6

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996) ..................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .................................................................................... 4, 8, 15

*Wang v. Chinese Daily News, Inc.,*
    737 F.3d 538 (9th Cir. 2013) .................................................................................... 8

*Weigele v. FedEx Ground Package Sys.,*
    267 F.R.D. 614 (S.D. Cal. 2010) .................................................................................... 2

*Zakaria v. Gerber Prod. Co.,*
    No. LACV1500200JAKEX, 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) ................................ 2

## **Statutes**

18 U.S.C. § 1589 .................................................................................... 6, 12

California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5 ........................................... 1

## **Other Authorities**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
    Procedure, 518-519 (2d ed. 1986 .................................................................................... 12

## **Rules**

Fed. R. Civ. P. 23 .................................................................................... 3

# I.    INTRODUCTION

On December 6, 2019, this Court certified three classes in this action: the Adelanto Wage Class, the Adelanto Forced Labor Class, and the Nationwide HUSP Class. ECF 229. Defendant The GEO Group, Inc. ("GEO") now moves to decertify two of those classes – the Adelanto Forced Labor Class and the Nationwide HUSP Class – which assert claims under the California Trafficking Victims Protection Act ("CTVPA") and the federal Trafficking Victims Protection Act ("TVPA"). ECF 427 at 2 & n1. GEO attacks the prior certification of those classes by asserting the classes cannot prove their claims on the merits.

GEO's motion to decertify should be denied. The central legal and factual questions concerning the CTVPA and TVPA claims remain the same for all Class Members and are still best addressed through class-wide resolution based on evidence and proof applicable to all affected GEO facilities. Plaintiffs' claims, and those of each Class Member, arise from the same nucleus of facts involving GEO's implementation of uniform cleaning and sanitation provisions through the threat of sanctions violative of federal law and policy. Nothing in GEO's motion or supporting materials justify reconsideration of the issues previously determined by this Court when it certified the Adelanto Forced Labor Class and the Nationwide HUSP Class.

# II.    THE APPLICABLE LEGAL STANDARDS

GEO acknowledges that, "[i]n considering the appropriateness of modification or decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." ECF 427 at 27. But, to support its argument, GEO distorts the Rule 23 analysis.

Initially, GEO incorrectly attempts to place the burden of proof on Plaintiffs. ECF 427 at 19.  But GEO is the movant. And GEO's authority, *Marlo v. UPS*, 639 F.3d 942 (9th Cir. 2011), does not support an inverted burden. As the Court in *Racies v. Quincy Bioscience, LLC*, No. 15-CV-00292-HSG, 2020 WL 2113852 at *2, n.1 (N.D. Cal. May 4, 2020) recognized, "the Ninth Circuit has not affirmatively articulated the burden of

1

proof for decertification." *See also In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018) (noting that, after *Marlo*, "district courts have continued to impose the burden on a defendant to show that decertification is warranted because 'decertification and modification should theoretically only take place after some change, unforeseen at the time of the class certification, that makes alteration of the initial certification decision necessary'") (citing *In re Apple iPod Antitrust Litig.*, 2014 WL 6783763, at *5 (N.D. Cal. Nov. 25, 2014)). This Court should follow those opinions holding the party seeking decertification, the movant, bears the burden of demonstrating the Rule 23 have not been met. *See, e.g.*, *Zakaria v. Gerber Prod. Co.*, No. LACV1500200JAKEX, 2017 WL 9512587, at *16 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018); *Cole v. CRST, Inc.*, 317 F.R.D. 141, 144 (C.D. Cal. 2016); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 544 (C.D. Cal. 2012); *Weigele v. FedEx Ground Package Sys.*, 267 F.R.D. 614, 617 (S.D. Cal. 2010); *In re Methionine Antitrust Litigation*, No. 00-CV-1311, 2003 WL 22048232, at *3 (N.D. Cal. 2003)); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000).

The burden is GEO's to bear. And that burden is heavy: "To prevail on its decertification motion, defendant faces a heavy burden because 'doubts regarding the propriety of class certification should be resolved in favor of certification.'" *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011) (quoting *Slaven*, 190 F.R.D. at 651); *see also In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143-RS, 2017 WL 6448192, at *1 (N.D. Cal. Dec. 18, 2017) (same); *Rosales v. El Rancho Farms*, No. 09-cv-00707, 2014 WL 321159, at *4 (E.D. Cal. Jan. 29, 2014) (same). A steep burden for decertification should be the rule since once a class has been certified, "the parties can be expected to rely on it, conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that it will not be altered except for good cause." *Bruno*, 280 F.R.D. at 544 (citing *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 409-10 (C.D. Cal. 2000)); *see also Ramirez v. Trans Union, LLC*, No. 12-cv-00632, 2016 WL 6070490, at *2 (N.D. Cal. Oct. 17, 2016) ("Parties should be able to

rely on a certification order and in the normal course of events it will not be altered except for good cause.").[1]

GEO's motion also ignores the directive that class certification is not the occasion for a mini-trial on the merits. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). While the Court may consider what evidence might be relevant when assessing the requirements of Rule 23, it should not <u>weigh</u> competing evidence. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). GEO's motion serves as an impermissible merits-based attack on Plaintiffs' claims.

Finally, since an order "that grants or denies class certification may be altered or amended before final judgment," Fed. R. Civ. P. 23(c)(1)(C), should this Court give credit to <u>any</u> of GEO's arguments, final judgment can be entered in accordance with the jury's verdict and proof at trial, rendering decertification of the Classes unnecessary, inefficient, and improper.

---

[1] Placing the burden on GEO is also in keeping with Local Rule 7-18, which charges that GEO's motion for reconsideration of this Court's prior order "may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." *See also Knapp v. Gomez*, No. 87–0067–H(M), 1991 WL 214172 (S.D. Cal. June 25, 1991) ("Defendant's motion for decertification of the class is denied because defendant has not shown that any 'significant intervening event' warrants reexamination of the class' certification."). Furthermore, Local Rule 7-18 embodies the considerations underlying the law of the case doctrine since "[n]o motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." *See also Edwards v. First Am. Corp.*, 289 F.R.D. 296, 303 (C.D. Cal. 2012) (rejecting arguments seeking decertification which had been previously made in a Rule 23(f) appeal because, "under the doctrine of the law of the case, the Court will only reconsider these arguments pursuant to 'an intervening change in controlling authority [or] new evidence'" (citing *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995))). Here, GEO presents no material difference in fact or law from that at the time of its original opposition to certification, no new material facts or a change of law which occurred after the certification order was entered, and no "manifest showing" that this Court failed to consider material facts presented to it before the certification order was entered—an order left intact by the Ninth Circuit Court of Appeals when it denied GEO's Rule 23(f) challenge.

3

## III.   ARGUMENT

GEO's decertification motion asserts that the Rule 23(a) commonality and Rule 23(b)(3) predominance requirements are not met. ECF 427 at 20-34. The latter challenge applies only to the Adelanto Forced Labor Class given that the Nationwide HUSP Class was solely certified as a Rule 23(b)(2) class. ECF 223 at 15. Neither challenge is valid.

### A.   Common Questions Exist Concerning All Plaintiffs' Forced Labor Claims.

Rule 23(a)'s commonality requirement is met where either (i) shared legal issues with divergent factual predicates or (ii) a common core of salient facts coupled with disparate legal remedies are present. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). The commonality requirement asks whether plaintiffs assert claims based on a common contention capable of class-wide resolution, i.e., "a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The existence of even a single common question can satisfy the commonality requirement. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).

"It is sufficient to meet the requirements of Rule 23(b)(2) [when] class members complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (internal citation and quotation marks omitted). This action concerns GEO policies and practices applicable to every member of both Rule 23(b)(2) classes that, if unlawful, subject all class members to forced labor, attempted forced labor, and serious harm. The patterns and practices alleged here are generally applicable to each class as a whole. All class members seek the same injunctive and declaratory relief regarding GEO's course of conduct. For these reasons, class certification is, was, and remains proper.

As this Court previously concluded, *see* ECF 223 at 22-25, and the record confirms, common questions abound that confirm the propriety of class-wide determination of the CTVPA and TVPA claims brought here by the Adelanto Forced Labor Class and the Nationwide HUSP Class. GEO's motion should be denied.

4

### 1.  The Common Motivation: GEO's Pursuit of Profit.

GEO is a for-profit Real Estate Investment Trust whose stock is publicly traded on the NYSE. ECF 411-2 at SUF 5-6. GEO contracts with ICE to provide detention services and bed space to individuals awaiting resolution of their civil immigration proceedings and does so on a fixed-price basis. ECF 411-2 at SUF 8, 21.

To bid for an ICE contract, GEO calculates a per diem or bed-day rate which includes all daily operating costs such as personnel, food, health care, supplies, utilities, maintenance, infrastructure, depreciation, cost of capital, overhead, and profit. ECF 411-2 at SUF 9. Staffing and labor costs constitute approximately 65 percent GEO's total operating costs. ECF 411-2 at SUF 11. GEO can lower the per diem rate, increase its competitive advantage, and increases its bottom-line profits under the fixed-priced contracts with ICE by lowering its labor costs. ECF 411-2 at SUF 16-17.

GEO's labor expenses would increase substantially if the company did not use detained immigrants to clean and maintain its Facilities. SUF 24-26. GEO concedes that, "[i]f detainees choose not to work, GEO staff will complete any work that would have otherwise been performed by a detainee," sometimes incurring overtime costs. Dkt. 205 at 17. As this Court has explained, limiting detained worker pay to $1 per day—the amount ICE will reimburse the company—means "that GEO does not ultimately pay at all for detainee work that must otherwise be completed by GEO staff." Dkt. 223 at 8, n.7; *see also* SUF 24-26. And GEO itself has calculated that the loss of cheap detainee labor will cost it almost $2.3 million per year at Adelanto alone. ECF 408-1, GEO-Novoa_00178340.

### 2.  The Common Offense: GEO's Use of Forced Labor.

Both the CTVPA and the TVPA prohibit GEO from knowingly providing or obtaining Plaintiffs' labor—or attempting to do so—by means of threats of physical restraint, serious harm, abuse of law or legal process. As this Court has recognized, "the elements of a CTVPA and TVPA claim overlap significantly." ECF 223 at 23 n.11. And whether GEO obtains or attempts to obtain detainee labor through its HUSPs in

violation of the CTVPA and TVPA encompasses several common questions of both law and fact sufficient to meet the Rule 23(a) requirement. ECF 223 at 11, 21-23. Like GEO, *see* ECF 414 at 12 & n.5, for purposes of the Rule 23 commonality inquiry Plaintiffs herein also treat the state and federal forced labor claims collectively and address them in terms of the TVPA.

The TVPA prohibits GEO from knowingly providing or obtaining Plaintiffs' labor—or attempting to do so—by means of threats of physical restraint, serious harm, abuse of law or legal process, or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). "Serious harm" is defined broadly under the TVPA as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c); *U.S. v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011); *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2011 WL 7095434, at *7-8 (C.D. Cal. Dec. 12, 2011). *See also* Dkt. 61 at 9. The focus rests on GEO's behavior and the impact on the reasonable person. As this Court has recognized, a common question, "susceptible to class wide resolution," is the reasonable person analysis at the heart of the TVPA claim. ECF 223 at 23, n.11; *see also* 18 U.S.C. § 1589(c); *Menocal v. GEO Grp., Inc.*, 320 F.R.D. 258 (D. Colo. 2017), *aff'd*, 882 F.3d 905 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 143 (2018).

Another set of common questions comes with consideration of whether and how GEO forces, coerces, and/or compels detainees at GEO immigration detention centers nationwide to work for no pay, by requiring them to perform work beyond the four personal housekeeping tasks detainees are required to perform under the PBNDS.

GEO has admitted that compliance with some version of ICE's Performance Based National Detention Standards ("PBNDS") is mandatory at each of its civil immigration detention facilities nationwide. ECF 414-1 at UMF 10; ECF 193-34 (Requests for Admission No. 27). All applicable versions of the PBNDS require any labor performed by a detained immigrant to be voluntary. ECF 193-14 at 406 (PBNDS § 5.8). The Personal Housekeeping Requirement, PBNDS § 5.8.V.C, provides:

> **C. Personal Housekeeping Required**
>
> Work assignments are voluntary; however, all detainees are responsible for personal housekeeping.
>
> *Detainees are required to maintain their immediate living areas in a neat and orderly manner by:*
>
> 1. *making their bunk beds daily;*
> 2. *stacking loose papers;*
> 3. *keeping the floor free of debris and dividers free of clutter; and*
> 4. *refraining from hanging/draping clothing, pictures, keepsakes, or other objects from beds, overhead lighting fixtures or other furniture.*

As the Eleventh Circuit explained, the PBNDS limits permissible unpaid labor to the "basic required tasks" listed in PBNDS § 5.8.V.C:

> If . . . any other private for-profit contractor[ ] actually forces detainees to provide labor (whether through a work program or not) through any of the illegal coercive means explicitly proscribed by the TVPA, it has "obtain[ed] the labor or services of a person" in violation of the TVPA. Again, nothing in the text of the statute excludes federal contractors providing immigration detention services from liability under the TVPA, even when that liability might arise out of the operation of a federally mandated work program. And nothing in the PBNDS permits [the] private contractors operating immigration detention facilities[ ] to force detainees to perform labor (beyond personal housekeeping tasks), and certainly not through the illegal coercive means explicitly listed in the TVPA.

*Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1277 (11th Cir. 2020).[2]

Not surprisingly, GEO's witnesses have admitted that, other than the four personal housekeeping tasks listed in PBNDS § 5.8.V.C, GEO cannot force or compel civil immigration detainees to work. ECF 193-4 (Janecka Dep.) at 52:5-9; ECF 193-5 (Ragsdale Dep.) at 54:9-56:1. Indeed, according to the Warden/Facility Administrator of Adelanto, GEO cannot even <u>ask</u> detainees to engage in work outside the scope of the Personal Housekeeping Requirement. ECF 193-4 (Janecka Dep.) at 231:12-15. And that testimony was provided despite GEO's admission that the company "interprets ICE's PBNDS 5.8.V.C to permit GEO to require detainees to perform tasks for no compensation that are in addition to and separate from the four enumerated personal housekeeping tasks identified in PBNDS 5.8.V.C." ECF 193-34 (Requests for Admission) at No. 23; *see also* ECF 427 at 11-12 & nn. 2, 3.

Without weighing the evidence on these issues, examination of the record shows that common question underlies the TVPA claims, the answers to which will "drive the resolution of the litigation." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (*quoting Wal–Mart,* 131 S.Ct. at 2551). That reality confirms class treatment.

**3.  The Common Mechanism: GEO's HUSP and Enforcement Scheme.**

GEO obtains free detainee labor by threatening detainees with sanctions (including solitary confinement, disciplinary housing transfers, loss of privileges, referral to ICE, and criminal prosecution) sufficient to compel a person, under circumstances where the person receiving or apprehending the threat to reasonably believe that it is likely that the person making the threat would carry it out. GEO's common message to detainees is undeniable: fall in line or suffer punishment. Common proof applicable to each facility shows that GEO makes certain every detainee is told they must provide

---

[2] Notably, the *Barrientos* court interpreted the PBNDS according to its plain meaning. That is, to limit permissible unpaid labor to "basic required tasks," such as detainees "'making their bunk beds daily,' 'stacking loose papers,' and 'keeping the floor free of debris.'" *Id.* at 1272. "Beyond these basic required tasks," the court noted, "detainees 'shall not be required to work,' and all other "[w]ork assignments are voluntary." *Id.* (citing ECF. 206-5, PBNDS  §§ 5.8(II)(2), 5.8(V)(C)).

labor beyond that required by the PBNDS <u>and</u> that their failure to do so can (and will) result in "serious harm" as defined by the statutes.

**First**, GEO issues every detainee a GEO-created handbook and makes certain every detainee knows they will be held responsible to comply with all rules and regulations it contains – including the sanctions for violating its requirements. *See* Plaintiffs' Statement of Supplemental Material Facts Nos. 4-6; *see also* ECF 432-9, Deposition of Randy Tate, Facility Administrator – Montgomery Processing Center, at 75:23-76:10 ("Q. And when do detainees typically receive the detainee handbook, sir? A. Upon arrival. Q. So upon arrival . . . the detainees are informed that you either comply or you're subject to sanctions correct? A. They're issued the National Detention Standard handbook and a local handbook. Q. Which says exactly what I just said, comply or you're subject to sanction, correct? . . . A. Correct."). *See also* ECF 432-16, GEO Supplemental Detainee Handbook for Mesa Verde Facility (Deposition Exhibit 254):[3]

> **PURPOSE**
> The purpose of this handbook is to explain to detainees the specific rules, regulations, policies and procedures that must be followed while at *MVIPC*. The handbook will also help to provide you with a general overview of the programs, rules and regulations and services of *MVIPC*. You will be held accountable for your actions while at *MVIPC*. Therefore, it is each detainee's responsibility to become familiar with the contents of this handbook. Interpretive services to assist in essential communications will be made available, if requested, or when there is a clear need for such services.
>
> A copy of this handbook will be issued to each detainee at intake and copies are available in each housing unit. All detainees are required to acknowledge receipt of this handbook during the Intake process by signature.

**Second**, GEO operates a HUSP at every Facility in the Class, ECF 193-34 (Requests for Admission) at Nos. 11-22; and its handbook tells every detainee they are required to clean areas <u>beyond</u> the four required in the PBNDS. Plaintiffs' Statement of Supplemental Material Facts No. 1. This labor exceeds the narrow scope of uncompensated labor permitted by the PBNDS § 5.8.V.C; *see also* Dkt. 268 at 10

---

[3] Each GEO handbook for the facilities in the Nationwide HUSP Class contains these same sections.

(observing that the PBNDS "certainly do[ ] not contemplate several forced sanitation jobs per day"). This interpretation has been confirmed by the Office of the Inspector General of the Department of Homeland Security, which made clear that "requiring detainees to clean common areas used by all detainees is in violation of ICE standards, as detainees are only required to clean their immediate living area." ECF 201-5, DHS Office of Inspector General Report, OIG-17-43-MA, <u>Management Alert on Issues Requiring Immediate Action at the Theo Lacy Facility in Orange, California</u> at 6 (Mar. 6, 2017).

**Third**, each detainee is informed that they must <u>obey</u> directions given them by GEO staff:

> **BASIC DETAINEE RESPONSIBILITIES**
> It is the policy of the *MVIPC* and Immigration Customs Enforcement (ICE) to treat detainees with dignity and respect while maintaining a safe, humane, secure and sanitary detention facility. It is expected staff will receive your full cooperation while your case is being processed. In the simplest terms, you are expected to:
>
> 1.  Follow and obey rules, laws, policies and procedures.
> 2.  Obey **all** orders given by staff members.

It is a Category III Offense (No. 307) for a detainee to refuse to obey any GEO staff officer's order. *See infra.* And each detainee is told that every GEO officer has the discretion to cite any detainee for such a refusal, as well as a refusal to clean an assigned living area, or if the officer feels the detainee has been "insolent" toward them. *See* Plaintiffs' Statement of Supplemental Material Facts Nos. 3-5. *See also* ECF 432-16, Deposition Exhibit 254 (GEO Supplemental Detainee Handbook for Mesa Verde Facility):[4]

---

[4] Each GEO handbook for the facilities in the Nationwide HUSP Class contains these same sections.

**Category III Offenses:**

These are considered to be Category III or "High Moderate Offenses".   Any combination of the following penalties may be imposed:

1)  *Initiate criminal proceedings*
2)  *Disciplinary transfer (recommend)*
3)  *Disciplinary segregation (up to 72 hours)*
4)  *Make monetary restitution, if funds are available*
5)  *Loss of privileges (e.g. commissary, vending machines, movies, recreation, etc.)*
6)  *Change housing*
7)  *Remove from program and/or group activity*
8)  *Loss of job*
9)  *Impound and store detainee's personal property*
10) *Confiscate contraband*
11) *Restrict to housing unit*
12) *Reprimand*
13) *Warning*

300    Indecent Exposure
301    Stealing (theft)
302    Misuse of authorized medication
303    Loss, misplacement or damage of a less restricted tool
304    Lending property or other item of value for profit / increased return
305    Possession of item(s) not authorized for receipt or retention, not issued through regular channels
306    Refusal to clean assigned living area
307    Refusing to obey a staff member Officer's order (may be categorized and charged as a greater or lesser offense depending on the kind of disobedience; continuing to riot is Code 105-Rioting, continuing to fight, Code 201-Fighting)
308    Insolence towards a staff member

Page 46 of 62

Rev. 06/2018

Confidential                                                                        GEO-Novoa_00073262

**Fourth**, as shown above, if any detainee is cited for refusal to clean assigned living area, refusing to obey a staff member officer's order, or insolence towards a staff member, they are subject to a set of thirteen possible penalties, including "Disciplinary segregation (up to **72 hours**)."

**Fifth**, the threat of those sanctions for failure to obey and order, or refuse to clean, or simply be surly when performing those cleaning functions, constitute prohibited means of compelling detainee labor.

Standing alone, the threat of solitary confinement constitutes a prohibited means to achieve forced labor. *See* 18 U.S.C. § 1589(a) (prohibiting "threats of physical restraint" and "serious harm"). Indeed, in a case raising claims nearly identical to this one, the Southern District of California held that both solitary confinement and the threat of solitary confinement at a private, for-profit civil immigration detention facility constitutes "serious harm" under the TVPA: "At the very least, solitary confinement constitutes serious harm, which Congress defined to include psychological harm. 18 U.S.C. § 1589(c)(2). Here, solitary confinement, or the threat of solitary confinement, sufficiently alleges the means to achieve forced labor." *Owino v. CoreCivic, Inc.*, 2018 WL 2193644, at *11 (S.D. Cal. May 14, 2018), *reconsideration denied*, 2019 WL 1367815 (S.D. Cal. Mar. 26, 2019) (emphasis added).

GEO's attacks on this Court's previous citation to the *Menocal* decision (ECF 427 at 14-15) should be rejected. As shown above, by its own admissions, the uniform provisions concerning the work required of detainees, the sanctions threatening each detainee if they fail to accede to the "orders" of any GEO staff officer, and the testimony of its wardens all demonstrate a significant number of common questions which will be answered by evidence applicable to all Nationwide HUSP Class Members. Nothing more is required under Rule 23(a)(2).

**B.    Common issues predominate regarding the CTVPA at Adelanto.**

With regard to the Adelanto Forced Labor Class, GEO argues that the common questions under that statute do not predominate over questions that must be answered on an individual basis. GEO's argument cannot stand.

"The Rule 23(b)(3) predominance inquiry tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, 518-519 (2d ed. 1986)). Courts must consider "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). The inquiry rests on "legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement, and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594.

On this same question, as this Court found that "[s]everal aspects of [the applicable CTVPA] definition are subject to class-wide demonstration, including (1) generalized threats or duress in the terms of the alleged policies, and (2) the question of whether a reasonable detainee would believe the threats. The second element of a CTVPA offense focuses on the defendant's intent to obtain forced labor or services. Here, the analysis would turn on Defendant's alleged overall scheme, and under Plaintiffs' case theory, the common questions in this regard would be overpowering." ECF 223 at 23, n.11. As those questions are all common to all Class Members, the "predominance" requirement is met; GEO's arguments about individualized <u>proof</u> misses the mark. *See Amgen*, 568 U.S. at 466 (noting that "the focus of Rule 23(b)(3) is on the predominance of common <u>questions</u>") (emphasis in original).

Even under GEO's misstated standard, the predominance issue supports retaining certification of the Adelanto Forced Labor Class. At Adelanto, "[a]ll detainees must participate" in a mandatory, general cleanup of their housing units every day. ECF 193-4 (Janecka Dep.) at 87:8-88:21. A detained immigrant may be moved to another housing unit—thereby disrupting the individual's community and threatening his sense of safety—as a sanction for refusing to clean. ECF 193-4 (Janecka Dep.) at 71:16-25; ECF 192-3 (Novoa Decl.) at ¶¶ 12-14; ECF 192-7 (Marwaha Decl.) at ¶¶ 12-13. GEO also suspends programs and recreation unless and until detainees clean the housing units, hallways, kitchens, laundry, and intake area upon demand and without compensation. ECF 193-4 (Janecka Dep.) at 232:11-23; *see also* ECF 192-5 (Karim Decl.) at ¶ 10-12. Indeed, GEO's HUSP at Adelanto prohibits detained immigrants from participating in "any activities/programs until the unit is cleaned," and threatens that "[c]ontinued

refusal to clean the area will result in further disciplinary action." ECF 193-24 (Adelanto HUSP § 10.3.5) at 3.

GEO's assertion notwithstanding, whether it provides sufficient food, clothing and personal hygiene items to detainees <u>is</u> disputed in this case. ECF 192-3 (Novoa Decl.) at ¶ 15; ECF 192-4 (Campos Fuentes Decl.) at ¶ 11; ECF 192-5 (Karim Decl.) at ¶ 17; ECF 192-6 (Mancia Decl.) at ¶ 14; ECF 192-8 (Munoz Decl.) at ¶ 13; ECF 192-7 (Marwaha Decl.) at ¶ 17. To supplement their rations, detained immigrants must purchase these necessities items from commissary. ECF 192-3 (Novoa Decl.) at ¶ 15; ECF 192-4 (Campos Fuentes Decl.) at ¶ 11; ECF 192-5 (Karim Decl.) at ¶ 17; ECF 192-6 (Mancia Decl.) at ¶ 14; ECF 192-8 (Munoz Decl.) at ¶ 13; ECF 192-7 (Marwaha Decl.) at ¶ 17. The only way for a detained immigrant to fund his or her commissary account is to work through the Work Program for $1 per day or have someone outside the Facility transfer funds into it. GEO secures a virtually free labor force by withholding sufficient food and basic living necessities from detained immigrants and compelling them to work for $1 per day in order to buy those necessities from commissary.

Detained immigrants also work for no compensation in the hopes of receiving extra food, clothing, or necessities from GEO officials. ECF 193-34 (Requests for Admission) at No. 26; *see also* ECF 192-4 (Campos Fuentes Decl.) at ¶ 9; ECF 192-6 (Mancia Decl.) at ¶¶ 8, 10; ECF 192-7 (Marwaha Decl.) at ¶ 10. In violation of the PBNDS, GEO induces detained immigrants to work in the kitchen by promising them extra food. ECF 193-13 (Monthly Food Service Dept. Meeting Minutes) at 2 ("We have been granted permission from Warden Janecka to treat our detainee workers to treats, such as extra dessert, ice cream, peanut butter & jelly sandwiches, breakfast tacos, monkey bread, etc.").

And it is a superior method to handle CTVPA claims at Adelanto as a class. A class action is superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The superiority determination "involves a comparative

evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. In many ways, wage and hour claims are "perhaps the most perfect questions for class treatment." *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011), *vacated in part*, 773 F.3d 394 (2d Cir. 2014).

Class treatment is far superior to any other manner of litigating the claims at issue here. As past or current civil immigration detainees, many class members have a limited understanding of the law, limited English skills, and limited resources to devote to pursuing recovery. These considerations strongly "weigh in favor of class certification." *Menocal*, 882 F.3d at 915 (citation omitted) (finding superiority under similar facts). Without class treatment, the class members would have no effective remedy for their injuries. *See Amchem*, 521 U.S. at 617; *Menocal*, 882 F.3d at 915.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court deny GEO's motion to decertify the Adelanto Forced Labor Class and the Nationwide HUSP Class.


Dated: January 11, 2021                     Respectfully Submitted,


                                            */s/ Daniel H. Charest*
                                            _____
                                            Daniel H. Charest (admitted *pro hac vice*)
                                            dcharest@burnscharest.com
                                            TX Bar # 24057803
                                            Warren Burns (admitted *pro hac vice*)
                                            wburns@burnscharest.com
                                            TX Bar # 24053119
                                            Will Thompson (CA Bar # 289012)
                                            wthompson@burnscharest.com
                                            E. Lawrence Vincent (admitted *pro hac vice*)
                                            lvincent@burnscharest.com
                                            TX Bar # 20585590
                                            Mallory Biblo (admitted *pro hac vice*)
                                            mbiblo@burnscharest.com
                                            TX Bar # 24087165
                                            Lauren Cross (admitted *pro hac vice*)

lcross@burnscharest.com
TX Bar # 24105759
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102

1

Telephone: (310) 474-9111
Fax: (310) 474-8585

2

3

***Class Counsel***

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Daniel H. Charest, electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated: January 11, 2021

/s/ *Daniel H. Charest*

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002