**AKERMAN LLP**
ELLEN S. ROBBINS (SBN 298044)
ALICIA Y. HOU (SBN 254157)
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342
Email: ellen.robbins@akerman.com
Email: alicia.hou@akerman.com

LAWRENCE D. SILVERMAN (admitted *pro hac vice*)
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
Email: lawrence.silverman@akerman.com

ADRIENNE SCHEFFEY (admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email: adrienne.scheffey@akerman.com

Attorneys for Defendant
THE GEO GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>THE GEO GROUP, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM | Case No. 5:17-cv-02514-JGB-SHK<br><br>Assigned to Hon. Jesus G. Bernal<br><br>**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing Information:**<br>Date:  February 1, 2021<br>Time:  9:00 a.m.<br>Place:  Courtroom 1<br>         3470 Twelfth Street<br>         Riverside, California 92501 |

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

I.    The TVPA Does Not Provide a Private Right of Action for Injunctive Relief. ........ 1

II.   Plaintiffs' Purported Declaratory Relief. .................................................. 3

III.  Plaintiffs Fail To Raise Disputed Issues Of Fact That Would Preclude Summary Judgment On Their TVPA And CTVPA Claims. .......................................... 4

    a.   The Action Plaintiffs Challenge Is A Warning Of Adverse But Legitimate Consequences, Not An Illicit Threat. ........................... 4

    b.   The Thirteenth Amendment Counsels Against A Finding of TVPA Liability. .................................................................... 6

    c.   Plaintiffs' Interpretation of Section 5.8 of the PBNDS Does Not Compel a Different Result. .................................................. 7

IV.   Plaintiffs' TVPA Case Law is Inapposite. ................................................ 8

V.    Being A For-Profit Company Does not Establish the Intent Required Under the TVPA. ........................................................................................ 9

VI.   GEO is Entitled to Summary Judgment on Plaintiffs' Employment Claims. ........ 10

    a.   Under any definition of "employer," GEO does not employ Plaintiffs. ...... 10

    b.   *Martinez* is not the Correct Test. .................................... 11

    c.   Whether Detainees are "Employees" Is the Appropriate Test. ............. 11

    d.   GEO does not Employ Plaintiffs Under *Martinez*. ...................... 13

        1.   GEO does not control VWP Participants' wages, hours, or working conditions. ................................................ 13

        2.   GEO does not suffer or permit Plaintiffs to work ...................... 14

VII.  GEO Is Entitled To Derivative Sovereign Immunity. ................................. 15

    a.   GEO Performed as ICE Directed ...................................... 15

    b.   ICE Has Authority To Direct The Dollar A Day Rate ..................... 17

VIII. GEO Is Entitled To Intergovernmental Immunity ..................................... 17

    a.   The Wage Class Claims Seek to Regulate the Federal Government ........... 18

    b.   California Minimum Wage Act is Discriminatory ....................... 18

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**TABLE OF CONTENTS**

IX.    Plaintiffs Cannot Prevail On Their Claims For Unjust Enrichment Or For Violation Of California's Unfair Competition Law.................................................................21

X.    CONCLUSION ..........................................................................................21

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barrientos v. CoreCivic, Inc.*,
   951 F.3d 1269 (11th Cir. 2020) ........................................................... 8

*Blackburn v. United States*,
   100 F.3d 1426 (9th Cir. 1996) ........................................................... 21

*Boeing v. Movassaghi*,
   768 F.3d 832 (9th Cir. 2014) ........................................................... 20

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988) ........................................................... 15

*Brassinga v. City of Mtn. View*,
   66 Cal. App. 4th 195 (1998) ........................................................... 14

*Cooper v. Simpson Strong-Tie Co.*,
   460 F. Supp. 3d 894 (N.D. Cal. 2020) ........................................................... 21

*Dep't of Employment v. United States*,
   385 U.S. 355 (1966) ........................................................... 18

*Dynamex Ops. W. Inc. v. Super. Ct.*,
   4 Cal. 5th 903 (2018) ........................................................... 11

*Headley v. Church of Scientology Int'l*,
   687 F.3d 1173 (9th Cir. 2012) ........................................................... 5

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) ........................................................... 15, 17

*Juino v. Livingston Parish Fire Dist. No. 5*,
   717 F.3d 431 (5th Cir. 2013) ........................................................... 12

*Martinez v. Combs*,
   49 Cal. 4th 35 (2010) ........................................................... 10, 11, 13, 14

*Martinez-Rodriguez v. Giles*,
   391 F. Supp. 3d 985 (D. Idaho 2019) ........................................................... 5

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*Marzan v. Bank of Am.*,
  779 F. Supp. 2d 1140 (D. Haw. 2011).................................................................4

*Matherly v. Andrews*,
  859 F.3d 264 (4th Cir. 2017) .......................................................................12, 13

*Medina Tovar v. Zuchowski*,
  982 F.3d 631 (9th Cir. 2020) .............................................................................2

*Mendez v. Haugen*,
  2015 WL 5718967 (D. Minn. Sept. 29, 2015), *aff'd*, No. 15-3370
  (Feb. 22, 2016)...................................................................................................6

*Menocal v. GEO Grp., Inc.*,
  113 F. Supp. 3d 1125 (D. Colo. 2015) .........................................................1, 15

*Muchira v. Al-Rawaf*,
  850 F.3d 605 (4th Cir. 2017) ......................................................................4, 5, 6

*Nwauzor v. GEO Grp., Inc.*,
  2020 WL 1689728 (W.D. Wash. Apr. 7, 2020) ...................................15, 20, 21

*Prince-Weithorn v. GMAC Mortg., LLC*,
  2011 WL 11651984 (C.D. Cal. May 5, 2011).....................................................1

*Roman v. Tyco Simplex Grinnell*,
  2017 WL 3394295 (M.D. Fla. Aug. 8, 2017), *aff'd*, 732 F. App'x 813 (11th Cir.
  2018) ...................................................................................................................5

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*,
  48 Cal. 3d 341 (1989) ..................................................................................11, 12

*Salazar v. McDonald's Corp.*,
  2016 WL 4394165 (N.D. Cal. Aug. 16, 2016), *aff'd*, 939 F.3d 1051 (9th Cir. 2019)
  ..........................................................................................................................11

*Talley v. City of Fresno*,
  51 Cal. App. 5th 1060 (2020).......................................................................11, 12

*The GEO Group, Inc. v. Newsom*,
  2020 WL 5968759 (S.D. Cal. Oct. 8, 2020)...............................................17, 18

*United States v. $133,420.00 in U.S. Currency*,
  672 F.3d 629 (9th Cir. 2012) ..............................................................................3

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*United States v. California,*
  921 F.3d 865 (9th Cir. 2019) ...................................................................... 18

*United States v. Calimlim,*
  538 F.3d 706 (7th Cir. 2008) ..................................................................... 8, 9

*United States v. Daas,*
  198 F.3d 1167 (9th Cir. 1999) ...................................................................... 1

*United States v. Dann,*
  652 F.3d 1160 (9th Cir. 2011) ...................................................................... 9

*United States v. Michigan,*
  851 F.2d 803 (6th Cir. 1988) ...................................................................... 18

*United States v. Toviave,*
  761 F.3d 623 (6th Cir. 2014) ..................................................................... 5, 6

*Washington v. U.S.,*
  460 U.S. 526 (1983) ................................................................................... 18

*Wells Fargo Bank Nw. N.A. v. Taca Int'l Airlines,*
  247 F. Supp. 2d 352 (S.D.N.Y. Sept. 25, 2002) ........................................... 9

**Statutes**

8 U.S.C. § 1101(a)(15)(U) ............................................................................... 2

18 U.S.C. § 1595 ................................................................................... 1, 2, 3

18 U.S.C. § 1595A ................................................................................. 1, 2, 3

Cal. Code Regs. Title 15, § 3064 ................................................................. 19

Amendments to the California Labor Code .................................................. 10

California Minimum Wage Act ............................................... 10, 11, 18, 20

California's Unfair Competition Law ........................................................... 21

Fair Employment and Housing Act ............................................................. 12

Labor Code § 1194 ....................................................................................... 11

Labor Code § 2775 ............................................................................... 11, 12

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Labor Code § 2775(b)(1) .............................................................. 11

Labor Code § 2775(b)(3) .............................................................. 11

Trafficking Victims Protection Act ............................................... 5

**Rules**

F.R.E. 408-protected ..................................................................... 20

**Other Authorities**

Thirteenth Amendment .................................................................. 6

Laura Shoop, *Uncovering the "Hidden Crime" of Human Trafficking by Empowering Individuals to Respond,* 36 Ga. St. U.L. Rev. 1173, 1206 (2020) ........................ 3

**AKERMAN LLP**

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**TABLE OF AUTHORITIES**

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Defendant The GEO Group, Inc. ("GEO") hereby submits its Reply in Support of its Motion for Summary Judgment ("MSJ"). Because Plaintiffs fail to present a colorable question of fact for the jury, this Court should enter summary judgment in GEO's favor.

## I.  The TVPA Does Not Provide a Private Right of Action for Injunctive Relief.

Congress has carefully crafted the remedies of the TVPA's private right of action. In doing so, Congress made clear that in a case brought by an individual, the only relief available is monetary damages and attorneys' fees. 18 U.S.C. § 1595. Likewise, Congress unambiguously limited injunctive relief to only those cases brought by the United States Attorney General. 18 U.S.C. § 1595A. Congress did not extend the right to seek injunctive relief to suits brough by individuals.  Had Congress wished to do so, it would have included a private right of action under the "Civil Injunctions" section of the TVPA.

Despite conceding the statute's clarity, Plaintiffs attempt to argue the statute *could be* more explicit; arguing that Congress "knows how to prohibit equitable relief." ECF 432 at 14. Plaintiffs' argument misses the mark. The issue in this action is not whether Congress outright prohibited *all* injunctive relief under the TVPA, but instead, whether it *created a private right of action for injunctive relief under the* TVPA. The plain language demonstrates that Congress *did not* create a private right of action for injunctive relief under the TVPA. Instead it explicitly limited the available relief to monetary damages.[1]

Next, Plaintiffs argue that the legislative history supports their reading, but do not explain *why*, under the principles of statutory construction, this Court should consider the legislative history. Indeed, the primary tenet of statutory interpretation is that a Court should not look to the legislative history of a statue unless it has first found that the statute is vague and ambiguous. *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999) ("If

---

[1]  Indeed, Congress routinely limits the relief available in a private cause of action to a narrower scope of liability than may be available under the entirety of a statute. *See e.g.*, *Prince-Weithorn v. GMAC Mortg., LLC*, 2011 WL 11651984, at *3 (C.D. Cal. May 5, 2011) (explaining it was highly "unlikely that Congress absent mindedly forgot to mention an intended private right of action against TARP fund recipients when it expressly gave a private right of action against the Secretary [of the Treasury].") (citations omitted).

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

the statute is ambiguous—and only then—courts may look to its legislative history for evidence of congressional intent."). Here, Plaintiffs do not argue that the TVPA is vague or ambiguous. To the contrary, Plaintiffs insist that the TVPA is <u>clear</u>. *See e.g.* ECF 411-1 (arguing the TVPA is "sufficiently clear"). GEO agrees that the language is clear. The statute plainly sets forth the remedies that are available to the private plaintiffs and the separate remedies that are available exclusively in actions brought by the Attorney General.

Even if there was a colorable argument that the TVPA's remedies are ambiguous, Plaintiffs have failed to demonstrate that the legislative intent is consistent with their interpretation. A review of the legislative history of Section 1595A makes plain that Congress intended to explicitly define the remedies available under each section of the statute. For example, the bill's announcement states it, "authorizes appropriations through FY 2021 for the Department of Health and Human Services and the Department of Homeland Security for programs responding to severe forms of human trafficking . . . and **amends Federal criminal law to modify penalties for certain offenses related to human trafficking**." *Bill Announcement*, 2018 WL 6730558, at *2 (emphasis added). Significantly, Plaintiffs <u>do not cite directly to the legislative history</u> for Sections 1595 or 1595A. Instead, they cite to legislative history for other provisions that are not at issue and that relates to amendments *prior to* Section 1595A's enactment (in fact, Plaintiffs' entire brief fails to include *even a single reference* to 1595A). ECF 432 at 16.

Plaintiffs' other authority is similarly unpersuasive. *Medina Tovar v. Zuchowski*, 982 F.3d 631 (9th Cir. 2020) addressed the question of whether 8 U.S.C. § 1101(a)(15)(U), the statute providing for "U visas," provided for derivative spousal visas where the parties were married after the initial petition for a visa, but before the grant of the U-visa. *Id.* at 633. Nothing in the opinion mentions the TVPA, nor does the opinion discuss the bounds of the statute or the availability of injunctive relief. Likewise, the law review article cited by Plaintiffs <u>does not even mention injunctive relief</u> but instead reaffirms in a footnote that a private right of action "allow[s] victims access to civil damages from their traffickers."

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

ECF 432 at 15 (citing Laura Shoop, *Uncovering the "Hidden Crime" of Human Trafficking by Empowering Individuals to Respond,* 36 Ga. St. U.L. Rev. 1173, 1206 (2020)).

Moreover, Plaintiffs' interpretation would impermissibly render Section 1595A superfluous. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 643 (9th Cir. 2012) (explaining that in statutory construction "no provision should be construed to be entirely redundant."). If Section 1595 included relief beyond that specifically enumerated, there would be no need for a section entitled "Civil Injunctions." Instead, Section 1595, entitled "Civil Remedy" provides only that an individual may "recover damages and reasonable fees." 18 U.S.C. §1595. In contrast, the section titled "Civil Injunctions" does not provide a right to <u>individual</u> injunctive relief, but instead limits injunctive relief to the Attorney General. 18 U.S.C. § 1595A.

Finally, Plaintiffs' argument that because this Court certified the class, it must be maintained on the merits should also be rejected. As Plaintiffs themselves argue, class certification is not a determination on the merits. ECF 433 at 8.[2] Here, following discovery and clarification of the claims beyond the pleadings, it is clear Plaintiffs claims fail as a matter of law; accordingly, GEO is entitled to summary judgment.

## II.    Plaintiffs' Purported Declaratory Relief.

Plaintiffs also now claim that they seek declaratory relief. As explained above, equitable relief is not available under the TVPA. But, even if it were, Plaintiffs previously chose to limit their claim to exclusively injunctive relief during the class notice period to gain an advantage and avoid the broader class notice that would have been necessary had their claims for relief been broader. ECF 420-3. After relying upon their position to gain an advantage in this litigation, they cannot now conduct an about-face after discovery has closed and GEO has relied upon Plaintiffs' representation.

---

[2] GEO's motion to decertify these same claims is currently pending. As explained in that motion, this Court may amend certification at any time. Plaintiffs' assertion that this Court cannot change any of its findings after certification, or that certification is the "law of the case," is inaccurate.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

In addition, Plaintiffs newly sought  relief  has not been identified with sufficient specificity to survive GEO's motion for summary judgment. Plaintiffs allege only that they seek a "declaratory judgment regarding [its] disregard of the statute,"[3] yet they do not articulate what they want the Court to declare. Even Plaintiffs are unconvinced they seek declaratory relief. On the very first page of their Opposition, Plaintiffs identify a list of "relevant issues," none of which mentions declaratory relief. ECF 432 at 11.

Further, Plaintiffs' allegations fail to establish a claim for declaratory relief as they seek redress for past acts, and none of the Plaintiffs remain detained. *See Marzan v. Bank of Am.*, 779 F. Supp. 2d 1140, 1146 (D. Haw. 2011) (cause of action for declaratory relief cannot be used to complain of past wrongs). Accordingly, this Court should reject Plaintiffs' arguments that they are entitled to declaratory relief.

**III.** **Plaintiffs Fail To Raise Disputed Issues Of Fact That Would Preclude Summary Judgment On Their TVPA And CTVPA Claims.**

**a.** **The Action Plaintiffs Challenge Is A Warning Of Adverse But Legitimate Consequences, Not An Illicit Threat.**

Under the TVPA, Plaintiffs have a burden to establish two key elements of their claim. *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017). First, Plaintiffs must establish GEO had the requisite scienter. "The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her if she left her employment[.]" *Id.* (internal quotations omitted). Second, Plaintiffs must establish the harm or threat of harm relayed by the defendant was "sufficiently serious" to compel the victim to continue to work, from the vantage point of a reasonable person in the place of the victim – the victim's decision to provide his or her labor must be "objectively reasonable under the circumstances," but

---

[3] Ironically, in their summary judgment motion, Plaintiffs argued GEO could not seek declaratory relief for issues subsumed within other aspects of the case. To the extent this Court finds that argument persuasive, it should apply with equal force to Plaintiffs' claims.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    that the factfinder must also consider "the particular vulnerabilities of the person" in the

2    victim's position. *Id.*

3        In assessing the second factor, whether harm is "sufficiently serious," a warning of

4    a legitimate but adverse consequence will not suffice to establish a threat of serious harm.

5    *United States v. Toviave*, 761 F.3d 623, 626 (6th Cir. 2014). A warning of a consequence

6    is not a threat under the TVPA. *Headley v. Church of Scientology Int'l*, 687 F.3d 1173,

7    1180 (9th Cir. 2012). Whether a warning constitutes a warning of an adverse but legitimate

8    consequence as opposed to a threat under the TVPA is a decision for the Court that can be

9    resolved at summary judgment. *Id.* at 1180; *see also Martinez-Rodriguez v. Giles*, 391 F.

10   Supp. 3d 985, 992 (D. Idaho 2019); *Roman v. Tyco Simplex Grinnell*, 2017 WL 3394295,

11   at *5 (M.D. Fla. Aug. 8, 2017), *aff'd*, 732 F. App'x 813 (11th Cir. 2018) (finding no

12   violation of the TVPA because the purported threat was merely a warning that the

13   employee would be fired if he did not complete his job tasks).

14       Plaintiffs argue this Court need not distinguish between improper threats and

15   permissible warnings of adverse but legitimate consequences. ECF 432 at 18. Yet, binding

16   Ninth Circuit precedent is directly contrary to Plaintiff's argument: "[i]n applying the Act,

17   we **must** distinguish between "[]improper threats or coercion and permissible warnings of

18   adverse but legitimate consequences." *Headley*, 687 F.3d at 1180 (emphasis added). This

19   inquiry is critical because a "warning of such a [legitimate] consequence is not a 'threat'—

20   under the Trafficking Victims Protection Act." *Id.*

21       Here, the specific practice Plaintiffs challenge is a warning of adverse but legitimate

22   consequences. Plaintiffs argue that merely placing ICE's disciplinary sanctions in the

23   detainee handbook, which include an admonition that the "refusal to clean assigned living

24   area" may be sanctioned by, *inter alia*, segregation, is an impermissible threat under the

25   TVPA. ECF 432 at 25; ECF 415-6 (§ 3.1A). Plaintiffs argue it is "irrelevant" whether GEO

26   actually imposed that sanction, whether there was a policy developed by GEO to the

27   contrary, or whether no detainee has actually been subjected to segregation for refusing to

28   clean. ECF 432 at 25.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Neither party disputes that GEO must comply with the PBNDS as part of its contracts with ICE. ECF 414-1 (GEO's Fact #31); ECF 411-12 (Plaintiffs' Fact #30). Furthermore, Congress has directed ICE to require that its contractors follow the PBNDS. ECF 435-3 at 5. It is also not disputed that the purported "threat" at issue is that ICE's offense 306, "refusal to clean assigned living area" contains a list of thirteen different sanctions, of which *one* is up to 72 hours in segregation. ECF 415-6 (PBNDS § 3.1A); ECF 432 at 21. The PBNDS require that GEO communicate the disciplinary severity scale to detainees in a handbook. ECF 206-5 at 222 (2011 PBNDS, § 3.V.B) ("The detainee handbook . . . issued to each detainee upon admittance, shall provide notice of the . . . disciplinary severity scale") The only question is whether the PBNDS's disciplinary policies are an illicit threat or just a warning of legitimate consequences. This is a determination of law for the Court. The record reflects that Section 3.1 of the PBNDS serves to "ensure that there is a fair and equitable disciplinary system at all detention facilities that hold ICE detainees." ECF 408-4 at 71 (Brooks Dep. 276:10-12); thus, ICE's purpose in enacting Section 3.1 is legitimate. The facts and law compel a finding that the "threat" Plaintiffs challenge is a legitimate warning of a consequence not actionable under the TVPA.

**b.    The Thirteenth Amendment Counsels Against A Finding of TVPA Liability.**

In addition to limiting liability to circumstances with illicit threats, not simply legitimate warnings, the TVPA also does not serve to overturn longstanding precedent under the Thirteenth Amendment. *Muchira*, 850 F.3d at 617; *Toviave*, 761 F.3d at 628. Indeed, the requirement that a detainee cleaning communal bathrooms in his or her housing unit, subject to potential disciplinary sanctions, is "the type of normal housekeeping duties that fall outside the Thirteenth Amendment." *Mendez v. Haugen*, 2015 WL 5718967, at *5 (D. Minn. Sept. 29, 2015), *aff'd*, No. 15-3370 (Feb. 22, 2016). Plaintiffs offer no authority to the contrary. Thus, GEO is entitled to summary judgment on its TVPA claims.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

### c. Plaintiffs' Interpretation of Section 5.8 of the PBNDS Does Not Compel a Different Result.

In their Opposition, Plaintiffs make plain it is not the <u>scope</u> of cleaning they challenge as violative of the TVPA, but instead the placement of the consequences for the refusal to clean in the handbook. Indeed, the sanction at issue did not use the phrase "personal housekeeping" but instead warns against the refusal to clean "assigned living area." ECF 415-6 (PBNDS § 3.1A); ECF 432 at 21. Under Plaintiffs' theory, Section 5.8 of the PBNDS, which describes the Voluntary Work Program, limits the tasks that detainees may perform without compensation to (1) making beds daily, (2) stacking loose papers, (3) keeping the floor free of debris and the dividers free of clutter, and (4) refraining from hanging clothing or objects in housing units. ECF 415-6 (PBNDS 5.8 V.C). To put this allegation in context, Plaintiffs allege GEO may require detainees to make their beds subject to the disciplinary policy in Section 3.1, but asking the same detainee to clean up a table where they intentionally spilled milk violated the TVPA.

The undisputed evidence shows Plaintiffs' contrived interpretation lacks support. ICE, the drafter of the PBNDS, never intended for Section 5.8 to be an exhaustive list of personal housekeeping tasks that may be performed without compensation. ECF 422-1 at 6 (Brooks Decl. ¶ 14). Instead, it was meant to be "examples of personal housekeeping." *Id.* Nor was it ever intended to "preclude detainees from participating in maintaining the cleanliness of common or shared living areas." *Id.* To the contrary, the PBNDS does not "exempt[s] or expressly forbid[s] detainees from performing basic housekeeping and light cleaning." *Id.* at ¶ 16. Indeed, detainees share "a co-responsibility to keep the dormitory, dayroom, shower and bathroom areas tidy and clean." *Id.*

To the extent Plaintiffs argue that the sanction in the PBNDS for "refusing to clean assigned living area" cannot be enforced where detainees refuse to clean areas other than the four items enumerated in Section 5.8, the undisputed evidence also makes plain that this is inaccurate. As ICE's 30(b)(6) witness explained, ICE's own detainee handbook

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

warns that detainees who do not clean their "living area and any general-use areas. . . may be disciplined." *Id.* at ¶ 14.

Nor does *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1277 (11th Cir. 2020) compel a different result. Plaintiffs mischaracterize the holding in *Barrientos*, arguing that it adopted Plaintiffs' interpretation of the PBNDS as limiting detainees' responsibilities to clean to the four items enumerated in Section 5.8. ECF 432 at 20; ECF 433 at 12. *Barrientos* made no such finding. Instead, the Eleventh Circuit found "nothing in the text of the statute excludes federal contractors providing immigration detention services from liability under the TVPA, even when that liability might arise out of the operation of a federally mandated work program." *Barrientos*, 951 F.3d at 1277. To avoid "unintended consequences," the court limited its holding, stating: "[t]o be clear, our opinion should not be read to call into question the legality of voluntary work programs in federal immigration detention facilities, or to call into question longstanding requirements that detainees or inmates be required to perform basic housekeeping tasks." *Id.* at 1277-78. Nor did the *Barrientos* court limit its definition of "basic housekeeping tasks" to those enumerated in Section 5.8. Instead, the court included a footnote explaining that it <u>did not intend to call into question the disciplinary severity scale included in the PBNDS</u>: "As discussed above, in the interest of maintaining order in an immigration detention facility, the PBNDS authorize punishments for detainees who, among other things, refuse to complete basic personal housekeeping tasks or organize work stoppages. See generally PBNDS § 3.1. Our decision should likewise not be read to imply that these basic disciplinary measures, on their own, give rise to TVPA liability." *Id.* at 1278 n.5.

## IV.     Plaintiffs' TVPA Case Law is Inapposite.

Plaintiffs ignore the key facts of many of the cases they cite in support of their position. For example, Plaintiffs cite *United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008), for the proposition that TVPA liability arises where an employer poses mere "warnings to their employee that she was in the United States illegally and therefore subject to deportation." ECF 432 at 19 (citing *Calimlim*). Plaintiffs misstate the facts of *Calimlim*,

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

which found sufficient evidence to uphold a conviction under the TVPA where the defendants illegally brought the plaintiff into the United States, held plaintiff against her will for nineteen years and forced her to work 15 hours *every single day of the week*, did not allow her to use the phone, denied her medical care when she needed it, and threatened her with deportation if she did not comply. *Calimlim*, 538 F.3d at 707. In contrast, Plaintiffs here are held in the lawful custody of ICE. The "labor" at issue is basic housekeeping tasks needed to keep a clean environment, such as putting trash in the trash can instead of on the floor, wiping down surfaces after eating, or cleaning toothpaste off of the sink. Further, unlike in *Calimlim*, ICE has been aware of the allegations in this case (and others) and taken no action.

## V.   Being A For-Profit Company Does not Establish the Intent Required Under the TVPA.

Plaintiffs misconstrue the TVPA's *scienter* requirement; that requirement applies specifically to the act of <u>coercing</u> a victim into providing labor, not to the "benefit" a perpetrator might conceivably enjoy from obtaining such labor. It is not enough to show that the defendant received a benefit; to the contrary, the evidence must show that  the defendant "<u>intended to cause the victim to believe</u> that she would suffer serious harm — from the vantage point of the victim — if she did not continue to work." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)  This Court has already noted this as the correct framing of the *scienter* analysis. ECF 223 at 22 ("The 'lynchpin' of the serious harm analysis under the TVPA is whether serious harm was threatened and whether the employer <u>intended the employee to believe harm would occur</u>.") (citing *Dann*, 652 F.3d at 1170) (emphasis added).

Here, Plaintiffs decry the fact that GEO is a for-profit corporation and declare that its status as a publicly traded company, standing alone, is sufficient "circumstantial" evidence to prove Defendant violated the statute. ECF 432 at 17. This threadbare evidence is insufficient to show that Defendant acted with the requisite intent. *Wells Fargo Bank Nw. N.A. v. Taca Int'l Airlines*, 247 F. Supp. 2d 352, 365 (S.D.N.Y. Sept. 25, 2002) ("a

1   generalized profit motive that could be imputed to any for-profit company, is insufficient

2   for purposes of inferring scienter." (emphasis added)). Here, the overwhelming evidence

3   shows detainees were not placed in segregation for refusing to work. For instance, not a

4   single segregation report out of the thousands in the summary judgment record show a

5   detainee placed in segregation for refusal to work. Dkt. 426-4 (Decl. of Nick Erickson) at

6   ¶¶ 4-7; see also 193-4 (Janecka Dep.) at 74:11-17 ("Q. Does it ever happen at the GEO

7   facility that when a detainee refuses to clean their assigned living area, they are put into

8   disciplinary restriction? A. Not to my knowledge. Q. That has never happened, to your

9   knowledge, at the Adelanto Facility? A. Not to my knowledge, since I've been there."

10  (emphasis added)).

11      Further, despite taking over fifteen depositions of Defendant's employees, Plaintiffs

12  have failed to identify any evidence that Defendant intended to coerce detainees to work.

13  The scant evidence Plaintiffs provide demonstrates the opposite. See, e.g., Dkt. 193-4

14  (Janecka Dep.) at 196:20-25 ("It's strictly a volunteer detainee work program … ").

15  Plaintiffs even cut off one evidentiary citation just before the testimony explicitly refutes

16  their allegation GEO would have to hire more employees in the absence of detainee labor.

17  See Dkt. 411-10 (Spangnuolo Dep.) at 20:10-18 ("Q. Do you have to hire additional people

18  to cover for the lack of detainee help? A. No."). Summary judgment is appropriate.

19  **VI.   GEO is Entitled to Summary Judgment on Plaintiffs' Employment Claims.**

20      Plaintiffs do not establish a genuine issue of material fact to save their claim under

21  the California Minimum Wage Act ("CMWA") from summary judgment.

22      **a.   Under any definition of "employer," GEO does not employ Plaintiffs.**

23      Plaintiffs argue GEO improperly urges this Court to apply the wrong test to

24  determine whether it employed them. ECF No. 432 at 29-30. Plaintiffs instead urge this

25  Court to apply one of three tests set forth in Martinez v. Combs, 49 Cal. 4th 35 (2010). Id.

26  at 29-32. Yet the Martinez tests cannot control under recently enacted amendments to the

27  California Labor Code and because Plaintiffs' status as detained undocumented

28  immigrants in a federal facility is relevant to the inquiry of whether they are GEO's

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1  employees. Regardless of what standard applies, the result is the same: Plaintiffs are not

2  employed by GEO under California law and summary judgment is proper.

3      **b.    *Martinez* is not the Correct Test.[4]**

4      *Martinez* does not provide a test for determining whether detainees are employees.

5  To the contrary, it provides a test for determining when two or more entities are joint

6  employers. *Salazar v. McDonald's Corp.*, 2016 WL 4394165, at *3 (N.D. Cal. Aug. 16,

7  2016), *aff'd*, 939 F.3d 1051 (9th Cir. 2019). In *Martinez*, the California Supreme Court

8  examined whether agricultural workers were <u>jointly employed</u> by the merchants who sold

9  their products (as well as the farm operators) such that those merchants could be liable

10  under the CMWA and Industrial Wage Commission ("IWC") regulations. 49 Cal. 4th at

11  49. The Court then set forth a test for determining when a third-party may be considered

12  an "employer" under the CWMA. *Id.* at 64.  If Plaintiffs were trying to establish that both

13  GEO and ICE were the employer of a detention officer at Adelanto, *Martinez* would

14  provide guidance. But that is not the issue before this Court.

15      **c.    Whether Detainees are "Employees" Is the Appropriate Test.**

16      Accordingly, because the issue here is not one of who the "employer" of detainees

17  is, but instead whether detainees themselves are "employees," this Court must first turn to

18  Labor Code § 2775 for guidance. Section 2775(b)(1) provides that an individual who

19  provides labor for <u>renumeration</u> is an employee if they also meet the ABC test enumerated

20  in *Dynamex Ops. W. Inc. v. Super. Ct.*, 4 Cal. 5th 903 (2018). Thereafter, Section

21  2775(b)(3) explains that if *Dynamex* is not easily applied to a particular context, the

22  determination of whether a person is an employee "shall be . . . governed by the California

23  Supreme Court's decision in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal. 3d

24  341 (1989). As noted in GEO's motion, this standard applies retroactively to existing

25  claims, including Plaintiffs' claim under Labor Code § 1194.

----

[4] GEO notes that although this Court has previously issued rulings confirming IWC Order 5 applies to this action, ECF 44 and 61, it has not yet had the opportunity to consider whether Labor Code § 2775(b)(3) or *Talley* should dictate whether GEO employed Plaintiffs because that statue did not yet exist and *Talley* had not yet been decided.

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Despite Plaintiffs' claims to the contrary, *Talley v. City of Fresno*, 51 Cal. App. 5th 1060 (2020) provides helpful guidance here. While *Talley* involved a claim under the Fair Employment and Housing Act, it looked to the Labor Code for guidance in determining whether individuals who were in the custody of the government, were employees. *Id.* Under *Talley*, an individual in government custody is not an employee if she does not receive "minimum remuneration" for their work, or an amount that was "financially significant and quantifiable." *Id.* at 1086. *Talley's* "minimum renumeration" test is consistent with the dictates of Section 2775—which limits the definition of "employee" to only those who receive "renumeration."

To establish they receive remuneration, Plaintiffs must show the benefit they receive is quantifiable and "significant," not merely incidental to the work performed. *Id.* at 1084. Plaintiffs cannot meet this test, because $1 per day stipend in the VWP is not significant but instead is merely incidental to the program itself. *See, e.g.*, *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 439-40 (5th Cir. 2013) (finding $2 per fire emergency earned by a volunteer firefighter as incidental).

Furthermore, Plaintiffs do not identify any factual dispute that would preclude summary judgment under *Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017). Instead, they write off *Matherly* as inapplicable to state law claims and do not address *any of its factors*. Because Plaintiffs dispute is purely legal, and because *Matherly* is in fact applicable, GEO is entitled to summary judgment. To be sure, *S.G. Borello* (codified in Section 2755 of the Labor Code) instructs courts to look at the multifactor tests espoused in federal precedent to determine whether a detainee is an "employee." 48 Cal. 3d at 351. Thus, where the issue is whether civilly confined individuals are employees, the multi-factor test expressed in *Matherly*, 859 F.3d at 278 guides the inquiry. Because Plaintiffs do not dispute *any* of GEO's factual predicates from its opening motion, GEO is entitled to summary judgment under *Materly*.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**d.     GEO does not Employ Plaintiffs Under *Martinez*.**

Even assuming that the joint employer test in *Martinez* applies, the evidence shows GEO is not an "employer" of the VWP participants as the facts clearly show that GEO did not: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship.

**1.     GEO does not control VWP Participants' wages, hours, or working conditions.**

Plaintiffs argue GEO controls VWP participant's wages, hours, and working conditions and therefore it employs any detainee participants. ECF 432 at 31. In support of this, Plaintiffs argue GEO decides what and when to pay participants; it creates work details and assigns participants jobs; it evaluates candidates for positions; it evaluates the work performance of participants; it provides the tools and training to do the tasks; and it supervises detainees. *Id.* These allegations are demonstrably false and a deliberate misstatement of testimony and the evidence.

First, the undisputed evidence establishes GEO does <u>not</u> exercise direct or indirect control over the wages, hours, <u>or</u> working conditions of VWP participants. GEO has no control over the wages VWP participants at the Adelanto facility are paid—ICE makes that determination. SUF 11, 13, 14. Therefore, GEO does not meet the first test.

Second, GEO does not control the positions or hours worked by VWP participants. Detainees choose whether to apply to work in the VWP. When completing their applications, detainees are given multiple positions to choose from and have complete freedom to decide where they want to work. *See* ECF 411-15 (McCormick Dep. at 93-96). Most detainees are eligible to work in any position they choose, subject to strict ICE regulations that narrow the available positions and shifts for detainees classified as higher-risk. *E.g.*, ECF 411-15 (McCormick Dep. at 56:19-57:10, 92:21-93:10, 96:2-97:1). Once offered a position, detainees may decline or accept available positions and shifts as they

come available without impairing their ability to work in other positions or shifts. *Id.* at 93:18-96:1, 107:15-108:6.[5]

Further, GEO does not control the number of hours worked within a shift by a VWP participant or whether the participant even appears. *See* SUF 16. Undisputed testimony establishes a detainee has discretion whether to appear at all, how long to stay, and how much work to do within an eight-hour window. SUF 16; *see also* ECF 193-4 (Janecka Dep. 6/26/19 at 101-102); ECF 411-15 (McCormick Dep. at 104:14-22, 239:3-20, 262:8-12). Detainees have complete freedom to come and go as they please, as well as quit a position with no repercussion. *Id.*; *see also* ECF 411-15 at 203:16-204:13, 267:2-6; 266:14-23.

Last, undisputed testimony states GEO does not exercise meaningful oversight as to the working conditions for VWP participants. For example, Ms. Wise McCormick testified GEO's detention officers would suggest the dorm porters may want to clean, but it was entirely left up to the porters themselves whether they would clean at all, as well as how and what they would clean. *Id.* at 27:18-28:13, 30:14-24, 35:7-19, 35:15-36:8, 37:2-3, 66:17-18, 77:5-22, 80:17-24. To the extent Plaintiffs seek to rely on the "control test," summary judgment in favor of GEO is appropriate.

### 2.   GEO does not suffer or permit Plaintiffs to work

The second definition of "employ" under *Martinez* is whether the employer "suffers or permits" the work. *Martinez*, 49 Cal. 4th at 70. Plaintiffs argue GEO is an employer because it knows detainees work for subminimum wages and fails to prevent that unlawful condition from happening, despite being able to do so. ECF 432 at 32. GEO is not an employer under this test because even presuming it "knows" the VWP participants work "in" its business without being paid the minimum wage, it did not have the power to hire them or pay them more. Because GEO does not have discretion as to whether to hire VWP

---

[5] Plaintiffs make a passing reference to *Brassinga v. City of Mtn. View*, 66 Cal. App. 4th 195 (1998) for the proposition that detainees are not properly considered volunteers simply because they have the ability to decline an assignment. ECF No. 432 at 29. However, *Brassinga* does not stand for this proposition. In *Brassinga*, the court found a deceased officer was <u>not</u> a volunteer at the time of his death where he received his typical compensation to voluntarily participate in an out of work activity for his employer. *Id.* at 214. This ruling has no bearing on the inquiry here.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

participants as employees or whether to pay them minimum wage (ECF 414-1 at SUF 13, 24), GEO cannot be liable as an employer under the "suffers and permits" test, and summary judgment is appropriate.

## VII.   GEO Is Entitled To Derivative Sovereign Immunity.

Plaintiffs assert that GEO is not entitled to Derivative Sovereign Immunity ("DSI") because Plaintiffs (incorrectly) argue GEO took steps beyond what ICE required in implementing the VWP and that it had discretion to set the VWP stipend at a rate higher than the amount that is specified in its contract with ICE. Plaintiffs both misstate the law and fail to refute any of GEO's material facts. As GEO explains in detail in its Opposition to Plaintiffs' Partial Motion for Summary Judgment (ECF 434), *Campbell-Ewald* made clear that derivative sovereign immunity is distinct and separate from the "government contractor defense" enumerated in *Boyle v. United Techs. Corp.*, 487 U.S. 500, 508 (1988). The correct legal test for whether GEO is entitled to DSI is whether GEO "simply performed as the Government directed" and if ICE had validly conferred authority to direct GEO to so act. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.,* 928 F.3d 42, 69 (D.C. Cir. 2019). As set forth below, GEO has established both prongs of the test, and is therefore entitled to summary judgment as a matter of law.[6]

### a.   GEO Performed as ICE Directed

Plaintiffs argue GEO's DSI defense fails because GEO took steps over and beyond acts required to be performed under the ICE contracts. In support, Plaintiffs cite to three purported facts: (1) "ICE did not authorize or direct GEO to secure free detainee labor through threats of serious harm," (2) "ICE [did not] direct GEO to permit detained immigrants to work in VWP details for either $1/day or no compensation at all," and (3) that "ICE leaves the decision of how much to pay above [$1/day] to the discretion of GEO itself." ECF 432, p. 11:4-18. Yet Plaintiffs' "facts" do not properly refute any of GEO's

---

[6] Plaintiffs' reliance upon *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1135 (D. Colo. 2015) and *Nwauzor v. GEO Grp., Inc.*, 2020 WL 1689728, at *9 (W.D. Wash. Apr. 7, 2020) is misguided as GEO's DSI defense has not been resolved on the merits in either case.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

arguments. First, any reliance on the "fact" that "ICE did not authorize or direct GEO to secure free detainee labor through threats of serious harm" is misplaced as it assumes GEO in fact did secure free detainee labor through threats of serious harm – a proposition which is not supported by any undisputed evidence.  Further, this contention conflates the claims of the Adelanto Wage Class with those of the Forced Labor Classes. Indeed, the issue of whether GEO "forced" labor is not relevant to the Adelanto Wage Class. As described above, in implementing the disciplinary severity scale, GEO acted exactly as the government directed. Plaintiffs do not materially contest this, instead conceding that their Forced Labor claims are based exclusively on acts that GEO took at the direction of the Federal Government: placing the disciplinary severity scale that was drafted by ICE in the detainee handbook. ECF 432 at 25 (conceding Plaintiffs' claim for relief is based upon ICE's rule violation 306); ECF 206-5 at 222 (2011 PBNDS, § 3.V.B) (requiring GEO to provide all detainees with notice of the disciplinary severity scale). Nor have Plaintiffs refuted GEO's undisputed fact nos. 88 and 89 (which facts demonstrate segregation does not necessarily result in serious harm).

As for the Adelanto Wage Claims, Plaintiffs do not dispute that GEO is required to operate a VWP that complies with PBNDS 5.8. GEO's Fact #30 (undisputed by Plaintiff); *see also* ECF 411-1 (Plaintiffs' Fact 30). There is also no dispute that ICE has set the minimum permissible stipend for VWP participation at $1 per day. GEO's Fact #39, 40, 42 (undisputed by Plaintiff); *see also* Plaintiffs' Fact # 34.  The only potential dispute is whether GEO *could have* paid more than $1 per day, consistent with the directives of the federal government. Yet, Plaintiffs do not offer *any* evidence that GEO could have paid detainees more than $1 per day for their participation in the VWP at Adelanto. Instead, they argue generally that a contract would not "necessarily preclude" GEO from paying a higher rate and point to different facilities which have received different directives from ICE. ECF 431 at 31:24-25. Critically, Plaintiffs ignore the specific contract at issue—the key piece of evidence that would demonstrate what ICE directed GEO to do.

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

The plain language in the Adelanto contract requires GEO to pay exactly $1 per day to detainees. ECF 434-1, GEO's SUF 11 ("Detainee labor shall be . . . paid $1 day."). ICE agrees that GEO must pay $1 per day to detainees in the VWP. ECF 434-1, SUF 12. In order to pay more than $1 per day, GEO would need to obtain a contract modification. *Id.* at SUF 33. When GEO asked in the past whether it could pay more at Adelanto, ICE officials told GEO it could not. *Id.* at SUF 13. GEO's contract with ICE directs it to pay $1 per day to detainees, not more and not less. Accordingly, GEO is entitled to immunity.

**b.    ICE Has Authority To Direct The Dollar A Day Rate**

Plaintiffs' conclusory argument that ICE lacked appropriations authority similarly fails. Congress has repeatedly acknowledged the PBNDS in drafting its appropriations bills; indeed, it has specifically ordered ICE to comply with various versions of the PBNDS on multiple occasions. *See e.g.,* H. Rept. 112-91 - DHS Appropriations Bill, 2012; H. Rept. 112-492 - DHS Appropriations Bill, 2013; H. Rept. 114-215 – DHS Appropriations Bill, 2016. Nor is there any authority to support Plaintiffs' argument that Congress was required to specifically appropriate funds for the VWP each year, rather than including it as part of its lump-sum amount earmarked for detention services. To the extent Plaintiffs are successful in arguing that ICE had *no authority* to set the detainee pay rate or reimburse GEO, this same analysis would lead to a finding that ICE was not authorized to promulgate the section of the PBNDS which requires detainees to be compensated for their participation in the VWP (thus eliminating Plaintiffs ability to rely upon Section 5.8 to establish their TVPA claims). Indeed, adopting Plaintiffs' reasoning, detainees who have participated in the VWP since 1979 would have been unjustly enriched (at the taxpayers' expense) in the amount of $1.00 for each day they participated in the VWP. Because the GEO performed as ICE directed and that ICE had validly conferred authority to direct GEO, summary judgment should be granted on the basis of DSI.

**VIII.  GEO Is Entitled To Intergovernmental Immunity.**

Plaintiffs rely on <u>non-binding</u> case law to establish GEO should not be shielded by intergovernmental immunity. ECF 432, p. 23:2-3 (citing to *The GEO Group, Inc. v.*

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*Newsom*, 2020 WL 5968759, at \*30 (S.D. Cal. Oct. 8, 2020) stating, "the *Newsom* court got it right." ECF 432, p. 23:9). Binding case law holds otherwise: "[f]or purposes of intergovernmental immunity, federal contractors are treated *the same as the federal government itself*." *United States v. California*, 921 F.3d 865, 882 n.7 (9th Cir. 2019).

### a. The Wage Class Claims Seek to Regulate the Federal Government

Plaintiffs first argue GEO is not shielded by intergovernmental immunity because it cannot be considered a government instrumentality nor does it serve an important governmental function.[7] The cases Plaintiffs cite addressing the "legal incidence" test used in state-taxation cases are inapplicable. *See, e.g., Dep't of Empl. v. United States*, 385 U.S. 355, 358 (1966). Because there is Ninth Circuit precedent directly on point that GEO steps into the shoes of the federal government for purposes of intergovernmental immunity, there is no need to consider whether the instrumentality cases are applicable here. *See California*, 921 F.3d 865 at 882.

### b. California Minimum Wage Act is Discriminatory

Next, Plaintiffs argue that GEO is not entitled to intergovernmental immunity because "there is no evidence in the record that the CMWA treats private companies that contract with the federal government worse than it treats private companies that contract with state or local governments." ECF 432 at 26:11-14. But the issue is not (as Plaintiffs suggest) whether CMWA treats private companies that contract with the federal government worse than it treats private companies that contract with state or local governments; rather, the issue is whether the CMWA "treats someone else better than it treats [the federal government]" – the standard set out in *Washington v. U.S.*, 460 U.S. 526 (1983). Here, GEO's uncontroverted evidence demonstrates that application of the state's minimum wage law would treat the federal government (and its contractors) worse than it treats state or local governments operating their respective VWP programs.

---

[7] There can be no question that the safe housing of ICE detainees constitutes an important governmental function. *United States v. Michigan*, 851 F.2d 803, 806-07 (6th Cir. 1988).

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Without any meaningful explanation, Plaintiffs argue records from Orange County and Yuba County cannot be used to demonstrate that the state's minimum wage laws discriminate against the federal government because they are not "proper comparators." Plaintiffs notably fail to provide *any* evidence (or authority for that matter) demonstrating how or why Orange County's Theo Lacy facility and the Yuba County facility are not proper comparators. Both county facilities implement *the same PBNDS-authorized VWP*, both house ICE detainees, and *both pay detainees $1 per day* for their participation in nearly identical tasks to those included in GEO's VWP. GEO's evidence demonstrates that these facilities are similarly situated and both must comply with ICE regulations. GEO Fact # 55-61. Yet, despite operating the same ICE programs as GEO, Yuba County and Orange County are given preferential treatment afforded to state entities under the IWC – *i.e.*, as state entities, they are shielded by the express terms of the applicable IWC wage orders from a claim that ICE detainees in their facilities should be classified as "employees," while GEO is not given the same protection. Thus, Plaintiffs' statement that "California's requirement an employer pay a minimum wage…applies equally to all actors, state and federal" (ECF 432 at p. 27:12-13) is not only unsupported by the evidence, but also is incorrect as a matter of law. Plaintiffs next argue that the CTVPA does not discriminate against the federal government because GEO cited only to Cal. Code Regs. tit. 15, § 3064, which regulation Plaintiffs claim does not apply "because civil immigration detainees are not inmates in the custody of the California Department of Corrections." But, Plaintiffs fail to acknowledge that is exactly the point—California cannot treat its own facilities differently than the federal government by permitting State detainees to clean up after themselves without pay, but classifying the same activities as "employment" where the detainees are held under the authority of the federal government.

Plaintiffs also fail to refute GEO's evidence that such disparate treatment would burden the federal government and its contractors. Plaintiffs contend since GEO's contracts with ICE are "fixed-cost contracts based on a per diem or bed-day rate, which includes all daily operating costs, such as personnel, food, health care, supplies, utilities, maintenance,

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   infrastructure, depreciation, cost of capital, overhead and profit" that GEO (and not the

2   federal government) would suffer any loss associated with paying minimum wage. ECF

3   432 at 28:1-8. However, Plaintiffs have not pointed to any evidence supporting their

4   conclusion that GEO, not ICE, would carry the burden.

5        GEO on the other hand has produced evidence demonstrating that application of the

6   CMWA *would* fundamentally change the terms of the ICE contracts, in turn burdening

7   ICE. For example, the ICE contracts require *all* employees to be included the staffing plan,

8   which is to be approved by the federal government. GEO Fact #9; ECF 415-7 at GEO-

9   Novoa_00041205. Based upon that, *all* employees would need to be approved by the

10  federal government (including those in the VWP). Wages then would in turn be passed to

11  the government because the federal government funds everyone on the staffing plan. In

12  their summary judgment motion (ECF 411), Plaintiffs rely on F.R.E. 408-protected

13  evidence this Court should not even consider. ECF 435-15 (*Menocal* Hearing Transcript)

14  at 17:9-25 ("… it's straight up 408 as far as I can see. … it screams 408 if it was produced

15  as part of a settlement effort that I [the Court] engaged in."). Even if the Court were to

16  consider it, however, the evidence supports GEO's argument; it demonstrates ICE would

17  be adversely affected by having to pay substantially more to reimburse GEO should

18  California's minimum wage law apply to the Adelanto VWP.[8] *See generally* ECF 231-2

19  (May 30, 2018 letter from GEO to ICE); ECF 411-5 (Brian Evans 30(b)(6) Dep.) at 157:23-

20  158:19 ("… I believe there was also a component of that letter that provided some sense

21  of potential cost implications if <u>the government were to have to pay detainees or someone

22  else a higher amount</u>.") (emphasis added). Together, these facts demonstrate ICE would in

23  fact be severely impacted by application of the California minimum wage law.

24        Finally, Plaintiff's citation to irrelevant dicta made by the Court in *Nwauzor,* W.D.

25  Wash. No. 3:17-cv-05769, about the purported inapplicability of *Boeing v. Movassaghi,*

26

27  _____

28  [8] GEO continues to object to the use of this evidence as it is protected by F.R.E. Rule 408;
    however, insofar as the Court considers it, this spreadsheet demonstrates significant costs
    *to the government,* not GEO.

768 F.3d 832, 842-43 (9th Cir. 2014) or *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996) should be given no credence. As stated above, the *Nwauzor* Court concluded that issues of fact related to GEO's immunity defenses must proceed to the jury for a final resolution. ECF 302 at 20 (Bryan, J.). For all of these reasons, GEO is entitled to summary judgment based on the IGI doctrine.

## IX. Plaintiffs Cannot Prevail On Their Claims For Unjust Enrichment Or For Violation Of California's Unfair Competition Law.

Plaintiffs have wholly failed to demonstrate that GEO is in any way "enriched" by the presence of detainees in the VWP; to the contrary, GEO's staffing is sufficient to ensure all of the tasks that detainees perform could be completed by regularly-scheduled employees. SUF 31; ECF 414-1, GEO's Fact #47,49. In addition to not needing or relying upon detainee participants for the operation of the facility, GEO does not profit from its operation of the VWP. SUF 32 ECF 414-1, GEO's Fact #51. That GEO pays for and distributes additional food items to VWP participants—*above and beyond the daily meal requirements outline under the PBNDS*—further undermines Plaintiffs' contention that GEO is unjustly enriched by operating a VWP. Here, even assuming *arguendo* that GEO is benefitted by detainee labor, any nominal benefit afforded GEO is offset by the costs of operating the VWP. Accordingly, Plaintiffs' claim for unjust enrichment fail as a matter of law, and GEO is entitled to summary judgment.

A claim under California's Unfair Competition Law requires "a violation of another law" as a predicate to recovery. *Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894, 918 (N.D. Cal. 2020). Because Plaintiffs have failed to establish that detainees are employees for purposes of California's wage and hour laws, Plaintiffs cannot state a claim under the UCL. Accordingly, GEO is entitled to summary judgment on Plaintiffs' UCL claim.

## X. CONCLUSION

For the foregoing reasons, GEO respectfully requests that this Court deny Plaintiffs' motion for summary judgment in its entirety.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

1

2    Dated: January 15, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**AKERMAN LLP**


By:   */s/ Ellen S. Robbins*
       Ellen S. Robbins
       Alicia Y. Hou
       Adrienne Scheffey
       Attorneys for Defendant
       THE GEO GROUP, INC.

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342