**AKERMAN LLP**
ELLEN S. ROBBINS (SBN 298044)
ALICIA Y. HOU (SBN 254157)
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342u
Email: ellen.robbins@akerman.com
Email: alicia.hou@akerman.com

LAWRENCE D. SILVERMAN (admitted *pro hac vice*)
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
Email: lawrence.silverman@akerman.com

ADRIENNE SCHEFFEY (admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email: adrienne.scheffey@akerman.com

Attorneys for Defendant
THE GEO GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>THE GEO GROUP, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM | Case No. 5:17-cv-02514-JGB-SHK<br><br>Assigned to Hon. Jesus G. Bernal<br><br>**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**<br><br><br>**Hearing Information:**<br>Date:   February 1, 2021<br>Time:   9:00 a.m.<br>Place:  Courtroom 1<br>              3470 Twelfth Street<br>              Riverside, California 92501 |

**AKERMAN LLP**
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.    APPLICABLE STANDARD FOR DECERTIFICATION ..............................1

II.   COMMONALITY.................................................................................2

    A.   Questions that Are Common to the Elements of A Claim Do Not Satisfy Commonality. ........................................................................4

    B.   Plaintiffs Cannot Show Common Cleaning Expectations Across Facilities. .......................................................................................5

    C.   Discipline is Highly Individualized...........................................7

    D.   GEO's Intent Does Not Hold Plaintiffs' Claims Together................... 11

    E.   The TVPA Claims Cannot Be Resolved on a Class-Wide Basis......... 13

III.  INDIVIDUALIZED ISSUES PREDOMINATE ........................................... 17

IV.   CONCLUSION ................................................................................. 20

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................18

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)................................................................17

*Barrientos v. CoreCivic, Inc.*,
  951 F.3d 1269 (11th Cir. 2020) ...............................................5

*Chill v. General Electric Co.*,
  101 F.3d 263 (2d Cir. 1996) ..................................................13

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)..................................................................2

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..............................................2, 3

*Lambert v. Nutraceutical Corp.*,
  870 F.3d 1170 (9th Cir. 2017) ................................................1

*Marlo v. UPS*,
  639 F.3d 942 (9th Cir. 2011) ..................................................1

*Martinez-Rodriguez v. Giles*,
  391 F. Supp. 3d 985 (D. Idaho 2019) ...................................19

*McCrary v. Elations Co. LLC*,
  No. EDCV 13-0242-JGB, 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014)...........1

*Menocal v. GEO Grp., Inc.*,
  320 F.R.D. 258 (D. Col. 2017) *aff'd* 882 F.3d 905 (10th Cir. 2018) ...........1, 7, 8

*Racies v. Quincy Bioscience, LLC*,
  No. 15-CV-00292-HSC, 2020 WL 2113852 (N.D. Cal. May 4, 2020) ...............1

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .................................................9

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**TABLE OF AUTHORITIES**

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)..................................................................17, 18, 19

*United States v. Dann*,
    652 F.3d 1160 (9th Cir. 2011) ...................................................11, 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................4, 5, 10, 16

*Wells Fargo Bank Northwest N.A. v. Taca Int'l Airlines*,
    247 F.Supp.2d 352 (S.D.N.Y. Sept. 25, 2002) ...............................13

**Statutes**

18 U.S.C.A. § 1589...................................................................11, 19

California Trafficking Victims Protection Act....................................1, 13

Federal Labor Standards Act ...............................................................17

Trafficking Victims Protection Act ...............................................passim

**Rules**

Fed. R. Civ. P. 23.............................................................................1, 10

Fed. R. Civ. P. 23(a) .........................................................................2, 18

Fed. R. Civ. P. 23(b)(2) .........................................................................9

Fed. R. Civ. P. 23(b)(3) .............................................................2, 17, 18, 20

Federal Rule of Evidence 408.................................................................12

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Defendant The GEO Group, Inc. ("GEO") hereby submits its Reply in Support of its Motion to Decertify the Class ("Motion") (ECF 427) as set forth below. Plaintiffs' Opposition fails to identify common contentions that would warrant continued certification of Plaintiffs' Forced Labor Classes under Federal Rule of Civil Procedure 23. Accordingly, Plaintiffs' claims arising out of the Trafficking Victims Protection Act ("TVPA") and the California Trafficking Victims Protection Act ("CTVPA") should be decertified.

## I.      APPLICABLE STANDARD FOR DECERTIFICATION

While Plaintiffs argue the applicable legal framework for decertification is disputed, it is not. As this Court has previously noted, the Ninth Circuit in *Marlo v. UPS*, 639 F.3d 942 (9th Cir. 2011) made clear that the burden at decertification remains on the Plaintiff. *McCrary v. Elations Co. LLC*, No. EDCV 13-0242-JGB (SPx), 2014 WL 12589137 *5 (C.D. Cal. Dec. 2, 2014); *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, (9th Cir. 2017) (*rev'd on other grounds*) ("The party seeking to maintain class certification bears the burden of demonstrating the Rule 23 requirements are satisfied, even in a motion to decertify."); *Racies v. Quincy Bioscience, LLC*, No. 15-CV-00292-HSC, 2020 WL 2113852 at *2 (N.D. Cal. May 4, 2020) (noting while the Ninth Circuit precedent could use clarification, "the burden of proof remains on the plaintiff.").[1] As GEO's standard for decertification is consistent with this Court's prior rulings, Plaintiffs argue not only for a new rule in this case, but also ask this Court to abrogate its prior decisions.[2] This Court should not indulge Plaintiffs' request to adopt a new standard for decertification. To be sure, it would flip the roles of the parties if GEO were responsible for identifying the

---

[1] Plaintiffs also cite to a number of cases decided before *Marlo*. ECF 433 at 2. To the extent those cases provide for a different standard than *Marlo*, they are of no moment as *Marlo* is the binding precedent.

[2] Even if this Court departs from its prior position and shifts the burden to GEO, the analysis is unchanged: the evidence does not support Plaintiffs' theory of a classwide policy.

56108044;1

evidence that Plaintiffs will use at trial to establish their claims and Plaintiffs were tasked with refuting it.

Regardless of who bears the burden at decertification, the evidence must show class members complain of a pattern or practice generally applicable to <u>the class as a whole</u>. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ("[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted."). For the Adelanto Forced Labor Class ("Adelanto Class") Plaintiffs' claims must satisfy the predominance test, which requires a showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) Fed.R.Civ.P. 23(b)(3). There is no question that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.*

Plaintiffs also counsel against a consideration of the merits as part of decertification. Contrary to Plaintiffs' argument, this Court *must* consider the merits if the merits are relevant to the issue of decertification. *Ellis,* 657 F.3d at 981 ("[I]is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, **a district court must consider the merits if they overlap with the Rule 23(a) requirements**") (emphasis added).

## II.    COMMONALITY

To show commonality, Plaintiffs must demonstrate that there are questions of both fact **and** law that are common to the class. *Ellis,* 657 F.3d at 981. "If there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class." *Id.* at 983. Here, as GEO argued extensively in its initial brief, there is no evidence that detainees at all facilities nationwide (let alone at Adelanto) were subject to the same practice that Plaintiffs allege constituted human trafficking. To the contrary, there is evidence that the housekeeping policies at each facility varied significantly (ECF 427 at 16-21) and that the discipline policy provides for broad discretion

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

and favors informal resolution. ECF 427 at 21-23. Thus, the experiences of detainees varied widely both with regard to what work they might have been asked to do, their motivation for doing (or not doing) it, and the possible consequences, if any.

Plaintiffs fail to address the evidence presented by GEO in its motion, instead arguing based upon a *single policy at a facility where none of the named Plaintiffs were detained* that they can establish a common scheme applicable to 12 facilities over more than a decade. ECF 433 at 9-10.[3] They further argue that this Court should not consider any of GEO's evidence because the Court should not resolve issues of fact at this stage, but instead take Plaintiffs' theory at their word. ECF 433 at 13. Again, Plaintiffs seek a result inconsistent with binding precedent. While this Court should not weigh evidence that is unrelated to class certification, it **must** "resolve any factual disputes necessary to determine whether there was a common pattern and practice that could affect the class as a whole." *Ellis,* 657 F.3d at 983.

To be sure, contrary to Plaintiffs' arguments, GEO has presented significant *new* evidence that both the cleaning and disciplinary policies diverge. Indeed, none of this information was before this Court at class certification. Plaintiffs' arguments to the contrary are inaccurate. At the hearing on class certification, this Court made clear it expected GEO to produce evidence of differences in the policies. Declaration of Ellen Robbins, Ex. A, November 18, 2019 hearing transcript at pg. 17-18. GEO responded that the parties had not "engaged in class-wide, nationwide discovery because it hasn't been ordered yet." *Id.* at page 18. The Court acknowledged this reasoning, yet found the absence of such evidence counseled in favor of certification at that time. ECF 223 at 20. Following this Court's directive, GEO engaged in discovery including the depositions of over fifteen GEO witnesses and significant document discovery. Decl. of Ellen Robbins at ¶ 3. Thus,

---

[3] Plaintiffs argue that the handbook for each facilities contains the same sections; that is not the same as having the same content. In fact, as set forth in detail in GEO's motion at ECF 427 pages 17-19, the language of the handbooks varies significantly.

56108044;1

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    the issues and evidence before the Court have changed significantly since the initial

2    certification hearing.

3         This evidence revealed in discovery overwhelmingly shows that there was no

4    common policy or practice as Plaintiffs originally argued; despite providing a ceiling and

5    a floor for possible sanctions in the handbook, detainees were not threatened with

6    segregation for refusing to clean; the areas that detainees ultimately cleaned depended upon

7    the individual policies and practices of each facility; the layouts and staffing of different

8    facilities changed the realm of possible cleaning tasks either by implementing clean teams

9    or by occupying a converted hotel rather than a typical detention center; and some facilities

10   didn't even have segregation facilities. Each of these considerations bears on whether a

11   reasonable detainee would have felt compelled to clean.

12   **A.    Questions that Are Common to the Elements of A Claim Do Not Satisfy Commonality.**

14        In their Opposition, Plaintiffs argue there is a "common offense" of the TVPA which

15   satisfies their burden. To that end, Plaintiffs focus on "common questions" that would be

16   applicable to *any* claim under the TVPA. ECF 433 at 11. Yet, Plaintiffs' "common

17   questions" are no more than statements of the cause of action under the TVPA. For

18   example, Plaintiffs point to "whether and how GEO forces, coerces, and/or compels

19   detainees" to work for no pay as a common question. ECF 433 at 11. Merely reciting

20   elements of a claim does not satisfy commonality—to the contrary, Plaintiffs must show

21   evidence of common <u>contentions</u> that are specific to the facts at issue.

22        The Supreme Court has unambiguously stated commonality cannot be satisfied by

23   merely alleging violations of the same legal provision. *Wal-Mart Stores, Inc. v. Dukes*, 564

24   U.S. 338, 350 (2011) ("Quite obviously, the mere claim by employees of the same

25   company that they have suffered a Title VII injury, or even a disparate-impact Title VII

26   injury, gives no cause to believe that all their claims can productively be litigated at once.

27   Their claims must depend upon a common contention—for example, the assertion of

28

56108044;1

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1    discriminatory bias on the part of the same supervisor."). Instead, Court must consider

2    whether in answering the common contention, "determination of its truth or falsity will

3    resolve an issue that is central to the validity of each one of the claims in one stroke."

4    *Dukes*, 564 U.S. at 350. Where the dissimilarities within the class have the "potential to

5    impede the generation of common answers," the class <u>must</u> be decertified. *Id.*

6    **B.    Plaintiffs Cannot Show Common Cleaning Expectations Across Facilities.**

7

8          Indeed, in reviewing the purportedly common contentions of the class, it is clear that

9    the differences among the class impede the generation of common answers. Plaintiffs' first

10   "common contention" is whether detainees at GEO facilities *could have* performed basic

11   housekeeping beyond the four items listed in Section 5.8 as part of a policy at the facility.[4]

12   ECF 433 at 11-13. The answer is: it depends. First, it depends upon where the detainee was

13   housed because the *written* policies at each facility varied. ECF 427 at 17-19. Plaintiffs do

14

15

16

17   [4] There is no evidence that the list in Section 5.8 of the PBNDS is an exhaustive list of

18   permissible housekeeping duties. Instead, all the evidence – including the testimony of one
     of the drafters of that section of the PBNDS—is to the contrary. ECF 422-1 (Brooks Decl.)
     ¶ 14-17. Likewise, other language in the PBNDS and other ICE documents requires
     detainees to "maintain their immediate living areas in a neat and orderly manner" (ECF

19   415-6 (2011 PBNDS) 5.8V(C)) and "keep areas that you use clean, including your living

20   area and general-use areas" (ECF 422-1 (Brooks Decl.) ¶ 16), and ICE requires GEO to

21   admonish detainees that if they "do not keep [their] areas clean, [they] may be disciplined."
     *Id.* Although this issue is not for the Court to resolve with this Motion, the "four tasks only"

22   premise of Plaintiffs' Nationwide class claim will face robust evidence that it is false.
     Plaintiffs citation to *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1277 (11th Cir. 2020)

23   does not compel a different result. In *Barrientos,* the court explicitly held it did not intend
     to call into question the disciplinary severity scale included in the PBNDS: "As discussed

24   above, in the interest of maintaining order in an immigration detention facility, the PBNDS

25   authorize punishments for detainees who, among other things, refuse to complete basic
     personal housekeeping tasks or organize work stoppages. See generally PBNDS § 3.1. Our

26   decision should likewise not be read to imply that these basic disciplinary measures, on

27   their own, give rise to TVPA liability." *Id.* at 1278 n.5.

28   56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

1   not dispute these differences (or offer contrary evidence) in their Opposition.[5] Next, it

2   depends upon whether there was a different practice than what was written. *Id*. Certainly,

3   if the practice every day was different than the written policy, a detainee would not have a

4   colorable argument that the written policy applied. Indeed, under most written policies,

5   detainees would not have been expected to clean outside of the four enumerated items in

6   Section 5.8 of the PBNDS—the very contention that Plaintiffs purport to challenge

7   collectively. As such, for any facility where the written policy conforms to Plaintiffs'

8   interpretation of the PBNDS, there is no common contention. Instead, all cleaning that was

9   performed beyond that listed in Section 5.8 of the PBNDS would be the result of

10  individualized circumstances—not an overarching policy. This is true for the entire

11  Adelanto-only class; every single inquiry would be individualized because there is *no GEO*

12  *policy* requiring detainees to clean beyond the four enumerated items.[6] ECF 421-1 (Janecka

13  Decl. Ex. A at 7; ECF 421-1 (Janecka Decl.) at 5 ¶¶ 22-29; ECF 427-2 at 46 (Novoa Depo.

14  at 52:18-23). The answer to the question "did a detainee clean outside of the tasks

15  enumerated in Section 5.8" would depend upon the *individualized* circumstance of each

16  detainee (or subgroups of detainees). Thus, the differences in the class impede the

17  generation of common answers.

18          Moreover, Plaintiffs' theory for class treatment depends on their assertion that the

19  PBNDS limits permissible housekeeping to four enumerated tasks. GEO disputes the

20  accuracy of Plaintiffs' interpretation, as detailed in its summary judgment briefing and

21  ICE's testimony. *See* ECF 422-1 (Brooks Decl.) ¶ 14 ("Section V(C) [of the PBNDS]

22  provides examples of personal housekeeping, but there was no intent by the working group

23

24  [5] While Plaintiffs' brief includes numerous excerpts from the Mesa Verde handbook, noticeably absent is the section of the handbook which describes to detainees their basic housekeeping duties. Nor can this be explained by a contention that all policies are similar. Plaintiffs offer *no* citation for their statement that the handbooks all require detainees to clean beyond the four required areas in the PBNDS. ECF 433 at 14.

25

26

27  [6] Indeed, Plaintiffs' "common offense" section fails to cite even a *single* piece of evidence from the Adelanto Facility.

28

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

1  [that drafted the PBNDS] to establish a conclusive list of personal housekeeping activities

2  or to preclude detainees from participating in maintaining the cleanliness of common or

3  shared living areas."). If the Court were to agree with GEO that detainees are required to

4  perform tasks beyond what is required in Section 5.8 of the PBNDS, then issues of proof

5  multiply exponentially.

6  **C.  Discipline is Highly Individualized**

7       The next common contention Plaintiffs allege is the "enforcement scheme" or

8  disciplinary practices. ECF 433 at 14. Plaintiffs allege there is "common proof" that "GEO

9  makes certain every detainee is told they must provide labor beyond that required by the

10  PBNDS and that their failure to do so can (and will) result in 'serious harm.'" ECF 433 at

11  14.[7] In an effort to demonstrate common proof, Plaintiffs point to the local detainee

12  handbooks which contain information about detainees' rights and responsibilities. *Id.*

13  Consistent with the PBNDS, the handbooks contain the ICE disciplinary severity scale.

14  ECF 415-6 (2011 PBNDS); *see also* Facility Handbooks attached as Ex. A to the

15  Declarations of Janecka (ECF 421-1); Plumley (ECF 422-4); Castro (ECF 423-1); Scott

16  (ECF 423-4); Staiger (ECF 423-7); Bowen (ECF 423-10); Greenwalt (ECF 424-1); Allen

17  (ECF 424-4 ); Tate (ECF 425-1); Ramos (ECF 425-4); and Ceja (ECF 426-1 ). Plaintiffs

18  do not challenge one specific disciplinary practice, as was the case in *Menocal*,[8] but instead

19  argue that every single infraction that could be even tangentially related to the refusal to

20  clean will be presented at trial, ranging from failure to follow orders to insolence. ECF 433

21  at 15. Indeed, a jury would be unable to reasonably assume a charge for "insolence" and a

22  charge for "failure to obey an order" derived from the same nexus of facts. Further, an

23  individualized assessment would be needed for each occasion to identify whether a

---

[7] Plaintiffs provide no citation for this statement.

[8] This is merely one example of how *Menocal* does not provide a basis for certification here. *See Menocal v. GEO Grp., Inc.,* 320 F.R.D. 258 (D. Col. 2017) *aff'd* 882 F.3d 905 (10th Cir. 2018); ECF 427 at 14-15. As explained in GEO's opening brief, *Menocal* was based upon different facts and circumstances than the instant case.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

particular incident involved cleaning tasks. Thus, each different infraction would require an individualized defense.

And, even if Plaintiffs were to limit their claims to the single infraction for the refusal to clean, violation 306 (as in *Menocal*), the variables still defeat commonality. Plaintiffs concede that for "300" level offenses, including offense 306, there was not a single disciplinary procedure, but rather there are at least <u>thirteen</u> different sanctions that may be imposed with complete discretion of the individual officer. ECF 433 at 16; ECF 432 at 22. Those sanctions include warning and reprimand, but also include the sanction of segregation. *Id.* Plaintiffs have not suggested any evidence that would allow the jury to make a general determination of which of the thirteen sanctions a detainee might anticipate would apply.

At class certification, Plaintiffs argued circumstantial evidence would fill this gap, by showing that the actual *practice* at the facility created a classwide inference that GEO's practice was to compel detainees to clean. Plaintiffs did not argue that the purportedly coercive tactic was that detainees were "threatened" with the consequence of a "warning" (which certainly is not harm under the TVPA). Instead, Plaintiffs argued they would be able to show that GEO had the *specific intent* to use the threat of segregation to compel Plaintiffs' labor. The evidence uncovered since certification, however, does not support such an inference.

To the contrary, the undisputed evidence makes abundantly clear that the general practice (or "enforcement scheme") is that GEO officers are trained to resolve issues through communication and to de-escalate situations. ECF 427-2 at 199 (Ramos Depo. at 78:14-24) (detainees are encouraged to clean by displaying photographs of what the bunk area should look like and de-escalation techniques in communication with the population); ECF 427-2 at 120 (Bowen Depo. at 142:3-4) (issues like cleaning "can typically be handled with a conversation."). Although Plaintiffs' arguments to this point have focused on the sanction of segregation, the evidence establishes segregation simply is not used as a

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56108044;1

DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

consequence for failure to clean. ECF 427-2 at 201 (Ramos Depo. at 94:24-95:2, 127:21-24) (has never seen any incident reports written up for detainees who did not follow a directive related to cleaning); ECF 427-2 at 178 (Staiger Depo. at 123:25-125:19) (not aware, including through a review of the discipline log, of any detainee having been written up for a refusal to clean); ECF 427-2 at 84 (Plumley Depo. at 92:9-93:11) (same); ECF 427-2 at 231 (Greenwalt Depo. at 122:1-15) (same); ECF 427-2 at 216 (Martin Depo. at 133:19-23) ("It's always been GEO's policy not to discipline a detainee for refusing to clean their living area."); ECF 427-2 at 100 (Warren Depo. at 86:18-88:8) (if an officer wrote up a detainee for a failure to clean the housing unit, Warren would consider that to be a mistake "that would be an issue for that staff member"); ECF 426-4 (Erickson Decl.) ¶ 6. Indeed, GEO's written policy prohibits the use of segregation for failure to clean. ECF 427-2 at 216 (Martin Depo. at 133:19-25) ("It's always been GEO's policy not to discipline a detainee for refusing to clean their living area. We made it and put it more specific and updated our disciplinary policy so there was no question with regard to that actual offense. Q. … So now it's in writing? A. Now it's in writing, yes."). And despite the production of many segregation logs from Adelanto and the other facilities in the class—there is no evidence detainees are placed in segregation as a routine consequence for failing to clean. Thus, there is no common inference that can create a class-wide presumption. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (to satisfy the requirements of Rule 23(b)(2), class members must "complain of a <u>pattern or practice that is generally applicable to the class as a whole</u>.").

Without a common inference, the written ICE disciplinary practices are too variable to satisfy commonality. Plaintiffs concede that for any given Level III offense, there are *thirteen* different sanctions that may be imposed. ECF 433 at 16. Before the sanctions are imposed, the *written practices* upon which Plaintiffs rely instruct GEO to resolve any issue informally where possible. ECF 415-2 Martin Decl., Ex. D, PBNDS 3.1.II.4 ("Where permitted by facility policy, staff shall informally settle minor transgressions through

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

mutual consent, whenever possible."). Only after it was clear that the issue could not be resolved informally would the sanctions become relevant. Plaintiffs were aware the thirteen sanctions were not viewed in a vacuum, but instead that the first decision would be made by a GEO Dorm Officer, who would be afforded the discretion as to the appropriate action. *See* Facility Handbooks attached as Ex. A to the Declarations of Janecka (ECF 421-1); Plumley (ECF 422-4); Castro (ECF 423-1); Scott (ECF 423-4); Staiger (ECF 423-7); Bowen (ECF 423-10); Greenwalt (ECF 424-1); Allen (ECF 424-4 ); Tate (ECF 425-1); Ramos (ECF 425-4); Ceja (ECF 426-1). Plaintiffs concede GEO officers have discretion as to what disciplinary action to suggest. ECF 432 at 20. Thus, in each instance, an officer would make a discretionary choice. From there, any sanction *would not be imposed* until the decision had been reviewed by the Unit Disciplinary Committee ("UDC"), adding in the discretionary decisions of a number of other GEO personnel. *See id.* (facility handbooks). Without additional common evidence, a detainee could not *reasonably* expect that of the thirteen possible sanctions, segregation was the most likely. Nor have Plaintiffs limited their challenge to decisions made by a single person or group of people. Instead, Plaintiffs challenge the individual discretionary decisions of *hundreds* of GEO's employees. The Supreme Court has unambiguously held that where the corporate policy is to allow the individual imposing discipline broad discretion, that the policy does not satisfy Rule 23 standards for classwide treatment. *Dukes*, 564 U.S. at 355 ("The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal–Mart's 'policy' of allowing discretion by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices.").

Furthermore, rather than reduce the number of individualized inquires in order to identify a common policy, Plaintiffs only multiply the variables at issue. Indeed, Plaintiffs note that serious harm could be inflicted through a warning of the consequence of a change

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

of housing. ECF 433 at 8, 18. But they offer no evidence of how they would show on a <u>class-wide basis</u> detainees cleaned to avoid a housing unit change. This claim is in fact contrary to evidence that Plaintiff Novoa *requested* to change housing units on several occasions.[9] ECF 421-6 at 122-23, 126, 139, 144 (Novoa Detainee File, kites requesting housing changes). Plaintiffs also complain recreational activities might be suspended at Adelanto (but not at other facilities) if cleaning is not done. ECF 433 at 13. GEO disputes this in fact occurred, ECF 193-4 (Janecka Depo. at 64:13-19) ("Q. As we sit here today, at the Adelanto Detention Center, if detainees in the unit do not clean the area after being instructed to do so, is it correct that the television will be turned off and the detainees will not be permitted to participate in any activities or programs until the unit is cleaned? A. I -- not to my knowledge."). Putting aside the question of whether losing TV or recreational privileges for an indeterminate amount of time would be "serious harm," the question of why detainees cleaned cannot be answered with class-wide evidence. Indeed, Plaintiffs' theory makes clear on any occasion, a detainee could choose to work for myriad of reasons, either to maintain tv access, to keep the area clean, or because of a fear that the most harsh sanction in the handbook would be imposed. These divergent motivations destroy commonality.

## D.    GEO's Intent Does Not Hold Plaintiffs' Claims Together

Plaintiffs must also prove that GEO "knowingly provides or obtains the labor or services of a person" by unlawful means. 18 U.S.C.A. § 1589 (emphasis added). As the Ninth Circuit has explained, this requires the jury to find "the employer intended to cause the victim to believe that she would suffer serious harm – from the vantage point of the victim – if she did not continue to work." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) (*citation omitted*). *See also* ECF 223 at 22 ("The 'lynchpin' of the serious harm

---

[9] The Court should not consider the Marwaha declaration because Plaintiffs have been unable to locate him and produce him for deposition.

56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   analysis under the TVPA is whether serious harm was threatened and whether the employer

2   intended the employee to believe harm would occur.").

3       Plaintiffs assert they can establish a common intent by demonstrating GEO had a

4   "common motivation" to save money. ECF 433 at 10. In order to do so, Plaintiffs do not

5   point to evidence of GEO's cost saving measures or occasions where it cut corners to

6   reduce its cost. Instead, they point to the mere fact that GEO is a for-profit corporation that,

7   if unsuccessful in this lawsuit, could face changes to its operations. ECF 433 at 10. To that

8   end, Plaintiffs point to a document that was created subject to Federal Rule of Evidence

9   408, and is not admissible at trial, to show GEO has previously estimated the economic

10  model that could result from certain changes to its operations. ECF 433 at 10 (Citing a Rule

11  408 protected Document filed at ECF 408-1); ECF 435-15 at 17:9-25 (Demonstrating Rule

12  408 Protection). Even if represented correctly, this would not establish GEO's motive. As

13  the document was created in 2018, it was not in existence when GEO would have had to

14  form its allegedly profit-hungry motive. Furthermore, Plaintiffs misrepresent the

15  significance of the document at ECF 408-1. The spreadsheet at issue estimates the *cost to

16  ICE* if the VWP participant's classification were to change. ECF 231-2 (Letter to ICE);

17  ECF 411-5 (Evans Depo. at 157:23-158:19) (explaining letter). As is evident in the chart,

18  GEO would obtain a 15% fee in connection with the increased VWP payments. That fee

19  would be an additional *profit* to GEO, not a loss. Thus, under Plaintiffs' own theory, GEO

20  would be incentivized by profit to have detainees classified as "employees." Beyond the

21  document estimating the potential exposure to GEO and ICE in this case, there is no

22

23

24

25

26

27

28

56108044;1

DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS

evidence the VWP is tied to any of GEO's profit and loss analyses.[10] Thus, Plaintiffs' fail to present factual support to support their theory.[11]

Furthermore, to the extent Plaintiffs plan to rely upon evidence that GEO is a for-profit company to establish intent, such evidence would be legally insufficient. "[A] generalized profit motive that could be imputed to any for-profit company is insufficient for purposes of inferring scienter." *Wells Fargo Bank Northwest N.A. v. Taca Int'l Airlines*, 247 F.Supp.2d 352, 365 (S.D.N.Y. Sept. 25, 2002) (citing *Chill v. General Electric Co.,* 101 F.3d 263, 268 (2d Cir. 1996)). Were the rule to be otherwise, the *scienter* requirement of the TVPA and the CTVPA would become meaningless. Indeed, wage laws would be supplanted by the TVPA because every company could be found to have "coerced" labor by making a profit. Such a construction of the TVPA would be absurd. Thus, Plaintiffs cannot rely upon intent to establish commonality.

### E.    The TVPA Claims Cannot Be Resolved on a Class-Wide Basis.

The evidence is overwhelming that there is no common policy to tie the class together with common evidence. While Plaintiffs attempt to show otherwise by relying

---

[10] *See* ECF 414-1 (GEO's Statement of Undisputed Facts) 46, 47, 51, 52; ECF 434-1 (GEO's Statement of Genuine Disputes of Material Fact) 24-26. Indeed, if GEO were to use employees instead of detainees to accomplish the tasks done by detainee volunteers in the VWP, GEO would *increase* its profits due to the markup on the new services and increased labor costs needed to provide them. ECF 418-3 (Evans 30(b)(6) Depo. at 50:6-25; 51:1-16); ECF 418-2 (Evans 30(b)(1) Depo. at 158:8-21).

[11] To be sure, GEO's corporate policies make clear GEO *did not intend* to lead detainees to believe they would be placed in segregation for refusing to clean. To the contrary, they encouraged their staff to resolve issues informally wherever possible and implemented a corporate policy limiting the use of segregation. ECF 421-1 (Janecka Decl.)  ¶ 34; ECF 424-4 (Allen Decl.) ¶ 30; ECF 423-10 (Bowen Decl.) ¶ 33; ECF 423-1 (Castro Decl.) ¶32; ECF 426-1 (Ceja Decl.) ¶ 31; ECF 424-1 (Greenawalt Decl.) ¶ 33; ECF 425-4 (Ramos Decl.) ¶ 33; ECF 423-4 (Scott Decl.) ¶32; ECF 423-7 (Staiger Decl. ¶ 34; ECF 425-1 (Tate Decl.) ¶ 30; ECF 415-2 (Martin Decl.) ¶ 42, ECF 415-10 (GEO Policy regarding non-availability of segregation as discipline for failure to clean).

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

upon evidence from only *one* facility in the class, the following illustration demonstrates the lack of common evidence:

- Mr. A is assigned with three other men to a room that has two bunks, a table, TV, toilet, sink, and shower at Broward. ECF 427-2 at 78 (Plumley Depo. at 29:15-30:24) (describing room). A VWP "tub and toilet" crew cleans the bathroom regularly, but Mr. A and his roommates are expected to keep their room tidy. ECF 427-2 at 82 (Plumley Depo. at 89:2-25). The written policy is consistent with the PBNDS requiring only that detainees "keep their bed and immediate area clean," but does not explicitly delineate the four items from the PBNDS. ECF 422-4 (Plumley Decl. Ex. A) at 5. As for possible discipline, Broward officers strive to settle minor issues informally whenever possible and housekeeping issues rarely if ever result in discipline. ECF 422-3 (Plumley Decl.) ¶ 34; ECF 427-2 at 84 (Plumley Depo. at 92:2-12) ("I have not seen one incident report relative to sanitation."). And, there is no question that segregation was never used because there is no segregation unit at Broward. *Id.* at 77 (Plumley Depo. at 24:13-15).

- Ms. B is assigned to pod style housing at the Adelanto West building where she shares a cell that opens into the dayroom. ECF 193-4 (Janecka Depo. at 40:13-25). VWP crews are assigned to clean the dayroom and showers in her pod. ECF 193-4 (Janecka Depo. at 220:16-18). Cleaning supplies are made available to Ms. B and other detainees every morning, but she does not need to use them if she does not want to. ECF 193-4 (Janecka Depo. at 58:19-21; 59:6-10). The written policy for cleaning explicitly limits unpaid cleaning to tasks that are enumerated in Section 5.8 of the PBNDS: "[t]he hanging of sheets, towels, blankets or clothing from bunks, rails, tables etc. is prohibited. Hooks are provided: wet towels are to be hung from these or over your property box. Personal items including hygiene items are to be stored in the facility issued plastic container." ECF 421-1, Janecka Decl. Ex. A. Unlike Broward, in Adelanto, there is a segregation unit, but Ms. B has not

witnessed a common practice where detainees are placed in segregation (or even disciplined) for simply declining to clean. ECF 426-4 (Erickson Decl.) at ¶ 6; ECF 421-1 (Janecka Decl.) ¶ 33-36.

- Mr. C is assigned to a dorm at Montgomery. ECF 425-1 (Tate Decl.) ¶ 23 (describing housing at Montgomery). On a rotating basis, he and his bunk group are assigned to tidy up the dayroom. ECF 427-2 at 145 (Tate Depo. at 63:10-21). Because Montgomery uses a rotating cleaning procedure to clean-up the day room, the written policy is not consistent with Plaintiffs' interpretation of the PBNDS. Instead, it provides that detainees are responsible for cleaning "assigned common areas such as showers, sinks, dayroom, multi-purpose rooms and recreation areas." ECF 425-1 (Tate Decl.) Ex. A at 10. But, paid VWP detainees clean up after meals. ECF 425-1, (Tate Decl.) at 5 ¶ 22-25. Detainees were not subject to segregation if they declined to participate in the rotation. ECF 425-1 (Tate Decl.) ¶ 29. Instead, generally the other detainees in the rotation would do the cleaning and it is typically handled very informally. ECF 432-9 (Tate Depo. at 65:25-66:20).

Accordingly, as evidenced above, even if the Court were to accept Plaintiffs' disputed interpretation of the PBNDS as allowing only the four listed housekeeping tasks, Plaintiffs are unable to show a common (and unlawful) pattern or practice that was applicable to the class as a whole. The common practices are divergent at each facility. Mr. A's handbook did not explicitly direct him to clean outside of the five enumerated tasks in the PBNDS, but did not definitively forbid additional cleaning. Ms. B's handbook was explicitly limited to the four items in the PBNDS and she was never asked to clean beyond the permitted tasks. *Compare with* ECF 427-2 at 46 Ex. D (Novoa Depo. at 52:18-23) (testifying that detainees were only responsible for "their own living area, which is their bunk"). Mr. C, on the other hand, reviewed a handbook that explicitly instructed him to maintain cleanliness beyond the items enumerated in Section 5.8. No common

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56108044;1

evidence would show that all three were *required* to clean areas beyond those enumerated in Section 5.8. Thus, there is no common policy to hold the claims together.

Further, the disciplinary measures diverge at each facility. Segregation was unavailable at Broward. And, as here, absent testimony to the contrary Mr. A would know that Broward had no segregation unit. While the handbook at Adelanto listed segregation as a possibility, the everyday practice in the facility made clear that the possibility of segregation was remote, at best. ECF 426-4 (Erickson Decl.) ¶ 6. Thus, it would be *unreasonable* to presume a detainee would believe segregation would be the first response. And at Montgomery, segregation is reserved for rare situations where the detainee is endangering the safety of others, so it is rarely used for a failure to clean. 425-1 (Tate Decl.) ¶ 28-32.  Plaintiffs concede it is their burden to demonstrate detainees reasonably believed the "threat" would be carried out. ECF 433 at 13. Here, there is no common policy that would lead plaintiffs to believe it was likely they would be sanctioned for refusing to clean. The clear practices of the facilities show otherwise. Accordingly, as exemplified by this illustration, even if it was reasonable in some circumstances for a detainee to feel coerced by certain sanctions, the evidence would require information beyond the generally applicable polices—defeating commonality. Accordingly, as illustrated above, no common policy or practice ties the claims together.

To meet the requirement of commonality, a party must demonstrate they and the proposed class members were subject to a common policy or practice. *Dukes*, 564 U.S. at 349-50. As the Supreme Court cautioned in *Dukes*, "[w]hat matters to class certification is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceedings to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. Following discovery, it is clear that Plaintiffs' proposed "questions" are not suitable for class determination.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

## III.   INDIVIDUALIZED ISSUES PREDOMINATE

As an initial matter, Plaintiffs contend GEO misapplies the predominance requirement for Rule 23(b)(3) certification. ECF 433 at 18. They suggest the predominance inquiry is concerned exclusively with the <u>questions</u> raised by the proposed class's claims, not the <u>proof</u> required to answer those questions. *Id.* But in so doing, Plaintiffs ignore the holdings of their own cited authorities in favor of cherry-picked dicta. The law—including Plaintiffs' cited authorities—is clear that while this Court's general task is to "give careful scrutiny to the relation between common and individual <u>questions</u> in a case," it cannot determine whether a question is "common" or "individual" in the first place without considering the <u>nature of the evidence</u>[12] required to answer the question:

> An individual question is one where "members of a proposed class will need to present <u>evidence that varies from member to member</u>," while a common question is one where "the same <u>evidence</u> will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide <u>proof</u>."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions §4:50, pp. 196-197 (5th ed. 2012)) (emphasis added). In *Tyson*, the Supreme Court <u>reversed</u> the district court's certification of a Rule 23(b)(3) class, reasoning the plaintiffs failed to satisfy the predominance requirement. *Id.* at 1055. The Court's analysis turned on the proof required to prove the plaintiffs' unpaid overtime claims:

> The District Court should have begun its predominance inquiry by determining which elements of the plaintiffs' claims present <u>common or individual issues</u>, and assessed whether individual issues would overwhelm common ones. … <u>Establishing an FLSA violation across the entire class was impossible without evidence that *each* employee would have worked over 40 hours per week</u> if donning and doffing time were included.

---

[12] Plaintiffs fail to recognize this inquiry is a practical one that asks what <u>kind</u> of evidence would be required to answer critical questions in the case, not whether the evidence may ultimately establish the claims asserted. *See* ECF 433 at 8, 18 (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)).

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

> But the District Court did not fully appreciate that <u>this was a</u> <u>critical individual issue that defined Tyson's liability</u>.

*Id.* at 1054 (emphasis added).

And contrary to Plaintiff's representation, the Court in *Amchem* did not broadly pronounce the predominance inquiry "rests on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement, and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" ECF 433 at 18 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 594 (1997)) (emphasis added). This language is dicta, pulled from the opinion's syllabus, explaining why the district court <u>in that particular case</u> was wrong to consider the availability of a common settlement fund as probative in addressing the predominance requirement. *Id.* at 622-23.[13] As in *Tyson*, the Court in *Amchem* ultimately reversed the district court's certification of a Rule 23(b)(3) class, reasoning the predominance requirement had <u>not</u> been met. *Id.* at 628. There, the proposed class consisted of individuals who allegedly suffered a variety of asbestos exposures from the defendant's products. *Id.* at 624. The Court reasoned the <u>proof</u> of causation—that is, proof that each class member actually suffered an injury resulting from his or her exposure—was too peculiar and individualized to survive the predominance requirement. *Id.* In other words, it was not enough that the class members in *Amchem* shared a common experience of asbestos exposure. *Id.* at 623-24 ("Even if Rule 23(a)'s commonality requirement may be satisfied by [a] shared experience, the predominance criterion is far more demanding.").

---

[13] In full context, the Court stated, "The predominance requirement stated in Rule 23(b)(3), we hold, is not met by the factors on which the District Court relied. <u>The benefits asbestos-exposed persons might gain from the establishment of a grand-scale compensation scheme is a matter fit for legislative consideration … but it is not pertinent to the predominance inquiry. That inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.</u>" *Id.* at 622-23 (emphasis added).

56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

AKERMAN LLP

601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Similarly, here, it is not enough that the class members share the experience of being detained at Adelanto; Plaintiffs must prove each class member was actually coerced into providing labor to defendant—an inquiry that involves highly individualized proof. *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) (in section 1589 cases, "The jury <u>must</u> find that the employer intended to <u>cause the victim to believe</u> that she would suffer serious harm — <u>from the vantage point of the victim</u> — if she did not continue to work.") (emphasis added). Further, as in *Tyson*, the question of whether the class members were intentionally coerced is "a critical individual issue that define[s]" Defendant's liability under the TVPA. *Tyson Foods, Inc.*, 136 S. Ct. at 1054; *Dann*, 652 F.3d at 1170.

Indeed, Plaintiffs identify as a common question "the reasonable person analysis at the heart of a TVPA claim" and proceed to argue the issues in this case do not turn on individual detainees responses to the detainee handbook, but instead only GEO's actions. ECF 433 at 6. But, this cuts short the legal standard. Plaintiffs fail to address the second requirement under the TVPA, that the factfinder must consider the particular vulnerabilities of a person in the victim's position. *Martinez-Rodriguez v. Giles*, 391 F. Supp. 3d 985, 996 (D. Idaho 2019). This second, and critical inquiry, makes clear individualized inquiries would predominate. For example, whether an individual detainee believed he faced serious harm from the alleged deprivation of necessities would depend on that detainee's own appetite, food preferences, and the specific hygiene product they wanted.[14] *Compare e.g.*, 427-2 2 Ex. D (Novoa Depo. at 58:8-15) (sunscreen); 427-2 Ex. S (Karim Depo. at 30:8-18) (hair gel). In addition, Plaintiffs acknowledge that some detainees have funds transferred into their commissary accounts by someone outside the facility. ECF 433 at 19. For such detainees, there would be no compulsion to work through the VWP, because they could purchase allegedly necessary items without participating in VWP. There is no class-

---

[14] The meals GEO serves are designed to provide each detainee between 2,500 and 3,000 calories per day, and are also eaten by staff. ECF 427-2 at 256 (Spagnuolo Depo. at 37:17-21, 39:20-24).

56108044;1

**DEFENDANT THE GEO GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

wide way to know whether any class member "needed" VWP funds to purchase commissary items. Finally, at least some detainees participated in VWP because they simply prefer to be busy. ECF 427-2 at 258(Spagnuolo Depo. at 48:20-23); 427-2 at 148 (Tate Depo. at 121:16-18) (detainees "volunteer because they like to clean. They like to stay busy. They like to do things."). Thus, the mere fact that a detainee participated in VWP is not proof that their labor was caused by GEO's alleged deprivation policy. Instead, an individualized inquiry would be required.

Plaintiffs cannot, under the applicable law, meet Rule 23(b)(3)'s predominance requirement because their allegations necessarily involve individualized questions regarding whether each class member was actually coerced into providing GEO labor, and those questions, being essential to proving GEO's liability under the TVPA, predominate over any common questions. Fed. R. Civ. P. 23(b)(3). On that basis alone, the Court should decertify the Adelanto Class.

## IV.   CONCLUSION

For the foregoing reasons, GEO respectfully requests this Court decertify Plaintiffs' Forced Labor Classes.

Respectfully submitted,

Dated: January 15, 2021            **AKERMAN LLP**

By:   */s/ Ellen S. Robbins*
          Ellen S. Robbins
          Alicia Y. Hou
          Adrienne Scheffey
          Attorneys for Defendant
          THE GEO GROUP, INC.

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

56108044;1