Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Class Counsel
***Additional Counsel on Signature Page***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>                    *Plaintiffs*,<br>v.<br>**THE GEO GROUP, INC.**,<br><br>                    *Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: February 1, 2021<br>Time: 9 a.m. PT<br>Courtroom: 1<br>Judge Hon. Jesus G. Bernal |

i

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT ................................................................................................... 1

    A.      The Law Of The Case Applies, Even If GEO Wishes It Did Not. ........................................................................................... 1

    B.      Neither GEO's Arguments Nor Its Evidence Repudiate That, Under California Law, The Adelanto Wage Class Members Are Its Employees. ................................................. 2

    C.      Summary Judgment Should Be Entered That GEO's Actions Constitute An Unlawful Business Practice And That GEO Is Liable Under A Theory Of Unjust Enrichment. ....................................................................... 7

    D.      GEO Is Not Entitled To Derivative Sovereign Immunity. ............... 7

    E.      GEO Is Not Entitled To Intergovernmental Immunity. .................... 8

    F.      GEO's Remaining Affirmative Defenses Have Been (Correctly) Rejected. ................................................................. 9

III.    CONCLUSION ............................................................................................. 10

1

## TABLE OF AUTHORITIES

2
<u>**Cases**</u>

3
*Blair Foods, Inc. v. Ranchers Cotton Oil,*
4
    610 F.2d 665 (9th Cir. 1980) ........................................................................ 6

5
*Boyle v. United Techs. Corp.,*
6
    487 U.S. 500 (1988) ...................................................................................... 7

7
*Brassinga v. City of Mountain View,*
    66 Cal. App. 4th 195 (Cal. Ct. App. 1998) ............................................... 3

8
*Cabalce v. Thomas E. Blanchard & Assoc., Inc.,*
9
    797 F.3d 720 (9th Cir. 2015) ........................................................................ 7

10
*Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.,*
11
    819 F.2d 1519 (9th Cir. 1987) ...................................................................... 1

12
*In re Slatkin,*
13
    310 B.R. 740 (C.D. Cal. 2004) ..................................................................... 6

14
*Ingle v. Circuit City,*
15
    408 F.3d 592 (9th Cir. 2005) .................................................................. 1, 2

16
*Kisor v. Wilkie,*
    139 S. Ct. 2400 (2019) .................................................................................. 6

17
*Martinez v. Combs,*
18
    49 Cal. 4th 35 (2010) ................................................................................ 2, 3

19
*Matherly v. Andrews,*
20
    859 F.3d 264 (4th Cir. 2017) ........................................................................ 2

21
*Munoz v. Atl. Express of L.A., Inc.,*
22
    2012 WL 5349408 (C.D. Cal. Oct. 30, 2012) ............................................ 3

23
*The GEO Group, Inc. v. Newsom,*
    No. 19-CV-2491 JLS (WVG), 2020 WL 5968759 (S.D. Cal. Oct. 8,
24
    2020) ............................................................................................................... 8

25
*United States v. Boyd,*
26
    378 U.S. 39 (1964) ........................................................................................ 8

27
*United States v. California,*
28
    921 F.3d 865 (9th Cir. 2019) .................................................................... 8, 9

*United States v. Lummi Indian Tribe,*
 235 F.3d 443 (9th Cir. 2000) ........................................................................ 1, 2

*United States v. New Mexico,*
 455 U.S. 720 (1982) ...................................................................................... 8, 9

*Yearsley v. W.A. Ross Construction Co.,*
 309 U.S. 18 (1940) ........................................................................................... 8

**Statutes**

6 C.F.R. § 5.41 .................................................................................................... 7

Cal. Lab. Code § 1171 ......................................................................................... 4

Cal. Lab. Code § 1194 ......................................................................................... 4

Cal. Labor Code § 1720.4(a) ............................................................................... 3

**Other Authorities**

18B C. Wright, A. Miller & E. Cooper, Federal Practice and
 Procedure: Jurisdiction 2d § 4478, at 637-38 (2002) ........................................ 2

# I.   INTRODUCTION

Plaintiffs' motion for partial summary judgment should be granted because, in response to Plaintiffs' motion and summary judgment evidence, The GEO Group, Inc. ("GEO") has not provided admissible summary judgment evidence to demonstrate a genuine issue of material fact on the actual questions to be decided. Instead, GEO provides a montage of irrelevant factual comments combined with statements it touts as fact, but which are merely opinions of individuals that would not be admissible at trial for various reasons. When the wheat is separated from the chaff, the summary judgment record will drive one conclusion: the Court should grant Plaintiffs' motion and streamline this matter for trial. *See, e.g.*, *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (commending trial court's use of summary judgment "to carve out threshold claims" which "effectively narrowed the issues, shortened any subsequent trial by months, and efficiently separated the legal from the factual questions" in a large, complex case).

# II.   ARGUMENT
## A. The Law Of The Case Applies, Even If GEO Wishes It Did Not.

GEO's attempt to evade the force of the legal and factual findings previously made by this Court is understandable given the impact of those rulings. But GEO has not provided any basis upon which the law of the case doctrine should be ignored. The Court, having addressed many of these issues in previous motion practice, need not—indeed, should not—entertain GEO's invitation to disregard the Courts' prior rulings.

Under the doctrine, "a court is generally <u>precluded</u> from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (emphasis added). The prohibition decreed by the doctrine "has developed to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting 18B C. Wright,

A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4478, at 637-38 (2002)).

Exceptions to the doctrine exist. *See Ingle*, 408 F.3d at 594 (noting that the doctrine should be abandoned "only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result" (citing *Lummi Indian Tribe*, 235 F.3d at 452-53)). But GEO has failed to demonstrate any. Indeed, GEO cannot identify a viable basis upon which this Court should jettison the doctrine. And GEO's characterization of this Court's prior findings as "out-of-context dicta from prior motions and rulings in this case that were not based upon the evidence," ECF 434 at 10, is simultaneously incorrect and insulting. The prior rulings—many of which settle the applicable law and are in no way dependent on any evidence—provide the foundation for narrowing trial of this matter by eliminating meritless defenses and establishing elements of Plaintiffs claims beyond dispute.

**B. Neither GEO's Arguments Nor Its Evidence Repudiate That, Under California Law, The Adelanto Wage Class Members Are Its Employees.**

GEO initially asserts that this Court was wrong when the Court confirmed that *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), *as modified* (June 9, 2010), provided the standard by which Plaintiffs' qualification as employees under California's Industrial Welfare Commission's ("IWC") definition of employment determined. *See* ECF 223 at 10; *see also* ECF 44 at 11 ("[T]he Court concludes Wage Order 5 applies to Defendant."). Plaintiffs will not repeat, but rather incorporate, their discussion of why GEO's attempt to import the Fourth Circuit's analysis in *Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017), concerning whether a prisoner performing labor while in the custody of the Federal Bureau of Prisons is entitled to the federal minimum wage under the Fair Labor Standards Act, should be rejected. *See* ECF 432 at 28-33. But Plaintiffs cannot ignore the flaw in GEO's view of detained laborers as convicts, rather than civil detainees.

2

And GEO's other arguments equally miss the mark:

- Plaintiffs are not "volunteers" because they do not perform work for any "civic, charitable, or humanitarian reasons for a public agency or corporation qualified under Section 501(c)(3) of the Internal Revenue Code as a tax-exempt organization, without promise, expectation, or receipt of any compensation for work performed." Cal. Labor Code § 1720.4(a); *Brassinga v. City of Mountain View*, 66 Cal. App. 4th 195, 214 (Cal. Ct. App. 1998) (ability to decline a particular job assignment does not mean that worker is a "volunteer" for purposes of California state law claim).

- Plaintiffs' status as "individuals detained by U.S. Immigration and Customs Enforcement ("ICE") who are provided the opportunity to productively contribute to their community while detained," ECF 434 at 1, does not eliminate the protections of California's minimum wage laws because, "<u>regardless</u> of immigration status'" California provides each detained laborer "a non-waivable, non-negotiable right to compensation for all hours worked." *Munoz v. Atl. Express of L.A., Inc.*, 2012 WL 5349408, at *4 (C.D. Cal. Oct. 30, 2012); Cal. Lab. Code § 1171.5.

Likewise, GEO's general assertion that its relationship with ICE is "highly regulated" or that ICE standards govern "key aspects" of GEO's performance—none of which implicate the controlling elements set forth in *Martinez*—are irrelevant. For purposes of this motion, the only relevant questions are (1) whether GEO exercises control over Plaintiffs' wages, hours or, working conditions, and/or (2) whether GEO "suffers or permits" Plaintiffs to work. *Martinez*, 49 Cal. 4th at 64. On the uncontroverted summary judgment record, <u>GEO does both</u>. As such, the relationship between GEO and Plaintiffs satisfies both *Martinez* tests. *See* ECF 411-1 at 10-13.

Nor is GEO's assertion that its contract with ICE requires it to pay its Adelanto workers precisely $1 per day. This Court has already rejected GEO's assertion that ICE imposes a $1 cap on detained worker wages. ECF 61 at 6; ECF 44 at 6. The decision of

how much to pay detained workers is squarely within GEO's discretion; indeed, GEO admits it could pay higher wages at Adelanto as it does at several other facilities. SUF 15; 36-37; 74-75; *see also* ECF 61 at 6 ("Even assuming that ICE contracted to reimburse GEO at a rate of $1 per day per detainee, such contract would not necessarily preclude GEO from paying detainees a higher rate."). And GEO's "evidence" to the contrary cannot withstand scrutiny.

First, GEO claims that "the plain language of the Adelanto contract requires GEO to pay *exactly* $1 per day to detainees," (ECF 434 at 12-13) (emphasis in original), and cites as support "SUF 11" with quoted language that comes from the Performance Work Statement addendum to GEO's June 25, 2019 ICE contract – not the contract itself (as ¶¶ 13, 15, and 19 of the Nguyen Declaration, ECF 422-2, makes clear).

Second, GEO makes the unfounded assertion that "ICE agrees that GEO must pay $1 per day to detainees in the VWP at Adelanto," (ECF 434 at 13), and for support cites "SUF 12; ECF 422-2 (Nguyen Declaration ¶ 19); ECF 408-4 (Brooks Dep. 284:16-17)." SUF 12 self-inferentially gives the latter two citations for its own support. But those sources do not provide the support GEO asserts:

- The Nguyen Declaration, in ¶ 19, merely re-quotes the same language from the Performance Work Statement quoted in SUF 11 and says nothing about any ICE acquiescence to GEO's litigation position;
- In the two lines of the Brooks deposition GEO cites, Ms. Brooks is reading ¶ 19 of the Nguyen Declaration – which, as noted, simply sets forth the same language of the Performance Work Statement addendum.

Fundamentally, all roads for GEO's support lead back to the Performance Work Statement. But the Performance Work Statement does not say what GEO wants it to say. And GEO citing to things that refer back to the Performance Work Statement doesn't change that.

Instead, the actual testimony of the ICE Rule 30(b)(6) witness, Ms. Brooks, confirmed Plaintiffs' position:

- GEO's relevant contracts (including all contracts concerning Adelanto) are all "performance based" agreements, which means that the contracts do not designate how GEO is to perform the work but rather establish the outcomes and results expected by the government, ECF 408-4 at 70:24-71:14;

- The contracts "do not reserve to ICE any direct control over any part of the contracted work, *id.* at 71:24-72:2;

- Each applicable version of the PBNDS sets forth the expected performance outcomes but does <u>not</u> tell GEO how to achieve those outcomes, *id.* at 76:19-77:4; and

- GEO must operate the VWP in compliance with all applicable laws and regulations, *id.* at 91:15-18.

Finally, with regard to the $1 per day pay rate being established by GEO, Ms. Brooks could not have been more clear:

Q. Okay. But ICE does not prohibit the contractor from paying more than a dollar a day to any of the detainees, correct?

A. Correct.

ECF 408-4 at 100:1-4. Indeed, with respect to the change from the 2008 PBNDS saying "that the compensation is $1 per day," *id.* at 102:1-2, to the 2011 PBNDS saying detainees must be paid "at least $1 per day," Ms. Brooks explained the change's impact:

Q. By that change, ICE allows its contractors, GEO included, to pay more than $1 per day for detainee labor in the VWP, correct?

A. Correct.

ECF 408-4 at 102:17-20. *See also id.* at 102:25-103:2 ("For certain, ICE would not be opposed to a service provider paying more than $1 a day."); 103:6-10 ("Q. There is no provision in the contract, that you're aware of, that permits ICE to restrict the amount of money that the detainees make as long as it's more than $1 a day, right? A. Correct."); 103:18-22 ("There's -- there's literally no limit in the contract between ICE and GEO on the amount that GEO can pay detainees in the VWP, correct? A. Correct."); 105:5-

5

17 ("Q. All right. So, now, just to -- just to tie up the conversation, we looked at 2008, which did not have the words 'at least' in the current version, and every prior version other than 2008, that you're aware of, has the words 'at least $1,' correct? A. Correct. Q. All right. And that's -- that change is a reflection of the ICE policy that we've just been talking about, which is ICE sets a floor, but not a ceiling, on the amount that the contractors, like GEO, can pay the detainees that are participating in the VWP, correct? A. Correct."). ICE does not limit GEO's ability to pay more than $1 per day.

Finally, GEO claims that the deposition testimony of the Adelanto Facility Administrator, James Janecka, proves ICE agrees with GEO's position because Janecka was told he could not pay detainees more than $1 per day. ECF 434 at 13. But, again, GEO's "proof" is nothing of the sort. "SUF 13" is simply the Janecka deposition passage GEO "independently" cites, and Janecka's testimony is itself <u>not</u> admissible evidence but rather an alleged "confirmation" by the local Adelanto ICE assistant field office director, which makes it inadmissible hearsay. *In re Slatkin*, 310 B.R. 740, 744 (C.D. Cal. 2004), *aff'd*, 222 F. App'x 545 (9th Cir. 2007) ("Inadmissible hearsay cannot be considered on a motion for summary judgment." (citing *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980))).

Even if it were not hearsay, the Valdez comment is inadmissible under Fed. R. Evid. 602 since there is no evidence Valdez is an ICE policymaker or that he has personal knowledge of any ICE authoritative interpretation of the Work Statement provision, or that ICE ever authorized Valdez to make any such statement. *See* 6 C.F.R. § 5.41 *et seq.* (ICE *Touhy* regulations precluding the giving of testimony by employees absent specific authorization); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2416-17 (2019) (An agency regulatory interpretation "must be one actually made by the agency. In other words, it must be the agency's 'authoritative' or 'official position,' rather than any more ad hoc statement not reflecting the agency's views."). As shown above testimony from the actual ICE representative, its Rule 30(b)(6) deponent, eradicated any notion that ICE supports GEO's claim.

Never do any of the circular citations GEO provides give any actual support for its representations to this Court. And, in support of its incorrect position, GEO ignores the on-point, authoritative, contrary testimony from ICE's designated representative. But GEO cannot avoid summary judgment on this record.

The failure of GEO to submit admissible evidence sufficient to create a genuine issue of material fact on the operative elements in opposition to Plaintiffs' motion and supporting proof requires entry of summary judgment that, under California law, the Adelanto Wage Class Members are GEO employees.

**C. Summary Judgment Should Be Entered That GEO's Actions Constitute An Unlawful Business Practice And That GEO Is Liable Under A Theory Of Unjust Enrichment.**

GEO's sole challenge to Plaintiffs' requested summary judgment on their claims under California's unfair competition law and common law action for unjust enrichment is dependent on a finding that Plaintiffs are not GEO employees. ECF 434 at 13. For the reasons given above, that challenge fails rendering summary judgment on Plaintiffs' Claims II and III proper.

**D. GEO Is Not Entitled To Derivative Sovereign Immunity.**

GEO argues that Plaintiffs' request for summary judgment dismissal of its derivative sovereign immunity defense "is based upon a misunderstanding of the existing DSI precedent." ECF 434 at 24. GEO then goes on to discuss why (a) *dicta* from *Cabalce v. Thomas E. Blanchard & Assoc., Inc.*, 797 F.3d 720 (9th Cir. 2015), is not binding in this case and (b) the DSI defense should be considered separately from the government contractor defense discussed in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). ECF 434 at 24-26. GEO's strawman argument fails.

Plaintiffs do not argue any *Cabalce dicta* applies to this case. Nor do they argue or discuss *Boyle*'s government contractor defense. In fact, neither *Cabalce* nor *Boyle* are ever cited in Plaintiff's briefing. GEO's arguments are completely unrelated (and irrelevant) to Plaintiffs' summary judgment request for dismissal of the derivative sovereign immunity defense.

In opposition, GEO provides neither argument nor evidence to counter the actual legal authority and record evidence that Plaintiffs did present. And Plaintiffs' argument and evidence combine to prove (a) the government did not "authorize and direct" its actions when carrying out its performance-based contracts and (b) that ICE never "validly conferred" on GEO the authority to violate both state and federal law.[1] *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940). GEO's failure to provide any evidence upon which a jury could find its actions meet the twin requirements of *Yearsley* entitle Plaintiffs to summary judgment dismissal of GEO's derivative sovereign immunity defense.

## E. GEO Is Not Entitled To Intergovernmental Immunity.

GEO's intergovernmental immunity defense fails because the Adelanto Wage Class's state law claims neither directly regulate nor discriminate against the federal government. And no amount of GEO spin can avoid that.

Contrary to GEO's interpretation of *United States v. California*, 921 F.3d 865 (9th Cir. 2019), the fact that a federal contractor is treated the same as the federal government for purposes of the immunity analysis does <u>not</u> render the defense automatically applicable. GEO must still meet the required test. And the court in *The GEO Group, Inc. v. Newsom*, No. 19-CV-2491 JLS (WVG), 2020 WL 5968759, at *30 (S.D. Cal. Oct. 8, 2020), recently noted GEO fails that very test.

GEO fares no better in this case. Just because application of California's minimum wage laws would impose an economic burden on GEO, that does <u>not</u> trigger the immunity defense. *United States v. Boyd*, 378 U.S. 39, 44 (1964). The performance-based contractual regimen discussed above provides GEO with operational discretion, so GEO's actions are not "so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being [regulated] is concerned." *United States v. New Mexico*, 455 U.S. 720, 735 (1982). As Ms. Brooks

---

[1] As addressed and shown above, GEO's assertion that it was "directed to pay detainee participants in the VWP at Adelanto exactly $1 per day," ECF at 27, is both untrue and unsupported on the record.

testified, GEO's contracts do not reserve to the government any direct control over any part of the contracted work; indeed, GEO must meet its expected performance outcomes (exercising its discretion on how to achieve the outcomes) while remaining in compliance with all applicable laws and regulations. ECF 408-4 at 71:24-72:2, 91:15-18.

GEO says it "stands in the Government's shoes" and is "so assimilated by the Government as to become one of its constituent parts." *United States v. New Mexico*, 455 U.S. at 736. But GEO never provides any facts or evidence to support the assertion. Nor does it demonstrate why or how the California state laws underlying Plaintiffs' claims "discriminate against the federal government <u>and</u> burden it in some way." *United States v. California*, 921 F.3d at 880.

GEO's arguments that the actions of Yuba and Orange counties, and its cases concerning the State of California or a federal prison, likewise miss the mark. GEO has not and cannot demonstrate why application of the California Minimum Wage Law discriminates. California's requirement that an employer pay a minimum wage, and its prohibition of forced labor, applies equally to all actors, state and federal. Just like *United States v. California*, the intergovernmental immunity defense does not apply since the state laws at issue are directed at the conduct of GEO as an <u>employer</u>, not as the agent or instrumentality of the United States. Under GEO's theory, it would not have to pay its non-detainee work force minimum wage. But, of course, it does. GEO's argument offers nothing more than post-hoc justification to underpay the detainee work force.

**F. GEO's Remaining Affirmative Defenses Have Been (Correctly) Rejected.**

Nothing in GEO's briefing alters the bases upon which the Court has already rejected its non-immunity based affirmative defenses. ECF 223 at 21 (rejecting limitations defense); ECF 229 (defining each Class pursuant to the applicable statutes of limitations); ECF 44 at 4 (rejecting GEO's express preemption argument); ECF 44 at 4-6 (rejecting GEO's field preemption argument); ECF 44 at 6-8 (rejecting GEO's obstacle/conflict preemption argument); ECF 61 at 7 (Plaintiffs can obtain complete relief from GEO and it has not deigned to add other "potentially culpable" parties);

ECFG 44 at 7 (rejecting argument that Plaintiffs are barred by their immigration status from seeking the requested relief); ECF 223 at 12 and ECF 229 at 1 (recognizing the standing of the appointed class representatives). Those affirmative defenses that are not included above (numbers 1, 8, 9, and 10), GEO has abandoned.

### III.   CONCLUSION

GEO's opposition to Plaintiffs' motion for partial summary judgment distorts the "proof" it cites and provides no admissible summary judgment evidence to create a genuine issue of material fact on the questions germane to Plaintiffs' motion. On the record before it, the Court should grant Plaintiffs' motion for partial summary judgment.

Dated: January 18, 2021                    Respectfully Submitted,

*/s/ Daniel H. Charest*
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
Lauren Cross (admitted *pro hac vice*)
lcross@burnscharest.com
TX Bar # 24105759
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

***Class Counsel***

11

**CERTIFICATE OF SERVICE**

I, Daniel H. Charest, electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated: January 18, 2021

/s/ Daniel H. Charest
_____
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
