Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
**Class Counsel**
*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **RAUL NOVOA**, **JAIME CAMPOS FUENTES**, **ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br> **THE GEO GROUP, INC.**, <br> *Defendant.* | Civil Action No. 5:17-cv-02514-JGB-SHKx <br><br> **PLAINTIFFS' MOTIONS IN LIMINE** <br><br> Hearing Date: March 29, 2021 <br> Time: 9 a.m. PT <br> Courtroom: 1 <br> Judge Hon. Jesus G. Bernal |

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, at the Final Pretrial Conference on March 29, 2021 at 9:00 a.m. PT, or at another date and time as determined by the Court, at the United States District Court for the Central District of California, 3470 Twelfth Street Riverside, CA 92501-3801, in the Courtroom of the Honorable Judge Jesus G. Bernal,

1

1  Courtroom 1, Plaintiffs will, and hereby do, move the Court for an Order granting

2  Plaintiffs' Motions in Limine.

3       Submitted herewith in support of Plaintiffs' Motions in Limine are the

4  Memorandum in Support of Plaintiffs' Motions in Limine and the Proposed Order

5  Granting Plaintiffs' Motions in Limine.

6       This motion is made following conferences of counsel pursuant to Local Rule 7-

7  3, which occurred on February 25, 2021 and February 26, 2021.

8  ## I.   INTRODUCTION

9       Plaintiffs Raul Novoa, Jaime Campos Fuentes, Abdiaziz Karim, and Ramon

10 Mancia, individually and on behalf of all others similarly situated, respectfully move the

11 Court for an order in limine excluding improper arguments and inadmissible evidence

12 that they anticipate will be offered by Defendant The GEO Group, Inc. ("GEO").

13 Specifically and addressed in more detail below, Plaintiffs request GEO be instructed to

14 not comment on, offer evidence of, or adduce testimony regarding the following topics:

15       1.  Detainee-workers' criminal histories and/or immigration statuses.

16       2.  Any government requirement that GEO pay detainees only $1 per day for

17           participation in the Voluntary Work Program.

18       3.  Legally infirm bases to rebut detainees' status as employees.

19       4.  Comparisons to the operating standards of criminal detention facilities to

20           show that GEO's actions are sufficient or compliant with civil detention

21           facility operating standards.

22       5.  Terms such as "illegal alien," "illegal immigrant," "undocumented," or any

23           combination thereof.

24 Pursuant to Federal Rule of Evidence 104, Plaintiffs request a preliminary ruling that

25 any evidence or testimony on these topics is inadmissible and precluding any argument

26 by counsel for GEO that directly or indirectly refers to or raises them.

27 ## II.   ARGUMENT

28     A motion in limine is a procedural device to obtain a preliminary ruling on the

1    admissibility of evidence; a request for guidance provided by a court pursuant to its

2    authority to manage trials. *See Goodman v. Las Vegas Metropolitan Police Dept.*, 963 F. Supp.

3    2d 1036, 2046 (2013), *aff'd in part, rev'd in part, and dism'd in part, on other grounds*, 613 F.

4    App'x 610, 613 (9th Cir. 2015); *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984);

5    *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Should the Court deny any of

6    Plaintiffs' motions in limine, Plaintiffs request an order relieving their counsel from

7    making further objection before the jury. *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1005

8    (9th Cir. 2020).

9    **Requested Limine No. 1: Exclusion of evidence or argument concerning**

10   **detainees' criminal histories and/or immigration statuses, including any**

11   **assertion that detainees violated federal immigration laws in seeking entry to this**

12   **country.**

13   Detention at the relevant GEO facilities is a civil matter. *See Rodriguez v. Robbins*,

14   804 F.3d 1060, 1065 (9th Cir. 2015) (observing that immigration detention is "civil, i.e.,

15   non-punitive" and that immigrants detained are "awaiting the conclusion of

16   administrative and judicial proceedings that will determine whether they may remain in

17   this country"), *overruled on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018));

18   *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007) ("[C]ivilly detained persons must be

19   afforded "more considerate treatment and conditions of confinement than criminals

20   whose conditions of confinement are designed to punish"); *see also Fong Yue Ting v. United*

21   *States*, 149 U.S. 698, 730 (1893) ("The order of deportation is not a punishment for

22   crime."). Any effort to connect immigration detention and criminal conduct in general,

23   or to one detainee in particular, is irrelevant to whether GEO engaged in unlawful wage

24   theft, unjust enrichment, and/or forced labor. Fed. R. Evid. 401 (stating that evidence

25   is relevant only if it provides a basis to determine whether a fact of consequence in

26   determining the claims in the action is more or less probable than it would be without

27   the challenged evidence).

28   And, while it may be necessary to explain to the jurors the nature of civil detention

1    and the fundamental difference between the GEO facilities and a criminal jail or prison

2    (since jurors may assume that the detainee workers are criminals and undeserving of the

3    minimum wage), evidence concerning any prior criminal history would serve to confuse

4    the issues by requiring a "trial within a trial" regarding the details of any alleged violation.

5    Absent any probative value, the challenged evidence and argument should be excluded

6    as a waste of time and potentially confusing to the jury concerning Plaintiffs' right to

7    obtain relief in this Court. Fed. R. Evid. 401, 402, 403.

8         In addition, any attempt by GEO to directly reference or indirectly infer that any

9    detainee has a criminal history would constitute an improper and irrelevant character

10   attack and should be prohibited under Federal Rule of Evidence 404. Even if GEO were

11   to use a detainee-worker's prior criminal conviction as impeachment, the prejudice and

12   confusion to the jury outweighs any probative value. *See* Fed. R. Evid. 609 advisory

13   committee's note to 1990 amendment (explaining amendments were necessary "to

14   protect all litigants from the unfair use of prior convictions"). It may be necessary to

15   explain to the jurors the nature of civil detention and the fundamental difference

16   between the GEO facilities and a criminal jail or prison. If GEO is allowed to explore

17   the criminal history of detainees, it is highly likely to introduce juror confusion regarding

18   that important legal distinction. The result will be that ordinary people may assume that

19   the detainee-workers are criminals and undeserving of the minimum wage.

20        More so, even if Plaintiffs' compliance with federal immigration laws was at issue,

21   such evidence and argument should still be barred under Rules 403 and 404, as the

22   dangers of unfair prejudice, issue confusion, undue delay, and waste of time clearly and

23   substantially outweigh any probative value of an irrelevant attack based on an inference

24   of criminal activity. Plaintiffs' compliance with federal immigration laws does not

25   support or discredit any claim or defense in this case involving the question of whether

26   GEO has already formed an employment relationship with members of the class.

27   Evidence of this type at trial would confuse the issues by likely requiring a "trial within

28   a trial" regarding the details of any alleged violation. Any time spent at trial on these

4

1    issues will only amount to undue delay and a waste of the Court's time.

2          Finally, all evidence, testimony, questioning, or reference to any detainee's

3    immigration status should be prohibited pursuant to Rule 403 as unfairly prejudicial.

4    There is no dispute that many members of the class are noncitizens, but the jury's

5    perception of the detainee workers is particularly susceptible to prejudice simply because

6    of the rhetoric surrounding immigration in the current political climate.

7          At trial, any inquiry into the detainee-workers' criminal histories and/or

8    immigration statuses, even if only for impeachment, should be barred as irrelevant and

9    unduly prejudicial.

10   **Requested Limine No. 2: Exclusion of evidence or argument suggesting the**

11   **government (through contract or otherwise) requires GEO pay only $1 per day to**

12   **Voluntary Work Program participants.**

13         The record here, including GEO's binding admissions and this Court's prior

14   findings, render <u>false</u> any evidence or argument that GEO is limited to paying detainees

15   $1 per day for their work as participants in the Voluntary Work Program ("VWP").

16         GEO admitted, in response to Request for Admission No. 2, that "immigration

17   detainees in other detention facilities owned and/or operated by GEO are paid more

18   than $1 per day for work performed." The presentation of evidence by GEO contrary

19   to this admission, including evidence that GEO is limited by contract, governmental

20   directive, or any other authority to paying detainees who participate in the VWP $1 per

21   day for their labor must be precluded pursuant to Federal Rule of Civil Procedure 36.

22   *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985) (noting that "evidence

23   inconsistent with a Rule 36 admission is properly excluded" ); *Cook v. Allstate Ins. Co.*,

24   337 F. Supp. 2d 1206, 1210 (C.D. Cal. 2004). Indeed, several witnesses admitted that

25   GEO can, and does, actually pay detainee workers more than $1 per day for their

26   participation in the VWP at facilities other than Adelanto. *See* ECF 408-4, ICE 30(b)(6)

27   Dep. (Brooks) at 100:1-4, 102:17-20, 103:17-22, 107:4-16; ECF 411-6, GEO 30(b)(6)

28   Dep. (Martin) at 64:20-24, 67:4-8; ECF 193-19 (Venturella Dep.) at 85:4-10, 79:24-80:20.

Moreover, any argument or assertion by GEO that it is required to pay detainee participants in the VWP exactly $1 per day by the federal government or its contract with ICE would violate the law of the case doctrine as recognized in this circuit given that such claim has been rejected by this Court. *See Rhodeman v. Ocwen Loan Servicing, LLC*, 2020 WL 1698709, at *3 (C.D. Cal. Apr. 3, 2020) (discussing and applying the doctrine); ECF 44 at 6 (rejecting argument that Congress has limited detainee payments under 8 U.S.C. § 1555(d); ECF 61 at 6 ("Even assuming that ICE contracted to reimburse GEO at a rate of $1 per day per detainee, such contract would not necessarily preclude GEO from paying detainees a higher rate.").

Independently, any argument by GEO that it is limited by contract, governmental directive, or any other authority to paying detainees who participate in the VWP $1 per day for their labor should be excluded to avoid the significant risk of confusion and prejudice to Plaintiffs. Fed. R. Evid. 403.

**Requested Limine No. 3: Exclusion of evidence or arguments irrelevant to the determination of detainees' potential status as employees, for example that the detainee-workers are "volunteers," that the detainee-workers agreed to be paid only $1 per day, or that detainee-workers "benefit" from working.**

During the course of this litigation GEO has posited various factual assertions which, even if they were true, are irrelevant to the determination of whether detainees are legally permitted to recover under the California minimum wage statute including assertions. For example, GEO has asserted that (a) the detainee-workers are "volunteers," *see, e.g.*, ECF 434 at 15-16, (b) that they "agree to compensation of $1 per day," *see, e.g.*, ECF 434 at 19, and (c) that they should not be paid minimum wage for their work because of some "benefit(s)" reaped through manual labor, *see, e.g.*, ECF 414 at 30. None of these invalid characterizations impact whether California law requires GEO pay the minimum or fair wage for work that it directed or suffered to be performed.

1    Whether GEO characterizes the detainee-workers as "volunteers" or requires

2    them to sign an agreement that they will be paid $1 per day is irrelevant to the question

3    of whether they are employees under the California law, because the law forecloses GEO

4    from using volunteers or inviting "waivers" of employees' statutory right to the

5    minimum wage. And, because GEO's "volunteer" and "waiver" defenses are foreclosed

6    as a matter of law, any such evidence or argument would be far more prejudicial than

7    probative. *See Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 890 (N.D. Cal. 2016)

8    (excluding any argument that the parties' agreements gave rise to a waiver of plaintiffs'

9    minimum wage claims); *Cougill v. Prospect Mortg.*, LLC, No. 1:13cv1433 (JCC/TRJ), 2014

10   WL 348539, at *2 (E.D. Va. Jan. 31, 2014) (same).

11   In addition to being irrelevant, evidence and argument aimed at volunteer status

12   or waiver will be highly prejudicial. *See Rasberry v. Columbia Cty, Arkansas*, 385 F. Supp.

13   3d 792, 796 (W.D. Ark. 2019) (reasoning that the probative value of any argument that

14   workers agreed they were exempt from minimum wage laws was outweighed by the

15   danger of undue prejudice). In the employment context, ordinary people, who are

16   generally unaware of the full extent of the rights and protections under federal and state

17   employment laws, place undue importance on signed contracts and verbal agreements

18   or understandings regardless of the legality of such agreements. There is a high risk that

19   the jury could view, for example, the signed Volunteer Work Program Agreement as

20   binding, even if given an instruction to the contrary (which will be necessary). This risk

21   would be compounded if GEO were allowed to sway the jury by improper evidence or

22   argument that detainee-workers are "volunteers" or "agreed" to be paid $1 per day. Any

23   suggestion to the jury of waiver—whether couched as volunteerism, agreement,

24   contract, a bargained-for deal, or otherwise—will only serve to confuse the jury and

25   increase the risk of jury nullification. Any argument or evidence that the detainee-

26   workers were "volunteers" or agreed to their pay rate or failed to complain about pay is

27   improper and should be excluded.

28   Finally, Plaintiffs anticipate that GEO will argue or attempt to elicit testimony to

1  demonstrate that the work class members perform provides them a benefit, such as a

2  cure for "idleness." This may be true on some level, but whether class members derive

3  "benefits" from a particular job has no bearing on whether they are entitled to minimum

4  wage protection. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 470 (11th Cir.

5  1982) (rejecting as "devoid of merit" company's argument that it gave mental patients

6  tasks to "keep them occupied" as defense to paying minimum wages); *Souder v. Brennan*,

7  367 F. Supp. 808, 813 (D.D.C. 1973) (same as to mentally-ill and disabled patient-

8  workers who may have received therapeutic benefit from work). As the *Souder* court

9  observed, even if work is deemed therapeutic, that does not entitle an employer to "pay

10  workers less for what they produce for them." 367 F. Supp. at 813, n.21; *see also Marshall*

11  *v. Baptist Hosp., Inc.*, 473 F. Supp. 465, 477 (M.D. Tenn. 1979) (holding that X-ray

12  technicians-in-training enrolled in two-year, accredited college program were

13  employees), *rev'd on other grounds*, 668 F.2d 234 (6th Cir. 1981).

14        GEO should not be permitted to argue or elicit testimony which suggests that,

15  because class members obtain some "benefit" from working, they are not employees or

16  that GEO may pay them less than the minimum wage; such evidence, testimony, or

17  argument is irrelevant and would confuse the jury, waste time, and carries a high risk of

18  prejudice. Fed. R. Evid. 403.

19  **Requested Limine No. 4: Exclusion of evidence or argument referring to the**

20  **operating standards applicable to prisons or other criminal detention facilities in**

21  **an effort to show GEO's compliance with operating standards applicable to**

22  **immigration detention facilities.**

23        It is anticipated that GEO will argue and assert that it cannot be held liable in this

24  case, which involves civil immigration detention facilities, if its policies, procedures, and

25  actions meet or conform to the operational standards and/or practices applicable to and

26  enforced at prisons or in other criminal correctional settings. GEO made a similar effort

27  when it offered the testimony of Dr. Jeffrey Kropf, a veteran of correctional facilities,

28  to opine on issues pertinent to the civil immigration detention facilities in question for

1    this case. And the Court rejected GEO's attempt to draw such a false comparison:

2    "[A]fter considering Dr. Kropf's qualifications, reports, and deposition testimony, the

3    Court agrees with Plaintiffs that Dr. Kropf's general psychology background and

4    experience performing psychological evaluations in correctional settings do not qualify

5    him to testify as an expert on the effects of segregation in civil immigration detention,

6    with which he admittedly is not familiar." ECF 409 at 4. Any such argument or evidence

7    proffered by GEO, which draws from criminal standards, should be excluded as

8    irrelevant under Federal Rule of Evidence 401. In the alternative, even if such argument

9    or evidence is found relevant, it should be excluded under Rule 403.

10   Evidence of, and argument regarding, how any federal, state, or local prisons, jails,

11   or other criminal detention facilities treat their residents, use work programs, pay sub-

12   minimum wages to certain work program participants, and/or enforce their rules should

13   be precluded as irrelevant to any questions properly put to the jury. As noted, detention

14   at these GEO facilities is a civil matter. *See Rodriguez*, 804 F.3d at 1065 (observing that

15   immigration detention is "civil, i.e., non-punitive" and that immigrants detained are

16   "awaiting the conclusion of administrative and judicial proceedings that will determine

17   whether they may remain in this country"); *see also Fong Yue Ting*, 149 U.S. at 730 ("The

18   order of deportation is not a punishment for crime."). The policies and procedures at

19   criminal detention facilities do not equate to the standards that must be met for those

20   who are subject to civil detention. *See Hydrick*, 500 F.3d at 989 ("[C]ivilly detained

21   persons must be afforded "more considerate treatment and conditions of confinement

22   than criminals whose conditions of confinement are designed to punish").

23   Any reference to operational standards and practices applicable to and enforced

24   at prisons or in other criminal correctional settings is completely irrelevant to whether

25   GEO's conduct and policies at these civil detention facilities violate state minimum wage

26   laws, result in GEO's being unjustly enriched, or transgress state and federal forced labor

27   statutes and thus should be excluded. Fed. R. Evid. 401.

28   In the alternative, even if evidence or argument concerning operational standards

1  and practices applicable to and enforced at prisons or in other criminal correctional

2  settings is somehow relevant, it should be excluded under Rule 403. And potential

3  probative value of such evidence would serve to confuse the jury as to what measure

4  ought to be applied to GEO's actions, would on balance constitute a waste of time, and

5  be unfairly prejudicial to Plaintiffs by possible altering the standard for decision it should

6  properly be asked to apply. Fed. R. Evid. 403.

7  **Requested Limine No. 5: Exclusion of evidence or argument referring to or**

8  **employing terms such as "illegal alien," "illegal immigrant," "undocumented,"**

9  **or any combination thereof.**

10  GEO should be prohibited from using the terms "illegal alien," "illegal

11  immigrant," "undocumented," or any combination thereof, when referencing Plaintiffs,

12  class members, and those similarly situated. These terms are highly prejudicial, designed

13  to play to jurors' prejudices against noncitizens, and likely to bias the jury against

14  Plaintiffs. Fed. R. Evid. 403; *see Rojas v. Richardson*, 703 F.2d 186, 190 (5th Cir. 1983)

15  (reversing, for plain error, judgment in an action by an employee against an employer

16  for personal injuries where counsel referred in closing argument to plaintiff's status as

17  an "illegal alien"); *see also Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1147-52 (9th Cir.

18  2001) (finding plain error from appeal to bias and racism and discussing *Rojas*).

19  This fact is borne out by research showing that the use of negative labels such as

20  "illegal alien," "illegal immigrant," and "undocumented alien" result in "significantly

21  more prejudice," "significantly more punitive behavioral intentions," and increased

22  support for "more punitive policies towards immigrants." Julian M. Rucker*, et al.*, *The*

23  *immigrant labeling effect: The role of immigrant group labels in prejudice against noncitizens*, GROUP

24  PROCESSES & INTERGROUP REL., Vol. 22(8), 1139, 1146 (2019). In contrast, neutral

25  labels such as "noncitizen" and "immigrant" elicit "significantly less prejudice . . . less

26  punitive behavioral intentions . . . and less punitive policy preferences." *Id.* Because

27  "group labels significantly influence the way that people feel and intend to behave

28  toward unauthorized immigrants," GEO should not be permitted to manipulate the jury

1  in its favor by playing to such bias through its use of negative terms. *Id.* The jury's role

2  as neutral fact finders should be preserved, and the Court should prohibit the use of

3  these negative labels.

### III.   CONCLUSION

5      For the foregoing reasons, Plaintiffs respectively request that the Court grant their

6  motions in limine.

Dated: March 1, 2021          Respectfully submitted,

*/s/ Daniel H. Charest*

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
Will Thompson (CA Bar # 289012)
wthompson@burnscharest.com
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Mallory Biblo (admitted *pro hac vice*)
mbiblo@burnscharest.com
TX Bar # 24087165
Lauren Cross (admitted *pro hac vice*)
lcross@burnscharest.com
TX Bar # 24105759
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

***Class Counsel***

13

## CERTIFICATE OF SERVICE

I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated: March 1, 2021

*/s/ Daniel H. Charest*

Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
mbiblo@burnscharest.com

14

5:17-cv-02514-JGB-SHK