**AKERMAN LLP**
ELLEN S. ROBBINS (SBN 298044)
ALICIA Y. HOU (SBN 254157)
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone:  (213) 688-9500
Facsimile:  (213) 627-6342
Email:  alicia.hou@akerman.com
Email:  ellen.robbins@akerman.com

LAWRENCE D. SILVERMAN (admitted *pro hac vice*)
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
Telephone:  (305) 374-5600
Facsimile:  (305) 374-5095
Email:  lawrence.silverman@akerman.com

ADRIENNE SCHEFFEY (admitted *pro hac vice*)
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone:  (303) 260-7712
Facsimile:  (303) 260-7714
Email:  adrienne.scheffey@akerman.com

Attorneys for Defendant
THE GEO GROUP, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>THE GEO GROUP, INC.,<br><br>Defendant. | Case No. 5:17-cv-02514-JGB-SHKx<br><br>**DEFENDANT THE GEO GROUP INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF MICHAEL CHILDERS**<br><br>**Hearing Information:**<br><br>Date:  March 29, 2021<br>Time:  11:00 a.m.<br>Place:  Courtroom 1<br>  3470 Twelfth Street<br>  Riverside, California 92501 |

| | |
|---|---|
| THE GEO GROUP, INC.,<br><br>　　　　　Counter-Claimant,<br><br>vs.<br><br>RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM, and RAMON MANCIA, individually and on behalf of all others similarly situated,<br><br>　　　　　Counter-Defendant. | TAC Filed:　September 16, 2019<br>SAC Filed:　December 24, 2018<br>FAC Filed:　July 6, 2018<br>Complaint Filed:　December 19, 2017<br>Trial Date:　April 13, 2021 |

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT that on March 29, 2021 at 11:00 A.M. during the final pretrial conference in the above captioned matter, THE GEO GROUP, INC. ("GEO"), shall appear before the Honorable Jesus G. Bernal, in Courtroom 1 of the above-described Court, located at 3470 Twelfth Street, Riverside, California 92501-3801, and shall then and there present its Motion to Exclude Expert Testimony of Plaintiffs' Expert Michael Childers.

This Motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on February 12, 2021.

Dated: March 1, 2021                    **AKERMAN LLP**

By: */s/ Ellen S. Robbins*
    Ellen S. Robbins
    Alicia Y. Hou
    Adrienne Scheffey
    Attorneys for Defendant
    THE GEO GROUP, INC.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES......................................1

I. INTRODUCTION ...............................................................................1

II. BACKGROUND ................................................................................1

III. LAW ..................................................................................................2

IV. ARGUMENT......................................................................................3

    A. Mr. Childers' Testimony is Not Reliable. ..........................................3

        1. Mr. Childers' Background Does Not Qualify Him To Serve As An Expert In Detention Staffing Levels and Costs..........4

        2. Mr. Childers' Opinion is Not the Product of Reliable Principles and Methods.............................................................6

        3. Mr. Childers' Opinions are Based Upon Insufficient Facts and Data. ...................................................................................8

    B. Mr. Childers Testimony Would Improperly Confuse the Jury........10

    C. In the Alternative, Mr. Childers Should Be Excluded for Failure to Timely Disclose Complete Information..........................................11

V. CONCLUSION ................................................................................12

AKERMAN LLP
601 WEST FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ................................................................................. 3, 5, 8, 10

*Dickinson v. City of Kent*,
    No. C06-1215RSL, 2007 WL 4420931 (W.D. Wash. Dec. 14, 2007) ............... 10

*Estate of Barabin v. Asten Johnson, Inc.*,
    740 F.3d 457 (9th Cir. 2014) ............................................................................. 3

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) .......................................................................................... 8

*Goodman v. Staples The Office Superstore*,
    LLC, 644 F.3d 1101 (9th Cir. 2001) ................................................................ 11

*JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.*,
    No. CIV. A. 97-CV-0652, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999) ................................................................................ 6, 9

*Kingsbury v. U.S. Greenfiber, LLC*,
    No. CV 08-00151 DSF ..................................................................................... 5

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ...................................................................................... 3, 8

*Laux v. Mentor Worldwide, LLC*,
    295 F. Supp. 3d 1094 (C.D. Cal. 2017), aff'd, 786 F. App'x 84 (9th Cir. 2019) . 5

*Messick v. Novartis Pharm. Corp.*,
    747 F.3d 1193, 1197 (9th Cir. 2014) ................................................................. 3

*Neal-Lomax v. Las Vegas Metro. Police Dep't*,
    574 F. Supp. 2d 1193 (D. Nev. 2008), aff'd, 371 F. App'x 752 (9th Cir. 2010) . 5

*Nelson v. Matrixx Initiatives*,
    No. C 09-02904 WHA, 2012 WL 3627399 (N.D. Cal. Aug. 21, 2012) ............. 5

*Radio Sys. Corp. v. Lalor*,
    No. C10-828RSL, 2014 WL 4626298 (W.D. Wash. Sept. 12, 2014) ................. 5

*Roman v. MSL Capital, LLC*,
   No. EDCV172066JGBSPX, 2019 WL 1449499 (C.D. Cal. Mar. 29, 2019) (Bernal, J.) ........................................................................................................................ 6

*Samuels v. Holland Am. Line-USA Inc.*,
   656 F.3d 948 (9th Cir. 2011) ................................................................................... 5

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ................................................................. 10

**Rules**

Federal Rule of Civil Procedure 26(b)(4)(a)(i) ........................................................... 11

Federal Rule of Evidence 702 ........................................................................... 2, 3, 4, 10

Rule 37(C)(1) ................................................................................................................ 11

Rule 403 ........................................................................................................................ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Mr. Childers was retained to provide an opinion outside of his background and expertise, based upon staffing standards that are inapplicable in the detention context, in order reach a damages figure based upon the number of staff that GEO "should have hired" if it were to staff its detention facility like a college campus. Yet, Mr. Childers has no experience in staffing or detention facilities and his report attempts to apply an inapplicable tool for colleges and universities to the detention context. As further explained herein, Mr. Childers' opinions are neither reliable nor within the scope of his expertise. As a result, his analysis would serve no other purpose than to confuse the jury. Accordingly, his testimony should be excluded at trial.

## II. BACKGROUND

Plaintiffs retained Mr. Childers to provide an opinion as to "an estimate of work time that [GEO] should expect an employee to spend on work activities performed by immigrant detainee participants in the Voluntary Work Program ("VWP")," and "the number of full-time workers needed to perform the custodial work currently performed by immigrant detainees." Decl. of Robbins, Ex. A at ¶¶ 6, 19 (Childers Report). To construct his custodial staffing plan at Adelanto, Mr. Childers relied upon excerpts of the Custodial Staffing Guidelines for Educational Facilities from the Association of Physical Plant Administrators ("APPA Guidelines"), a manual created to estimate janitorial staffing plans at colleges and universities. Decl. of Robbins, Ex. B (Ex. 4 to Childers Dep.).[1] At his deposition, Mr. Childers conceded that to his knowledge, the APPA Guidelines have never been used in the detention context. Decl. of Robbins, Ex. C, Childers Dep. at 58:2-4; 69:9-12. He also admitted that the subject of the APPA Guidelines—college students—were not similar to immigration detainees for purposes of general cleanliness. *Id.* Childers Dep. at 100:9-16.

---

[1] GEO has attached here the entirety of what Dr. Childers produced with his report. As discussed herein, this document is only an excerpt of the full guidelines.

From those admittedly inapplicable guidelines, Mr. Childers created a "staffing plan" by determining what areas of a college or university would be analogous to the areas defined on the staffing plan, selecting an arbitrary cleaning level, and then calculating out how many staff members would be required to clean the university-equivalent area and assuming that the detention facility would need the same number of staffers.[2] In determining the level of cleanliness of the Adelanto Facility, Mr. Childers did not speak with any detainees about the facility, nor did he look at photographs. Decl. of Robbins, Ex. C, Childers Dep. at 74:1-7. Instead, he simply looked at a list of activities and attempted to classify the level of cleanliness. *Id.* Childers Dep. at 74:15-18. From there, he also drew arbitrary comparisons between the rooms listed in the APPA Guidelines and rooms that actually exist at Adelanto. For example, rather than compare the kitchen and cafeteria area at Adelanto to a college cafeteria, he compared it to a "washroom" resulting in extremely inflated labor hours. *Id*. Childers Dep. at 61:24-25. Based upon the arbitrary criteria identified, Mr. Childers reached conclusions about the amount of payroll expenses that GEO would have incurred to replace detainee labor with "paid labor," without any consideration of GEO's current staffing levels. Decl. of Robbins, Ex. A, Childers Report at ¶ 10. However, not even the cited APPA guidelines support Mr. Childers opinions. The APPA Guidelines fail to address cleaning requirements of a detention center and (as provided) do not offer any basis for estimating the cost of labor.

### III. LAW

Expert testimony is governed by Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1)

---

[2] The Table of contents in Exhibit 4 to Childers Dep. contains sections that provide guidance on determining the "cost of cleaning" and how to determine the appropriate level of cleaning. Mr. Childers did not provide either of those segments with his report, nor did he reference them in rendering his opinion.

the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Interpreting Rule 702, in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993), the Supreme Court held that in cases where the testimony of a party's expert is challenged, the district court must act as a "gatekeeper" and rule on the admissibility of the expert's testimony and the qualifications of expert. In *Kumho Tire*, the Supreme Court extended *Daubert* and held that Rule 702 applies to all expert testimony, not just "scientific expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Admissibility is established by satisfying the two-prong test introduced in *Daubert*: expert testimony must be both (1) reliable and (2) relevant to the case. *Id.*; *Daubert*, 509 U.S. at 592 n.10; *Estate of Barabin v. Asten Johnson, Inc.*, 740 F.3d 457, 463–64 (9th Cir. 2014). The Supreme Court has provided a non-exclusive list of factors that courts may consider when determining the reliability of expert testimony, which includes: "(1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014) (*quoting Daubert*, 509 U.S. at 592-94). The party seeking admission of expert testimony bears the burden of establishing its admissibility. *Daubert*, 509 U.S. at 592 n. 10.

IV.   **ARGUMENT**

    A.   **Mr. Childers' Testimony is Not Reliable.**

In assessing whether an expert's testimony is admissible, Rule 702 serves as a guide. Under Rule 702, an expert's testimony is not reliable unless, "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FRE 702. If the expert's testimony does not satisfy all

three criteria, it should be excluded. Here, Mr. Childers' testimony must be excluded because (1) he is not qualified to serve as an expert in appropriate staffing levels; (2) his opinions are not the product of reliable principles and methods; and (3) his opinions are based upon insufficient facts and data.

### 1. Mr. Childers' Background Does Not Qualify Him To Serve As An Expert In Detention Staffing Levels and Costs.

The Court must first consider whether Mr. Childers is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. To begin, Mr. Childers seeks to provide testimony that wanders far afield from that which is reasonably within the province of his qualifications. Mr. Childers is a college professor by trade, who focuses on "Labor Education." Decl. of Robbins, Ex. A, Childers Report at ¶ 1-3. He has no experience in staffing plans for detention centers. Mr. Childers has never been to a detention facility. Decl. of Robbins, Ex. C, Childers Dep. at 44:4-7. He did not review photographs of the Adelanto facility. *Id*. Childers Dep. at 74:5-7. Indeed, he did not even understand the basic layout of the housing units or whether the facility had separate rooms that were used as cafeterias. *Id*. Childers Dep. at 104:1-7. Mr. Childers has no experience in assessing or developing staffing plans for prisons, detention centers, or other facilities that hold individuals in the custody of the state or federal governments. *Id*. Childers Dep. at 44:17-19. While it is true that Mr. Childers is a professor in "labor education" at the University of Wisconsin-Madison, he has never taught a seminar in staffing of detention facilities or published an article on the topic. *Id*. Childers Dep. at 44:20-25. Rather, his focus is on unionized workforces. Decl. of Robbins, Ex. A, Childers Report (CV of Michael R. Childers, Selected Publications). Despite purporting to determine staffing needs here, Mr. Childers has never before provided expert testimony where he created a staffing model. Decl. of Robbins, Ex. C, Childers Dep. at 43:12-44:3. Nor has he ever before utilized the APPA Guidelines—not even when he was tasked with staffing his department at the University of

Wisconsin. *Id*. Childers Dep. at 28:7-14.

As such, Mr. Childers is not qualified to interpose an expert opinion as to the appropriate staffing levels for an immigration detention facility or the cost of the same—let alone the Adelanto facility which he has never visited or studied. To be sure, a lack of training in a specific field provides a sufficient basis for a Court to disqualify an expert. *See Samuels v. Holland Am. Line-USA Inc*., 656 F.3d 948, 953 (9th Cir. 2011) (finding that a proffered travel industry expert was not in the position to testify about the customs of the cruise line business specifically because he never worked in the cruise industry); *Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1098 (C.D. Cal. 2017), aff'd, 786 F. App'x 84 (9th Cir. 2019); *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1200 (D. Nev. 2008), aff'd, 371 F. App'x 752 (9th Cir. 2010) ("Rhodes, as an electrical engineer, likely could not offer such an opinion that would satisfy Nevada's rule requiring expert medical testimony as to causation."); *Radio Sys. Corp. v. Lalor*, No. C10-828RSL, 2014 WL 4626298, at *2 (W.D. Wash. Sept. 12, 2014) (excluding a witness who was well educated but lacked experience in the relevant field); *Kingsbury v. U.S. Greenfiber, LLC*, No. CV 08-00151 DSF AGRX, 2013 WL 7018657, at *2 (C.D. Cal. Nov. 5, 2013) ("Even if Beardmore is generally aware of disclosure requirements with respect to the sale of real estate, he has no basis to opine on disclosures relating to this particular insulation product."). Because Mr. Childers lacks the requisite background to provide expert testimony as to detention staffing levels, and the cost of the same, his opinions would be the type of "subjective belief and unsupported speculation that *Daubert* guards against." *Nelson v. Matrixx Initiatives*, No. C 09-02904 WHA, 2012 WL 3627399, at *12 (N.D. Cal. Aug. 21, 2012); *see also* ECF 409 (excluding testimony of Kropf based upon insufficient knowledge in the field of immigration detention). Thus, Mr. Childers' testimony should be excluded on this basis alone.

## 2. Mr. Childers' Opinion is Not the Product of Reliable Principles and Methods.

Even if the Court is not inclined to decide that Mr. Childers' background provides a sufficient basis for expert testimony in this case, his testimony should be excluded because he did not apply reliable principles and methods. *JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.*, No. CIV. A. 97-CV-0652, 1998 WL 175888, at *10 (E.D. Pa. Apr. 15, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999) ("[A]n expert must be able to point to methods that he applied."). The failure to articulate a methodology for applying industry standards to the facts of the case is grounds for exclusion. *See e.g., Roman v. MSL Capital, LLC*, No. EDCV172066JGBSPX, 2019 WL 1449499, at *4 (C.D. Cal. Mar. 29, 2019) (Bernal, J.) (excluding testimony where the expert did not "state steps he took to analyze the facts of this case, but instead simply states a conclusion. Without an articulation of such a methodology, his testimony amounts to an untethered and conclusory opinion.").

As an initial matter, Mr. Childers conceded in his deposition that the APPA guidelines have not been used in the context of detention and therefore are not general industry standards in the area that is at issue in this case. Decl. of Robbins, Ex. C, Childers Dep. at 69:9-12. Further, Mr. Childers conceded that none of the underlying data from which the APPA Guidelines were created was derived from detention facilities, jails, or correctional centers. *Id*. Childers Dep. at 100:3-5. Moreover, Mr. Childers made no effort to determine whether the cleaning needs of colleges and universities were similar enough to detention facilities in order to provide a reliable comparison. *Id*. Childers Dep. at 130:4-7.

Next, to understand how Mr. Childers' conclusions are unreliable, it is important to understand how his methodology works. Because the APPA Guidelines are a poor fit for the detention context, the analysis is convoluted. Mr. Childers' approach to staffing an immigration detention center's custodial staff is as follows: First, Mr.

**DEFENDANT THE GEO GROUP, INC.'S MOTION TO EXCLUDE TESTIMONY OF MICHAEL CHILDERS**

Childers identifies rooms in the ICE detention facility by square footage. Significantly, he made no effort to determine whether those rooms are cleaned by existing GEO staff or detainees. Decl. of Robbins, Ex. C, Childers Dep. at 54:5-7, 132:10-15.

From there, without visiting the facility, looking at pictures, or familiarizing himself with the layout and materials in the room, Mr. Childers made guesses as to what rooms on a college campus were most analogous to those at the Adelanto Facility. He did so without data about the rooms on the college campuses or at the Adelanto facility. As a result, Mr. Childers determined, based upon no reliable data from others who typically utilize the APPA Guidelines or individuals who staff detention facilities, that a detention "visitation area" was like a "dormitory lounge," the "laundry room" and "kitchen" like bathrooms or "washrooms," and the corridors were comparable to a room that to-date has not been identified.[3] Decl. of Robbins, Ex. C, Childers Dep. at 61:19-62:6. Based upon these arbitrary determinations that various rooms were analogous, Mr. Childers then made subjective decisions about how clean each room should be, then based upon unidentified square footage calculations, determined how many staff would be needed to clean the facility. *Id*. Childers Dep. at 55:9-12 (arbitrarily determining the level of cleanliness); 106:21-25 (Mr. Childers did not confirm the blueprints he reviewed were the building as it existed, as opposed to how it is proposed, and instead just looked "for the blueprint that reflected what I was looking for."). Mr. Childers cannot point to anyone else in his field that would apply similar methodology. Nor can he explain how his assessment could be replicated. Accordingly, it is not reliable as it is largely based upon his own subjective application of the APPA standards to an inapposite context.

Even if the APPA guidelines could reliably be used in the detention context, Mr. Childers did not use reliable methods and principles. For example, Mr. Childers made no attempt to validate his findings, such as through a comparison to other detention

---

[3] Mr. Childers did not provide his comparisons in his report, nor his rationale for the same. Decl. of Robbins, Ex. C, Childers Dep. at 62:7-9.

facilities to see if the figures were accurate. *Id.* Childers Dep. at 128:3-5. Nor did he consider any data from other detention facilities. *Id*. Childers Dep. at 128:9-17. Nor could he point to any other experts in the field that could provide industry guidance for comparing college campuses to other types of rooms that may be cleaned in a different context.

Further, his conclusions were not consistent with the examples in the very APPA standards he purported to apply. Indeed, during his deposition, Mr. Childers was asked about the APPA study that provided for the cleaning of 251,876 square feet of hard floor classrooms with 6 custodians, while his estimate contemplated closer to 46 custodians for the same square footage. Decl. of Robbins, Ex. C, Childers Dep. at 94:9-25. When asked why a common area of a housing unit (a hard tile floor with tables and chairs) was not like a classroom, Mr. Childers did not have an answer. *Id*. Childers Dep. at 94:22-25. In short, Mr. Childers could not provide a cogent answer or any information about how he applied the APPA standards in a manner consistent with the field of staffing. Nor could he explain how his results could be replicated. Accordingly, Mr. Childers' opinions should be excluded.

### 3. Mr. Childers' Opinions are Based Upon Insufficient Facts and Data.

In assessing whether an expert is qualified, this Court's role is to ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.,* 526 U.S. at 152. In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation. *Daubert*, 509 U.S. at 590; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to

existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). The failure to independently verify information that is readily available to an expert is grounds for exclusion. *JMJ Enterprises, Inc.*, 1998 WL 175888, at *10. "[E]xpert testimony that ignores existing data and is based on speculation is inadmissible." *Id*. at *6.

In his deposition, Mr. Childers testified that he had taken few if any steps to verify the facts and data that underly his opinion. Mr. Childers did not make any attempt to determine what portions of the Adelanto facility were cleaned by Voluntary Work Program participants and which ones were not. Decl. of Robbins, Ex. C, Childers Dep. at 105:4-7. Instead, he relied exclusively on a blueprint and selected square footage numbers, at random, to add into his calculations. *Id.* And from the blueprint he used, he made no effort to identify whether the schematics he was using were for the facility as it currently exists, or instead were part of a proposed expansion. *Id*. Childers Dep. at 106:21-108:17. In fact, he ignored the disclaimer on the document he reviewed that the blueprint was a proposal and that the blueprint he pointed to at his deposition was a proposed expansion that included descriptors such as "Lobby Area Expansion," "New ICE Training Room," "OPLA Expansion Area." In addition, he did not provide any information in his report that would explain how he reached the amount of square footage that would be cleaned by additional staff under his models. He conceded that if certain square footage was "taken out of the equation, then it's going to change the estimate on the number of janitors required." *Id*. Childers Dep. at 111:15-17. Indeed, Plaintiffs are in possession of square footage numbers that are broken down by each room, including a count of all sinks and toilets. Thus, there is no excuse for Mr. Childers' failure to obtain this information.

Mr. Childers did not know if a classroom, with tables and chairs, would be similar to a detainee living area—both of which have hard surfaces, tables, and chairs.

**DEFENDANT THE GEO GROUP, INC.'S MOTION TO EXCLUDE TESTIMONY OF MICHAEL CHILDERS**

Decl. of Robbins, Ex. C, Childers Dep. at 94:25. Nor did he know if detainee living areas were similar in layout or fixtures to the "sleep/study" dormitory rooms to which he compared them. He did not know if he accounted for a cafeteria, despite the fact that the Adelanto Facility has multiple cafeterias and that classifying areas as cafeterias under the APPA guidelines would significantly reduce the number of staff needed when compared with the calculations selected by Mr. Childers. *Id*. Childers Dep. at 114:12-22. Likewise, Mr. Childers assumed that detainees cleaned the laundry room as part of their VWP duties, but could not cite any factual support for his assumption. *Id*. Childers Dep. at 116:11-16. Further complicating matters, despite reaching a total number of staff required to clean based upon square footage, Mr. Childers made no effort to account for tasks that were performed by existing GEO employees or to connect the scope of work with those listed in the housekeeping plan. *Id*. Childers. Dep. at 56:7-11, 120:7-16. In fact, he was not aware of any GEO employees in the facility. *Id.* Childers Dep. at 56:7-11. Nor did he ask for a staffing plan or other document to better understand GEO's staffing. *Id.* Childers Dep. at 120:20-23.

Mr. Childers' failure to assess the validity or accuracy of the data undercuts the reliability of his opinion and provides an additional basis for exclusion. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1024 (C.D. Cal. 2018) (excluding expert testimony based upon unreliable assumptions).

### B.   Mr. Childers Testimony Would Improperly Confuse the Jury.

"In terms of relevancy, the 'central concern' of Rule 702 is whether expert testimony is helpful to the jury." *Dickinson v. City of Kent*, No. C06-1215RSL, 2007 WL 4420931, at *1 (W.D. Wash. Dec. 14, 2007). "'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses.'" *Daubert*, 509 U.S. at 595 (citations omitted).

As discussed above, Mr. Childers' opinions present myriad of reliability concerns that demonstrate his opinions would not assist the trier of fact in determining the staffing delta between GEO's current employees and the number of employees that Plaintiffs believe GEO should have employed. Even setting aside his report, Mr. Childers is unable to provide an opinion on this core issue that would assist the jury. During his deposition, Mr. Childers was asked how his conclusions could be used to "identify how many additional staff are needed" beyond GEO's current staffing levels, the opinion he was retained to provide. Decl. of Robbins, Ex. C, Childers Dep. at 121:7-9. Mr. Childers responded "I don't know." *Id*. Childers Dep. at 121:10. If Mr. Childers cannot explain how his opinions could be useful to the issue for which he was retained to testify, it is obvious that his opinions will not be helpful to the jury.

**C.    In the Alternative, Mr. Childers Should Be Excluded for Failure to Timely Disclose Complete Information.**

Federal Rule of Civil Procedure 26(b)(4)(a)(i) requires certain disclosures be made by any expert retained to provide testimony in the case. The rule requires experts to disclose:

- a complete statement of all opinions to be expressed and the basis and reasons for the opinion must be disclosed;
- the data or other information considered by the witness in forming the opinions;
- any exhibits to be used as a summary of or support for the opinions;
- any qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years;
- the compensation to be paid for the testimony; and
- a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Rule 37(C)(1) provides that any information that is not properly disclosed as required by Rule 26 may not be used at trial. *See Goodman v. Staples The Office Superstore*,

**DEFENDANT THE GEO GROUP, INC.'S MOTION TO EXCLUDE TESTIMONY OF MICHAEL CHILDERS**

LLC, 644 F.3d 1101, 1106-07 (9th Cir. 2001). Mr. Childers failed to disclose the listing of any other cases in which he had testified as an expert in the proceeding four years. Indeed, despite admitting to providing expert testimony in approximately fifteen (15) prior cases, at least six (6) of which were in the past five (5) years, Mr. Childers had no listing of those cases. Decl. of Robbins, Ex. C, Childers Dep. at 20:1-6, 21:1-6. After his deposition and through his counsel, Mr. Childers disclosed only two cases, depriving GEO of the ability to further examine the scope of his prior expert testimony. Certainly, there is a large delta between two and fifteen cases. Even worse, Mr. Childers, in an effort to be "breviloquent," failed to provide any information about what categories he used from the APPA Guidelines as a baseline for his opinions. *Id*. Childers Dep. at 62:7-11. Further, Mr. Childers' calculations rely upon his assessment of the square footage of each portion of the facility. His report and accompanying exhibits do not explain how he reached the amount of square footage in each category. For example, Mr. Childers lists nearly 190,000 square feet of housing area, but does not provide *any* citation for that data. When asked about it at his deposition, he did not recall, instead referring to a document he had stored on his "computer somewhere." *Id*. Childers Dep. at 103:22-24. To date, he has not provided that report or given GEO other information sufficient to assess whether his calculations of square footage are accurate. *Id*. Childers Dep. at 76:24-77:14. Likewise, Mr. Childers still has not provided any information about what APPA categories he used for his assessment of the "corridors" or a listing of room comparisons and assumptions regarding cleanliness levels. In short, Mr. Childers failed to meet his disclosure obligations under Rule 26 and therefore, in addition to the foregoing reasons, his opinions should be excluded at trial.

## V.   CONCLUSION

For the foregoing reasons, this Court should exclude the testimony of Plaintiffs'

expert Michael Childers.

Dated: March 1, 2021

**AKERMAN LLP**

By: */s/ Ellen S. Robbins*
    Ellen S. Robbins
    Alicia Y. Hou
    Adrienne Scheffey
    Attorneys for Defendant
    THE GEO GROUP, INC.

**DEFENDANT THE GEO GROUP, INC.'S MOTION TO EXCLUDE TESTIMONY OF MICHAEL CHILDERS**