# EXHIBIT B

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**DECLARATION OF JODY BLAND IN SUPPORT OF PLAINTIFFS' OPPOSITION TO GEO'S MOTION TO EXCLUDE TESTIMONY OF JODY BLAND** |

I, Jody Bland, declare that the following is true and correct based upon my personal knowledge:

1. I prepared an expert report and declaration in this matter, dated August 17, 2020. I prepared an amended report dated September 2, 2020. I am submitting this declaration in support of Plaintiffs' Opposition to GEO's Motion to Exclude my testimony in this case.

2. I have been asked by Counsel to provide additional information and clarifications on a number of topics discussed within Defendant's Motion to Exclude the Testimony of Jody Bland ("the Bland MTE").

3. As noted in the Amended Bland Report, inputs to "estimate the but-for wages earned by detainees" required the identification of the "mixture of job types and measurement of shift lengths." (Amended Bland Report, ¶30). To evaluate such inputs, I reviewed "daily activity schedules, chronological routine event documents, and other documents from Adelanto" (Amended Bland Report, ¶31), including work program applications and detainee time sheets (Amended Bland Report, ¶¶32,33,34), among others.

4. Regarding identification of shift lengths specifically, I reviewed the totality of the "documentation in the record that included relevant information pertaining to shift lengths" that were made available to me. (Bland Tr. 22:15-16). A number of these documents included data throughout the Class Periods on the start and end time of activities closely related to the job types described within the VWP applications and detainee timesheets. Within these documents, I identified a large degree of consistency in start and end times of work-related activities throughout the Class Period, even as the detainee population grew. Such consistency in shift lengths over time is apparent in the Bland Amended Report Exhibit 1. In contrast, I saw no data or evidence (i.e., emails, activity schedules, routine event documents, anecdotes, etc.) that would lead me to believe shift lengths varied over time in conjunction with the number of detainees at Adelanto or the number of detainees participating the VWP.

5. As a result of this review and analysis, I used the "midpoint of shift lengths" from the documents described above "as the best estimate of hours per shift" throughout the Class Periods, while noting that my methodology could accommodate "the use of any shift length estimates should the trier-of-fact determine an alternative measure of shift lengths is appropriate." (Amended Bland Report, FN46).

6. Moreover, when asked at my deposition about performing a formal statistical test of correlation between shift lengths and the number of detainees participating in the VWP, I noted that data provided were insufficient to perform such an analysis. (Bland Tr. 37:8-9). To the extent such data becomes available, it would be straightforward to incorporate it into my analysis; however, at the time of the Amended Bland Report, I had reviewed the other data and information available as described above to conclude the use of the median shift length as an input into the damages computation is reasonable.

7. It is worth noting that the sheer presence of a correlation between shift lengths and the number of detainees working on a given day would not necessarily imply

that the median shift length over time is a biased estimator. As long as the number of detainees working on a given day varies around the overall mean or median with no distinct upward or downward trends, one would still be able to use the mean or median as a common measure of central tendency to estimate total hours across the population of workers. I checked for this using the available data and records and saw no distinct trends in shift lengths. For the sake of conservatism, I also chose to use to the median shift lengths over the average, as the average slightly exceeded the medians for a few job types.

8. In regard to the mixture of shifts identified from the detainee time sheets, GEO claims, vis-à-vis reference to the report of Ms. Morones, that "there is significant variance between the periods summarized in Bland's Report," implying the use of the time sheet data as a representative estimator for job mixtures is flawed. . As purported support, Ms. Morones replaces my use of the mixture based on all three months of data with the mixture based on only a single month – January 2018 – and finds that total damages fall slightly. (Ms. Morones claims damages fall by $506,000, or 3.1%, for the Wage Class and $1,107,000, or 3.1%, for the Forced Labor Class.) Such a decision to replace the use of the full dataset with a smaller subset does not support the conclusion of "significant variation between the periods," but instead is a disingenuous stretching of logic.

9. Ms. Morones own analysis also exemplifies why one would choose to rely upon the full timesheet data. Slight variability from month to month is smoothed by using the complete data, rather than using a cherry-picked month as Ms. Morones does. (Ms. Morones chose to apply the job mixture from the single month of the three that led to the lowest damages figure.). In contrast, had I chosen to use November 2017 for the shift mixture input, damages would have actually been slightly higher, and had I used December 2017 for the shift, mixture input damages would have been almost identical to those from using the total.

10. In addition to the general consistency in job mixture across the three months of timesheet data, I also saw no evidence that the primary job functions offered to detainees changed over the course of the Class Periods. For instance, VWP applications throughout the Class Periods show a similar set of job types available to detainees with no marked changes over time (Bland Amended Report ¶32). Together, the consistency in job types over the three months in which timesheet data were available coupled with the consistency in job types offered to detainees over time support a conclusion that the timesheet data job mixture can be reasonably applied throughout the Class Periods.

11. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Dated: March 8, 2021

/s/
Jody Bland

DECLARATION OF DANIEL H. CHAREST    5:17-cv-02514-JGB-SHK
4