UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-2514 JGB (SHKx)** | Date | September 30, 2021 |
|---|---|---|---|
| Title | ***Raul Novoa, et al. v. The GEO Group, Inc.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order GRANTING IN PART and DENYING IN PART Defendant's
Motion to Decertify the Classes (Dkt. No. 427) (IN CHAMBERS)**

Before the Court is Defendant's motion to decertify the classes. ("Motion," Dkt. No.
427.) The Court held a hearing on this matter on August 23, 2021. After considering the papers
filed in support of and in opposition to the Motion, as well as the arguments of counsel, the Court
GRANTS IN PART and DENIES IN PART the Motion.

## I.  BACKGROUND

On December 19, 2017, Plaintiff Raul Novoa ("Novoa") filed a putative class action
complaint against Defendant The GEO Group, Inc. ("GEO"). (Dkt. No. 1.) Novoa filed a first
amended complaint on July 6, 2018, (Dkt. No. 47), and a second amended complaint on
December 24, 2018, which added Jaime Campos Fuentes ("Fuentes") as a Plaintiff, ("SAC,"
Dkt. No. 108). On August 16, 2019, Plaintiffs sought leave to file a third amended complaint.
(Dkt. Nos. 167, 169.) The Court granted leave, (Dkt. No. 183), and Plaintiffs filed the third
amended complaint, ("TAC," Dkt. No. 184), the operative complaint. The TAC added
Abdiaziz Karim ("Karim") and Ramon Mancia ("Mancia") as Plaintiffs, amended the class
definitions, and added two causes of action. (See Dkt. No. 183 at 2.)

The TAC alleges seven causes of action arising from Plaintiffs' detention at California's
Adelanto Detention Center ("Adelanto"): (1) violation of California's Minimum Wage Law
("CMWL"), Cal. Labor Code §§ 1194, 1197, 1197.1; (2) unjust enrichment; (3) violation of
California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4)
violation of California's Trafficking Victims Protection Act ("CTVPA"), Cal. Civ. Code § 52.5;

| Page 1 of 11 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk NP |
|---|---|---|

(5) forced labor under the Federal Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589(a), 1594(a); (6) forced and attempted forced labor under the TVPA; and (7) retaliation. (See TAC.)

On November 26, 2019, the Court granted Plaintiffs' motion for class certification, and certified the following three classes:

- Adelanto Wage Class: All civilly detained immigrants who (i) were detained at the Adelanto ICE Processing Center any time between December 19, 2014 and the date of final judgment in this matter, and either (ii) participated in the Voluntary Work Program at any point during their detention, or (iii) performed work for no compensation in the Uncompensated Work Program pending their participation in the Voluntary Work Program, or (iv) performed work for no compensation pursuant to the Adelanto Housing Unit Sanitation Policy.
- Adelanto Forced Labor Class: All civil immigration detainees who were detained at the Adelanto ICE Processing Center any time between May 1, 2011 and the date of final judgment in this matter.
- Nationwide HUSP Class: All civilly detained immigrants who (i) were detained at any civil immigration detention center owned or operated by GEO in the United States between December 19, 2007 and the date of final judgment in this matter, and (ii) were subject to a GEO Housing Unit Sanitation Policy (HUSP) at any point during their detention.

("Class Cert. Order," Dkt. No. 223.)

Defendant filed the Motion on December 22, 2020. (Mot.) In support of the Motion, Defendant included the Declaration of Ellen S. Robbins and related exhibits. ("Robbins Decl.," Dkt. No. 427-1; Exhibits A-W, Dkt. No. 427-2.) Plaintiffs filed their Opposition on January 11, 2021. ("Opposition," Dkt. No. 433.) Defendant filed its Reply on January 15, 2021 ("Reply," Dkt. No. 437), along with the Declaration of Ellen S. Robbins and Exhibit A ("Robbins Reply Decl.," Dkt. No. 437-1; Reply Ex. A, Dkt. No. 437-2.)[1]

## II.  LEGAL STANDARD

Rule 23(c)(1) provides that an order certifying a class "may be altered or amended before final judgment." As a result, district courts "retain[] the flexibility to address problems with a certified class as they arise, including the ability to decertify" a class. United Steel v. ConocoPhillips Co., 593 F.3d 802, 809 (9th Cir. 2010); see also General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). "The standard used by the courts in reviewing a motion to decertify is the same as the standard used in

---

[1] For a factual background, see Order on Motions for Summary Judgement ("MSJs Order") issued separately.

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk NP

evaluation a motion to certify." O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 410 (C.D. Cal. 2000); see also Cert. Order at 8-9 (laying out certification standard under Rule 23).

The Ninth Circuit has not affirmatively articulated the burden of proof for decertification. In Marlo v. United Parcel Service, Inc., 639 F.3d 942 (9th Cir. 2011), in reviewing an order to decertify a class, the Ninth Circuit held that the district court "properly placed the burden on [the plaintiff] to demonstrate that Rule 23's class-certification requirements had been met." Id. at 947. After Marlo, several district courts in this circuit have concluded that the party seeking decertification bears the burden of showing that the elements of Rule 23 have not been established because "decertification and modification should theoretically only take place after some change, unforeseen at the time of the class certification, that makes alteration of the initial certification decision necessary." In re Myford Touch Consumer Litig., 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018) (citing In re Apple iPod Antitrust Litig., 2014 WL 6783763, at *5 (N. D. Cal. Nov. 25, 2014)); True Health Chiropractic Inc. v. McKesson Corp., 2020 WL 7664484, at *3 (N.D. Cal. Dec. 24, 2020). Thus, some courts have found that the defendant must "make some showing of changed circumstances or law." Maldonado v. Apple, Inc, 2021 WL 1947512, at *2 (N.D. Cal. May 14, 2021) (citing 3 Newberg on Class Actions § 7:39 (5th ed.)). "Once this initial burden is met, the plaintiff must demonstrate that the class action should be 'maintain[ed]' under Federal Rule of Procedure 23." Id. The Court finds this line of cases persuasive.[2]

## III.  DISCUSSION

Defendant seeks to decertify the Nationwide HUSP Class and the Adelanto Forced Labor Classes,[3] summarized below:

//
//
//
//
//
//
//
//
//

---

[2] Defendant claims that this is inconsistent with this Court's prior ruling in McCrary v. Elations Co. LLC, 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014). There, the Court noted that "[t]he party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 are satisfied, even upon a motion to decertify the class." Id. at *5 (citing Marlo, 639 F.3d at 947). But this is not inconsistent with the above cases. The Court recognizes that, pursuant to binding precedent, plaintiffs retain the burden to show that Rule 23 elements are met. However, the Court clarifies that this burden is triggered once the defendant makes a showing of changed circumstances or law after class certification.

[3] Defendant does not seek to decertify the Adelanto Wage Class. (Mot. at 2.)

**CIVIL MINUTES—GENERAL**   Initials of Deputy Clerk NP

|  | **Adelanto Forced Labor Class** | **Nationwide Housing Unit Sanitation Policy ("HUSP") Class** |
|---|---|---|
| Definition | All civil immigration detainees who were detained at the Adelanto ICE Processing Center any time between May 1, 2011 and the date of final judgment in this matter. | All civilly detained immigrants who (i) were detained at any civil immigration detention center owned or operated by GEO in the United States between December 19, 2007 and the date of final judgment in this matter, and (ii) were subject to a GEO Housing Unit Sanitation Policy (HUSP) at any point during their detention. |
| Facility | Adelanto | GEO facilities Nationwide, including Adelanto |
| Causes of Action | Claims 4 (violation of California's Trafficking Victims Protection Act ("CTVPA")); 5 (forced labor under the Federal Trafficking Victims Protection Act ("TVPA")); and 6 (forced and attempted forced labor under the TVPA) | Claims 5 (forced labor under the TVPA); and 6 (forced and attempted forced labor under the TVPA) |
| Relevant GEO Program Alleged | Work Program ("WP") Subclass:<br>• WP<br>• Deprivation Policy<br><br>Uncompensated Work Program ("UWP") Subclass:<br>• UWP<br>• Deprivation Policy | Housing Unit Sanitation Policies ("HUSPs") |
| Type of Rule 23(b) Certification | 23(b)(2)<br>23(b)(3) | 23(b)(2) |

//
//

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk NP

Defendant's Motion focuses on the commonality and predominance requirements under Rule 23. See Fed. R. Civ. P. 23(a)(2) (requiring "questions of law or fact common to the class"); 23(b)(2) (requiring that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"); 23(b)(3) (requiring that "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior").

The Court certified the Adelanto Forced Labor Class, including the Work Program Subclass and the Uncompensated Work program Subclass, under Rules 23(b)(2) and 23(b)(3). As in its Class Certification Order, the Court analyzes Rule 23(a) commonality and Rule 23(b)(3) predominance together, because the latter is an extension of the former, and more stringent.[4] (Class Cert. Order at 22-23.) Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) ("Rule 23(b) requires that courts take a close look at whether common questions predominate over individual ones.") (citations omitted). The Court will then address Rule 23(b)(2).

## A.  Commonality and Predominance

### 1.  Legal Standard

Courts have construed Rule 23(a)(2)'s commonality requirement permissively. See Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003). All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is "a common core of salient facts coupled with disparate legal remedies [within the class]." Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting Hanlon, 150 F.3d at 1019). Nevertheless, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." Dukes, 131 S. Ct. at 2551 (citation omitted). The "claims must depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. The common question or questions must also generate common answers that will be "apt to drive the resolution of the litigation," which turns on the nature of the underlying legal claims in the case. Jimenez, 765 F.3d at 1165 (quoting Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 962 (9th Cir. 2013)). Thus, commonality requires an understanding of the nature of the underlying claims. Id. (citing Parsons v. Ryan, 754 F.3d 657, 676 (9th Cir. 2014)).

The Classes at issue assert claims under the TVPA and CTVPA. The TVPA prohibits a party from knowingly providing or obtaining a person's labor—or attempting to do so—by means of threats of physical restraint, serious harm, abuse of law or legal process, or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not

---

[4] The Rule 23(b)(3) predominance analysis, however, is not applicable to the Nationwide HUSP Class.

perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). "Serious harm" is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).[5]

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (citations and internal quotations omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id.

## 2. The Parties' Contentions

Defendant argues that the key issues in this case are individualized. In particular, Defendant argues that: (1) the implementation of housekeeping policies varied between facilities; (2) GEO did not have a uniform policy of imposing segregation or warnings of segregation as a sanction for the refusal to clean, but instead used lesser sanctions authorized by ICE (or no sanctions); (3) detainees' motivations for cleaning varied significantly; (4) detainees' reactions to possible sanctions for refusal to clean were wide-ranging; (5) there is no evidence that the food or hygiene supplies at Adelanto were routinely or regularly insufficient. (Mot. at 6.)

Plaintiffs counter that there are common questions concerning Plaintiffs' forced labor claims, including a common motivation (GEO's pursuit of profit), a common offense (GEO's use of forced labor), and a common mechanism (the HUSPs and enforcement scheme). (See Opp'n.) In particular, Plaintiffs point to common proof applicable to each facility showing that

---

[5] As the Court noted in its Class Certification Order, the elements of a CTVPA and TVPA claim overlap significantly. (Class Cert. Order at 23 n.11.) See Lesnik v. Eisenmann SE, 374 F. Supp. 3d 923, 954 (N.D. Cal. 2019). Under the CTVPA, a victim of human trafficking may bring a civil action for damages or injunctive relief. Cal. Civ. Code § 52.5(a). California's human trafficking statute provides in pertinent part that "[a] person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking." Cal. Penal Code § 236.1. The elements of the criminal offense are (1) the defendant either deprived another person of personal liberty or violated that other person's personal liberty; and (2) when the defendant did so, he or she intended to obtain forced labor or services from that person. People v. Halim, 14 Cal. App. 5th 632, 643 (2017), reh'g denied (Sept. 12, 2017), review denied (Nov. 29, 2017), cert. denied sub nom. Halim v. California, 138 S. Ct. 1564 (2018). Forced labor services are defined as "labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person." Cal. Penal Code § 236.1(h)(5).

---

GEO requires labor beyond that required by the PBNDS and threatens serious harm, including: (1) GEO issues a handbook to every detainee, listing all rules and regulations, as well as sanctions for violating its requirements; (2) GEO operates a HUSP at every facility, and the handbook instructs detainees to clean areas beyond those required in the PBNDS; (3) each detainee is instructed to obey directions by the GEO staff, and failure to do so carries certain penalties; (4) refusal to clean assigned living area or insolence towards a staff members is subject to thirteen possible penalties, including "Disciplinary segregation (up to 72 hours)"; (5) this threat of sanctions is a means of compelling detainee labor.

### 3.  Application

In its Class Certification Order, the Court heavily relied on the commonality and predominance analysis in Menocal v. GEO Grp., Inc., 320 F.R.D. 258, 265 (D. Colo. 2017), aff'd, 882 F.3d 905 (10th Cir. 2018). (See Class Cert. Order at 23 ("The District Court in Menocal found that common issues predominated in plaintiffs' TVPA claim, and the Court agrees with that analysis.").) As an initial matter, Defendant argues that Menocal has little bearing here because individualized rebuttal evidence shows that "detainees' uncompensated cleaning tasks varied from facility to facility (and even detainee to detainee), as did their motivations." (Mot. at 7.) As detailed below, the Court agrees in part and disagrees in part.

#### a.  Adelanto Forced Labor Classes

The Court finds that the Adelanto Forced Labor Classes continue to meet the commonality and predominance requirements. Defendant's Motion mainly focuses on apparent variations in the application of sanctions to detainees, their reactions to such possible sanctions, and their motivations for cleaning. These arguments are all recycled from the class certification stage. The Court relied on Menocal to reject these arguments before, and does so here again.

In Menocal, the court held that "GEO ha[d] a specific, uniformly applicable Sanitation Policy that is the subject of [the] TVPA claim[,]" which is "the glue that holds the allegations of the Representatives and putative class members together, creating a number of crucial questions with common answers." 320 F.R.D. at 264. There, GEO argued that perception of a threat is subjective, and that no detainee was actually placed in segregation. Id. Menocal noted that the putative class members were "all subject to and impacted by the Sanitation Policy, and the duties they performed under the Policy were at the direction of GEO's staff." Id. at 265. It further concluded that whether detainees were in fact disciplined with segregation for violating the policy at issue is irrelevant, "since the forced labor statute includes threats, schemes, plans, and patterns as improper means of coercion." Id. at 265. The Court held that the TVPA has both an objective and a subjective component: (a) whether the victims actually labored because of the perpetrator's conduct; and (b) whether a reasonable person would respond in a similar way as the victims. Id. at 266-67. While the latter subjective component is a reasonable person analysis, the former can be established by classwide circumstantial evidence. Id. at 267.

The Court continues to find this analysis persuasive as it applies to the Adelanto Forced Labor Classes.  Defendant cannot persuasively dispute that there are specific, uniformly applicable policies as to sanitation and discipline in Adelanto, applicable to all Adelanto Forced Labor Class members.  (See Dkt. No. 193-18 (Adelanto Housekeeping Plan); Dkt. No. 193-23 (Adelanto Sanitation Procedures and Housekeeping Plan); Dkt. No. 193-24 (Housing Unit Post Orders); Dkt. No. 193-16 (Adelanto Supplemental Detainee Handbook).)  These serve as "the glue that holds the allegations of [the Adelanto Forced Labor Class] together, creating a number of crucial questions with common answers."  Menocal, 320 F.R.D. at 264.  The Adelanto Supplemental Detainee Handbook includes several potential sanctions for a detainee's "[r]efusal to clean assigned living area[,]" "[b]eing unsanitary or untidy, failing to keep self and living area in accordance with standards[,]" "[r]efusal to obey a staff member Officer's order[,]" or "[i]nsolence towards a staff member[.]"  (Adelanto Supplemental Detainee Handbook, Dkt. No. 193-16, at 30.)  These include "[d]isciplinary segregation (up to 72 hours)."[6]  (Id.)  Upon arrival, every detainee receives a copy of this Handbook and is told that they are responsible to follow its requirements.  (Dkt. No. 193-4 (Janecka Dep. Tr. at 30:2-10).)

Here, as in Menocal, whether individual detainees were actually disciplined with segregation, or instead subjected to lesser (or no) sanctions does not matter, as the TVPA encompasses "threats, schemes, plans, and patterns as improper means of coercion."  Id. at 265.  That detainees may react differently to such alleged "threats" of sanctions is similarly irrelevant, as the TVPA only requires a reasonable person analysis, which the Court has already noted is susceptible to class resolution.  (Class Cert. Order at 23 n.11.)  As to detainees' motivations, the Court again finds Menocal's analysis applicable.  Here, as in that case, "[g]iven the climate in which they were detained, it is possible that an inference of causation would be appropriate even despite some class members' purported willingness to work for reasons other than GEO's improper means of coercion."  Menocal, 320 F.R.D. at 267.  Defendant's arguments to the contrary are unpersuasive.

Defendant also renews its claim that there is no classwide policy to deprive individuals of basic necessities to coerce them to work.  (Mot. at 16-18.)  The Court considered this dispute at class certification; it considered Plaintiffs' individual experiences, OIG reports finding PBNDS violations at Adelanto, and evidence of economic incentives for GEO to compel detainees to work.  (Class Cert. Order at 7-8.)  While Defendant renews its attacks on the reliability and applicability of this evidence, the Court finds no reason to alter its determination.

### b.  Nationwide HUSP Class

As to the Nationwide HUSP Class, Defendant points to new evidence suggesting sanitation policies vary across facilities.  As noted above, in Menocal, the court held that "GEO ha[d] a specific, uniformly applicable Sanitation Policy that is the subject of [the] TVPA

---

[6] Other potential penalties include: initiating criminal proceedings, disciplinary transfer, making monetary restitution, loss of privileges, change of housing, removal from program and/or group activity, loss of job, restriction to living unit, reprimand, and warning.  (Id.)

claim[,]" which is "the glue that holds the allegations of the Representatives and putative class members together, creating a number of crucial questions with common answers."  320 F.R.D. at 264.  Defendant argues that here, however, discovery revealed that the sanitation policies are not in fact uniformly applicable across facilities, so that there are no common answers.

During the hearing on class certification, Defendant acknowledged that it had not engaged in "class-wide, nationwide discovery" to ascertain whether there were any differences in its sanitation policies across detention facilities.[7]  (Robbins Reply Decl., Ex. A (Nov. 18, 2019 Hearing Tr. at 17:9-14).)  In turn, Plaintiffs represented that "GEO operates a HUSP at each of the 12 civil immigration detention facilities at issue[,]" and that there was "no dispute that the HUSPs are the same."  (Id. at 17:19-18:4.)  According to Plaintiffs, "[p]ursuant to each HUSP, detained immigrants at each facility are subjected to mandatory, compulsory cleaning and maintenance work in the common areas of their housing units."  (Id.)  Defendant asserts that, after the class certification hearing, it engaged in discovery on this issue, including the depositions of over fifteen GEO witnesses and significant document discovery.  (Reply at 3; Robbins Reply Decl. ¶ 3.)  Defendant therefore establishes that there are changed circumstances that may justify the Court's modification of the Class Certification Order.

Defendant represents that there are no housekeeping policies called "HUSP" at each facility, but points to written housekeeping duties in the detainee handbooks for each facility.  (Mot. at 8-11.)  Defendant argues that these written housekeeping policies (and their practical application) vary across detention facilities.  (Id. (table pointing to relevant language from detainee handbooks and testimony regarding their application).)

In response, Plaintiffs merely cite the GEO's default admission that HUSPs exist at its twelve other facilities, and asserts that GEO's handbook tells every detainee that they are required to clean areas beyond the four required in the PBNDS.  (Opp'n at 9-10 (citing Suppl. PSUF ¶ 1).)  But Plaintiffs point to no such handbook sections.  Rather, Plaintiffs point to deposition testimony to support their argument that detention facilities require detainees to clean common areas beyond the narrow scope of uncompensated labor permitted by the PBNDS.  (Id.)  But while that testimony establishes that most detention facilities require detainees to clean their "immediate living area[,]" this evidence does not support a wide-ranging policy requiring detainees to clean common areas across facilities.[8]  (See Suppl. PSUF ¶ 1.)

---

[7] In its Class Certification Order, the Court acknowledged that Plaintiffs relied principally on Adelanto-specific policies in their description of the HUSP, coupled with GEO's default admission that HUSPs exist at twelve other facilities, as well as the Menocal order certifying a class challenging a similar HUSP at a GEO facility in Aurora, Colorado.  (Class Cert. Order at 7.)

[8] Moreover, Plaintiffs acknowledge that under the PBNDS and other ICE policies, detainees may be required to clean their immediate living area.  (Opp'n at 9 (citing DHS Office of Inspector General Report, OIG-17-43-MA (making clear that "requiring detainees to clean common areas used by all detainees is in violation of ICE standards, as detainees are only required to clean their immediate living area")).)

Plaintiffs further argue that detainees are issued handbooks containing sections requiring their compliance with all rules and regulations, setting Category III (or High Moderate) Offenses and possible penalties, and threatening "Disciplinary segregation (up to 72 hours)" (or thirteen other possible penalties) for refusal to clean assigned living area, refusing to obey a staff member or officer's order, or insolence toward a staff member.  (Opp'n at 10-11.)  But to the extent that "assigned living areas" or policies requiring detainees to clean differ across facilities, the Court finds that this alone does not support commonality.

Despite the benefit of additional discovery, Plaintiffs point to no evidence supporting or describing the HUSPs in GEO's facilities, supporting a common (or even similar) sanitation policy, or disputing GEO's proffered evidence supporting that the detainee handbooks (and their practical application) support a variation in policies, which in most cases do not in fact require detainees to clean areas beyond those listed in the PBNDS.  Thus, Plaintiffs do not point to any "specific, uniformly applicable" policy (or policies) that may serve as the "glue that holds the allegations … together, creating a number of crucial questions with common answers." Menocal, 320 F.R.D. at 264.  Because the sanitation policies and their application may differ across facilities, the Court is no longer persuaded that there are common answers as to GEO's potential violation of the TVPA across its detention facilities.  Plaintiffs thus fail to show commonality as to the Nationwide HUSP Class.

**B.  Rule 23(b)(2)**

"It is sufficient to meet the requirements of Rule 23(b)(2) [when] class members complain of a pattern or practice that is generally applicable to the class as a whole." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010) (internal citation and quotation marks omitted).  However, "[i]f there is no evidence that the entire class was subject to the same … policy, there is no question common to the class." Ellis, 657 F.3d at 983 (9th Cir. 2011); Willis v. City of Seattle, 943 F.3d 882, 885 (9th Cir. 2019) ("[P]olicies and practices are the 'glue' that holds together the putative class ... either each of the policies and practices is unlawful as to every [proposed member] or it is not").

In its Class Certification Order, the Court held that there were "various policies and practices applicable to each proposed classes that, if unlawful, subject proposed members to coerced labor in violation of the TVPA and CTVPA."  (Class Cert. Order at 27.)  The Court also noted that the classes seek "essentially the same injunctive relief enjoining GEO from continuing these policies or practices."  (Id.)  That continues to be the case for the Adelanto Forced Labor Classes.

However, while the Nationwide HUSP Class continues to seek the same injunctive and declaratory relief, for the reasons described above, Plaintiffs fail to show that there is a pattern or practice that is generally applicable to the Nationwide HUSP Class as a whole.  The Rule 23(b)(2) requirement is therefore not met.

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk NP

The Court therefore DENIES Defendant's Motion as to the Adelanto Forced Labor Classes, and GRANTS Defendant's Motion as to the Nationwide HUSP Class.

## IV.  CONCLUSION

For the foregoing reasons, the Court (1) DENIES Defendant's Motion as to the Adelanto Forced Labor Class (and corresponding sub-classes); and (2) GRANTS Defendant's Motion as to the Nationwide HUSP Class.  The Nationwide HUSP Class is DECERTIFIED.

**IT IS SO ORDERED.**