Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Class Counsel
*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION**

| | |
|---|---|
| **RAUL NOVOA, JAIME CAMPOS FUENTES, ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant*. | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR STAY PENDING DECISION ON RELATED NINTH CIRCUIT APPEALS**<br><br>Hearing Date: March 28, 2022<br>Time: 9:00 a.m.<br>Courtroom: 1<br>Judge: Hon. Jesus G. Bernal |

1

## I. INTRODUCTION

Plaintiffs filed the original complaint in this action on December 19, 2017. Since that day, Plaintiffs have expended an extraordinary amount of resources, both in terms of time and expense, in discovery, motion practice, and preparing for trial. Trial is currently set to begin on May 10, 2022.

The GEO Group, Inc. ("GEO"), has asked this Court to stay this litigation for an unknown period pending the outcome of GEO's appeal of a jury verdict (and Court finding of unjust enrichment) against GEO in *Nwauzor v. The GEO Group*, No. 3:17-cv-05769 (W.D. Wash.) ("*Nwauzor*").[1] In its motion, GEO pays lipservice to the interests of Plaintiffs in pursuing their claims and offers only nonspecific, brief, and generic justifications as to why such a delay would not prejudice or be a hardship to Plaintiffs. Similarly, the "hardships" GEO would suffer if put to trial, and why the stay would "promote judicial economy" lack any real merit. Ultimately, GEO's effort fails to satisfy (or materially address) the three elements GEO must show before this Court should even consider staying this litigation. Because GEO has not and cannot show it is entitled to a stay of this litigation pending the outcome in its appeal from *Nwauzor*, GEO's motion should be denied.

## II. THE DISTRICT COURT SHOULD NOT STAY TRIAL OF THIS ACTION PENDING THE *NWAUZOR* APPEAL

This case addresses systematic and unlawful wage theft, unjust enrichment, and forced labor under California state law and the federal Trafficking Victims Protection Act ("TVPA"). On January 26, 2022, trial in this matter was significantly streamlined when this Court granted summary judgment on Plaintiffs' California's Minimum Waw Law claim and Plaintiffs' California's Unfair Competition Law claim and dismissed GEO's affirmative defenses of derivative sovereign immunity,

---

[1] A verdict was entered in *Nwauzor* on October 27, 2021, and GEO filed its appeal on December 13, 2021. *See Nwauzor v. The GEO Group*, No. 21-36024 (9th Cir.). That matter is the lead docket which includes a consolidated appeal: *State of Washington v. The GEO Group*, No. 21-36025 (9th Cir.).

preemption, lack of standing, and dismissed GEO's counterclaim seeking declaratory relief. ECF 542. No principled justification exists to stay this action pending resolution of a case GEO lost in Washington. The defenses GEO wants to test apply, at best, to only a portion of this case. The state law issues presented are completely different. And no TVPA claim was alleged or tried in the other case.

Regardless of GEO's assertions, "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). To obtain a stay, GEO must convince the Court that a stay is appropriate based on the weighing of three issues: (1) the possible damage the non-moving party may suffer from the granting of the stay; (2) the hardship or inequity the moving party may suffer by being required to move forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). In addition, "if there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," then the movant "must make a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Because GEO cannot carry its burden, the motion to stay should be denied.

**A. Plaintiffs will be substantially injured by the issuance of a stay.**

GEO seeks to minimize the impact of a stay on Plaintiffs by asserting that this case is merely about money damages. ECF 553 at 11. It is not. GEO is correct that Plaintiffs won the right to money damages when this Court ruled that GEO cheated thousands of detainees out of a fair wage for the work they do to clean and maintain GEO's Adelanto Facility. ECF 542. But that is not the only issue in the case.

This case will also serve to end dangerous, harmful, and illegal forced labor: modern-day slavery in one of GEO's largest facilities. GEO's attempt to downplay the harm Plaintiffs will continue to suffer during a stay of this case is an effort to sidestep the reality that requiring detainees to perform "janitorial and maintenance

work in common areas beyond detainees' bunk area certainly appears to exceed the scope of the 'personal housekeeping tasks' sanctioned by the PBNDS." ECF 542 at 24. Coupling GEO's forced-labor work policies with its practice of making sure every detainee knows of the severe sanctions they face for any failure to obey orders of GEO staff or refusal to clean means vulnerable detainees have lived (and continue to live) under conditions deemed to constitute illegal forced labor under California and federal law. *See* ECF 542 at 25 (noting that GEO's "threat of solitary confinement sufficiently alleges the means to achieve forced labor, as it constitutes serious harm, which Congress defined to include psychological harm. Whether detainees were actually disciplined with segregating or subjected to lesser (or no) sanctions is irrelevant, as the TVPA covers threats, schemes, plans, and patterns as improper means of coercion."). The trial and a result in favor of Plaintiffs will be another step towards the end of GEO's illegal practices in Adelanto.

GEO argues that the length of the delay will be minimal since the Ninth Circuit has issued an order to expedite oral argument. However, GEO has not provided any concrete date of when oral argument will begin. Or when an opinion will be reached. Or GEO's subsequent appellate plans. GEO only states that oral arguments will be expedited "when compared to other pending appeals." ECF 553 at 12. According to the latest statistics, the median time period between the filing of a notice of appeal and a final decision on the merits in the Ninth Circuit is 15.3 months.[2] That is, GEO's prediction is that its *Nwauzor* might take less than 15 months. And GEO wholly fails to factor in its appellate plans in the event the Ninth Circuit agrees with the *Nwauzor* court (and this Court).

GEO says that it has requested ICE suspend the Voluntary Work Program ("VWP") at Adelanto and, therefore, Plaintiffs would not be substantially injured by a stay. But GEO only gives cursory details as to this request. It provides no date as

---

[2] *See* https://www.uscourts.gov/statistics/table/b-4a/judicial-business/2020/09/30.

4

to when ICE will respond or what ICE's response will be.[3] GEO only states that it "expects" ICE to suspend the VWP at some point "in the near future." ECF 553 at 12. Taking GEO's argument (that the suspension of the VWP will reduce Plaintiffs' harm) at face value, GEO has not offered evidence to project when that "help" will arrive for Plaintiffs.

But the suspension of the VWP is more likely to harm Plaintiffs than anything. In response to the *Nwauzor* ruling, GEO sought and obtained similar relief from ICE. Taken alone, that might seem fine. But GEO failed—miserably—to supplement the VWP labor within the Tacoma facility, so the conditions of confinement have deteriorated greatly.[4] To preserve the benefits to its bottom line GEO has, according to U.S. NEWS & WORLD REPORT, issued an order: "No more cleaning."[5] According to facility monitors and detainees in Tacoma, via U.S. NEWS & WORLD REPORT, GEO's failure to supplement the detainee work force has caused a dire situation:

> [Detainee] Soares, two other detainees[,] and activists who monitor the facility south of Seattle told the AP that <u>much of the sanitation work they used to perform is no longer being done regularly</u>.
>
> "It got really gross — nobody cleaned anything," Ivan Sanchez, a 34-year-old detainee from Jalisco, Mexico, said in a phone interview from the jail. "We pick up after ourselves, but nobody sweeps or mops. The guards were saying it wasn't their job to clean the toilets. . . . <u>It caused a lot of animosity between the detainees and the officers because of that</u>."
>
> Further, [the sources for U.S. NEWS & WORLD REPORT] said, <u>not being able to work makes it harder for detainees to buy extra food at the</u>

---

[3] As of the day of filing this brief, GEO confirmed that it had not received a response from IC as to its request.

[4] "Company Halts Work Program Instead of Upping Detainee Pay," U.S. NEWS & WORLD REPORT (via Associated Press), Gene Johnson (Nov. 5, 2022), *available at* https://www.usnews.com/news/business/articles/2021-11-05/company-halts-work-program-instead-of-upping-detainee-pay?context=amp (last visited Mar. 7, 2022).

[5] *Id.*

5

<u>center's commissary, supplementing what they consider to be inadequate meals provided by GEO.</u>[6]

Despite requests from the undersigned on behalf of Plaintiffs, GEO has refused to provide any records or information about staffing and funding to supplement the detainee work force GEO plans to stand down. Nor would GEO provide any assurances that levels of care and sanitation would be maintained within Adelanto when (if) GEO suspends detainee labor.

Finally, GEO's position is unclear as to the effect on uncompensated detainee work that GEO uses in Adelanto. Suspension of the VWP will not terminate all detainee work because detainees remain subject to uncompensated work by compulsion in common areas within Adelanto. IF GEO suspends only the VWP but not its forced labor practices, Plaintiffs continue to suffer the harms of that practice. If GEO intends to eliminate all detainee work, the negative effect on conditions only heightens because GEO has refused (at least in Tacoma) to provide funding and manpower to replace the detainee work.

Under all metrics, Plaintiffs will be substantially harmed by the stay.

**B. GEO has failed to show it will suffer significant hardship or inequity absent a stay.**

GEO must also establish that it will suffer significant hardship or inequity by being required to move forward. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. And GEO can show nothing more.

Not only did GEO wait over two months to seek any stay, but it also failed to submit any evidence of hardship or inequity it will experience without a stay. GEO's motion rests on vague, unsubstantiated estimates, assumptions, and projections to advance a claim that it will be harmed without the issuance of a stay and that this

---

[6] *Id.*

6

Court should simply let the Ninth Circuit sort out the various issues that <u>might</u> affect the ultimate resolution of this action. GEO provides nothing more than speculation of any hardship or inequity it might suffer absent a stay.

### C. The issuance of a stay would not promote judicial economy.

The third competing interest the Court considers is whether granting or denying a stay is consistent with "the orderly course of justice." Having failed in its first two showings, GEO cannot satisfy this part of the test either.

The liability questions on appeal in *Nwauzor* deal <u>solely</u> with Washington State's Minimum Wage Law. The minimum wage questions in *Novoa* deal <u>solely</u> California's Minimum Wage Law—and this Court has already determined GEO breached that statute. ECF 542. Further, to the extent the is overlap in the two minimum wage laws, this Court ruled against GEO on the "control" aspect of *Martinez*, while the *Nwauzor* court presented the "suffer or permit" aspect to the jury. As a result, <u>none</u> of the liability questions to be decided in *Nwazor* can affect this Court's grant of summary judgment.[7]

Nor can the appeal impact the remaining liability issues regarding unjust enrichment or forced labor; no such claims were plead or tried in *Nwazor*, thus nothing the Ninth Circuit rules will affect the liability issues to be tried this May.

Even if GEO obtains a favorable outcome in its appeal in *Nwauzor* based on one of its affirmative defenses (e.g., IGI, DSI, or preemption), those rulings would not be dispositive of the issues to be tried in this case. Those federal-type defenses do not apply to the TVPA claims at issue in this case. Even with a complete victory on its best immunity defense, GEO would still have to face the federal forced labor claims. And GEO never actually grapples with that reality.

---

[7] In its motion GEO claims that every appeals court which has looked at the "employer/employee" issue has ruled in its favor. But GEO fails to acknowledge that the Ninth Circuit has only addressed this issue as it related to criminal prisoners and not civil detainees. Plaintiffs are not criminals or prisoners—a critical distinction that GEO overlooks.

Because these two cases are different from one another, granting a stay would not promote the "orderly course of justice" as required under *Landis*.

### III. CONCLUSION

The Court should deny GEO's motion seeking to stay this case pending the outcome of GEO's appeal from the *Nwauzor* court.

Dated: March 7, 2022　　　　　　　　Respectfully Submitted,

/s/ *Daniel H. Charest*
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
Warren Burns (admitted *pro hac vice*)
wburns@burnscharest.com
TX Bar # 24053119
E. Lawrence Vincent (admitted *pro hac vice*)
lvincent@burnscharest.com
TX Bar # 20585590
Lauren Cross (admitted *pro hac vice*)
lcross@burnscharest.com
TX Bar # 24105759
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002

Korey A. Nelson (admitted *pro hac vice*)
knelson@burnscharest.com
LA Bar # 30002
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765

R. Andrew Free (admitted *pro hac vice*)
andrew@immigrantcivilrights.com
TN Bar # 030513
**LAW OFFICE OF R. ANDREW FREE**

8

P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221
Facsimile: (615) 829-8959

Nicole Ramos (admitted *pro hac vice*)
nicole@alotrolado.org
NY Bar # 4660445
**AL OTRO LADO**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
Telephone: (619) 786-4866

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone: (310) 474-9111
Fax: (310) 474-8585

*Class Counsel*

# CERTIFICATE OF SERVICE

I, Daniel H. Charest, electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated: March 7, 2022

/s/ *Daniel H. Charest*
Daniel H. Charest (admitted *pro hac vice*)
dcharest@burnscharest.com
TX Bar # 24057803
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002