Susan E. Coleman (SBN: 171832)
scoleman@bwslaw.com
BURKE WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, California 90071
Telephone: (213) 236-0600
Facsimile: (213) 236-2700

Attorneys for Defendant
The GEO Group, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **RAUL NOVOA**, **JAIME CAMPOS FUENTES**, **ABDIAZIZ KARIM**, and **RAMON MANCIA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**THE GEO GROUP, INC.**,<br><br>*Defendant.* | Civil Action No. 5:17-cv-02514-JGB-SHKx<br><br>**JOINT STATUS REPORT**<br><br>Judge: Honorable Jesus G. Bernal |

Per the Court's Order (Dkt. No. 561), Raul Novoa, Jaime Campos Fuentes, Abdiaziz Karim, and Ramon Mancia, and The GEO Group, Inc., (collectively, the "Parties") hereby file this Joint Status Report regarding the appellate proceedings in *Nwauzor v. The GEO Group, Inc.*, No. 3:17-cv-05769-RJB (W.D. Wash.), appeal docketed, No. 21-36024 (9th Cir. Jan. 11, 2022), and *Washington v. The GEO Group, Inc.*, No. 3:17-cv-05806-RJB (W.D. Wash.), appeal docketed, No. 21-36025 (9th Cir. Jan.11, 2022) (collectively, the "Consolidated Washington Appeals").

1

1.     Oral Argument with the Washington Supreme Court took place on October 17, 2023 on the questions which were certified by the Ninth Circuit.

2.     On December 21, 2023, the Washington Supreme Court filed its opinion (attached as **Exhibit A**) related to the questions certified to the Court by the Ninth Circuit. The Washington Supreme Court concluded that detained workers at a private detention facility are considered "employees" within the meaning of the Washington's Minimum Wage Act ("MWA"). The Court also concluded the MWA's government-institutions exemption does not apply to work performed by detainees confined in a private detention facility that operates under contract with the State. Lastly, the Court concluded that a legal remedy to one party does not foreclose the availability of equitable relief to a separate party.

3.     The matter will now be returned to the Ninth Circuit for further proceedings.

 Dated: December 27, 2023

*/s/ Joseph Negron*

Joseph Negron (admitted *pro hac vice*)
jnegron@geogroup.com
THE GEO GROUP, INC.
4955 Technology Way
Boca Raton, Florida 33431
Telephone: (561) 999-7344
Fax: (561) 999-7647

*/s/ Susan E. Coleman*

Susan E. Coleman (SBN: 171832)
scoleman@bwslaw.com
BURKE WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, California 90071
Telephone: (213) 236-0600
Facsimile: (213) 236-2700

**Attorneys for Defendant**

**The GEO Group, INC.**

2

1  Dated: December 27, 2023                Respectfully submitted,

2                                          /s/ *Daniel H. Charest*

3                                          Daniel H. Charest (admitted *pro hac vice*)
                                           dcharest@burnscharest.com
4                                          TX Bar # 24057803

5                                          Warren Burns (admitted *pro hac vice*)
                                           wburns@burnscharest.com
6                                          TX Bar # 24053119

7                                          E. Lawrence Vincent (admitted *pro hac vice*)
                                           lvincent@burnscharest.com
8                                          TX Bar # 20585590

9                                          **BURNS CHAREST LLP**

10                                         900 Jackson St., Suite 500
                                           Dallas, Texas 75202
11                                         Telephone: (469) 904-4550
                                           Facsimile: (469) 444-5002
12

13                                         Korey A. Nelson (admitted *pro hac vice*)
                                           knelson@burnscharest.com
14                                         LA Bar # 30002

15                                         **BURNS CHAREST LLP**
                                           365 Canal Street, Suite 1170
16                                         New Orleans, LA 70130
                                           Telephone: (504) 799-2845
17                                         Facsimile: (504) 881-1765

18

19                                         Nicole Ramos (admitted *pro hac vice*)
                                           nicole@alotrolado.org
20                                         NY Bar # 4660445

21                                         **AL OTRO LADO**
                                           511 E. San Ysidro Blvd., # 333
22                                         San Ysidro, CA 92173
                                           Telephone: (619) 786-4866
23

24

25

26

27

28

3

1
2
3
4
5
6
7
8

Robert Ahdoot (CA Bar # 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (CA Bar # 174806)
twolfson@ahdootwolfson.com
Theodore W Maya (CA Bar # 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024-3102
Telephone:  (310) 474-9111
Fax:  (310) 474-8585

*Class Counsel*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT STATUS REPORT**                                      **5:17-CV-02514-JGB**

## CERTIFICATE OF SERVICE

I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, using the electronic case filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

Dated: December 27, 2023

/s/ Susan E. Coleman

Susan E. Coleman (SBN: 171832)
scoleman@bwslaw.com
BURKE WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, California 90071
Telephone: (213) 236-0600
Facsimile: (213) 236-2700

**Attorneys for Defendant**
**The GEO Group, INC.**

**JOINT STATUS REPORT**                                          **5:17-CV-02514-JGB**

# EXHIBIT A

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 21, 2023

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 21, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH DISTRICT IN | No. 101786-3 (certified No. 21-36024 (consol. with No. 21-36025)) |
| UGOCHUKWU GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA, individually and on behalf of all those similarly situated, | En Banc |
| Plaintiffs, | Filed: Filed: December 21, 2023 |
| v. | |
| THE GEO GROUP, INC., a Florida corporation, | |
| Defendant. | |
| STATE OF WASHINGTON, | |
| Plaintiff, | |
| v. | |
| THE GEO GROUP, INC., a Florida corporation, | |
| Defendant. | |

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

JOHNSON, J.—The certified questions in this case concern a challenge to a private, for-profit corporation's practice of paying civil immigration detainees less than Washington's minimum wage to work in its private detention center. We are asked to determine whether Washington's Minimum Wage Act (MWA), ch. 49.46 RCW, applies to detained workers in a privately owned and operated detention facility. We conclude that it does. We are also asked to decide whether a legal remedy to one plaintiff forecloses the availability of equitable relief to a different plaintiff. It does not.

## CERTIFIED QUESTIONS[1]

1. Whether detained workers at the NWIPC, a private detention center, are "employees" within the meaning of the MWA?

2. Whether RCW 49.46.010(3)(k), the MWA's government-institutions exemption, applies to work performed by detainees confined in a private detention facility operating under a contract with the State?

3. Whether the damages award to the class forecloses equitable relief to the State in the form of an unjust enrichment award?

## FACTS & PROCEDURAL HISTORY

The GEO Group Inc. is a private, for-profit corporation that owns and operates the Northwest ICE Processing Center (NWIPC),[2] a private immigration detention center in Tacoma, Washington, pursuant to a contract with the federal

---

[1] We exercise our discretion to reformulate the certified questions. *See, e.g.*, *Nelson v. P.S.C., Inc.*, 2 Wn.3d 227, 233 n.2, 535 P.3d 418 (2023).

[2] Formerly named the Northwest Detention Center.

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

government. GEO contracts with the United States Immigration and Customs Enforcement (ICE) to confine up to 1,575 noncitizen adults in administrative civil custody as they await review and determination of their immigration status. Immigration detainees, as a group, "have not been found to have committed any crime, but are awaiting civil procedures that may lead ultimately to U.S. residence and citizenship." Excerpts of Record (ER) at 29; *see* Ord. Certifying Questions to Wash. Sup. Ct., No. 21-36024, at 6 (9th Cir. Mar. 8, 2023) (stating they are not confined based on criminal convictions or pending criminal matters nor as a penalty for immigration status violations). Immigration detainees are held until they are removed ("deported") or released. ER at 111.

GEO has owned and operated the NWIPC and has contracted with ICE since 2005. The corporation contracts with ICE to provide "civil immigration detention management services." ER at 68. These services include "the building, management and administration, security, clean and vermin free facilities, food service with three nutritious meals per day, clean uniforms and bedding, and barbershop/grooming services." ER at 68. They also include "detention officers, management personnel, supervision, manpower, training certificates, licenses and supplies." ER at 19.

Under the ICE contract, GEO is required to "develop and manage a VWP [Voluntary Work Program]," the purpose of which "is to provide detainees

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

opportunities to work and earn money while confined." ER at 109, 19-20. The

NWIPC detainees worked in the facility under the VWP.

As the manager of the VWP, GEO sets the pay rate, drafts job descriptions,

assigns detained workers to work assignments, sets the work schedule, provides

detained workers with "orientation, training, uniforms, equipment," and

"supervises and directs the detainees in their duties." ER at 110. Pursuant to the

ICE contract, GEO is required to provide detainees certain core services, including

food, laundry, cleaning, and barber services. The detained workers "were not to be

used to perform" the "core obligations" that, under the ICE contract, were the

responsibilities and duties of GEO. ER at 22. However, GEO relied on the detained

workers to perform "substantially the core work required of GEO under the

contract." ER at 22; *see also* ER at 69.

GEO paid its detained workers $1 per day to perform these essential tasks.

Pursuant to ICE's Performance-Based National Detention Standards (PBNDS),[3]

GEO is required to compensate its detained workers *at least* $1 per day but has

discretion to pay more than that amount. Further, the ICE contract expressly states

that GEO is required to comply with all applicable federal, state, and local laws

---

[3] GEO is required to comply with ICE's PBNDS, "which are a set of national detention standards to ensure all entities that ICE contracts with meet baseline requirements." ER at 108.

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

and codes. Nevertheless, GEO has never paid its detained workers the state
minimum wage.

The State of Washington and a class of NWIPC detainees (Class) brought
two separate actions against GEO in September 2017, alleging that GEO's practice
of paying detainees less than Washington's minimum wage to work in the
detention center violates Washington's MWA. The United States District Court for
the Western District of Washington consolidated the two actions on the MWA
liability issue only, leaving the issue of damages to be considered separately.

After a jury trial, judgment was entered in favor of the State and the Class
(collectively Plaintiffs) on the MWA issue. The jury found that GEO permitted the
detainees to work and paid less than the MWA required. In separate proceedings,
the Class was awarded $17,287,063.05 in back pay damages. The State was
awarded $5,950,340.00 in equitable relief for unjust enrichment, and GEO was
enjoined from continuing operation of the VWP without complying with the
MWA.

GEO appealed the judgments to the Ninth Circuit Court of Appeals. The
Ninth Circuit consolidated the matters and certified three questions to this court.
The first certified question asks us to determine the threshold issue of whether
detained workers at the NWIPC, a private detention center, are "employees" within
the meaning of the MWA. Our answer is yes. The second question is whether the

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

MWA's government-institutions exemption applies to work performed by detainees confined in a private detention facility operating under a contract with the State. Our answer is no. And finally, we are asked to determine whether a legal remedy to one party forecloses the availability of equitable relief to a separate party. Our answer is no.

Amici briefs in support of the Plaintiffs on the MWA issue were filed by the Washington State Department of Labor and Industries, the American Civil Liberties Union of Washington Foundation, and La Resistencia, Fair Work Center, and Professor Angelina Snodgrass Godoy.

ANALYSIS

I.   Washington's Minimum Wage Act.

We are asked to interpret the MWA and determine whether the detained workers at the NWIPC are "employees" under the act. We review questions of statutory interpretation de novo. When interpreting a statute, our primary objective is to "ascertain and give effect to the legislature's intent as manifested by the statute's language." *Woods v. Seattle's Union Gospel Mission*, 197 Wn.2d 231, 238, 481 P.3d 1060 (2021), *cert. denied*, 142 S. Ct. 1094 (2022). To determine the meaning of a statute's language, "we look to the text, the context of the statute, related statutory provisions, and the statutory scheme as a whole." *State v. Valdiglesias LaValle*, 2 Wn.3d ___, 535 P.3d 856, 861 (2023) (citing *State v.*

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

*Haggard*, 195 Wn.2d 544, 548, 461 P.3d 1159 (2020)). If the statute is susceptible to more than one reasonable interpretation, then it is ambiguous and we may resort to statutory construction, legislative history, and relevant case law to discern legislative intent. *Valdiglesias LaValle*, 535 P.3d at 861.

Washington has a "'long and proud history of being a pioneer in the protection of employee rights.'" *Hill v. Xerox Bus. Servs., LLC*, 191 Wn.2d 751, 760, 426 P.3d 703 (2018) (internal quotation marks omitted) (quoting *Int'l Ass'n of Fire Fighters, Loc. 46 v. City of Everett*, 146 Wn.2d 29, 35, 42 P.3d 1265 (2002)). The Washington Legislature enacted the MWA "for the purpose of protecting the immediate and future health, safety[,] and welfare of the people of this state." RCW 49.46.005(1). In doing so, it recognized that "the establishment of a minimum wage for employees is a subject of vital and imminent concern to the people of this state and requires appropriate action by the legislature to establish minimum standards of employment within . . . Washington." RCW 49.46.005(1). Consistent with Washington's priority of protecting employee rights, courts must liberally construe the MWA "'[in favor of the employee].'" *See, e.g.*, *Hill*, 191 Wn.2d at 762 (alteration in original) (internal quotation marks omitted) (quoting *Int'l Ass'n of Fire Fighters*, 146 Wn.2d at 34); *see also* RCW 49.46.820 (requiring that the MWA "be liberally construed to effectuate the intent, policies, and purposes").

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

The MWA provides that employers shall pay their employees not less than the statutory minimum wage. RCW 49.46.020. The MWA defines "employee" as "any individual employed by an employer but shall not include" the statutory exemptions listed in subsections (a) through (p). RCW 49.46.010(3). "Employ" means "to permit to work." RCW 49.46.010(2). Thus, "employee" generally means "any individual permitted to work by an employer." *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 867, 281 P.3d 289 (2012).

Recognizing that this definition of "employee" is broad, we have stated that "[i]nstead of being primarily defined by employments included, the MWA carves out from the definition of 'employee' more narrow provisions that operate as exemptions." *Rocha v. King County*, 195 Wn.2d 412, 420-21, 460 P.3d 624 (2020). These statutory exemptions are necessary to determine whether a worker falls within the MWA's definition of "employee." When interpreting these exemptions, we are required to construe them narrowly and apply them only to situations that are "plainly and unmistakably consistent with the terms and spirit of the legislation." *Rocha*, 195 Wn.2d at 421 (citing *Drinkwitz v. Alliant Techsystems, Inc.,* 140 Wash.2d 291, 301, 996 P.2d 582 (2000)).

Relevant to this case is the government-institutions exemption, RCW 49.46.010, which states, "(3) 'Employee' includes any individual employed by an employer but shall not include: . . . (k) Any resident, inmate, or patient of *a state,*

8

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

*county, or municipal* correctional, detention, treatment or rehabilitative institution." (Emphasis added.) GEO argues the MWA does not cover workers who are detained. The Plaintiffs argue that the subsection (k) exemption indicates the Washington Legislature contemplated the MWA's application to individuals in detention or custody who are permitted to work. And, they argue, the exemption unambiguously applies only to individuals detained in public, government-run institutions. Therefore, the subsection (k) exemption does not apply to the detained workers at the NWIPC, which is a privately owned and operated facility. We agree with the Plaintiffs.

The subsection (k) exemption applies to persons detained in a "state, county, or municipal" institution. The terms "state, county, [and] municipal" plainly refer to government divisions within the state. And they modify the terms "correctional, detention, treatment or rehabilitative institution." The only reasonable interpretation of the subsection (k) exemption is that it applies to any resident, inmate, or patient of a government institution.

GEO argues the subsection (k) exemption's language does not distinguish between publicly and privately operated facilities. And if the legislature intended to create such a distinction, it would do so explicitly. However, GEO's argument undercuts its own position because the legislature, by specifying that the exemption applies to persons detained in "state, county, or municipal" institutions,

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

distinguished public institutions from private institutions. And, as GEO states, if the legislature intended to also exclude persons detained in private institutions, it would have done so explicitly.

Because the subsection (k) exemption is unambiguous, we need not resort to additional aids of statutory interpretation to decipher the legislature's intent. Based on the language of the statute, we conclude the detained workers at the NWIPC are "employees" under the MWA. The only relevant exemption—the subsection (k) or government-institutions exemption—does not "plainly and unmistakably" apply to detainees held in a private detention center. *See Rocha*, 195 Wn.2d at 421. This interpretation is consistent with the requirements to liberally construe the MWA in favor of the employee and to narrowly construe the MWA's exemptions.

The second certified question is also resolved by our interpretation of the subsection (k) exemption. We are asked to determine whether the subsection (k) exemption applies to detained workers in a private detention facility that operates under a contract with the state government rather than with the federal government. We conclude the government-institutions exemption, RCW 49.46.010(3)(k), does not apply to detained workers in private detention facilities regardless of whether the private entity that owns and operates the facility contracts with the state or federal government.

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

As explained above, the subsection (k) exemption unambiguously applies only to workers detained in a government institution. The exemption, which we construe narrowly, would not apply to a detainee held in a private institution that is owned and operated by a private entity even where that entity operates the facility pursuant to a contract with the State.[4]

GEO points to the Washington State Department of Labor and Industries' (L&I) guidance to support its conclusion that the subsection (k) exemption applies to private detention facilities that operate under contract with the State. However, the guidance does not support GEO's position. The L&I's guidance states:

> Residents, inmates or patients of *state, county or municipal* correctional, detention, treatment or rehabilitative institution are exempt from all MWA protections and are not required to be paid minimum wage *if they perform work directly for, and at, the institution's premises* where they are incarcerated, and *remain under the direct supervision and control of the institution*. Residents, inmates or patients of *state, county or municipal* correctional, detention, treatment or rehabilitative institution *assigned by facility officials* to *work on facility premises for a private corporation at rates established and paid for by public funds* are not employees of the private corporation and would not be subject to the MWA.

ER at 496 (emphasis added). Importantly, the guidance follows the language of the statute by specifying that the exemption applies to individuals held in a state,

---

[4] The Ninth Circuit Court of Appeals' certification order does not ask us to resolve any federal constitutional arguments raised by GEO. And we need not reach the constitutional arguments as a tool of statutory interpretation because there exists only one reasonable interpretation of RCW 49.46.010(3)(k).

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

county, or municipal institution, i.e., a government institution. It does not apply to

individuals held in a private institution regardless of whether that institution is

operated pursuant to a contract with the federal or state government. Therefore, in

response to the second certified question, we conclude the MWA's government-

institutions exemption, RCW 49.46.010(3)(k), does not apply to work performed

by detainees confined in a private detention facility that operates under a contract

with the State.

Turning back to the first certified question, GEO argues that the "reside or

sleep" exemption, RCW 49.46.010(3)(j), to the definition of "employee" applies. It

does not.

RCW 49.46.010 states:

> (3) "Employee" includes any individual employed by an
> employer but shall not include:
> . . . .
> (j) Any individual *whose duties require* that he or she reside or
> sleep at the place of his or her employment or who otherwise spends a
> substantial portion of his or her work time subject to call, and not
> engaged in the performance of active duties.

(Emphasis added.) According to GEO, the detained workers "plainly fit within this

exception" because they "resided and slept at the [NWIPC], which was their place

of work." Opening Br. of Def.-Appellant on Certified Questions (GEO Opening

Br.) at 44. And, GEO argues, the subsection (j) exemption categorically excludes

any worker who resides or sleeps at their place of employment. In response, the

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

Plaintiffs highlight that the subsection (j) exemption specifically excludes those "*whose duties require*" that they sleep or reside at their place of employment. In emphasizing this key language, the Plaintiffs argue that the exemption does not broadly apply to anyone who resides at their place of work, as GEO suggests. We agree with the Plaintiffs.

GEO's interpretation of RCW 49.46.010(3)(j) ignores the statute's "whose duties require" language. When interpreting statutes, we presume that the legislature "'says what it means and means what it says.'" *Portugal v. Franklin County*, 1 Wn.3d 629, 650, 530 P.3d 994 (2023) (internal quotation marks omitted) (quoting *City of Seattle v. Long*, 198 Wn.2d 136, 149, 493 P.3d 94 (2021)). And we will not "'rewrite unambiguous statutory language under the guise of interpretation.'" *Portugal*, 1 Wn.3d at 652 (internal quotation marks omitted) (quoting *State v. Hawkins*, 200 Wn.2d 477, 492, 519 P.3d 182 (2022)). GEO does not argue that the exemption is ambiguous nor can it. The subsection (j) exemption applies to individuals who sleep or reside at their place of employment because their work duties, not some other reason, require it. And, while we are not bound by L&I's interpretation of the statute, we note that the agency's interpretation of the reside or sleep exemption is consistent. It provides that

> [m]erely residing or sleeping at the place of employment does not exempt individuals from the MWA. In order for individuals to be exempt, their *duties* must require that they sleep or reside at the place of their employment. An agreement between the employee and

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

> employer for the employee to reside or sleep at the place of
> employment for convenience, or merely because housing is available
> at the place of their employment, would not meet the exemption.

ER at 495 (emphasis added) (L&I, Admin. Pol'y ES.A.1 (revised Dec. 29, 2020)

(MWA Applicability)). Because a person detained in a facility, as here, does not

sleep or reside in the detention facility because of their job responsibilities, the

subsection (j) exemption is not applicable.

Finally, to support its interpretation of the subsection (j) exemption, GEO

cites to *Berrocal v. Fernandez*, 155 Wn.2d 585, 121 P.3d 82 (2005). GEO alleges

this court has previously interpreted the "reside or sleep" exception to

"'categorically exclude[] from the MWA definition of "employee" those workers

who are required to "reside or sleep" at their workplace.'" GEO Opening Br. at 45

(emphasis omitted) (quoting *Berrocal*, 155 Wn.2d at 588 (quoting former RCW

49.46.010(5)(j) (2002)[5]). In doing so, GEO misreads this court's holding in

*Berrocal*.

In *Berrocal*, there was no dispute that the plaintiffs' duties required them to

reside at their workplace. The issue was whether the subsection (j) exemption's

final modifying phrase—"not engaged in the performance of active duties"—also

applied to the "sleep or reside" language in the first clause. The employer argued

the exemption excluded two distinct categories of workers: (1) those whose duties

---

[5] RCW 49.46.010(5)(j) was renumbered to (3)(j) by the code reviser in 2012.

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

require them to sleep or reside at work and (2) those who otherwise spend a

substantial portion of their work time subject to call and not engaged in the

performance of active duties. The plaintiffs argued that the first clause of RCW

49.46.010(3)(j) excluded any individual whose duties require that they reside or

sleep at their place of work *and* is not engaged in the performance of active duties.

A majority of the court agreed with the employer's reading. We held that the

> [subsection (j) exemption] excludes two categories of workers from
> the MWA's definition of "employee": (1) those individuals who
> reside or sleep at their place of employment and (2) those individuals
> who otherwise spend a substantial portion of work time subject to call,
> and not engaged in the performance of active duties.

*Berrocal*, 155 Wn.2d at 598. In our holding, we paraphrased the exemption as

covering "individuals who reside or sleep at their place of employment" and, in so

doing, omitted the phrase "whose duties require." However, this paraphrase cannot

be read as a holding that we eliminated RCW 49.46.010(3)(j)'s express language.

Our analysis and conclusion in *Berrocal* have no relevance to the interpretation of

the subsection (j) exemption's phrase "whose duties require," and we reject GEO's

argument to the contrary.

Accordingly, we conclude the reside or sleep exemption, RCW

49.46.010(3)(j), does not apply to persons who work in the facility in which they

are detained because their duties do not require them to sleep or reside in the

facility. Here, the detained workers are in the custody of ICE and are not permitted

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

to leave the detention facility until ordered released or removed. It is their detention that requires them to sleep or reside at the NWIPC, not their participation in the work program.

GEO further asserts that the court should not look solely at the statutory exemptions to the MWA's definition of "employee" to determine whether the detained workers fall within that definition. Instead, GEO argues, the first step in the analysis is to determine whether the workers fall within the definition of employee in the first instance. If the answer is no, then—according to GEO—we do not take the next step of looking at the statutory exemptions to the "employee" definition.

This approach is inconsistent with how we interpret the MWA's definition of "employee" where we carve out "narrow provisions that operate as exemptions" from the broad definition of employee. *Rocha*, 195 Wn.2d at 421. Also, this proposed analytical approach contravenes our rules of statutory interpretation, under which statutory language must be interpreted in "the context of the statute, related statutory provisions, and the statutory scheme as a whole." *Valdiglesias LaValle*, 535 P.3d at 861 (citing *Haggard*, 195 Wn.2d at 548). By its very definition, "employee" is defined by its exemptions. RCW 49.46.010(3) (defining "employee" as "any individual employed by an employer *but shall not include*" the statutory exemptions listed in subsections (a) through (p) (emphasis added)).

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

Therefore, we reject an analytical approach where we first ask whether the

detained workers fall within the MWA's definition of "employee" without looking

at the related statutory exemptions. However, even if we agreed with taking this

approach, GEO's arguments are unpersuasive.

GEO argues the MWA's definition of "employee" categorically excludes

detainee labor. GEO first points to the "ordinary meaning" of the word "employee"

and argues that it would "rightly strike people as odd" to describe a federal

immigration detainee "as an 'employee' of the facility detaining [them]." GEO

Opening Br. at 20, 49 ("[T]he definition of 'employee' must be given its common-

sense meaning and exclude detainee labor."). Though GEO argues for us to

interpret "employee" consistent with its ordinary meaning, it provides no

dictionary definitions for support. *See In re Det. of A.C.*, 1 Wn.3d 731, 750, 533

P.3d 81 (2023) (Madsen, J., concurring/dissenting) ("Absent a specific statutory

definition, words in a statute are given their ordinary meaning and we may discern

that meaning from the dictionary."). The Class, however, cites to several

definitions of "employee" from various dictionaries, showing that none

contemplate the exclusion of detained individuals. Nwauzor Appellees' Br. at 28

n.11 ("Webster's New World Dictionary of the American Language 476 (1959)

(defining employee as 'a person hired by another, or by a business, firm, etc. to

work for wages or salary'); American College Dictionary 394 (1959) (defining

17

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

employee as 'a person working for another person or a business firm for pay');

Oxford Universal Dictionary 602 (1955) (defining employee as 'one who is

employed, esp[ecially] one employed for wages or a salary'); Black's Law

Dictionary 617 (4th ed. 1968) ('[o]ne who works for an employer; a person

working for salary or wages'); The Merriam-Webster Dictionary 235 (2016) ('a

person who works for another'); Collins English Dictionary 295 (2015) ('a person

who is hired to work for someone in return for payment'); Employee, Black's Law

Dictionary (11th ed. 2019) ('Someone who works in the service of another person

(the employer) under an express or implied contract of hire, under which the

employer has the right to control the details of work performance.').").

The only support GEO points to is a Washington Court of Appeals case that

considered whether a pretrial detainee held in a civil commitment facility was an

"employee" under the Washington Law Against Discrimination (WLAD), ch.

49.60 RCW. *See Calhoun v. State*, 146 Wn. App. 877, 886, 193 P.3d 188 (2008).

Quoting *Calhoun*, GEO argues detainee-workers are not employees in the ordinary

sense of the word because the work they perform does not provide sufficient

"indices of employment." 146 Wn. App. at 886. *Calhoun* is unhelpful here. There,

the court considered whether the pretrial detainee, who was in custody at a civil

commitment center operated by the State, was an employee for purposes of the

WLAD. The court specifically noted that the detainee would not be an employee

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

under the MWA because he fell within the government-institutions exemption, RCW 49.46.010(3)(k). Thus, while the court considered factors such as the primary goal of the work the detainee performed to decide whether the detainee was an employee, that analysis does not aid the argument that the ordinary meaning or the MWA's definition of "employee" excludes detained workers.

Additionally, an interpretation that "employee" excludes all detained workers would render other portions of the MWA superfluous. And "it is a basic rule of construction that, whenever possible, statutes should be construed so that no portion is superfluous." *Sim v. Wash. State Parks & Recreation Comm'n*, 90 Wn.2d 378, 383, 583 P.2d 1193 (1978). RCW 49.46.010(3)(k) specifies that "employee" does not include "[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution." If the term "employee" excludes persons who perform labor while in detention or custody, then the subsection (k) exemption would be wholly unnecessary.

Still within its proposed analytical framework, GEO next argues that the detained workers are not "employees" because no employee-employer relationship exists under the economic-dependence test we adopted in *Anfinson*, 174 Wn.2d 851. GEO argues the economic-dependence test is a necessary step in determining whether a worker falls within the MWA's definition of "employee" in the first instance, i.e., before looking to the exemptions. We reject this argument.

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

In *Anfinson*, we considered the appropriate test for determining whether a worker is an independent contractor or an "employee" under the MWA. We adopted the economic-dependence or economic realities analysis to resolve that issue. We have since applied this test in two relevant circumstances: (1) to determine whether a worker is an independent contractor or an "employee" for purposes of the MWA and (2) to determine whether a joint employment relationship exists under the MWA.[6] We have not adopted the economic-dependence analysis as a generally applicable test to determine whether a worker falls within the MWA's definition of "employee." And we decline to apply that approach in this case.

First, none of the MWA's statutory exemptions to the definition of "employee" were relevant or at issue in *Anfinson*. The MWA was silent as to how it applied to independent contractors. Here, the MWA's definition of "employee" contains the government-institutions exemption, RCW 49.46.010(3)(k), which is relevant to work performed by individuals in custody or detention. And because the MWA defines "employee" by carving out narrow provisions from its definition, we need not look beyond the relevant exemption.

---

[6] *Becerra Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 196, 332 P.3d 415 (2014). Outside the context of the MWA, we have applied the economic realities test to determine, in the joint employment context, the liability of an employer under the Washington Industrial Safety and Health Act, ch. 49.17 RCW. *Dep't of Lab. & Indus. v. Tradesmen Int'l, LLC*, 198 Wn.2d 524, 497 P.3d 353 (2021).

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

Second, we adopted the economic-dependence test because a liberal construction of the MWA favored it within the context presented in *Anfinson*. In *Anfinson*, this court considered whether the right-to-control test, which is a test set forth in *Restatement (Second) of Agency* § 220 (AM. L. INST. 1958), was the proper standard to apply to determine whether a worker is an independent contractor or an employee under the MWA. We rejected the application of the right-to-control test and instead adopted the economic-dependence test because it favors classification as an "employee" under the MWA and thus provides broader coverage. *Anfinson*, 174 Wn.2d at 870 ("The economic-dependence test provides broader coverage than does the right-to-control test. Liberal construction favors the economic-dependence test." (citation omitted)).

Here, a liberal construction of the MWA disfavors the application of the economic-dependence test to determine whether the detained workers are "employees." The MWA contains a relevant exemption for detained workers, and imposing an additional test to determine whether the workers are employees in the first instance before reaching the exemptions is unnecessary and would only function to limit MWA coverage. We decline to apply the economic-dependence test under these circumstances.

Finally, GEO suggests we follow federal courts that have concluded detainees who work in the "custodial context" are not employees under the Fair

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219. GEO Opening Br. at

23 n.4. GEO argues the Fourth Circuit Court of Appeals case *Ndambi* is especially

persuasive because the court considered whether immigration detainees in a

privately owned and operated detention center are "employees" under the FLSA.

*Ndambi v. CoreCivic, Inc.*, 990 F.3d 369 (4th Cir. 2021). The *Ndambi* court

concluded the detained workers are not employees under the FLSA, reasoning that

"[p]ersons in custodial detention . . . are not in an employer-employee relationship

but in a detainer-detainee relationship that falls outside that paradigm." *Ndambi*,

990 F.3d at 372. GEO urges us to adopt a similar categorical exclusion from MWA

coverage for persons who perform work while in custody. Because that case

interpreted federal law, it is not relevant nor helpful to the certified questions

specifically asking us to answer Washington state law.

While we have stated that federal authority under the FLSA may provide

helpful guidance in interpreting the MWA, we have also recognized that these two

statutory schemes "are not identical and we are not bound by such authority."

*Drinkwitz*, 140 Wn.2d at 298. We will not rely on a federal court's interpretation of

the FLSA where, like here, the relevant portions of the statutes are distinct. The

MWA contains a government-institutions exemption to its definition of

"employee" that is relevant to detained workers. The FLSA's definition of

"employee" contains no similar exemption. *See* 29 U.S.C. ch. 8, § 203(e).

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

II.    Unjust Enrichment.

The district court granted equitable relief to the State in the form of an unjust enrichment award. The Ninth Circuit's third and final question asks us to decide whether the damage award to the Class forecloses equitable relief to the State. It does not.

The equitable theory of unjust enrichment is rooted in notions of fairness and justice. It is "the method of recovery for the value of the benefit retained absent any contractual relationship." *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). This equitable relief is generally available where a benefit was unjustly received and the law does not authorize or recognize a legal remedy to redress the harm. It is a form of relief intended to undo an inequity, such as the receipt of ill-gotten gains, and to "force the defendant to give up a gain that had been acquired wrongfully or that would be wrongful to be kept without payment." HOWARD O. HUNTER, MODERN LAW OF CONTRACTS § 15:4 (2023) (*Concepts of Public Law and Justice, Unjust Enrichment, and Receipt of Benefit*).

To sustain an unjust enrichment claim, the State must establish

> "'[1] a benefit conferred upon the defendant by the plaintiff; [2] an appreciation or knowledge by the defendant of the benefit; and [3] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'"

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

*Young*, 164 Wn.2d at 484 (quoting *Bailie Commc'ns, Ltd*. v. *Trend Bus. Sys., Inc*., 61 Wn. App. 151, 159-60, 810 P.2d 12 (1991) (quoting BLACK'S LAW DICTIONARY 1535-36 (6th ed. 1990))). The district court concluded that the State satisfied these requirements. GEO challenges this conclusion and argues the State is not entitled to this relief because the Class's award of damages forecloses the availability of equitable relief to the State. *See Orwick v. City of Seattle*, 103 Wn.2d 249, 252, 692 P.2d 793 (1984) (providing that a plaintiff generally is not entitled to equitable relief, such as relief based on unjust enrichment, where an adequate legal remedy is available to them). We disagree.

The Class and the State are separate parties that brought separate causes of action against GEO. GEO does not cite to any authority in which we have held the award of a legal remedy to one party forecloses the availability of an equitable remedy to a separate party. And we decline to so hold now. Accordingly, the MWA damages award to the Class does not bar equitable relief on the basis of unjust enrichment to the State.

Finally, GEO argues the State's unjust enrichment claim must fail because it was the detained workers, not the State, that conferred the benefit on GEO. However, the State represents the rights and interests of those harmed by GEO's failure to pay the minimum wage from 2005 to 2021 (when final judgment was entered). ER at 22-23. This includes the rights and interests of the NWIPC's

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

detained workers from that time period. The State's unjust enrichment claim does not fail on this basis, and the award of equitable relief to the State is consistent with Washington law.

## CONCLUSION

We conclude that detained workers at a private detention facility are "employees" within the meaning of the MWA. We also conclude the MWA's government-institutions exemption, RCW 49.46.010(3)(k), does not apply to work performed by detainees confined in a private detention facility that operates under a contract with the State. Finally, we conclude that a legal remedy to one party does not foreclose the availability of equitable relief to a separate party. Accordingly, we answer the certified questions as follows:

1. Whether detained workers at the NWIPC, a private detention center, are "employees" within the meaning of the MWA? Yes.

2. Whether RCW 49.46.010(3)(k), the MWA's government-institutions exemption, applies to work performed by detainees confined in a private detention facility operating under a contract with the State? No.

3. Whether the damages award to the Class forecloses equitable relief to the State in the form of an unjust enrichment award? No.

*Nwauzor v. The GEO Group, Inc.*, No 101786-3

Johnson, J.

WE CONCUR:

González, C.J.

Gordon McCloud, J.

Madsen, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Stephens, J.

Whitener, J.